

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

FEDERAL TRADE COMMISSION, and )

STATE OF ILLINOIS, )

           Plaintiffs, )

           v. )

STARK LAW, LLC, an Illinois limited liability )
company, also doing business as STARK )
RECOVERY; )

STARK LEGAL, LLC, an Illinois limited liability )
company; )

ASHTON ASSET MANAGEMENT, INC., an )
Illinois corporation; )

CHM CAPITAL GROUP, LLC, an involuntarily )
dissolved Illinois limited liability company, also )
doing business as CAPITAL HARRIS MILLER & )
ASSOCIATES; )

HKM FUNDING, LTD., an involuntarily dissolved )
Illinois corporation, in its capacity as manager of )
CHM CAPITAL GROUP, LLC; )

PACIFIC CAPITAL HOLDINGS, INC., an Illinois )
corporation, formerly known as CHARLES )
HUNTER MILLER & ASSOCIATES, INC., and )
also doing business as PACIFIC CAPITAL; )

HIRSH MOHINDRA, individually, as an owner, )
officer, director, member, and/or manager of )
STARK LEGAL, LLC, ASHTON ASSET )
MANAGEMENT, INC., CHM CAPITAL GROUP, )
LLC, HKM FUNDING, LTD., and PACIFIC )
CAPITAL HOLDINGS, INC., and also doing )
business as ASHTON LENDING, LLC; )

GAURAV MOHINDRA, individually, and as an )

**1:16-cv-3463**
**Judge Rebecca R. Pallmeyer**
C **Magistrate Judge Sheila M. Finnegan**

# FILED

MAR 21 2016 

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

1

owner, member, and/or manager of STARK LAW, )
LLC, and STARK LEGAL, LLC; and )
                                                )
PREETESH PATEL, individually, and as an owner )
and/or manager of ASHTON ASSET )
MANAGEMENT, INC., CHM CAPITAL GROUP, )
LLC, HKM FUNDING, LTD., and PACIFIC )
CAPITAL HOLDINGS, INC.; )
                                                )
                  Defendants. )

## COMPLAINT FOR PERMANENT INJUNCTION
## AND OTHER EQUITABLE RELIEF

Plaintiffs, the Federal Trade Commission ("FTC") and the State of Illinois, for their

Complaint, allege:

1.      The FTC brings this action under Section 13(b) of the Federal Trade Commission

Act ("FTC Act"), 15 U.S.C. § 53(b), and Section 814 of the Fair Debt Collection Practices Act

("FDCPA"), 15 U.S.C. § 1692*l*, to obtain temporary, preliminary, and permanent injunctive

relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement

of ill-gotten monies, and other equitable relief for Defendants' acts or practices in violation of

Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and in violation of the FDCPA, 15 U.S.C. §§

1692-1692p, in connection with abusive and deceptive debt collection practices.

2.      The State of Illinois brings this action under Section 7 of the Illinois Consumer

Fraud and Deceptive Business Practices Act ("Illinois Consumer Fraud Act"), 815 ILCS 505/7,

and Section 9.7 of the Illinois Collection Agency Act, 225 ILCS 425/9.7, to obtain a preliminary

or permanent injunction, restitution, and civil penalties against Defendants for engaging in

deceptive acts or practices in violation of the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et

seq.*, and violations of Sections 4 and 9(a) of the Illinois Collection Agency Act, 225 ILCS 425/4

and 425/9(a).

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over the FTC's claims pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a), 53(b), and 1692*l*.

4.      This Court has supplemental jurisdiction over the State of Illinois' claims pursuant to 28 U.S.C. § 1367.

5.      Venue is proper in this District under 28 U.S.C. §§1391(b)(1), (b)(2), (c)(1), (c)(2), and (d), and 15 U.S.C. § 53(b).

## PLAINTIFFS

6.      The FTC is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41-58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce. The FTC also enforces the FDCPA, 15 U.S.C. §§ 1692-1692p, which prohibits deceptive, abusive, and unfair debt collection practices.

7.      The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and the FDCPA, and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies. 15 U.S.C. §§ 53(b) and 1692*l*(a). Section 814 of the FDCPA further authorizes the FTC to use all of the functions and powers under the FTC Act to enforce compliance by any person with the FDCPA. 15 U.S.C. § 1692*l*.

8.      The State of Illinois is one of the fifty sovereign states of the United States. Lisa Madigan is the duly elected and qualified Attorney General acting for Plaintiff State of Illinois, and brings this action in her official capacity for and on behalf of the People of the State of

Illinois, pursuant to the provisions of the Consumer Fraud Act, 815 ILCS 505/1 *et seq.*, and her common law authority as Attorney General to represent the People of the State of Illinois.

## DEFENDANTS

9.     Defendant Stark Law, LLC ("Stark Law"), is an Illinois limited liability company with its registered address at 7545 Irvine Center Drive, Irvine Business Center, Suite 200, Irvine, California 92618, and its principal place of business at 500 Quail Ridge Drive, Westmont, Illinois 60559. Stark Law also does business as Stark Recovery. Stark Law transacts or has transacted business in this district and throughout the United States.

10.     Defendant Stark Legal, LLC ("Stark Legal"), is an Illinois limited liability company with its registered address at 7545 Irvine Center Drive, Irvine Business Center, Suite 200, Irvine, California 92618, and its principal place of business at 500 Quail Ridge Drive, Westmont, Illinois 60559. Stark Legal transacts or has transacted business in this district and throughout the United States.

11.     Defendant Ashton Asset Management, Inc. ("Ashton"), is an Illinois corporation with its registered address and principal place of business at 500 Quail Ridge Drive, Westmont, Illinois 60559. Ashton transacts or has transacted business in this district and throughout the United States.

12.     Defendant CHM Capital Group, LLC ("CHM Capital"), is an Illinois limited liability company that was involuntarily dissolved on October 9, 2015. Its registered address is at 208 South LaSalle Street, Suite 814, Chicago, Illinois 60604, and its principal place of business is at 500 Quail Ridge Drive, Westmont, Illinois 60559. CHM Capital also does business as Capital Harris Miller & Associates. CHM Capital transacts or has transacted business in this district and throughout the United States.

4

13.     Defendant HKM Funding, Ltd. ("HKM Funding"), is an Illinois corporation that was involuntarily dissolved on May 9, 2014.  Its registered address is at 215 Remington Boulevard, Unit E, Bolingbrook, Illinois 60440, and its principal place of business is at 500 Quail Ridge Drive, Westmont, Illinois 60559.  HKM Funding is or was a manager of CHM Capital.  HKM Funding transacts or has transacted business in this district and throughout the United States.

14.     Defendant Pacific Capital Holdings, Inc. ("Pacific Capital Holdings"), is an Illinois corporation, formerly known as Charles Hunter Miller & Associates, Inc., with its registered address at 208 South LaSalle Street, Suite 814, Chicago, Illinois 60604, and its principal place of business at 500 Quail Ridge Drive, Westmont, Illinois 60559.  Pacific Capital Holdings also does business as Pacific Capital.  Pacific Capital Holdings transacts or has transacted business in this district and throughout the United States.

15.     Defendant Hirsh Mohindra is or has been an owner, officer, director, member, and/or manager of Defendants Stark Legal, Ashton, CHM Capital, HKM Funding, and Pacific Capital Holdings, and also does business as Ashton Lending, LLC, a fictitious entity.  At times material to this Complaint, acting alone or in concert with others, Defendant Hirsh Mohindra has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  Among other things, Defendant Hirsh Mohindra has controlled Defendants' finances and business operations, met with employees, signed corporate papers, and regularly has been present at the business premises.  Defendant Hirsh Mohindra resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

16. Defendant Gaurav Mohindra is or has been an owner, member, and/or managing member of Defendants Stark Law and Stark Legal. At all times material to this Complaint, acting alone or in concert with others, Defendant Gaurav Mohindra has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Among other things, Defendant Gaurav Mohindra has controlled Defendants' finances and business operations, met with and hired employees, signed corporate papers, responded to consumer complaints and law enforcement inquiries, and regularly has been present at the business premises. Defendant Gaurav Mohindra resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

17. Defendant Preetesh Patel is or has been an owner and/or manager of Ashton, CHM Capital, HKM Funding, and Pacific Capital Holdings. At all times material to this Complaint, acting alone or in concert with others, Defendant Preetesh Patel has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Among other things, Defendant Preetesh Patel has made decisions regarding Defendants' business operations, met with and managed employees, and regularly has been present at the business premises. Defendant Preetesh Patel resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

## COMMON ENTERPRISE

18. Defendants Stark Law, Stark Legal, Ashton, CHM Capital, HKM Funding, and Pacific Capital Holdings (collectively, "Corporate Defendants") have operated as a common enterprise while engaging in the deceptive and unlawful acts and practices and other violations of

6

law alleged below. Defendants have conducted the business practices described below through an interrelated network of companies that have common ownership, officers, managers, business functions, and employees, a common office location, and that commingled funds. Because these Corporate Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged below. Defendants Hirsh Mohindra, Gaurav Mohindra, and Preetesh Patel have formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Corporate Defendants that constitute the common enterprise.

## COMMERCE

19.     At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS ACTIVITIES

20.     Since at least 2011, and continuing thereafter, Defendants have engaged in a nationwide scheme to defraud consumers through the collection of payday loan debts that the consumers do not actually owe or that Defendants do not have the authority to collect. Defendants have contacted consumers by telephone and made a series of misrepresentations and threats to convince consumers to pay the alleged debts.

21.     Beginning in or about February 2015, Defendants began conducting their scheme to defraud consumers through and using the name Stark Law. Through Defendants' use of the name Stark Law, consumers have believed that the consumers' alleged debts have been referred to a law firm or an attorney for collection.

### Collection of Debts that Consumers Do Not Actually Owe to Defendants

22.    In conducting their scheme, Defendants have contacted consumers who have previously received payday loans, or who at least have inquired about or applied for a payday loan. In many instances, these consumers inquired about, applied for, or received their payday loans from online lenders.

23.    Defendants have called consumers and informed them that they are delinquent on a payday loan or other debt. In numerous such instances, however, consumers are not delinquent on a payday loan or other debt as represented by Defendants. Many of the consumers that Defendants have called either never received payday loans at all or they previously repaid any payday loans in full.

24.    Defendants have claimed to have authority to collect the debts, either on behalf of consumers' lenders or because Defendants purchased or were assigned the debts. In numerous instances, however, Defendants did not have authority to collect the consumers' debts, either on behalf of consumers' lenders or because Defendants purportedly purchased or were assigned the debts.

25.    Defendants often have identified the name of a lender to whom consumers purportedly owe the alleged debt. In numerous instances, however, the identified lender is not owed any money by the consumer and, in many cases, never provided the consumer with a loan.

26.    When Defendants have contacted consumers, they often possess, or claim to possess, extensive personal information about the consumers, such as their Social Security numbers, financial account information, addresses, and employment information. Defendants have used this information to convince consumers that they are a legitimate debt collector and that the consumers must immediately pay the allegedly delinquent debt.

**False Threats of Litigation**

27.     Defendants often have represented in their collection calls that the consumer owes a specified sum of money, which allegedly represents the delinquent amount due on the original loan, and they have demanded that the consumer immediately pay Defendants that amount. Defendants have threatened to sue or to initiate legal proceedings against consumers who do not pay Defendants the specified sum of money immediately.  In numerous instances, Defendants have claimed that they will seek a judgment for the specified sum plus $2,000 or more for attorneys' fees and court costs.  In truth, however, Defendants have no intention of taking, have no standing or authority to take, and do not take, legal action against these consumers.

28.     In numerous instances while operating as Stark Law, Defendants have represented to consumers that an attorney has been assigned to the consumer's file, and that the attorney has the authority to initiate, or has already initiated, a lawsuit relating to the alleged debt.  When consumers talk to the attorneys assigned to their files, those individuals often have used their status as attorneys to convince consumers that Defendants' threat of legal action is real.  In numerous instances, however, the attorneys who work for Stark Law have no authority to, do not intend to, and do not initiate lawsuits against consumers who do not pay Defendants the alleged debts.

**False Threats of Criminal Repercussions for Failing to Pay the Debt**

29.     In numerous instances, Defendants have threatened that consumers will be, or already have been, "charged" with "defrauding a financial institution" and "passing a bad check" for failing to pay the alleged debt.  Many consumers have reasonably interpreted Defendants' threat to mean that they have committed a crime.  In truth, however, consumers have not been,

nor will be, "charged" with "defrauding a financial institution" and "passing a bad check." Defendants have no authority to, do not intend to, and do not "charge" consumers with such acts.

30.     In numerous instances, Defendants also have threatened that consumers will face arrest and/or imprisonment if they fail to pay Defendants the alleged debt. In truth, however, consumers will not face arrest or imprisonment if they fail to pay Defendants. Defendants cannot have consumers arrested or imprisoned for non-payment of a private debt.

### Improper and Harassing Phone Calls

31.     In many instances, Defendants have repeatedly called consumers even after they have been told to stop, or after Defendants became aware that it is inconvenient for the consumers to receive such calls.

32.     In numerous instances, Defendants have repeatedly called consumers' places of employment, even though they knew, or should have known, that such calls are prohibited by consumers' employers.

33.     In numerous instances, Defendants have called consumers multiple times per day and with such frequency over an extended period of time as to constitute harassment of the consumers or members of their families. For example, Defendants frequently have: (a) called consumers multiple times during the same day and over several days and weeks; (b) called consumers again despite having already spoken to the consumer earlier that day; and (c) called consumers' family members and left multiple voicemail messages in the same day.

34.     In numerous instances, Defendants require the non-attorney debt collector callers to conceal their identity and instead use aliases when calling consumers. Such a practice prevents consumers from identifying the individuals responsible for the aforementioned harassing calls.

10

35.     In numerous instances, Defendants have called third parties associated with consumers, such as consumers' relatives, friends, and employers, for the alleged purpose of obtaining location information about the consumers.  In numerous of those instances, however, Defendants have already possessed consumers' location information, and their calls were intended only to harass the parties called.  During the calls, Defendants often have disclosed to the third parties that the consumer owes an alleged debt.  In numerous instances, Defendants also have called third parties multiple times, purportedly to acquire location information.

36.     In some instances, Defendants have attempted to collect the consumer's alleged debt from third parties associated with consumers, such as consumers' relatives.  Defendants also often have represented to those third parties that the consumer faces arrest or imprisonment for failing to pay the alleged debt.

37.     In numerous instances, Defendants have made the calls to third parties described above before Defendants have contacted the consumer directly to collect the alleged debt.  Defendants often call the third parties first in order to harass, embarrass, and disgrace the consumer into paying the alleged debt.

38.     In numerous instances, Defendants have called consumers to collect an alleged debt when Defendants knew the consumer is represented by an attorney with respect to that consumer's debt, and Defendants knew or could have readily found the attorney's name and address.

### Failure to Provide Statutorily Required Notices

39.     In numerous instances, Defendants have failed to provide consumers, either in the initial communication with consumers or in writing within five days after the initial communication, a notice containing:  (a) the amount of the debt; (b) the name of the creditor to

whom the debt is owed; (c) a statement that unless the consumer disputes the debt, the debt will be assumed valid; and (d) a statement that if the consumer disputes the debt in writing, Defendants will obtain verification of the debt.

### Failure to Register with the State of Illinois as a Debt Collector

40.     Defendants Stark Law, Stark Legal, Ashton, CHM Capital, HKM Funding, Pacific Capital Holdings, Hirsh Mohindra, and Preetesh Patel (hereinafter collectively referred to as the "ICAA Defendants") were required to register and become licensed under the Illinois Collection Agency Act, 225 ILCS 425/1 *et seq.*, in order to lawfully engage in the collection of debt.  The ICAA Defendants are not a licensed collection agency, and are therefore not authorized to engage in the collection of debt pursuant to the Illinois Collection Agency Act.

### Consumer Harm

41.     Many consumers have paid the alleged debts because they have been afraid of the threatened repercussions of failing to pay, because they have believed Defendants are legitimate and are collecting real delinquent debt, or because they have wanted the harassment to stop. Generally, consumers have paid Defendants using a credit or debit card.

42.     Since at least 2012, using the abusive and deceptive tactics described above, Defendants have collected and processed millions of dollars in payments for alleged debts that consumers do not owe or that Defendants have no authority to collect.

### Defendants' Marketing and Sale of Counterfeit Debt Portfolios

43.     In numerous instances, Defendants have marketed, distributed, and sold counterfeit debt portfolios that purport to identify consumers who have defaulted on payday loans of third-party payday lenders.

44. The counterfeit debt portfolios list consumer names and contact information along with Social Security numbers and financial account information. For each consumer identified, the portfolios provide detailed information about the purported payday loans, such as alleged original loan amounts, loan dates, repayment histories, and unpaid balances.

45. These debt portfolios are counterfeit because they list loans that the lenders have not, in fact, made to the identified consumers. Furthermore, Defendants have not purchased, or otherwise obtained, any rights to collect legitimate loan debts from those lenders, nor have they engaged in any transaction that authorizes them to collect, sell, distribute, or transfer any valid loans serviced by such lenders.

46. Defendants knew or should have known that it was likely that the portfolios would be given to debt collectors who would contact the listed consumers to demand payment on the purported debts.

47. Using information in debt portfolios marketed, distributed, and sold by Defendants, in numerous instances, debt collectors have contacted these consumers, demanded payment, and successfully induced consumers to pay the purported debts.

48. Consumers cannot reasonably avoid this harm. From the counterfeit portfolios, debt collectors obtain consumers' private personal information and sensitive financial information, including Social Security numbers, bank account numbers, and names of references. Debt collectors recite such information to convince consumers that the purported loan is legitimate despite the consumers having no possible record or recollection of the loan or lender. Given this detailed information, some consumers made payments on the purported debt.

13

49.    Other consumers paid the purported debts to stop the debt collection calls, or because they were afraid of the repercussions of debt collectors reporting that they were delinquent in repaying a loan.

50.    Defendants knew or should have known that they were not authorized to act as agents of the payday lenders identified in the debt portfolios, and that they did not have authority to market those lenders' debts.

51.    Defendants knew or should have known that the debt portfolios listed debts that consumers did not owe.

52.    In numerous instances, Defendants have profited from the sale of the counterfeit debt portfolios.

## VIOLATIONS OF THE FTC ACT

53.    Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

54.    Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.  15 U.S.C. § 45(a).

55.    Acts or practices are unfair under Section 5 of the FTC Act if they cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.  15 U.S.C. § 45(n).

### Count One by Plaintiff FTC

*False or Unsubstantiated Representations*

56.    In numerous instances, in connection with the collection of alleged debts, Defendants have represented, directly or indirectly, expressly or by implication, that:

14

    A.     The consumer is delinquent on a payday loan or other debt that Defendants have the authority to collect;

    B.     The consumer has a legal obligation to pay Defendants;

    C.     The consumer has been, or will be, "charged" with "defrauding a financial institution" and "passing a bad check;"

    D.     The consumer will be arrested or imprisoned for failing to pay Defendants; and

    E.     Defendants will take formal legal action against a consumer who fails to pay, such as filing suit.

57.     In truth and in fact, in numerous instances in which Defendants have made the representations set forth in Paragraph 56 of this Complaint, the representations have been false or have not been substantiated at the time the representations were made.

58.     Therefore, Defendants' representations as set forth in Paragraph 56 of this Complaint are false or misleading, and constitute deceptive acts and practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## Count Two by Plaintiff FTC

### *Means and Instrumentalities to Mislead*

59.     In numerous instances, in connection with their marketing, distribution, and sale of purported payday loan debt portfolios, Defendants have represented, directly or indirectly, expressly or by implication, that consumers listed in those portfolios owe unpaid payday loan debts, and that those who obtain the portfolios through Defendants have the right to collect debts listed in the portfolios.

60.     In fact, the consumers listed in those portfolios that Defendants have marketed, distributed, and sold did not owe the purported debts, and collectors that obtained those portfolios did not have the right to collect those purported debts.

61.     By making the representations in Paragraph 59, Defendants placed in the hands of debt collectors the means and instrumentalities by and through which they may mislead consumers regarding their debt obligations.

62.     Therefore, Defendants' representations, as set forth in Paragraph 59 of this Complaint are false or misleading, and constitute deceptive acts and practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### Count Three by Plaintiff FTC

#### *Distribution of Counterfeit Debt Portfolios for Collection*

63.     In numerous instances, Defendants' actions in distributing and selling counterfeit debt portfolios, as described in Paragraphs 43 through 46, have caused or are likely to have caused substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.

64.     Therefore, Defendants' actions, as described above, constitute unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. §§ 45(a) and (n).

### VIOLATIONS OF THE FDCPA

65.     In 1977, Congress passed the FDCPA, 15 U.S.C. §§ 1692-1692p, which became effective on March 20, 1978, and has been in force since that date. Section 814 of the FDCPA, 15 U.S.C. § 1692l, provides that a violation of the FDCPA shall be deemed an unfair or deceptive act or practice in violation of the FTC Act.

16

66.     Defendants Stark Law, Stark Legal, Ashton, CHM Capital, HKM Funding, and Pacific Capital Holdings (hereinafter collectively referred to as the "FDCPA Defendants") are "debt collectors" as defined by Section 803(6) of the FDCPA, 15 U.S.C. § 1692a(6).

67.     A "consumer," as defined in Section 803(3) of the FDCPA, 15 U.S.C. § 1692a(3), "means any natural person obligated or allegedly obligated to pay any debt."

68.     A "debt," as defined in Section 803(5) of the FDCPA, 15 U.S.C. § 1692a(5), "means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

69.     The term "location information," as defined in Section 803(7) of the FDCPA, 15 U.S.C. § 1692a(7), means "a consumer's place of abode and his telephone number at such place, or his place of employment."

### Count Four by Plaintiff FTC

*Prohibited Communications with Third Parties to Acquire Location Information*

70.     In numerous instances, in connection with the collection of debts, FDCPA Defendants have communicated with persons other than the consumer for the purpose of acquiring location information about the consumer and engaged in conduct prohibited by Section 804 of the FDCPA, 15 U.S.C. § 1692b, including, but not limited to, by:

A.     Stating that such consumer owes a debt, in violation of Section 804(2) of the FDCPA, 15 U.S.C. § 1692b(2); and

B.     Communicating with any such person more than once, in violation of Section 804(3) of the FDCPA, 15 U.S.C. § 1692b(3).

17

### Count Five by Plaintiff FTC

#### *Prohibited Communications with Consumers Generally*

71.     In numerous instances, in connection with the collection of debts, without having

obtained directly the prior consent of the consumer or the express permission of a court of

competent jurisdiction, FDCPA Defendants have communicated with consumers (a) when

FDCPA Defendants knew the consumer is represented by an attorney with respect to such debt

and had knowledge of, or could have readily ascertained, such attorney's name and address; or

(b) at consumers' places of employment when FDCPA Defendants knew, or had reason to know,

that consumers' employers prohibited consumers from receiving such communications, in

violation of Section 805(a) of the FDCPA, 15 U.S.C. § 1692c(a).

### Count Six by Plaintiff FTC

#### *Prohibited Communications with Third Parties*

72.     In numerous instances, in connection with the collection of debts, FDCPA

Defendants have communicated with persons other than the consumer, the consumer's attorney,

a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the

creditor, the attorney of the debt collector, the consumer's spouse, parent (if the consumer is a

minor), guardian, executor, or administrator for purposes other than acquiring location

information about a consumer, without having obtained directly the prior consent of the

consumer or the express permission of a court of competent jurisdiction, and when not

reasonably necessary to effectuate a postjudgment judicial remedy, in violation of Section 805(b)

of the FDCPA, 15 U.S.C. § 1692c(b).

### Count Seven by Plaintiff FTC

#### *Harassing and Abusive Conduct*

73.     In numerous instances, in connection with the collection of debts, FDCPA

Defendants have engaged in conduct the natural consequence of which is to harass, oppress, or

abuse the consumer, in violation of Section 806 of the FDCPA, 15 U.S.C. § 1692d, including,

but not limited to, by causing a telephone to ring or engaging a person in telephone conversation

repeatedly or continuously with intent to annoy, abuse, or harass a person at the called number,

in violation of Section 806(5) of the FDCPA, 15 U.S.C. § 1692d(5).

### Count Eight by Plaintiff FTC

#### *False, Deceptive, or Misleading Representations to Consumers*

74.     In numerous instances, in connection with the collection of debts, FDCPA

Defendants have used false, deceptive, or misleading representations or means, in violation of

Section 807 of the FDCPA, 15 U.S.C. § 1692e, including, but not limited to:

A.     Falsely representing the character, amount, or legal status of any debt, in

violation of Section 807(2)(A) of the FDCPA, 15 U.S.C. § 1692e(2)(A);

B.     Falsely representing or implying that nonpayment of any debt will result

in the arrest or imprisonment of any person when such action is not lawful, in violation of

Section 807(4) of the FDCPA, 15 U.S.C. § 1692e(4);

C.     Threatening to take an action that is not lawful or that FDCPA Defendants

do not intend to take for failure to pay a private debt, such as the taking of formal legal

action against a consumer, in violation of Section 807(5) of the FDCPA, 15 U.S.C. §

1692e(5); and

19

D.    Falsely representing or implying that a consumer committed a crime or other conduct, in violation of Section 807(10) of the FDCPA, 15 U.S.C. § 1692e(10).

### Count Nine by Plaintiff FTC

#### *Failure to Provide a Validation Notice*

75.    In numerous instances, in connection with the collection of debts, FDCPA Defendants have failed to provide consumers, either in the initial communication with a consumer or in a written notice sent within five days after the initial communication, with statutorily-required information about the debt and the right to dispute the debt, in violation of Section 809(a) of the FDCPA, 15 U.S.C. § 1692g(a).

### VIOLATIONS OF ILLINOIS STATE LAWS

76.    The Illinois Attorney General believes this action to be in the public interest and brings this lawsuit pursuant to Section 7 of the Illinois Consumer Fraud Act.

77.    Section 2 of the Illinois Consumer Fraud Act, 815 ILCS 505/2, prohibits unfair or deceptive acts or practices.

78.    Misrepresentations or the deceptive omissions of a material fact, with the intent that consumers rely, constitute unlawful acts or practices within the meaning of Section 2 of the Illinois Consumer Fraud Act.

### Count Ten by Plaintiff State of Illinois

#### *Illinois Consumer Fraud Act Violations*

79.    Plaintiff State of Illinois re-alleges and incorporates by reference, each and every allegation in the foregoing paragraphs of this Complaint.

80.     While engaged in trade or commerce, Defendants have committed unfair and/or deceptive acts or practices declared unlawful under Section 2 of the Illinois Consumer Fraud Act, 815 ILCS 505/2, by:

A.     Falsely claiming that consumers owed debts with intent that consumers rely on these misrepresentations when, in truth and in fact, consumers did not owe the debts claimed;

B.     Collecting falsely claimed debts from consumers;

C.     Failing to refund falsely claimed debts unlawfully collected from consumers;

D.     Using licensed attorneys to falsely represent that Defendants have filed or will file lawsuits against consumers;

E.     Misrepresenting the true identity of non-attorney debt collector callers to consumers with intent that consumers rely on these misrepresentations, instead requiring such callers to use aliases;

F.     Falsely representing that Defendants are a law firm when, in truth and in fact, Defendants are a debt collector; and

G.     Distributing and selling counterfeit debt portfolios in trade or commerce, as described in Paragraphs 43 through 46, constitutes an unfair practice that violates public policy, has foreseeable and unlawful consequences that are so oppressive as to leave consumers with little alternative except to submit to them and injures or threatens injury to consumers.

### Count Eleven by Plaintiff State of Illinois

*Illinois Collection Agency Act Violations*
*(Against the ICAA Defendants)*

81.     Plaintiff State of Illinois re-alleges and incorporates by reference, each and every allegation in the foregoing paragraphs of this Complaint.

82.     The ICAA Defendants are not a licensed collection agency, in that in the ordinary course of business the ICAA Defendants engage in the collection of debt in Illinois, as defined in Section 2 of the Illinois Collection Agency Act, 225 ILCS 425/2.

83.     The ICAA Defendants violated Section 4 of the Illinois Collection Agency Act, 225 ILCS 425/4, by acting as a collection agency without being licensed;

84.     The ICAA Defendants violated Section 9(a) of the Illinois Collection Agency Act, 225 ILCS 425/9(a), by:

A.     Threatening to instigate arrest or criminal prosecution where no basis for a criminal complaint lawfully exists, in violation of 225 ILCS 425/9(a)(15);

B.     Initiating or threatening to initiate communication with a debtor's employer before timely written notice has been given to the debtor of the ICAA Defendants' intention to communicate with the debtor's employer, in violation of 225 ILCS 425/9(a)(18);

C.     Communicating with the debtor or any member of the debtor's family at such a time of day or night and with such frequency as to constitute harassment of the debtor or any member of the debtor's family, in violation of 225 ILCS 425/9(a)(19);

D.     Disclosing or threatening to disclose information relating to a debtor's debt to any other person except where such other person has a legitimate business need

22

for the information or except where such disclosure is permitted by law, in violation of

225 ILCS 425/9(a)(21);

      E.      Disclosing or threatening to disclose information concerning the existence

of a debt which the collection agency knows to be reasonably disputed by the debtor

without disclosing the fact that the debtor disputes the debt, in violation of 225 ILCS

425/9(a)(22);

      F.      Attempting or threatening to enforce a right or remedy with knowledge or

reason to know that the right or remedy does not exist, in violation of 225 ILCS

425/9(a)(24);

      G.      Engaging in dishonorable, unethical, or unprofessional conduct of a

character likely to deceive, defraud or harm the public, in violation of 225 ILCS

425/9(a)(35).

## CONSUMER INJURY

85.      Consumers have suffered and will continue to suffer substantial injury as a result

of Defendants' violations of the FTC Act, the FDCPA, and the laws of the State of Illinois.  In

addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices.

Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers,

reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

86.      Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and Section 814(a) of the

FDCPA, 15 U.S.C. § 1692*l*(a), empower this Court to grant injunctive and such other relief as

the Court may deem appropriate to halt and redress violations of any provision of law enforced

by the FTC.  The Court, in the exercise of its equitable jurisdiction, may award ancillary relief,

23

including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

87.     Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction to allow Plaintiff State of Illinois to enforce its state law claims against Defendants in this Court for violations of the Illinois Consumer Fraud Act and the Illinois Collection Agency Act. Section 9.7 of the Illinois Collection Agency Act, 225 ILCS 425/9.7, with certain limited exceptions not applicable here, provides for enforcement by the Illinois Attorney General of knowing violations of Section 9 of the Illinois Collection Agency Act as unlawful practices under the Consumer Fraud Act. *See* 225 ILCS 425/9.7. Section 7 of the Illinois Consumer Fraud Act authorizes this Court to grant relief, including but not limited to injunctive relief, civil penalties, restitution, costs, and such other relief the Court deems appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff FTC, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and Section 814(a) of the FDCPA, 15 U.S.C. § 1692*l*(a), and Plaintiff State of Illinois, pursuant to 815 ILCS 505/7, and pursuant to the Court's supplemental jurisdiction, 28 U.S.C. § 1367, and the Court's own equitable powers, requests that the Court:

A.     Award Plaintiffs such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including, but not limited to, temporary and preliminary injunctions, an order freezing assets, immediate access, and the appointment of a receiver;

24

    B.       Enter judgment against Defendants and in favor of Plaintiffs for each violation alleged in this complaint;

    C.       Enter a permanent injunction to prevent future violations by Defendants of the FTC Act, the FDCPA, and the Illinois Consumer Fraud Act, 815 ILCS 505/1;

    D.       Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act, the FDCPA, and the Illinois Consumer Fraud Act, 815 ILCS 505/7, including, but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies;

    E.       Require Defendants to pay a civil penalty in the amount of $50,000 for each violation of the Illinois Consumer Fraud Act and an additional penalty of $50,000 for each violation the Court finds that Defendants committed with the intent to defraud, pursuant to 815 ILCS 505/7(b);

    F.       Require Defendants to pay an additional civil penalty of $10,000 for each violation of the Illinois Consumer Fraud Act found to have been committed against a senior citizen, pursuant to 815 ILCS 505/7(c); and

    G.       Award Plaintiffs the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

//

//

//

//

//

25

Dated: March 21, 2016

Respectfully submitted,

**FOR PLAINTIFF**
**FEDERAL TRADE COMMISSION**

DAVID C. SHONKA
Acting General Counsel

_William J. Hodor_

WILLIAM J. HODOR
JOHN C. HALLERUD
Federal Trade Commission
Midwest Region
55 West Monroe Street, Suite 1825
Chicago, Illinois 60603
(312) 960-5634 [telephone]
(312) 960-5600 [facsimile]
whodor@ftc.gov [e-mail, Hodor]
jhallerud@ft.gov [e-mail, Hallerud]

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

**FOR PLAINTIFF**
**STATE OF ILLINOIS**

LISA MADIGAN
Attorney General

_Erin Grotheer_

ERIN GROTHEER
KIMBERLY SLIDER
THOMAS P. JAMES
Office of the Illinois Attorney General
100 West Randolph Street
Chicago, Illinois 60601
(312) 814-8966 [telephone]
(312) 814-2593 [facsimile]
egrotheer@atg.state.il.us [e-mail, Grotheer]
kslider@atg.state.il.us [e-mail, Slider]
tjames@atg.state.il.us [e-mail, James]

Attorneys for Plaintiff
STATE OF ILLINOIS