# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION



**FILED**

MAR 21 2016

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| FEDERAL TRADE COMMISSION, and | ) |
| | ) |
| STATE OF ILLINOIS, | ) |
| | ) |
| Plaintiffs, | ) Case No. |
| | ` |
| v. | |
| | **1:16-cv-3463** |
| STARK LAW, LLC, an Illinois limited liability | **Judge Rebecca R. Pallmeyer** |
| company, also doing business as STARK | **Magistrate Judge Sheila M. Finnegan** |
| RECOVERY, *et al.*, | |
| | ) |
| Defendants. | ) |
| | ) |

**EXHIBITS SUPPORTING PLAINTIFFS' *EX PARTE* MOTION FOR A
TEMPORARY RESTRAINING ORDER WITH ASSET FREEZE, APPOINTMENT
OF A RECEIVER, OTHER EQUITABLE RELIEF, AND ORDER TO SHOW
CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

**VOLUME I OF II**

Dated: March 21, 2016

Presented by:

WILLIAM J. HODOR
JOHN C. HALLERUD
Federal Trade Commission, Midwest Region
55 West Monroe Street, Suite 1825
Chicago, Illinois 60603
Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

ERIN GROTHEER
KIMBERLY SLIDER
THOMAS P. JAMES
Office of the Illinois Attorney General
100 West Randolph Street
Chicago, Illinois 60601
Attorneys for Plaintiff
STATE OF ILLINOIS

## **VOLUME I OF II**

### **LAW ENFORCEMENT DECLARATIONS**

Declaration of Roberto C. Menjivar ............................................................................PX 1
Investigator, Federal Trade Commission

Declaration of Michael B. Goldstein ...........................................................................PX 2
Investigator, Federal Trade Commission

Declaration of Sergeant Stephen Thompson ...............................................................PX 3
Sergeant, Village of Westmont Police Department

## **VOLUME II OF II**

### **STATE OFFICIAL DECLARATIONS**

Declaration of Donna Aidich.......................................................................................PX 4
Office Coordinator, Illinois Department of Financial and
Professional Regulations, Licensing and Maintenance Unit

Declaration of Jim Koehl.............................................................................................PX 5
Board Liaison, Illinois Department of Financial and Professional
Regulations, Department of Professional Regulation

### **FORMER EMPLOYEE DECLARATION**

Declaration of Joe H. Prempeh, Esq.............................................................................PX 6

### **BUSINESS OWNER DECLARATION**

Declaration of Pauline Kussart ....................................................................................PX 7
Owner and President, The Stark Collection Agency, Inc.,
Madison, Wisconsin

### **CONSUMER DECLARATIONS**

Declaration of Matthew Barnes....................................................................................PX 8

Declaration of Susan Burns .........................................................................................PX 9

Declaration of Ashley Duncan ....................................................................................PX 10

Declaration of John Gerstner........................................................................................PX 11

Declaration of Donald Gladstein ...................................................................................PX 12

Declaration of Kinyetta Hunter .....................................................................................PX 13

Declaration of Gloria James ..........................................................................................PX 14

Declaration of Minnita Johnson ....................................................................................PX 15

Declaration of Jared Lusher...........................................................................................PX 16

Declaration of Rebecca Oaks ........................................................................................PX 17

Declaration of Joshua Rozman.......................................................................................PX 18

Declaration of Gordon Scherck, III ...............................................................................PX 19

Declaration of Holly Turner ..........................................................................................PX 20

# PX    1

## DECLARATION OF ROBERTO C. MENJIVAR
## PURSUANT TO 28 U.S.C. § 1746

I, Roberto C. Menjivar, hereby declare as follows:

1.     My name is Roberto C. Menjivar.  I am a United States citizen and over eighteen years of age.  I am employed as an investigator with the Federal Trade Commission ("FTC" or "Commission"), a position that I have held for over 12 years.  My office address is 55 West Monroe Street, Suite 1825, Chicago, Illinois 60603.  I have personal knowledge of the facts stated in this declaration, and if called as a witness, I would testify to the same.

2.     As an FTC investigator, my duties include monitoring and investigating parties who are suspected of engaging in deceptive or unfair acts or practices in violation of Section 5(a) of the Federal Trade Commission Act (FTC Act), and other laws or rules enforced by the FTC, including the Fair Debt Collection Practices Act (FDCPA).  As part of those duties, I gather information and review documents, financial records, and other evidence in connection with FTC investigations and federal court litigation.  I am also a custodian of documents and records obtained by the FTC during the course of investigations to which I am assigned.

3.     In the course of my employment, I participated in the FTC's investigation of Stark Law LLC; Stark Recovery; Stark Legal LLC; Ashton Asset Management, Inc.; Ashton Lending LLC; CHM Capital Group, LLC; Capital Harris Miller & Associates; Charles Hunter Miller & Associates Inc.; HKM Funding, Ltd.; Pacific Capital Holdings Inc.; Pacific Capital; Hirsh Mohindra; Gaurav Mohindra; and Preetesh Patel.  Throughout this declaration, I collectively refer to these parties as "Defendants."

4.     The State of Illinois, Office of the Attorney General (Illinois AG) is a co-plaintiff in this action and participated in the investigation of Defendants.  As part of its investigation, the Illinois AG issued subpoenas to parties having information relevant to the investigation.  In

response to the subpoenas, the parties produced documents and records to the Illinois AG. The Illinois AG provided copies of the documents and records it received from the parties to the FTC. I and other FTC staff have reviewed these documents and records.

5.      Throughout this declaration and its attachments, information that would reveal personally identifiable information has been redacted.

## BUSINESS RECORDS

6.      During the course of this investigation, the Illinois AG provided the FTC with business records it obtained from the Illinois Secretary of State, Department of Business Services, Corporation Division. Attached hereto as **Menjivar Attachments A through G** are true and correct copies of the business records for the following entities: (a) Stark Law LLC; (b) Stark Legal LLC; (c) Ashton Asset Management, Inc.; (d) CHM Capital Group, LLC (also doing business as Capital Harris Miller & Associates); (e) Pacific Capital Holdings Inc. (also formerly known as Charles Hunter Miller & Associates Inc.); (f) HKM Funding, Ltd.; and (g) Aura Development, Inc.

### *Stark Law*

7.      Attached hereto as **Menjivar Attachment A** are true and correct copies of the business records for Stark Law LLC. According to the records, Stark Law LLC was organized as an Illinois Limited Liability Company on February 17, 2015. The records listed the principal place of business address for Stark Law LLC as 4 East Ogden Avenue, #109, Westmont, Illinois 60559. The records also listed Ashton Lending LLC at 4 East Ogden Avenue, #109, Westmont, Illinois 60559, as manager.

8.      Pursuant to the Articles of Amendment (Amendment) filed on March 18, 2015, Stark Law LLC added Gaurav Mohindra as a new manager and removed Ashton Lending LLC

2

as a manager. Hirsh Mohindra as manager of Ashton Lending LLC signed the Amendment on March 5, 2015. **Menjivar Att. A, pp. 4-5**.

9.      Pursuant to the Amendment filed on June 10, 2015, Stark Law LLC changed its principal place of business address to 500 Quail Ridge Drive, Westmont, Illinois 60559. Gaurav Mohindra as manager signed the Amendment on June 9, 2015. **Menjivar Att. A, pp. 6-7**.

10.     Pursuant to the Amendment filed on July 20, 2015, Stark Law LLC added Clark Hall and Mitchell LLC as new managers. The records listed the address for Clark Hall and Mitchell LLC as 7545 Irvine Center Drive, Irvine Business Center, Suite 200, Irvine, California 92618. Stark Law LLC removed Gaurav Mohindra as manager, and changed its principal office to 7545 Irvine Center Drive, Irvine Business Center, Suite 200, Irvine, California 92618. Gaurav Mohindra as manager signed the Amendment on July 17, 2015. **Menjivar Att. A, pp. 8-9**.

### *Stark Legal*

11.     Attached hereto as **Menjivar Attachment B** are true and correct copies of the business records for Stark Legal LLC. According to the records, Stark Legal LLC was organized as an Illinois Limited Liability Company on May 28, 2015. The records listed the principal place of business for Stark Legal LLC as 500 Quail Ridge Drive, Westmont, Illinois 60559, and it listed Gaurav Mohindra as the sole member.

12.     Pursuant to the Amendment filed on June 2, 2015, Stark Legal LLC added Hirsh Mohindra at 500 Quail Ridge Drive, Westmont, Illinois 60559 as the sole member, and removed Gaurav Mohindra as a member. Gaurav Mohindra as member signed the Amendment on June 2, 2015. **Menjivar Att. B, pp. 4-5**.

13.     Pursuant to the Amendment filed on July 20, 2015, Stark Legal LLC added Clark Hall and Mitchell LLC as new managers. The Amendment listed the address for Clark Hall and

3

Michell LLC as 7545 Irvine Center Drive, Irvine Business Center, Suite 200, Irvine, California 92618. Stark Legal LLC removed Hirsh Mohindra as manager, and changed its principal office to 7545 Irvine Center Drive, Irvine Business Center, Suite 200, Irvine, California 92618. Hirsh Mohindra as manager signed the Amendment on July 17, 2015. **Menjivar Att. B, pp. 6-7**.

### *Ashton Asset Management*

14.     Attached hereto as **Menjivar Attachment C** are true and correct copies of the business records for Ashton Asset Management, Inc. According to the records, Ashton Asset Management, Inc., was organized as an Illinois Business Corporation on April 3, 2013. The records listed Hirsh Mohindra as the incorporator. The records also listed Ian L. Erdos as the initial registered agent.

15.     Pursuant to the Annual Report filed on May 14, 2014, Ashton Asset Management, Inc., listed Hirsh Mohindra as president and director, and its principal address of corporation as 500 Quail Ridge Drive, Westmont, Illinois 60559. Hirsh Mohindra as president signed the Annual Report on May 14, 2014. **Menjivar Att. C, p. 2**.

16.     Pursuant to the Annual Report filed on May 27, 2015, Ashton Asset Management, Inc., listed Hirsh Mohindra as president, and its principal address of corporation as 500 Quail Ridge Drive, Westmont, Illinois 60559. The records listed Ian L. Erdos as the registered agent. Hirsh Mohindra as president signed the Annual Report on May 22, 2015. **Menjivar Att. C, p. 3**.

### *CHM Capital Group*

17.     Attached hereto as **Menjivar Attachment D** are true and correct copies of the business records for CHM Capital Group, LLC. According to the records, CHM Capital Group, LLC, was organized as an Illinois Limited Liability Company on April 21, 2011. The records listed the principal place of business for CHM Capital Group, LLC, as 2224 West Touhy, Unit

4

1E, Chicago, Illinois 60630.  The records also listed Ian L. Erdos as the registered agent, and

Hirsh Mohindra as manager.  Ian L. Erdos as the Organizer signed the Articles of Organization

on April 21, 2011.

18.     Pursuant to the Amendment filed on March 2, 2012, CHM Capital Group, LLC,

added HKM Funding, Ltd., at 2224 West Touhy, Suite 1E, Chicago, Illinois 60645, as a new

manager.  Hirsh Mohindra as manager signed the Amendment on February 7, 2012.  **Menjivar

Att. D, pp. 5-6**.

19.     Pursuant to an Application to Adopt an Assumed Name filed on April 10, 2012,

CHM Capital Group, LLC, assumed the name of "Capital Harris Miller & Associates."

**Menjivar Att. D, p. 7**.

20.     Pursuant to a Statement of Change of Registered Agent and/or Registered Office

filed on October 27, 2014, CHM Capital Group, LLC, changed its registered agent to Gaurav

Mohindra at 500 Quail Ridge Drive, Westmont, Illinois 60559.   Hirsh Mohindra as president of

HKM Funding, Ltd., signed the Statement of Change on October 24, 2014.  **Menjivar Att. D,

pp. 10-11**.

21.     Pursuant to a Statement of Change of Registered Agent and/or Registered Office

filed on November 26, 2014, CHM Capital Group, LLC, changed its registered agent to National

Registered Agents, Inc.  Hirsh Mohindra as manager of HKM Funding, Ltd., signed the

Statement of Change on November 25, 2014.  **Menjivar Att. D, pp. 12-13**.

22.     On October 9, 2015, the Illinois Secretary of State dissolved CHM Capital Group,

LLC, for failure to file the 2015 annual report.  **Menjivar Att. D, p. 16**.

5

*Pacific Capital Holdings*

23. Attached hereto as **Menjivar Attachment E** are true and correct copies of the business records for Charles Hunter Miller & Associates Inc. According to the records, Charles Hunter Miller & Associates Inc. was organized as an Illinois Business Corporation on April 23, 2012. The records listed HKM Funding, Ltd., at 2224 West Touhy, Chicago, Illinois 60645 as the initial registered agent, and Ian Erdos as the incorporator.

24. Pursuant to the Annual Report filed on April 2, 2013, Charles Hunter Miller & Associates Inc. listed Hirsh Mohindra as president, secretary, and director. **Menjivar Att. E, p. 2**.

25. Pursuant to the Application to Adopt, Change or Cancel an Assumed Corporate Name filed on February 11, 2015, Charles Hunter Miller & Associates Inc. assumed the corporate name Pacific Capital. Hirsh Mohindra as president signed the Application on February 10, 2015. **Menjivar Att. E, p. 12**.

26. Pursuant to the Amendment filed on February 11, 2015, Charles Hunter Miller & Associates Inc. changed its corporate name to Pacific Capital Holdings Inc. Hirsh Mohindra as president signed the Amendment on February 10, 2015. **Menjivar Att. E, pp. 9-11**.

27. Pursuant to the Annual Report filed on April 14, 2015, Pacific Capital Holdings Inc. listed its principal address of corporation as 500 Quail Ridge Drive, Westmont, Illinois 60559, and Hirsh Mohindra as the president and secretary. **Menjivar Att. E, p. 15**.

*HKM Funding*

28. Attached hereto as **Menjivar Attachment F** are true and correct copies of the business records for HKM Funding, Ltd. According to the records, HKM Funding, Ltd., was

organized as an Illinois Business Corporation on December 13, 2011. The records listed Ian L. Erdos as the incorporator and initial registered agent.

29. Pursuant to the Annual Report filed on April 3, 2013, HKM Funding, Ltd., listed Hirsh Mohindra as the president, secretary, and director. **Menjivar Att. F, p. 4**.

30. On May 9, 2014, the Illinois Secretary of State dissolved HKM Funding, Ltd., for failure to file an annual report and pay an annual franchise tax. **Menjivar Att. F, p. 7**.

*Aura Development*

31. Attached hereto as **Menjivar Attachment G** are true and correct copies of the business records for Aura Development, Inc. According to the records, Aura Development, Inc., was organized as an Illinois Business Corporation on March 5, 2008. The records listed Hirsh Mohindra as the initial registered agent, and Ian L. Erdos as the incorporator.

32. Pursuant to the Annual Reports filed on May 19, 2009, March 25, 2010, July 26, 2011, and April 5, 2012, Aura Development, Inc., listed its principal address of corporation as 121 Ashton Drive, Burr Ridge, Illinois 60527, and Hirsh Mohindra as the president, secretary, and director. **Menjivar Att. G, pp. 2, 5, 6, and 8**.

33. Pursuant to the Annual Reports filed on April 2, 2013 and May 27, 2014, Aura Development, Inc., listed its principal address of corporation as 500 Quail Ridge Drive, Westmont, Illinois 60559, and Hirsh Mohindra as the president, secretary, and director. **Menjivar Att. G, pp. 9 and 12**.

34. Pursuant to the Statement of Change of Registered Agent and/or Registered Office filed on May 27, 2014, Aura Development, Inc., changed its registered agent and office to Gaurav Mohindra at 500 Quail Ridge Drive, Westmont, Illinois 60559. The Statement of Change listed Hirsh Mohindra as president of Aura Development, Inc. **Menjivar Att. G, p. 13**.

7

## BANK RECORDS

### Bank of America

35.     The Illinois AG provided the FTC with documents and records it received from Bank of America pursuant to a subpoena it issued in connection with its investigation of Defendants.  Some of the documents Bank of America produced were signature cards and account statements for accounts related to the following Defendants: (a) Ashton Asset Management Inc.; (b) CHM Capital Group, LLC; (c) Pacific Capital Holdings Inc; and (d) Stark Law LLC.

### *Ashton Asset Management Account ending in 6657*

36.     Attached hereto as **Menjivar Attachment H** are true and correct copies of the signature card and related documents for the Bank of America account ending in 6657 in the name of Ashton Asset Management Inc. (Ashton Asset Management).  These documents list the authorized signers and titles on the account as Hirsh Mohindra, President, and Gaurav Mohindra, Vice President.  The account was opened on February 23, 2015.

37.     Bank of America provided monthly account statements for the period February 23, 2015 to July 31, 2015 for the Ashton Asset Management account ending in 6657.  Among other things, the monthly statements show that, during this period, the account received deposits and other credits for a total of approximately $5,891,601.89.  According to the monthly statements, on February 23, 2015, the account received a "counter credit" or deposit for $100.

38.     Among other things, the monthly statements for the Ashton Asset Management account ending in 6657 show the following transactions:

      a.   On June 5, 2015, the account received one transfer for $7,500 from an account ending in 6644;

<div align="center">8</div>

b. From March 18, 2015 to July 30, 2015, the account made six transfers for a total of approximately $113,500 to an account ending in 6644;

c. From March 23, 2015 to June 2, 2015, the account received 12 transfers for a total of approximately $2,057,200 from an account ending in 3796;

d. From March 20, 2015 to July 28, 2015, the account made 20 transfers for a total of approximately $1,037,953.88 to an account ending in 3796; and

e. On April 23, 2015, the account made one transfer for $1,600,000 to an account ending in 0226.

39.     As described in the paragraphs 42 and 53, Bank of America produced bank records for an account ending in 3796 in the name of CHM Capital Group LLC, and an account ending in 6644 in the name of Stark Law LLC. As described in paragraph 60, Chase Bank produced bank records for an account ending in 0226 in the name of Aura Development Inc.

40.     Bank of America provided certain deposit images and items for the Ashton Asset Management account ending in 6657. One of the deposit images is a check to Ashton Asset Management for $100 on February 23, 2015. The check was written from a Bank of America account ending in 3796 in the name of CHM Capital Group, LLC. As described in the paragraph above, the monthly statements show that there was only one deposit made into the Ashton Asset Management account ending in 6657 on February 23, 2015. It appears that the check for $100 from CHM Capital Group, LLC, was used to make the initial deposit into the Ashton Asset Management account ending in 6657.

41.     Bank of America also provided copies of certain checks written from the Ashton Asset Management account ending in 6657. These checks include:

a. From April 8, 2015 to June 4, 2015, approximately 10 checks made payable to Aura Development for a total of approximately $2,362,250;

b. From April 6, 2015 to June 3, 2015, approximately five checks made payable to Gaurav Mohindra for a total of approximately $185,000; and

c. From April 6, 2015 to July 25, 2015, approximately 14 checks made payable to Preetesh Patel for a total of approximately $479,900.80.

### *CHM Capital Group Account ending in 3796*

42. Attached hereto as **Menjivar Attachment I** are true and correct copies of the signature card and related documents for the Bank of America account ending in 3796 in the name of CHM Capital Group LLC (CHM Capital Group). These documents list the authorized signers and titles as Hirsh Mohindra, President and Managing Member, and Gaurav Mohindra, Vice President and Member.

43. Bank of America provided monthly account statements for the period April 27, 2011 to July 31, 2015 for the CHM Capital Group account ending in 3796. Based on the monthly statements, the account was opened on April 27, 2011. Among other things, the monthly statements show that, during this period, the CHM Capital Group account received deposits and other credits for a total of approximately $30,781,394.27. According to the monthly statements, on April 27, 2011, the account received a deposit for $250.

44. During my review of the monthly statements for the CHM Capital Group account ending in 3796, from June 22, 2011 to May 15, 2015, I noticed numerous deposits from Global Pay or Global Payments. In many instances, these deposits identified a Global Payments account ending in 9910. As described in paragraph 74, Global Payments produced records for a merchant account ending in 9910 in the name of Charles Hunter Miller & Associates Inc.

10

45.    Among other things, the monthly statements for the CHM Capital Group account ending in 3796 show the following transactions:

    a.    On September 9, 2013, the account received one transfer for $10,000 from an account ending in 0226;

    b.    From December 21, 2011 to July 16, 2015, the account made 60 transfers for a total of approximately $5,238,553.61 to an account ending in 0226;

    c.    From May 13, 2015 to July 6, 2015, the account received four transfers for a total of approximately $65,000 from an account ending in 6644;

    d.    From March 4, 2015 to June 30, 2015, the account made seven transfers for a total of approximately $183,500 to an account ending in 6644;

    e.    From March 20, 2015 to July 28, 2015, the account received 20 transfers for a total of approximately $1,037,953.88 from an account ending 6657; and

    f.    From March 23, 2015 to June 2, 2015, the account made 12 transfers for a total of approximately $2,057,200 to an account ending in 6657.

46.    As described in paragraph 36, Bank of America produced records for an account ending in 6657 in the name of Ashton Asset Management Inc.

47.    Bank of America provided certain deposit images and items for the CHM Capital Group account ending in 3796. These deposit items include:

    a.    A check made payable to CHM Capital Group for $250 on April 26, 2011, with the memo line "initial deposit." The check was written from a JPMorgan Chase Bank account ending in 0226 in the name of Aura Development Inc.;

    b.    From May 9, 2011 to February 23, 2012, approximately four checks made payable to CHM Capital Group for a total of approximately $53,000. The checks

were written from a JPMorgan Chase Bank account ending in 0226 in the name of Aura Development Inc. Among other things, some images of checks written from the Chase Bank account for Aura Development contain the words "Paper Buy" on the memo line; and

    c.   From May 8, 2012 to May 14, 2012, approximately four checks made payable to CHM Capital Group for a total of approximately $28,500. The checks were from Charles Hunter Miller & Associates.

48.    Bank of America also provided copies of certain checks written from the CHM Capital Group account ending in 3796. These checks include:

    a.   From February 12, 2013 to April 8, 2015, approximately 11 checks made payable to Aura Development for a total of approximately $1,444,152;

    b.   From July 28, 2012 to April 8, 2015, approximately 20 checks made payable to Gaurav Mohindra for a total of approximately $177,856;

    c.   From August 2, 2011 to April 21, 2015, approximately 44 checks made payable to Preetesh Patel for a total of approximately $461,566.01;

    d.   Two checks made payable to Hirsh Mohindra for a total of approximately $65,000 on January 22, 2013 and April 11, 2013;

    e.   A check made payable to Illinois Department of Financial & Professional Regulation for $750 on April 27, 2011. The check contained the word "license" on the memo line;

    f.   A check made payable to Ashton Asset Management for $100 on February 23, 2015;

    g.  A check made payable to Charles Hunter Miller & Associates for $500 on April 24, 2012;

    h.  A check made payable to Pacific Capital Holdings for $100 on February 23, 2015; and

    i.  A check made payable to Stark Law for $100 on February 23, 2015.

49.    During my review of the checks written from the CHM Capital Group account ending in 3796, I identified checks made payable to several parties for what appears to be for the payment of money to settle court actions or private lawsuits. These checks identify either a plaintiff's name, the law firm representing a plaintiff, or a case name. Some of these checks contain the word "settlement" on the memo line. Some of these names appear as plaintiffs in some of the private lawsuits filed against Defendants as described in the section titled "Private Plaintiff Lawsuits Filed Against Defendants." I have identified the following checks from the CHM Capital Group account ending in 3796:

    a.  Check number 5216, dated October 20, 2012, with the memo line "Re: Tom Pililimis Settlement";

    b.  Check number 5224, dated November 10, 2012, with the memo line "Pililimis Settlement";

    c.  Check number 5233, dated November 16, 2012, with the memo line "Pililimilis Settlement";

    d.  Check number 5635, dated June 4, 2014, with the memo line "Steven James";

    e.  Check number 5304, dated September 30, 2014, with the memo line "Re Elanda Johnson";

13

     f.   Check number 5470, dated March 26, 2015, with the memo line "Nicole Verdico v. CHM Settlement";

     g.   Check number 5471, dated March 26, 2015, with the memo line "Martin Page v. CHM Settlement."

### *Pacific Capital Holdings Account ending in 6631*

50.     Attached hereto as **Menjivar Attachment J** are true and correct copies of the signature card and related documents for the Bank of America account ending in 6631 in the name of Pacific Capital Holdings Inc. (Pacific Capital). These documents list the authorized signers and titles on the account as Hirsh Mohindra, President, and Gaurav Mohindra, Vice President. The account was opened on February 23, 2015.

51.     Bank of America provided monthly account statements for the period February 23, 2015 to July 31, 2015 for the Pacific Capital account ending in 6631. Among other things, the monthly statements show that, on February 23, 2015, the account received a "counter credit" or deposit for $100.

52.     Bank of America also provided one image of a check made payable to Pacific Capital Holdings for $100 on February 23, 2015. The check was written from a Bank of America account ending in 3796 in the name of CHM Capital Group, LLC. As described in the preceding paragraph, the monthly statements show that there was only one deposit made into the Pacific Capital account ending in 6631 on February 23, 2015. It appears that the check for $100 from CHM Capital Group, LLC was used to make the initial deposit into the Pacific Capital account ending in 6631.

***Stark Law Account ending in 6644***

53.     Attached hereto as **Menjivar Attachment K** are true and correct copies of the signature card and related documents for Bank of America account ending in 6644 in the name of Stark Law LLC (Stark Law). These documents list the authorized signers and titles on the account as Gaurav Mohindra, Manager, and Hirsh Mohindra, Signer. The account was opened on February 23, 2015.

54.     Bank of America provided monthly account statements for the period February 23, 2015 to July 31, 2015 for the Stark Law account ending in 6644. Among other things, the monthly statements show that, during this period, the account received deposits and other credits for a total of approximately $961,596.77. According to the monthly statements, on February 23, 2015, the account received a "counter credit" or deposit for $100.

55.     During my review of the monthly statements for the Stark Law account ending in 6644, from May 11, 2015 to July 13, 2015, I noticed numerous deposits from Global Pay or Global Payments. In many instances, these deposits identified a Global Payments account ending in 9073 and an account ending in 6230. As described in paragraphs 76 and 77, Global Payments produced records for an account ending in 9073 in the name of Stark Law LLC, and an account ending in 6230 in the name of Stark Law LLC.

56.     The monthly statements for the Stark Law account ending in 6644 also show the following transactions:

        a.  From March 4, 2015 to June 30, 2015, the account received seven transfers for a total of approximately $183,500 from an account ending in 3796;

        b.  From May 13, 2015 to July 6, 2015, the account made four transfers for a total of approximately $65,000 to an account ending in 3796;

15

    c.  From March 18, 2015 to July 30, 2015, the account received six transfers for a total of approximately $113,500 from an account ending in 6657; and

    d.  On June 5, 2015, the account made one transfer for $7,500 to an account ending in 6657.

57.    Bank of America also provided copies of certain checks written from the Stark Law account ending in 6644. These checks include:

    a.  From May 18, 2015 to June 22, 2015, approximately three checks made payable to Aura Development for a total of approximately $128,500; and

    b.  From May 13, 2015 to June 22, 2015, approximately six checks made payable to Preetesh Patel for a total of approximately $102,783.91.

58.    Bank of America provided certain deposit images and items for the Stark Law account ending in 6644. One of the deposit images is a check made payable to Stark Law for $100 on February 23, 2015. The check is written from a Bank of America account ending in 3796 in the name of CHM Capital Group, LLC. As described in the paragraph above, the monthly statements show that there was only one deposit made into the Stark Law account ending in 6644 on February 23, 2015. It appears that the check for $100 from CHM Capital Group LLC was used to make the initial deposit into the Stark Law account ending in 6644.

## Chase Bank

### *Aura Development Account ending in 0226*

59.    The Illinois AG provided the FTC with documents and records it received from JPMorgan Chase Bank, N.A. (Chase Bank) pursuant to a subpoena it issued in connection with its investigation of Defendants.

60.    Attached hereto as **Menjivar Attachment L** are true and correct copies of the signature card and related documents for the Chase Bank account ending in 0226 in the name of Aura Development Inc. (Aura Development).  These documents list an authorized signer and title on the account as Hirsh Mohindra, President and Secretary.  The account was opened on March 17, 2008.  According to the corporate records, Aura Development was organized as an Illinois Business Corporation on March 5, 2008, and listed Hirsh Mohindra as the president, secretary, and director as described in paragraphs 31-34.

61.    Chase Bank provided monthly account statements for the period January 1, 2010 to September 30, 2015 for the Aura Development account ending in 0226.  Among other things , these records show:

    a.  From August 1, 2011 to December 12, 2011, the account made approximately five transfers for a total of approximately $37,000 to a bank account ending in 3796 in the name of CHM Capital Group;

    b.  On September 19, 2013, the account made a transfer for $10,000 to a bank account in the name of CHM Capital Group;

    c.  From December 27, 2011 to September 22, 2015, the account received approximately 66 transfers for a total of approximately $6,037,553.61 from a bank account in the name of CHM Capital Group;

    d.  On April 23, 2015, the account received a transfer for $1,600,000 from a bank account in the name of Ashton Asset Management; and

    e.  On April 24, 2015, the account made a transfer for $2,000,000 to a bank account in the name of Hirsh Mohindra and Renuka Mohindra.

62.     Chase Bank also provided copies of certain checks written from the Aura Development account ending in 0226. These checks include:

   a.   From January 28, 2014 to April 7, 2015, approximately five checks made payable to Gaurav Mohindra for a total of approximately $256,150; and

   b.   On September 14, 2015, a check made payable to Preetesh Patel for $1,500.

63.     Chase Bank provided certain deposit images and items for the Aura Development account ending in 0226. These deposit images include:

   a.   From April 8, 2015 to June 4, 2015, approximately 10 checks made payable to Aura Development for a total of approximately $2,362,250. These checks were written from a Bank of America account ending in 6657 in the name of Ashton Asset Management;

   b.   From December 15, 2014 to April 8, 2015, approximately 10 checks made payable to Aura Development for a total of approximately $1,429,152. These checks were written from a Bank of America account ending in 3796 in the name of CHM Capital Group; and

   c.   From May 18, 2015 to June 22, 2015, approximately three checks made payable to Aura Development for a total of approximately $128,500. These checks were written from a Bank of America account ending in 6644 in the name of Stark Law.

## MERCHANT ACCOUNTS AND PAYMENT PROCESSORS

### Bank of America Merchant Services

64.     The Illinois AG provided the FTC with records it received from Bank of America Merchant Services, LLC (BAMS) pursuant to a subpoena it issued in connection with its

investigation of Defendants. BAMS is a payment processor for credit card and other transactions. On August 31, 2015, BAMS produced documents and records for one merchant account related to Defendant Stark Law LLC.

65.     Attached hereto as **Menjivar Attachment M** are true and correct copies of the merchant application and certain supporting documents for the Stark Law merchant account ending in 7880. These documents list Stark Law's legal address as 500 Quail Ridge Drive, Westmont, IL 60559, and Gaurav Mohindra as president. The merchant account was opened on May 6, 2015.

### TSYS Merchant Solutions

66.     The Illinois AG provided the FTC with records it received from TSYS Merchant Solutions, LLC (also referred as "TSYS" or "TMS") pursuant to a subpoena it issued in connection with its investigation of Defendants. TSYS is a payment processor for credit card and other transactions. On November 11, 2015, TSYS produced documents and records for two merchant accounts related to Defendants Stark Law and Stark Legal. According to TSYS, Stark Law was a TSYS customer. Stark Legal was a Harbortouch customer and TSYS provided certain processing services on behalf of Harbortouch Payments, LLC (Harbortouch) for Stark Legal.

67.     Attached hereto as **Menjivar Attachment N** are true and correct copies of the merchant application and certain supporting documents for the Stark Law LLC account ending in 9910. These documents list Stark Law's address as 500 Quail Ridge Drive, Westmont, IL 60559, and Gaurav Mohindra as a manager for Stark Law. The account was opened on July 6, 2015, and closed on or about July 17, 2015.

68.     The merchant application, among other things, included a copy of a commercial and industrial lease agreement (Lease Agreement) for the premises located at 500 Quail Ridge Drive, Westmont, IL 60559.  The lease agreement is between HKM Funding Inc., lesssor, and Stark Law LLC, lessee.  Based on the lease agreement, Preetesh Patel as a principal of HKM Funding signed on January 5, 2015, and Gaurav Mohindra as managing partner of Stark Law LLC, signed on January 9, 2015.  **Menjivar Att. N, pp. 11-15**.

69.     According to the TSYS, TMS initially signed Stark Law based on the merchant's representations that it engaged in general legal services.  Soon after opening the TMS account, TMS risk personnel noticed high rates of declined transactions.  Following an additional assessment of the merchant, TMS made the decision to terminate processing services for the TMS account approximately 11 days after the account had been opened.

**Harbortouch Payments**

70.     Attached hereto as **Menjivar Attachment O** are true and correct copies of the merchant application and certain supporting documents for the Stark Legal account ending in 0471.  These documents list Stark Legal's address as 500 Quail Ridge Road, Westmont, IL 60559.  It also lists Hirsh Mohindra as a principal and 100% equity owner, and Gaurav Mohindra as a contact for Stark Legal.  The account was opened on July 8, 2015, and closed in August 2015.

**Wells Fargo Merchant Services**

71.     The Illinois AG provided the FTC with records it received from Wells Fargo Merchant Services, L.L.C. (Wells Fargo Merchant Services) pursuant to a subpoena it issued in connection with its investigation of Defendants.  Wells Fargo Merchant Services is a payment processor for credit card and other transactions.  On November 9, 2015, First Data Corporation

20

(First Data) on behalf of Wells Fargo Merchant Services produced documents and records for one merchant account related to Defendant Stark Law LLC.

72.     Attached hereto as **Menjivar Attachment P** are true and correct copies of the merchant application and certain supporting documents for the Stark Law merchant account ending in 2995. These documents list Stark Law's address as 500 Quail Ridge Drive, Westmont, IL 60559, and Gaurav Mohindra as owner. The merchant account was opened on April 27, 2015. According to the records, it appears that, in or around June 2015, Wells Fargo Merchant Services closed the Stark Law merchant account ending in 2995 due to "debt recovery."

### Global Payments

73.     The Illinois AG provided the FTC with records it received from Global Payments Inc. (Global Payments) pursuant to a subpoena it issued in connection with its investigation of Defendants. Global Payments is a payment processor for credit card and other transactions. On November 23, 2015 and December 10, 2015, Global Payments produced documents and records for merchant accounts related to Defendants Charles Hunter Miller & Associates (also doing business as Charles Hunter Miller Associates and Pacific Capital), Charles Hunter Miller & Associates Inc. (also doing business as CHM), Stark Law LLC, and Stark Law LLC (also doing business as Stark Law).

74.     Attached hereto as **Menjivar Attachment Q** are true and correct copies of the merchant application and certain supporting documents for the Charles Hunter Miller & Associates Inc. account ending in 9910. According to Global Payments, Charles Hunter Miller & Associates was also doing business as Charles Hunter Miller Associates and Pacific Capital. These documents list Hirsh Mohindra as an owner and Preetesh Patel as a contact. According to the Global Payments, the account was opened on April 27, 2012. On May 15, 2015, Global

21

Payments closed the Charles Hunter Miller & Associates account ending in 9910 due to "business type collections."

75.    Attached hereto as **Menjivar Attachment R** are true and correct copies of the merchant application and certain supporting documents for the Charles Hunter Miller & Associates, also doing business as CHM, account ending in 5464. These documents list Hirsh Mohindra as an owner and president. According to the Global Payments, the account was opened on May 5, 2012. On March 5, 2013, Global Payments closed the Charles Hunter Miller & Associates account ending in 5464.

76.    Attached hereto as **Menjivar Attachment S** are true and correct copies of the merchant application and certain supporting documents for the Stark Law LLC account ending in 9073. These documents list Gaurav Mohindra as an owner and a contact. According to Global Payments, the account was opened on May 7, 2015. On July 24, 2015, Global Payments closed the Stark Law account ending in 9073.

77.    Attached hereto as **Menjivar Attachment T** are true and correct copies of the merchant application and certain supporting documents for the Stark Law LLC, also doing business as Stark Law, account ending in 6230. These documents list Gaurav Mohindra as an owner and president. According to the Global Payments, the account was opened on May 5, 2015. On September 3, 2015, Stark Law closed its account ending in 6230.

78.    Global Payments provided monthly credit card merchant statements showing sales and chargeback information for the following merchants account associated with Defendants:

    a.   CHM merchant account ending in 5464;

    b.   Charles Hunter Miller & Associates merchant account ending in 9910;

    c.   Stark Law LLC merchant account ending in 9073; and

    d.   Stark Law merchant account ending 6230.

79.     Based on the Global Payments records, I calculated the total monthly sales and chargeback information for the merchant accounts listed above. The sales and chargeback information includes only those transaction processed by Global Payments.

80.     For the CHM merchant account ending in 5464, the records show that, from May 31, 2012 to February 28, 2013, the CHM account did not process any sales or chargeback transactions.

81.     For the Charles Hunter Miller & Associates merchant account ending in 9910, the records show that, from December 31, 2013 to May 29, 2015, the account had about 23,992 sales transactions for a total of approximately $3,286,374.26. During the same period, the account had about 12 sales credits for a total of approximately $2,049.17. From December 31, 2014 to May 29, 2015, the account had about 249 chargebacks for a total of approximately $41,344.48. During the same period, the account had about three chargeback credits for a total of approximately $398.96. From December 31, 2013 to May 29, 2015, the total net sales for the Charles Hunter Miller & Associates account ending in 9910 is about $3,243,379.57.

82.     For the Stark Law merchant account ending in 9073, the records show that, from May 29, 2015 to September 30, 2015, the account had about 973 sales transactions for a total of approximately $139,517.40. During the same period, the account had one sales credit for approximately $350. From May 29, 2015 to September 30, 2015, the account did not have any chargeback or chargeback credit transactions. From May 29, 2015 to September 30, 2015, the total net sales for the Stark Law merchant account ending in 9073 is about $139,167.40.

83.    For the Stark Law merchant account ending in 6230, the records show that, from May 29, 2015 to September 30, 2015, the account had about 3,062 sales transactions for a total of approximately $477,724.34. During the same period, the account had 11 sales credits for a total of approximately $3,456.25. From May 29, 2015 to September 30, 2015, the account had about 86 chargebacks for a total of approximately $13,262.60. During the same period, the account had one chargeback credit for $100. From May 29, 2015 to September 30, 2015, the total net sales for the Stark Law merchant account ending in 6230 is about $461,105.49.

84.    Based on the Global Payments monthly sales and chargeback information, I calculated that the four merchant accounts associated with Defendants had about 28,027 sales, 24 sales credits, 335 chargebacks, and 4 chargeback credits for a total of approximately $3,843,652.46 in net sales. ($3,243,379.57 + $139,167.40 + $461,105.49).

### TELEPHONE SERVICE PROVIDER

85.    The Illinois AG provided the FTC with records it received from Vonage Business Solutions (Vonage) pursuant to a subpoena it issued in connection with its investigation of Defendants. Vonage is a telephone service provider that offers internet telephony service also known as Voice over Internet Protocol (VoIP). On August 21, 2015, Vonage produced an account profile, billing profile, and contact information for an account ending in 40580 in the name of "Stark." The account profile listed Stark's address as 500 Quail Ridge Drive, Westmont, IL 60559. The billing profile listed Preetesh Patel at the same address.

### WEBSITE AND DOMAIN NAME REGISTRATION INFORMATION

86.    On August 20, 2015, using an FTC computer, I visited and captured the publicly available website at www.ashtonasset.com. Attached hereto as **Menjivar Attachment U** is a true and correct copy of the website www.ashtonasset.com that I captured on August 20, 2015.

## VIRTUAL OFFICE

87.     The Illinois AG provided the FTC with records it received from Regus Management Group, LLC (Regus), pursuant to a subpoena it issued in connection with its investigation of Defendants. According to its website at www.regus.com, Regus offers virtual offices, virtual office services, mail and package receipt, and mail forwarding services. On November 17, 2015, Regus produced records related to two virtual offices used by Defendants.

88.     As described in paragraphs 10 and 13, Stark Law and Stark Legal changed its principal office to a Regus virtual office located at 7545 Irvine Center Drive, Irvine Business Center, Suite 200, Irvine, California 92618 (Irvine Business Center).

89.     Attached hereto as **Menjivar Attachment V** is a true and correct copy of the online virtual office agreement (agreement) for the Irvine Business Center produced by Regus. The agreement for Irvine Business Center shows the following information:

   a.   The agreement is dated July 16, 2015;

   b.   "Stark" is listed on the agreement as the company name;

   c.   Hirsh Mohindra is listed on the agreement as the contact name;

   d.   The start date is July 16, 2015, and end date is July 31, 2016; and

   e.   The payment details listed a credit card number ending in 8064 in the name of Gaurav Mohindra.

90.     According to consumer complaints filed with the FTC, some of the consumers reported receiving a telephone call from a company called Stark Recovery. Some consumers reported the address for Stark Recovery as 4900 California Avenue, Bakersfield, California 93309 (Bakersfield Business Center). This address is another Regus virtual office.

91.     Attached hereto as **Menjivar Attachment W** are true and correct copies of the online virtual office agreement for the Bakersfield Business Center and copies of email correspondence produced by Regus. The agreement for the Bakersfield Business Center shows the following information:

      a.   The agreement is dated July 16, 2015;

      b.   "Stark" is listed on the agreement as the company name;

      c.   Hirsh Mohindra is listed on the agreement as the contact name;

      d.   The start date is July 16, 2015, and the end date is July 31, 2016; and

      e.   The payment details on the agreement listed a credit card number ending in 8064 in the name of Gaurav Mohindra.

### INVESTIGATIVE NEWS REPORT

92.     During the course of the FTC's investigation of Defendants, I found an Eyewitness News report by WBRE/WYOU reporter Crystal Cranmore, titled "Stark Recovery Scam," and broadcast news segment dated January 2, 2016. The report is about a debt collection agency called Stark Recovery. The news report and broadcast news segment are available to the public on the Internet by visiting www.pahomepage.com/news/stark-recovery-scam.

93.     On January 5, 2016, using a FTC computer, I visited the WBRE/WYOU website and captured a copy of the news report about Stark Recovery. Attached hereto as **Menjivar Attachment X** is a true and correct copy of the news report titled, "Stark Recovery Scam," dated January 2, 2016.

94.     On January 5, 2016, using a FTC computer, I visited the WBRE/WYOU website, and I captured a video copy of the broadcast news segment about Stark Recovery. I then sent a copy of the video recording or file to a private court reporting company, For The Record, Inc. I

sent the file to For The Record through the FTC's Accellion Secure File Transfer (SFT) system. The SFT system enables authorized FTC employees to transfer data securely to a third party. For The Record transcribed the recording and sent the transcript to me. I then verified the accuracy of the transcript by comparing it to the original recording. If I found any errors in the transcript, I resubmitted the transcript to For The Record and obtained a certified revised transcript. Attached hereto as **Menjivar Attachment Y** is a true and correct copy of the transcript from the WBRE/WYOU broadcast news segment dated January 2, 2016.

<div align="center">**ATTORNEY REGISTRAION**</div>

95.    On February 16, 2016, I obtained the attorney membership record and profile for Gaurva Mohindra from The State Bar of California. Attached hereto as **Menjivar Attachment Z** is a true and correct copy of the attorney membership record and profile for Gaurav Mohindra I obtained from The State Bar of California's publicly available website at www.calbar.ca.gov.

96.    On February 16, 2016, I obtained the attorney's registration and public disciplinary record for Gaurva Mohindra from the Attorney Registration and Disciplinary Commission of the Supreme Court of Illinois (Illinois ARDC). Attached hereto as **Menjivar Attachment AA** is a true and correct copy of the attorney's registration and public disciplinary record for Gaurav Mohindra I obtained from the Illinois ARDC's publicly available website at www.iardc.org.

<div align="center">**PRIVATE LAWSUITS FILED AGAINST DEFENDANTS**</div>

97.    In or about August and December 2015 and March 2016, FTC staff used LexisNexis CourtLink (CourtLink) to search for lawsuits filed in federal district court by Defendants (as plaintiff) or against Defendants (as defendant). FTC staff identified 15 federal district court cases filed against one or more of Defendants since 2012. Using CourtLink, FTC

<div align="center">27</div>

staff accessed and downloaded the docket sheets, pleadings, and select papers (collectively referred as "court records") from the 15 court cases. CourtLink is an online service that offers users searchable access to case and docket information from federal, state, and local courts.

98.     FTC staff reviewed the court records for the 15 court cases. Using the information from the court records, FTC staff created a chart with the following information: (a) the case number, (b) the district court where the case was filed, (c) the judge assigned to the case, (d) the date the case was filed, (e) the named plaintiff, (f) the named defendant or defendants, and (g) the alleged violations. FTC staff also used the court records to determine whether appearances had been filed by Defendants, whether Defendants answered the plaintiffs' complaints, and the resolution of the case. Attached hereto as **Menjivar Attachment BB** is a true and correct copy of the chart that FTC staff created as described in this paragraph.

99.     Based on the court records, FTC staff identified the following information about the 15 cases filed against one or more of Defendants:

   a.  All 15 of the plaintiffs' complaints filed against one or more of Defendants allege, among other things, various violations of the FDCPA;

   b.  All 15 of the plaintiffs' complaints filed against one or more of Defendants concern Defendants' collection, or attempted collection, of debt from the respective plaintiffs;

   c.  In all but one of the cases (*Gilliam v. Stark Law, LLC, et al.*, Case No. 5:15-cv-12065 (E.D. Mich. 2015)), it does not appear that Defendants filed an appearance;

   d.  It does not appear from the dockets that Defendants answered any of the plaintiffs' complaints;

e. The closed cases appear to have been resolved either by apparent out-of-court settlements (voluntary dismissals) or by entry of default judgments with the exception of one case, *Edwards v. CHM Capital Group, LLC*, Case No. 3:13-cv-03868 (N.D. Tex. 2013). This case was dismissed without prejudice after the plaintiff indicated a desire to pursue the case in state court; and

f. Ten of the fifteen cases were filed in the United States District Court for the Northern District of Illinois.

100. Attached hereto as **Menjivar Attachment CC** are true and correct copies of some of the papers and pleadings from the court cases filed against Defendants that FTC staff accessed and downloaded from CourtLink. Specifically, attached are the following documents:

a. The "Affidavit of Kendra Green" filed as Document Number 18-1 in the matter of *Green v. CHM Capital Group, LLC*, Case No. 1:13-cv-06875 (N.D. Ill. 2013) as **Menjivar Att. CC, pp. 1-2**;

b. The Complaint filed as Document Number 1 in the matter of *James v. CHM Capital Group, LLC, et al.*, Case No. 1:13-cv-09200 (N.D. Ill. 2013) as **Menjivar Att. CC, pp. 3-9**;

c. The Complaint filed as Document Number 1 in the matter of *Page v. CHM Capital Group, LLC*, Case No. 1:14-cv-10208 (N.D. Ill. 2014) as **Menjivar Att. CC, pp. 10-20**;

d. The Complaint filed as Document Number 1 in the matter of *Plasari v. Stark Law*, Case No. 1:15-cv-04415 (S.D.N.Y. 2015) as **Menjivar Att. CC, pp. 21-27**;

29

e.   The "Affidavit of Plaintiff [Jennifer Rymer]" filed as Document Number 15-1 in the matter of *Rymer v. CHM Capital Group, LLC*, Case No. 1:13-cv-07061 (N.D. Ill. 2013) as **Menjivar Att. CC, pp. 28-31**;

f.   The Complaint filed as Document Number 1 in the matter of *Smith v. Stark Law, LLC*, Case No. 1:15-cv-06514 (N.D. Ill. 2015) as **Menjivar Att. CC, pp. 32-35**;

g.   The Complaint filed as Document Number 1 in the matter of *Thomas v. CHM Capital Group, LLC, et al.*, Case No. 1:15-cv-07025 (N.D. Ill. 2015) as **Menjivar Att. CC, pp. 36-41**;

h.   The Complaint filed as Document Number 1 in the matter of *Torres v. CHM Capital Group, LLC*, Case No. 1:12-cv-00103 (N.D. Ill. 2012) as **Menjivar Att. CC, pp. 42-46**; and

i.   The Complaint filed as Document Number 1 in the matter of *Verdico v. CHM Capital Group, LLC*, Case No. 1:15-cv-00319 (N.D. Ill. 2015) as **Menjivar Att. CC, pp. 47-54**.

## CONSUMER COMPLAINTS

101.   The FTC maintains the Consumer Sentinel database. Consumer Sentinel is a database of complaints received from consumers, directly or through law enforcement, U.S. federal agencies, state agencies, local agencies, foreign agencies, and other organizations. The Consumer Sentinel database and the information contained in the database are for law enforcement purposes.

102.   On March 14, 2016, I accessed and searched the Consumer Sentinel database to determine an estimate of the number of consumer complaints filed against Defendants. I used the following business names to conduct the searches:

    a.  CHM Capital;

    b.  Capital Harris Miller;

    c.  Charles Hunter Miller;

    d.  Pacific Capital;

    e.  Stark Law;

    f.  Stark Legal; and

    g.  Stark Recovery.

I collectively refer to these business names as "Defendants' Business Names."

103.    Based on my Consumer Sentinel searches, Consumer Sentinel received hundreds of consumer complaints against Defendants' Business Names. These are complaints in which consumers identified the company or "Subject" as one of the Defendants' Business Names. In some instances, a consumer may have filed complaints against Defendants' Business Names with multiple law enforcement agencies, government agencies, or other organizations (such as the Federal Trade Commission, Better Business Bureau, and/or the Consumer Financial Protection Bureau), which then provided the complaint data to Consumer Sentinel. In some instances, a consumer may have filed a complaint about more than one of the Defendants' Business Names. I reviewed some of the consumer complaints and determined that the complaints appear to be related to Defendants or Defendants' business practices.

104.    Based on my review of the Consumer Sentinel search results, I determined the following information:

    a.  **CHM Capital**: From November 2, 2011 to July 9, 2015, there were at least 24 consumer complaints filed against CHM Capital;

b. **Capital Harris Miller**: From April 19, 2012 to February 19, 2015, there were at least 370 consumer complaints filed against Capital Harris Miller;

c. **Charles Hunter Miller**: On July 22, 2013, there was one consumer complaint filed against Charles Hunter Miller;

d. **Pacific Capital**: From March 19, 2015 to May 18, 2015, there were at least two consumer complaints filed against Pacific Capital;

e. **Stark Law**: From February 20, 2015 to March 2, 2016, there were at least 224 consumer complaints filed against Stark Law;

f. **Stark Legal**: From March 2, 2015 to January 4, 2016, there were at least 16 consumer complaints filed against Stark Legal; and

g. **Stark Recovery**: From July 21, 2015 to January 21, 2016, there were at least 553 consumer complaints filed against Stark Recovery.

105. Based on the search results listed above, from November 2, 2011 to March 2, 2016, there were at least 1,190 consumer complaints filed against Defendants' Business Names.

106. The consumer complaints that I reviewed typically raise one or more of the following issues:

a. Consumers receive telephone calls from Defendants telling them that they are delinquent on or otherwise did not pay a debt, such as a payday loan;

b. Consumers are required to pay Defendants for a debt;

c. Defendants threaten consumers with legal action;

d. Defendants threaten to obtain judgments against consumers for amounts greater than that allegedly owed for the debt;

e.  Defendants state or imply that by failing to pay a debt, the consumer will be charged with a crime;

f.  Defendants threaten consumers with arrest or imprisonment;

g.  Defendants threaten to send someone to the consumer's workplace or home to serve legal papers;

h.  Consumers must pay the debt immediately or within a short period;

i.  Defendants repeatedly call consumers, even after being told not to call back;

j.  Defendants repeatedly call consumers at work, even after being told that consumers cannot or do not want to receive such calls at work;

k.  Defendants repeatedly call consumers' relatives, friends, and employers;

l.  Defendants disclose the existence of a consumer's debt to persons other than the consumer;

m.  Defendants call consumers even after Defendants know the consumer is represented by an attorney;

n.  Defendants do not provide proof of the purported debt, even after requested to do so by consumers;

o.  Defendants possess sensitive personal and financial information about the consumer, including, but not limited to, Social Security number, bank account information, addresses, and telephone numbers;

p.  Consumers do not owe the debt that Defendants claim they do; and

q.  In instances when Defendants identify a purported lender, consumers often do not recognize and have not obtained a loan from that lender.

107. Attached hereto as **Menjivar Attachment DD** are true and correct copies of some of the consumer complaints filed with the FTC against Defendants as described in this section.

108. According to consumer complaints filed with the FTC, some of the consumers reported the following addresses associated with Defendants:

    a. 2224 West Toughy, Chicago, Illinois;

    b. 215 Remington Boulevard, Bolingbrook, Illinois;

    c. 4 East Ogden Avenue, Westmont, Illinois;

    d. 4900 California Avenue, Bakersfield, California; and

    e. 500 Quail Ridge Drive, Westmont, Illinois

## PAYDAY LOAN APPLICATIONS

109. I have previously visited several websites that appear to offer online payday and short-term loans and reviewed the application process to identify the type of personal information requested from applicants. In general, applicants may be required to provide, among other things, the following pieces of information: (a) Name; (b) Address; (c) Telephone Number; (d) Social Security Number; (e) Date of Birth; (f) Bank Routing and Account Number; (g) Employer Name; and (h) Work Telephone Number.

I declare under penalty of perjury that the foregoing statement is true and correct.

Executed on _March 16_, 2016.

Roberto C. Menjivar

# **Attachment A**

*File Number*          0508819-4



## To all to whom these Presents Shall Come, Greeting:

*I, Jesse White, Secretary of State of the State of Illinois, do hereby certify that I am the keeper of the records of the Department of Business Services. I certify that*

ATTACHED HERETO IS A TRUE AND CORRECT COPY, CONSISTING OF 8 PAGE(S), AS TAKEN FROM THE ORIGINAL ON FILE IN THIS OFFICE FOR STARK LAW LLC.



*In Testimony Whereof, I hereto set my hand and cause to be affixed the Great Seal of the State of Illinois, this* 10TH *day of* AUGUST *A.D.* 2015

Authentication #: 1522200475 verifiable until 08/10/2016.
Authenticate at: http://www.cyberdriveillinois.com

*Jesse White*

SECRETARY OF STATE

**Menjivar Att. A
Page 1 of 10**

08/10/2015  08:28  2175243390  LIMITED LIABILITY  PAGE  04/26

05088194

| Form **LLC-5.5**<br>May 2012<br>Secretary of State<br>Department of Business Services<br>Limited Liability Division<br>501 S. Second St., Rm. 351<br>Springfield, IL 62756<br>217-524-8008<br>www.cyberdriveillinois.com<br><br>Payment must be made by certified check, cashier's check, Illinois attorney's check, C.P.A.'s check or money order payable to Secretary of State. | **Illinois<br>Limited Liability Company Act<br>Articles of Organization**<br><br>SUBMIT IN DUPLICATE<br>Type or print clearly.<br><br>This space for use by Secretary of State.<br><br>Filing Fee: $500<br>Approved: | FILE #<br>This space for use by Secretary of State.<br><br>**FILED**<br>FEB 1 7 2015<br>JESSE WHITE<br>SECRETARY OF STATE |

1. Limited Liability Company Name: **Stark Law LLC**

   The LLC name must contain the words Limited Liability Company, L.L.C. or LLC and cannot contain the terms Corporation, Corp., Incorporated, Inc., Ltd., Co., Limited Partnership or L.P.

2. Address of Principal Place of Business where records of the company will be kept: (P.O. Box alone or c/o is unacceptable.)

   4 East Ogden Avenue, #109, Westmont, Illinois 60559

   PAID
   FEB 1 8 2015
   DEPARTMENT OF BUSINESS SERVICES

3. Articles of Organization effective on: (check one)

   ✓ the filing date

   a later date (not to exceed 60 days after the filing date): _____
   Month, Day, Year

4. Registered Agent's Name and Registered Office Address:

   Registered Agent: **National Registered Agents, Inc.**
   First Name / Middle Initial / Last Name

   | Registered Office:<br>(P.O. Box alone or c/o is unacceptable.) | **208**<br>Number | **South LaSalle Street**<br>Street | **Suite 814**<br>Suite # |
   | | **Chicago**<br>City | **IL** | **60604**<br>ZIP Code |

   Note: The registered agent must reside in Illinois. If the agent is a business entity, it must be authorized to act as agent in this state.

5. Purpose(s) for which the Limited Liability Company is organized:

   The transaction of any or all lawful business for which Limited Liability Companies may be organized under this Act. (LLCs organized to provide professional services must list the address(es) from which those services will be rendered if different from item 2. If more space is needed, use additional sheets of this size.)

   _____

   _____

   _____

   _____

6. The duration of the company is perpetual unless otherwise stated. If the operating agreement provides for a dissolution date, enter that date here: _____
   Month, Day, Year

   Printed by authority of the State of Illinois. July 2014 — 1 — LLC 4.19

**Menjivar Att. A
Page 2 of 10**

08/18/2015 08:28 2175243390 LIMITED LIABILITY PAGE 05/26

*050# &19#*
*7.17.205*

LLC-5.5

7. (Optional) Other provisions for the regulation of the internal affairs of the Company: (If more space is needed, attach additional sheets of this size.)

8. The Limited Liability Company: (Check either a or b below.)

   a. ☑ is managed by the manager(s) (List names and addresses.)

    Ashton Lending LLC - 4 East Ogden Avenue, #109, Westmont, Illinois 60559

   b. ☐ has management vested in the member(s) (List names and addresses.)

9. Name and Address of Organizer(s):

I affirm, under penalties of perjury, having authority to sign hereto, that these Articles of Organization are to the best of my knowledge and belief, true, correct and complete.

Dated _____ February 17 _____ 2015 _____
          Month & Day       Year

1. *Tia Baugher* (signature)
    Signature

    Tia Baugher, Vice President
    Name (type or print)

    Corp-Link Services, Inc., Organizer
    Name if a Corporation or other Entity, and Title of Signer

1. 118 W. Edwards, Suite 200
    Number     Street

    Springfield
    City/Town

    IL     62704
    State     ZIP Code

2. _____
    Signature

    Name (type or print)

    Name if a Corporation or other Entity, and Title of Signer

2. _____
    Number     Street

    City/Town

    State     ZIP Code

Signatures must be in black ink on an original document. Carbon copy, photocopy or rubber stamp signatures may only be used on conformed copies.

C Printed on recycled paper. Printed by authority of the State of Illinois. March 2011 — 2M — LLC 4.15

**Menjivar Att. A
Page 3 of 10**

08/10/2015  08:28    2175243390              LIMITED LIABILITY              PAGE  06/26

Form **LLC-5.25**
May 2012

Secretary of State
Department of Business Services
Limited Liability Division
501 S. Second St., Rm. 351
Springfield, IL 62756
217-524-8008
www.cyberdriveillinois.com

Payment may be made by check
payable to Secretary of State. If
check is returned for any reason this
filing will be void.

Illinois
**Limited Liability Company Act**
**Articles of Amendment**

This space for use by Secretary of State.

Filing Fee:  $150

Approved:

FILE# 05078194

This space for use by Secretary of State.

**FILED**
MAR 18 2015
JESSE WHITE
SECRETARY OF STATE

KAK

1. Limited Liability Company Name: Stark Law LLC

2. Articles of Amendment effective on:
   ☑ the file date
   ☐ a later date (not to exceed 30 days after the file date) _____
   
   Month, Day, Year

3. Articles of organization are amended as follows (check applicable item(s) below):
   ☐ a)  Admission of a new member (give name and address below)*
   ☑ b)  Admission of a new manager (give name and address below)*
   ☐ c)  Withdrawal of a member (give name below)*
   ☑ d)  Withdrawal of a manager (give name below)*
   ☐ e)  Change in address of the office at which the records required by Section 1-40 of the Act are kept (give new ad-
         dress, a P.O. Box alone or C/O is unacceptable.)
   ☐ f)  Change of registered agent and/or registered agent's office (give new name and/or address below, *Address change
         to P.O. box alone or c/o is unacceptable.*)
   ☐ g)  Change in the Limited Liability Company's name (give new name below)
   ☐ h)  Change in date of dissolution or other events of dissolution enumerated in Item 6 of the Articles of Organization
   ☐ i)  Other (give information in space below)
   ☐ j)  Establish authority to issue series (see back filing fee $400)*

   * Changes in members/managers may, but are not required to be reported in an amendment to the Articles of Organization.

Additional information:

*d.* *Please withdraw Ashton Lending LLC as Manager.

*b.* *Please admit Gaurav Mohindra as the new Manager (Address: 4 East Ogden Avenue, #109, Westmont, Illinois 60559).

New Name of LLC (as changed): _____
The name as changed must contain the words Limited Liability Company, LLC or L.L.C.
(continued)

Printed by authority of the State of Illinois. FEBRUARY 2014 — 1 — LLC 11.16

**Menjivar Att. A**
**Page 4 of 10**

**LLC-5.25**

4. The amendment was approved in accordance with Section 5-25 of the Illinois Limited Liability Company Act, and, if adopted by the managers, was approved by not less than the minimum number of managers necessary to approve the amendment, member action not being required; or, if adopted by the members, was approved by not less than the minimum number of members necessary to approve the amendment.

5. I affirm, under penalties of perjury, having authority to sign hereto, that these Articles of Amendment are to the best of my knowledge and belief, true, correct and complete.

Dated: _____ **March 5** _____ **2015**
               **Month/Day**            **Year**

_____
Signature (Must comply with Section 5-45 of ILLCA.)
           Hirsh Mohindra  ~ M G R

_____
Name and Title (type or print)
      **Ashton Lending LLC - Manager**

If the member or manager signing this document
is a company or other entity, state Name of Company
and whether it is a member or manager of the LLC.

\* The following paragraph is adopted when item 3j is checked:

The operating agreement provides for the establishment of one or more series. When the company has filed a Certificate of Designation for each series, which is to have limited liability pursuant to Section 37-40 of the Illinois Limited Liability Company Act, the debts, liabilities and obligations incurred, contracted for or otherwise existing with respect to a particular series shall be enforceable against the assets of such series only, and not against the assets of the Limited Liability Company generally or any other series thereof, and unless otherwise provided in the operating agreement, none of the debts, liabilities, obligations or expenses incurred, contracted for or otherwise existing with respect to this company generally or any other series thereof shall be enforceable against the assets of such series.

08/10/2015  08:28  2175243390                    LIMITED LIABILITY                        PAGE  08/26

Form **LLC-5.25**

May 2012

Secretary of State
Department of Business Services
Limited Liability Division
501 S. Second St., Rm. 351
Springfield, IL  62756
217-524-8008
www.cyberdriveillinois.com

Payment may be made by check
payable to Secretary of State. If
check is returned for any reason this
filing will be void.

**Illinois
Limited Liability Company Act
Articles of Amendment**

SUBMIT IN DUPLICATE

Type or print clearly.

This space for use by Secretary of State.

Filing Fee:  $150

Approved:  _JB_

FILE # 0588194

This space for use by Secretary of State.

**FILED**

JUN 1 0 2015

JESSE WHITE
SECRETARY OF STATE

**PAID**

JUN 1 0 2015

DEPARTMENT OF
BUSINESS SERVICES

1.  Limited Liability Company Name: Stark Law LLC

2.  Articles of Amendment effective on:
    ☑ the file date
    ☐ a later date (not to exceed 30 days after the file date) _____
                                                                Month, Day, Year

3.  Articles of organization are amended as follows (check applicable item(s) below):
    ☐ a)  Admission of a new member (give name and address below)*
    ☐ b)  Admission of a new manager (give name and address below)*
    ☐ c)  Withdrawal of a member (give name below)*
    ☐ d)  Withdrawal of a manager (give name below)*
    ☑ e)  Change in address of the office at which the records required by Section 1-40 of the Act are kept (give new ad-
          dress, a P.O. Box alone or C/O is unacceptable.)
    ☐ f)  Change of registered agent and/or registered agent's office (give new name and/or address below, *Address change
          to P.O. box alone or c/o is unacceptable.*)
    ☐ g)  Change in the Limited Liability Company's name (give new name below)
    ☐ h)  Change in date of dissolution or other events of dissolution enumerated in Item 6 of the Articles of Organization
    ☐ i)  Other (give information in space below)
    ☐ j)  Establish authority to issue series (see back filing fee $400)*

*   Changes in members/managers may, but are not required to be reported in an amendment to the Articles of Organization.

Additional Information:

a)  Principal Place of Business
    500 Quail Ridge Drive
    Westmont, IL  60559

New Name of LLC (as changed): _____
                              The name as changed must contain the words Limited Liability Company, LLC or L.L.C.
                                                  (continued)

Printed by authority of the State of Illinois. FEBRUARY 2014 — 1 — LLC 11.15

**Menjivar Att. A
Page 6 of 10**

08/10/2015   08:28   2175243390          LIMITED LIABILITY              PAGE   09/26

*050ff194*
*6.10.2015*

**LLC-5.25**

4. The amendment was approved in accordance with Section 5-25 of the Illinois Limited Liability Company Act, and, if adopted by the managers, was approved by not less than the minimum number of managers necessary to approve the amendment, member action not being required; or, if adopted by the members, was approved by not less than the minimum number of members necessary to approve the amendment.

5. I affirm, under penalties of perjury, having authority to sign hereto, that these Articles of Amendment are to the best of my knowledge and belief, true, correct and complete.

Dated: **June 9**         **2015**
        Month/Day         Year

_____
Signature (Must comply with Section 5-45 of ILLCA.)

Gaurav Mohindra, Manager
Name and Title (type or print)

_____
If the member or manager signing this document
is a company or other entity, state Name of Company
and whether it is a member or manager of the LLC.

\* The following paragraph is adopted when Item 3j is checked:

The operating agreement provides for the establishment of one or more series. When the company has filed a Certificate of Designation for each series, which is to have limited liability pursuant to Section 37-40 of the Illinois Limited Liability Company Act, the debts, liabilities and obligations incurred, contracted for or otherwise existing with respect to a particular series shall be enforceable against the assets of such series only, and not against the assets of the Limited Liability Company generally or any other series thereof, and unless otherwise provided in the operating agreement, none of the debts, liabilities, obligations or expenses incurred, contracted for or otherwise existing with respect to this company generally or any other series thereof shall be enforceable against the assets of such series.

Form **LLC-5.25**
May 2012

Secretary of State
Department of Business Services
Limited Liability Division
501 S. Second St., Rm. 351
Springfield, IL  62756
217-524-8008
www.cyberdriveillinois.com

Payment may be made by check payable to Secretary of State. If check is returned for any reason this filing will be void.

**Illinois
Limited Liability Company Act
Articles of Amendment**

SUBMIT IN DUPLICATE
Type or print clearly.
This space for use by Secretary of State.

Filing Fee: $150
Approved:

File # 05068194
This space for use by Secretary of State.

**FILED**
JUL 2 0 2015
JESSE WHITE
SECRETARY OF STATE

1. Limited Liability Company Name: Stark Law LLC

**PAID**
JUL 2 0 2015
DEPARTMENT OF
BUSINESS SERVICES

2. Articles of Amendment effective on:
☑ the file date
☐ a later date (not to exceed 30 days after the file date)

Month, Day, Year

3. Articles of organization are amended as follows (check applicable item(s) below):
☐ a) Admission of a new member (give name and address below)*
☑ b) Admission of a new manager (give name and address below)*
☐ c) Withdrawal of a member (give name below)*
☑ d) Withdrawal of a manager (give name below)*
☑ e) Change in address of the office at which the records required by Section 1-40 of the Act are kept (give new address, a P.O. Box alone or C/O is unacceptable.)
☐ f) Change of registered agent and/or registered agent's office (give new name and/or address below, Address change to P.O. box alone or c/o is unacceptable.)
☐ g) Change in the Limited Liability Company's name (give new name below)
☐ h) Change in date of dissolution or other events of dissolution enumerated in item 8 of the Articles of Organization
☐ i) Other (give information in space below)
☐ j) Establish authority to issue series (see back filing fee $400)*

* Changes in members/managers may, but are not required to be reported in an amendment to the Articles of Organization.

Additional information:
b) The new managers shall be:
Clark Hall  7545 Irvine Center Drive, Irvine Business Center, Suite 200, Irvine, CA  92618
Mitchell LLC  7545 Irvine Center Drive, Irvine Business Center, Suite 200, Irvine, CA  92618

d) Withdrawing manager: Gaurav Mohindra

e) Principal Office: 7545 Irvine Center Drive, Irvine Business Center, Suite 200, Irvine, CA  92618

New Name of LLC (as changed): _____
The name as changed must contain the words Limited Liability Company, LLC or L.L.C.
(continued)

Printed by authority of the State of Illinois. FEBRUARY 2014 — 1 — LLC 11.15

**Menjivar Att. A
Page 8 of 10**

*05088194*

**LLC-5.25**

4. The amendment was approved in accordance with Section 5-25 of the Illinois Limited Liability Company Act, and, if adopted by the managers, was approved by not less than the minimum number of managers necessary to approve the amendment, member action not being required; or, if adopted by the members, was approved by not less than the minimum number of members necessary to approve the amendment.

5. I affirm, under penalties of perjury, having authority to sign hereto, that these Articles of Amendment are to the best of my knowledge and belief, true, correct and complete.

Dated: July 17 _____ 2015
              Month/Day                  Year

              Signature (Must comply with Section 5-45 of ILCA.)

GAURAV   MONWORN - Manager
              Name and Title (type or print)

              If the member or manager signing this document
              is a company or other entity, state Name of Company
              and whether it is a member or manager of the LLC.

\* The following paragraph is adopted when Item 3j is checked:

The operating agreement provides for the establishment of one or more series. When the company has filed a Certificate of Designation for each series, which is to have limited liability pursuant to Section 37-40 of the Illinois Limited Liability Company Act, the debts, liabilities and obligations incurred, contracted for or otherwise existing with respect to a particular series shall be enforceable against the assets of such series only, and not against the assets of the Limited Liability Company generally or any other series thereof, and unless otherwise provided in the operating agreement, none of the debts, liabilities, obligations or expenses incurred, contracted for or otherwise existing with respect to this company generally or any other series thereof shall be enforceable against the assets of such series.

**STATE OF ILLINOIS**
OFFICE OF THE SECRETARY OF STATE
I hereby certify that this is a true and correct copy,
consisting of _116_ pages, as taken from the
original on file in this office.

JESSE WHITE
SECRETARY OF STATE

DATE: _8/7/2015_

BY: _____

**Menjivar Att. A**
**Page 10 of 10**

# Attachment B

*File Number*        0522228-1



## To all to whom these Presents Shall Come, Greeting:

*I, Jesse White, Secretary of State of the State of Illinois, do hereby certify that I am the keeper of the records of the Department of Business Services. I certify that*

ATTACHED HERETO IS A TRUE AND CORRECT COPY, CONSISTING OF 6 PAGE(S), AS TAKEN FROM THE ORIGINAL ON FILE IN THIS OFFICE FOR STARK LEGAL LLC.



**In Testimony Whereof,** *I hereto set my hand and cause to be affixed the Great Seal of the State of Illinois, this* 27TH *day of* AUGUST *A.D.* 2015 .

*Desse White*

SECRETARY OF STATE

Authentication #: 1523901535 verifiable until 08/27/2016.
Authenticate at: http://www.cyberdriveillinois.com

**Menjivar Att. B**
**Page 1 of 7**

08/27/2015  12:43    2175243390             LIMITED LIABILITY              PAGE  10/15

Form **LLC-5.5**
October 2010

**Secretary of State**
Department of Business Services
Limited Liability Division
501 S. Second St., Rm. 351
Springfield, IL 62756
217-524-8008
www.cyberdriveillinois.com

Payment must be made by certified check, cashier's check, Illinois attorney's check, C.P.A.'s check or money order payable to Secretary of State.

**Illinois**
Limited Liability Company Act

**Articles of Organization**

SUBMIT IN DUPLICATE
Type or print clearly.

This space for use by Secretary of State.

Date:
Filing Fee: $500
Approved:

FILE #    ˉ05222281

This space for use by Secretary of State.

**FILED**

**MAY 2 8 2015**

**JESSE WHITE**
**SECRETARY OF STATE**

1.  Limited Liability Company Name: **Stark Legal LLC**

    The LLC name must contain the words Limited Liability Company, L.L.C. or LLC and cannot contain the terms Corporation, Corp., Incorporated, Inc., Ltd., Co., Limited Partnership or L.P.

2.  Address of Principal Place of Business where records of the company will be kept: (P.O. Box alone or c/o is unacceptable.)
    500 Quail Ridge Drive, Westmont, IL 60559

3.  Articles of Organization effective on: (check one)
    ☒ the filing date
    ☐ a later date (not to exceed 60 days after the filing date): _____
    Month, Day, Year

4.  Registered Agent's Name and Registered Office Address:

    Registered Agent: **National Registered Agents, Inc.**
    First Name         Middle Initial         Last Name

    Registered Office: **206 S. La Salle Street, Suite 814**
    (P.O. Box alone or c/o    Number         Street         Suite #
    is unacceptable.)

    Chicago              **IL**              60604
    City                                      ZIP Code

5.  Purpose(s) for which the Limited Liability Company is organized:
    The transaction of any or all lawful business for which Limited Liability Companies may be organized under this Act.
    (LLCs organized to provide professional services must list the address(es) from which those services will be rendered if different from item 2. If more space is needed, use additional sheets of this size.)

**PAID**

**MAY 2 8 2015**

**DEPARTMENT OF**
**BUSINESS SERVICES**

6.  Latest date, if any, upon which the company is to dissolve: _____
    (Leave blank if duration is perpetual.)                Month, Day, Year

    ♻ Printed on recycled paper. Printed by authority of the State of Illinois. March 2011 — 2M — LLC 4.15

**Menjivar Att. B**
**Page 2 of 7**

LLC-5.5

7. **(Optional)** Other provisions for the regulation of the internal affairs of the Company: (If more space is needed, attach additional sheets of this size.)

8. The Limited Liability Company: (Check either a or b below.)

   a. ☐ is managed by the manager(s) (List names and addresses.)

   b. ☒ has management vested in the member(s) (List names and addresses.)

   **Gaurav Mohindra**
   **500 Quail Ridge Drive**
   **Westmont, IL  60559**

9. Name and Address of Organizer(s):

   I affirm, under penalties of perjury, having authority to sign hereto, that these Articles of Organization are to the best of my knowledge and belief, true, correct and complete.

Dated _____ **May 27** _____ **2015**
              Month & Day                    Year

| | |
|---|---|
| 1. *Tia Baugher* | 1. 118 W. Edwards, Suite 200 |
| Signature | Number          Street |
| **Tia Baugher, Vice President** | **Springfield** |
| Name (type or print) | City/Town |
| **Corp-Link Services, Inc., Organizer** | **IL**          **62704** |
| Name if a Corporation or other Entity, and Title of Signer | State          ZIP Code |
| 2. _____ | 2. _____ |
| Signature | Number          Street |
| _____ | _____ |
| Name (type or print) | City/Town |
| _____ | _____ |
| Name if a Corporation or other Entity, and Title of Signer | State          ZIP Code |

**Signatures must be in black ink on an original document. Carbon copy, photocopy or rubber stamp signatures may only be used on conformed copies.**

♻ Printed on recycled paper. Printed by authority of the State of Illinois, March 2011 – 2M – LLC 4.15

**Menjivar Att. B**
**Page 3 of 7**

08/27/2015  12:43   2175243390              LIMITED LIABILITY                    PAGE  12/15

Form **LLC-5.25**
May 2012

Secretary of State
Department of Business Services
Limited Liability Division
501 S. Second St., Rm. 351
Springfield, IL 62756
217-524-8008
www.cyberdriveillinois.com

Payment may be made by check
payable to Secretary of State. If
check is returned for any reason this
filing will be void.

**Illinois**
**Limited Liability Company Act**
**Articles of Amendment**

SUBMIT IN DUPLICATE
Type or print clearly.
This space for use by Secretary of State.

Filing Fee:  $150
Approved: ___

FILE # 0522228/
This space for use by Secretary of State.

**FILED**

JUN 0 2 2015

JESSE WHITE
SECRETARY OF STATE

1. Limited Liability Company Name: Stark Legal LLC

2. Articles of Amendment effective on:
   ☑ the file date
   ☐ a later date (not to exceed 30 days after the file date) _____
                                                              Month, Day, Year

3. Articles of organization are amended as follows (check applicable item(s) below):
   ☑ a) Admission of a new member (give name and address below)*
   ☐ b) Admission of a new manager (give name and address below)*
   ☑ c) Withdrawal of a member (give name below)*
   ☐ d) Withdrawal of a manager (give name below)*
   ☐ e) Change in address of the office at which the records required by Section 1-40 of the Act are kept (give new address, a P.O. Box alone or C/O is unacceptable.)
   ☐ f) Change of registered agent and/or registered agent's office (give new name and/or address below. Address change to P.O. box alone or c/o is unacceptable.)
   ☐ g) Change in the Limited Liability Company's name (give new name below)
   ☐ h) Change in date of dissolution or other events of dissolution enumerated in Item 6 of the Articles of Organization
   ☐ i) Other (give information in space below)
   ☐ j) Establish authority to issue series (see back filing fee $400)*

*  Changes in members/managers may, but are not required to be reported in an amendment to the Articles of Organization.

Additional information:
a) Sole Member:  Hirsh Mohindra, 500 Quail Ridge Dr., Westmont, IL  60559

c) Withdrawing Member:  Gaurav Mohindra

**PAID**

JUN 0 3 2015

DEPARTMENT OF
BUSINESS SERVICES

New Name of LLC (as changed): _____
            The name as changed must contain the words Limited Liability Company, LLC or L.L.C.
                                    (continued)

Printed by authority of the State of Illinois. FEBRUARY 2014 — 1 — LLC 11.15

**Menjivar Att. B**
**Page 4 of 7**

08/27/2015   12:43      2175243390              LIMITED LIABILITY                    PAGE   13/15

05222281

**LLC-5.25**

4.  The amendment was approved in accordance with Section 5-25 of the Illinois Limited Liability Company Act, and, if adopted by the managers, was approved by not less than the minimum number of managers necessary to approve the amendment, member action not being required; or, if adopted by the members, was approved by not less than the minimum number of members necessary to approve the amendment.

5.  I affirm, under penalties of perjury, having authority to sign hereto, that these Articles of Amendment are to the best of my knowledge and belief, true, correct and complete.

Dated: June 2 _____ 2015
                     Month/Day                                      Year

_Gaura Mohindra_
Signature (Must comply with Section 5-45 of ILLCA.)

Gaurav Mohindra, Member
                     Name and Title (type or print)

_____
If the member or manager signing this document
is a company or other entity, state Name of Company
and whether it is a member or manager of the LLC.

\* The following paragraph is adopted when Item 3] is checked:

The operating agreement provides for the establishment of one or more series. When the company has filed a Certificate of Designation for each series, which is to have limited liability pursuant to Section 37-40 of the Illinois Limited Liability Company Act, the debts, liabilities and obligations incurred, contracted for or otherwise existing with respect to a particular series shall be enforceable against the assets of such series only, and not against the assets of the Limited Liability Company generally or any other series thereof, and unless otherwise provided in the operating agreement, none of the debts, liabilities, obligations or expenses incurred, contracted for or otherwise existing with respect to this company generally or any other series thereof shall be enforceable against the assets of such series.

**Menjivar Att. B**
**Page 5 of 7**

**Form LLC-5.25**

May 2012

Secretary of State
Department of Business Services
Limited Liability Division
501 S. Second St., Rm. 351
Springfield, IL 62756
217-524-8008
www.cyberdriveillinois.com

Payment may be made by check payable to Secretary of State. If check is returned for any reason this filing will be void.

**Illinois**
**Limited Liability Company Act**
**Articles of Amendment**

~~SUBMIT IN DUPLICATE~~
Type or print clearly.
This space for use by Secretary of State.

Filing Fee:  $150
Approved: _/s/_

FILE # 05222261

This space for use by Secretary of State.

**FILED**

JUL 3 0 2015

**JESSE WHITE**
**SECRETARY OF STATE**

**PAID**

JUL 3 0 2015

**DEPARTMENT OF**
**BUSINESS SERVICES**

*Month, Day, Year*

1. Limited Liability Company Name: Stark Legal LLC

2. Articles of Amendment effective on:
   ☑ the file date
   ☐ a later date (not to exceed 30 days after the file date) _____

3. Articles of organization are amended as follows (check applicable item(s) below):
   ☐ a) Admission of a new member (give name and address below)*
   ☑ b) Admission of a new manager (give name and address below)*
   ☐ c) Withdrawal of a member (give name below)*
   ☑ d) Withdrawal of a manager (give name below)*
   ☑ e) Change in address of the office at which the records required by Section 1-40 of the Act are kept (give new address, a P.O. Box alone or C/O is unacceptable.)
   ☐ f) Change of registered agent and/or registered agent's office (give new name and/or address below, *Address change to P.O. box alone or c/o is unacceptable.*)
   ☐ g) Change in the Limited Liability Company's name (give new name below)
   ☐ h) Change in date of dissolution or other events of dissolution enumerated in item 6 of the Articles of Organization
   ☐ i) Other (give information in space below)
   ☐ j) Establish authority to issue series (see back filing fee $400)*

   * Changes in members/managers may, but are not required to be reported in an amendment to the Articles of Organization.

   Additional Information:
   b) The new managers shall be:
   Clark Hall  7545 Irvine Center Drive, Irvine Business Center, Suite 200, Irvine, CA  92618
   Mitchell LLC  7545 Irvine Center Drive, Irvine Business Center, Suite 200, Irvine, CA  92618

   d) Withdrawing manager:  Hirsh Mohindra

   e) Principal Office:  7545 Irvine Center Drive, Irvine Business Center, Suite 200, Irvine, CA  92618

   New Name of LLC (as changed): _____
                    The name as changed must contain the words Limited Liability Company, LLC or L.L.C.
                                    (continued)

   Printed by authority of the State of Illinois. FEBRUARY 2014 — 1 — LLC 11.16

**Menjivar Att. B**
**Page 6 of 7**

LLC-5.25

0522228

4. The amendment was approved in accordance with Section 5-25 of the Illinois Limited Liability Company Act, and, if adopted by the managers, was approved by not less than the minimum number of managers necessary to approve the amendment, member action not being required; or, if adopted by the members, was approved by not less than the minimum number of members necessary to approve the amendment.

5. I affirm, under penalties of perjury, having authority to sign hereto, that these Articles of Amendment are to the best of my knowledge and belief, true, correct and complete.

Dated: July 17 _____ 2015

_____
Month/Day       Year

_____
Signature (Must comply with Section 5-45 of ILLCA.)

HIRSH    MOHINDRA    Manager
_____
Name and Title (type or print)

If the member or manager signing this document
is a company or other entity, state Name of Company
and whether it is a member or manager of the LLC.

* The following paragraph is adopted when Item 3| is checked:

The operating agreement provides for the establishment of one or more series. When the company has filed a Certificate of Designation for each series, which is to have limited liability pursuant to Section 37-40 of the Illinois Limited Liability Company Act, the debts, liabilities and obligations incurred, contracted for or otherwise existing with respect to a particular series shall be enforceable against the assets of such series only, and not against the assets of the Limited Liability Company generally or any other series thereof, and unless otherwise provided in the operating agreement, none of the debts, liabilities, obligations or expenses incurred, contracted for or otherwise existing with respect to this company generally or any other series thereof shall be enforceable against the assets of such series.

**Menjivar Att. B**
**Page 7 of 7**

# Attachment C

FORM **BCA 2.10**
**ARTICLES OF INCORPORATION**
Business Corporation Act

Filing Fee: $150
Franchise Tax: $ 25
**Total:** **$175**

File #: **68971152**

Approved By: **JXR**

**FILED**

**APR 03 2013**

**Jesse White**
**Secretary of State**

1. Corporate Name: ASHTON ASSET MANAGEMENT, INC.

2. Initial Registered Agent: IAN L ERDOS

| First Name | Middle Initial | Last Name |
|---|---|---|

Initial Registered Office: 500 QUAIL RIDGE DRIVE

| Number | Street | Suite No. |
|---|---|---|
| WESTMONT | IL | 60559 | DU PAGE |

| City | | ZIP Code | County |

3. Purposes for which the Corporation is Organized:
   The transaction of any or all lawful businesses for which corporations may be incorporated under the Illinois Business Corporation Act.

4. Authorized Shares, Issued Shares and Consideration Received:

| Class | Number of Shares Authorized | Number of Shares Proposed to be Issued | Consideration to be Received Therefor |
|---|---|---|---|
| COMMON | 10000 | 1000 | $ 1000 |

## NAME & ADDRESS OF INCORPORATOR

5. The undersigned incorporator hereby declares, under penalties of perjury, that the statements made in the foregoing Articles of Incorporation are true.

| Dated APRIL 03 | 2013 | 500 QUAIL RIDGE DRIVE | | |
|---|---|---|---|---|
| Month & Day | Year | Street | | |
| HIRSH MOHINDRA | | WESTMONT | IL | 60559 |
| Name | | City/Town | State | ZIP Code |

**Menjivar Att. C**
**Page 1 of 5**



**State of Illinois**
**Domestic/Foreign Corporation Annual Report**

| | |
|---|---|
| **Year** | **Corporation File No** |
| 2014 | 68971152 |

FILED    May 14, 2014

Jesse White, Secretary of State

1.  Corporate Name  ASHTON ASSET MANAGEMENT, INC.

    Registered Agent  IAN L ERDOS

    Registered Office  500 QUAIL RIDGE DRIVE

    City, IL, Zip Code, County WESTMONT 605590000 DU PAGE

2.  Principal address of Corporation 500 QUAIL RIDGE DRIVE        WESTMONT        IL 60559

3a.  State or Country of Incorporation IL                3b. Date Incorporated/Qualified 04-03-2013

4.  The names and addresses of ALL officers & directors MUST be listed here!

| Officers | |
|---|---|
| Title<br>Name & Address | PRESIDENT<br>HIRSH MOHINDRA |
| Title<br>Name & Address | DIRECTOR<br>HIRSH MOHINDRA            500 QUAIL RIDGE DRIVE        WESTMONT        IL<br>60559 |
| Title<br>Name & Address | |

5.  If 51% or more of the stock is owned by a minority or female, please check the appropriate box

    ☑Minority        ☐Female        ☐Both

6.  Number of shares authorized and issued as of  01-31-2014

| Class | Series | Par Value | Number Authorized | Number Issued |
|---|---|---|---|---|
| COMMON | | 0.00000 | 10000 | 1000.000 |
| | | | | |

7.  The amount of paid-in-capital as of  01-31-2014        is  $ 1000

8.  All property owned by the corporation is located in Illinois and all business transacted by the corporation is in Illinois

9.  Under the penalty of perjury and as an authorized officer, I declare that this annual report, pursuant to provisions of the Business Corporation Act, has been examined by me and is, to the best of my knowledge and belief, true, correct and complete.

By  HIRSH MOHINDRA
**Authorized Officer**

PRESIDENT        05-14-2014
**Title & Date**

| Fee Summary |
|---|
| Franchise Tax: $25.00 |
| Filing Fee: $75.00 |
| Penalty: $2.50 |
| Interest: $1.00 |
| |
| Total Fee: $103.50 |

This document was electronically generated at www.cyberdriveillinois.com

**Menjivar Att. C**
**Page 2 of 5**

FORM **BCA 14.05** (rev. Oct. 2014)
**DOMESTIC CORPORATION**
**ANNUAL REPORT**
Business Corporation Act

Secretary of State
Department of Business Services
501 S. Second St., Rm. 350
Springfield, IL 62756
217-782-7808
www.cyberdriveillinois.com

Payment must be made by check or money
order payable to Secretary of State.

**FILED**

**MAY 2 7 2015**

**JESSE WHITE**
**SECRETARY OF STATE**

File Prior To: __4-1__  Year: __2015__  File #: __6897-115-2__  Approved: __ac__

**Note:** A change in the Registered Agent and/or Registered Office may _only_ be affected by filing Form BCA-5.10/5.20.

1. Corporate Name: Ashton Asset Management, Inc.
   Registered Agent: Ian L. Erdos
   Registered Office: 500 Quail Ridge Drive
   City, IL, ZIP Code: Westmont, Illinois 60559    County: DuPage

2. Principal Address of Corporation: ___500 Quail Ridge Drive___  ___Westmont___  ___Illinois___  ___60559___
   Street / City / State / ZIP Code

3. Date Incorporated: ___April___  ___3___  ___2013___
   Month / Day / Year

4. Names and Addresses of Officers and Directors:

**NOTE:** The names and addresses of ALL officers and directors must be entered in this item or on an additional sheet.

| OFFICE | NAME | NUMBER & STREET | CITY | STATE | ZIP |
|---|---|---|---|---|---|
| President | Hirsh Mohindra | 500 Quail Ridge Drive | Westmont | Illinois | 60559 |
| Secretary | | | | | |
| Treasurer | | | | | |
| Director | | | | | |
| Director | | | | CD0075643 | |
| Director | | | | | |

5. If 51% or more of stock is owned by a minority or female, please check the appropriate box: ☐ Minority Owned  ☐ Female Owned

6. Number of shares authorized and issued (as of ___1 31 2015___):

| CLASS | SERIES | PAR VALUE | NUMBER AUTHORIZED | NUMBER ISSUED |
|---|---|---|---|---|
| Common | N/A | N/A | 10,000 | 1,000 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**IMPORTANT:** If the amount in item 6 or 7a differs from the Secretary of State's records, form BCA 14.30 must be completed.

7a. Amount of Paid-in Capital (as of ___1 31 2015___ ): $ 1,000.00

7b. Paid-in Capital on record with Secretary of State: $ 1,000.00

> (Paid-in Capital reflects the sum of the Stated Capital and Paid-in surplus accounts.)

Under the penalty of perjury and as an authorized officer, I declare that this annual report, pursuant to provisions of the Business Corporation Act, has been examined by me and is, to the best of my knowledge and belief, true, correct and complete.

**Item 8 Must Be Signed.**

8. By: ___[signature]___  ___5 22 15___  ___PRESIDENT___
   Any Authorized Officer's Signature / Title / Date

Menjivar Att. C
Page 3 of 5

**Please Complete Reverse Side of This Report**

Printed by authority of the State of Illinois. January 2015 — 1 — C 289.11

**Item 9 OR 10a OR 10b, whichever is applicable, MUST be completed.)**

9. Amounts stated in parts (a) through (d) below are given for the 12-month period
ending _____ , _____

        Day        Month        Year

   Value of property (gross assets):

     (a)  owned by the corporation, wherever located: ................................................... (a)  $ _____

     (b)  of the corporation located within the State of Illinois:.................................... (b)  $ _____

   Gross amount of business transacted by the corporation:

     (c)  everywhere for the above period: ...................................................................... (c)  $ _____

     (d)  at or from places of business in Illinois for the above period:..................... (d)  $ _____

$$\text{ALLOCATION FACTOR} = \frac{b+d}{a+c} = \underline{\quad\quad\quad\quad\quad}$$
                                       6 decimal places    Enter this figure on line 11b below.

10a. ☐ ALL property of the Corporation is located in Illinois and ALL business of the Corporation is transacted at or from places of business in Illinois.

10b. ☑ The Corporation elects to pay franchise tax on the basis of 100% of its total Paid-in Capital.

   ALLOCATION FACTOR = 1.00000 *(Enter this figure on line 11b below.)*

## STOP: Item 9 or 10 must be completed before continuing to Item 11.

11.  ANNUAL FRANCHISE TAX AND FEES

| | | |
|---|---|---:|
| 11a. TOTAL PAID-IN CAPITAL (Enter amount from Item 7a; if late, enter the greater of 7a or 7b.) ............... **a.** | | $1,000.00 |
| 11b. ALLOCATION FACTOR (Enter from Item 9 or Item 10.) ............... **b.** | | 1.00000 |
| 11c. ILLINOIS CAPITAL (Multiply line 11a by line 11b.) ............... **c.** | | $1,000.00 |
| 11d1. Multiply line 11c by .001 (Round to nearest cent.) ............... **d1** | | $1.00 |
| 11d2. ANNUAL FRANCHISE TAX (Enter amount from line d1, but not less than $25).... **d2** | | $25.00 |
| 11e1. If Annual Report is late, multiply line d2 by .10 :............... **e1.** | | $2.50 |
| 11e2. If Annual Franchise Tax is late, multiply line d2 by .02 for each month late or part thereof (minimum $1)............... **e2.** | | $1.00 |
| 11e3. INTEREST & PENALTIES (Add lines e1 and e2.) ............... **e3.** | | $3.50 |
| 11f. ANNUAL REPORT FILING FEE ($75) ............... **11f.** | | $75.00 |
| 11g. TOTAL ANNUAL FRANCHISE TAX, FEES, INTEREST, PENALTIES DUE (Add line d2 + line e3 + line f.) ............... **11g.** | | $103.50 ✓ |

**MAKE CHECKS PAYABLE TO ILLINOIS SECRETARY OF STATE.**
**(Place corporate file number on check.)**

**IMPORTANT:**
**If there have been changes in Items 6 or 7, Form BCA 14.30 must be executed**
**and submitted with this Annual Report in the same envelope.**

**Menjivar Att. C**
**Page 4 of 5**

**STATE OF ILLINOIS**
**OFFICE OF THE SECRETARY OF STATE**
I hereby certify that this is a true and correct copy,
consisting of ___*Four*___ pages, as taken from the
original on file in this office.

*Jesse White*
JESSE WHITE
SECRETARY OF STATE

DATE: 8/7/2015

BY: _____

**Menjivar Att. C**
**Page 5 of 5**

# Attachment D

*File Number*        0358659-6



## To all to whom these Presents Shall Come, Greeting:

*I, Jesse White, Secretary of State of the State of Illinois, do hereby certify that I am the keeper of the records of the Department of Business Services. I certify that*

ATTACHED HERETO IS A TRUE AND CORRECT COPY, CONSISTING OF 13 PAGE(S), AS TAKEN FROM THE ORIGINAL ON FILE IN THIS OFFICE FOR CHM CAPITAL GROUP, LLC.



*In Testimony Whereof, I hereto set my hand and cause to be affixed the Great Seal of the State of Illinois, this* 10TH *day of* AUGUST *A.D.* 2015

*Jesse White*

SECRETARY OF STATE

Authentication #: 1522200483 verifiable until 08/10/2016.
Authenticate at: http://www.cyberdriveillinois.com

**Menjivar Att. D
Page 1 of 16**

08/10/2015   08:28    2175243390            LIMITED LIABILITY                    PAGE   14/26

| Form **LLC-5.5** | **Illinois**<br>**Limited Liability Company Act**<br>**Articles of Organization** | FILE # 03586596 |
| --- | --- | --- |
| Secretary of State Jesse White<br>Department of Business Services<br>Limited Liability Division<br>www.cyberdriveillinois.com | Filing Fee:  $500<br>Expedited Fee:  $100<br>Approved By:  JFL | **FILED**<br><br>APR 21 2011<br><br>Jesse White<br>Secretary of State |

1.  Limited Liability Company Name: CHM CAPITAL GROUP, LLC

2.  Address of Principal Place of Business where records of the company will be kept:
    2224 W. TOUHY UNIT 1E

    CHICAGO, IL 60630

3.  Articles of Organization effective on the filing date.

4.  Registered Agent's Name and Registered Office Address:

    IAN L ERDOS
    4730 N LEAMINGTON AVE
    CHICAGO, IL 60630-3815                          COOK

5.  Purpose for which the Limited Liability Company is organized:
    "The transaction of any or all lawful business for which Limited Liability Companies may be organized under this Act."

6.  The LLC is to have perpetual existence.

7.  The Limited Liability Company is managed by the manager(s).

    MOHINDRA, HIRSH
    2224 W. TOUHY AVE UNIT 1E, CHICAGO, IL 60630

8.  Name and Address of Organizer
    I affirm, under penalties of perjury, having authority to sign hereto, that these Articles of Organization are to the best of my knowledge and belief, true, correct and complete.

    Dated: APRIL 21, 2011                    IAN L ERDOS
                                             2224 WEST TOUHY UNIT 1E
                                             CHICAGO, IL 60630

This document was generated electronically at www.cyberdriveillinois.com

**Menjivar Att. D**
**Page 2 of 16**

08/10/2015  08:28  2175243390          LIMITED LIABILITY          PAGE  15/26

LC0861245

**Form LLC-1.36/1.37**

July 2010

Secretary of State
Department of Business Services
Limited Liability Division
501 S. Second St., Rm. 351
Springfield, IL 62756
217-524-8008
www.cyberdriveillinois.com

Payment may be made by check payable to Secretary of State. If check is returned for any reason this filing will be void.

**Illinois**
**Limited Liability Company Act**
**Statement of Change of Registered Agent and/or Registered Office**

SUBMIT IN DUPLICATE

Must be typewritten.

This space for use by Secretary of State.

Filing Fee: $25

Penalty (See Note 1):

Approved:

FILE # 0356596

This space for use by Secretary of State.

**FILED**

FEB 1 0 2012

**JESSE WHITE**
**SECRETARY OF STATE**

PAID

FEB 1 5 2012

DEPARTMENT OF BUSINESS SERVICES

1. Limited Liability Company Name: CBA CAPITAL GROUP, LLC

2. Name and Address of Registered Agent and Registered Office as they appear on the records of the Office of the Secretary of State (before change):

   Registered Agent:  IAN    I.    ERDOS
                      First Name   Middle Name        Last Name

   Registered Office: 2224  WEST  TOUHY  SUITE 1E
                      Number  Street         Suite No. (P.O. Box alone is unacceptable)

                      CHICAGO                    IL        60630
                      City                                 ZIP Code

3. Name and Address of Registered Agent and Registered Office shall be (after all changes herein reported):

   Registered Agent:  NATIONAL REGISTERED AGENTS, INC.
                      First Name   Middle Name        Last Name

   Registered Office: 200 WEST ADAMS STREET
                      Number  Street         Suite No. (P.O. Box alone is unacceptable)

                      CHICAGO                    IL        60606
                      City                                 ZIP Code

4. The address of the registered office and the address of the business office of the registered agent, as changed, will be identical.

5. The above change was authorized by: (check one box only)
   a. ☒ the members or managers. (See Note 5.)
   b. ☐ action of the registered agent. (See Note 6.)

**SEE REVERSE FOR SIGNATURE(S).**

Printed on recycled paper.
Printed by authority of the State of Illinois. November 2011 — 7M — LLC 36.3

**Menjivar Att. D**
**Page 3 of 16**

0 35 86 594

**LLC-1.36/1.37**

6.  If the change to the registered agent or registered office is authorized by the members or managers, sign here.
    (See Note 5 below.)

The undersigned affirms, under penalties of perjury, having authority to sign hereto, that this statement to change the reg-
istered agent or address is to the best of my knowledge and belief, true, correct and complete.

Dated __FEBRUARY__ _____ 20____
                       Month/Day                                   Year

                                        Signature

__HEITSA  MONTENORO__ _____ MANAGER
                                    Name and Title (type or print)

If the member or manager signing this document is a company or
other entity, state name of company and indicate whether it is a
member or manager of the Limited Liability Company.

**If change of registered office by registered agent, sign here. (See Note 6 below.)**

The undersigned, under penalties of perjury, affirms that the facts stated herein are true, correct and complete.

Dated _____
                           Month/Day                                 Year

                         Signature of Registered Agent of Record

                         Name and Title (type or print)
                         If registered agent is a corporation,
                     name and title of officer who is signing on its behalf.

## NOTES

1.  A $300 penalty applies when the Limited Liability Company fails to appoint and maintain a registered agent in Illinois within
    60 days of notification to the Secretary of State by the resigning registered agent.

2.  The registered office may, but need not be, the same as the principal office of the Limited Liability Company; however,
    the registered office and the office address of the registered agent must be the same.

3.  The registered office must include an Illinois street or road address (P.O. Box alone is unacceptable).

4.  A Limited Liability Company cannot act as its own registered agent.

5.  Any change of registered agent or registered address effected by the Limited Liability Company must be authorized by
    the members or managers.

6.  The registered agent may report a change of the registered office address of the Limited Liability Company for which
    he/she is a registered agent. When the agent reports such a change, this statement must be signed by the registered
    agent. If a corporation is acting as the registered agent, a duly authorized officer of the corporation must sign this
    statement.

Printed on recycled paper.
Printed by authority of the State of Illinois. November 2011 — 1 M — LLC 36.3

**Menjivar Att. D**
**Page 4 of 16**

Form **LLC-5.25**

April 2010

Secretary of State
Department of Business Services
Limited
501 S.
Spring     LC0867778
217-5b.~uuu~
www.cyberdriveillinois.com

Make check payable to Secretary of State. If check is returned for any reason this filing will be void.

**Illinois**
**Limited Liability Company Act**
**Articles of Amendment**

Type or print clearly.

This space for use by Secretary of State.

Filing Fee: $150

Approved: _LB_

FILE #: 03586596

This space for use by Secretary of State.

**FILED**

MAR 0 2 2012

**JESSE WHITE**
**SECRETARY OF STATE**

**PAID**

MAR 1 4 2012

**DEPARTMENT OF**
**BUSINESS SERVICES**

1. Limited Liability Company Name: CHM CAPITAL GROUP, LLC
   _____

2. Articles of Amendment effective on:
   ☑ the file date
   ☐ a later date (not to exceed 30 days after the file date) _____
                                        Month, Day, Year

3. Articles of organization are amended as follows (check applicable item(s) below):
   ☐ a) Admission of a new member (give name and address below)*
   ☑ b) Admission of a new manager (give name and address below)*
   ☐ c) Withdrawal of a member (give name below)*
   ☐ d) Withdrawal of a manager (give name below)*
   ☐ e) Change in address of the office at which the records required by Section 1-40 of the Act are kept (give new address, including county below)
   ☐ f) Change of registered agent and/or registered agent's office (give new name and address below) (Address change to P.O. box alone or c/o is unacceptable.)
   ☐ g) Change in the Limited Liability Company's name (give new name below)
   ☐ h) Change in date of dissolution or other events of dissolution enumerated in Item 5 of the Articles of Organization
   ☐ i) Other (give information in space below)
   ☐ j) Establish authority to issue series (see back filing fee $400)*

   * Changes in members/managers may, but are not required to be reported in an amendment to the Articles of Organization.

Additional information:
HXM FUNDING, LTD.
2224 W. Touhy, Ste. 1E
Chicago, IL 60645

New Name of LLC (if changed): _____

(continued on back)

Printed by authority of the State of Illinois, November 2011 — 600 — LLC 11.12

**Menjivar Att. D**
**Page 5 of 16**

08/10/2015  08:28  2175243390          LIMITED LIABILITY          PAGE  18/26

035F 659L
3. 2. 2012

4. The amendment was approved in accordance with Section 5-25 of the Illinois Limited Liability Company Act, and, if adopted by the managers, was approved by not less than the minimum number of managers necessary to approve the amendment, member action not being required; or, if adopted by the members, was approved by not less than the minimum number of members necessary to approve the amendment.

5. I affirm, under penalties of perjury, having authority to sign hereto, that these Articles of Amendment are to the best of my knowledge and belief, true, correct and complete.

Dated: **2 - 7 - 12**
          Month/Day                Year

Signature (Must comply with Section 5-45 of ILLCA)

**HIRSH MOHSENDRA, _____ MGR**
          ' Name and Title (type or print)

If the member or manager signing this document
is a company or other entity, state Name of Company
and whether it is a member or manager of the LLC.

* **The following paragraph is adopted when item 3] is checked:**

The operating agreement provides for the establishment of one or more series. When the company has filed a Certificate of Designation for each series, which is to have limited liability pursuant to Section 37-40 of the Illinois Limited Liability Company Act, the debts, liabilities and obligations incurred, contracted for or otherwise existing with respect to a particular series shall be enforceable against the assets of such series only, and not against the assets of the Limited Liability Company generally or any other series thereof, and unless otherwise provided in the operating agreement, none of the debts, liabilities, obligations or expenses incurred, contracted for or otherwise existing with respect to this company generally or any other series thereof shall be enforceable against the assets of such series.

**Menjivar Att. D**
**Page 6 of 16**

08/18/2015   08:28    2175243390                    LIMITED LIABILITY                    PAGE   19/26

Form **LLC-1.20**

**Illinois**
**Limited Liability Company Act**
Application to Adopt an Assumed Name

FILE # 3586596

Secretary of State Jesse White
Department of Business Services
Limited Liability Division
Room 351 Howlett Building
501 S. Second St.
Springfield, IL 62756
www.cyberdriveillinois.com

Filing Fee:  90.00
Approved:  JFP

**FILED**

**Apr 10, 2012**

**Jesse White**
**Secretary of State**

1. Limited Liability Company Name: CHM CAPITAL GROUP, LLC

2. State under the laws of which the company is organized: IL

3. Date organized or authorized in Illinois: 04/21/2011

4. The Limited Liability Company intends to adopt and transact business under the assumed name of:

   CAPITAL HARRIS MILLER & ASSOCIATES

   The right to use the assumed name shall be effective from the date this application is filed by the Secretary of State until _____04/01/2015_____, the first day of the company's anniversary month in the next year, which is evenly divisible by five.

5. The undersigned affirms, under penalties of perjury, having authority to sign hereto, that this Application to Adopt, Change, Cancel or Renew an Assumed Name is to the best of my knowledge and belief, true, correct and complete.

   Dated _____Apr 10_____, ____2012____
                    Month & Day                Year

   IAN ERDOS
   Name

   GENERAL COUNSEL
   Title

   HKM FUNDING LTD
   If applicant is a company or other entity, state name of company
   and indicate whether it is a member or manager of the LLC.

This document was generated electronically at www.cyberdriveillinois.com

Form **LLC-1.36/1.37**
May 2012
Secretary of State
Department of Business Services
Limited Liability Division
S
S
2
LC0009008
www.cyberdriveillinois.com

**Illinois**
**Limited Liability Company Act**
**Statement of Change of Registered**
**Agent and/or Registered Office**

FILE # 03586596
This space for use by Secretary of State.

**FILED**

**APR 0 4 2013**

**JESSE WHITE**
**SECRETARY OF STATE**

SUBMIT IN DUPLICATE
Type or print clearly.
This space for use by Secretary of State.

Payment may be made by check
payable to Secretary of State. If
check is returned for any reason this
filing will be void.

Filing Fee: $25
Penalty (See Note 1.):
Approved: *VB*

**PAID**

APR 0 4 2013

DEPARTMENT OF
BUSINESS SERVICES

1. Limited Liability Company Name: CHM CAPITAL GROUP, LLC

2. Name and Address of Registered Agent and Registered Office as they appear on the records of the Office of the Secretary
   of State (before change):

   Registered Agent:   NATIONAL REGISTERED AGENT   INC.
                       First Name              Middle Name              Last Name

   Registered Office:  200 WEST ADAMS STREET
                       Number    Street                  Suite No. (P.O. Box alone is unacceptable)

                       CHICAGO                                    IL        60606
                       City                                       ZIP Code

3. Name and Address of Registered Agent and Registered Office shall be (after all changes herein reported):

   Registered Agent:   IAN L ERDOS
                       First Name              Middle Name              Last Name

   Registered Office:  215 REMINGTON BOULEVARD SUITE E
                       Number    Street                  Suite No. (P.O. Box alone is unacceptable)

                       BOLINGBROOK                                IL        60440
                       City                                       ZIP Code

4. The address of the registered office and the address of the business office of the registered agent, as changed, will be
   identical.

5. The above change was authorized by: (check one box only)
   a. ☑ the members or managers. (See Note 5.)
   b. ☐ action of the registered agent. (See Note 6.)

**SEE REVERSE FOR SIGNATURE(S).**

Printed by authority of the State of Illinois. May 2012 — 1 — LLC 36.4

035 F 6596

LLC-1.36/1.37

6. **If the change to the registered agent or registered office is authorized by the members or managers, sign here. (See Note 5 below.)**

The undersigned affirms, under penalties of perjury, having authority to sign hereto, that this statement to change the registered agent or address is to the best of my knowledge and belief, true, correct and complete.

Dated APRIL 2 , 2013
           Month/Day                 Year

_(signature)_
          Signature

HIRSH MOHINDRA PRESIDENT
          Name and Title (type or print)

HKM FUNDING LTD    MGR
If the member or manager signing this document is a company or
other entity, state name of company and indicate whether it is a
member or manager of the Limited Liability Company.

**If change of registered office by registered agent, sign here. (See Note 6 below.)**

The undersigned, under penalties of perjury, affirms that the facts stated herein are true, correct and complete.

Dated _____ , _____
          Month/Day           Year

_____
Signature of Registered Agent of Record

_____
Name and Title (type or print)
If registered agent is a corporation,
name and title of officer who is signing on its behalf.

## NOTES

1. A $300 penalty applies when the Limited Liability Company fails to appoint and maintain a registered agent in Illinois within 60 days of notification of the Secretary of State by the resigning registered agent.

2. The registered office may, but need not be, the same as the principal office of the Limited Liability Company; however, the registered office and the office address of the registered agent must be the same.

3. The registered office must include an Illinois street or road address (P.O. Box alone is unacceptable).

4. A Limited Liability Company cannot act as its own registered agent.

5. Any change of registered agent or registered address effected by the Limited Liability Company must be authorized by the members or managers.

6. The registered agent may report a change of the registered office address of the Limited Liability Company for which he/she is a registered agent. When the agent reports such a change, this statement must be signed by the registered agent. If a corporation is acting as the registered agent, a duly authorized officer of the corporation must sign this statement.

**Menjivar Att. D**
**Page 9 of 16**

08/10/2015  08:28    2175243390              LIMITED LIABILITY                    PAGE  22/26

Form LLC-1.36/1.37

May 2012
Secretary of State
Department of Business Services
Limited Liability Division
501 S. Second St., Rm. 351
Springfield, IL 62756
217-524-8008
www.cyberdriveillinois.com

Payment may be made by check
payable to Secretary of State. If
check is returned for any reason this
filing will be void.

**Illinois**
**Limited Liability Company Act**
**Statement of Change of Registered**
**Agent and/or Registered Office**

SUBMIT IN DUPLICATE

Type or print clearly.
This space for use by Secretary of State.

Filing Fee: $25
Penalty (See Note 1 on page 2.):
Approved:

FILE # 03586595

This space for use by Secretary of State.

**FILED**

OCT 2 7 2014

**JESSE WHITE**
**SECRETARY OF STATE**

1. Limited Liability Company Name:  CHM Capital Group, LLC

PAID
OCT 2 7 2014
DEPARTMENT OF
BUSINESS SERVICES

2. Name and Address of Registered Agent and Registered Office as they appear on the records of the Office of the Secretary of State (before change):

| Registered Agent: | Ian | L | | Erdos |
| --- | --- | --- | --- | --- |
| | First Name | Middle Name | | Last Name |
| Registered Office: | 215 | East Remington Blvd | Suite E | |
| | Number | Street | Suite No. (P.O. Box alone is unacceptable) | |
| | Bolingbrook | | IL | 60440 |
| | City | | | ZIP Code |

3. Name and Address of Registered Agent and Registered Office shall be (after all changes herein reported):

| Registered Agent: | Gaurav | | | Mohindra |
| --- | --- | --- | --- | --- |
| | First Name | Middle Name | | Last Name |
| Registered Office: | 500 | Quail Ridge Drive | Suite No. (P.O. Box alone is unacceptable) | |
| | Number | Street | | |
| | Westmont | | IL | 60559 |
| | City | | | ZIP Code |

Note: The registered agent must reside in Illinois. If the agent is a business entity, it must be authorized to act as agent in this state.

4. The address of the registered office and the address of the business office of the registered agent, as changed, will be identical.

5. The above change was authorized by: (check one box only)
   a. ⦿ the members or managers. (See Note 5 on page 2.)
   b. ◯ action of the registered agent. (See Note 6 on page 2.)

**SEE REVERSE FOR SIGNATURE(S).**

Printed by authority of the State of Illinois. July 2014 — 1 — LLC 36.5

Menjivar Att. D
Page 10 of 16

08/10/2015  08:28   2175243390                    LIMITED LIABILITY                      PAGE  23/26

035F 6596
10·27·2014

LLC-1.36/1.37

6.  If the change to the registered agent or registered office is authorized by the members or managers, sign here.
(See Note 5 below.)

The undersigned affirms, under penalties of perjury, having authority to sign hereto, that this statement to change the registered agent or address is to the best of my knowledge and belief, true, correct and complete.

Dated _____October 24_____                          2014
                        Month/Day                        Year

_____
                         Signature
                    Hirsh Mohindra
_____
                Name and Title (type or print)
            President, HKM Funding Ltd.
_____
        If the member or manager signing this document is a company or
        other entity, state name of company and indicate whether it is a
        member or manager of the Limited Liability Company.

If change of registered office by registered agent, sign here. (See Note 6 below.)

The undersigned, under penalties of perjury, affirms that the facts stated herein are true, correct and complete.

Dated _____          _____
                        Month/Day                        Year

_____
            Signature of Registered Agent of Record

_____
                Name and Title (type or print)
            If registered agent is a business entity,
        name and title of officer who is signing on its behalf.

## NOTES

1.  A $300 penalty applies when the Limited Liability Company fails to appoint and maintain a registered agent in Illinois within 60 days of notification of the Secretary of State by the resigning registered agent.

2.  The registered office may, but need not be, the same as the principal office of the Limited Liability Company; however, the registered office and the office address of the registered agent must be the same.

3.  The registered office must include an Illinois street or road address (P.O. Box alone is unacceptable).

4.  A Limited Liability Company cannot act as its own registered agent.

5.  Any change of registered agent effected by the Limited Liability Company must be authorized by the members or managers.

6.  The registered agent may report a change of the registered office address of the Limited Liability Company for which he/she is a registered agent. When the agent reports such a change, this statement must be signed by the registered agent. If a business entity is acting as the registered agent, an authorized person must sign this statement.

08/10/2015  08:28  2175243390          LIMITED LIABILITY                PAGE  24/26

**Form LLC-1.36/1.37**
May 2012
Secretary of State
Department of Business Services
Limited Liability Division
501 S. Second St., Rm. 351
Springfield, IL 62756
217-524-8008
www.cyberdriveillinois.com

Payment may be made by check
payable to Secretary of State. If
check is returned for any reason this
filing will be void.

**Illinois
Limited Liability Company Act
Statement of Change of Registered
Agent and/or Registered Office**

SUBMIT IN DUPLICATE
Type or print clearly.

This space for use by Secretary of State.

Filing Fee:  $25
Penalty (See Note 1 on page 2.):
Approved:

FILE # 03586596
This space for use by Secretary of State.

**FILED**

**NOV 26 2014**

**JESSE WHITE
SECRETARY OF STATE**

1. Limited Liability Company Name:  CHM Capital Group, LLC

2. Name and Address of Registered Agent and Registered Office as they appear on the records of the Office of the Secretary
   of State (before change):

   Registered Agent:    Gaurav Mohindra
                        First Name          Middle Name          Last Name

   Registered Office:   500 Quail Ridge Drive
                        Number      Street         Suite No. (P.O. Box alone is unacceptable)
                        Westmont                                 IL      60559
                        City                                     ZIP Code

3. Name and Address of Registered Agent and Registered Office shall be (after all changes herein reported):

   Registered Agent:    National Registered Agents, Inc.
                        First Name          Middle Name          Last Name

   Registered Office:   200 W. Adams Street
                        Number      Street         Suite No. (P.O. Box alone is unacceptable)
                        Chicago                                  IL      60606
                        City                                     ZIP Code

Note: The registered agent must reside in Illinois. If the agent is a business entity, it must be authorized to act as agent in this state.

4. The address of the registered office and the address of the business office of the registered agent, as changed, will be
   identical.

5. The above change was authorized by: (check one box only)
   a. ● the members or managers. (See Note 5 on page 2.)
   b. ○ action of the registered agent. (See Note 6 on page 2.)

**PAID**

NOV 26 2014

DEPARTMENT OF
BUSINESS SERVICES

SEE REVERSE FOR SIGNATURE(S).

Printed by authority of the State of Illinois. July 2014 — 1 — LLC 34.5

Menjivar Att. D
Page 12 of 16

LLC-1.36/1.37

6. If the change to the registered agent or registered office is authorized by the members or managers, sign here.
   (See Note 5 below.)

The undersigned affirms, under penalties of perjury, having authority to sign hereto, that this statement to change the reg-
istered agent or address is to the best of my knowledge and belief, true, correct and complete.

Dated   November 25                                    2014
                        Month/Day                            Year

_____
                              Signature

Hirsh Mohindra
                        Name and Title (type or print)

HKM Funding, Ltd., Manager
                 If the member or manager signing this document is a company or
                 other entity, state name of company and indicate whether it is a
                      member or manager of the Limited Liability Company.


If change of registered office by registered agent, sign here. (See Note 5 below.)

The undersigned, under penalties of perjury, affirms that the facts stated herein are true, correct and complete.

Dated   _____
                        Month/Day                            Year

_____
                 Signature of Registered Agent of Record

_____
                        Name and Title (type or print)
                   If registered agent is a business entity,
             name and title of officer who is signing on its behalf.


## NOTES

1. A $300 penalty applies when the Limited Liability Company fails to appoint and maintain a registered agent in Illinois within
   60 days of notification of the Secretary of State by the resigning registered agent.

2. The registered office may, but need not be, the same as the principal office of the Limited Liability Company; however,
   the registered office and the office address of the registered agent must be the same.

3. The registered office must include an Illinois street or road address (P.O. Box alone is unacceptable).

4. A Limited Liability Company cannot act as its own registered agent.

5. Any change of registered agent effected by the Limited Liability Company must be authorized by the members or man-
   agers.

6. The registered agent may report a change of the registered office address of the Limited Liability Company for which
   he/she is a registered agent. When the agent reports such a change, this statement must be signed by the registered
   agent. If a business entity is acting as the registered agent, an authorized person must sign this statement.

08/10/2015 08:28 2175243398       LIMITED LIABILITY      PAGE 26/26

| Form **LLC-1.36/1.37** | **Illinois**<br>**Limited Liability Company Act**<br>Statement of Change of Registered<br>Agent and/or Registered Office | FILE # 03586596 |
|---|---|---|
| Secretary of Sate Jesse White<br>Department of Business Services<br>Limited Liability Division<br>501 S. Second St., Rm. 351<br>Springfield, IL 62756<br>217-524-8008<br>www.cyberdriveillinois.com | Filing Fee: $25<br>Approved: DJR | **FILED**<br>FEB 25, 2015<br>**Jesse White**<br>**Secretary of State** |

1. Limited Liability Company Name:

   CHM CAPITAL GROUP, LLC

2. Name and Address of Registered Agent and Registered Office as they appear on the records of the Office of the Secretary of State (before change):

   Registered Agent: NATIONAL REGISTERED AGENTS INC

   Registered Office: 200 WEST ADAMS STREET

   CHICAGO           IL   606060000

3. Name and Address of Registered Agent and Registered Office shall be (after all changes herein reported):

   Registered Agent: NATIONAL REGISTERED AGENTS INC

   Registered Office: 208 SO LASALLE ST, SUITE 814

   CHICAGO           IL   606041101

4. The address of registered office and the address of the business office of the registered agent, as changed, will be identical.

5. The above change was authorized by: Registered Agent

6. I affirm, under penalties of perjury, having authority to sign hereto, that this Statement of Change is to the best of my knowledge and belief, true, correct and complete.

   Dated   FEB 25                   ,   2015
               Month & Day               Year

   KATHLEEN FRITZ
            Name

   VICE PRESIDENT
            Title

   NATIONAL REGISTERED AGENTS INC
   If applicant is a company or other entity, state name of company
   and indicate whether it is a member or manager of the LLC.

   01740



This document was generated electronically.

(Form BSALLD - Rev. 02/10/2015)

11/05/2015 11:40    2175243390              LIMITED LIABILITY                    PAGE  02/03

*File Number*        0358659-6



## To all to whom these Presents Shall Come, Greeting:

*I, Jesse White, Secretary of State of the State of Illinois, do hereby certify that I am the keeper of the records of the Department of Business Services. I certify that*

CHM CAPITAL GROUP, LLC, HAVING ORGANIZED IN THE STATE OF ILLINOIS ON
APRIL 21, 2011, WAS INVOLUNTARILY DISSOLVED BY THE SECRETARY OF
STATE'S OFFICE ON OCTOBER 09, 2015 FOR FAILURE TO FILE AN ANNUAL
REPORT, THEREBY TERMINATING ITS EXISTENCE.



*In Testimony Whereof, I hereto set
my hand and cause to be affixed the Great Seal of
the State of Illinois, this* 5TH
*day of* NOVEMBER *A.D.* 2015

*Jesse White*

SECRETARY OF STATE

Authentication #: 1530901219 verifiable until 11/05/2016.
Authenticate at: http://www.cyberdriveillinois.com

**Menjivar Att. D**
**Page 15 of 16**

11/05/2015  11:40    2175243398              LIMITED LIABILITY                    PAGE  03/03

FILE #: 03586596

 OFFICE OF THE SECRETARY OF STATE

SPRINGFIELD, ILLINOIS 62756

**JESSE WHITE**
**SECRETARY OF STATE**          Certificate of Dissolution

Whereas, it appears that

CHM CAPITAL GROUP, LLC
NATIONAL REGISTERED AGENTS INC
208 SO LASALLE ST, SUITE 814
CHICAGO IL   60604-1101

Being a Limited Liability Company authorized under the laws
of the State of Illinois relating to domestic Limited
Liability Companies, has failed to

File the 2015 Annual Report

as required by Section  50-1 of the Illinois Limited
Liability Company Act; and whereas said Act further
provides that upon failure to

File the 2015 Annual Report

the Secretary of State may dissolve the Limited Liability
Company.

Now therefore in accordance with Section 35-30 of the
Illinois Limited Liabilty Company Act the Secretary of
State of the State of Illinois does hereby dissolve
said

CHM CAPITAL GROUP, LLC

in pursuance of the provisions of the aforesaid Act.

Done at the City of Springfield, this  9th Day of October 2015.

Jesse White
Secretary of State
State of Illinois
Business Services Department
Limited Liabilty Division
351 Howlett Building
Springfield, IL 62756
(217) 524-8008
www.cyberdriveillinois.com



000021
**Menjivar Att. D**
**Page 16 of 16**

# Attachment E

FORM **BCA 2.10**
**ARTICLES OF INCORPORATION**
Business Corporation Act

Filing Fee:    $150
Franchise Tax: $  25
**Total:**      **$175**

File #: **68446481**

Approved By: **JKM**

**FILED**

**APR 23 2012**

**Jesse White**
**Secretary of State**

1. Corporate Name: CHARLES HUNTER MILLER & ASSOCIATES INC.

2. Initial Registered Agent: HKM FUNDING, LTD.

| First Name | Middle Initial | Last Name |
|---|---|---|

Initial Registered Office: 2224 W TOUHY

| Number | Street | Suite No. |
|---|---|---|
| CHICAGO | IL | 60645 | COOK |

| City | | ZIP Code | County |

3. Purposes for which the Corporation is Organized:
The transaction of any or all lawful businesses for which corporations may be incorporated under the Illinois Business Corporation Act.

4. Authorized Shares, Issued Shares and Consideration Received:

| Class | Number of Shares Authorized | Number of Shares Proposed to be Issued | Consideration to be Received Therefor |
|---|---|---|---|
| COMMON | 10000 | 1000 | $ 1000 |

**NAME & ADDRESS OF INCORPORATOR**

5. The undersigned incorporator hereby declares, under penalties of perjury, that the statements made in the foregoing Articles of Incorporation are true.

Dated APRIL 23 , 2012    2224 W. TOUHY

| Month & Day | Year | | Street |
|---|---|---|---|
| IAN ERDOS | CHCIAGO | IL | 60645 |

| Name | City/Town | State | ZIP Code |

This document was generated electronically at www.cyberdriveillinois.com

**Menjivar Att. E**
**Page 1 of 17**



**State of Illinois**
**Domestic/Foreign Corporation Annual Report**

| Year | Corporation File No |
|------|---------------------|
| 2013 | 68446481 |

FILED   Apr 2, 2013

Jesse White, Secretary of State

1. **Corporate Name** CHARLES HUNTER MILLER & ASSOCIATES INC.

   **Registered Agent** HKM FUNDING, LTD.

   **Registered Office** 2224 W TOUHY

   **City, IL, Zip Code, County** CHICAGO 606450000 COOK

2. **Principal address of Corporation** 215 REMINGTON BOULEVARD SUITE E    BOLINGBROOK    IL 60440

3a. **State or Country of Incorporation** IL          **3b. Date Incorporated/Qualified** 04-23-2012

4. **The names and addresses of ALL officers & directors MUST be listed here!**

| Officers | |
|----------|--|
| Title<br>Name & Address | PRESIDENT<br>HIRSH MOHINDRA 215 REMINGTON BLVD #E BOLINGBROOK, IL 60440 |
| Title<br>Name & Address | SECRETARY<br>HIRSH MOHINDRA 215 REMINGTON BLVD #E BOLINGBROOK, IL 60440 |
| Title<br>Name & Address | DIRECTOR<br>HIRSH MOHINDRA          215 REMINGTONBLVD          BOLINGBROOK<br>IL 60440 |

5. **If 51% or more of the stock is owned by a minority or female, please check the appropriate box**

   ☐ Minority          ☐ Female          ☐ Both

6. **Number of shares authorized and issued as of** 01-31-2013

| Class | Series | Par Value | Number Authorized | Number Issued |
|-------|--------|-----------|-------------------|---------------|
| COMMON | | 0.00000 | 10000 | 1000.000 |
| | | | | |

7. **The amount of paid-in-capital as of** 01-31-2013          **is  $** 1000

8. The corporation elects to pay its annual franchise tax based upon 100% of its total paid-in capital.

9. **Under the penalty of perjury and as an authorized officer, I declare that this annual report, pursuant to provisions of the Business Corporation Act, has been examined by me and is, to the best of my knowledge and belief, true, correct and complete.**

**By** HIRSH MOHINDRA
*Authorized Officer*

PRESIDENT          04-02-2013
*Title & Date*

| Fee Summary |
|-------------|
| Franchise Tax: $25.00 |
| Filing Fee: $75.00 |
| Penalty: $2.50 |
| Interest: $1.00 |
| Total Fee: $103.50 |

**Menjivar Att. E**
**Page 2 of 17**

This document was electronically generated at www.cyberdriveillinois.com

FORM **BCA 5.10/5.20** (rev. Dec. 2003)
**STATEMENT OF CHANGE OF
REGISTERED AGENT AND/OR
REGISTERED OFFICE**
Business Corporation Act

Jesse White, Secretary of State
Department of Business Services
501 S. Second St., Rm. 328
Springfield, IL 62756
217-782-7808
www.cyberdriveillinois.com

Remit payment in the form of a
check or money order payable
to Secretary of State.

**PAID**

**FILED**

APR 3 − 2013

**JESSE WHITE
SECRETARY OF STATE**

APR 0 4 2013

**EXPEDITED
SECRETARY OF STATE**



CP0030962

File # 68446481      Filing Fee: $25    Approved: _2C_

——— Submit in duplicate ——— Type or Print clearly in black ink ——— Do not write above this line ———

1. Corporate Name: __CHARLES HUNTER MILLER & ASSOCIATES INC.__    ✓

2. State or Country of Incorporation: __ILLINOIS__

3. Name and Address of Registered Agent and Registered Office as they appear on the records of the Office of the Secretary of State (before change):

   Registered Agent: __HKM FUNDING, LTD.__    ✓
              First Name            Middle Name            Last Name

   Registered Office: __2224 WEST TOUHY__
              Number            Street            Suite # (P.O. Box alone is unacceptable)

   __CHICAGO__            __60645__            __COOK__
              City            ZIP Code            County

4. Name and Address of Registered Agent and Registered Office shall be (after all changes herein reported):

   Registered Agent: __IAN L ERDOS__    ✓
              First Name            Middle Name            Last Name

   Registered Office: __215 REMINGTON BOULEVARD SUITE E__
              Number            Street            Suite # (P.O. Box alone is unacceptable)

   __BOLINGBROOK__            __60440__            __COOK__
              City            ZIP Code            County

5. The address of the registered office and the address of the business office of the registered agent, as changed, will be identical.

6. The above change was authorized by: ("X" one box only)    ✓
   a. ☒ Resolution duly adopted by the board of directors. (See Note 4 on reverse.)
   b. ☐ Action of the registered agent. (See Note 5 on reverse.)

**SEE REVERSE FOR SIGNATURE(S).**

♻ Printed on recycled paper. Printed by authority of the State of Illinois. June 2012 — 1 — C 135.23

**Menjivar Att. E
Page 3 of 17**

7. **If authorized by the board of directors, sign here. (See Note 4 below.)**
The undersigned corporation has caused this statement to be signed by a duly authorized officer who affirms, under penalties of perjury, that the facts stated herein are true and correct.

Dated __APRIL 2_____ , __2013__    __CHARLES HUNTER MILLER & ASSOCIATES INC.__    ✓
      Month & Day      Year          Exact Name of Corporation

                Any Authorized Officer's Signature

__HIRSH MOHINDRA - PRESIDENT__
      Name and Title (type or print)

**If change of registered office by registered agent, sign here. (See Note 5 below.)**
The undersigned, under penalties of perjury, affirms that the facts stated herein are true and correct.

Dated _____ , _____    _____
      Month & Day      Year      Signature of Registered Agent of Record

                        _____
                              Name (type or print)
                       If Registered Agent is a corporation,
             Name and Title of officer who is signing on its behalf.

## NOTES

1. The registered office may, but need not be, the same as the principal office of the corporation. However, the registered office and the office address of the registered agent must be the same.

2. The registered office must include a street or road address (P.O. Box alone is unacceptable).

3. A corporation cannot act as its own registered agent.

4. Any change of registered agent must be by resolution adopted by the board of directors. This statement must be signed by a duly authorized officer.

5. The registered agent may report a change of the registered office of the corporation for which he/she is a registered agent. When the agent reports such a change, this statement must be signed by the registered agent. If a corporation is acting as the registered agent, a duly authorized officer of such corporation must sign this statement.

| Anniversary APRIL | STATE OF ILLINOIS<br>Office Of | D 6844-648-1 |
|---|---|---|
| County COOK | THE SECRETARY OF STATE | File Number |

### CERTIFICATE OF DISSOLUTION OF DOMESTIC CORPORATION
### BUSINESS CORPORATION ACT

WHEREAS it appears that

CHARLES HUNTER MILLER & ASSOCIATES INC.
% IAN ERDOS                        040313
215 REMINGTON BLVD STE E
BOLINGBROOK IL  60440



being a corporation organized under the laws of the State of Illinois relating to Domestic

Corporations has failed to file an annual report and pay an annual franchise tax

as required by the provisions of "The Business Corporation Act" of the State of Illinois,

in force JULY 1, A.D. 1984 and all acts amendatory thereof; AND WHEREAS, said acts

provided that upon failure to file an annual report and pay an annual franchise tax

the Secretary of State shall dissolve the corporation.

NOW THEREFORE, the Secretary of State of the State of Illinois, hereby dissolves

the above corporation in pursuance of the provisions of the aforesaid Act.



IN TESTIMONY WHEREOF, I hereto set my hand and

cause to be affixed the Great Seal of the State of Illinois.

Done at the City of Springfield,

this 12 th day of SEPTEMBER A.D. 2014

*Besse White*

Secretary of State

H006114

**Menjivar Att. E**
**Page 5 of 17**

(Form CDBDB0 - Rev. 05/14/2014)

FORM **BCA 5.10/5.20** (rev. Dec. 2003)
**STATEMENT OF CHANGE OF**
**REGISTERED AGENT AND/OR**
**REGISTERED OFFICE**
Business Corporation Act

Secretary of State
Department of Business Services
501 S. Second St., Rm. 350
Springfield, IL 62756
217-782-7808
www.cyberdriveillinois.com

Remit payment in the form of a
check or money order payable
to Secretary of State.

C00212780

# FILED

## FEB 11 2015

### JESSE WHITE
### SECRETARY OF STATE

# PAID

## FEB 17 2015

### EXPEDITED
### SECRETARY OF STATE

File # 6944.648-1    Filing Fee: $25    Approved:

——— Submit in duplicate ——— Type or Print clearly in black ink ——— Do not write above this line ———

1. Corporate Name: **Charles Hunter Miller + Associates Inc.**

2. State or Country of Incorporation: **Illinois**

3. Name and Address of Registered Agent and Registered Office as they appear on the records of the Office of the Secretary of State (before change):

   Registered Agent: **Ian** _____ **Erdos**
   First Name    Middle Name    Last Name

   Registered Office: **215**    **Remington Blvd.**    **Suite E**
   Number    Street    Suite # (P.O. Box alone is unacceptable)

   **Bolingbrook**    **60440**    **Cook**
   City    ZIP Code    County

4. Name and Address of Registered Agent and Registered Office shall be (after all changes herein reported):

   Registered Agent: **National Registered Agents, Inc.**
   First Name    Middle Name    Last Name

   Registered Office: **208 S. LaSalle Street**    **Suite 814**
   Number    Street    Suite # (P.O. Box alone is unacceptable)

   **Chicago**    **60604**    **Cook County**
   City    ZIP Code    County

5. The address of the registered office and the address of the business office of the registered agent, as changed, will be identical.

6. The above change was authorized by: ("X" one box only)
   a. ☒ Resolution duly adopted by the board of directors. (See Note 4 on reverse.)
   b. ☐ Action of the registered agent. (See Note 5 on reverse.)

**SEE REVERSE FOR SIGNATURE(S).**

Printed by authority of the State of Illinois. January 2015 — 1 — C 135.24

**Menjivar Att. E**
**Page 6 of 17**

7. If authorized by the board of directors, sign here. (See Note 4 below.)
   The undersigned corporation has caused this statement to be signed by a duly authorized officer who affirms, under penalties of perjury, that the facts stated herein are true and correct.

Dated _February 10, 2015_, _____ _Charles Hunter Miller + Associates Inc._
          Month  Day              Year          Exact Name of Corporation

_H.H.H.H_
Any Authorized Officer's Signature

_HIRSH NOHINBER & PRESIDENT_
Name and Title (type or print)

If change of registered office by registered agent, sign here. (See Note 5 below.)
The undersigned, under penalties of perjury, affirms that the facts stated herein are true and correct.

Dated _____, _____ _____
          Month  Day              Year     Signature of Registered Agent of Record

                                        _____
                                        Name (type or print)
                                        If Registered Agent is a corporation,
                                        Name and Title of officer who is signing on its behalf.

## NOTES

1. The registered office may, but need not be, the same as the principal office of the corporation. However, the registered office and the office address of the registered agent must be the same.

2. The registered office must include a street or road address (P.O. Box alone is unacceptable).

3. A corporation cannot act as its own registered agent.

4. Any change of registered agent must be by resolution adopted by the board of directors. This statement must be signed by a duly authorized officer.

5. The registered agent may report a change of the registered office of the corporation for which he/she is a registered agent. When the agent reports such a change, this statement must be signed by the registered agent. If a corporation is acting as the registered agent, a duly authorized officer of such corporation must sign this statement.

FORM BCA 12.45/13.6 (rev. Dec. 2003)
APPLICATION FOR REINSTATEMENT
DOMESTIC/FOREIGN CORPORATIONS
Business Corporation Act

Secretary of State
Department of Business Services
501 S. Second St., Rm. 350
Springfield, IL 62756
217-782-1837 (foreign)
217-785-5782 or 217-782-5797 (domestic)
www.cyberdriveillinois.com

Remit payment in the form of a cashier's
check, certified check, money order,
Illinois attorney's check payable to
Secretary of State.

See notes on back.

# FILED

## FEB 11 2015

### JESSE WHITE
### SECRETARY OF STATE

# PAID

## FEB 17 2015

### EXPEDITED
### SECRETARY OF STATE

File # 6844648-1      Filing Fee: $200      Approved:

———— Submit in duplicate ———— Type or Print clearly in black ink ———— Do not write above this line ————

1. a. Corporate Name as of date of issuance of Certificate of Dissolution or Revocation:

   Charles Hunter Miller & Associates Inc.

   b. Corporate Name if changed: (See Note 2.)

   C00212626

   c. If a foreign corporation having authority under an assumed corporate name restriction, the Assumed Corporate Name
      (See Note 3.) _____

2. State of Incorporation: __Illinois__

3. Date Certificate of Dissolution or Revocation Issued: __September 12, 2014__

4. Name and Address of Illinois Registered Agent and the Illinois Registered Office upon reinstatement:
   NOTICE: Completion of item 4 does not constitute a registered agent or office change. (See Note 4.)

   Registered Agent __National__      __Registered__      __Agents   Inc.__
                     First Name        Middle Name          Last Name

   Registered Office __208__   __S. LaSalle Street__            __Suite 814__
                      Number        Street                    Suite # (P.O. Box alone is unacceptable)

                     __60604__              __IL__          __Cook__
                       City                 ZIP Code         County

5. This application is accompanied by all delinquent report forms together with the filing fees, franchise taxes, license fee
   and penalties required. (See Note 1.)

6. The undersigned corporation has caused this application to be signed by a duly authorized officer who affirms, under
   penalties of perjury, that the facts stated herein are true and correct. (All signatures must be in BLACK INK.)

   Dated __February 10__, __2015__   __Charles Hunter Miller & Associates Inc.__
          Month   Day        Year              Exact Name of Corporation

   __H. Rajhindra__
   Any Authorized Officer's Signature

   __HIRSH RAJHINDRA  & PRESIDENT__
   Name and Title (type or print)

Printed by authority of the State of Illinois. January 2015 — 1 — C 89.24

**Menjivar Att. E**
**Page 8 of 17**

**FORM BCA 10.30** (rev. Dec. 2003)
**ARTICLES OF AMENDMENT**
Business Corporation Act

**FILED**

**PAID**

Secretary of State
Department of Business Services
501 S. Second St., Rm. 350
Springfield, IL 62756
217-782-1832
www.cyberdriveillinois.com

Remit payment in the form of a
check or money order payable
to Secretary of State.

**FEB 11 2015**

**JESSE WHITE
SECRETARY OF STATE**

C00212589

**FEB 17 2015**

**EXPEDITED
SECRETARY OF STATE**

File # 6844-648-1    Filing Fee: $50    Approved: _____

———— Submit in duplicate ———— Type or Print clearly in black ink ———— Do not write above this line ————

1. Corporate Name (See Note 1 on page 4.): *Charles Hunter Miller & Associates Inc.*

2. Manner of Adoption of Amendment:
The following amendment to the Articles of Incorporation was adopted on *February 10 2015*
in the manner indicated below:

Mark an "X" in one box only.

☐ By a majority of the incorporators, provided no directors were named in the Articles of Incorporation and no directors have been elected. (See Note 2 on page 4.)

☐ By a majority of the board of directors, in accordance with Section 10.10, the Corporation having issued no shares as of the time of adoption of this amendment. (See Note 2 on page 4.)

☐ By a majority of the board of directors, in accordance with Section 10.15, shares having been issued but shareholder action not being required for the adoption of the amendment. (See Note 3 on page 4.)

☐ By the shareholders, in accordance with Section 10.20, a resolution of the board of directors having been duly adopted and submitted to the shareholders. At a meeting of shareholders, not less than the minimum number of votes required by statute and by the Articles of Incorporation were voted in favor of the amendment. (See Note 4 on page 4.)

☐ By the shareholders, in accordance with Sections 10.20 and 7.10, a resolution of the board of directors having been duly adopted and submitted to the shareholders. A consent in writing has been signed by shareholders having not less than the minimum number of votes required by statute and by the Articles of Incorporation. Shareholders who have not consented in writing have been given notice in accordance with Section 7.10. (See Notes 4 and 5 on page 4.)

☒ By the shareholders, in accordance with Section 10.20, a resolution of the board of directors having been duly adopted and submitted to the shareholders. A consent in writing has been signed by all the shareholders entitled to vote on this amendment. (See Note 5 on page 4.)

3. Text of Amendment:
   a. When amendment effects a name change, insert the New Corporate Name below. Use page 2 for all other amendments.
   Article I: Name of the Corporation: *Pacific Capital Holdings Inc.*
   New Name

(All changes other than name include on page 2.)

**Menjivar Att. E
Page 9 of 17**

**Text of Amendment**

b. If amendment affects the corporate purpose, the amended purpose is required to be set forth in its entirety. For more space, attach additional sheets of this size.

**Menjivar Att. E
Page 10 of 17**

4. The manner, if not set forth in Article 3b, in which any exchange, reclassification or cancellation of issued shares, or a reduction of the number of authorized shares of any class below the number of issued shares of that class, provided for or effected by this amendment, is as follows (if not applicable, insert "No change"):

No Change

5. a. The manner, if not set forth in Article 3b, in which said amendment effects a change in the amount of paid-in capital is as follows (if not applicable, insert "No change"):
(Paid-in capital replaces the terms Stated Capital and Paid-in Surplus and is equal to the total of these accounts.)

No Change

b. The amount of paid-in capital as changed by this amendment is as follows (if not applicable, insert "No change"):
(Paid-in Capital replaces the terms Stated Capital and Paid-in Surplus and is equal to the total of these accounts.)
(See Note 6 on page 4.)

|  | Before Amendment | After Amendment |
|---|---|---|
| Paid-in Capital: | $ No change | $ No Change |

**Complete either Item 6 or Item 7 below. All signatures must be in BLACK INK.**

6. The undersigned Corporation has caused this statement to be signed by a duly authorized officer who affirms, under penalties of perjury, that the facts stated herein are true and correct.

Dated ___February___ __10__ , __2015__   Charles Hunter Miller + Associates Inc.
        Month & Day        Year              Exact Name of Corporation

_____
Any Authorized Officer's Signature

Hugh Williams   +   President
Name and Title (type or print)

7. If amendment is authorized pursuant to Section 10.10 by the incorporators, the incorporators must sign below, and type or print name and title.

OR

If amendment is authorized by the directors pursuant to Section 10.10 and there are no officers, a majority of the directors, or such directors as may be designated by the board, must sign below, and type or print name and title.

The undersigned affirms, under penalties of perjury, that the facts stated herein are true and correct.

Dated _____
        Month & Day        Year

_____        _____

_____        _____

_____        _____

_____        _____

Form BCA-4.15/4.20 (Rev. Aug. 2014)
**APPLICATION TO ADOPT, CHANGE OR
CANCEL AN ASSUMED CORPORATE NAME**
Business Corporation Act

# FILED

## FEB 11 2015

# PAID

**JESSE WHITE
SECRETARY OF STATE**

## FEB 17 2015

**EXPEDITED
SECRETARY OF STATE**

Secretary of State
Department of Business Services
501 S. Second St., Rm. 350
Springfield, IL 62756
217-782-9520
217-782-6961
www.cyberdriveillinois.com

C00212525

Payment must be made by check or money order
payable to Secretary of State.

Filing fee $ _150. 00_    File # _6344-648-1_    Approved: _____

———— Submit in duplicate ———— Type or Print clearly in black ink ———— Do not write above this line ————

1. Corporate Name: _Charles Hunter Miller & Associates Inc._

2. State or Country of Incorporation: _Illinois_

3. Date incorporated (if an Illinois corporation) or Date Authorized to Transact Business in Illinois (if a foreign corporation):
   _April 23, 2012_
   Month  Day      Year

Complete No. 4 and No. 5 if adopting or changing an assumed corporate name.

4. Corporation intends to adopt and to transact business under the assumed corporate name of:
   _Pacific Capital_

5. The right to use the assumed corporate name shall be effective from the date this application is filed by the Secretary
   of State until _April 1, 2020_____, the first day of the corporation's anniversary
   Month  Day      Year
   month in the next year evenly divisible by five.

Complete No. 6 if changing or cancelling an assumed corporate name.

6. Corporation intends to cease transacting business under the assumed corporate name of:
   _____
   _____

7. The undersigned corporation has caused this statement to be signed by a duly authorized officer who affirms, under
   penalties of perjury, that the facts stated herein are true and correct.

   Dated _February 10, 2015_       _Charles Hunter Miller & Associates Inc._
         Month    Day    Year          Exact Name of Corporation
         _____
         Any Authorized Officer's Signature
         _Hirsh Mohinder, President_
         Name and Title (type or print)

NOTE: The filing fee to adopt an assumed corporate name is $150 if the current year ends with a 0 or 5; $120 if the current
year ends with a 1 or 6; $90 if the current year ends with a 2 or 7; $60 if the current year ends with a 3 or 8; or $30
if the current year ends with a 4 or 9.

The fee for cancelling an assumed corporate name is $5.

The fee to change an assumed name is $25.

Printed by authority of the State of Illinois. January 2015 — 1 — C 148.18

**Menjivar Att. E
Page 12 of 17**

FORM BCA 14.05 (rev. Oct. 2014)
**DOMESTIC CORPORATION**
**ANNUAL REPORT**
Business Corporation Act

Secretary of State
Department of Business Services
501 S. Second St., Rm. 350
Springfield, IL 62756
217-782-7808
www.cyberdriveillinois.com

Payment must be made by check or money
order payable to Secretary of State.

# FILED

## FEB 11 2015

### JESSE WHITE
### SECRETARY OF STATE

# PAID

## FEB 17 2015

### EXPEDITED
### SECRETARY OF STATE

File Prior To: __4-1__  Year: __2014__  File #: __(844-648-)__  Approved: __QO__

Note: A change in the Registered Agent and/or Registered Office may only be affected by filing Form BCA-5.10/5.20.

1. Corporate Name: Charles Hunter Miller & Associates Inc.
   Registered Agent: National Registered Agents, Inc.
   Registered Office: 208 S. LaSalle Street, Suite 814
   City, IL, ZIP Code: Chicago, IL 60604   County: COOK
2. Principal Address of Corporation: 500 Quail Ridge Drive, Westmont, IL 60559
3. Date incorporated: 4 / 23 / 2012
4. Names and Addresses of Officers and Directors:

NOTE: The names and addresses of ALL officers and directors must be entered in this item or on an additional sheet.

| OFFICE | NAME | NUMBER & STREET | CITY | STATE | ZIP |
|---|---|---|---|---|---|
| President | Hirsh Mohindra | 500 Quail Ridge Dr, Westmont, IL 60559 | | | |
| Secretary | | | | | |
| Treasurer | | | | | |
| Director | | | | | |
| Director | | | | | |
| Director | | | | | |

5. If 51% or more of stock is owned by a minority or female, please check the appropriate box: ☐ Minority Owned  ☐ Female Owned
6. Number of shares authorized and issued (as of __1-31-2014__ ):

| CLASS | SERIES | PAR VALUE | NUMBER AUTHORIZED | NUMBER ISSUED |
|---|---|---|---|---|
| Common | N/A | N/A | 10,000 | 1,000 |
| | | | | |
| | | | | |
| | | | | |

IMPORTANT: If the amount in item 6 or 7a differs from the Secretary of State's records, form BCA 14.30 must be completed.

7a. Amount of Paid-in Capital (as of __1-31-2014__ ): $ 1,000.00
7b. Paid-in Capital on record with Secretary of State: $ 1,000.00
    (Paid-in Capital reflects the sum of the Stated Capital and Paid-in surplus accounts.)

Under the penalty of perjury and as an authorized officer, I declare that this annual report, pursuant to provisions of the Business Corporation Act, has been examined by me and is, to the best of my knowledge and belief, true, correct and complete.

**Item 8 Must Be Signed.**

➡ 8. By: H. Mohindra   PRESIDENT   2/10/2015
       Any Authorized Officer's Signature   Title   Date

### Please Complete Reverse Side of This Report

Printed by authority of the State of Illinois. January 2015 — 1 — C 289.11

(Item 9 OR 10a OR 10b, whichever is applicable, MUST be completed.)

9. Amounts stated in parts (a) through (d) below are given for the 12-month period

ending _____

             Day          Month          Year

Value of property (gross assets):

    (a) owned by the corporation, wherever located: ....................................... (a) $ _____

    (b) of the corporation located within the State of Illinois: ........................... (b) $ _____

Gross amount of business transacted by the corporation:

    (c) everywhere for the above period: ...................................................... (c) $ _____

    (d) at or from places of business in Illinois for the above period: ............... (d) $ _____

ALLOCATION FACTOR = $\dfrac{b+d}{a+c}$ = _____ Enter this figure on line 11b below.

                               6 decimal places

10a. ☐ ALL property of the Corporation is located in Illinois and ALL business of the Corporation is transacted at or from places of business in Illinois.

10b. ☒ The Corporation elects to pay franchise tax on the basis of 100% of its total Paid-in Capital.

ALLOCATION FACTOR = 1.00000 (Enter this figure on line 11b below.)

## STOP: Item 9 or 10 must be completed before continuing to Item 11.

11. ANNUAL FRANCHISE TAX AND FEES

| | | |
|---|---|---|
| 11a. TOTAL PAID-IN CAPITAL (Enter amount from Item 7a; If late, enter the greater of 7a or 7b.) | a. | $1,000.00 |
| 11b. ALLOCATION FACTOR (Enter from Item 9 or Item 10.) | b. | 1.00000 |
| 11c. ILLINOIS CAPITAL (Multiply line 11a by line 11b.) | c. | $1,000.00 |
| 11d1. Multiply line 11c by .001 (Round to nearest cent.) | d1 | $1.00 |
| 11d2. ANNUAL FRANCHISE TAX (Enter amount from line d1, but not less than $25.) | d2 | $25.00 |
| 11e1. If Annual Report is late, multiply line d2 by .10 | e1 | $2.50 |
| 11e2. If Annual Franchise Tax is late, multiply line d2 by .02 for each month late or part thereof (minimum $1) | e2 | $5.50 |
| 11e3. INTEREST & PENALTIES (Add lines e1 and e2.) | | |
| 11f. ANNUAL REPORT FILING FEE ($75) | 11f | $75.00 |
| 11g. TOTAL ANNUAL FRANCHISE TAX, FEES, INTEREST, PENALTIES DUE (Add line d2 + line e3 + line f.) | 11g | $108.00 |

MAKE CHECKS PAYABLE TO ILLINOIS SECRETARY OF STATE.
(Place corporate file number on check.)

## IMPORTANT:
### If there have been changes in Items 6 or 7, Form BCA 14.30 must be executed and submitted with this Annual Report in the same envelope.

FORM BCA 14.05 (rev. Oct. 2014)
**DOMESTIC CORPORATION
ANNUAL REPORT**
Business Corporation Act

Secretary of State
Department of Business Services
501 S. Second St., Rm. 350
Springfield, IL 62756
217-782-7808
www.cyberdriveillinois.com

Payment must be made by check or money
order payable to Secretary of State.

**FILED**

**APR 14 2015**

**JESSE WHITE
SECRETARY OF STATE**

File Prior To: _April 1_    Year: _2015_    File #: _6844-648-1_    Approved: _✓_

**Note:** A change in the Registered Agent and/or Registered Office may only be affected by filing Form BCA-5.10/5.20.

1. Corporate Name: Pacific Capital Holdings Inc.
   Registered Agent: National Registered Agents Inc.
   Registered Office: 208 S. LaSalle Street, Suite 814
   City, IL, ZIP Code: Chicago, Illinois 60604      County: Cook County

2. Principal Address of Corporation: _____ 500 Quail Ridge Drive ___ Westmont _____ Illinois __ 60559
                                               Street               City          State     ZIP Code

3. Date Incorporated: April    23    2012
                          Month      Day     Year

4. Names and Addresses of Officers and Directors:

**NOTE:** The names and addresses of ALL officers and directors must be entered in this item or on an additional sheet.

| OFFICE | NAME | NUMBER & STREET | CITY | STATE | ZIP |
|--------|------|-----------------|------|-------|-----|
| President | Hirsh Mohindra | 500 Quail Ridge Drive | Westmont | Illinois | 60559 |
| Secretary | Hirsh Mohindra | 500 Quail Ridge Drive | Westmont | Illinois | 60559 |
| Treasurer | | | | | |
| Director | | | | | |
| Director | | | | | |
| Director | | | | | |

C00040834

5. If 51% or more of stock is owned by a minority or female, please check the appropriate box: ☐ Minority Owned  ☐ Female Owned

6. Number of shares authorized and issued (as of _1/31/2015_ ):

| CLASS | SERIES | PAR VALUE | NUMBER AUTHORIZED | NUMBER ISSUED |
|-------|--------|-----------|-------------------|---------------|
| Common | N/A | N/A | 10,000 | 1,000 |

**IMPORTANT:** If the amount in item 6 or 7a differs from the Secretary of State's records, form BCA 14.30 must be completed.

7a. Amount of Paid-In Capital (as of _1/31/2015_ ): $ 1,000.00

7b. Paid-In Capital on record with Secretary of State: $ 1,000.00

| (Paid-In Capital reflects the sum of the Stated Capital and Paid-in surplus accounts.) |
|---|

Under the penalty of perjury and as an authorized officer, I declare that this annual report, pursuant to provisions of the Business Corporation Act, has been examined by me and is, to the best of my knowledge and belief, true, correct and complete.

**Item 8 Must Be Signed.**

➡ 8. By: _[signature]_    Title: _PRESIDENT_    Date: _4/14/2015_
       Any Authorized Officer's Signature                  Title

**Please Complete Reverse Side of This Report**

Menjivar Att. E
Page 15 of 17

Item 9 OR 10a OR 10b, whichever is applicable, MUST be completed.)

9. Amounts stated in parts (a) through (d) below are given for the 12-month period ending _____

          Day             Month          Year

Value of property (gross assets):

   (a) owned by the corporation, wherever located:.................................................. (a) $ _____

   (b) of the corporation located within the State of Illinois:.................................... (b) $ _____

Gross amount of business transacted by the corporation:

   (c) everywhere for the above period:................................................................ (c) $ _____

   (d) at or from places of business in Illinois for the above period:..................... (d) $ _____

ALLOCATION FACTOR = $\dfrac{b+d}{a+c}$ = _____ Enter this figure on line 11b below.

                                                      6 decimal places

10a. ☐ ALL property of the Corporation is located in Illinois and ALL business of the Corporation is transacted at or from places of business in Illinois.

10b. ☑ The Corporation elects to pay franchise tax on the basis of 100% of its total Paid-in Capital.

ALLOCATION FACTOR = 1.00000 *(Enter this figure on line 11b below.)*

## STOP: Item 9 or 10 must be completed before continuing to item 11.

11. ANNUAL FRANCHISE TAX AND FEES

| | | |
|---|---|---|
| 11a. TOTAL PAID-IN CAPITAL (Enter amount from item 7a; if late, enter the greater of 7a or 7b.) .......... **a.** | $1,000.00 | |
| 11b. ALLOCATION FACTOR (Enter from Item 9 or Item 10.) .......... **b.** | 1.00000 | |
| 11c. ILLINOIS CAPITAL (Multiply line 11a by line 11b.) .......... **c.** | $1,000.00 | |
| 11d1. Multiply line 11c by .001 (Round to nearest cent.) .......... **d1** | $1.00 | |
| 11d2. ANNUAL FRANCHISE TAX (Enter amount from line d1, but not less than $25.) .......... **d2** | | $25.00 |
| 11e1. If Annual Report is late, multiply line d2 by .10 .......... **e1.** | $2.50 | |
| 11e2. If Annual Franchise Tax is late, multiply line d2 by .02 for each month late or part thereof (minimum $1) .......... **e2** | $1.00 | |
| 11e3. INTEREST & PENALTIES (Add lines e1 and e2.) .......... **e3.** | | $3.50 |
| 11f. ANNUAL REPORT FILING FEE ($75) .......... **11f.** | | $75.00 |
| 11g. TOTAL ANNUAL FRANCHISE TAX, FEES, INTEREST, PENALTIES DUE (Add line d2 + line e3 + line f.) .......... **11g** | | $103.50 |

### MAKE CHECKS PAYABLE TO ILLINOIS SECRETARY OF STATE.
(Place corporate file number on check.)

### IMPORTANT:
If there have been changes in Items 6 or 7, Form BCA 14.30 must be executed and submitted with this Annual Report in the same envelope.

**Menjivar Att. E**
**Page 16 of 17**

**STATE OF ILLINOIS**
OFFICE OF THE SECRETARY OF STATE
I hereby certify that this is a true and correct copy,
consisting of ___46___ pages, as taken from the
original on file in this office.

JESSE WHITE
SECRETARY OF STATE

DATE: _8/7/2015_

BY:

# Attachment F

FORM **BCA 2.10**
**ARTICLES OF INCORPORATION**
Business Corporation Act

Filing Fee:   $150
Franchise Tax: $ 25
Total:          $175

File #: __**68238064**__

Approved By: __CLD__

**FILED**

**DEC 13 2011**

**Jesse White**
**Secretary of State**

1. Corporate Name: HKM FUNDING, LTD.

2. Initial Registered Agent: IAN L ERDOS

| First Name | Middle Initial | Last Name |
| --- | --- | --- |

Initial Registered Office: 2224 W TOUHY AVE APT 1E

| Number | Street | Suite No. |
| --- | --- | --- |
| CHICAGO | IL | 60645-3477 | COOK |
| City | ZIP Code | County |

3. Purposes for which the Corporation is Organized:
   The transaction of any or all lawful businesses for which corporations may be incorporated under the Illinois Business Corporation Act.

4. Authorized Shares, Issued Shares and Consideration Received:

| Class | Number of Shares Authorized | Number of Shares Proposed to be Issued | Consideration to be Received Therefor |
| --- | --- | --- | --- |
| COMMON | 10000 | 1000 | $ 1000 |

**NAME & ADDRESS OF INCORPORATOR**

5. The undersigned incorporator hereby declares, under penalties of perjury, that the statements made in the foregoing Articles of Incorporation are true.

| Dated DECEMBER 13 | 2011 | 2224 WEST TOUHY SUITE 1E |
| --- | --- | --- |
| Month & Day | Year | Street |
| IAN L ERDOS | CHICAGO | IL | 60630 |
| Name | City/Town | State | ZIP Code |

This document was generated electronically at www.cyberdriveillinois.com

**Menjivar Att. F**
**Page 1 of 8**

FORM **BCA 5.10/5.20** (rev. Dec. 2003)
**STATEMENT OF CHANGE OF**
**REGISTERED AGENT AND/OR**
**REGISTERED OFFICE**
Business Corporation Act

Jesse White, Secretary of State
Department of Business Services
501 S. Second St., Rm. 328
Springfield, IL 62756
217-782-7808
www.cyberdriveillinois.com

Remit payment in the form of a
check or money order payable
to Secretary of State.

# FILED

FEB 1 4 2012

JESSE WHITE
SECRETARY OF STATE

File # 6823-8064    Filing Fee: $25    Approved: _____

———— Submit in duplicate ———— Type or Print clearly in black ink ———— Do not write above this line ————

1.  Corporate Name: HKM FUNDING, LTD.

2.  State or Country of Incorporation: ILLINOIS

    CP0669669

3.  Name and Address of Registered Agent and Registered Office as they appear on the records of the Office of the
    Secretary of State (before change):

    Registered Agent: IAN I. ERDOS
         First Name          Middle Name          Last Name

    Registered Office: 2224 WEST TOUHY AVENUE    SUITE 1E
         Number          Street          Suite # (P.O. Box alone is unacceptable)

         CHICAGO          60645          COOK
         City          ZIP Code          County

4.  Name and Address of Registered Agent and Registered Office shall be (after all changes herein reported):

    Registered Agent: NATIONAL REGISTERED AGENTS, INC.
         First Name          Middle Name          Last Name

    Registered Office: 200 WEST ADAMS STREET
         Number          Street          Suite # (P.O. Box alone is unacceptable)

         CHICAGO          60606          COOK
         City          ZIP Code          County

5.  The address of the registered office and the address of the business office of the registered agent, as changed, will be
    identical.

6.  The above change was authorized by: ("X" one box only)
    a. ☒ Resolution duly adopted by the board of directors. (See Note 4 on reverse.)
    b. ☐ Action of the registered agent. (See Note 5 on reverse.)

# PAID

FEB 1 4 2012

DEPARTMENT OF
BUSINESS SERVICES



**SEE REVERSE FOR SIGNATURE(S).**

♻ Printed on recycled paper. Printed by authority of the State of Illinois. December 2011 — 5M — C 135.22

**Menjivar Att. F**
**Page 2 of 8**

7. **If authorized by the board of directors, sign here. (See Note 4 below.)**
The undersigned corporation has caused this statement to be signed by a duly authorized officer who affirms, under penalties of perjury, that the facts stated herein are true and correct.

Dated FEBRUARY 7 , 2012   HKM FUNDING, LTD.
     Month & Day      Year      Exact Name of Corporation

_____
Any Authorized Officer's Signature

HIRSH MOHINDRA, PRESIDENT
Name and Title (type or print)

**If change of registered office by registered agent, sign here. (See Note 5 below.)**
The undersigned, under penalties of perjury, affirms that the facts stated herein are true and correct.

Dated _____ , _____   _____
     Month & Day      Year      Signature of Registered Agent of Record

_____
Name (type or print)
If Registered Agent is a corporation,
Name and Title of officer who is signing on its behalf.

## NOTES

1. The registered office may, but need not be, the same as the principal office of the corporation. However, the registered office and the office address of the registered agent must be the same.

2. The registered office must include a street or road address (P.O. Box alone is unacceptable).

3. A corporation cannot act as its own registered agent.

4. Any change of registered agent must be by resolution adopted by the board of directors. This statement must be signed by a duly authorized officer.

5. The registered agent may report a change of the registered office of the corporation for which he/she is a registered agent. When the agent reports such a change, this statement must be signed by the registered agent. If a corporation is acting as the registered agent, a duly authorized officer of such corporation must sign this statement.

♻ Printed on recycled paper. Printed by authority of the State of Illinois. December 2011 — 5M — C 135.22

**Menjivar Att. F**
**Page 3 of 8**



**State of Illinois**
**Domestic/Foreign Corporation Annual Report**

| Year | Corporation File No |
|------|---------------------|
| 2012 | 68238064 |

FILED    Apr 3, 2013

**Jesse White, Secretary of State**

1. Corporate Name  HKM FUNDING, LTD.

   Registered Agent  NATIONAL REGISTERED AGENTS INC

   Registered Office  200 WEST ADAMS STREET

   City, IL, Zip Code, County  CHICAGO 606060000 COOK

2. Principal address of Corporation  215 REMINGTON BOULEVARD  UNIT E        CHICAGO                IL 60440

3a. State or Country of Incorporation  IL                          3b. Date Incorporated/Qualified  12-13-2011

4. The names and addresses of ALL officers & directors MUST be listed here!

| Officers | |
|----------|--|
| Title<br>Name & Address | PRESIDENT<br>HIRSH MOHINDRA 215 REMINGTON BLVD UNIT E BOLINGBROOK IL60440 |
| Title<br>Name & Address | SECRETARY<br>HIRSH MOHINDRA 215 REMINGTON BLVD UNIT E BOLINGBROOK IL60440 |
| Title<br>Name & Address | DIRECTOR<br>HIRSH MOHINDRA                    215 REMINGTON DRIVE UNIT E           BOLINGBROOK<br>IL 60440 |

5. If 51% or more of the stock is owned by a minority or female, please check the appropriate box

   ☐ Minority        ☐ Female        ☐ Both

6. Number of shares authorized and issued as of  09-30-2012

| Class | Series | Par Value | Number Authorized | Number Issued |
|-------|--------|-----------|-------------------|---------------|
| COMMON | | 0.00000 | 10000 | 1000.000 |
| | | | | |

7. The amount of paid-in-capital as of  09-30-2012        is  $ 1000

8. The corporation elects to pay its annual franchise tax based upon 100% of its total paid-in capital.

9. Under the penalty of perjury and as an authorized officer, I declare that this annual report, pursuant to provisions of the Business Corporation Act, has been examined by me and is, to the best of my knowledge and belief, true, correct and complete.

| Fee Summary | |
|-------------|--|
| Franchise Tax: $25.00 | |
| Filing Fee: $75.00 | |
| Penalty: $2.50 | |
| Interest: $2.50 | |
| Total Fee: $105.00 | |

By  HIRSH MOHINDRA
**Authorized Officer**

PRESIDENT        04-03-2013
**Title & Date**

FORM **BCA 5.10/5.20** (rev. Dec. 2003)
**STATEMENT OF CHANGE OF**
**REGISTERED AGENT AND/OR**
**REGISTERED OFFICE**
Business Corporation Act

Jesse White, Secretary of State
Department of Business Services
501 S. Second St., Rm. 328
Springfield, IL 62756
217-782-7808
www.cyberdriveillinois.com

Remit payment in the form of a
check or money order payable
to Secretary of State.

**FILED**

**APR 4 – 2013**

**JESSE WHITE**
**SECRETARY OF STATE**

**PAID**

**APR 0 5 2013**

**EXPEDITED**
**SECRETARY OF STATE**



CP0031160

File # 68238064          Filing Fee: $25     Approved: _dc_

——— Submit in duplicate ——— Type or Print clearly in black ink ——— Do not write above this line ———

1.  Corporate Name:  HKM FUNDING LTD.

2.  State or Country of Incorporation: ILLINOIS

3.  Name and Address of Registered Agent and Registered Office as they appear on the records of the Office of the Secretary of State (before change):

    Registered Agent: NATIONAL REGSTERED AGENTS INC
    First Name                     Middle Name                     Last Name

    Registered Office: 200 WEST ADAMS STREET
    Number                          Street                          Suite # (P.O. Box alone is unacceptable)

    CHICAGO                         60606                           COOK
    City                            ZIP Code                        County

4.  Name and Address of Registered Agent and Registered Office shall be (after all changes herein reported):

    Registered Agent: IAN L ERDOS
    First Name                     Middle Name                     Last Name

    Registered Office: 215 REMINGTON BOULEVARD  UNIT E
    Number                          Street                          Suite # (P.O. Box alone is unacceptable)

    BOLINGBROOK                     60440                           WILL
    City                            ZIP Code                        County

5.  The address of the registered office and the address of the business office of the registered agent, as changed, will be identical.

6.  The above change was authorized by: ("X" one box only)
    a.  ☑  Resolution duly adopted by the board of directors. (See Note 4 on reverse.)
    b.  ☐  Action of the registered agent. (See Note 5 on reverse.)

**SEE REVERSE FOR SIGNATURE(S).**

♻ Printed on recycled paper. Printed by authority of the State of Illinois. June 2012 — 1 — C 135.23

**Menjivar Att. F**
**Page 5 of 8**

7. **If authorized by the board of directors, sign here. (See Note 4 below.)**
   The undersigned corporation has caused this statement to be signed by a duly authorized officer who affirms, under penalties of perjury, that the facts stated herein are true and correct.

Dated <u>APRIL 3</u>                    , <u>2013</u>   <u>HKM FUNDING LTD.</u>
<div style="text-align:center">Month & Day                        Year            Exact Name of Corporation</div>

<u>                                        </u>
Any Authorized Officer's Signature

<u>HIRSH MOHINDRA, PRESIDENT</u>
Name and Title (type or print)

**If change of registered office by registered agent, sign here. (See Note 5 below.)**
The undersigned, under penalties of perjury, affirms that the facts stated herein are true and correct.

Dated _____ , _____ .   _____
      Month & Day               Year          Signature of Registered Agent of Record

                                           _____
                                           Name (type or print)
                                           If Registered Agent is a corporation,
                                           Name and Title of officer who is signing on its behalf.

## NOTES

1. The registered office may, but need not be, the same as the principal office of the corporation. However, the registered office and the office address of the registered agent must be the same.

2. The registered office must include a street or road address (P.O. Box alone is unacceptable).

3. A corporation cannot act as its own registered agent.

4. Any change of registered agent must be by resolution adopted by the board of directors. This statement must be signed by a duly authorized officer.

5. The registered agent may report a change of the registered office of the corporation for which he/she is a registered agent. When the agent reports such a change, this statement must be signed by the registered agent. If a corporation is acting as the registered agent, a duly authorized officer of such corporation must sign this statement.

**Menjivar Att. F**
**Page 6 of 8**

Anniversary DECEMBER

County WILL

**STATE OF ILLINOIS**
Office Of
**THE SECRETARY OF STATE**

D 6823-806-4
File Number

### CERTIFICATE OF DISSOLUTION OF DOMESTIC CORPORATION
### BUSINESS CORPORATION ACT

WHEREAS it appears that

HKM FUNDING, LTD.
% IAN L ERDOS                    040413
215 REMINGTON BLVD  UNIT E
BOLINGBROOK IL  60440

being a corporation organized under the laws of the State of Illinois relating to Domestic

Corporations has failed to file an annual report and pay an annual franchise tax

as required by the provisions of "The Business Corporation Act" of the State of Illinois,

in force JULY 1, A.D. 1984 and all acts amendatory thereof; AND WHEREAS, said acts

provided that upon failure to file an annual report and pay an annual franchise tax

the Secretary of State shall dissolve the corporation.

NOW THEREFORE, the Secretary of State of the State of Illinois, hereby dissolves

the above corporation in pursuance of the provisions of the aforesaid Act.



IN TESTIMONY WHEREOF, I hereto set my hand and

cause to be affixed the Great Seal of the State of Illinois.

Done at the City of Springfield,

this 9 th day of    MAY    A.D. 2014

*Jesse White*

Secretary of State

H005495

**Menjivar Att. F**
**Page 7 of 8**

(Form CDBD10 - Rev. 09/23/2002)

**STATE OF ILLINOIS**
OFFICE OF THE SECRETARY OF STATE
I hereby certify that this is a true and correct copy,
consisting of _____ pages, as taken from the
original on file in this office.

JESSE WHITE
SECRETARY OF STATE

DATE: 8/31/15

BY: _____

Menjivar Att. F
Page 8 of 8

# Attachment G

FORM **BCA 2.10**
**ARTICLES OF INCORPORATION**
Business Corporation Act

Filing Fee:   $150
Franchise Tax: $ 25
**Total:**      **$175**

File #:  **66403602**

Approved By: __CLD__

**FILED**

**MAR 05 2008**

**Jesse White**
**Secretary of State**

1.  Corporate Name: AURA DEVELOPMENT, INC.

2.  Initial Registered Agent: HIRSH MOHINDRA

| First Name | Middle Initial | Last Name |
|---|---|---|

Initial Registered Office: 121 ASHTON DR

| Number | Street | Suite No. |
|---|---|---|
| BURR RIDGE | IL | 60527-0309 | DU PAGE |

| City | | ZIP Code | County |
|---|---|---|---|

3.  Purposes for which the Corporation is Organized:
    The transaction of any or all lawful businesses for which corporations may be incorporated under the Illinois Business Corporation Act.

4.  Authorized Shares, Issued Shares and Consideration Received:

| Class | Number of Shares Authorized | Number of Shares Proposed to be Issued | Consideration to be Received Therefor |
|---|---|---|---|
| COMMON | 10000 | 1000 | $ 1000 |

**NAME & ADDRESS OF INCORPORATOR**

5.  The undersigned incorporator hereby declares, under penalties of perjury, that the statements made in the foregoing Articles of Incorporation are true.

Dated MARCH 05.             , 2008    4730 NORTH LEAMINGTON

| Month & Day | Year | Street |
|---|---|---|

IAN L. ERDOS          CHICAGO          IL          60630

| Name | City/Town | State | ZIP Code |
|---|---|---|---|

THIS DOCUMENT MUST BE RECORDED IN THE OFFICE OF THE RECORDER OF THE COUNTY IN WHICH THE REGISTERED OFFICE OF THE CORPORATION IS LOCATED, AS PROVIDED BY SECTION 1.10 OF THE BUSINESS CORPORATION ACT OF THIS STATE. FOR FURTHER INFORMATION CONTACT YOUR COUNTY RECORDER OF DEEDS OFFICE.

This document was generated electronically at www.cyberdriveillinois.com

**Menjivar Att. G**
**Page 1 of 14**



**State of Illinois**
**Domestic/Foreign Corporation Annual Report**

| | |
|---|---|
| **Year** | **Corporation File No** |
| 2009 | 66403602 |

FILED    May 19, 2009

Jesse White, Secretary of State

1.  Corporate Name  AURA DEVELOPMENT, INC.

    Registered Agent  HIRSH MOHINDRA

    Registered Office  121 ASHTON DR

    City, IL, Zip Code, County  BURR RIDGE 605270309 DU PAGE

2.  Principal address of Corporation  121 ASHTON DRIVE        BURR RIDGE        IL 60527

3a.  State or Country of Incorporation  IL        3b. Date Incorporated/Qualified  03-05-2008

4.  The names and addresses of ALL officers & directors MUST be listed here!

| Officers | |
|---|---|
| Title<br>Name & Address | PRESIDENT<br>HIRSH MOHINDRA |
| Title<br>Name & Address | SECRETARY<br>HIRSH MOHINDRA |
| Title<br>Name & Address | DIRECTOR<br>HIRSH MOHINDRA<br>████ ████████ ████  CHICAGO  IL |

5.  If 51% or more of the stock is owned by a minority or female, please check the appropriate box

    ☐ Minority    ☐ Female    ☐ Both

6.  Number of shares authorized and issued as of  12-31-2008

| Class | Series | Par Value | Number Authorized | Number Issued |
|---|---|---|---|---|
| COMMON | | 0.00000 | 10000 | 1000.000 |
| | | | | |

7.  The amount of paid-in-capital as of  12-31-2008        is  $ 1000

8.  All property owned by the corporation is located in Illinois and all business transacted by the corporation is in Illinois

9.  Under the penalty of perjury and as an authorized officer, I declare that this annual report, pursuant to provisions of the Business Corporation Act, has been examined by me and is, to the best of my knowledge and belief, true, correct and complete.

| **Fee Summary** |
|---|
| Franchise Tax: $25.00 |
| Filing Fee: $75.00 |
| Penalty: $2.50 |
| Interest: $1.50 |
| Total Fee: $104.00 |

By  HIRSH MOHINDRA
**Authorized Officer**

PRESIDENT        05-19-2009
**Title & Date**

FORM **BCA 5.10/5.20** (rev. Dec. 2003)
**STATEMENT OF CHANGE OF
REGISTERED AGENT AND/OR
REGISTERED OFFICE**
Business Corporation Act

Jesse White, Secretary of State
Department of Business Services
501 S. Second St., Rm. 328
Springfield, IL 62756
217-782-7808
www.cyberdriveillinois.com

Remit payment in the form of a
check or money order payable
to Secretary of State.

**FILED**

**JUL 0 9 2009**

JESSE WHITE
SECRETARY OF STATE

File # 6640-360-2    Filing Fee: $25    Approved: _____

———— Submit in duplicate ———— Type or Print clearly in black ink ———— Do not write above this line ————

1. Corporate Name: __AURA DEVELOPMENT, INC.__

   CP0917004

2. State or Country of Incorporation: __ILLINOIS__

3. Name and Address of Registered Agent and Registered Office as they appear on the records of the Office of the
   Secretary of State (before change):

   Registered Agent: __Hirsh__ __Mohindra__
              First Name                               Middle Name                 Last Name

   Registered Office: __121 Ashton Drive__
              Number                       Street            Suite # (P.O. Box alone is unacceptable)

   __Burr Ridge__   __Illinois__   __60527__   *DuPage*
           City                         ZIP Code          County

4. Name and Address of Registered Agent and Registered Office shall be (after all changes herein reported):

   Registered Agent: __IAN L. ERDOS__
              First Name                               Middle Name                Last Name

   Registered Office: __4730 NORTH LEAMINGTON__
              Number                       Street            Suite # (P.O. Box alone is unacceptable)

   __CHICAGO ILLINOIS  60630  COOK__   *016*
           City                         ZIP Code          County

5. The address of the registered office and the address of the business office of the registered agent, as changed, will be
   identical.

6. The above change was authorized by: ("X" one box only)
   a. ☒ Resolution duly adopted by the board of directors. (See Note 5 on reverse.)
   b. ☐ Action of the registered agent. (See Note 6 on reverse.)

   **PAID**

   **JUL 0 9 2009**

   DEPARTMENT OF
   BUSINESS SERVICES

**SEE REVERSE FOR SIGNATURE(S).**

Printed by authority of the State of Illinois. September 2006 — 1 — C 135.19

**Menjivar Att. G
Page 3 of 14**

7. **If authorized by the board of directors, sign here. (See Note 5 below.)**
The undersigned corporation has caused this statement to be signed by a duly authorized officer who affirms, under penalties of perjury, that the facts stated herein are true and correct.

Dated JUNE 30 _____, 2009 _____ *Aura Development, Inc.*
Month & Day ........... Year ........................... Exact Name of Corporation

_____
Any Authorized Officer's Signature

HIRSH MOHINDRA , *President*
Name and Title (type or print)

**If change of registered office by registered agent, sign here. (See Note 6 below.)**
The undersigned, under penalties of perjury, affirms that the facts stated herein are true and correct.

Dated _____, _____ _____
Month & Day ............. Year ...... Signature of Registered Agent of Record

_____
Name (type or print)
If Registered Agent is a corporation,
Name and Title of officer who is signing on its behalf.

## NOTES

1. The registered office may, but need not be, the same as the principal office of the corporation. However, the registered office and the office address of the registered agent must be the same.

2. The registered office must include a street or road address (P.O. Box alone is unacceptable).

3. A corporation cannot act as its own registered agent.

4. If the registered office is changed from one county to another, the corporation must file with the Recorder of Deeds of the new county a certified copy of the Articles of Incorporation and a certified copy of the Statement of Change of Registered Office. Such certified copies may be obtained ONLY from the Secretary of State.

5. Any change of registered agent must be by resolution adopted by the board of directors. This statement must be signed by a duly authorized officer.

6. The registered agent may report a change of the registered office of the corporation for which he/she is a registered agent. When the agent reports such a change, this statement must be signed by the registered agent. If a corporation is acting as the registered agent, a duly authorized officer of such corporation must sign this statement.

**Menjivar Att. G
Page 4 of 14**



**State of Illinois**
**Domestic/Foreign Corporation Annual Report**

| Year | Corporation File No |
|---|---|
| 2010 | 66403802 |

FILED    Mar 25, 2010

Jesse White, Secretary of State

1. **Corporate Name** AURA DEVELOPMENT, INC.

   **Registered Agent** IAN L ERDOS

   **Registered Office** 4730 N LEAMINGTON

   **City, IL, Zip Code, County** CHICAGO 606300000 COOK

2. **Principal address of Corporation** 121 ASHTON DRIVE        BURR RIDGE        IL 60527

3a. **State or Country of Incorporation** IL        3b. **Date Incorporated/Qualified** 03-05-2008

4. **The names and addresses of ALL officers & directors MUST be listed here!**

| Officers | |
|---|---|
| Title<br>Name & Address | PRESIDENT<br>HIRSH MOHINDRA |
| Title<br>Name & Address | SECRETARY<br>HIRSH MOHINDRA |
| Title<br>Name & Address | DIRECTOR<br>HIRSH MOHINDRA 121 ASHTON DRIVE    BURR RIDGE    IL<br>60527 |

5. **If 51% or more of the stock is owned by a minority or female, please check the appropriate box**

   ☐ Minority        ☐ Female        ☐ Both

6. **Number of shares authorized and issued as of** 12-31-2009

| Class | Series | Par Value | Number Authorized | Number Issued |
|---|---|---|---|---|
| COMMON | | 0.00000 | 10000 | 1000.000 |
| | | | | |

7. **The amount of paid-in-capital as of** 12-31-2009 **is $** 1000

8. The corporation elects to pay its annual franchise tax based upon 100% of its total paid-in capital.

9. **Under the penalty of perjury and as an authorized officer, I declare that this annual report, pursuant to provisions of the Business Corporation Act, has been examined by me and is, to the best of my knowledge and belief, true, correct and complete.**

   **By** HIRSH MOHINDRA
   Authorized Officer

   PRESIDENT        03-25-2010
   Title & Date

| Fee Summary |
|---|
| Franchise Tax: $25.00 |
| Filing Fee: $75.00 |
| Penalty: $2.50 |
| Interest: $1.00 |
| Total Fee: $103.50 |

This document was electronically generated at www.cyberdriveillinois.com

**Menjivar Att. G**
**Page 5 of 14**

YEAR OF: *2011*

File Prior to: MARCH 2011

**STATE OF ILLINOIS**
**DOMESTIC CORPORATION ANNUAL REPORT**

CORPORATION
File #: 66403602

Note: A change in the Registered Agent and/or Registered Office may only be effected by filing Form BCA-5.10/5.20. If there have been any changes in items 6 or 7a, Form BCA-14.30 must be completed and submitted in the same envelope.

**FILED**

1. Corporate Name: AURA DEVELOPMENT, INC.
   Registered Agent: IAN L ERDOS
   Registered Office: 4730 NORTH LEAMINGTON
   City, IL, ZIP Code: CHICAGO, ILLINOIS 60630

**JUL 26 2011**

County: COOK

**JESSE WHITE**
**SECRETARY OF STATE**

2. Principal Address of Corporation: 121 Ashton Drive, ___ Burr Ridge , Illinois ___ 60527

   Street ___ City ___ State ___ ZIP Code

3. Date Incorporated: March 5, 2008

   Month ___ Day ___ Year

4. Names and Addresses of Officers and Directors:

   NOTE: The names and addresses of ALL officers and directors must be entered in this item.

CP0507665

| OFFICE | NAME | NUMBER & STREET | CITY | STATE | ZIP |
|---|---|---|---|---|---|
| President | Hirsh Mohindra | 121 Ashton Drive, | Burr Ridge , Illinois | 60527 | |
| Secretary | Hirsh Mohindra | 121 Ashton Drive, | Burr Ridge , Illinois | 60527 | |
| Treasurer | Hirsh Mohindra | 121 Ashton Drive, | Burr Ridge , Illinois | 60527 | |
| Director | Hirsh Mohindra | 121 Ashton Drive, | Burr Ridge , Illinois | 60527 | |
| Director | | | | | |
| Director | | | | | |

5. If 51% or more of stock is owned by a minority or female, please check appropriate box: ☐ Minority Owned ☐ Female Owned

6. Number of shares authorized and issued (as of _ *12/31/10* _):

| CLASS | SERIES | PAR VALUE | NUMBER AUTHORIZED | NUMBER ISSUED |
|---|---|---|---|---|
| common | none | none | 10,000 | 1,000 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

IMPORTANT: If the amount in item 6 or 7a differs from the Secretary of State's records, form BCA 14.30 must be completed.

7a. Amount of Paid-in Capital (as of *12/31/10* ): $ 1,000

7b. Paid-in Capital on record with Secretary of State: $ 1,000

   (Paid-in Capital reflects the sum of the Stated Capital and Paid-in surplus accounts.)

8. By: _Hirsh Mohindra_ ___ President ___ July 25, 2011
   Any Authorized Officer's Signature ___ Title ___ Date

   Under the penalty of perjury and as an authorized officer, I declare that this annual report, pursuant to provisions of the Business Corporation Act, has been examined by me and is, to the best of my knowledge and belief, true, correct and complete.

   Item 8 Must Be Signed.

RETURN TO:
Jesse White, Secretary of State
Department of Business Services • 501 S.Second St. • Springfield, IL 62756
217-782-7808 • www.cyberdriveillinois.com

**Please Complete Reverse Side of This Report**

PRESIDENT

SECRETARY

IF THE ABOVE OFFICER'S NAMES AND ADDRESSES ARE MISSING OR HAVE CHANGED, ENTER ONLY THE ADDITION OR CORRECTIONS BELOW.

66403602
File #

PRESIDENT Hirsh Mohindra ___ 121 Ashton Drive ___ Burr Ridge, Illinois ___ 60527
   Name ___ Street Address ___ City ___ State ___ ZIP Code

SECRETARY Hirsh Mohindra ___ 121 Ashton Drive ___ Burr Ridge, Illinois ___ 60527
   Name ___ Street Address ___ City ___ State ___ ZIP Code

Printed by authority of the State of Illinois. July 2011 — 5M — C 289.9

**Menjivar Att. G**
**Page 6 of 14**

(Item 9 OR 10a OR 10b, whichever is applicable, MUST be completed.)

9.  Amounts stated in parts (a) through (d) below are given for the 12-month period
    ending _____
           Day       Month       Year

Value of property (gross assets):

    (a)  owned by the corporation, wherever located: ..................................................  (a)  $ _____

    (b)  of the corporation located within the State of Illinois: ....................................  (b)  $ _____

Gross amount of business transacted by the corporation:

    (c)  everywhere for the above period: ....................................................................  (c)  $ _____

    (d)  at or from places of business in Illinois for the above period: .........................  (d)  $ _____

$$\text{ALLOCATION FACTOR} = \frac{b+d}{a+c} = \underline{\qquad\qquad} \quad \text{Enter this figure on line 11b below.}$$
                                                   6 decimal places

10a.  ☐  ALL property of the Corporation is located in Illinois and ALL business of the Corporation is transacted at or from places of business in Illinois.

10b.  ☞  The Corporation elects to pay franchise tax on the basis of 100% of its total Paid-in Capital.

      ALLOCATION FACTOR = 1.00000 *(Enter this figure on line 11b below.)*

## STOP: Item 9 or 10 must be completed before continuing to Item 11.

11.    ANNUAL FRANCHISE TAX AND FEES

| | | |
|---|---|---|
| 11a. TOTAL PAID-IN CAPITAL (Enter amount from Item 7a; if late, enter the greater of 7a or 7b.) ............................ | a. 1,000 | |
| 11b. ALLOCATION FACTOR (Enter from Item 9 or Item 10.) ............................ | b. 1.0 | |
| 11c. ILLINOIS CAPITAL (Multiply line 11a by line 11b.) ............................ | c. 1,000 | |
| 11d1. Multiply line 11c by .001 (Round to nearest cent.) ............................ | d1 1 | |
| 11d2. ANNUAL FRANCHISE TAX (Enter amount from line d1, but not less than $25) ............ | | d2. 25.00 |
| 11e1. If Annual Report is late, multiply line d2 by .10 ............................ | e1. 2.50 | |
| 11e2. If Annual Franchise Tax is late, multiply line d2 by .02 for each month late or part thereof (minimum $1) ............................ | e2. 2.50 | |
| 11e3. INTEREST & PENALTIES (Add lines e1 and e2.) ............................ | | e3. 5.00 |
| 11f. ANNUAL REPORT FILING FEE ($75) ............................ | | 11f. $75.00 |
| 11g. TOTAL ANNUAL FRANCHISE TAX, FEES, INTEREST, PENALTIES DUE (Add line d2 + line e3 + line f.) ............................ 11g. | | 105.00 |

**MAKE CHECKS PAYABLE TO ILLINOIS SECRETARY OF STATE.**
**(Place corporate file number on check.)**

## IMPORTANT:
**If there have been changes in Items 6 or 7, Form BCA 14.30 must be executed**
**and submitted with this Annual Report in the <u>same envelope</u>.**

Printed by authority of the State of Illinois. July 2011 — 5M — C 289.9

**Menjivar Att. G**
**Page 7 of 14**



**State of Illinois**
**Domestic/Foreign Corporation Annual Report**

| Year | Corporation File No |
|---|---|
| 2012 | 66403602 |

FILED    Apr 5, 2012

Jesse White, Secretary of State

1.  Corporate Name  AURA DEVELOPMENT, INC.

    Registered Agent  IAN L ERDOS

    Registered Office  4730 N LEAMINGTON

    City, IL, Zip Code, County  CHICAGO 606300000 COOK

2.  Principal address of Corporation  121 ASHTON DRIVE          BURR RIDGE          IL 60527

3a.  State or Country of Incorporation  IL          3b. Date Incorporated/Qualified  03-05-2008

4.  **The names and addresses of ALL officers & directors MUST be listed here!**

| Officers | |
|---|---|
| Title<br>Name & Address | PRESIDENT<br>HIRSH MOHINDRA  121 ASHTON DRBURR RIDGE 60527 |
| Title<br>Name & Address | SECRETARY<br>HIRSH MOHINDRA  SAME |
| Title<br>Name & Address | DIRECTOR<br>HIRSH MOHINDRA          121 ASHTON DRIVE          BURR RIDGE          IL<br>60527 |

5.  **If 51% or more of the stock is owned by a minority or female, please check the appropriate box**

    ☐Minority          ☐Female          ☐Both

6.  Number of shares authorized and issued as of  12-31-2011

| Class | Series | Par Value | Number Authorized | Number Issued |
|---|---|---|---|---|
| COMMON | | 0.00000 | 10000 | 1000.000 |
| | | | | |

7.  The amount of paid-in-capital as of  12-31-2011          is  $  1000

8.  The corporation elects to pay its annual franchise tax based upon 100% of its total paid-in capital.

9.  **Under the penalty of perjury and as an authorized officer, I declare that this annual report, pursuant to provisions of the Business Corporation Act, has been examined by me and is, to the best of my knowledge and belief, true, correct and complete.**

By  HIRSH MOHINDRA
    Authorized Officer

    PRESIDENT          04-05-2012
    Title & Date

| Fee Summary |
|---|
| Franchise Tax: $25.00 |
| Filing Fee: $75.00 |
| Penalty: $2.50 |
| Interest: $1.00 |
| Total Fee: $103.50 |



**State of Illinois**
**Domestic/Foreign Corporation Annual Report**

| Year | Corporation File No |
|------|---------------------|
| 2013 | 66403602 |

FILED   Apr 2, 2013

Jesse White, Secretary of State

1. Corporate Name  AURA DEVELOPMENT, INC.

   Registered Agent  IAN L ERDOS

   Registered Office  4730 N LEAMINGTON

   City, IL, Zip Code, County  CHICAGO 606300000 COOK

2. Principal address of Corporation  500 QUAIL RIDGE DRIVE      WESTMONT      IL 60559

3a. State or Country of Incorporation  IL         3b. Date Incorporated/Qualified  03-05-2008

4. The names and addresses of ALL officers & directors MUST be listed here!

   **Officers**

   | Title | PRESIDENT |
   |-------|-----------|
   | Name & Address | HIRSH MOHINDRA 500 QUAIL RIDGEDRIVE WESTMONT IL 60559 |

   | Title | SECRETARY |
   |-------|-----------|
   | Name & Address | HIRSH MOHINDRA 500 QUAIL RIDGEDRIVE WESTMONT IL 60559 |

   | Title | DIRECTOR | | |
   |-------|----------|--|--|
   | Name & Address | HIRSH MOHINDRA 60559 | 500 QUAIL RIDGE DRIVE | CHICAGO   IL |

5. If 51% or more of the stock is owned by a minority or female, please check the appropriate box

   ☐ Minority      ☐ Female      ☐ Both

6. Number of shares authorized and issued as of  12-31-2012

   | Class | Series | Par Value | Number Authorized | Number Issued |
   |-------|--------|-----------|-------------------|---------------|
   | COMMON | | 0.00000 | 10000 | 1000.000 |
   | | | | | |

7. The amount of paid-in-capital as of  12-31-2012      is  $ 1000

8. The corporation elects to pay its annual franchise tax based upon 100% of its total paid-in capital.

9. Under the penalty of perjury and as an authorized officer, I declare that this annual report, pursuant to provisions of the Business Corporation Act, has been examined by me and is, to the best of my knowledge and belief, true, correct and complete.

   By  HIRSH MOHINDRA
   Authorized Officer

   PRESIDENT      04-02-2013
   Title & Date

| Fee Summary |
|-------------|
| Franchise Tax: $25.00 |
| Filing Fee: $75.00 |
| Penalty: $2.50 |
| Interest: $1.00 |
| Total Fee: $103.50 |

**Menjivar Att. G**
**Page 9 of 14**

FORM **BCA 5.10/5.20** (rev. Dec. 2003)
STATEMENT OF CHANGE OF
REGISTERED AGENT AND/OR
REGISTERED OFFICE
Business Corporation Act

Jesse White, Secretary of State
Department of Business Services
501 S. Second St., Rm. 328
Springfield, IL 62756
217-782-7808
www.cyberdriveillinois.com

Remit payment in the form of a
check or money order payable
to Secretary of State.

**FILED**

APR 4 – 2013

**JESSE WHITE
SECRETARY OF STATE**

**PAID**

APR 0 5 2013

**EXPEDITED
SECRETARY OF STATE**



CP0031156

File # 66403602          Filing Fee: $25   Approved: _2C_

——— Submit in duplicate ——— Type or Print clearly in black ink ——— Do not write above this line ———

1. Corporate Name: __AURA DEVELOPMENT INC.__

2. State or Country of Incorporation: __ILLINOIS__

3. Name and Address of Registered Agent and Registered Office as they appear on the records of the Office of the Secretary of State (before change):

   Registered Agent: __IAN L ERDOS__
               First Name           Middle Name           Last Name

   Registered Office: __4730 N. LEAMINGTON__
               Number           Street           Suite # (P.O. Box alone is unacceptable)

             __CHICAGO__          __60630__          __COOK__
             City          ZIP Code          County

4. Name and Address of Registered Agent and Registered Office shall be (after all changes herein reported):

   Registered Agent: __IAN L ERDOS__
               First Name           Middle Name           Last Name

   Registered Office: __500 QUAIL RIDGE DRIVE__
               Number           Street           Suite # (P.O. Box alone is unacceptable)

             __WESTMONT__          __60559__          __DUPAGE__
             City          ZIP Code          County

5. The address of the registered office and the address of the business office of the registered agent, as changed, will be identical.

6. The above change was authorized by: ("X" one box only)
   a. ☐ Resolution duly adopted by the board of directors. (See Note 4 on reverse.)
   b. ☑ Action of the registered agent. (See Note 5 on reverse.)

### SEE REVERSE FOR SIGNATURE(S).

Printed on recycled paper. Printed by authority of the State of Illinois. June 2012 — 1 — C 135.23

**Menjivar Att. G
Page 10 of 14**

7. **If authorized by the board of directors, sign here. (See Note 4 below.)**
The undersigned corporation has caused this statement to be signed by a duly authorized officer who affirms, under penalties of perjury, that the facts stated herein are true and correct.

Dated _____ , _____    _____
        Month & Day        Year             Exact Name of Corporation

_____
     Any Authorized Officer's Signature

_____
     Name and Title (type or print)

**If change of registered office by registered agent, sign here. (See Note 5 below.)**
The undersigned, under penalties of perjury, affirms that the facts stated herein are true and correct.

Dated APRIL 3 _____ , 2013    _____
        Month & Day        Year    Signature of Registered Agent of Record

               IAN L ERDOS _____
                         Name (type or print)
                 If Registered Agent is a corporation,
         Name and Title of officer who is signing on its behalf.

## NOTES

1. The registered office may, but need not be, the same as the principal office of the corporation. However, the registered office and the office address of the registered agent must be the same.

2. The registered office must include a street or road address (P.O. Box alone is unacceptable).

3. A corporation cannot act as its own registered agent.

4. Any change of registered agent must be by resolution adopted by the board of directors. This statement must be signed by a duly authorized officer.

5. The registered agent may report a change of the registered office of the corporation for which he/she is a registered agent. When the agent reports such a change, this statement must be signed by the registered agent. If a corporation is acting as the registered agent, a duly authorized officer of such corporation must sign this statement.

**Menjivar Att. G**
**Page 11 of 14**



**State of Illinois**
**Domestic/Foreign Corporation Annual Report**

Year | Corporation File No
2014 | 66403602
FILED | May 27, 2014
Jesse White, Secretary of State

1. **Corporate Name** AURA DEVELOPMENT, INC.

   **Registered Agent** IAN L ERDOS

   **Registered Office** 500 QUAIL RIDGE DRIVE

   **City, IL, Zip Code, County** WESTMONT 605590000 DU PAGE

2. **Principal address of Corporation** 500 QUAIL RIDGE DRIVE       WESTMONT       IL 60559

3a. **State or Country of Incorporation** IL       **3b. Date Incorporated/Qualified** 03-05-2008

4. **The names and addresses of ALL officers & directors MUST be listed here!**

| Officers | |
|---|---|
| Title | PRESIDENT |
| Name & Address | HIRSH MOHINDRA 500 QUAIL RIDGEDRIVE WESTMONT IL 60559 |
| Title | SECRETARY |
| Name & Address | HIRSH MOHINDRA 500 QUAIL RIDGEDRIVE WESTMONT IL 60559 |
| Title | DIRECTOR |
| Name & Address | HIRSH MOHINDRA 60559     500 QUAIL RIDGE DRIVE     WESTMONT     IL |

5. **If 51% or more of the stock is owned by a minority or female, please check the appropriate box**

   ☐ Minority    ☐ Female    ☐ Both

6. **Number of shares authorized and issued as of** 12-31-2013

| Class | Series | Par Value | Number Authorized | Number Issued |
|---|---|---|---|---|
| COMMON | | 0.00000 | 10000 | 1000.000 |
| | | | | |

7. **The amount of paid-in-capital as of** 12-31-2013    **is $** 1000

8. The corporation elects to pay its annual franchise tax based upon 100% of its total paid-in capital.

9. **Under the penalty of perjury and as an authorized officer, I declare that this annual report, pursuant to provisions of the Business Corporation Act, has been examined by me and is, to the best of my knowledge and belief, true, correct and complete.**

| Fee Summary |
|---|
| Franchise Tax: $25.00 |
| Filing Fee: $75.00 |
| Penalty: $2.50 |
| Interest: $1.50 |
| Total Fee: $104.00 |

By HIRSH MOHINDRA
**Authorized Officer**

PRESIDENT       05-27-2014
**Title & Date**

This document was electronically generated at www.cyberdriveillinois.com

**Menjivar Att. G**
**Page 12 of 14**

FORM **BCA 5.10/5.20**
**STATEMENT OF CHANGE OF**
**REGISTERED AGENT AND/OR**
**REGISTERED OFFICE**
Business Corporation Act

File # **66403602**

Filing Fee: 25.00
Approved By: ____**SJG**____

**FILED**
**May 27, 2014**
**Jesse White**
**Secretary of State**

1. Corporate Name: AURA DEVELOPMENT, INC.

2. State or Country of Incorporation: ILLINOIS

3. Name and Address of Registered Agent and Registered Office as they appear on the records of the Office of the Secretary of State (before change):

   Registered Agent: IAN L ERDOS

   Registered Office: 500 QUAIL RIDGE DRIVE

   | WESTMONT | 605590000 | DU PAGE |
   |---|---|---|
   | City | ZIP Code | County |

4. Name and Address of Registered Agent and Registered Office shall be (after all changes herein reported):

   Registered Agent: GAURAV MOHINDRA

   Registered Office: 500 QUAIL RIDGE DR

   | WESTMONT | 605596154 | DU PAGE |
   |---|---|---|
   | City | ZIP Code | County |

5. The address of the registered office and the address of the business office of the registered agent, as changed, will be identical.

6. The above change was authorized by resolution duly adopted by the board of directors.

7. The undersigned corporation has caused this statement to be signed by a duly authorized officer who affirms, under penalties of perjury, that the facts stated herein are true and correct.

   Date: _____May 27, 2014_____

   Exact Name of the Corporation:
   AURA DEVELOPMENT, INC.

   _____
   HIRSH MOHINDRA
   Authorized Officer's Name

   _____
   PRESIDENT
   Title

This document was created electronically at www.cyberdriveillinois.com

**Menjivar Att. G**
**Page 13 of 14**

**STATE OF ILLINOIS**
OFFICE OF THE SECRETARY OF STATE
I hereby certify that this is a true and correct copy,
consisting of _13_ pages, as taken from the
original on file in this office.

_Jesse White_
JESSE WHITE
SECRETARY OF STATE

DATE: _8/7/2015_

BY: _____

# Attachment H

Page 1 of 4

Date: 3/6/2015 Time: 9:16:16 AM (US Central Time) Scanned From IP: ▆▆▆▆

**Bank of America** ⬧⬧⬧

BANK OF AMERICA, N.A. (THE "BANK")

**Business Signature Card**
**with Substitute Form W-9**

Account Number: ▆▆▆6657        Bank Number: 885

Account Type: ☒ DDA ☐ SAV ☐ CD

Account Title:

ASHTON ASSET MANAGEMENT INC

**Legal Designation:**

☐ Individual/Sole Proprietor   ☐ Trust/Estate   ☐ Unincorporated Association   ☐ C Corporation   ☒ S Corporation

☐ Partnership   (Enter the type of partnership: General, LP, LLP or LLLP) _____

☐ Limited Liability Company (Enter tax classification: C=C Corporation, S=S Corporation, P=Partnership or M=Single Member Sole Proprietor) _____

☐ Other (Defined in W-9 Instructions) _____

Social Security Number _____    (or)   Employer Identification Number ▆▆▆695

By signing below, I/we acknowledge and agree that this account is and will be governed by the terms and conditions set forth in the account opening documents for my/our account, as they are amended from time to time. The account opening documents include the Deposit Agreement and Disclosures and the Business Schedule of Fees. Furthermore, I/we acknowledge the receipt of these documents. By signing below, I/we acknowledge and agree that the signature(s) will serve as verification for any transactions in connection with this account, and as the certification (set forth below) of the taxpayer identification number (TIN) to which I/we want interest reported. The Deposit Agreement includes a provision for alternative dispute resolution.

Substitute Form W-9. Certification - Under penalties of perjury, I certify that: (1) The number shown on this form is the correct taxpayer identification number (or I am waiting for a number to be issued to me), and (2) I am not subject to backup withholding because: (A) I am exempt from backup withholding, or (B) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (C) the IRS has notified me that I am no longer subject to backup withholding, and (3) I am a US citizen or other US person (Defined in the W-9 instructions) and (4) the FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

Certification Instructions: You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. (Please refer to the IRS instructions for Form W-9).

> The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

Exempt payee code (if any) _____

Exemption from FATCA reporting code (if any) _____

☐ Nonresident Alien Status (if applicable) If the beneficial owner of this account is a foreign person, check here, and complete and sign the applicable Form(s) W-8.

| | Name (typed or printed) | Title (if applicable) | Signature | Date |
|---|---|---|---|---|
| 1 | HIRSH MOHINDRA | President | X _____ | 2-23-15 |
| 2 | GAURAV K MOHINDRA | Vice President | X _____ | 2-23-15 |
| 3 | | | _____ | _____ |
| 4 | | | _____ | _____ |
| 5 | | | _____ | _____ |

NIL
00-14-9297MW 08-2014

© 2012 Bank of America, N.A. All Rights Reserved
Page 1 of 2

**Menjivar Att. H**
**Page 1 of 4**

Date: 3/6/2015 Time: 9:16:16 AM (US Central Time) Scanned From IP: ███████

**Account Number** ███ 6657

☐ **Signature Card Addendum on File**

**ATM/Deposit/Debit Card Request**

Provided that the account referenced above is eligible to receive automated teller machine cards and/or Debit Cards, I (as authorized by the resolutions and/or court documents and/or other agreements which authorize this account) hereby request the issuance of such cards to any of the authorized signers on this account.

Authorized Signer _____     Title PRESIDENT

**Review Information**

**Customer 1:**

Name   HIRSH MOHINDRA

| | | | | | | |
|---|---|---|---|---|---|---|
| ID Type: US State ID W/Photo | ID#: ███ | ID Issuer: IL ST ID | Iss. Date: ███ | Exp. Date ███ |
| ID Type: Other | ID#: | ID Issuer: SOC SEC CARD | Iss. Date: ███ | Exp. Date ███ |

**Customer 2:**

Name   GAURAV K MOHINDRA

| | | | | | | |
|---|---|---|---|---|---|---|
| ID Type: US Driver License W/Photo | ID#: ███ | ID Issuer: IL DL | Iss. Date: ███ | Exp. Date: ███ |
| ID Type: Other | ID#: | ID Issuer: SOC SEC CARD | Iss. Date: | Exp. Date: ███ |

**Customer 3:**

Name _____

ID Type: _____ ID#: _____ ID Issuer: _____ Iss. Date: _____ Exp. Date: _____

ID Type: _____ ID#: _____ ID Issuer: _____ Iss. Date: _____ Exp. Date: _____

**Customer 4:**

Name _____

ID Type: _____ ID#: _____ ID Issuer: _____ Iss. Date: _____ Exp. Date: _____

ID Type: _____ ID#: _____ ID Issuer: _____ Iss. Date: _____ Exp. Date: _____

**Customer 5:**

Name _____

ID Type: _____ ID#: _____ ID Issuer: _____ Iss. Date: _____ Exp. Date: _____

ID Type: _____ ID#: _____ ID Issuer: _____ Iss. Date: _____ Exp. Date: _____

**Bank Information**

| | |
|---|---|
| Date | 02/23/2015 |
| Banking Center Name | WESTMONT |
| Associate's Name | Joseph Villanueva |
| Associate's Phone Number | 630-964-1000 |

NIL
00-14-9297MW 08-2014

|||||| ||| || |||| ||| |||| ||| |||

Page 2 of 2

Date: 3/6/2015 Time: 9:16:16 AM (US Central Time) Scanned From IP: [redacted]

Bank of America

BANK OF AMERICA, N.A. (THE "BANK")

**Certified Copy of Corporate Resolutions - Opening and Maintaining Deposit Accounts and Services**

Account Number: [redacted]6657

Name of Corporation ASHTON ASSET MANAGEMENT INC

I, the undersigned, hereby certify to BANK OF AMERICA, N.A ,

that I am the Secretary/Assistant Secretary and the designated keeper of the records and minutes of

ASHTON ASSET MANAGEMENT INC, duly organized and existing under the laws of the State of Illinois (the "Corporation"); that the following is a true copy of resolutions duly adopted by the Board of Directors of said Corporation at a meeting duly held on the 23 day of February 2015, at which a quorum was present and acted throughout or adopted by the unanimous written consent of the Board of Directors; and that such resolutions are in full force and effect and have not been amended or rescinded.

1. **Resolved,** that BANK OF AMERICA, N.A. (the "Bank") is hereby designated as a depository of the Corporation and that deposit accounts and/or time deposits (CDs) be opened and maintained in the name of this Corporation with Bank in accordance with the terms of the Bank's Deposit Agreement and Disclosures and the applicable rules and regulations for such accounts; that any one of the following officers or employees of the Corporation:

| Name | Title |
|---|---|
| Hirsh Mohindra | President |
| Gaurav Mohindra | Vice President |
| | |
| | |

is hereby authorized, on behalf of this Corporation and in its name, to execute and to sign any application, deposit agreement, signature card and any other documentation required by Bank to open said accounts; to sign checks, drafts, notes, bills of exchange, acceptances, time deposits (CDs) or other orders for payment of money; to endorse checks, drafts, notes, bills, time deposits (CDs) or other instruments owned or held by this Corporation for deposit with Bank or for collection or discount by Bank; to accept drafts, acceptances, and other instruments payable at Bank; to place orders with Bank for the purchase and sale of foreign currencies on behalf of this Corporation; to execute and deliver an electronic fund transfers agreement and to make transfers or withdrawals by electronic transfer on behalf of the Corporation; to obtain an access device (including but not limited to a card, code, or other means of access to the Corporation's accounts) that may be used for the purpose of initiating electronic fund transfers [Corporation agrees and acknowledges that neither the Electronic Funds Transfer Act (15 U.S.C. 1693 et seq.) nor Regulation E (12 C.F.R. Part 205) are applicable to any such access device]; to establish and maintain a night deposit relationship; to execute and deliver a wire transfer agreement and to request, or to appoint or delegate from time to time such persons who may request, wires of funds; to enter into any agreements with the Bank for the provision by Bank of various Treasury Management services to this Corporation as such officer or employee may determine, in his or her sole discretion, and to sign any and all documents and take all actions required by Bank relative to such Treasury Management services or the performance of the Corporation's obligations thereunder, and that any such Treasury Management agreement(s) shall remain in full force and effect until written notice to terminate given in accordance with the terms of any such agreement shall have been received by Bank and that such termination shall not affect any action taken by the Bank prior to such termination; to rent or lease a safe deposit box from Bank, to execute the rental agreement or lease, to enter the safe deposit box and to terminate the rental agreement or lease; to take whatever other actions or enter in to whatever other agreements relating to the accounts or investment of funds in such accounts with Bank and to execute, amend, supplement and deliver to Bank such agreements on behalf of the Corporation upon such terms and conditions as such officer or employee may deem appropriate and to appoint and delegate, from time to time, such person(s) who may be authorized to enter into such agreements and take any other actions pursuant to such agreements in connection with said accounts that the officer or employee deems necessary; and to waive presentment, demand, protest, and notice of protest or dishonor of any check, note, bill, draft, or other instrument made, drawn or endorsed by this Corporation; and

2. **Further Resolved,** that the Bank be and is hereby authorized to honor, receive, certify, pay or exchange for money orders or other instruments all instruments signed in accordance with the foregoing resolutions even though such payment may create an overdraft or even though such instruments may be drawn or endorsed to the order of any officer or employee signing the same or tendered by such officer or employee or a third party for exchange or cashing, or in payment of the individual obligation of such officer or employee, or for deposit to such officer's or employee's personal account and Bank shall not be required or be under any obligation to inquire as to the circumstances of the issuance or use of any instrument signed in accordance with the foregoing resolutions or the application or disposition of such instrument or the proceeds thereof; and, further, that the Bank is authorized to honor any instructions regarding withdrawals, orders for payment or transfer of funds whether oral, by telephone or electronic means if such withdrawal, orders or transfer are initiated by an above authorized officer or employee; and

3. **Further Resolved,** that the Bank be and is hereby requested, authorized and directed to honor and to treat as authorized, checks, drafts or other orders for the payment of money drawn or purportedly drawn in this Corporation's name, including those payable to the individual order of any person whose name appears thereon as signer thereof, when bearing or purporting to bear the facsimile signature of an officer or employee authorized in the foregoing resolutions and Bank shall be entitled to honor, to treat as authorized, and to charge this Corporation for such checks, drafts, or other orders regardless of by whom or by what means the actual or purported facsimile signature thereon may have been affixed thereto, if such signature resembles the facsimile specimen duly certified to or filed with the Bank by the Secretary or Assistant Secretary or other officer of this Corporation or if such facsimile signature resembles any facsimile signature previously affixed to any check, draft, or other order drawn in the Corporation's name, which check, draft, or other order was accepted and paid without timely objection by the Corporation, thereby ratifying the use of such facsimile signature; and the Corporation hereby indemnifies and holds the Bank harmless against any and all loss, cost, damage or expense suffered or incurred by the Bank arising out of or in any way related to the misuse or unlawful or unauthorized use by a person of such facsimile signature; and

Date: 3/6/2015 Time: 9:16:16 AM (US Central Time) Scanned From IP:

Account Number: 657

**4. Further Resolved,** that endorsements for deposit may be evidenced by the name of the Corporation being written or stamped on the check or other instrument deposited, without designation of the party making the endorsement, and Bank is authorized to supply any endorsement on any instrument tendered for deposit or collection; and

**5. Further Resolved,** that the Secretary or Assistant Secretary of this Corporation shall certify to Bank names and signatures of persons authorized to act on behalf of this Corporation under the foregoing resolutions and shall from time to time hereafter, as changes in the identity of said officers and employees are made, immediately report, furnish and certify such changes to Bank and shall submit to Bank a new account signature card reflecting such change(s) in order to make such changes effective and Bank shall be fully protected in relying on such certifications and shall be indemnified and saved harmless from any claims, demands, expenses, losses, or damages resulting from, or growing out of, honoring the signature of any officer or employee so certified, or refusing to honor any signature not so certified; and

**6. Further Resolved,** the foregoing resolutions shall remain in full force and effect and the authority herein given to all of said persons shall remain irrevocable as far as Bank is concerned until three (3) business days after Bank is notified in writing of the revocation of such authority and that receipt of such notice shall not affect any action taken by said Bank prior thereto; and

**7. Further Resolved,** that all transactions by any officer or employee of this Corporation on its behalf and in its name with Bank prior to the delivery to Bank of a certified copy of the foregoing resolutions are, in all respects, hereby ratified, confirmed, approved and adopted; and

**8. Further Resolved,** that the Secretary or Assistant Secretary be and hereby is, authorized and directed to certify these resolutions to said Bank and that the provisions hereof are in conformity with the Charter or Articles of Incorporation and Bylaws of this Corporation and that the Secretary or Assistant Secretary be, and hereby is, authorized and directed to certify, from time to time hereafter, the names of the holders of the above authorized titles and their signatures on any signature card or other documentation required by said Bank.

In Witness Whereof, I have hereunto subscribed my name and affixed the seal of this Corporation, this 23 day of February 2015

Secretary/Assistant Secretary

(Corporate Seal)

**Bank Information**

| Date | 02/23/2015 |
|---|---|
| Banking Center Name | WESTMONT |
| Associate's Name | Joseph Villanueva |
| Associate's Phone Number | 630-964-1000 |

NIL
00-14-9012M 11-2013

# Attachment I

28-Sep-2012 05:06 PM Bank of America 6302962317                               9/16

**Bank of America**

BANK OF AMERICA, N.A. (THE "BANK")

Business Signature Card
with Substitute Form W-9

Account Number ▮▮▮3796                              Bank Number: 885

Account Type: ☒ DDA   ☐ SAV   ☐ CD

Account Title:

CHM CAPITAL GROUP LLC

**Legal Designation:**

☐ Individual/Sole Proprietor   ☐ Trust/Estate   ☐ Unincorporated Association   ☐ C Corporation   ☐ S Corporation

☐ Partnership   (Enter the type of partnership: General, LP, LLP or LLLP)

☒ Limited Liability Company (Enter tax classification: C=C Corporation, S=S Corporation, P=Partnership or M=Single Member Sole Proprietor)  S

☐ Other (Defined in W-9 instructions)

Social Security Number _____ (or) Employer Identification Number ▮▮▮2044

By signing below, I/we acknowledge and agree that this account is and will be governed by the terms and conditions set forth in the account opening documents for my/our account, as they are amended from time to time. The account opening documents include the Deposit Agreement and Disclosures and the Business Schedule of Fees. Furthermore, I/we acknowledge the receipt of these documents. By signing below, I/we acknowledge and agree that the signature(s) will serve as verification for any transactions in connection with this account, and as the certification (set forth below) of the taxpayer identification number (TIN) to which I/we want interest reported. The Deposit Agreement includes a provision for alternative dispute resolution.

Substitute Form W-9 Certification - Under penalties of perjury, I certify that: (1) The number shown on this form is the correct taxpayer identification number (or I am waiting for a number to be issued to me), and (2) I am not subject to backup withholding because: (A) I am exempt from backup withholding, or (B) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (C) The IRS has notified me that I am no longer subject to backup withholding, and (3) I am a US citizen or other US person (Defined in the W-9 instructions).

Certification Instructions: You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. (Please refer to the IRS instructions for Form W-9).

☐ Exempt Payee (check if applicable)

> The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

☐ Nonresident Alien Status (if applicable) If the beneficial owner of this account is a foreign person, check here, and complete and sign the applicable Form(s) W-8.

| Name (typed or printed) | Title (if applicable) | Signature | Date |
|---|---|---|---|
| 1 HIRSH K MOHINDRA | PRESIDENT | | 9/26/12 |
| 2 GAURAV MOHINDRA | VICE PRESIDENT | | 9/26/12 |
| 3 | | | |
| 4 | | | |
| 5 | | | |

© 2012 Bank of America, N.A. All Rights Reserved

NIL
00-14-9297M 08-2012                    [barcode]                         Page 1 of 2

28-Sep-2012 05:06 PM Bank of America 6302962317                     10/16

**3796**

☐ Signature Card Addendum on File

**ATM/Deposit/Debit Card Request**

Provided that the account referenced above is eligible to receive automated teller machine cards and/or Debit Cards, I (as authorized by the resolutions and/or court documents and/or other agreements which authorize this account) hereby request the issuance of such cards to any of the authorized signers on this account.

Authorized Signer _____     Title: YMNAGING MEMBER

**Review Information**

**Customer 1:**

Name: HIRSH K MOHINDRA

| ID Type: US Driver License W/Photo | ID#: | ID Issuer: IL | Iss. Date: | Exp. Date: |
| ID Type: Major Fin'l Credit Cd | ID#: | ID Issuer: CHASE BANK | Iss. Date: | Exp. Date: |

**Customer 2:**

Name: GAURAV MOHINDRA

| ID Type: US Driver License W/Photo | ID#: | ID Issuer: CA | Iss. Date: | Exp. Date: |
| ID Type: Major Fin'l Credit Cd | ID#: | ID Issuer: CITIBANK | Iss. Date: | Exp. Date: |

**Customer 3:**

Name: _____

| ID Type: | ID#: | ID Issuer: | Iss. Date: | Exp. Date: |
| ID Type: | ID#: | ID Issuer: | Iss. Date: | Exp. Date: |

**Customer 4:**

Name: _____

| ID Type: | ID#: | ID Issuer: | Iss. Date: | Exp. Date: |
| ID Type: | ID#: | ID Issuer: | Iss. Date: | Exp. Date: |

**Customer 5:**

Name: _____

| ID Type: | ID#: | ID Issuer: | Iss. Date: | Exp. Date: |
| ID Type: | ID#: | ID Issuer: | Iss. Date: | Exp. Date: |

**Bank Information**

| Date | 09/26/2012 |
| Banking Center Name | BOLINGBROOK ON WEBER ROAD |
| Associate's Name | PARESH VAGADIA |
| Associate's Phone Number | 630-679-6061 |

NRL
00-14-4297M 08-2012

Page 2 of 2

28-Sep-2012 05:06 PM Bank of America 6302962317

11/16

**Bank of America**

BANK OF AMERICA, N.A. (THE "BANK")

3796

Certified Copy of Limited Liability Company Resolutions
Opening and Maintaining Deposit Accounts and Services

Name of Limited Liability Company   CHM CAPITAL GROUP LLC

I, the undersigned, hereby certify to   BANK OF AMERICA, N.A.

, that I am the sole                                                                                             and the designated keeper

of the records and minutes of   CHM CAPITAL GROUP LLC

a ☒ limited liability Company ☐ professional limited liability company duly organized and existing under the laws of the State of _____ IL

(the "Company"); that I have full authority to manage, represent, sign for and bind the Company, that the following is a true copy of resolutions duly adopted
by a majority of the members/managers of said Company at a meeting duly held on the ___26th___ day of ___Sept___, ___2012___, at
which a quorum was present and acted throughout or adopted by the written consent of a majority of the members/managers; and that such resolutions are in full
force and effect and have not been amended or rescinded.

**1. Resolved,** that  BANK OF AMERICA, N.A.                                                                      (the "Bank")
is hereby designated as a depository of the Company and that deposit accounts and/or time deposits (CDs) to be opened and maintained in the name of this Company
with the Bank in accordance with the terms of the Bank's Deposit Agreement and Disclosures and the applicable rules and regulations for such accounts, that any
one of the following members, managers, or employees of this Company:

| Name | Title/Status |
|------|--------------|
| HIRSH MOHINDRA | MANAGING MEMBER |
| Gulzar Malhotra | MEMBER |
| | |
| | |

is hereby authorized, on behalf of this Company and in name, to execute and sign any application, deposit agreement, signature card and any other documentation
required by Bank to open said accounts; to sign checks, drafts, notes, bills of exchange, acceptances, time deposits (CDs) or other orders for payment of money; to
endorse checks, drafts, notes, bills, time deposits (CDs) or other instruments owned or held by this company for deposit with Bank or for collection or discount by
Bank; to accept, drafts, acceptances, and other instruments payable at Bank; to place orders with Bank for the purchase and sale of foreign currencies on behalf of
this Company; to execute and deliver an electronic fund transfers agreement and to make transfers or withdrawals by electronic transfer on behalf of the Company;
to obtain an access device (including but not limited to a card, code, or other means of access to the Company's accounts) that may be used for the purpose of
initiating electronic fund transfers [Company agrees and acknowledges that neither the Electronic Funds Transfer Act (15 U.S.C. 1693 et seq.) nor Regulation E (12
C.F.R. Part 205) are applicable to any such account device]; to establish and maintain a night deposit relationship; to execute and deliver a wire transfer agreement
and to request, or to appoint and delegate from time to time such persons who may request, wires of funds; to enter into any agreements with the Bank for the
provision by Bank of various Treasury Management services to this Company as such member, manager or employee may determine, is his or her sole discretion,
and to sign any and all documents and take all actions required by Bank relative to such Treasury Management services or the performance of the Company's
obligations there under, and that any such Treasury Management agreement(s) shall remain in full force and effect until written notice to terminate given in
accordance with the terms of any such agreement shall have been received by Bank and that such termination shall not affect any action taken by the Bank prior to
such termination; to rent or lease a safe deposit box from Bank, to execute the rental agreement or lease, to enter the safe deposit box and to terminate the rental
agreement or lease; to take whatever other actions or enter into whatever other agreements relating to the accounts or investment of funds in such accounts with
Bank and to execute, amend, supplement and deliver to Bank such agreements on behalf of the Company upon such terms and conditions as such member, manager
or employee may deem appropriate; and to appoint and delegate, from time to time, such person(s) who may be authorized to enter into such agreements and take any
other actions pursuant to such agreements in connection with said accounts that the member, manager or employee deems necessary; and to waive presentment,
demand, protest, and notice of protest or dishonor of any check, note, bill, draft, or other instrument made, drawn or endorsed by this Company; and

**2. Further Resolved,** that the Bank be and is hereby authorized to honor, receive, certify, pay or exchange for money orders or other instruments all instruments
signed in accordance with the foregoing resolution even though such payment may create an overdraft or even though such instruments may be drawn or endorsed to the
order of any member, manager or employee signing the same or tendered by such member, manager or employee or a third party for exchange or cashing, or in payment
of the individual obligation of such member, manager or employee, or for deposit to such member's, manager's or employee's personal account and Bank shall not be
required or be under any obligation to inquire as to the circumstances of the issuance or use of any instrument signed in accordance with the foregoing resolution or the
application or disposition of such instrument or the proceeds thereof; and, further, that the Bank is authorized to honor any instructions regarding withdrawals, orders for
payment or transfer of funds whether oral, by telephone or electronic means if such withdrawal, orders or transfer are initiated by an above authorized member, manager
or employee; and

**3. Further Resolved,** that the Bank be and is hereby requested, authorized and directed to honor and to treat as authorized, checks, drafts or other orders for
the payment of money drawn or purportedly drawn in this Company's name, including those payable to the individual order of any person whose name appears
thereon as signer thereof, when bearing or purporting to bear the facsimile signature of any member, manager or employee authorized in the foregoing resolutions and
the Bank shall be entitled to honor, to treat as authorized, and to charge this Company for such checks, drafts, or other orders regardless of by whom or by what
means the actual or purported facsimile signature thereon may have been affixed thereto, if such signature resembles the facsimile specimen duly certified to or filed
with the Bank by a member/manager of this Company or if such facsimile signature resembles any facsimile signature previously affixed to any check, draft, or
other order drawn in the Company's name, which check, draft, or other order was accepted and paid without timely objection by the Company, thereby ratifying the
use of such facsimile signature; and the Company hereby indemnifies and holds the Bank harmless against any and all loss, cost, damage or expense suffered or
incurred by the Bank arising out of or in any way related to the misuse or unlawful or unauthorized use by a person of such facsimile signature; and

00-14-9258M  06-1999

NTL

Page 1 of 2

28-Sep-2012 05:06 PM Bank of America 6302962317                                                          12/16

**3796.**

**4. Further Resolved,** that endorsements for deposit may be evidenced by the name of the Company being written or stamped on the check or other instrument deposited, without designation of the party making the endorsement, and the Bank is authorized to supply any endorsement on any instrument tendered for deposit or collection; and

**5. Further Resolved,** that a duly authorized member/manager of this Company shall certify to the Bank names and signatures of persons authorized to act on behalf of this Company under the foregoing resolutions and shall from time to time hereafter, as changes in the identity of said members, managers and employees are made, immediately report, furnish and certify such changes to the Bank and shall submit to the Bank a new account signature card reflecting such change(s) in order to make such changes effective and the Bank shall be fully protected in relying on such certifications and shall be indemnified and saved harmless from any claims, demands, expenses, losses, or damages resulting from, or growing out of, honoring the signature of any member, manager or employee so certified, or refusing to honor any signature not so certified; and

**6. Further Resolved,** that the foregoing resolutions shall remain in full force and effect and the authority herein given to all of said persons shall remain irrevocable as far as the Bank is concerned until three (3) business days after the Bank is notified in writing of the revocation of such authority and that receipt of such action shall not affect any action taken by said Bank prior thereto; and

**7. Further Resolved,** that all transactions by any member, manager or employee of this Company on its behalf and in its name with the Bank prior to the delivery to the Bank of a certified copy of the foregoing resolutions are, in all respects, hereby ratified, confirmed, approved and adopted; and

**8. Further Resolved,** that any member/manager be and hereby is, authorized and directed to certify these resolutions to the Bank and that the provisions hereof are in conformity with the Articles of Organization and Operating Agreement of this Company.

In Witness Whereof, and intending to bind the Company, I have hereunto subscribed my name as a member/manager of this Company, this 26th day of Sept , 2012

_____
Member/Manager

| Bank Information | |
|---|---|
| Date | 09/26/2012 |
| Banking Center Name | BOLINGBROOK ON WEBER ROAD |
| Associate's Name | PARESH VAGADIA |
| Associate's Phone Number | 630-679-6941 |

Page 2 of 2

Menjivar Att. I
Page 4 of 5

2011-Jun-03 10:21 AM Bank of America 6302962317                    2/4

3796



# Attachment J

Date: 3/6/2015 Time: 9:16:16 AM (US Central Time) Scanned From IP: ███

**Bank of America** ⫸

BANK OF AMERICA, N.A. (THE "BANK")

**Business Signature Card
with Substitute Form W-9**

**Account Number:** ███6631        **Bank Number:** 885

**Account Type:** ☒ DDA    ☐ SAV    ☐ CD

**Account Title:**

PACIFIC CAPITAL HOLDINGS INC

---

**Legal Designation:**

☐ **Individual/Sole Proprietor**    ☐ **Trust/Estate**    ☐ **Unincorporated Association**    ☐ **C Corporation**    ☒ **S Corporation**

☐ **Partnership** (Enter the type of partnership: General, LP, LLP or LLLP) _____

☐ **Limited Liability Company** (Enter tax classification: C=C Corporation, S=S Corporation, P=Partnership or M=Single Member Sole Proprietor) ____

☐ **Other** (Defined in W-9 instructions) _____

**Social Security Number** _____ **(or) Employer Identification Number** ███6559

By signing below, I/we acknowledge and agree that this account is and will be governed by the terms and conditions set forth in the account opening documents for my/our account, as they are amended from time to time. The account opening documents include the Deposit Agreement and Disclosures and the Business Schedule of Fees. Furthermore, I/we acknowledge the receipt of these documents. By signing below, I/we acknowledge and agree that the signature(s) will serve as verification for any transactions in connection with this account, and as the certification (set forth below) of the taxpayer identification number (TIN) to which I/we want interest reported. The Deposit Agreement includes a provision for alternative dispute resolution.

**Substitute Form W-9. Certification** - Under penalties of perjury, I certify that: (1) The number shown on this form is the correct taxpayer identification number (or I am waiting for a number to be issued to me), and (2) I am not subject to backup withholding because: (A) I am exempt from backup withholding, or (B) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (C) The IRS has notified me that I am no longer subject to backup withholding, and (3) I am a US citizen or other US person (Defined in the W-9 instructions) and (4) the FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification Instructions:** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. (Please refer to the IRS instructions for Form W-9).

> The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

**Exempt payee code (if any)** _____

**Exemption from FATCA reporting code (if any)** _____

☐ **Nonresident Alien Status (if applicable)** If the beneficial owner of this account is a foreign person, check here, and complete and sign the applicable Form(s) W-8.

| Name (typed or printed) | Title (if applicable) | Signature | Date |
|---|---|---|---|
| 1 HIRSH MOHINDRA | President | x _signature_ | 2-23-15 |
| 2 GAURAV K MOHINDRA | Vice President | x _signature_ | 2-23-15 |
| 3 | | | |
| 4 | | | |
| 5 | | | |

NIL
00-14-9297MW 08-2014

© 2012 Bank of America, N.A. All Rights Reserved

Page 1 of 2

**Menjivar Att. J
Page 1 of 4**

Page 2 of 4

Date: 3/6/2015 Time: 9:16:16 AM (US Central Time) Scanned From IP: ███████

**Account Number:** ███6631 _____

🏛️ **Signature Card Addendum on File**

**ATM/Deposit/Debit Card Request**

Provided that the account referenced above is eligible to receive automated teller machine cards and/or Debit Cards, I (as authorized by the resolutions and/or court documents and/or other agreements which authorize this account) hereby request the issuance of such cards to any of the authorized signers on this account.

X _____     _____President_____
Authorized Signer                          Title

**Review Information**

**Customer 1:**

Name ___HIRSH MOHINDRA___

| ID Type: | US State ID W/Photo | ID#: ████ | ID Issuer: | IL ST ID | Iss. Date: ████ | Exp. Date: ████ |
| ID Type: | Other | ID#: | ID Issuer: | SOC SEC CARD | Iss. Date: | Exp. Date: |

**Customer 2:**

Name ___GAURAV K MOHINDRA___

| ID Type: | US Driver License W/Photo | ID#: ████ | ID Issuer: | IL DL | Iss. Date: | Exp. Date: ████ |
| ID Type: | Other | ID#: | ID Issuer: | SOC SEC CARD | Iss. Date: | Exp. Date: |

**Customer 3:**

Name _____

| ID Type: | ID#: | ID Issuer: | Iss. Date: | Exp. Date: |
| ID Type: | ID#: | ID Issuer: | Iss. Date: | Exp. Date: |

**Customer 4:**

Name _____

| ID Type: | ID#: | ID Issuer: | Iss. Date: | Exp. Date: |
| ID Type: | ID#: | ID Issuer: | Iss. Date: | Exp. Date: |

**Customer 5:**

Name _____

| ID Type: | ID#: | ID Issuer: | Iss. Date: | Exp. Date: |
| ID Type: | ID#: | ID Issuer: | Iss. Date: | Exp. Date: |

**Bank Information**

| Date | 02/23/2015 |
| Banking Center Name | WESTMONT |
| Associate's Name | Joseph Villanueva |
| Associate's Phone Number | 630-964-1000 |

NIL
00-14-9297MW 08-2014

Page 2 of 2

Page 3 of 4

Date: 3/6/2015 Time: 9:16:16 AM (US Central Time) Scanned From IP: ▮▮▮▮

**Bank of America** ◆◆◆

BANK OF AMERICA, N.A. (THE "BANK")

**Certified Copy of Corporate Resolutions - Opening and Maintaining Deposit Accounts and Services**

Account Number: ▮▮▮▮653)

Name of Corporation    PACIFIC CAPITAL HOLDINGS INC

I, the undersigned, hereby certify to    BANK OF AMERICA, N.A.

that I am the Secretary/Assistant Secretary and the designated keeper of the records and minutes of

PACIFIC CAPITAL HOLDINGS INC _____ , duly organized and existing under the laws of the

State of    Illinois   (the "Corporation"; that the following is a true copy of resolutions duly adopted by the Board of

Directors of said Corporation at a meeting duly held on the   23   day of  february   2015   , at which a quorum was present and acted

throughout or adopted by the unanimous written consent of the Board of Directors; and that such resolutions are in full force and effect and have not been amended

or rescinded.

**1. Resolved,** that    BANK OF AMERICA, N.A.   (the "Bank") is hereby designated as a depository of the Corporation and that deposit accounts and/or time deposits (CDs) be opened and maintained in the name of this Corporation with Bank in accordance with the terms of the Bank's Deposit Agreement and Disclosures and the applicable rules and regulations for such accounts; that any one of the following officers or employees of the Corporation:

| Name | Title |
|------|-------|
| Hirsh Mohindra | President |
| Gaurav Mohindra | Vice President |
| | |
| Name | Title |
| | |
| Name | Title |

is hereby authorized, on behalf of this Corporation and in its name, to execute and to sign any application, deposit agreement, signature card and any other documentation required by Bank to open said accounts; to sign checks, drafts, notes, bills of exchange, acceptances, time deposits (CDs) or other orders for payment of money, to endorse checks, drafts, notes, bills, time deposits (CDs) or other instruments owned or held by this Corporation for deposit with Bank or for collection or discount by Bank; to accept drafts, acceptances, and other instruments payable at Bank; to place orders with Bank for the purchase and sale of foreign currencies on behalf of this Corporation; to execute and deliver an electronic fund transfers agreement and to make transfers or withdrawals by electronic transfer on behalf of the Corporation; to obtain an access device (including but not limited to a card, code, or other means of access to the Corporation's accounts) that may be used for the purpose of initiating electronic fund transfers [Corporation agrees and acknowledges that neither the Electronic Funds Transfer Act (15 U.S.C. 1693 et seq.) nor Regulation E (12 C.F.R. Part 205) are applicable to any such access device]; to establish and maintain a night deposit relationship; to execute and deliver a wire transfer agreement and to request, or to appoint or delegate from time to time such persons who may request, wires of funds; to enter into any agreements with the Bank for the provision by Bank of various Treasury Management services to this Corporation as such officer or employee may determine, in his or her sole discretion, and to sign any and all documents and take all actions required by Bank relative to such Treasury Management services or the performance of the Corporation's obligations thereunder, and that any such Treasury Management agreement(s) shall remain in full force and effect until written notice to terminate given in accordance with the terms of any such agreement shall have been received by Bank and that such termination shall not affect any action taken by the Bank prior to such termination; to rent or lease a safe deposit box from Bank, to execute the rental agreement or lease, to enter the safe deposit box and to terminate the rental agreement or lease; to take whatever other actions or enter in to whatever other agreements relating to the accounts or investment of funds in such accounts with Bank and to execute, amend, supplement and deliver to Bank such agreements on behalf of the Corporation upon such terms and conditions as such officer or employee may deem appropriate and to appoint and delegate, from time to time, such person(s) who may be authorized to enter into such agreements and take any other actions pursuant to such agreements in connection with said accounts that the officer or employee deems necessary; and to waive presentment, demand, protest, and notice of protest or dishonor of any check, note, bill, draft, or other instrument made, drawn or endorsed by this Corporation; and

**2. Further Resolved,** that the Bank be and is hereby authorized to honor, receive, certify, pay or exchange for money orders or other instruments all instruments signed in accordance with the foregoing resolutions even though such payment may create an overdraft or even though such instruments may be drawn or endorsed to the order of any officer or employee signing the same or tendered by such officer or employee or a third party for exchange or cashing, or in payment of the individual obligation of such officer or employee, or for deposit to such officer's or employee's personal account and Bank shall not be required or be under any obligation to inquire as to the circumstances of the issuance or use of any instrument signed in accordance with the foregoing resolutions or the application or disposition of such instrument or the proceeds thereof; and, further, that the Bank is authorized to honor any instructions regarding withdrawals, orders for payment or transfer of funds whether oral, by telephone or electronic means if such withdrawal, orders or transfer are initiated by an above authorized officer or employee; and

**3. Further Resolved,** that the Bank be and is hereby requested, authorized and directed to honor and to treat as authorized, checks, drafts or other orders for the payment of money drawn or purportedly drawn in this Corporation's name, including those payable to the individual order of any person whose name appears thereon as signer thereof, when bearing or purporting to bear the facsimile signature of an officer or employee authorized in the foregoing resolutions and Bank shall be entitled to honor, to treat as authorized, and to charge this Corporation for such checks, drafts, or other orders regardless of by whom or by what means the actual or purported facsimile signature thereon may have been affixed thereto, if such signature resembles the facsimile specimen duly certified to or filed with the Bank by the Secretary or Assistant Secretary or other officer of this Corporation or if such facsimile signature resembles any facsimile signature previously affixed to any check, draft, or other order drawn in the Corporation's name, which check, draft, or other order was accepted and paid without timely objection by the Corporation, thereby ratifying the use of such facsimile signature; and the Corporation hereby indemnifies and holds the Bank harmless against any and all loss, cost, damage or expense suffered or incurred by the Bank arising out of or in any way related to the misuse or unlawful or unauthorized use by a person of such facsimile signature; and

NIL
00-14-9012M 11-2013

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

Date: 3/6/2015 Time: 9:16:16 AM (US Central Time) Scanned From IP:

Account Number: 631

**4. Further Resolved,** that endorsements for deposit may be evidenced by the name of the Corporation being written or stamped on the check or other instrument deposited, without designation of the party making the endorsement, and Bank is authorized to supply any endorsement on any instrument tendered for deposit or collection; and

**5. Further Resolved,** that the Secretary or Assistant Secretary of this Corporation shall certify to Bank names and signatures of persons authorized to act on behalf of this Corporation under the foregoing resolutions and shall from time to time hereafter, as changes in the identity of said officers and employees are made, immediately report, furnish and certify such changes to Bank and shall submit to Bank a new account signature card reflecting such change(s) in order to make such changes effective and Bank shall be fully protected in relying on such certifications and shall be indemnified and saved harmless from any claims, demands, expenses, losses, or damages resulting from, or growing out of, honoring the signature of any officer or employee so certified, or refusing to honor any signature not so certified; and

**6. Further Resolved,** the foregoing resolutions shall remain in full force and effect and the authority herein given to all of said persons shall remain irrevocable as far as Bank is concerned until three (3) business days after Bank is notified in writing of the revocation of such authority and that receipt of such notice shall not affect any action taken by said Bank prior thereto; and

**7. Further Resolved,** that all transactions by any officer or employee of this Corporation on its behalf and in its name with Bank prior to the delivery to Bank of a certified copy of the foregoing resolutions are, in all respects, hereby ratified, confirmed, approved and adopted; and

**8. Further Resolved,** that the Secretary or Assistant Secretary be and hereby is, authorized and directed to certify these resolutions to said Bank and that the provisions hereof are in conformity with the Charter or Articles of Incorporation and Bylaws of this Corporation and that the Secretary or Assistant Secretary be, and hereby is, authorized and directed to certify, from time to time hereafter, the names of the holders of the above authorized titles and their signatures on any signature card or other documentation required by said Bank.

In Witness Whereof, I have hereunto subscribed my name and affixed the seal of this Corporation, this 23 day of February 2015.

_____
Secretary/Assistant Secretary

(Corporate Seal)

| Bank Information | |
|---|---|
| Date | 02/23/2015 |
| Banking Center Name | WESTMONT |
| Associate's Name | Joseph Villanueva |
| Associate's Phone Number | 630-964-1000 |

NIL
00-14-9012M 11-2013

Menjivar Att. J
Page 4 of 4

# Attachment K

Date: 3/6/2015 Time: 9:16:16 AM (US Central Time) Scanned From IP: ███

**Bank of America** 🇺🇸

BANK OF AMERICA, N.A. (THE "BANK")

**Business Signature Card
with Substitute Form W-9**

Account Number: ████6644

Bank Number: **885**

Account Type: ☒ DDA  ☐ SAV  ☐ CD

Account Title:

STARK LAW LLC

**Legal Designation:**

☐ Individual/Sole Proprietor  ☐ Trust/Estate  ☐ Unincorporated Association  ☐ C Corporation  ☐ S Corporation

☐ Partnership  (Enter the type of partnership: General, LP, LLP or LLLP)

☒ Limited Liability Company (Enter tax classification: C=C Corporation, S=S Corporation, P=Partnership or M=Single Member Sole Proprietor)  M

☐ Other (Defined in W-9 instructions)

Social Security Number _____  (or)  Employer Identification Number  ████806

By signing below, I/we acknowledge and agree that this account is and will be governed by the terms and conditions set forth in the account opening documents for my/our account, as they are amended from time to time. The account opening documents include the Deposit Agreement and Disclosures and the Business Schedule of Fees. Furthermore, I/we acknowledge the receipt of these documents. By signing below, I/we acknowledge and agree that the signature(s) will serve as verification for any transactions in connection with this account, and as the certification (set forth below) of the taxpayer identification number (TIN) to which I/we want interest reported. The Deposit Agreement includes a provision for alternative dispute resolution.

**Substitute Form W-9. Certification - Under penalties of perjury, I certify that: (1) The number shown on this form is the correct taxpayer identification number (or I am waiting for a number to be issued to me), and (2) I am not subject to backup withholding because: (A) I am exempt from backup withholding, or (B) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (C) The IRS has notified me that I am no longer subject to backup withholding, and (3) I am a US citizen or other US person (Defined in the W-9 instructions) and (4) the FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.**

Certification Instructions: You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. (Please refer to the IRS instructions for Form W-9).

> The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

Exempt payee code (if any) _____

Exemption from FATCA reporting code (if any) _____

☐ Nonresident Alien Status (if applicable) If the beneficial owner of this account is a foreign person, check here, and complete and sign the applicable Form(s) W-8.

| Name (typed or printed) | Title (if applicable) | Signature | Date |
|---|---|---|---|
| 1. GAURAV K MOHINDRA | Manager | X _signature_ | 2-23-15 |
| 2. HIRSH MOHINDRA | Signer | X _signature_ | 2-23-15 |
| 3. | | | |
| 4. | | | |
| 5. | | | |

NFL
00-14-9297MW  08-2014

‖‖‖‖‖‖‖‖‖‖‖‖

© 2012 Bank of America, N.A. All Rights Reserved
Page 1 of 2

**Menjivar Att. K
Page 1 of 4**

Page 2 of 4

Date: 3/6/2015 Time: 9:16:16 AM (US Central Time) Scanned From IP: ▮▮▮▮▮

Account Number: ▮▮▮▮6644

☒ Signature Card Addendum on File

**ATM/Deposit/Debit Card Request**

Provided that the account referenced above is eligible to receive automated teller machine cards and/or Debit Cards, I (as authorized by the resolutions and/or court documents and/or other agreements which authorize this account) hereby request the issuance of such cards to any of the authorized signers on this account.

x _Gaurav Mohindra_ _Manager_
Authorized Signer                    Title

**Review Information**

**Customer 1:**

Name   GAURAV K MOHINDRA

ID Type: US Driver License W/Photo    ID#: ▮▮▮▮   ID Issuer: IL DL   Iss. Date: ▮▮▮   Exp. Date: ▮▮▮

ID Type: Other    ID#:    ID Issuer: SOC SEC CARD   Iss. Date:   Exp. Date:

**Customer 2:**

Name   HIRSH MOHINDRA

ID Type: US State ID W/Photo    ID#: ▮▮▮▮   ID Issuer: IL ST ID   Iss. Date: ▮▮▮   Exp. Date: ▮▮▮

ID Type: Other    ID#:    ID Issuer: SOC SEC CARD   Iss. Date:   Exp. Date:

**Customer 3:**

Name

ID Type:   ID#:   ID Issuer:   Iss. Date:   Exp. Date:

ID Type:   ID#:   ID Issuer:   Iss. Date:   Exp. Date:

**Customer 4:**

Name

ID Type:   ID#:   ID Issuer:   Iss. Date:   Exp. Date:

ID Type:   ID#:   ID Issuer:   Iss. Date:   Exp. Date:

**Customer 5:**

Name

ID Type:   ID#:   ID Issuer:   Iss. Date:   Exp. Date:

ID Type:   ID#:   ID Issuer:   Iss. Date:   Exp. Date:

**Bank Information**

Date   02/23/2015

Banking Center Name   WESTMONT

Associate's Name   Joseph Villanueva

Associate's Phone Number   630-964-1000

NIL
00-14-9297MW  08-2014                              Page 2 of 2

**Menjivar Att. K**
**Page 2 of 4**

Date: 3/6/2015 Time: 9:16:16 AM (US Central Time) Scanned From IP:

**Bank of America** ❤️

BANK OF AMERICA, N.A. (THE "BANK")

**Certified Copy of Limited Liability Company Resolutions**
**Opening and Maintaining Deposit Accounts and Services**

Account Number: ████6644

Name of Limited Liability Company  **STARK LAW LLC**

I, the undersigned, hereby certify to  **BANK OF AMERICA, N.A.**

, that I am the s/the _____ and the designated keeper

Title

of the records and minutes of  **STARK LAW LLC**

a ☒ limited liability Company ☐ professional limited liability company duly organized and existing under the laws of the State of __Illinois__ (the "Company"), that I have full authority to manage, represent, sign for and bind the Company, that the following is a true copy of resolutions duly adopted by a majority of the members/managers of said Company at a meeting duly held on the __23__ day of __February__, __2015__, at which a quorum was present and acted throughout or adopted by the written consent of a majority of the members/managers, and that such resolutions are in full form and effect and have not been amended or rescinded.

1. Resolved, that  BANK OF AMERICA, N.A.                                                                 (the "Bank")
is hereby designated as a depository of the Company and that deposit accounts and/or time deposits (CDs) to be opened and maintained in the name of this Company with the Bank in accordance with the terms of the Bank's Deposit Agreement and Disclosures and the applicable rules and regulations for such accounts; that any one of the following members, managers, or employees of this Company:

| | |
|---|---|
| Gaurav Mohindra | Manager |
| Name | Title/Status |
| Hirsh Mohindra | Signer |
| Name | Title/Status |
| | |
| Name | Title/Status |
| | |
| Name | Title/Status |

is hereby authorized, on behalf of this Company and its name, to execute and sign any application, deposit agreement, signature card and any other documentation required by Bank to open said accounts; to sign checks, drafts, notes, bills of exchange, acceptances, time deposits (CDs) or other orders for payment of money; to endorse checks, drafts, notes, bills, time deposits (CDs) or other instruments owned or held by this company for deposit with Bank or for collection or discount by Bank; to accept, drafts, acceptances, and other instruments payable at Bank; to place orders with Bank for the purchase and sale of foreign currencies on behalf of this Company; to execute and deliver an electronic fund transfers agreement and to make transfers or withdrawals by electronic transfer on behalf of the Company; to obtain an access device (including but not limited to a card, code, or other means of access to the Company's accounts) that may be used for the purpose of initiating electronic fund transfers [Company agrees and acknowledges that neither the Electronic Funds Transfer Act (15 U.S.C. 1693 et seq.) nor Regulation E (12 C.F.R. Part 205) are applicable to any such access device]; to establish and maintain a night deposit relationship; to execute and deliver a wire transfer agreement and to request, or to appoint and delegate from time to time such persons who may request, wires of funds; to enter into any agreements with the Bank for the provision by Bank of various Treasury Management services to this Company as such member, manager or employee may determine, in his or her sole discretion, and to sign any and all documents and take all actions required by Bank relative to such Treasury Management services or the performance of the Company's obligations there under, and that any such Treasury Management agreement(s) shall remain in full force and effect until written notice to terminate given in accordance with the terms of any such agreement shall have been received from Bank and that such termination shall not affect any action taken by the Bank prior to such termination; to rent or lease a safe deposit box from Bank, to execute the rental agreement or lease, to enter the safe deposit box and to terminate the rental agreement or lease; to take whatever other actions or enter into whatever other agreements relating to the accounts or investment of funds in such accounts with Bank and to execute, amend, supplement and deliver to Bank such agreements on behalf of the Company upon such terms and conditions as such member, manager or employee may deem appropriate and to appoint and delegate, from time to time, such person(s) who may be authorized to enter into such agreements and take any other actions pursuant to such agreements in connection with such accounts that the member, manager or employee deems necessary; and to waive presentment, demand, protest, and notice of protest or dishonor of any check, note, bill, draft, or other instrument made, drawn or endorsed by this Company; and

2. Further Resolved, that the Bank be and is hereby authorized to honor, receive, certify, pay or exchange for money orders or other instruments all instruments signed in accordance with the foregoing resolutions even though such payment may create an overdraft or even though such instruments may be drawn or endorsed to the order of any member, manager or employee signing the same or tendered by such member, manager or employee or a third party for exchange or cashing, or in payment of the individual obligation of such member, manager or employee, or for deposit to such member's, manager's or employee's personal account and Bank shall not be required or be under any obligation to inquire as to the circumstances of the issuance or use of any instrument signed in accordance with the foregoing resolutions or the application or disposition of such instrument or the proceeds thereof; and, further, that the Bank is authorized to honor any instructions regarding withdrawals, orders for payment or transfer of funds whether oral, by telephone or electronic means if such withdrawal, orders or transfer are initiated by an above authorized member, manager or employee; and

NIL
00-14-9258M  11-2013

Page 1 of 2

Date: 3/6/2015 Time: 9:16:16 AM (US Central Time) Scanned From IP: ████

Account Number: ████4644

3. **Further Resolved**, that the Bank be and is hereby requested, authorized and directed to honor and to treat as authorized, checks, drafts or other orders for the payment of money drawn or purportedly drawn in this Company's name, including those payable to the individual order of any person whose name appears thereon as signer thereof, when bearing or purporting to bear the facsimile signature of an member, manager or employee authorized in the foregoing resolutions and the Bank shall be entitled to honor, to treat as authorized, and to charge this Company for such checks, drafts, or other orders regardless of by whom or by what means the actual or purported facsimile signature thereon may have been affixed therein, if such signature resembles the facsimile specimen duly certified to or filed with the Bank by a member/manager of this Company or if such facsimile signature resembles any facsimile signature previously affixed to any check, draft, or other order drawn in the Company's name, which check, draft, or other order was accepted and paid without timely objection by the Company, thereby ratifying the use of such facsimile signature; and the Company hereby indemnifies and holds the Bank harmless against any and all loss, cost, damage or expense suffered or incurred by the Bank arising out of or in any way related to the misuse or unlawful or unauthorized use by a person of such facsimile signature; and

4. **Further Resolved**, that endorsements for deposit may be evidenced by the name of the Company being written or stamped on the check or other instrument deposited, without designation of the party making the endorsement, and the Bank is authorized to supply any endorsement on any instrument tendered for deposit or collection; and

5. **Further Resolved**, that a duly authorized member/manager of this Company shall certify to the Bank names and signatures of persons authorized to act on behalf of this Company under the foregoing resolutions and shall from time to time hereafter, as changes in the identity of said members, managers and employees are made, immediately report, furnish and certify such changes to the Bank and shall submit to the Bank a new account signature card reflecting such change(s) in order to make such changes effective and the Bank shall be fully protected in relying on such certifications and shall be indemnified and saved harmless from any claims, demands, expenses, losses, or damages resulting from, or growing out of, honoring the signature of any member, manager or employee so certified, or refusing to honor any signature not so certified; and

6. **Further Resolved**, that the foregoing resolutions shall remain in full force and effect and the authority herein given to all of said persons shall remain irrevocable as far as the Bank is concerned until three (3) business days after the Bank is notified in writing of the revocation of such authority and that receipt of such notice shall not affect any action taken by said Bank prior thereto; and

7. **Further Resolved**, that all transactions by any member, manager or employee of this Company on its behalf and in its name with the Bank prior to the delivery to the Bank of a certified copy of the foregoing resolutions are, in all respects, hereby ratified, confirmed, approved and adopted; and

8. **Further Resolved**, that any member/manager be and hereby is, authorized and directed to certify these resolutions to the Bank and that the provisions hereof are in conformity with the Articles of Organization and Operating Agreement of this Company.

In Witness Whereof, and intending to bind the Company, I have hereunto subscribed my name as a member/manager of this Company, this
23 day of february , 2015 .

X _Jenner & Melinda_
Member/Manager

| Bank Information | |
|---|---|
| Date | 02/23/2015 |
| Banking Center Name | WESTMONT |
| Associate's Name | Joseph Villanueva |
| Associate's Phone Number | 630-964-1000 |

Page 2 of 2



# Attachment L

# CHASE ○
## Business Signature Card

**ACCOUNT TITLE ("DEPOSITOR")**
AURA DEVELOPMENT INC

**BUSINESS ADDRESS**
121 ASHTON DR

BURR RIDGE, IL 60527-0309

| | | | |
|---|---|---|---|
| **ACCOUNT NUMBER** | | 0226 | |
| **TAXPAYER ID NUMBER** | | 3541 | |
| **ACCOUNT TYPE** | | Chase Business Classic | |
| **DATE OPENED** | 03/17/2008 | | |
| | New Account | | |
| **FORM OF BUSINESS** | S-Corporation | | |
| **ISSUED BY** | JPMorgan Chase Bank, N.A. (111) | | |
| | Willowbrook | | |
| | ANNA K MIRASAR | | |

**PRIMARY IDENTIFICATION**
Articles of Incorporation

| ID NUMBER | ISSUER if sec of state | ISSUANCE | EXP DATE |
|---|---|---|---|
| | | | |

Si....: ___     1 2 2 2008

**SIGNER(S) TO BE ADDED LATER**

**ACKNOWLEDGEMENT** – By signing this Signature Card, the Depositor applies to open a deposit account at JPMorgan Chase Bank, N.A. (the Bank). The Depositor represents and warrants that (i) the signatures appearing below are genuine or facsimile signatures of the person(s) authorized to transact business and (ii) all necessary action or formalities, where necessary, have been taken to authorize the named person(s) to so act. The Bank is entitled to rely on the authority of the named person(s) until written revocation of such authority is received by the Bank. The Depositor certifies that the information provided to the Bank is true to the best of its knowledge and authorizes the Bank, at its discretion, to obtain credit report on the Depositor and the individual(s) listed below. The Depositor acknowledges receipt of the Bank's Account Rules and Regulations or other applicable account agreement, which includes all provisions that apply to the deposit account, and other agreements and service terms for account analysis and other treasury management services if applicable, and agree to be bound by the terms and conditions contained therein as amended from time to time.

**CERTIFICATION** – The undersigned certifies under penalties of perjury that (1) the Depositor's Taxpayer Identification Number shown above is correct, and (2) the Depositor is not subject to backup withholding because: (a) the Depositor is exempt from backup withholding, or (b) the Depositor has not been notified by the Internal Revenue Service (IRS) that it is subject to backup withholding as a result of failure to report all interest or dividends, or (c) the IRS has notified the Depositor that it is no longer subject to backup withholding, and (3) the Depositor is a U.S. person (including a U.S. resident alien).

☐ Mark this checkbox and cross out item 2 above if the IRS has notified you that you are subject to backup withholding due to underreporting of interest or dividends on your tax return.

The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

| NAME | TAXPAYER # | TITLE | DATE | SIGNATURE |
|---|---|---|---|---|
| HIRSH MOHINDRA | | President | 3/17/08 | *(signature)* |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Rev (2/07)

06769

(03/25/08)

CHASE ○

# BUSINESS ACCOUNT ADD SIGNERS FORM

**NAME OF BUSINESS** AURA DEVELOPMENT INC

| | TAXPAYER ID NO. [redacted]3541 |

**BUSINESS ADDRESS** 121 ASHTON DR, BURR RIDGE, IL 60527-0309

**BRANCH NAME AND NO** WILLOWBROOK - 52    **BANK NO** 111    **BRANCH PHONE NO** (630) 654-6874

**INTEROFFICE MAILCODE** IL1-3220    **PREPARED BY NAME** GINA A SWANSON    **DATE** 03/24/2008

Please add the following signer to the accounts listed below (other authorized signers on record do not change)

**Name of the Signer to Add**
RENUKA MOHINDRA    **Title** SIGNER    **Signature**

**Identification**
1) State Issued ID
2) None

**ID Number** [redacted]    **Issuer** IL    **Issuance Date** [redacted]    **Expiration Date** [redacted]

**Account Numbers:** [redacted]0226

Please add the following signer to the accounts listed below (other authorized signers on record do not change)

**Name of the Signer to Add**    **Title**    **Signature**

**Identification**    **ID Number**    **Issuer**    **Issuance Date**    **Expiration Date**

**Account Numbers:**

Please add the following signer to the accounts listed below (other authorized signers on record do not change)

**Name of the Signer to Add**    **Title**    **Signature**

**Identification**    **ID Number**    **Issuer**    **Issuance Date**    **Expiration Date**

**Account Numbers:**

**CERTIFICATION**
The undersigned hereby certifies that the person(s) added as authorized signers on the account(s) indicated above have been added in accordance with resolution or other documents of the Business regarding signing authority for bank accounts. The undersigned further certifies that for those added as authorized signers, the names, titles and signatures are correct.

For a Corporation or Unincorporated Association or Organization:    For Sole Proprietorship:    For Partnership or Limited Liability Company:    For Government Entity:

X _____ Secretary    **Date** 3/24/08    Owner/Sole Proprietor **Date**    Partner/Member/Manager **Date**    Certifying Official **Date**

Forward original to National Doc Prep, Mail Code LA2-9378. This document does not contain TIN certification/retire language. The document cannot be used for supporting documentation for TIN certification and IRS processes. JPMorgan Chase Bank, N.A. Member FDIC

1 of 1

075553    (04/07/08)





## BUSINESS DEPOSITORY RESOLUTION

**X** NEW ___ CHANGE

# CHASE ⬤

**ACCOUNT NO.** ████0226

**ACCOUNT TITLE** AURA DEVELOPMENT INC

**BUSINESS ADDRESS** 121 ASHTON DR
BURR RIDGE, IL 60527-0309

**BANK NAME/NUMBER** JPMorgan Chase Bank, N.A. (111)

**BRANCH NAME AND NO.** Willowbrook 52

**DATE** 03/17/2008

**PREPARED BY** GINA A SWANSON

**PHONE NO.** 630-654-8674

**TAXPAYER ID NO.** ████3541

**PRODUCT TYPE** Chase Business Classic

Legal Name of Business AURA DEVELOPMENT INC _____ (the "Business")

The individual(s) signing this Resolution hereby certifies to JPMorgan Chase Bank, N.A. ("the Bank") that the Business is (check one):

___ a sole proprietorship owned entirely by the individual signing this Resolution;

___ a duly formed and valid existing

    ___ general partnership ___ limited partnership ___ limited liability partnership ___ limited liability limited partnership ___ joint venture

organized under the laws of the state/country of  and the persons signing this Resolution constitute all of the general partners of the partnership.

**X** a corporation duly organized and in good standing under the laws of the state/country of USA and that the individual signing this
Resolution is its secretary or assistant secretary and the keeper of the records and corporate seal, if any.

___ an unincorporated association or organization and the individual(s) signing this Resolution is the keeper of the records and seal, if any:

___ a limited liability company organized under the laws of the state/country of  and the individuals signing this Resolution
constitute all of the members or managers, as appropriate of the company.

and that the following is a true and correct copy of the resolutions adopted by the Business and that such resolutions are now in full force and effect.

### Depository and Withdrawal Authorization

RESOLVED, that the Bank is designated a depository in which the funds of the Business may be deposited and/or withdrawn by any one of the persons listed below in the manner so designated, subject to the Bank's Deposit Account Agreement. Each person so listed is authorized to endorse for collection, deposit or negotiation any and all checks, drafts, notes, bills of exchange, certificates of deposit, and orders for the payment or transfer of money between accounts at the Bank and other banks, either belonging to or coming into the possession of the Business. Endorsements "for deposit" may be written or stamped. The Bank may accept any instrument for deposit to any depository account of the Business without endorsement or may supply the endorsement of the Business. The person(s) so designated is authorized to sign any and all checks, drafts, and orders drawn against any designated account(s) of the Business (including savings accounts) at the Bank. The Bank is authorized to honor and pay all checks, drafts, and orders when so signed or endorsed without inquiry as to the circumstances of issue or disposition of the proceeds and regardless of to whom such instruments are payable or endorsed, including those drawn or endorsed to the individual order of any such person so listed.

| Name | Title | Facsimile Signatures if Applicable |
|---|---|---|
| HIRSH MOHINDRA | President / SECRETARY | |
| | | |
| | | |
| | | |
| | | |
| | | |

### Signing Authorization

RESOLVED, that any one of the person(s) indicated above is authorized to act for and on behalf of the Business in any matter involving any of the Business' depository accounts at the Bank, including the authority to instruct the Bank to close the account, and is further authorized to sign and implement for and in the name on behalf of the Business, as they, or any of them see fit, the terms of all agreements, instruments, drafts, certificates, or other documents relating to any depository account or other business of the Business including, but not limited to payroll agreements, repurchase agreements, night depository agreements, funds transfer agreements or safe deposit agreements.

### Facsimile Signature Authorization

RESOLVED, that the Bank is authorized and directed to honor checks, drafts, and orders for the payment of money drawn on any of the accounts listed above including those drawn to the individual order of any person when the check, draft, or order bears or purports to bear the facsimile signature(s) as shown above or on the signature card. The Bank shall be indemnified and held harmless against any forgery or unauthorized use or misuse of the facsimile signing devices.

### Further Authorizations

BE IT FURTHER RESOLVED, that the secretary or assistant secretary (if a corporation or unincorporated association), the sole owner/proprietor (if a sole proprietorship), any member or manager as appropriate (if a limited liability), or any general partner (if a partnership) is authorized to certify to the Bank the name, title, specimen signature and facsimile signature with respect to any additions or deletions of persons authorized to carry out the purposes and intent of these resolutions and that this resolution shall remain in full force and effect until express written notice of recision or modification is received by the Bank. If the authority contained herein should be revoked or terminated by operation of law or any other reason without such notice, it is resolved that the Bank shall be indemnified and saved harmless from any and all losses suffered or liabilities incurred by it in so acting after such revocation or termination without notice.

IN WITNESS WHEREOF the undersigned has hereunder subscribed his/her name(s) and affixed the seal, if any, of the Business this **17** day of **MARCH 2008**

| For Corporation or Unincorporated Association or Organization: | For Sole Proprietorship: | For Limited Liability Company (all members/managers must sign): |
|---|---|---|
| X H. Mohindra | | Partner/Member/Manager |
| Secretary | Owner/Sole Proprietor | Partner/Member/Manager |
| ___ THIS IS A NOT-FOR-PROFIT BUSINESS | | Partner/Member/Manager |

JPMorgan Chase Bank, N.A. Member FDIC
Catalog # 04382 (12/06)

DISTRIBUTION: 1) National Account Maintenance 2) Customer

# Attachment M

DocuSign Envelope ID: A9FFA23E-1F6D-4C8B-A110-F5200ED50C16

# American Express™ OptBlue℠ Program Service Addendum
### Banc of America Merchant Services, LLC

This American Express OptBlue Program Service Addendum ("Addendum") amends the terms of the Agreement (as defined in Part I of the Program Guide), among the Client (as identified in Section 2 of this Addendum; also referred to below as "Merchant", "you" and "your"), Banc of America Merchant Services, LLC ("Processor"; also referred to below as "our", "us" and "we") and Bank of America, N.A. ("Bank") to include the American Express OptBlue Service (as defined below). You agree to comply with the terms set forth in this Addendum in connection with receiving the American Express OptBlue Service (also referred to in the Merchant Processing Application as ("AXP OptBlue"). Capitalized terms used but not defined in this Addendum are defined in the Agreement or in the American Express Card Organization Rules. Unless otherwise indicated, the Agreement sections referenced below are in Part I of the Program Guide.

**1. Internal/Sales Information:**

Merchant Number: _____

Sales Rep. Name: Carissa Bolton          Sales Rep. Phone Number: (312) 919-5758

Sales Rep. Email Address: carissa.bolton@bankofamericamerchant.com

**2. Client's Business Information:**

Client's Business' Legal Name ("Client"): STARK LAW LLC

Client's DBA Name: STARK LAW LLC

First/Last Contact Name: GAURAV MOHINDRA          Title: President

Your Business Phone: 6302434207          Your Business Fax: _____

Your Business Email Address: gmohindra@gmail.com

**3. American Express OptBlue Service Terms.**

**3.1. Certain Definitions** For purposes of this Addendum only, the following defined terms and their definitions apply:

**American Express Card or Cards:** (i) Any card, account access device, or payment device or service bearing American Express or American Express Affiliates' Marks and issued by an Issuer or (ii) a Card Number. Also referred to in this Addendum as "Card". The term "Card", as defined and used in this Addendum, shall also mean "Card" and "Credit Card", as referenced elsewhere in the Agreement, for purposes of the American Express OptBlue Service and American Express Card Transactions only.

**American Express:** American Express Travel Related Services Company, Inc., a New York corporation.

**American Express Brand:** The Marks of American Express and its affiliates.

**Applicable Law:** (i) any law, statute, regulation, ordinance, or subordinate legislation in force from time to time to which Merchant or Processor is subject, (ii) the common law as applicable to them from time to time, (iii) any court order, judgment, or decree that is binding on them, and (iv) any directive, policy, rule, or order that is binding on them and that is made or given by a regulator or other government or government agency of the United States (or any of its territories), or federal, commonwealth, state, provincial, or local jurisdiction. References to "applicable law" elsewhere in the Agreement will be deemed to include this definition for purposes of the American Express OptBlue Service and American Express Card Transactions.

**Card Member:** An individual or Entity (i) that has entered into an agreement establishing a Card account with an Issuer or (ii) whose name appears on the Card. The term "Cardholder" may be used to mean a Card Member in this Addendum and in other parts of the Agreement with respect to American Express Card Transactions and the American Express OptBlue Service.

**Charge:** A payment or purchase made on the Card.

**Effective Date of the Agreement:** The date this Addendum is signed by you.

**Establishments:** Any or all of Merchant and Merchant's Affiliates' locations, outlets, websites, online networks, and all other methods for selling goods and services, including methods that you adopt in the future. References to "locations" elsewhere in the Agreement shall be deemed to include Establishments for purposes of American Express Card Transactions and the American Express OptBlue Service.

**Other Payment Products:** Any charge, credit, debit, stored value, prepaid, or smart cards, account access devices, or other payment cards, services, or products other than the Card.

**Transaction:** A Charge or Credit completed by the means of a Card.

**3.2. American Express OptBlue Service and Merchant Qualification Criteria.** If elected by you, and you are qualified and continue to qualify as set forth below and in Section 5.4 of this Addendum, we will provide full acquiring services (including, Authorization, processing and settlement) to you for your American Express Card Transactions (collectively, the "American Express OptBlue Service"), subject to the terms of this Addendum. Notwithstanding the provisions of Sections 7, 16.1 and 16.2 of the Agreement to the contrary, settlement of American Express Card Transactions under the American Express OptBlue Service will occur under the Agreement terms and settlement time frames applicable to settlement of your Card transactions of the other major Card Organizations referenced, and as further described, in those sections.

The American Express OptBlue Service provided, transactions processed and other matters contemplated under this Addendum are subject to the rest of the terms of the Agreement, including, but not limited to, the Operating Procedures, except to the extent the terms of this Addendum directly conflict with the terms of the Agreement with respect to the American Express OptBlue Service, in which case, the terms of this

CONFIDENTIAL

Page 1 of 3

**Menjivar Att. M
Page 1 of 7**

DocuSign Envelope ID: A9FFA23E-1F6D-4C8B-A110-F5200ED50C16

Addendum will control. You agree to accept Cards in accordance with the terms of this Addendum and the American Express Merchant Operating Guide (referred to herein as the "Merchant Operating Guide"), which are American Express "Card Organization Rules", under the Agreement, for American Express Card Transactions.

To qualify for the American Express OptBlue Service, you must meet the following criteria: (a) your Total Annual American Express volume, as indicated in Section 2 of your Merchant Processing Application, is less than $1,000,000, (b) your business is not of a merchant category type prohibited by American Express, and (c) you are not a franchisee of any franchise excluded from eligibility for the OptBlue Program by American Express. In addition, you must continue to qualify to receive the American Express OptBlue Service as further described in Section 5.4 of this Addendum.

**3.3. Processor.** The American Express OptBlue Service is provided by the Processor, and not the Bank. The Bank is not liable to you in any way with respect to the American Express OptBlue Service. For purposes of this Addendum, the words "our", "us" and "we" refer only to the Processor, and not the Bank.

**3.4. Additional Operating Procedures.** The provisions of the Merchant Operating Guide apply only to American Express Card Transactions and the American Express OptBlue Service, and constitute part of the Operating Procedures. To the extent any of the provisions of the Merchant Operating Guide may conflict with the provisions of the Operating Procedures set forth in Subpart A of Part I of the Program Guide with respect to American Express Card Transactions, the provisions of the Merchant Operating Guide shall control. American Express' policies and procedures for the American Express OptBlue Program are set forth in the Merchant Operating Guide, which is a summary of the American Express Card Organization Rules applicable to merchants accepting Cards. The Merchant Operating Guide is available at the following website:

www.americanexpress.com/merchantopguide

**4. Fees for American Express OptBlue Service.** Payment of fees for the American Express OptBlue Service will be as set forth in the Agreement. The fees for processing transactions related to the American Express OptBlue Service are set forth in the Merchant Processing Application.

**5. Additional Terms for Acceptance of American Express Cards.**

**5.1. American Express Transaction Data.** The transaction data you collect to facilitate the Charge must be or have been provided directly to you by the Cardholder. You must not accept or have accepted transaction data from, nor shall you provide or have provided transaction data to, any third parties other than your covered parties (as defined in the Data Security Operating Policy (DSOP)). If you fail to comply with this requirement, in addition to other rights and remedies regarding "monitoring", you may be charged a fee as indicated on the Merchant Processing Application, we may suspend Card acceptance privileges at your establishments, or terminate the Agreement. Where Cardholders pay you using payment or "e-wallet" accounts (which Cardholders may have created by providing Cardholder information when the account was established), the transaction data collected to facilitate the Card Not Present Charge has already been provided directly by the Cardholder. You are not required to have the Cardholder re-enter the transaction data. "Transaction Data" means all information required by American Express evidencing one or more transactions, including information obtained at the point of sale, information obtained or generated during Authorization and Submission, and any Chargeback.

**5.2. Disclosure and Use of Data Collected Under Agreement.** We may disclose to American Express data and information that you provide on your Application and that we collect as part of performing American Express payment processing services or transaction related services, including information about you. American Express may use the information that you provide in the Application at the time of setup to screen and/or monitor you in connection with Card marketing and administrative purposes. American Express also may use such information to perform its responsibilities in connection with American Express Card acceptance, promote the American Express Network, perform analytics and create reports, and for any other lawful business purposes, including marketing purposes. American Express may otherwise use and share your information for business purposes and as permitted by Applicable Law. American Express uses reasonable administrative, technical and physical security measures to protect your information consistent with the sensitivity of the information.

**5.3. Consent for American Express to Contact You by Phone, eMail, Text or Facsimile.** American Express may use the information you provide in the Application (as such information may be updated) to call you or send you communications or materials via email, SMS, text or facsimile regarding American Express products, services and resources available to you. You consent and agree to receive auto-dialed, automated and/or prerecorded calls and communications (which may include SMS or text messages) at the telephone number(s) you have provided. If you provide a fax number, you consent and agree to receiving fax communications from American Express. In connection with the foregoing, you understand that the calls made or communications sent to you by American Express may be subject to charges or fees by your telecommunications or other applicable service provider that are your responsibility to pay. You understand that your consent under this Section 5.3 is not a condition of purchasing or receiving any product or service or entering into the Agreement.

**Opt-Out:** You may opt-out of receiving marketing related communications and materials from American Express by calling Processor at the Customer Service Number stated in Part IV, Section A.4 of the Program Guide that provides Addresses for Notices. If you have opted-out, you may still receive messages or communications from American Express related to important information about your American Express products, services and resources available to your business

**5.4. Continuing Qualification Criteria; Conversion to a Direct Relationship with American Express.** After you have been qualified to receive the American Express OptBlue Service, you must continue to meet American Express' criteria in order to continue to use the American Express OptBlue Service. Currently such criteria are the following (each, a "Continuing Qualification Threshold"): (a) the total volume of American Express Card Transactions in any rolling twelve (12) month period for all your locations is not more than $1,000,000 and (b) the total monthly volume of American Express Card Transactions for all your locations for any three (3) consecutive months does not exceed $100,000 per month.

You acknowledge and agree that, upon written notice from us, you will be converted to a direct American Express Card acceptance relationship with American Express ("American Express Direct Conversion"), if and when you exceed either of the Continuing Qualification Thresholds. You agree that, upon American Express Direct Conversion, (i) you will be bound by American Express' then-current Card Acceptance Agreement with respect to American Express Transactions; (ii) American Express will set pricing and other fees

BAMS(SNAP)AmexOptBlueAdd_1802 (Rev: 12/04/2014)

**CONFIDENTIAL** Page 2 of 3

**Menjivar Att. M
Page 2 of 7**

DocuSign Envelope ID: A9FFA23E-1F6D-4C8B-A110-F5200ED50C16

payable by you for American Express Card acceptance; (iii) you will no longer be able to receive the American Express OptBlue Service. However, we may continue to provide Authorization and processing services, but not settlement services, to you for your American Express Card transactions, and the Agreement will continue in full force and effect with respect to other payments and services you elected to receive on your Merchant Processing Application.

**5.5. No Assignment of Payments.** You acknowledge and agree that you shall not assign to any third party any payments due to you under the Agreement as the result of American Express Card Transactions, and all indebtedness arising from Charges will be for bona fide sales of goods and services (or both) at your establishments and free of liens, claims, and encumbrances other than ordinary sales taxes; provided, however, that you may sell and assign future transaction receivables to us, our Affiliates and/or any other funding source that partners with us or our Affiliates.

**5.6. Third Party Beneficiary Rights.** American Express is a direct and intended third-party beneficiary of the Agreement, and may enforce any terms of the Agreement that apply to American Express, including American Express Card acceptance and transaction processing, directly against you.

**5.7. Your Right to Opt Out of American Express Card Acceptance.** You may opt out of accepting American Express Cards at any time without directly or indirectly affecting your rights to accept any other payment products.

**5.8. Collections from American Express Cardholder.** You may not bill or collect from any American Express Cardholder for any purchase or payment on the American Express Card unless Chargeback has been exercised, you have fully paid for such Charge, and you otherwise have the right to do so.

**5.9. American Express-Excessive Disputes.** You may be subject to various fees and assessments as set forth on the Merchant Processing Application, including fees for excessive disputes. Some fees and assessments are for special products or services, while others may be applied based upon non-compliance with American Express policies and procedures. Many non-compliance fees and assessments can be avoided by correcting the actions that are causing such non-compliance.

**5.10. American Express Right to Modify or Terminate Agreement.** American Express has the right to modify the Agreement with respect to American Express Card Transactions or to terminate your acceptance of American Express Card transactions and to require Processor to investigate your activities with respect to American Express Card Transactions.

The Agreement remains in effect as supplemented by this Addendum. In the event of any conflict between the terms of this Addendum and the Agreement, this Addendum will control with respect to American Express Card Transactions and the American Express OptBlue Service. References to the Agreement after the date of this Addendum include this Addendum.

By signing below, you acknowledge that you have read, understand and agree to comply with the terms set forth in this Addendum.

THIS ADDENDUM HAS BEEN EXECUTED BY PROCESSOR (WITHOUT AN INDIVIDUAL'S SIGNATURE) AND FOR AND ON BEHALF OF THE AUTHORIZED MANAGEMENT OF CLIENT, AS OF THE DATE BELOW:

**BANC OF AMERICA MERCHANT SERVICES, LLC**

**Client's Business Principal:**

Signature: **X** _GAURAV MOHINDRA_

The party signing this Addendum must be the same party signing the Agreement.

President                                      5/6/2015
TITLE                                          DATE

GAURAV MOHINDRA
PRINTED NAME

BAMS(SNAP)AmexOptBlueAdd_1802 (Rev: 12/04/2014)

**CONFIDENTIAL** Page 3 of 3

DocuSign Envelope ID: A9FFA23E-1F6D-4C8B-A110-F5200ED50C16

BAMS(SNAP)1805

# PART V: CONFIRMATION PAGE

Please read this Program Guide in its entirety. It describes the terms under which we will provide merchant processing Services to you. From time to time you may have questions regarding the contents of this Program Guide and your Agreement with Servicers (Parts I and IV; also referred to below as the "Merchant Agreement") or the contents of your TeleCheck Services Agreement with TeleCheck (Part III; also referred to below as the "TeleCheck Agreement"). The following information summarizes portions of this Program Guide in order to assist you in answering some of the questions we are most commonly asked. Capitalized terms appearing on this page and not defined have the meanings set forth in Part I or Part III, as applicable; references to "you" and "your" mean the Client and "our," "us" and "we" mean Servicers).

If you have executed the Application and the Merchant Agreement and/or other agreements contained in Parts II and III of this Program Guide or separate agreements with our respective Affiliates (e.g., a leasing agreement with First Data Global Leasing) for services and equipment you have elected (collectively, the Application, Merchant Agreement and such other agreements (if any) are referred to below as the "Agreements") via Electronic Process, please also refer to the below Acknowledgement and Covenant Regarding Agreements Executed via Electronic Process.

1. **Your Discount Rates under the Merchant Agreement** are assessed on transactions that qualify for certain (i) Interchange rates imposed by MasterCard, Visa and Discover and (ii) program pricing imposed by American Express for the AXP OptBlue Service. Any transactions that fail to qualify for these rates will be charged higher rates and/or additional fees (see Part I, Section 18 and Part IV, Section A.3 of this Program Guide).

2. **Servicers and TeleCheck may debit your bank account(s)** (also referred to as your Settlement Account(s)) from time to time for amounts owed to them respectively under their Agreements.

3. **There are many reasons why a Chargeback** may occur. When a Chargeback occurs Servicers, or TeleCheck, when a chargeback or reassignment occurs, will debit your settlement funds or Settlement Account. For a more detailed discussion regarding (i) Chargebacks, see Merchant Agreement Sections 10 and 19 and (ii) for chargebacks or reassignment for TeleCheck, see TeleCheck Agreement Sections 1.3.6, 1.4.4, 1.5.11, 1.6.5, 1.8.6, 1.10.4, 1.11.6 and 1.12.6.

4. **If you dispute any charge or funding,** you must notify (i) Servicers within 60 days of the date of the statement where the charge or funding appears for Card processing, as further described in Merchant Agreement, Section 18.10, and (ii) TeleCheck, within 30 days of the date of a TeleCheck transaction, as further described in the TeleCheck Agreement, Sections 1.3.7, 1.5.5, 1.6.4, 1.8.7, 1.9.5, 1.10.4, 1.11.8 and 1.12.5.

5. **The Merchant Agreement and TeleCheck Services Agreement limit liability** to you. For detailed descriptions of the limitations of liability, see Merchant Agreement Section 20 and TeleCheck Agreement, Section 1.22.

6. **Servicers and TeleCheck have assumed certain risks** by agreeing to provide you with Card processing or check services. Accordingly, each of them may take certain actions to mitigate their risk, including terminating the related agreement, and/or holding monies otherwise payable to you (see Merchant Agreement Sections 23 and 24) and TeleCheck Agreement, Sections 1.1, 1.3.2, 1.3.9, 1.6.2, 1.6.7, 1.8.2, 1.8.10, 1.9.2, 1.9.8, 1.13 and 1.14).

7. **By executing the Application,** you are authorizing Banc of America Merchant Services, LLC, Bank of America, N.A., First Data Merchant Services Corporation, American Express Travel Related Services Company, Inc. and TeleCheck Services, Inc., as applicable, to obtain financial and credit information regarding your business and the signer and guarantors of the applicable agreements until all your obligations to the providers under those agreements are satisfied.

8. **The Merchant Agreement and TeleCheck Agreement each contain Early Termination Fee provisions.** In the event you terminate the Merchant Agreement prior to its three (3) year initial term, you may be charged an Early Termination Fee (See Part I, Section 23.2 and Part IV, Section A.3, Early Termination Fee). If you terminate the TeleCheck Agreement prior to its 12 month initial term, you may be charged liquidated damages (See Part III, Sections 1.1 and 1.35).

9. **Card Organization Disclosure**

Visa and MasterCard Member Bank Information: Bank of America, N.A.

The Bank's mailing address is 1231 Durrett Lane, Louisville, KY 40213, and its phone number is 800-430-7161.

**Important Visa and MasterCard Member Bank Responsibilities:**
a) The Bank is the only entity approved to extend acceptance of Visa and MasterCard products directly to a Merchant.
b) The Bank must be a principal (signer) to the Merchant Agreement.
c) The Bank is responsible for educating merchants on pertinent Visa and MasterCard rules with which merchants must comply; but this information may be provided to you by Processor.
d) The Bank is responsible for and must provide settlement funds to you.
e) The Bank is responsible for all funds held in reserve that are derived from settlement.
f) The Bank is the ultimate authority should you have any problems with Visa or MasterCard products (however, Processor also will assist you with any such problems).

**Important Merchant Responsibilities:**
a) Ensure compliance with Cardholder data security and storage requirements.
b) Maintain fraud and Chargebacks below Card Organization thresholds.
c) Review and understand the terms of the Merchant Agreement.
d) Comply with Card Organization Rules.
e) Retain a signed copy of this Disclosure Page.
f) You may download "Visa Regulations" from Visa's website at: http://usa.visa.com/merchants/merchant-support/international-operating-regulations.jsp
g) You may download "MasterCard Regulations" from MasterCard's website at: http://www.mastercard.com/us/merchant/support/rules.html
h) For the AXP OptBlue Service only, you may download "American Express Merchant Operating Guide" from American Express' website at: www.americanexpress.com/merchantopguide

**ACKNOWLEDGEMENT AND COVENANT REGARDING AGREEMENTS EXECUTED VIA ELECTRONIC PROCESS**

BY YOUR SIGNATURE BELOW, YOU ACKNOWLEDGE AND AGREE THAT (A) YOU HAVE EXECUTED AND INITIALED THE AGREEMENTS BY (I) YOUR SELECTION AND ADOPTION OF AN ELECTRONIC REPRESENTATION OF YOUR SIGNATURE AND INITIALS WITH A PRE-DETERMINED FONT ("ADOPTED SIGNATURE") OR (II) YOUR USE OF A STYLUS OR YOUR FINGER, A COMPUTER MOUSE OR SIMILAR MEANS ("ELECTRONIC PAD SIGNATURE"), (B) USE OF THE ADOPTED SIGNATURE OR POSSIBLE LIMITS ON YOUR ABILITY OR INABILITY TO CONTROL THE DEVICE OR YOUR FINGER TO THE SAME EXTENT THAT YOU WOULD CONTROL A PEN IN YOUR HAND, YOUR ADOPTED SIGNATURE OR ELECTRONIC PAD SIGNATURE MAY NOT RESEMBLE YOUR MANUAL WET SIGNATURE ("WET SIGNATURE"); AND (C) EVEN IF YOUR ADOPTED SIGNATURE OR ELECTRONIC PAD SIGNATURE DOES NOT RESEMBLE YOUR WET SIGNATURE, YOU WILL BE BOUND BY THE TERMS OF THE AGREEMENTS YOU HAVE EXECUTED IN THIS MANNER. YOU COVENANT WITH US AND OUR RESPECTIVE AFFILIATES THAT YOU WILL NOT CONTEST THE ENFORCEABILITY OF ANY OF THE AGREEMENTS EXECUTED BY YOUR ADOPTED SIGNATURE OR ELECTRONIC PAD SIGNATURE BASED ON THE MANNER OF THEIR EXECUTION.

YOU CONSENT AND AGREE TO THE TERMS OF THE ELECTRONIC DISCLOSURE CONSENT SET FORTH IN PART IV, SECTION A.5 OF THIS PROGRAM GUIDE.

Print Client's Business Legal Name: STARK LAW LLC

By its signature below, Client acknowledges that it received (1) one of the following, as applicable to the Pricing Method set forth on the Application: (i) Qualification Tier Schedule corresponding to the 2-Tier or 3-Tier Pricing Method, (ii) Non-Qualified Rate Schedule for the Visa/MC/Discover/American Express Discount Rate Pricing Method (specific to your Merchant Account(s)), or (iii) the Interchange Rate Schedule for the Visa/MC/Discover Interchange Plus Pricing Method and American Express Program Pricing, (2) the Debit Network Fees Schedule and (3) complete Program Guide (Version BAMS(SNAP)1805) consisting of 72 pages (including this confirmation). Client further acknowledges reading and agreeing to all terms in the Program Guide. Upon receipt of a signed facsimile or original of this Confirmation Page by us, Client's Application will be processed.

NO ALTERATIONS OR STRIKE-OUTS TO THE PROGRAM GUIDE WILL BE ACCEPTED.

Client's Business Principal:

Signature (Please sign below) *GAURAV MOHINDRA*

X _____   President                 5/6/2015
   GAURAV MOHINDRA               Title                      Date

Please Print Name of Signer

DocuSign Envelope ID: A9FFA23E-1F6D-4C8B-A110-F5200ED50C16

# MERCHANT PROCESSING APPLICATION AND AGREEMENT (Page 1 of 5)

**Bank of America**
Merchant Services

## COMPLETE SECTIONS (1-11)

Merchant #: __ __ — __ __ — __ __ __ __ __ __ __ __

TeleCheck Subscriber #: __ __ — __ __ — __ __ __ __ __ __    Add'l TeleCheck Product Subscriber #: __ __ — __ __ — __ __ __ __ __ __    Loc. __1__ of __1__

BAMS(SNAP)1805     **(1) TELL US ABOUT YOUR BUSINESS**     BAMS(SNAP)1805

| Client (Your Business LEGAL Name): | Store #: |
|---|---|
| STARK LAW LLC | |

| [X] Same as Legal Name or Provide DBA/Outlet Name: | First/Last Contact Name: |
|---|---|
| STARK LAW LLC | GAURAV MOHINDRA |

| Legal Address (No P.O. Box allowed): | Suite #: | City: | State: | Zip Code: |
|---|---|---|---|---|
| 500 QUAIL RIDGE DR | | WESTMONT | IL | 60559 |

| DBA Address (No P.O. Box or Mail Address allowed. Provide official designation of your location space by lessor if space is rented or leasing space.): | Suite #: | City: | State: | Zip Code: |
|---|---|---|---|---|
| 500 QUAIL RIDGE DR | | WESTMONT | IL | 60559 |

| Your Business Phone: | [X] Same as Business Phone or |
|---|---|
| 6302434207 | Merchant's Customer Service Phone: 6302434207 |

| Your Fax Phone: | Select One for Retrieval Requests: |
|---|---|
| | [ ] (02) Dedicated 24 Hour Fax  [X] (03) No fax; mail  [ ] (05) eIDs |

| Your E-Mail Address: (Required for IP or TeleCheck) | Your Customer Service E-Mail Address: | Website Address: (Required if you have any Internet sales) |
|---|---|---|
| gmohindra@gmail.com | | www.starklaw-firm.com |

### (2) MASTERCARD / VISA / DISCOVER / AMERICAN EXPRESS

| | | | |
|---|---|---|---|
| Your Total Cash and Credit Sales: (For All Outlets) | $725,000.00 | Estimated MasterCard/Visa Average Ticket/Sales Amount for this Outlet: | $200.00 |
| Total Annual MasterCard/Visa Volume: (For All Outlets) | $550,000.00 | Estimated Discover Average Ticket for this Outlet: | $200.00 |
| | | Estimated American Express Average Ticket for this Outlet: | $200.00 |
| Total Annual Discover Volume: (For All Outlets) | $40,000.00 | Annual MasterCard/Visa Volume for this Outlet: (For Multiple Outlets Only) | $ |
| | | Est. Discover Annual Sales Volume for this Outlet: (For Multiple Outlets Only) | $ |
| Total Annual American Express Volume: (For All Outlets) | $60,000.00 | Est. American Express Annual Sales Volume for this Outlet: (For Multiple Outlets Only) | $ |
| | | Highest Ticket Amount: | $1,500.00 |

### (3) ENTITLEMENTS

[X] MasterCard   [X] Visa   [X] Discover (including Diners Club International®, JCB, UnionPay and BCard)   [X] American Express® (AXP) (includes credit and prepaid card)

[X] AXP OptBlue℠ 1   [ ] AXP Direct: __ __ — __ __ __ __ — __ __ __ __ __

American Express Cap # __ __ __ __ __ __ __ __ __ __ __ __   Franchise Name: _____

[ ] IATA/ARC Code: __ __ __ __ __ __ __ __ __ __ (for MCC 4722 only)

Check one for AXP Direct: [ ] Split Dial  [ ] Single Settle  [ ] EDC  [ ] PIP  [ ] Reverse PIP    [ ] EBT  (SNAP)  FNS # (XREF): __ __ — __ __ __ __ __ __ __

[ ] Voyager Fleet   Annual Voyager Volume: $_____   Participation in Voyager Tax Exempt Program: [ ] Yes  [ ] No (If yes, additional request form required)

[ ] WEX Full Acquiring   Annual WEX Volume: $_____   [ ] WEX (Non-Full Svc)  [ ] MasterCard Fleet

[ ] PIN Debit Card Acceptance __ __ __ __ __ __ __ __ __ __ __ __ __ __     [ ] Gift Card (A separate set-up form is required.)

1 The American Express OptBlue program, and our pricing for it set forth on page 3 of this document are available to you if you are, and as long as you remain, qualified to participate in this program as described in Section 9 of this document; fees for American Express processing, on pages 2 and 4 of this document, apply to all American Express programs.

### (4) PROVIDE MORE BUSINESS DATA

State Incorp. __IL__   Month/Year Started: 02/2015    [ ] Sole Ownership  [ ] Partnership  [ ] Public Corp.  [ ] Private Corp.  [X] L.L.C.  [ ] Franchisee Owned

Check one:   TIN Type: [X] EIN (Fed Tax ID #)   [ ] SSN   DBA #: _____     No. of Employees: __1__

**IMPORTANT IRS INFORMATION**

[ ] Non-Profit   [ ] Non-Profit (Tax Exempt as described in 26 USC Section 501(c)(3) OR a Tribal (Native American) government or Tribal government-owned [ ] Government Entity
    If tax exempt: provide copy of IRS Determination Letter. If Tribal government: provide evidence of Tribal recognition and proof of Tribal
    ownership, if separate entity.

NOTE: Failure to provide accurate information may result in a withholding of merchant funding per IRS regulations. (See Part IV, Section A.5 of Your Program Guide for further information.)
Name (as it appears on your income tax return):                    I certify that I have a reasonable basis for concluding that my organization
STARK LAW LLC                                                       qualifies for an exemption from filing an information return on IRS Form W-9.

‡ If Client is a disregarded entity under IRS regulations and has provided its legal name and Federal Tax ID above, then please attach an IRS Form W-9.

Mag Swipe __0__ % + Keyed Manually _____ % = 100%  Please provide a brief description of the product/services you sell: attorney

POS Card Present (MAG Swipe and/or Manual Imprint) __0__ % + Mail Order/Direct Marketing __0__ % + Phone Order __10__ % + Internet __90__ % = 100%

Do you use any third party to store, process or transmit cardholder data? [X] Yes  [ ] No (e.g., providers of merchant gateway, electronic data capture, or Loyalty program services).

If yes, give name/address: USA EPAY

Please identify any Software used for storing, transmitting, or processing Card Transactions or Authorization Requests: USA EPAY

**CONFIDENTIAL**   Client Initials [GM]

DocuSign Envelope ID: A9FFA23E-1F6D-4C8B-A110-F5200ED50C16

# MERCHANT PROCESSING APPLICATION AND AGREEMENT (Page 1 of 5)

DBA Name: STARK LAW LLC    Loc. 1 of 1

BAMS(SNAP)1805    **(5) DESCRIBE EQUIPMENT DETAILS**    BAMS(SNAP)CorpFee1805

Network ☐ ( ) CARDnet* ☒ ( ) Nashville ☐ ( ) Buypass ☐ Other:_____ Specify Security Code: ( )

| Rental • Purchase Cust.-Owned • Lease Installment Purchase | QTY | IP | Equipment Type (i.e., Terminal/VAR/Internet) | Retail • Restaurant • MOTO/Internet Lodging • Supermarket • Car Rental Quick Service Restaurant • Patio | Model Code and Name | Unit Price w/o Tax | For Customer-Owned Equipment Track/Version/Serial # |
|---|---|---|---|---|---|---|---|
| CUST. OWNED | 1 | ☐ | VAR | ECOMMERCE | USA EPAY | $ .00 | |

First/Last Contact Name: _____ Contact Phone #: 6302434207

Check one: ☒ Global Gateway

## (6) PROVIDE YOUR OWNER INFORMATION

Owner/Partner/Officer Name: GAURAV MOHINDRA   D.O.B.: XXXXXXXX   City: CHICAGO   State: IL   Country: USA   Home Phone: 312_____   % of Ownership: 100

## (7) ACQUIRING FEE SCHEDULE

CONFIDENTIAL

**Menjivar Att. M**
**Page 6 of 7**

DocuSign Envelope ID: A9FFA23E-1F6D-4C8B-A110-F5200ED50C16

## MERCHANT PROCESSING APPLICATION AND AGREEMENT (Page 5 of 5)

**DBA Name:** STARK LAW LLC     Loc. 1 of 1

### (B) TELECHECK RATES, SERVICE FEES, AND SET UP INFORMATION (cont'd)

☐ TeleCheck Auto Settle Time: _____ hh ET (Must be at least 1 hour after Card Auto Settle Time)    Existing Subscriber No.: ___ __ ___ ___ ___ ___

### TELECHECK REPORT INFORMATION

**Funding Report:** ☐ Bill To ☐ Location   **Delivery Method:** ☐ E-Mail ☐ Fax ☐ US Mail

**Contact Name:** _____    **Contact Telephone #:** _____

**Report Fax #:** _____    **Report E-Mail Address:** _____

**Batch Closing Options:** _____    **Format:** ☐ CSV (E-Mail only) ☐ PDF

### TELECHECK BANKING INFORMATION

**Funding:** ☐ Per Bill To ☐ Per Location

| **ACH Credits to TeleCheck** by Subscriber (For Invoice Payment): | ABA Transit #: ___ ___ ___ ___ ___ ___ <br> ☐ Same as above or | Account #: _____ <br> ☐ Same as above or |
|---|---|---|
| **Debits/Credits (Settlement) to Subscriber** by TeleCheck and/or Franking Information: | ABA Transit #: ___ ___ ___ ___ ___ ___ | Account #: _____ |

**Special Instructions which are part of this Agreement:** _____

**Please note on separate funding check or bank letterhead the designated TeleCheck Service. A separate funding check or bank letterhead/logo for TeleCheck Services is NOT required UNLESS Merchant will be using different banking account(s) for TeleCheck Services.**

### (9) AGREEMENT APPROVAL

Capitalized terms used in this Merchant Processing Application and Agreement ("MPA" or "Merchant Processing Application") but not defined in this MPA have the meanings set forth in the applicable agreement within the Program Guide.

**APPLICABLE TO MERCHANTS UNDER AMERICAN EXPRESS OPTBLUE PROGRAM:** You must execute an American Express OptBlue Program Service Addendum ("Addendum"). To be qualified under this program, you must meet these criteria: (a) your Total Annual American Express volume (listed in Section 2 above) is less than $1,000,000 and (b) your business is not a type prohibited, and is not a franchisee of any franchise excluded, by American Express. In addition, you must continue to qualify for this program, and to do so, your total American Express Card transaction volume cannot exceed certain thresholds, all as further described in Sections 3.2 and 5.4 of the Addendum. Please also refer to Sections 5.3-5.9 of the Addendum to learn about American Express' use of your information and how you may opt out of certain uses.

**APPLICABLE TO ALL MERCHANTS:** By signing below, each of the undersigned represents that they have read and are authorized to sign the Merchant Processing Application and submit it along with the About Merchant's Business document ("AMB"), which is attached hereto and made a part of this Merchant Processing Application by reference thereto (references to this Merchant Processing Application include the AMB), for the above named Client ("Client") and that all information provided in this Merchant Processing Application is true, complete, and accurate. Client acknowledges having received and read a copy of (i) the Non-Qualified Rate Schedule (specific to Client's industry), Interchange Rate Schedule or Qualification Tier Rate Schedule, as applicable to Client's Pricing Method, (ii) the Debit Network Fees Schedule, (iii) the Program Guide, consisting of Parts I-V (which includes terms and conditions for each of the services, Operating Procedures, TeleCheck Services Agreement, Additional Important Information for Card Processing, and a Confirmation Page), and (iv) the Merchant Processing Application, consisting of Sections 1-11, (together, the Merchant Processing Application, its attachments and schedules and Parts I and IV of the Program Guide are referred to in Sections 9 and 11 of this MPA as the "Merchant Agreement"), as modified from time to time in accordance with the applicable provisions of the Program Guide, and agrees to be bound by all provisions as printed therein. This signature page also serves as the signature page to the TeleCheck Services Agreement, appearing in Part III of the Program Guide, if selected; the Client being "Subscriber" for the purposes of the TeleCheck Services Agreement.

By signing below, each of the undersigned, for themselves and for and on behalf of Client, authorizes Banc of America Merchant Services, LLC ("Processor") and Bank of America, N.A. ("Bank") (together, Processor and Bank are "Servicers" and also referred to as "our," "us" and "we" in this Section 9) to (a) request and obtain from consumer reporting agencies, individual and business credit reports (collectively, "Credit Reports"), in connection with the approval of this Merchant Processing Application and any maintenance, updating, renewal or extension of the Merchant Agreement (if this Merchant Processing Application is approved), and (b) exchange Credit Reports, account and transaction information regarding the undersigned's and/or Client's accounts with Bank or Bank's affiliates and any other information about each of the undersigned personally and/or Client with First Data Merchant Services Corporation, TeleCheck Services, Inc. and any other service providers, to the extent such parties provide services that Client has selected on this Merchant Processing Application (or as hereafter elected by Client). Each of the undersigned furthermore agrees that all references, including banks and consumer reporting agencies, may release any and all individual and business credit financial information to us. Each of the undersigned further authorizes us to disclose any information obtained from any source in connection with this Merchant Processing Application, including Credit Reports, to any governmental, administrative or regulatory entity, upon request, or to each other and our respective vendors and Affiliates, as necessary to provide the products and services elected under the Merchant Agreement, or to comply with applicable law or order, including, without limitation, the USA PATRIOT Act. It is our practice to obtain certain information in order to verify your identity while processing your Merchant Processing Application, as described in the USA PATRIOT Act.

**Applicable for TeleCheck ICA/CBP Warranty Verification within AMB:** By signing below, Subscriber and each personal guarantor (if any) represents and warrants that the answers provided in the TeleCheck ICA/CBP Warranty/Verification section of the AMB are true and correct.

**Card Services Electronic Funding Authorization:** Client hereby designates the bank account identified below in the Card Banking Information subsection of this Section 9 as the Settlement Account (as defined in the Merchant Agreement) for purposes of the Funding authorization, including, but not limited to, Section 18.7 (Part I of the Program Guide) and the Electronic Funding Authorization set forth in Part IV, Section A.1 of the Program Guide, and by signing below, each of the undersigned, on behalf of Client, hereby authorizes Servicers to credit and debit such bank account via ACH transactions as further described in and subject to the terms of those Sections.

Client certifies, under penalties of perjury, that the federal taxpayer identification number and corresponding filing name provided herein are correct.

**THIS MERCHANT PROCESSING APPLICATION AND AGREEMENT HAS BEEN EXECUTED ON BEHALF OF AND BY THE AUTHORIZED MANAGEMENT OF CLIENT AS OF THE EFFECTIVE DATE.**

**Client's Business Principal** (Please sign below)

X **Signature** _GAURAV MOHINDRA_

**Print Name** GAURAV MOHINDRA    **Date** 5/6/2015

**Title:** ☒ Pres. ☐ V.P. ☐ Member L.L.C. ☐ Owner ☐ Partner ☐ Other: _____

X **Signature** _____

**Print Name** _____    **Date** _____

**Title:** ☐ Pres. ☐ V.P. ☐ Member L.L.C. ☐ Owner ☐ Partner ☐ Other: _____

**PROCESSOR:** Banc of America Merchant Services, LLC
**BANK:** Bank of America, N.A.

X Signature _____ JOHN COLLINS _____

**Print Name** JOHN COLLINS

**Title** SVP LIMITED CONTRACT ACCEPTANCE

**IF TELECHECK SERVICES HAVE BEEN SELECTED, PLEASE SIGN BELOW:**

X Signature _____

### CARD BANKING INFORMATION

**First/Last Contact Name:** dana Roppo    **Phone #:** 312_____

**Bank Name:** _____    **Account Name:** _____

**ABA #:** XXXXXX505    **Account #:** XXXXXXXXX644

☐ Please attach a voided check for the Settlement Account or a letter from the financial institution where it is maintained (if other than Bank) on that financial institution's letterhead and signed by one of its officers that includes its typed ABA number and the typed Settlement Account number.

### (10) TELECHECK ACH AUTHORIZATION

**ACH Debit and Credits Authorization:** Subscriber authorizes the financial institution to pay and charge to its account the amount(s) due TeleCheck under this Agreement and to accept all credits and debits made to its account by TeleCheck via electronic funds transfer in connection with TeleCheck's service(s) under this Agreement. This authorization will remain in effect until 30 days after revoked in writing.

X Signature _____    **Print Name/Title:** _____

Authorized Signature on TeleCheck Account for ACH

### (11) PERSONAL GUARANTY

In exchange for acceptance by Banc of America Merchant Services LLC, Bank of America, N.A. and TeleCheck Services, Inc. (collectively, the "Guaranteed Parties") as applicable, the Merchant Agreement and TeleCheck Services Agreement, the undersigned unconditionally and irrevocably guarantees the full payment and performance of the Client's obligations under the foregoing Agreements, and payment of all sums due thereunder, and in the event of default, hereby waives notice of default and agrees to indemnify the other parties for any and all amounts due. From Client under any of the foregoing Agreements. I understand that this is a Guaranty of payment, and not of collection, and that the Guaranteed Parties are relying upon this Personal Guaranty in entering into, as applicable, the foregoing Agreement.

**Signature** (Please sign below)

X _GAURAV MOHINDRA_ , an individual

**Signature** (Please sign below)

X _____ CONFIDENTIAL _____ , an individual

**Menjivar Att. M**
**Page 7 of 7**

# Attachment N

9910

16

## Merchant Application Coversheet

☐ Rush Processing      ☐ Rush Equipment                    Recurring Billing:  ☐ Yes  ☐ No

Date Submitted: **7-16-2015**        Statement Delivery Type:  ☑ FNMS Online   ☐ Paper Statement

Merchant DBA: **Stark Law**

Sales Representative: **Deb Odom**                                                      Ext: _____

☐ Association        ☐ Referral Bank        ☐ Direct Managed Account    ☑ Direct Unmanaged Account

Pricing Source: **TSYS Merchant Solutions**

Associate: **001000**                    Chain: **001001**

## MIT Admin Notes

## POS Information & Deployment Notes

| Delivery Type | Vendor | Application Type |
|---|---|---|
| ☐ Download  ☐ Other | ☑ Vital | ☐ Retail        ☐ MOTO |
| ☑ Ship To Merchant | ☐ FDMS | |
| ☐ On Site Delivery | ☐ Glbl Cntrl (MAPP) | ☐ Restaurant    ☐ Fuel |
| ☐ Ship to Alternate Address (below) | ☐ Glbl East (NDC) | ☐ E-Commerce    ☐ Lodging |
| | ☐ Buypass | ☐ Other _____ |
| | ☐ Other _____ | |

Provider Name: _____                          Deployment Notes

Provider e-mail: _____

Provider Fax: _____

Provider Phone Number: _____

Provider Contact Name: _____

## Credit Review Notes

## Funding Notes

Original Source Document

Principal/Bank: _____  Associate/Group: **001000**  Chain/Association: **001001**  MID#: _____  MCC Code: **8111**

# MERCHANT TRANSACTION PROCESSING AGREEMENT — MERCHANT APPLICATION

201504 Merchant Application SBS Bundled                                                    **CONFIDENTIAL**

## BUSINESS INFORMATION

| | |
|---|---|
| Business Legal Name (must match name on tax return): ("MERCHANT") Stark Law LLC | Business D/B/A: Stark Law |

| Location Street Address: (No P.O. Boxes) 500 Quail Ridge Drive | City: Westmont | State: IL | Zip: 60559 |
|---|---|---|---|

| Contact Name: Gaurav Mohindra | Phone: (630) 243-4207 | Fax: | Email: gmohindra@gmail.com |
|---|---|---|---|

| Mailing/Billing Address: (If different from Location) 500 Quail Ridge Drive | City: Westmont | State: IL | Zip: 60559 | Phone: (630) 243-4207 |
|---|---|---|---|---|

## BUSINESS PROFILE AND ASSUMPTIONS

| # of Locations: 1 | Fed. Tax ID: ____5806 | Annual Visa/MasterCard/Discover/American Express Volume ($): 750,000.00 | Location Volume ($): 750,000.00 | Business Open Date: 2/15/16 |
|---|---|---|---|---|

| Average Ticket ($): 200.00 | Highest Ticket ($): 2,000.00 | Avg. monthly Vol. ($): 62,500.00 | Length of Ownership: 0 Yr 3 Mo | Visa/MasterCard/Discover/American Express Currently Accepted? ☐ Yes ☑ No |
|---|---|---|---|---|

| # of Employees: 20 | Ownership Type: Limited Liability Company | % of Goods/Services Cash and Carry: 0 |
|---|---|---|

| Type of Business: MOTO | Pricing Method: Card Not Present CNP | Type of Goods/Services sold: (Please include a copy of your return/refund policy) attorney |
|---|---|---|

| Previous Processor: (Please include copy of statements) new | Business Website: www.starklaw-firm.com |
|---|---|

| Card Present 0 % + Card Not Present 0 % = TOTAL: 100% If CNP Choose one: CATMO | Sales to: Consumer 95 % + Business 5 % = TOTAL: 100% Card Swipe 0 % + Imprint 0 % = TOTAL Card Present % |
|---|---|

| Application Type: Never Had Credit Cards | Addt. Location LOC/Old MID: | Dun & Bradstreet #: (If available) | Have you or your business ever declared bankruptcy? ☐ Yes ☑ No |
|---|---|---|---|

| Do you use any third party fulfillment houses? ☐ Yes ☑ No If Yes, please provide a contact list of all third party fulfillment houses. | Do you work with any third parties or software vendors who have access to cardholder data? ☐ Yes ☑ No If yes, please provide a contact list of all third parties and software vendors who have access to cardholder data. |
|---|---|

| When is cardholder billed for goods/services? ☐ On Order ☑ On Shipment  Average number of days between order and shipment? 0 |
|---|

| Expected date of first transaction? | Do you operate as a Seasonal Merchant? ☐ Yes ☑ No |
|---|---|

| If seasonal, indicate operating months: ☐Jan ☐Feb ☐Mar ☐Apr ☐May ☐Jun ☐Jul ☐Aug ☐Sep ☐Oct ☐Nov ☐Dec |
|---|

## REFERENCES

| Bank Reference Name: Bank of America | Contact: Joe Villanueva | Phone: (630) ____ | Account Number: ____8644 |
|---|---|---|---|

| Trade/Supplier 1 Name: | Contact: | Phone: | Account Number: |
|---|---|---|---|

| Trade/Supplier 2 Name: | Contact: | Phone: | Account Number: |
|---|---|---|---|

## VISA DISCLOSURE

| MEMBER BANK (ACQUIRER) INFORMATION First National Bank of Omaha 1620 Dodge Street Omaha, NE 68197 800-853-9586 | IMPORTANT MEMBER BANK (ACQUIRER) RESPONSIBILITIES 1. A Visa member is the only entity approved to extend acceptance of Visa products directly to a merchant. 2. A Visa member must be a principal (signer) to the Merchant Agreement. 3. The Visa member is responsible for and must provide settlement funds to the merchant. 4. The Visa member is responsible for all funds held in reserve that are derived from settlement. 5. The Visa member is responsible for educating merchants on pertinent *Visa International Operating Regulations* with which merchants must comply. | IMPORTANT MERCHANT RESPONSIBILITIES 1. Ensure compliance with cardholder data security and storage requirements. 2. Maintain fraud and chargebacks below thresholds. 3. Review and understand the terms of the Merchant Agreement. 4. Comply with *Visa International Operating Regulations*. |
|---|---|---|

The responsibilities listed above do not supersede terms of the Merchant Agreement and are provided to ensure the merchant understands some important obligations of each party and that the Visa Member (acquirer) is the ultimate authority should the merchant have any problems.

| Merchant Name: Stark Law LLC | Authorized Signature: X *(signature)* |
|---|---|
| Address: 500 Quail Ridge Drive  Westmont  IL  60559 | Print Name: GAURAV MOHINDRA |
| Title: | Date: 7/2/2015 |

TSYS Merchant Solutions, LLC is a registered agent of First National Bank of Omaha, 1620 Dodge Street, Omaha, NE 68197
1 of 4

Original Source Document

201584 Merchant Application SBS Bundled                                             **CONFIDENTIAL**

## FEES

**VISA/MC/DISCOVER/DISCOUNT¹ RATE**                                  **AMEX OPTBLUE DISCOUNT¹ RATE**

Rate 1D 1.9500 % + $ 0.00000 per item    Rate 3 2.8000 % + $ 0.00000 per item    Rate 5 2.2500 % + $ 0.00000 per item

Rate 1 1.9500 % + $ 0.00000 per item    Rate 4 3.0000 % + $ 0.00000 per item    Rate 6 2.2500 % + $ 0.00000 per item

Rate 2 2.2500 % + $ 0.00000 per item                                      Rate 7 _____ % + $ _____ per item

Visa Rewards, Visa Signature, Visa Premium, MasterCard World, MasterCard Enhanced, MasterCard Premium and Discover Premium cards will be assessed an additional 0.15 to the applicable rate tier. Please review the Rate Descriptions online at www.tsystransactionsummary.com or contact TMS at 800.228.2443 for additional information on which interchange programs qualify.

| | | | |
|---|---|---|---|
| Merchant Setup | $ 99.00 per MID | Authorizations "or" | $ 0.2000 per V/MC/Disc/AMEX Opt Blue Auth |
| Monthly Maintenance | $ 6.00 per MID | Excessive Electronic Authorizations | $ ___ per V/MC/Disc Auth over 100% of SALES & per AMEX OptBlue Auth |
| Minimum Discount Billing | $ 25.00 per month/MID | Non V/MC/Disc/AMEX Opt Blue Authorizations | $ 0.2000 each |
| Chargebacks | $ 20.00 each | Voice Authorizations | $ ___ each |
| Retrievals | $ 20.00 each | Voice AVS | $ ___ each |
| Batch Capture | $ ___ each | Paper Statement ☐ Yes ☒ No | $9.95 per month/MID |
| Insufficient Funds Fee | $35 per unsuccessful debit of DESIGNATED Account | Wireless Monthly / Wireless Set Up | $ ___ per device / $ ___ per device |
| Annual Seasonal | $ ___ per MID | OTHER | $ ___ |
| Regulatory and Compliance | $ 6.00 per month/MID | OTHER | $ ___ |

| ATM/DEBIT ☐ Yes ☒ No | PCI VALIDATION FEE |
|---|---|
| Setup $ _____ per MID | PCI Validation Fee $ 75.00 per year /MID OR $ 0.00 per month/MID |
| Transactions $ _____ each | |
| Monthly per MID $ _____ | PCI Non-validation Fee: $ _____ per month/MID if MERCHANT is not validated for compliance with TMS's vendor, beginning 75 days after signing. |
| Network Fees    Pass thru | |

## ACCOUNT CLOSURE FEE

If the AGREEMENT is terminated early during the INITIAL TERM or any RENEWAL TERM for any reason other than set out in paragraph 5.1, 5.2A, or 5.2B, then MERCHANT agrees to pay TMS an account closure fee ("ACCOUNT CLOSURE FEE") in accordance with the following: $399 per MID during the first 12 months of the INITIAL TERM; $299 per MID during the second 12 months of the INITIAL TERM; $199 per MID during the third 12 months of the INITIAL TERM; and $149 per MID during any RENEWAL TERM. MERCHANT agrees that the ACCOUNT CLOSURE FEE shall also be due to TMS in accordance with this schedule if MERCHANT discontinues submitting SALES for processing during the INITIAL TERM or any RENEWAL TERM of the AGREEMENT. MERCHANT agrees that this fee is not a penalty, but rather a reasonable estimation of the actual damages TMS would suffer if TMS were to fail to receive the processing business for the then current term. Paragraph references and capitalized terms not defined in this paragraph are defined in the attached Terms and Conditions. Pursuant to Section 4.1 of the Terms and Conditions the INITIAL TERM shall be for 3 years.

## TSYS MERCHANT INSIGHTS℠ ESSENTIALS

90-day Free trial period. Billed at $ per location per month if not cancelled during free trial period. This product or service is not being offered by BANK. BANK has no commitment or liability for this product or service.     Decline / Opt out

## TMS CARD COMPROMISE ASSISTANCE PLAN (CCAP)

CCAP Fee (PCI Validated): $ _____ per month/MID, if MERCHANT is validated for PCI Compliance with TMS's vendor.

CCAP Fee (PCI Non-Validated): $ 34.95 per month/MID, if MERCHANT is not validated for PCI Compliance with TMS's vendor, beginning 75 days after signing.

Refer to the TMS Card Compromise Assistance Plan Agreement for applicable terms. BANK is not a party to this agreement and has no obligation or liability under such agreement.

## TMS CARD COMPROMISE ASSISTANCE PLAN (CCAP) OPT OUT

MERCHANT may only opt out if MERCHANT validates PCI Compliance with TMS vendor within 75 days of signing. If at any time MERCHANT is not validated for compliance, MERCHANT will be automatically enrolled in CCAP until such time that MERCHANT restores validation, at which point MERCHANT will again be opted out. If MERCHANT declines to participate in the Card Compromise Assistance Plan ("CCAP"). MERCHANT understands that under the terms of the AGREEMENT, MERCHANT is responsible for all expenses, fines, assessments, and penalties that arise in the event that a data breach is suspected or occurs at one or more of MERCHANT's locations. Further, MERCHANT understands and agrees that CCAP assistance will not be available to help pay any of the above mentioned expenses, fines, assessments, or penalties in the event of a suspected or actual data breach at one or more of MERCHANT's locations. MERCHANT acknowledges that despite opting out of CCAP, MERCHANT will still be assessed a PCI Validation Fee. Refer to the TMS Card Compromise Assistance Plan Agreement for applicable terms. BANK is not a party to this agreement and has no obligation or liability under such agreement.

| | |
|---|---|
| Merchant Name: Stark Law LLC | Authorized Signature: X _____ Date: 7/2/2015 |
| Title: MANAGER | |

¹ Discount is a FEE charged as a percentage of gross SALES submitted by MERCHANT, which generally includes "Processing," "Authorizations," "Assessments," and "Interchange."

Merchant Initials: X **GM**

TSYS Merchant Solutions, LLC is a registered agent of First National Bank of Omaha, 1620 Dodge Street, Omaha, NE 68197

2 of 4

Original Source Document

201504 Merchant Application SBS Bundled                                    CONFIDENTIAL

## TMS EQUIPMENT/SOFTWARE

| Brand/Model TSYS Host Payment PUR | Brand/Model | Brand/Model |
|---|---|---|
| Equipment Option 0 | Equipment Option | Equipment Option |
| Fee $ 10.00   Quantity 1   Total $ 10.00 | Fee $   Quantity   Total $ 0 | Fee $   Quantity   Total $ 0 |
| Payment Option PUR | Payment Option | Payment Option |
| Software Vendor .PUR__N | Payment Application | Version |

Refer to the TMS Equipment Agreement for applicable terms. BANK is not a party to this agreement and has no obligation or liability under such agreement.

## CARD BRAND FEES

| Visa Zero Floor Limit: $0.1039 per transaction without corresponding authorization | MasterCard Acquirer License Fee: 0.0075% of gross MasterCard SALES dollar volume |
|---|---|

The following fees will be passed through at Card Brand's rate: Assessments, Visa International Service (including cash advance), Visa Misuse, Visa Fixed Acquirer Network Fee, Visa Debit Transaction Integrity Fee, MasterCard CVC2 Transaction Fee: $0.0025 per each transaction that receives a CVC2 response value of "M" (match) or "N" (no match), MasterCard Cross-Border U.S.: $0.006 per each dollar of transaction processed at a U.S. location on a non-U.S. issued card, MasterCard Cross-Border U.S.-PR: $0.006 per each dollar of transaction processed at a Puerto Rico location on a non-Puerto Rico issued card, MasterCard Cross-Border Non-U.S.: $0.01 per each dollar of transaction processed in foreign currency at a non-U.S. location on a U.S. issued card, MasterCard Cross-Border Non-U.S.-PR: $0.01 per each dollar of transaction processed in foreign currency at a non-Puerto Rico location on a Puerto Rico issued card, MasterCard Processing Integrity Fee - Card Present: $0.045 per each approved MasterCard authorization without a reversal request within 24 hours of the initial card-present authorization, MasterCard Processing Integrity Fee - Card Not Present: $0.045 per each approved MasterCard authorization without a reversal request within 72 hours of the initial card-not-present authorization, MasterCard Processing Integrity Fee – T&E: $0.045 per each approved MasterCard authorization without a reversal request within 20 days of the initial T&E authorization, MasterCard Processing Integrity Fee > 120 Days: $0.045 per each approved MasterCard authorization without a corresponding settled transaction or reversal within 120 days of the approved authorization, MasterCard Digital Enablement Fee: 0.01% per cardholder not present transaction, Discover Network Authorization Fee, American Express CNP Downgrade: 0.30%, American Express Inbound Fee: 0.40% on Cross Border Transactions, All Other Applicable Card Brand Fees.

## FUNDS TRANSFER

In accordance with the terms set out in the Terms and Conditions, transfer funds will be made to/from the account set forth in the enclosed voided check or bank letter.
☐ Standard   ☑ Premium

## SALES PROFESSIONAL VERIFICATION

By the signature below, the Sales Professional verifies that that the information stated in this Agreement is correct to the best of his/her knowledge and is as represented to him/her by MERCHANT.

| Sales Professional Signature: *Debra S. Odom* | Sales Professional Name Printed: Deb Odom | |
|---|---|---|
| Sales Organization: TSYS Merchant Solutions | Application Date: | Physical Site Inspection Conducted By Sales Professional ☐ Yes ☐ No |

*✱ See Attachment ✱ provided*

Please attach voided check here.

→

THIS SPACE INTENTIONALLY LEFT BLANK

Merchant Initials: X GM

TSYS Merchant Solutions, LLC is a registered agent of First National Bank of Omaha, 1620 Dodge Street, Omaha, NE 68197

3 of 4

*Please do not cover with voided check*



Original Source Document

201504 Merchant Application SBS Bundled     **CONFIDENTIAL**

## AMERICAN EXPRESS

| | | | |
|---|---|---|---|
| ☐ Existing American Express ESA | ESA SE | | Merchant CAP |
| ☑ New American Express OptBlue | ☐ New American Express ESA Discount %| ☐ Monthly Flat (ESA)$ |
| Merchant Name Stark Law LLC | Annual American Express Charge Vol $ 112,500 | Avg Ticket $ 200.00 |

| | | | |
|---|---|---|---|
| Retail: + $0.10 Tran Fee ☐ | Restaurant: + $0.05 Tran Fee ☐ | ☐ Daily Net Pay — ESA only | ☐ Daily Gross Pay — ESA only |
| B2B, Travel Agencies/Tour Operators & Services, Wholesale & All Other: + $0.15 Trans Fee ☐ | | ☐ Monthly Gross Pay (+.03% if $100K +) - ESA only | |
| Prepaid Gift Card Discount: % + $ per transaction ☐ | | Payment Timing - ESA Only: ☐ 3 Day ☐ 15 Day ☐ 30 Day | |

## PERSONAL GUARANTY

THIS general, absolute, and unconditional continuing Guaranty ("GUARANTY") by the undersigned (collectively "GUARANTOR" or "my" or "I" or "me"), is for the benefit of TSYS Merchant Solutions, LLC and/or First National Bank of Omaha ("Collectively TMS"). For value received, and in consideration of the mutual undertakings contained in the Merchant Transaction Processing Agreement and allied agreements ("AGREEMENT") between TMS and ("MERCHANT") as set forth below, I absolutely and unconditionally guarantee the full performance of all MERCHANT's obligations to TMS, together with all costs, expenses, and attorneys' fees incurred by TMS in connection with any actions, inactions, or defaults of MERCHANT. I waive any right to require TMS to proceed against other entities or MERCHANT. There are no conditions attached to the enforcement of this GUARANTY. I authorize TMS, its agents or assigns to make personal credit inquiries about my personal credit or other inquiries and agree to provide, at TMS's request, financial statements and/or tax returns. I agree that this GUARANTY shall be governed and construed in accordance with the laws of the state of Nebraska, and that the courts of the state of Nebraska shall have and be vested with personal jurisdiction over me. This is a continuing GUARANTY and shall remain in effect until one hundred eighty (180) days after receipt by TMS of written notice by me terminating or modifying the same. The termination of the AGREEMENT or GUARANTY shall not release me from liability with respect to any obligations incurred before the effective date of termination. No termination of this GUARANTY shall be effected by any change in my legal status or any change in the relationship between MERCHANT and me. This GUARANTY shall bind and inure to the benefit of the personal representatives, heirs, administrators, successors and assigns of GUARANTOR and TMS.

PERSONAL GUARANTOR: (Signature-No Titles) _____   Print Name: (No Titles) _____

MERCHANT: (Business Legal Name) Stark Law LLC   Social Security Number: _____

Home Address: 500 Quail Ridge Drive   Westmont   IL   60559   Home Phone: _____   Work Phone: (830) 243-4207

## AGREEMENT ACCEPTANCE

By their execution below the undersigned parties agree to abide by the Merchant Transaction Processing Agreement (the "AGREEMENT"). The AGREEMENT consists of the Merchant Application and the Terms and Conditions (a separate attachment hereto), and MERCHANT acknowledges it has received and read the Terms and Conditions at the time of signing. MERCHANT warrants that the information provided on the Merchant Application is complete and accurate. MERCHANT authorizes TMS and/or BANK to provide a copy of this Merchant Application to any third party for the services requested. MERCHANT, its signing officer, owner, partner and any Personal Guarantor authorize TMS, BANK or their agents or assigns, to make from time to time, business or personal credit inquiries and other inquiries in connection with this Merchant Application or the Agreement. By executing this Merchant Application, MERCHANT, its signing officer, owner, partner and any Personal Guarantor acknowledge that TMS and/or BANK has a legitimate business need for the information contained in any personal credit report that may be obtained in connection with this Merchant Application or the Agreement, and that this Application is a business transaction that was initiated by the MERCHANT and/or any Personal Guarantor identified above. If applicable, MERCHANT agrees by its signature below to the TMS Equipment Agreement, the TMS Card Compromise Assistance Plan Agreement, and the American Express OptBlue Program Agreement. BANK is not a party to these agreements and has no obligation or liability under such agreements. In witness whereof the parties hereto have caused this AGREEMENT to be executed by their duly authorized representatives effective on the date signed or approved by BANK.

| | | | |
|---|---|---|---|
| Principal's Name (Please Print) GAURAV MOHINDRA | | | Title: MANAGER |
| Equity Ownership (%) 100   Home Phone No: 312- | Date of Birth: | Principal's Soc Sec No: | |
| Principal's Name (Please Print) | City: Westmont | State: IL | Zip: |
| MERCHANT (PRINCIPAL / OFFICER / OWNER) Signature: X | Name (Please Print): GAURAV MOHINDRA | Title: MANAGER | Date: 7/2/2015 |
| TSYS Merchant Solutions, LLC ("TMS") Signature: | Name: MICHELLE DICKINSON Risk Management | Title: | Date: 7/6/15 |
| First National Bank of Omaha ("BANK") Signature: | Name: | Title: | Date: |

TSYS Merchant Solutions, LLC is a registered agent of First National Bank of Omaha, 1620 Dodge Street, Omaha, NE 63197
4 of 4

Original Source Document

Menjivar Att. N
Page 6 of 16

Monday, July 00, 2016

Principal/Bank: _____ Associate/Group: _____ Chain/Association: _____ MID#: _____ MCC Code: _____ Date Rec'd: _____

## AMENDMENT TO THE MERCHANT TRANSACTION PROCESSING AGREEMENT

### 201504 ACF WAIVER AMENDMENT

THIS Amendment ("AMENDMENT"), by and between FIRST NATIONAL BANK OF OMAHA ("BANK"), TSYS MERCHANT SOLUTIONS, LLC ("TMS"), and "MERCHANT", the name of which is set out below, shall become effective on the date executed or approved by a duly authorized representative of BANK. BANK, TMS, and MERCHANT shall be collectively known hereafter as the "PARTIES."

WHEREAS, BANK, TMS, and MERCHANT are PARTIES to a Merchant Transaction Processing Agreement (together with its addenda, attachments, and schedules shall be hereinafter known as the "AGREEMENT"), under which BANK and TMS provide transaction processing and other services regarding credit card sales transactions ("SALES"), subject to the terms and conditions more fully set out in AGREEMENT; and

WHEREAS, the PARTIES desire to delete the ACCOUNT CLOSURE FEE as set out in the AGREEMENT.

NOW THEREFORE, in consideration of the mutual promises made herein, and other valuable consideration, receipt and sufficiency of which are hereby acknowledged, the PARTIES do hereby agree as follows:

1. Terms set forth herein, which are typed in all capitalized letters and not defined herein, shall have the same meaning as set out in the AGREEMENT.

2. The PARTIES agree to delete in its entirety the Account Closure Fee section from the FEES Section of the AGREEMENT.

3. The PARTIES agree to delete all other references to the ACCOUNT CLOSURE FEE from the Terms and Conditions of the AGREEMENT.

4. This AMENDMENT, together with the AGREEMENT and its other amendments, attachments, exhibits, and schedules, constitutes the entire AGREEMENT between the PARTIES as to transaction processing, and any other representations, inducements, promises, or agreements not contained herein shall be of no force and effect as to transaction processing.

5. Except as amended hereby, BANK, TMS, and MERCHANT reaffirm the obligations of each as they are contained in the AGREEMENT.

IN WITNESS WHEREOF, the PARTIES hereto have caused this AMENDMENT to be executed by their duly authorized representative, effective as of the date executed or approved by BANK.

First National Bank of Omaha

_____
BANK Authorized Signature

_____
Print Name

_____
Title

_____
Date

TSYS Merchant Solutions, LLC

_____
TMS Authorized Signature

Print Name MICHELLE DICKINSON
Risk Management

Title _____

_____
Date

Stark Law

ADDRESS 500 Quail Ridge Drive

Westmont                    IL        60559

X _____
Authorized Signature

GAURAV MOHINDRA
Print Name

MANAGER
Title

No Term Commitment

Original Source Document

Monday, July 06, 2015

**PAYMENT ACCEPTANCE APPLICATIONS AMENDMENT**
**TO THE MERCHANT TRANSACTION PROCESSING AGREEMENT**

201504 TSYS PAYMENT ACCEPTANCE APPLICATIONS

THIS Amendment ("AMENDMENT"), by and between FIRST NATIONAL BANK OF OMAHA ("BANK"), TSYS MERCHANT SOLUTIONS, LLC ("TMS"), and "MERCHANT," the name of which is set out below, shall become effective on the date executed or approved by a duly authorized representative of BANK. BANK, TMS, and MERCHANT shall be collectively known hereafter as the "PARTIES."

WHEREAS VISA, MASTERCARD, DISCOVER, AMERICAN EXPRESS, ATM/Debit Networks, and the other financial service card organizations and their related international entities shall be collectively known as "CARD BRANDS".

WHEREAS, BANK, TMS, and MERCHANT are PARTIES to a Merchant Transaction Processing Agreement (together with its addenda, attachments, and schedules shall be hereinafter known as the "AGREEMENT"), under which BANK and TMS provide transaction processing and other services regarding credit and debit card sales transactions ("SALES"), subject to the terms and conditions more fully set out in AGREEMENT; and

WHEREAS, the PARTIES desire to amend the AGREEMENT as set out below.

NOW THEREFORE, in consideration of the mutual promises made herein and other valuable consideration, receipt and sufficiency of which are hereby acknowledged, the PARTIES do hereby agree as follows:

**1. GENERAL:**

1.1 Capitalized terms that are not defined herein shall have the same meaning as when defined in the AGREEMENT.

1.2 To the extent TMS is not already a PARTY to the AGREEMENT, the PARTIES agree to amend the AGREEMENT to make TMS a party to the AGREEMENT. BANK will continue to sponsor MERCHANT into the CARD BRANDS, retain the responsibility of settling MERCHANT's SALES, and all other obligations that are required to be retained at BANK by the CARD BRANDS. TMS will be responsible for all other responsibilities and obligations to MERCHANT under the AGREEMENT, including but not limited to processing SALES and handling customer service.

1.3 TSYS® Acquiring Solutions, LLC ("TSYS") shall provide certain services and support for the products and services described in this AMENDMENT. The products and services described in this AMENDMENT are not offered by BANK. MERCHANT acknowledges and agrees that BANK and its affiliates are in no way responsible for the actions, inactions, performance or nonperformance of TMS or TSYS, or for disputes or resolving disputes of any kind arising from this AMENDMENT.

**2. TSYS PAYMENT ACCEPTANCE APPLICATIONS TERMS AND CONDITIONS:**

2.1 MERCHANT agrees to pay the fees as set out in the attached Enrollment form(s) and as may be amended from time to time. MERCHANT agrees to abide by all parameters set out in any specifications or documentation as amended from time to time. MERCHANT agrees to provide the information requested in the Enrollment form(s), attached hereto as Exhibit A and incorporated herein by this reference.

2.2 TMS and MERCHANT agree to add the following products and/or services to SERVICES:

| | |
|---|---|
| CounterPASS | ☐ |
| WebPASS | ☒ |
| Multi-PASS | ☐ |
| Mobile Payment Acceptance | ☐ |
| TSYS Hosted Payment | ☐ |

2.3 MERCHANT agrees to be bound by the following:

2.3.1 MERCHANT shall only use the products and/or services indicated above for MERCHANT's internal business purposes.

2.3.2 Title and ownership of the products and/or services indicated above remain with TSYS.

2.3.3 MERCHANT may not (a) alter or modify the products and/or services indicated above, (b) reverse engineer, decompile, disassemble, or in any way attempt to derive the source code for the products and/or services indicated above, or (c) transfer the products and/or services indicated above to any third party or make the products and/or services indicated above available to any third party as part of any time-sharing or service bureau arrangement.

Original Source Document

2.3.4     MERCHANT will not export or re-export the products and/or services indicated above without the appropriate United States or foreign government licenses.

2.3.5     All express and implied warranties regarding the products and/or services indicated above by TSYS and its suppliers to MERCHANT are disclaimed.

2.3.6     All consequential, special, and indirect damages are disclaimed on behalf of TSYS and its suppliers.

2.3.7     For U.S. Government End Users: The products and/or services indicated above are "commercial items," as that term is defined at 48 C.F.R. 2.101 (OCT 1995), and more specifically are "commercial computer software" and "commercial computer software documentation," as such terms are used in 48 C.F.R. 12.212 (SEPT 1995). Consistent with 48 C.F.R. 12.212 and 48 C.F.R. 227.7202-1 through 227.7202-4 (JUNE 1995), the products and/or services indicated above are provided to U.S. Government end users (a) only as commercial end items and (b) with only those rights as are granted to all other end users pursuant to the terms and conditions herein.

**3.   MISCELLANEOUS:**

3.1    This AMENDMENT, together with the AGREEMENT and its other amendments, attachments, exhibits, and schedules, constitutes the entire AGREEMENT between the PARTIES as to transaction processing, and any other representations, inducements, promises, or agreements not contained herein shall be of no force and effect as to transaction processing.

3.2    Except as amended hereby, BANK, TMS, and MERCHANT reaffirm the obligations of each as they are contained in the AGREEMENT.

IN WITNESS WHEREOF, the PARTIES hereto have caused this AMENDMENT to be executed by their duly authorized representative, effective as of the date executed or approved by BANK.

**First National Bank of Omaha**

_____
BANK Authorized Signature

_____
Print Name

_____
Title

_____
Date

**TSYS Merchant Solutions, LLC**

_____
TMS Authorized Signature

_____
Print Name
     MICHELLE DICKINSON

_____
Title

7|6|15
_____
Date

MERCHANT Name _STARK LAW LLC_
MID#:

Address 500 QUAIL RIDGE
WESTMONT, IL 60559
City, State, Zip Code

_Gaurav Mohindra_
Authorized Signature

GAURAV MOHINDRA
Print Name

MANAGER
Title

Original Source Document

| **TSYS Payment Acceptance Products** | **TSYS** Merchant Solutions* |

Merchant # _____       DBA Name _Stark Law_

Date _____                       Sales Rep _Deb Odom_      Ext._____

Parent MID: _____      E-mail: _amdhindra@gmail.com_
(Enter in POS Notes)             (Enter in POS Notes)

---

**TSYS Payment Acceptance:**

**CounterPASS** _____
**WebPASS** ⨯
**MultiPASS** _____
**TSYS Hosted Payment** _____

**Additional MIDs under Parent:** Yes_____      No_____
(Please list additional MIDS on attached sheet)

**Parent MID**
*Activation Fee (per MID):** $___0___      Monthly Fee (per MID): $ 10.00

*Activation fee is not applicable for TSYS Hosted Payment

---

Comments_____

_Deb Odom_
TMS Merchant Advocate Name

_Stark Law LLC_
Merchant Name
_[signature]_
Authorized Signature
_Gavean Mohindra_
Print Name
_Manager_
Title

_7/2/2015_
Date

201504

Original Source Document



Approved by Legal Counsel for use by Members of the Board of REALTORS®
This is a legally binding lease. If not understood, consult an attorney

# COMMERCIAL AND INDUSTRIAL LEASE AGREEMENT

THIS LEASE is made as of ___FEBRAURY 1, 2015___

between

HIGH FUNDING INC., AN ILLINOIS CORPORATION ("Lessor"),

and

STARK LAW LLC, AN ILLINOIS LIMITED LIABILITY CORPORATION ("Lessee"), with an address of ___300 QUAIL RIDGE DRIVE, WESTMONT, IL 60559___, who hereby agree as follows:

1.  **PREMISES.** Subject to the covenants and conditions of this Lease. Lessor leases to Lessee, and Lessee leases from Lessor, the premises (the "Premises") commonly known and numbered as ___500 QUAIL RIDGE DRIVE___ in the City of ___WESTMONT___, County of ___DUPAGE___ and further described as: State of ___ILLINOIS___ ___500 QUAIL RIDGE DRIVE, WESTMONT, IL. 60559___

together with the right of ingress and egress and the non-exclusive use of common areas, if any.

2.  **USE OF PREMISES.** The Premises shall be used only ___FOR OFFICE PURPOSES.___
___(collectively, the "Permitted Use").___

3.  **TERM.** The term of this Lease (the "Term") is for ___3 YEARS___ years and ___0___ months, commencing on the ___1ST___ day of ___FEBRUARY___ ___2015___, and ending on the ___31ST___ day of ___JANUARY___, ___2018___.

4.  **RENT PAYMENTS.** Lessee shall pay rent to Lessor $ ___5,000.00 (FIVE THOUSAND DOLLARS)___ as rent in monthly installments, each due and payable in advance without notice or demand at Lessor's above stated address, or at any other place Lessor designates in writing. The first monthly rent installment of $ ___5,000.00___ shall be paid ___FEBRUARY 1___ and all subsequent monthly rent installments shall be due on the ___FIRST___ day of each succeeding month during the Term. The amount of each monthly rent installment shall be as follows:
___$5,000.00 (FIVE THOUSAND DOLLARS) PER MONTH, FIXED.___

5.  **SECURITY DEPOSIT.** Concurrently with execution of this Lease, Lessee shall deliver to Lessor $ ___5,000.00___ as security for the performance by Lessee of every covenant and condition of this Lease (the "Security Deposit"). Said Security Deposit may be co-mingled with other funds of Lessor and shall bear no interest. If Lessee shall default with respect to any covenant or condition of this Lease, including, but not limited to the payment of rent, Lessor may apply the whole or any part of such Security Deposit to the payment of any sum in default or any sum which Lessor may be required to spend by reason of Lessee's default. If any portion of the Security Deposit is so applied, Lessee, upon demand by Lessor, shall deposit cash with Lessor in an amount sufficient to restore the Security Deposit to its original amount. Should Lessee comply with all of the covenants and conditions of this Lease, the Security Deposit or any balance thereof shall be returned to Lessee promptly after expiration of the term thereof.

6.  **POSSESSION AT BEGINNING OF TERM.** Lessor shall use due diligence to give possession as nearly as possible at the beginning of the Term. Rent shall abate pro rata for the period of any delay in giving Lessee possession, but the Term shall not be extended as a result of such delay. Lessee shall make no other claim against Lessor for delay in obtaining possession.

7.  **PROPERTY INSURANCE** Lessee shall comply with all insurance regulations so the lowest property damage, including loss of rent and liability insurance rates may be obtained; and nothing shall be done or kept in or on the Premises by Lessee which shall cause an increase in the premium for any such insurance on the Premises or on any building of which the Premises are a part or on any improvements located therein, over the lowest rate obtainable or which shall cause cancellation or make void any such insurance. If, during the term, the premium for any such insurance maintained by Lessor with respect to the premises are so increased as a result of Lessee's use or occupancy, or if the premiums for such insurance are increased in excess of the premium charged for the policy year _____, as a result of a premium rate increase or an increase in the amount of coverage required, then Lessee shall pay to Lessor, as additional rent, the amount of such increase within thirty (30) days after receipt of Lessor's billing statement and demand for payment of same. The amount payable by Lessee under this section shall be pro rated for the partial years, if any, in which this Lease commences and terminates. Lessee shall maintain, at all times during the Term, adequate insurance on its personal property used, stored or kept in the premises.

8.  **INDEMNITY AND LIABILITY INSURANCE.** Lessee shall at all times indemnify, defend and hold Lessor harmless from all loss, liability, costs, damages and expenses that may occur or be claimed with respect to any

1

Original Source Document

~~Monday, July 06, 2015~~

person or persons, or property on or about the Premises or to the Premises resulting from any act done or omission by or through Lessee, its agents, employees, invitees or any person on the Premises by reason of Lessee's use or occupancy or resulting from Lessee's non-use or possession of said property and any and all loss, cost, liability or expense resulting therefrom. Lessee shall maintain, at all times during the Term, comprehensive general liability insurance in a responsible insurance company, licensed to do business in the state in which the Premises are located and satisfactory to Lessor, properly protecting and indemnifying Lessor with single limit coverage of not less than $_____ for injury to or death of persons and for property damage. During the Term, Lessee shall furnish Lessor with a certificate or certificates of insurance, in a form acceptable to Lessor, covering such insurance so maintained by Lessee and naming Lessor and Lessor's mortgagees, if any, as additional insureds.

9.    ASSIGNMENT AND SUBLETTING. Lessee shall not assign, transfer or encumber this Lease and shall not sublease the Premises or any part thereof or allow any other person to be in possession thereof without the prior written consent of Lessor, in each and every instance. For the purpose of this provision, any transfer of a majority or controlling interest in Lessee (whether in one or more related or unrelated transactions), whether by transfer of stock, consolidation, merger, transfer of a partnership interest or transfer of any or all of Lessee's assets or otherwise, or by operation of law, shall be deemed an assignment of this lease. Notwithstanding any permitted assignment or subletting, Lessee shall at all times remain directly, primarily and fully responsible and liable for the payment of the rent herein specified and for compliance with all of its other obligations under the terms and provisions of this Lease.

10.    SIGNS AND ADVERTISEMENTS. Lessee shall not place upon nor permit to be placed upon any part of the Premises, any signs, billboards or advertisements what so ever, without the prior written consent of Lessor. All permitted signage shall be at Lessee's sole expense.

11.    CONDITION OF PREMISES. Lessee acknowledges that it has inspected the Premises and , except as may be provided otherwise in this Lease, Lessee accepts the Premises in its present condition. At the end of the Term, except for damage caused by fire or other perils, Lessee, at its expense, shall (a) surrender the Premises in the same or similar condition as existed at the time the Premises were accepted and possession taken by Lessee, subject to reasonable wear resulting from use permitted hereunder, and further subject to Lessee's obligations stated in Paragraphs 12 and 14 herein; (b) have removed all of Lessee's property from the Premises; (c ) have repaired any damage to the Premises caused by the remo val of Lessee's Property; and (d) leave the Premises free of trash and debris and the building in "broom clean" condition.

12.    MAINTENANCE AND REPAIR BY LESSEE. Except for the obligations imposed upon Lessor in Paragraph 15 and damage resulting from an insurable loss, at Lessee's sole cost and expense during the Term, Lessee shall maintain and keep in good order, repair and condition and, when necessary, shall replace all parts of the Premises including, but not limited to, dock bumpers and other dock equipment and appurtenances, utility service lines from the point where they enter the building(s) of which the Premises are a part, interior walls, inside surfaces of exterior walls, fixtures, floor coverings, lighting fixtures, heating, ventilating, air-conditioning, plumbing fixtures and drains sprinkler system, glass, windows, doors, elevator, electrical and other mechanical equipment, appliances and systems, railroad spur track, if any, improvements made by and at the expense of Lessee and Lessee's property, including, but not limited to, Lessee's signs and advertisements. Lessee shall police and keep the driveways, approaches, sidewalks, parking areas, spur tracks and adjacent alleys that are a part of the Premises clean, orderly, sightly, unobstructed and free from ice and snow. Lessee shall regularly water, mow, trim, fertilize and otherwise maintain the lawn, shrubs, plants, trees and other landscaping of the Premises. Lessee shall prevent water pipes in the Premises from freezing.

13.    LESSOR'S RIGHT OF ENTRY. Lessor or Lessor's agent may enter at reasonable hours to inspect or show the Premises to prospective lenders and purchasers, and to do anything Lessor may be required to do hereunder or within Lessor may deem necessary for the good of the Premises or any building of which they are a part; During the last ninety (90) days of this Lease, Lessor may display a "For Rent" sign on the Premises.

14.    PARKING LOT MAINTENANCE. Lessee shall be responsible for maintenance, cleaning, repainting and repairs of the parking areas, driveways, sidewalks and approaches, including ice and snow removal. Lessee shall repair all damage to parking areas, driveways, sidewalks and approaches caused by placement or movement of trash containers, truck trailer dollies, trucks, or other moveable property Lessee understands and agrees that no personal property, including vehicles, shall be stored in the parking area or anyplace outside the building without the prior written consent of Lessor.

15.    MAINTENANCE AND REPAIR BY LESSOR. Except as may be caused by acts or negligence of Lessee, Lessor shall, at Lessor's sole cost and expense, maintain and keep in good repair the roof, exterior walls (exclusive of inside surfaces, glass, windows and doors), gutters, downspouts, foundations and all other structural components of the building(s) of which the Premises are a part, and all underground plumbing and sewer lines; and water, gas and electric service lines to the point where such service lines enter the building(s) of which the Premises are a part. Lessor shall be under no obligation, and shall not be liable for any failure to make any repairs until and unless Lessee notifies Lessor in writing that such repairs are necessary. Lessor shall have a reasonable time thereafter to make repairs.

16.    DAMAGE BY CASUALTY. (a) If, during the Term or previous thereto, the Premises or the building of which said Premises are a part shall be destroyed or so damaged by fire or other casualty as to become untenantable, then in such event, at the option of Lessor, this Lease shall terminate from the date of such damage or destruction. Lessor shall exercise this option to so terminate this Lease by notice in writing delivered to Lessee within thirty (30) days after such damage or destruction. Upon such notice, Lessee shall immediately surrender said Premises and all interest therein to Lessor, and Lessee shall pay rent only to the time of such damage or destruction. If Lessor does not elect to terminate this Lease, this Lease shall continue in full force and effect, and Lessor shall expeditiously repair the Premises, placing the same in as good a condition as they were at the time of the damage or destruction, and for that purpose, may enter said Premises. In that event rent shall abate in proportion to the extent and duration of

2

untenantability. In either event, Lessee shall remove all rubbish, debris, merchandise, furniture, equipment and its other personal property within five days after the request by Lessor. (b) If the Premises shall be slightly damaged by fire or other casualty, so as not to render the same untenantable, then Lessor shall expeditiously repair the same and in that case the rent shall not abate. Except for rent abatement as herein provided, no compensation or claim shall be made by or allowed to Lessee by reason of any inconvenience or loss of business arising from the necessity of repairing any portion of the building or the Premises.

17. **PERSONAL PROPERTY.** Lessor shall not be liable for any loss or damage to any merchandise inventory, goods, fixtures, improvements or personal property of Lessee in or about the Premises, as a result of any casualty.

18. **ALTERATIONS.** Lessee shall not make any alterations or additions in or to the Premises without the prior written consent of Lessor.

19. **UTILITIES AND SERVICES.** Lessee shall furnish and pay for all electricity, gas, water, fuel, trash removal, and any services or utilities used in or assessed against the Premises, unless otherwise provided.

20. **LEGAL REQUIREMENTS.** Lessee shall comply with all laws, orders, ordinances and other public requirements now or hereafter affecting the Premises or the use thereof, and Lessee shall indemnify, defend and hold Lessor harmless from expense or damage resulting from failure to do so.

21. **MULTIPLE TENANCY BUILDING.** If the Premises are a part of a multiple tenancy building or complex, the responsibility of Lessee for reimbursements as called for in Paragraphs 2 and 23 of this Lease shall be a percentage of the total increase equal to the percentage of rentable floor space in said building or complex occupied by Lessee. It is agreed Lessee occupies _____ 40 _____ % ("Proportionate Share") of the floor space in the building for which the Premises are a part.

Lessor may, with notice to Lessee, elect to perform and provide certain maintenance and services pertaining to the entire building or area of which the Premises are a part including, but not limited to, landscaping, trash removal, lawn maintenance, common area lighting, watering, paving maintenance, maintenance to rail trackage and snow removal. In such event, Lessee shall reimburse Lessor for its Proportionate Share of said maintenance services within fifteen (15) days from the date of Lessor's notice of the amount due.

Lessee agrees to conduct its business in a manner that shall not be objectionable to other Lessees in the building of which the Premises are a part, including, but not limited to noise, vibration, odor, trash or fumes. In the event Lessor receives complaints from other Lessees in the building or complex and determines, in its sole reasonable judgment, that Lessee is conducting its operations in a manner so as to be objectionable to other Lessees, Lessee shall, upon notice from Lessor, promptly modify its operations to eliminate such objections.

22. **FIXTURES.** Except for Lessee's personal property and trade fixtures, all buildings, repairs, alterations, additions, improvements, installations and other non-trade fixtures installed or erected on the Premises, whether by or at the expense of Lessor or Lessee, shall belong to Lessor and shall remain on and be surrendered with the Premises at the expiration or termination of this Lease. However, at Lessor's option, Lessee shall remove Lessee's alterations or improvements prior to the expiration of this Lease and return the Premises to its original condition.

23. **INCREASE IN REAL ESTATE TAXES AND SPECIAL ASSESSMENTS.** If the real estate taxes and installments of special assessments, payable with respect to the Premises during any year shall be greater than the amount of such taxes and installments of special assessments due and payable during the base year of _____ or the first fully assessed year, whether by reason of an increase in tax rate or an increase in the assessed valuation or otherwise, Lessee shall pay to Lessor the full amount of such increase as additional rent within thirty (30) days after notice that the same is due. Should Lessee occupy less than the whole of the property against which such taxes are assessed, Lessee's obligation hereunder shall be limited to its Proportionate Share of such increased taxes and special assessments. The amount payable by Lessee under this section shall be pro rated for the partial years, if any, in which this Lease commences and terminates.

24. **EMINENT DOMAIN.** Should all of the Premises be taken under the power of eminent domain or a conveyance in lieu thereof by any authority having the right of condemnation, or if a portion thereof is taken so that the Premises are unsuitable, in Lessee's reasonable opinion, for Lessee's use, then the term of this lease shall terminate as of the date that title shall vest in the acquiring authority and the rent and other charges shall be adjusted as of the date of such taking. In such case, Lessor shall be entitled to the proceeds of the condemnation award made to Lessor. Nothing herein shall be construed to prevent Lessee from separately pursuing a claim against the condemning authority for its independent loss or damages to the extent available, provided, however, that no award made to or on behalf of Lessee shall reduce, limit, or restrict the award to Lessor, and no allocation of Lessor's award in condemnation shall occur. Lessee shall have no claim against Lessor for the value of the unexpired term of this lease. Should any part of the Premises be taken in the exercise of eminent domain or a conveyance in lieu thereof or in connection therewith, but not such as to render the Premises unsuitable for the operation of its business, this Lease shall continue on the same terms and conditions except that the description of the Premises or the real estate taken by right of eminent domain or a conveyance in lieu thereof or in connection therewith shall be modified to reflect such taking. In the event this Lease does not terminate by reason of such taking, the condemnation proceeds from the Demised Premises will first be used to restore the Demised Premises to a position of occupancy by the Lessee. The balance of such condemnation proceeds from the Premises, if any, shall belong to Lessor.

25. **WAIVER OF SUBROGATION.** As part of the consideration for this Lease, each of the parties hereby releases the other party from all liability for damage due to any act or neglect of the other party occasioned to property owned by said parties which is or might be incident to or the result of a fire or other casualty against loss for which either of the parties is now carrying or hereafter may carry insurance; provided, however, that the releases herein contained shall not apply to any loss or damage occasioned by intentional acts of either of the parties, and the parties

3

Original Source Document

further covenant that any insurance they obtain on their respective properties shall contain an appropriate provision whereby the insurance company, or companies, consent to the mutual release of liability contained in this paragraph.

26.    **DEFAULT AND REMEDIES.** If: (a) Lessee fails to comply with any term, provision, condition or covenant of this Lease; (b) Lessee deserts or vacates the Premises; (c ) any petition is filed by or against Lessee under any section or chapter of the Federal Bankruptcy Act, as amended, or under any similar law or statute of the United States or any state thereof; (d) Lessee becomes insolvent or makes a transfer in fraud of creditors; (e) Lessee makes an assignment for benefit of creditors; or (f) a receiver is appointed for Lessee or any of the assets of Lessee, then in any of such events, Lessee shall be in default and Lessor shall have the option to do any one or more of the following: upon ten (10) days prior written notice, excepting the payment of rent or additional rent for which no demand or notice shall be necessary, in addition to and not in limitation of any other remedy permitted by law, to enter upon the Premises either with or without process of law, and to expel, remove and put out Lessee or any other persons thereon, together with all personal property; and, Lessor may terminate this Lease or it may from time to time, without terminating this Lease, rent said Premises or any part thereof for such term or terms (which may be for a term extending beyond the Term) and at such rental or rentals and upon such other terms and conditions as Lessor in its sole discretion may deem advisable, with the right to repair, renovate, remodel, redecorate, alter and change said Premises. At the option of Lessor, rents received by Lessor from such reletting shall be applied first to the payment of any indebtedness from Lessee to Lessor other than rent and additional rent due hereunder; second, to payment of any costs and expenses of such reletting, including, but not limited, attorney's fees, advertising fees and brokerage fees, and to the payment of any repairs, renovation, remodeling, redecorations, alterations and changes in the Premises; third, to the payment of rent and additional rent due and payable hereunder and interest thereon; and, if after applying said rentals there is any deficiency in the rent and additional rent and interest to be paid by Lessee under this Lease, Lessee shall pay any such deficiency to Lessor and such deficiency shall be calculated and collected by Lessor monthly. No such re-entry or taking possession of said Premises shall be construed as an election on Lessor's part to terminate this Lease unless a written notice of such intention is given to Lessee. Notwithstanding any such reletting without termination, Lessor may at any time terminate this Lease by reason of any default, in addition to any other remedy it may have, it may recover from Lessee the worth at the time of such termination of the excess of the amount of rent and additional rent reserved in this Lease for the balance of the Term over the then reasonable rental value of the Premises for the same period. Lessor shall have the right and remedy to seek redress in the courts at any time to correct or remedy any default of Lessee by injunction or otherwise, without such resulting or being deemed a termination of this Lease, and Lessor, whether this Lease has been or is terminated or not, shall have the absolute right by court action or otherwise to collect any and all amounts of unpaid rent or unpaid additional rent or any other sums due from Lessee to Lessor under this Lease which were or are unpaid at the date of termination. If it is necessary for Lessor to bring any action under this Lease, to consult with an attorney concerning or for the enforcement of any of Lessor's rights, then Lessee agrees in each and any such case to pay to Lessor, Lessor's reasonable attorney's fees. In addition to the remedies set forth herein, Lessee shall pay a late charge in the amount of ___5 (FIVE)___ % of any payment due hereunder which remains unpaid on the tenth day after same is otherwise due hereunder. Said late charge shall be deemed additional rent, and the assessment or collection of same shall not limit or delay Lessor's pursuit of any remedy arising hereunder upon Lessee's default.

27.    **WAIVER.** The rights and remedies of Lessor under this Lease, as well as those provided by law, shall be cumulative, and none shall be exclusive of any other rights or remedies. A waiver by Lessor of any breach or default of Lessee shall not be deemed or construed to be a continuing waiver of such breach or default nor as a waiver of or permission, expressed or implied, for any subsequent breach or default. It is agreed that the acceptance by Lessor of any installment of rent subsequent to the date the same should have been paid shall not alter the covenant and obligation of Lessee to pay subsequent installments of rent promptly upon the due date. Receipt by Lessor of partial payment after Lessee's default shall not be construed to be or constitute a cure of any such default. No receipt of money by Lessor before or after the termination of this Lease shall in any way reinstate, continue or extend the term above demised.

28.    **TOXIC OR HAZARDOUS MATERIALS.** Lessee shall not store, use or dispose of any toxic or hazardous materials in, on or about the Premises without the prior written consent of Lessor. Lessee, at its sole cost, shall comply with all laws relating to Lessee's storage, use and disposal of hazardous or toxic materials. Lessee shall be solely responsible for and shall defend, indemnify and hold Lessor, its agents and employees, harmless from and against all claims, costs and liabilities, including attorney's fees and costs, arising out of or in connection with the storage, use or disposal of any toxic or hazardous material in, on or about the Premises including, but not limited to, removal, clean-up and restoration work and materials necessary to return the Premises, and any other property of whatever nature located on the Premises, to their condition existing prior to the appearance of toxic or hazardous materials on the Premises. Lessee's obligations under this paragraph shall survive the termination of this Lease.

29.    **REAL ESTATE COMMISSION.** Upon execution of this lease by both Lessor and Lessee, Lessor shall pay a real estate commission to _____ (Lessor's Broker"), in the amount of _____(____%) percent of the total rentals and other payments due under this lease to be paid during the term hereof. A commission in the amount of _____(____%) shall be paid to the Broker named above upon the commencement of any extension and/or renewal of the lease term and upon commencement of any enlargement or substitution of the leased premises. In the event that the leased premises are purchased by the Lessee, Lessor shall pay the Broker named above a sales commission of _____ (____%) of the sale price, but Lessor shall receive credit for lease commissions previously paid by Lessor based upon rents which would have been received by Lessor but for the said purchase by Lessee. The parties hereto acknowledge that this provision is intended for the benefit of said named real estate Broker, and may be enforced by them as third party beneficiaries hereto. This provision shall bind successors and assigns of the parties hereto and may not be amended without written consent of said Broker.

The parties agree that this lease was negotiated by the following Broker(s)

4

30.   **NOTICES.** Any notice hereunder shall be sufficient if sent by certified mail, addressed to Lessee at the Premises, and to Lessor where rent is payable.

31.   **SUBORDINATION.** This Lease shall be subordinate and inferior at all times to the lien of any mortgage and to the lien of any deed of trust or other method of financing or refinancing now or hereafter existing against all or a part of the real property upon which the premises are located, and to all renewals, modifications, replacements, consolidations and extensions thereof. Lessee shall execute and deliver all documents requested by any mortgagee or security holder to effect such subordination. In the event of a sale or assignment of this Lease or of Lessor's interest in the Premises or the building in which the Premises are a part, are transferred to any other person because of a mortgage foreclosure, exercise of a power of sale under a mortgage or otherwise, Lessee shall attorn to the purchaser or such mortgagee or other person and recognize the same as Lessor hereunder.

32.   **SUCCESSORS.** The provisions, covenants and conditions of this Lease shall bind and inure to the benefit of the legal representatives, heirs, successors and assigns of each of the parties hereto, except that no assignment or subletting by Lessee without the written consent of Lessor shall vest any rights in the assignee or sublessee of Lessee.

33.   **QUIET POSSESSION.** Lessor agrees, so long as Lessee fully complies with all of the terms, covenants and conditions herein contained on Lessee's part to be kept and performed, Lessee shall and may peaceably and quietly have, hold and enjoy the Premises for the Term aforesaid, it being expressly understood and agreed that the aforesaid covenant of quiet enjoyment shall be binding upon Lessor, its heirs, successors or assigns, but only during such party's ownership of the Premises. Lessor and Lessee further covenant and represent that each has full right, title, power and authority to make, execute and deliver this Lease.

34.   **BANKRUPTCY.** Neither this Lease nor any interest therein nor any estate hereby created shall pass to any trustee or receiver in bankruptcy or to any other receiver or assignee for the benefit of creditors by operation of law or otherwise during the Term or any renewal thereof.

35.   **ENTIRE AGREEMENT.** This Lease contains the entire agreement between the parties, and no modification of this Lease shall be binding upon the parties unless evidenced by an agreement in writing signed by Lessor and Lessee after the date hereof. If there be more than one Lessee named herein, the provisions of this Lease shall be applicable to and binding upon such Lessees, jointly and severally.

36.   **ESTOPPEL CERTIFICATES.** Lessee shall at any time upon not less than ten (10) days' prior written notice from Lessor execute, acknowledge and deliver to Lessor or to any lender of or purchaser from Lessor a statement in writing certifying that this Lease is unmodified and in full force and effect (or if modified stating the nature of such modification) and the date to which the rent and other charges are paid in advance, if any, and acknowledging that there are not, to Lessee's knowledge, any uncured defaults on the part of Lessor or specifying such defaults if any are claimed. Any such statement may be conclusively relied upon by any prospective purchaser or encumbrancer of the Premises or of the business of Lessor.

~~37.   AGENCY DISCLOSURE. See attached addendum.~~   VOID

IN WITNESS WHEREOF, said parties hereunto subscribed their names. Executed in ___TWO SETS OF___ originals.

Lessor                                          Lessee

By: _Krutal Patel_                              By: _Jean Mikenik_
Title: _PRINCIPAL_                              Title: _MANAGING PARTNER_
Date: _1/5/2015_   Time: _9:30 AM_              Date: _JAN 9, 2015_   Time: ____

OFFICIAL SEAL
**STEPHANIE PALMA**
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES JUNE 24, 2018

_Stephen Palma_      JANUARY 9, 2015

5

Original Source Document



Merchant: [redacted]  Bin Sponsor: FNBO

Merchant Advocate: [redacted]  Business Type: Card Not Present

Date: [redacted]  # of Mids  Pricing Method: Bundled 3 Tier

| | Visa/MC/Discover | American Express | | Rewards BP: | [redacted] |
|---|---|---|---|---|---|
| Annual Sales Volume ($) | [redacted] | [redacted] | | Chargebacks %: | 0.01% |
| Annual Transactions (#) | 3,750 | 375 | | Retrievals %: | 0.01% |
| Average Ticket | [redacted] | [redacted] | | | |

| Pricing Summary: | Gross Fees | Contra Fees | Net Revenue | Other Costs | Margin |
|---|---|---|---|---|---|
| Processing Fees: | $ 20,432 | $ 16,714 | $ 3,717 | $ 38 | $ 3,680 |
| Authorizations: | $ 750 | | $ 750 | $ 38 | $ 713 |
| Misc Fees: | $ 1,090 | $ 556 | $ 534 | $ - | $ 534 |
| Total: | $ 22,271 | $ 17,270 | $ 5,001 | $ 75 | $ 4,926 |
| Basis Points | | | 67 | | |
| Rev per Trans | $5.94 | $4.61 | $1.33 | | |

| Approval Level | BPS | Required$ | Shortfall |
|---|---|---|---|
| Sales Manager | 35 | $2,625 | |
| Market Manager | 30 | $2,250 | |
| Senior Director | 25 | $1,875 | |
| Year 1 Commission | $1,450 | | Commission $ are estimates based on current plan; No guarantees based on these assumptions. |
| Year 2 Commission | $245 | | |
| Year 3+ (Per Year) | $147 | | |

| Bundled: | Avg | | Per Item | Discount | Revenue | Contra | Net Rev |
|---|---|---|---|---|---|---|---|
| Rate 1 | 9% | [redacted] | [redacted] | [redacted] | $ 1,391 | $ 986 | $ 405 |
| Rate 1D | 12% | [redacted] | [redacted] | [redacted] | $ 1,854 | $ 144 | $ 1,710 |
| Rate 2 | 9% | [redacted] | [redacted] | [redacted] | $ 1,593 | $ 1,191 | $ 402 |
| Rate 2R | 16% | [redacted] | $0.00 | 2.430% | $ 3,048 | $ 2,412 | $ 636 |
| Rate 3 | 41% | 41% | [redacted] | [redacted] | $ 8,026 | $ 7,534 | $ 492 |
| Rate 3R | 13% | [redacted] | $0.00 | 2.680% | $ 2,720 | $ 2,413 | $ 307 |
| Rate 5 | 65% | [redacted] | [redacted] | [redacted] | $ 1,242 | $ 1,346 | $ (104) |
| Rate 6 | 30% | [redacted] | [redacted] | [redacted] | $ 540 | $ 664 | $ (124) |
| Rate 7 | 1% | 1% | [redacted] | [redacted] | $ 18 | $ 25 | $ (7) |
| V/MC/DS Total | 100% | 100% | | | | | |
| AMEX Total | 100% | 100% | | Subtotal | $ 20,432 | $ 16,714 | $ 3,717 |
| Passthru Assessments? | | [redacted] | | Effective Rate | 2.48% | 2.03% | 0.45% |

**Auth Revenue:**

Auth Ratio: (normal is 1) [redacted]

| | Auth Counts | Auth Rate | Encryption | Tokenization | Total Rate | Revenue | Other Costs | Margin |
|---|---|---|---|---|---|---|---|---|
| | | | No | No | | | | |
| Visa / MC / Disc | 3,750 | $0.200 | $0.000 | $0.000 | $0.200 | $ 750 | $ 38 | $ 713 |
| Amex | | $0.200 | $0.000 | $0.000 | $0.200 | $ - | $ - | $ - |
| PIN Debit | | $0.000 | $0.000 | $0.000 | $0.000 | $ - | $ - | $ - |
| EBT | | $0.000 | $0.000 | $0.000 | $0.000 | $ - | $ - | $ - |
| ACH as Trans | | $0.000 | $0.000 | $0.000 | $0.000 | $ - | $ - | $ - |
| Excessive Auths | - | $1.000 | | | $0.000 | $ - | | |
| | | | | | Total Auth Revenue | $ 750 | $ 38 | $ 713 |

**Miscellaneous Fees:**

| | | | |
|---|---|---|---|
| Set up Fee (One Time Fee) | 1 | $99.00 | $ 99 |
| TSYS WebPass Set up Fee | 1 | $0.00 | $ - |
| TSYS WebPass Monthly Fee | 1 | $10.00 | $ 120 |
| Chargebacks | - | $20.00 | $ - |
| Retrievals | - | $20.00 | $ - |
| Annual Fees | 1 | $0.00 | $ - |
| Internet / Gateway Fees (Monthly) | 1 | $10.00 | $ 120 |
| PCI Compliance Fee  Annual | 1 | $75.00 | $ 75 |
| Service Maintenance Fee | 1 | $5.00 | $ 60 |
| CCAP | 1 | $0.00 | $ - |
| Batch Capture | 240 | $0.00 | $ - |
| Reg & Compliance Fee | 1 | $5.00 | $ 60 |
| [redacted] | | | $ - |
| [redacted] | | | $ - |
| Mastercard Acquirer License Fee | | | $ 16 |
| Visa Fixed Acquirer Network Fee | | | $ 540 |
| Monthly Minimum | | $25.00 | $ - |
| Total Misc Fees: | | | $ 1,090 |

**POS Choice:**

| | | |
|---|---|---|
| Auth Gateway | TSYS Payment Acceptance | |
| Gateway Method | TSYS WebPass | |
| Set up Fee | [redacted] | Suggested: $20.00 |
| Monthly Fee | $10.00 | Suggested: $10.00 |

**Notes:**

[redacted]

Merchant Advocate — [signature] 1-6-2015    Sales Manager — [signature]    Market Manager — [signature] 7/6/15

CONFIDENTIAL
FOR INTERNAL USE ONLY
Original Source Document

Menjivar Att. N

Monday, July 06, 2015

# Attachment O



# HARBORTOUCH®

## MERCHANT TRANSACTION PROCESSING AGREEMENT - MERCHANT APPLICATION

[x] NEW LOCATION [ ] OWNERSHIP CHANGE [ ] ADDITIONAL LOCATION

**748 Moto**

| AGENT NAME | REP CODE | MERCHANT # |
|---|---|---|
| Ronald Osinski | NPS03 | 0471 |
| OFFICE PHONE | OFFICE CODE | ASSOC | SIC CODE | FAIR ISAAC SCORE | ANALYST |
| 716-907-0421 | NYGOW | | | | |

### VISA DISCLOSURE

**MEMBER BANK (ACQUIRER) INFORMATION**
First National Bank of Omaha
1620 Dodge Street
Omaha, NE 68197
800-853-9586

**IMPORTANT MEMBER BANK (ACQUIRER) RESPONSIBILITIES**
1. A Visa Member is the only entity approved to extend acceptance of Visa products directly to a Merchant.
2. A Visa Member must be a principal (signer) to the Merchant Agreement
3. A Visa Member is responsible for educating Merchants on pertinent Visa Operating Regulations with which Merchants much comply.
4. The Visa Member is responsible for and must provide settlement funds to the Merchant.
5. The Visa Member is responsible for all funds held in reserve that are derived from settlement.

**IMPORTANT MERCHANT RESPONSIBILITIES**
1. Ensure compliance with cardholder data security and storage requirements.
2. Maintain fraud and chargebacks below thresholds.
3. Review and understand the terms of the Merchant Agreement.
4. Comply with Visa Operating Regulations.

The responsibilities listed above do not supercede terms of the Merchant Agreement and are provided to ensure the Merchant understands some important obligations of each party and that the Visa Member (Acquirer) is the ultimate authority should the Merchant have any problems.

| MERCHANT NAME: | AUTHORIZED SIGNATURE: |
|---|---|
| Stark Legal | _signature_ |
| ADDRESS: | PRINT NAME: |
| 500 Quail Ridg Rd. | Hirsh Mohindra |

### 1 - MERCHANT INFORMATION

| NAME OF ACCOUNT (DOING BUSINESS AS) | EXACT LEGAL NAME |
|---|---|
| Stark Legal | Stark Legal |
| DBA ADDRESS (IF DIFFERENT FROM LEGAL) | LEGAL ADDRESS |
| | 500 Quail Ridg Rd. |

| CITY | STATE | ZIP | CITY | STATE | ZIP |
|---|---|---|---|---|---|
| | | | Westmount | Il | 60559 |

| CONTACT | TELEPHONE # | FAX # | FEDERAL TAX I.D. NUMBER |
|---|---|---|---|
| Gaurav Mohindra | 630-243-4207 | | 6404 |
| MERCHANT E-MAIL ADDRESS (AGENT E-MAIL ADDRESS CANNOT BE ACCEPTED) | | | WEBSITE ADDRESS |
| gomhindra@gmail.com | | | starklaw-firm.com |

[x] GO GREEN - OPT IN FOR PAPERLESS STATEMENTS (MUST PROVIDE E-MAIL ADDRESS)

TYPE OF OWNERSHIP: [ ] SOLE PROPRIETOR [ ] PARTNERSHIP [ ] CORPORATION [x] LLC [ ] NON-PROFIT [ ] OTHER: _____

### 2 - MERCHANT PROFILE

MERCHANT TYPE: [ ] RETAIL [ ] RESTAURANT [ ] FUEL [ ] LODGING [x] MOTO [ ] E-COMMERCE [ ] SUPERMARKET [x] OTHER

| MERCHANDISE/SERVICE SOLD | YEARS IN BUSINESS | PERCENT OF BUSINESS | |
|---|---|---|---|
| Law Firm | | | |

| LENGTH OF CURRENT OWNERSHIP | # OF LOCATIONS | MONTHLY VOLUME | AVERAGE TICKET AMOUNT | HIGHEST TICKET AMOUNT | CARD SWIPED | 50 % |
|---|---|---|---|---|---|---|
| 2 month | 1 | $ 50,000/100,00 | $ 600/1200 | $ 5000 | MANUAL KEY WITH IMPRINT | 50 % |

HAS MERCHANT OR ANY PRINCIPAL DISCLOSED BELOW FILED BANKRUPTCY OR BEEN SUBJECT TO ANY INVOLUNTARY BANKRUPTCY?
[ ] YES [x] NO    REASON: _____ | CARD NOT PRESENT ____ %

HAS MERCHANT PREVIOUSLY ACCEPTED CREDIT CARDS? [ ] YES [x] NO IF YES, PLEASE PROVIDE COPIES OF MOST RECENT STATEMENT | TOTAL 100%

PROCESSOR:

DOES MERCHANT CONDUCT BUSINESS SEASONALLY? [ ] YES [x] NO

IF SEASONAL, INDICATE OPERATING MONTHS: [ ] JAN [ ] FEB [ ] MAR [ ] APR [ ] MAY [ ] JUN [ ] JUL [ ] AUG [ ] SEP [ ] OCT [ ] NOV [ ] DEC

DOES MERCHANT USE A FULFILLMENT HOUSE? [ ] YES [x] NO

WHEN IS THE CARDHOLDER BILLED FOR PRODUCTS/SERVICES? [x] ON ORDER [ ] SHIPMENT

DELIVERY OF PRODUCTS: [x] TIME OF SALE [ ] 1-3 DAYS [ ] 3-5 DAYS [ ] 5-15 DAYS [ ] 15 DAYS+

DOES THE BUSINESS USE ANY THIRD PARTIES IN THE PAYMENT PROCESS? [ ] YES [x] NO    IF YES, PLEASE LIST:

DETAILED BUSINESS DESCRIPTION:
Law Firm, General Practice, civil and criminal cases

REFUND POLICY: Upon Management aproval only

Each merchant certifies that the average ticket size, highest ticket and sales volume indicated is accurate and acknowledges any variance to this information could result in delayed and/or withheld settlement of funds and/or termination of merchant.

### E-COMMERCE MERCHANTS ONLY

| SERVICE PROVIDER: | DOES YOUR SITE HAVE A SECURE CERTIFICATE? [ ] YES [ ] NO |
|---|---|
| LIST ALL APPLICABLE URLS FOR YOUR WEBSITE: | IF E-COMMERCE, DO YOU USE A FULFILLMENT CENTER? [ ] YES [ ] NO |
| | IF YES, PLEASE LIST CONTACT INFORMATION: |

**HARBORTOUCH**
2202 North Irving Street
Allentown, PA 18109

Tel: 800-201-0461
Fax: 908-730-7437

Merchant Att: ©

APR15    HARBORTOUCH PAYMENTS, LLC IS A REGISTERED ISO/MSP OF FIRST NATIONAL BANK OF OMAHA, 1620 DODGE ST., OMAHA, NE

**Page 1 of 11** OF 2

## 3 - OWNERS OR OFFICERS

| PRINCIPAL #1 | | % OF EQUITY OWNERSHIP | PRINCIPAL #2 | | % OF EQUITY OWNERSHIP |
|---|---|---|---|---|---|
| H rsh Moh ndra | | 100 | | | |

| SOCIAL SECURITY NUMBER | DATE OF BIRTH | TELEPHONE # | SOCIAL SECURITY NUMBER | DATE OF BIRTH | TELEPHONE # |
|---|---|---|---|---|---|
| | | 630- | | | |

| RESIDENCE ADDRESS | RESIDENCE ADDRESS |
|---|---|
| | |

| CITY | STATE | ZIP | CITY | STATE | ZIP |
|---|---|---|---|---|---|
| Ch cago | IL | | | | |

## 4 - REFERENCES

| TRADE REFERENCE | CONTACT | ACCOUNT # | TELEPHONE # |
|---|---|---|---|
| Das Law Group | B bek Das | | 773-859-1270 |
| 1st Cap ta Bank | Sherw n Pat dar | | 847-278-3354 |

## 5 - BANKING INFORMATION   PLEASE INCLUDE A VOIDED CHECK OR BANK LETTER

| NAME OF MERCHANT'S BANK | CONTACT | BANK LOCAL TELEPHONE # |
|---|---|---|
| Bank Of Amer ca | | |

| ROUTING/ABA # | DBA/CHECKING ACCOUNT |
|---|---|
| | 6644 |

In accordance with the terms set out in the Terms and Conditions, transfer funds will be made to/from the account set forth in the enclosed voided check or bank letter.

## 6 - REQUESTED CARD TYPES

ALL CARD TYPES WILL BE APPLIED FOR UNLESS OTHERWISE INSTRUCTED.

- ☒ VISA CREDIT
- ☒ VISA DEBIT
- ☒ MASTERCARD CREDIT
- ☒ MASTERCARD DEBIT
- ☒ DISCOVER* NETWORK CREDIT
- ☒ DISCOVER* NETWORK DEBIT
- ☒ AMERICAN EXPRESS
- ☐ DEBIT
- ☐ EBT

## 7 - MERCHANT ACCOUNT RATES*

☒ OPTION 1 - TIERED PRICING

PRICING FOR VISA/MASTERCARD/DISCOVER:

SELECT ONE: ☐ 1 TIER  RATE 1: _____

☒ 2 TIER (MOTO/E COMMERCE ONLY)  RATE 1: 1 99 + 10  RATE 2: RATE 1 + 1 79 + 10¢

☐ 3 TIER  RATE 1: _____  RATE 2: RATE 1 + 1 39 + 10¢  RATE 3: RATE 1 + 1 79 + 10¢

☐ 4 TIER  RATE 1: _____  RATE 2: _____  RATE 3: RATE 2 + 1 39 + 10¢  RATE 4: RATE 2 + 1 79 + 10¢

PRICING FOR AMERICAN EXPRESS:

SELECT ONE: ☐ TIERED: RATE 1: 2 50 % + 10 ¢  RATE 2: 3 05 % + 10 ¢  RATE 3: 3 35 % + 10 ¢

☒ BUNDLED: 3 60 % + 10 ¢

☐ OPTION 2 - INTERCHANGE PLUS PRICING

PRICING FOR VISA/MASTERCARD/DISCOVER:

☐ NET ☐ GROSS

CREDIT: INTERCHANGE, DUES & ASSESMENTS + _____ % + _____ ¢

DEBIT: INTERCHANGE, DUES & ASSESMENTS + _____ % + _____ ¢

PRICING FOR AMERICAN EXPRESS:

COST PLUS: AMEX COST + _____ % + 10 ¢

Please review Terms and Conditions at www.harbortouch.com/terms for additional information on which interchange programs apply. "AMEX Cost" includes all Interchange/Discount, Dues, Assessments, surcharges, and an AMEX .25% Sponsorship Fee applicable for AMEX transactions. For more information on interchange rates visit www.visa.com, www.mastercard.com or www.americanexpress.com. The following surcharges also apply to American Express transactions when applicable: Card Not Present Fee of 0.30% and Cross Border Transaction Fee of 0.40%. Fees or charges may be added or changed by an amendment to the Terms and Conditions with 30 days notice.

## 8 - TRANSACTION CHARGES

☒ VISA/MASTERCARD/DISCOVER/AMEX: SECTION 7 % + 25 ¢ TRANSACTION FEE  ☒ BATCH: $0 35 EACH  ☒ RETRIEVAL REQUEST: $25 00 EACH

☒ PIN DEBIT (INCLUDES NETWORK PASS THROUGH): _____ % + 36 ¢ TRANSACTION FEE  ☒ VOICE AUTHORIZATION FEE: $1 75 EACH  ☒ NSF FEE: $25 00 EACH

☐ EBT: N/A % + _____ ¢ TRANSACTION FEE  ☒ CHARGEBACK FEE: $30 00 EACH  ☒ DDA CHANGE FEE: $25 00 EACH

All other applicable Card Brand fees will be passed through at the Card Brand's Rate. For more information, please contact Harbortouch Payments, LLC. Fees or charges may be added or changed by an amendment to the Terms and Conditions with 30 days notice.

## 9 - SERVICE CHARGES

SERVICE FEES

☐ ANNUAL FEE $ _____  ☒ MONTHLY SERVICE FEE $ _____  ☑ ONLINE ACCOUNT REPORTING $ FREE

☒ MONTHLY MINIMUM $ 25.00  ☐ DEBIT ACCESS FEE $ _____  ☑ PAPER & SUPPLIES PROGRAM $ FREE

Fees or charges may be added or changed by an amendment to the Terms and Conditions with 30 days notice.

WIRELESS TERMINAL FEES (IF APPLICABLE)

SETUP FEE (PER TERMINAL): $35.00 EACH

MONTHLY FEE (PER TERMINAL): $19.95 EACH

TRANSACTION FEE: $0.05 EACH

## 10 - MANUAL IMPRINTER

☒ YES If yes, the cost is $35.00. Visa/MC/Discover* Network regulations require an imprint for non-swipe transactions.

☐ NO, DO NOT WANT ONE By checking this box and initialing, the merchant acknowledges that an imprint is required for non-swiped transactions.  INITIALS: _____

## 11 - FREE GIFT CARD ENROLLMENT

By choosing this option, I understand that I will be enrolled in a 60 day trial gift card program and will receive 50 free customized gift cards, 50 gift card envelopes, a window decal, an acrylic display stand with insert and two register decals. Merchant will receive an email with a link to customize and order their 50 free cards using the online wizard.

☒ YES! PLEASE ENROLL ME IN HARBORTOUCH'S GIFT CARD PROGRAM AND SEND ME 50 FREE CUSTOM GIFT CARDS

During the 60 Day Trial, merchant will pay no monthly fees or cost for the 50 Free Gift Card Package or the service. After the 60 day trial, merchant will be assessed a monthly gift card service fee of $9.95. A per-item fee of $0.15 will apply for each gift card transaction, inquiry attempt, activation or decline. For multiple locations, the main location will be billed the monthly and transaction fees for all linked accounts.

MERCHANT INITIAL REQUIRED: *GM*

APR15  HARBORTOUCH PAYMENTS, LLC IS A REGISTERED ISO/MSP OF FIRST NATIONAL BANK OF OMAHA, 1620 DODGE ST., OMAHA, NE

## 12 - DISCLAIMER

MERCHANT has indicated which additional optional services it is requesting. Merchant agrees that BANK is not a party to any services or products listed in Section 11 or 12 or any other services or products listed in the Account Setup Form or POS Setup Form and has no liability related to any of the services or products provided thereon. MERCHANT agrees that BANK is not a party to the American Express Opt Blue Program Agreement and has no liability related to any American Express services. MERCHANT must be approved for each company it may send its terms and conditions to the address of MERCHANT indicated herein upon such approval MERCHANT agrees to be bound by such company's terms and conditions. Depending upon MERCHANT's authorization and settlement company mix, MERCHANT may not have a direct agreement with Discover Network and instead will receive Discover Network services through this agreement with Harbortouch. If that is the circumstance, the portions of this disclosure pertaining to Discover Network does not apply. MERCHANT agrees that BANK is not the provider of Discover Network services and shall have no liability or responsibility for Discover Network services.

## 13 - MERCHANT COMPLIANCE

Merchant represents and warrants that as of the date of signing this Agreement and throughout any term of this Agreement that it is Payment Card Industry ("PCI") Data Security Standard ("DSS") compliant and that any hardware or software that Merchant uses during the terms of this Agreement to process electronic transactions is Payment Application ("PA") DSS compliant. Merchant further represents and warrants that its compliant with the requirements of Internal Revenue Code Section 6050W and any other applicable federal or state law as it relates to disclosing and processing of electronic transactions. Harbortouch reserves the right to impose a reasonable fees or withhold payments to Merchant as set forth in the Terms and Conditions as required by law. An $89.95 Fee will be charged to Merchant. The date in which the fee will be charged will be in December of each year, unless 30 days notice is provided for a change in billing date. Additional fees may be added or changed by an amendment to the Terms and Conditions with 30 days notice.

## 14 - FUNDS TRANSFER AUTHORIZATION

BANK is authorized to perform such functions under the Terms and Conditions for the purposes set forth in the Terms and Conditions.

## 15 - SITE SURVEY REPORT (TO BE COMPLETED BY SALES REPRESENTATIVE)

MERCHANT LOCATION: ☐ RETAIL LOCATION WITH STOREFRONT ☒ OFFICE BUILDING ☐ RESIDENCE ☐ OTHER:

WHOM DOES THE MERCHANT LEASE FROM? (NAME & TELEPHONE #): *HEARTLAND COMMERCIAL, Rick Ciesla - 630-734-9460*

SQUARE FOOTAGE: ☐ 0-250 ☐ 251-500 ☐ 501-2000 ☒ 2000+   THE MERCHANT: ☐ OWNS ☒ LEASES THE BUSINESS PREMISES   PHOTOS ATTACHED? ☐ YES ☐ NO

DOES THE AMOUNT OF INVENTORY AND MERCHANDISE ON SHELVES APPEAR TO BE CONSISTENT WITH THE TYPE OF BUSINESS? ☐ YES ☐ NO

FURTHER COMMENTS BY INSPECTOR (MUST BE COMPLETED):

I hereby verify that this application has been fully completed by merchant and that I physically inspected the business premises of the merchant at this address and the information stated above is true and correct to the best of my knowledge and belief. Any misrepresentation may result in losses and/or liabilities.

| X _(signature)_ | Ronald Osinski | NPS03 | 7/8/2015 |
| AGENT SIGNATURE | AGENT NAME (PLEASE PRINT) | SALES REP ID | DATE |

## 16 - PERSONAL GUARANTY (NO TITLES)

This general, absolute, and unconditional continuing GUARANTY ("GUARANTY") by the undersigned (collectively "GUARANTOR" or "my" or "I" or "me"), is for the benefit of First National Bank of Omaha and/or Harbortouch Payments, LLC (each a "Guaranty Party" and collectively "Guaranty Parties"). For value received, and in consideration of the mutual undertakings contained in the Merchant Transaction Processing Agreement and allied agreements ("AGREEMENT") between any Guaranty Party and MERCHANT as set forth before, I absolutely and unconditionally guarantee the full performance of all MERCHANT's obligations to any Guaranty Party, together with all costs, expenses, and attorneys' fees incurred by any Guaranty Party in connection with any actions, inactions, or defaults of MERCHANT. I waive any right to require any Guaranty Party to proceed against other entities or MERCHANT. There are no conditions attached to the enforcement of this GUARANTY. I authorize the Guaranty Parties and their respective agents or assigns to make from time to time any personal credit or other inquiries and agree to promote, at the Guaranty Parties' request, financial statements and/or tax returns. I agree that this GUARANTY shall be governed and construed in accordance with the laws of the state of Nebraska, and that the courts of the state of Nebraska shall have and be vested with personal jurisdiction over me. This is a continuing GUARANTY and shall remain in effect until one hundred eighty (180) days after receipt by The Guaranty Parties of written notice by me terminating my GUARANTY. The termination of the AGREEMENT or GUARANTY shall not release me from liability with respect to any obligations incurred before the effective date of termination. No termination of this GUARANTY shall be affected by any change in my legal status or any change in the relationship between MERCHANT and me. This GUARANTY shall bind and inure to the benefit of the personal representatives, heirs, administrators, successors and assigns of GUARANTOR and Harbortouch.

AGREED AND ACCEPTED

| X _(signature)_ | 7/7/2015 | X | |
| PRINCIPAL #1 FROM APPLICATION — SIGNATURE | DATE | PRINCIPAL #2 FROM APPLICATION — SIGNATURE | DATE |
| Hirsh Mohindra | | | |
| PRINT NAME | | PRINT NAME | |

## 17 - SIGNATURES

By their execution below the undersigned parties agree to abide by the Merchant Transaction Processing Agreement the "AGREEMENT". The AGREEMENT consists of the Merchant Application and the Terms and Conditions (a separate attachment hereto), and MERCHANT acknowledges it has received and read the Terms and Conditions at the time of signing.

MERCHANT warrants that the information provided on the Merchant Application is complete and accurate. MERCHANT authorizes Harbortouch Payments, LLC ("Harbortouch" or "ISO") and/or BANK to provide a copy of this Merchant Application to any third party for the services requested. MERCHANT, and its signing officials ("owners", authorize Harbortouch, and or BANK, or its agents or assigns, to make from time to time, any business and personal credit and other inquiries. Depending on MERCHANT's authorization and settlement company mix, the references to Discover Network in the Agreements may not apply, and MERCHANT may conduct directly with Discover Network for these services.

THIS AGREEMENT (INCLUDING ADDITIONAL FEES) MAY BE AMENDED WITH THIRTY (30) DAYS NOTICE TO MERCHANT.

ACCOUNT CLOSURE FEE: If the AGREEMENT is terminated early during the INITIAL TERM (3 years) or any RENEWAL TERM (2 years) for any reason other than set out in paragraph 5.1, 5.2 A or 5.2 B, MERCHANT agrees to pay Harbortouch an account closure fee ("ACCOUNT CLOSURE FEE") of two hundred fifty dollars ($250) or thirty-five dollars ($35) multiplied by the number of months remaining in the merchant agreement (whichever is greater) per Merchant Identification Number ("MID"). MERCHANT agrees that this fee is not a penalty, but rather a reasonable estimation of the actual damages Harbortouch would suffer if Harbortouch were to fail to receive the processing business for the then current term. MERCHANT agrees that the ACCOUNT CLOSURE FEE shall also be due to Harbortouch if MERCHANT discontinues submitting SALES for processing during the INITIAL TERM or any RENEWAL TERM of the AGREEMENT. Notwithstanding the foregoing, the early termination fee will not exceed the maximum amount set forth by applicable law. Paragraph references and capitalized terms not defined in this paragraph are defined in the Terms and Conditions at http://www.harbortouch.com/terms/. Designated Cancellation Forms must be faxed to Harbortouch.

ALL PARTIES AGREE TO WAIVE ANY RIGHT TO PARTICIPATE IN A CLASS ACTION. SEE SECTION 13.3 OF THE TERMS AND CONDITIONS FOR COMPLETE DETAILS.

In witness whereof the parties hereto have caused this agreement to be executed by their duly authorized representatives effective on the date signed or approved by BANK.

If applicable, MERCHANT agrees by signature below to the TMS American Express Opt Blue Program Agreement. For additional details, please see www.harbortouch.com/amex/service-express.

PRINT LEGAL NAME OF MERCHANT BUSINESS   **Stark Legal**

| X _(signature)_ | 7/7/2015 | X | |
| PRINCIPAL #1 FROM APPLICATION — SIGNATURE | DATE | PRINCIPAL #2 FROM APPLICATION — SIGNATURE | DATE |
| Hirsh Mohindra | | | |
| PRINT NAME | TITLE | PRINT NAME | TITLE |
| X | | X | |
| ACCEPTED BY HARBORTOUCH PAYMENTS, LLC | DATE | ACCEPTED BY FIRST NATIONAL BANK OF OMAHA ("BANK") | DATE |

SPECIAL INSTRUCTIONS (MAY REQUIRE APPROVAL):

**Menjivar Att. O**
**Page 3 of 11**

**STARK LAW**
800 QUAIL RIDGE DR
WESTMONT IL 60560-6164

6050

DATE

PAY TO THE ORDER OF _____ V O I D _____ $

DOLLARS

**Bank of America**
ACH R/T 091908035

FOR



# OFFICE OF THE SECRETARY OF STATE

### JESSE WHITE • Secretary of State

MAY 28, 2015                                                                                           0522228-1

NATIONAL REGISTERED AGENTS INC
208 SO LASALLE ST, SUITE 814
CHICAGO, IL 60604-1101

RE  STARK LEGAL LLC

DEAR SIR OR MADAM:

IT HAS BEEN OUR PLEASURE TO APPROVE AND PLACE ON RECORD THE ARTICLES OF
ORGANIZATION THAT CREATED YOUR LIMITED LIABILITY COMPANY.  WE EXTEND OUR
BEST WISHES FOR SUCCESS IN YOUR NEW VENTURE.

PLEASE NOTE! THE LIMITED LIABILITY COMPANY MUST FILE AN ANNUAL REPORT
PRIOR TO THE FIRST DAY OF THIS ANNIVERSARY MONTH NEXT YEAR. FAILURE TO
TIMELY FILE WILL RESULT IN A $300 PENALTY AND/OR DISSOLUTION/REVOCATION.
A PRE-PRINTED ANNUAL REPORT WILL BE MAILED TO THE REGISTERED AGENT AT
THE ADDRESS ON OUR RECORDS APPROXIMATELY 45 DAYS BEFORE THE DUE DATE.

FOR A LIMITED LIABILITY COMPANY THAT INTENDS TO PROVIDE CERTAIN PRO-
FESSIONAL SERVICES FOR WHICH INDIVIDUALS ARE REQUIRED TO BE LICENSED, A
CERTIFICATE OF REGISTRATION MUST BE OBTAINED FROM THE ILLINOIS DEPART-
MENT OF FINANCIAL AND PROFESSIONAL REGULATION.  IF THE LLC IS SO REGIS-
TERED, THE CURRENT ADDRESS FROM WHICH THE PROFESSIONAL SERVICES ARE PRO-
VIDED MUST ALSO BE ON RECORD WITH THIS OFFICE.

MANY OF OUR SERVICES ARE AVAILABLE AT OUR CONTINUOUSLY UPDATED WEBSITE.
VISIT WWW.CYBERDRIVEILLINOIS.COM TO VIEW THE STATUS OF THIS COMPANY,
PURCHASE A CERTIFICATE OF GOOD STANDING, OR EVEN FILE THE ANNUAL REPORT
REFERRED TO IN THE EARLIER PARAGRAPH.

SINCERELY YOURS,

*Jesse White*

JESSE WHITE
SECRETARY OF STATE
DEPARTMENT OF BUSINESS SERVICES
LIMITED LIABILITY DIVISION
(217) 524-8008

LLC-5.5

7. **(Optional)** Other provisions for the regulation of the internal affairs of the Company: (If more space is needed, attach additional sheets of this size.)

8. The Limited Liability Company: (Check either a or b below.)

   a. ☐ is managed by the **manager(s)** (List names and addresses.)

   b. ☒ has management vested in the **member(s)** (List names and addresses.)

   Gaurav Mohindra
   500 Quail Ridge Drive
   Westmont, IL  60559

9. Name and Address of Organizer(s):

   I affirm, under penalties of perjury, having authority to sign hereto, that these Articles of Organization are to the best of my knowledge and belief, true, correct and complete.

   Dated _____ May 27 _____ 2015 _____
                  Month & Day         Year

   1. *Tia Baugher*
                    Signature
   Tia Baugher, Vice President
                Name (type or print)
   Corp-Link Services, Inc., Organizer
     Name if a Corporation or other Entity, and Title of Signer

   1. 118 W. Edwards, Suite 200
      Number          Street
   Springfield
               City/Town
   IL         62704
      State         ZIP Code

   2. _____
                    Signature
   _____
                Name (type or print)
   _____
     Name if a Corporation or other Entity, and Title of Signer

   2. _____
      Number          Street
   _____
               City/Town
   _____
      State         ZIP Code

**Signatures must be in black ink on an original document. Carbon copy, photocopy or rubber stamp signatures may only be used on conformed copies.**

♻ Printed on recycled paper. Printed by authority of the State of Illinois. March 2011 — 2M — LLC 4.15

**Menjivar Att. O**
**Page 6 of 11**

Form **LLC-5.25**
May 2012

Secretary of State
Department of Business Services
Limited Liability Division
501 S. Second St., Rm. 351
Springfield, IL 62756
217-524-8008
www.cyberdriveillinois.com

Payment may be made by check
payable to Secretary of State. If
check is returned for any reason this
filing will be void.

**Illinois**
Limited Liability Company Act
**Articles of Amendment**

SUBMIT IN DUPLICATE
Type or print clearly.
This space for use by Secretary of State.

Filing Fee: $150

Approved: _kak_

FILE # 05222281
This space for use by Secretary of State.

**FILED**

JUN 0 2 2015

JESSE WHITE
SECRETARY OF STATE

1. Limited Liability Company Name: Stark Legal LLC

2. Articles of Amendment effective on:
   ☑ the file date
   ☐ a later date (not to exceed 30 days after the file date) _____
   Month, Day, Year

3. Articles of organization are amended as follows (check applicable item(s) below):
   ☑ a) Admission of a new member (give name and address below)*
   ☐ b) Admission of a new manager (give name and address below)*
   ☑ c) Withdrawal of a member (give name below)*
   ☐ d) Withdrawal of a manager (give name below)*
   ☐ e) Change in address of the office at which the records required by Section 1-40 of the Act are kept (give new address, a P.O. Box alone or C/O is unacceptable.)
   ☐ f) Change of registered agent and/or registered agent's office (give new name and/or address below, *Address change to P.O. box alone or c/o is unacceptable.*)
   ☐ g) Change in the Limited Liability Company's name (give new name below)
   ☐ h) Change in date of dissolution or other events of dissolution enumerated in Item 6 of the Articles of Organization
   ☐ i) Other (give information in space below)
   ☐ j) Establish authority to issue series (see back filing fee $400)*
   * Changes in members/managers may, but are not required to be reported in an amendment to the Articles of Organization.

Additional information:
a) Sole Member: Hirsh Mohindra, 500 Quail Ridge Dr., Westmont, IL 60559

c) Withdrawing Member: Gaurav Mohindra

New Name of LLC (as changed): _____ The name as changed must contain the words Limited Liability Company, LLC or L.L.C.
(continued)

Printed by authority of the State of Illinois. FEBRUARY 2014 — 1 — LLC 11.15

**Menjivar Att. O**
**Page 7 of 11**

**LLC-5.25**

4. The amendment was approved in accordance with Section 5-25 of the Illinois Limited Liability Company Act, and, if adopted by the managers, was approved by not less than the minimum number of managers necessary to approve the amendment, member action not being required; or, if adopted by the members, was approved by not less than the minimum number of members necessary to approve the amendment.

5. I affirm, under penalties of perjury, having authority to sign hereto, that these Articles of Amendment are to the best of my knowledge and belief, true, correct and complete.

Dated: June 2 , 2015
             Month/Day        Year

*Laura Mahindra*
        Signature (Must comply with Section 5-45 of ILLCA.)

Gaurav Mohindra, Member
        Name and Title (type or print)

If the member or manager signing this document
is a company or other entity, state Name of Company
and whether it is a member or manager of the LLC.

**\* The following paragraph is adopted when Item 3j is checked:**

The operating agreement provides for the establishment of one or more series. When the company has filed a Certificate of Designation for each series, which is to have limited liability pursuant to Section 37-40 of the Illinois Limited Liability Company Act, the debts, liabilities and obligations incurred, contracted for or otherwise existing with respect to a particular series shall be enforceable against the assets of such series only, and not against the assets of the Limited Liability Company generally or any other series thereof, and unless otherwise provided in the operating agreement, none of the debts, liabilities, obligations or expenses incurred, contracted for or otherwise existing with respect to this company generally or any other series thereof shall be enforceable against the assets of such series.

Form **LLC-5.5**
October 2010

**Secretary of State**
Department of Business Services
Limited Liability Division
501 S. Second St., Rm. 351
Springfield, IL 62756
217-524-8008
www.cyberdriveillinois.com

Payment must be made by certified check, cashier's check, Illinois attorney's check, C.P.A.'s check or money order payable to Secretary of State.

Illinois
Limited Liability Company Act

**Articles of Organization**

SUBMIT IN DUPLICATE
Type or print clearly.

This space for use by Secretary of State.

Date:
Filing Fee: $500
Approved: *[initials]*

FILE # 05 22-228-1
This space for use by Secretary of State.

**FILED**

MAY 28 2015

JESSE WHITE
SECRETARY OF STATE

1. Limited Liability Company Name: **Stark Legal LLC**
   The LLC name must contain the words Limited Liability Company, L.L.C. or LLC and cannot contain the terms Corporation, Corp., Incorporated, Inc., Ltd., Co., Limited Partnership or L.P.

2. Address of Principal Place of Business where records of the company will be kept: (P.O. Box alone or c/o is unacceptable.)
   **500 Quail Ridge Drive, Westmont, IL 60559**

3. Articles of Organization effective on: (check one)

   ☒ the filing date
   ☐ a later date (not to exceed 60 days after the filing date): _____
   Month, Day, Year

4. Registered Agent's Name and Registered Office Address:

   Registered Agent: **National Registered Agents, Inc.**
   First Name                Middle Initial               Last Name

   Registered Office: **208 S. La Salle Street, Suite 814**
   (P.O. Box alone or c/o    Number          Street             Suite #
   is unacceptable.)

   **Chicago**                      **IL**                    **60604**
   City                                                        ZIP Code

5. Purpose(s) for which the Limited Liability Company is organized:
   **The transaction of any or all lawful business for which Limited Liability Companies may be organized under this Act.**
   (LLCs organized to provide professional services must list the address(es) from which those services will be rendered if different from item 2. If more space is needed, use additional sheets of this size.)

6. Latest date, if any, upon which the company is to dissolve: _____
   (Leave blank if duration is perpetual.)                              Month, Day, Year

♻ Printed on recycled paper. Printed by authority of the State of Illinois. March 2011 — 2M — LLC 4.15   **Menjivar Att. O**
**Page 9 of 11**



**IRS** DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
CINCINNATI OH    45999-0023

Date of this notice:  06-02-2015

Employer Identification Number:
████6404

Form:  SS-4

Number of this notice:  CP 575 G

STARK LEGAL LLC
GAURAV MOHINDRA SOLE MBR
500 QUAIL RIDGE DR
WESTMONT, IL  60559

For assistance you may call us at:
1-800-829-4933

IF YOU WRITE, ATTACH THE
STUB AT THE END OF THIS NOTICE.

WE ASSIGNED YOU AN EMPLOYER IDENTIFICATION NUMBER

Thank you for applying for an Employer Identification Number (EIN).  We assigned you
EIN ████6404.  This EIN will identify you, your business accounts, tax returns, and
documents, even if you have no employees.  Please keep this notice in your permanent
records.

When filing tax documents, payments, and related correspondence, it is very important
that you use your EIN and complete name and address exactly as shown above.  Any variation
may cause a delay in processing, result in incorrect information in your account, or even
cause you to be assigned more than one EIN.  If the information is not correct as shown
above, please make the correction using the attached tear off stub and return it to us.

A limited liability company (LLC) may file Form 8832, *Entity Classification Election*,
and elect to be classified as an association taxable as a corporation.  If the LLC is
eligible to be treated as a corporation that meets certain tests and it will be electing S
corporation status, it must timely file Form 2553, *Election by a Small Business
Corporation*.  The LLC will be treated as a corporation as of the effective date of the S
corporation election and does not need to file Form 8832.

To obtain tax forms and publications, including those referenced in this notice,
visit our Web site at www.irs.gov.  If you do not have access to the Internet, call
1-800-829-3676 (TTY/TDD 1-800-829-4059) or visit your local IRS office.

**IMPORTANT REMINDERS:**

*   Keep a copy of this notice in your permanent records.  **This notice is issued only
    one time and the IRS will not be able to generate a duplicate copy for you.**  You
    may give a copy of this document to anyone asking for proof of your EIN.

*   Use this EIN and your name exactly as they appear at the top of this notice on all
    your federal tax forms.

*   Refer to this EIN on your tax-related correspondence and documents.

If you have questions about your EIN, you can call us at the phone number or write to
us at the address shown at the top of this notice.  If you write, please tear off the stub
at the bottom of this notice and send it along with your letter.  If you do not need to
write us, do not complete and return the stub.

Your name control associated with this EIN is STAR.  You will need to provide this
information, along with your EIN, if you file your returns electronically.

Thank you for your cooperation.

**Menjivar Att. O**
**Page 10 of 11**

(IRS USE ONLY)     575G                06-02-2015  STAR  O  9999999999  SS-4

Keep this part for your records.          CP 575 G (Rev. 7-2007)

--------------------------------------------------------------------------------

Return this part with any correspondence
so we may identify your account.  Please                      CP 575 G
correct any errors in your name or address.
                                                             9999999999

Your Telephone Number  Best Time to Call   DATE OF THIS NOTICE:  06-02-2015
(     )      -                             EMPLOYER IDENTIFICATION NUMBER: ███6404
_____   _____    FORM:  SS-4           NOBOD


INTERNAL REVENUE SERVICE                   STARK LEGAL LLC
CINCINNATI  OH   45999-0023                GAURAV MOHINDRA SOLE MBR
և֊ոեֆրֆեֆեեֆոֆեֆեերֆեֆ                      500 QUAIL RIDGE DR
                                           WESTMONT, IL  60559

**Menjivar Att. O**
**Page 11 of 11**

# Attachment P

**Form# 037**

# MERCHANT PROCESSING APPLICATION

WELLS FARGO

Merchant #      File # 1516672      Loc. 1 of 1

## TELL US ABOUT YOUR BUSINESS/OWNER'S INFORMATION

Your DBA/Outlet Name: **Stark Law**      Federal Tax ID number: *Redacted*

Your IRS Legal Filing Name: **Stark Law LLC**

| | Suite # | City: | | State: | Zip Code: |
|---|---|---|---|---|---|
| DBA Address (No P.O. Box): **500 Quail Ridge Dr** | | **Westmont** | | **IL** | **60559** |

| Head Office Name: | Contact Name: | Contact Phone: |
|---|---|---|
| **Stark Law LLC** | **Gaurav Mohindra** | **(630) 243-4207** |

| | Suite # | City: | | State: | Zip Code: |
|---|---|---|---|---|---|
| Head Office Address: **500 Quail Ridge Dr** | | **Westmont** | | **IL** | **60559** |

| Owner/Partner/Officer Name: | Title: | % of Ownership: | Phone Number: | Tax ID: | DOB: |
|---|---|---|---|---|---|
| **Gaurav Mohindra** | **OWNER** | **100** | *Redacted* | *Redacted* | *Redacted* |

| Home Address: | City: | State: | Zip Code: | US Citizen/Resident: |
|---|---|---|---|---|
| *Redacted* | *Redacted* | *R* | *Redacted* | [X] Yes [ ] No |

| Owner/Partner/Officer Name: | Title: | % of Ownership: | Phone Number: | Tax ID: | DOB: |
|---|---|---|---|---|---|
| | | 0 - | | -- | |

| Home Address: | City: | State: | Zip Code: | US Citizen/Resident: |
|---|---|---|---|---|
| | | | | [ ] Yes [ ] No |

| Owner/Partner/Officer Name: | Title: | % of Ownership: | Phone Number: | Tax ID: | DOB: |
|---|---|---|---|---|---|
| | | 0 - | | -- | |

| Home Address: | City: | State: | Zip Code: | US Citizen/Resident: |
|---|---|---|---|---|
| | | | | [ ] Yes [ ] No |

| Owner/Partner/Officer Name: | Title: | % of Ownership: | Phone Number: | Tax ID: | DOB: |
|---|---|---|---|---|---|
| | | 0 - | | -- | |

| Home Address: | City: | State: | Zip Code: | US Citizen/Resident: |
|---|---|---|---|---|
| | | | | [ ] Yes [ ] No |

| Owner/Partner/Officer Name: | Title: | % of Ownership: | Phone Number: | Tax ID: | DOB: |
|---|---|---|---|---|---|
| | | 0 - | | -- | |

| Home Address: | City: | State: | Zip Code: | US Citizen/Resident: |
|---|---|---|---|---|
| | | | | [ ] Yes [ ] No |

Business Type: [ ] Sole Proprietorship   [ ] Partnership   [ ] Not for Profit   [ ] Publicly Traded   [ ] Private Corp.   [ ] Government   [X] LLC

Mnth/Yr. Started: **02/01/2015**   #. of Employees: **15**   State Incorp: **IL**

Mag Swipe **0%** + Keyed Manually **100% = 100%**    POS Cardswipe/Imprint **0%** + Mail Order **0%** + Phone Order **0 %** + Internet **100%** + Tradeshows **0%** + Rec.Trans **0 % = 100%**

Total Cash and Credit Sales: **$2,500,000**

Business to Business: **25%**    Total Annual MC/Visa Volume: **$600,000**

Business to Consumer: **75%**    Total Annual Discover Volume: **$18,000**

Average Ticket/Sales: **$150.00**    Total Annual Amex Volume: **$90,000**

Maximum Ticket Amount: **$1,500.00**    Total Relationship Annual Card Volume: **$708,000**

Product/Services You Sell: **Law Firm**

Do customers pay before receiving Products/Services? [ ] Yes [X] No

# of days between when card is charged and the Products/Services received:   0-7 days

Business Checking Account Number: *Redacted*    Transit Routing Number/ABA:   **071000505**

For Non Wells Fargo Accounts: Bank of America, National Association

Attach a Copy of Funding Check on Separate Page or Provide Blank Letterhead / Logo with Typed ABA/DDA/TIN/IRS Legal Filing Name **Signed by a Bank Officer**

**Menjivar Att. P**
**Page 1 of 4**

**Entitlement Option:**

AVS, Business Track, American Express

Have you previously had an American Express SE Number ?  ☐ Yes  ☒ No   American Express SE #

Does your business/organization participate in internet gambling or wagering ?  ☐ Yes  ☒ No

## Legal Disclosures

### Important Information about Procedures for Opening a New Account

To help the government fight the funding of terrorism and money laundering activities, U.S. Federal law requires financial institutions to obtain, verify, and record information that identifies each person (individuals and businesses) who opens an account. What this means for you: When you open an account, we will ask for your name, address, date of birth and other information that will allow us to identify you. We may also ask for your driver's license or other identifying documents.

**Important Notice:** You agree, in order for us to service the Account or to collect any amounts you owe, we may from time to time make calls and/or send text messages to you at any telephone number(s) associated with your Account, including wireless telephone numbers that could result in charges to you. The manner in which these calls or text messages are made to you may include, but is not limited to, the use of prerecorded/artificial voice messages and/or an automatic telephone dialing system. You further agree that, in order for us to service the Account or to collect any amounts you owe, we may send electronic communications, including e-mails to you at any e-mail address you provide to us.

The signer(s) to this Merchant Processing Application (the "Application") hereby warrants and represents that it is authorized to sign this Application and provide the authorizations and consents set forth herein, and that the statements made in this Application are true and complete, including disclosure of all principals with twenty-five percent or more ownership in the Applicant. Each such signer(s) on behalf of him or herself and on behalf of the entity listed on this Application ("Applicant") authorizes Wells Fargo Bank, N.A. and Wells Fargo Merchant Services, L.L.C. (collectively, "Wells Fargo") and/or its agent(s) to investigate the individual and business history of Applicant and each representative signing the Application, including obtaining consumer and/or business credit reports, in order to evaluate Applicant's acceptability into the merchant program and providing such credit information to others as needed for such purpose. If the Application is approved, Applicant also authorizes Wells Fargo to obtain subsequent consumer and/or business credit reports in connection with the maintenance, updating, renewal or extension of the Agreement. Applicant agrees to immediately notify Wells Fargo of any material changes in information provided in or in connection with this Application. Applicant and each signer to this Application agree that all business references contacted in connection with this Application, including financial institutions, may release any and all credit and financial information to Wells Fargo, and such information and any other information provided by Applicant or in connection with this Application, may be shared with Wells Fargo's affiliates. Applicant acknowledges having received and reviewed a copy of the Wells Fargo Privacy Policy, which includes a form for Applicant to communicate its privacy and solicitation preferences to Wells Fargo. Any unilateral alteration or modification made by Applicant or its representatives to the text of this Application shall be of no legal effect and at Wells Fargo's discretion may render this Application invalid. Applicant acknowledges that acceptance into Wells Fargo's merchant program is subject to final evaluation and approval by Wells Fargo in its sole discretion.

Applicant acknowledges having received and reviewed a copy of the attached Program Guide, the provisions of which are incorporated herein by reference. Applicant understands and acknowledges that upon the expiration of three (3) calendar days from the date set forth below or after Applicant submits to Wells Fargo Merchant Services, L.L.C. and Wells Fargo Bank, N.A. (collectively "Wells Fargo") its first deposit for settlement, whichever comes first, (the "Rescission Period") Applicant will be bound by all provisions set forth in the Program Guide as it may be amended from time to time, unless Applicant notifies Wells Fargo in writing otherwise within the Rescission Period. Applicant further acknowledges and understands that it has an obligation to promptly contact Wells Fargo regarding any questions pertaining to any provision of the Program Guide, and that after the Rescission Period, it will be subject to any applicable early termination fees. Applicant further agrees that Applicant will not accept more than 30% of its card transactions via mail, telephone or Internet order.

**Menjivar Att. P
Page 2 of 4**

However, if your Application is approved based upon contrary information stated in the "Tell Us About Your Business" section above, you are authorized to accept transactions in accordance with the percentages indicated in that section. If the Application is approved, each of the undersigned also authorizes us to obtain subsequent consumer reports in connection with the maintenance, updating, renewal or extension of the Agreement. Each of the undersigned furthermore agrees that all references, including banks and consumer reporting agencies, may release any and all personal and business credit and financial information to us. If the application is not approved for a merchant processing account with Wells Fargo, you acknowledge that you are withdrawing your Application for an Equipment Lease. If you elect to lease equipment, you must sign a separate Equipment Lease Agreement between you and First Data Merchant Services Corporation.

By signing electronically, Applicant and each individual signing this Merchant Processing Application and Agreement consent to the use of electronic signatures and records in connection with this Application and Agreement, the Personal Guaranty, and all related communications and agreements.

To the extent you request merchant processing services for additional locations beyond those referenced in your application, the terms of your Merchant Processing Agreement shall apply with equal force and effect to such additional locations which are included within the definition of "Merchant".

Failure to provide an accurate Federal Tax Identification Number may result in a withholding of merchant funding per IRS regulations (See section 25.11 of your Program Guide for further information.)

By acknowledging this Application and the Agreement, you, Applicant, are expressly agreeing that Wells Fargo may share all of your personally identifiable information (for example, postal and email addresses, tax identification numbers, names and social security numbers of the authorized signer on this Application, account information, etc.), as well as your American Express transaction information (for example, all information required by American Express evidencing charges or credits, including information obtained at the point of sale, information obtained or generated during authorization and settlement, and any chargeback or other fee information related to an American Express payment card transaction), with American Express. American Express may use and share this information to perform its responsibilities in connection with the American Express payment card acceptance services that you receive under this Application and the Agreement. American Express may also use and share this information to promote the American Express Network, to perform analytics and create reports, and for any other lawful business purpose including to call you or send you communications or materials via direct mail, email, SMS, text or facsimile regarding American Express products, services and resources available to you. You consent and agree to receive autodialed, automated and/or prerecorded calls and communications (which may include SMS or text messages) at the telephone number(s) you have provided. If you provide a fax number, you consent and agree to receiving fax communications from American Express. In connection with the foregoing, you understand that the calls made or communications sent to you by American Express may be subject to charges or fees by your telecommunications or other applicable service provider that are your responsibility to pay. You understand that your consent under this paragraph is not a condition of purchasing or receiving any product or service or entering into this Agreement. If you do not wish to receive marketing or other communications from American Express, or if you wish to discontinue accepting American Express payment cards, you must contact Wells Fargo at 1-800-451-5817 to disable your American Express acceptance services, and you will no longer be permitted to accept American Express payment cards under this Application or the Agreement.

**Menjivar Att. P**
**Page 3 of 4**



**The Personal Guaranty section only applies if signed below.**

<u>Personal Guaranty - Signature Required</u>

Each signer below ("You" or "Your") agrees as follows. You, in Your individual capacity (even though You use a title or other designation with Your signature) jointly, severally and unconditionally guarantee and promise to pay to Wells Fargo all indebtedness of the Applicant at any time arising under or relating to the Agreement, including the related application and any related agreements or instruments as well as any extensions, modifications, or renewals thereof. You authorize Wells Fargo and/or its agent(s) to investigate the individual business history of Applicant and each representative signing the Agreement, including Yourself, including investigative credit reports, in order to evaluate acceptability in to the Wells Fargo Merchant Services Merchant Program and if accepted, to conduct further investigations from time to time thereafter and to report credit information to others.

As guarantor, You waive (i) presentment, demand, protest, notice of protest, and notice of nonpayment; (ii) any defense arising by reason of any defense of the Applicant or other guarantor; and (iii) the right to require Wells Fargo to proceed against Applicant or any other guarantor, to pursue any remedy in connection with the guaranteed indebtedness, or to notify You as guarantor of any additional indebtedness incurred by the Applicant, or of any changes in the Applicant's financial condition. You also authorize Wells Fargo, without notice or consent, to (a) extend, modify, compromise, accelerate, renew, or other wise change the terms of the guaranteed indebtedness; (b ) proceed against one or more guarantors without proceeding against the Applicant or another guarantor; (c) release or substitute any part to the indebtedness or this guaranty; and (d) any other defense of surety or guarantor.

You represent and warrant to Wells Fargo that: (a) Wells Fargo has made no representation to You as to the creditworthiness of the Applicant; and (b) You have established adequate means of obtaining from the Applicant on a continuing basis financial and other information pertaining to Applicant's financial condition. You agree to keep adequately informed from such means of any facts, events or circumstances which might in any way affect Your risks hereunder, and You further agree that Wells Fargo shall have no obligation to disclose to You any information or material about the Applicant which is acquired by Wells Fargo in any manner.

You acknowledge and agree that until all obligations subject to this guaranty shall have been paid in full, You shall have no right of subrogation, and You waive any right to enforce any remedy which Wells Fargo now has or may hereafter have against the Applicant or any other person, and waives any benefit of, or any right to participate in, any security now or hereafter held by Wells Fargo. You agree that this guaranty will be governed by California law; and shall benefit Wells Fargo and its successors and assigns.

IRS Legal Filing Name: **Stark Law LLC** _____

Principal Name: **Gaurav Mohindra** _____

Signature: ████████ *Redacted* ████████ , an individual

Date: _4/27/2015_

Principal Name: _____

Signature: _____ , an individual

Date: _____

Principal Name: _____

Signature: _____ , an individual

Date: _____

Principal Name: _____

Signature: _____ , an individual

Date: _____

**Menjivar Att. P**
**Page 4 of 4**

Stark Law, LLC/PB 61996/5/FD-00004

# Attachment Q


**global**payments

Type of Account (Check one)
- [ ] Direct Account
- [ ] Agent Bank Account
- [ ] Bank Referral, new relationship

Name of Bank: _____

Control Number

Branch: _____

# Merchant Application

## Business Information

| | |
|---|---|
| Merchant's DBA Name/Outlet Name:<br>CHM | Merchant's Business Legal Name:<br>Charles Hunter Miller & Associates Inc. |
| Physical Street Address (No P.O. Box):<br>215 Remington Blvd Suite E | Legal Address:<br>2224 Touhy St. Suite IE |
| City, State, Zip:<br>Bolingbrook, IL 60440- | City, State, Zip:<br>Chicago, 60811- |
| DBA Phone:  Fax:<br>(877) 814-5466  ext.  ( )  - | Corp. Phone:  Fax:<br>(877) 801-6141  ext.  (630) 226-4654 |
| Contact Name at this Address:<br>Preetesh Patel | Contact Name at this Address:<br>Hirsh Mohindra |
| Email:<br>preetesh@charleshuntermiller.com | Email:<br>Hirsh@charleshuntermiller.com |
| Customer Service Phone # (Required for MOTO and Internet merchants only):<br>(855) 561-4944 | Website Address (Required for Internet merchants):<br>www.charleshuntermiller.com |

## Merchant Profile / Visa/MasterCard/Discover Information

Type of Ownership: [ ] Sole Proprietor  [ ] Partnership  [X] Corporation  [ ] LLC

[ ] Professional Assoc.  [ ] Tax Exempt Org (501C)  [ ] Other _____

Type of Goods or Services Sold:  SIC Code: _____
COLLECTION SERVICES

Years in business under current ownership:  Federal Tax ID #
1 MONTH  8 5 5 9

Do you currently accept Visa/ MasterCard/ Discover?  [X] YES  [ ] NO

Does merchant accept transactions before the customer receives product or service? [ ] YES  [X] NO

How long does customer wait before product is received? _____  % of sales in this category? _____

% of cost that is prepayment? _____  Duration of extended service or benefit (in weeks): _____

Does merchant offer warranties, dues, subscriptions, memberships or other extended services?  [ ] YES  [ ] NO

Annual Visa/MC/Discover Sales: $1M  Average Ticket: $150  Total Visa/MC/Discover Sales (multiple locations only): $_____

**Market Type:**
- [ ] Retail
- [ ] Restaurant
- [ ] Lodging
- [X] MO/TO
- [ ] P-card
- [ ] E-commerce
- [ ] Supermarket
- [ ] Emerging Market
- [ ] Public Sector
- [ ] Auto Rental
- [ ] Cash Advance
- [ ] Other:

| Sales Profile (Must Equal 100%) | |
|---|---|
| Card Swiped | % |
| Manually Keyed with Imprint | % |
| Mail Order/ Telephone/Internet | 100% |
| **Total =** | **100%** |

## Member Bank (Acquirer) Information

HSBC Bank USA, National Association

Merchant Support Group  P. O. Box 3283

Buffalo, New York 14240

716-841-6360

| Important Member Bank (Acquirer) Responsibilities | Important Merchant Responsibilities |
|---|---|
| 1. A Visa Member is the only entity approved to extend acceptance of Visa products directly to a merchant.<br>2. A Visa Member must be a principal (signer) to the Merchant Agreement.<br>3. The Visa Member is responsible for and must provide settlement funds to the merchant.<br>4. The Visa Member is responsible for all funds held in reserve that are derived from settlement.<br>5. The Visa Member is responsible for educating merchants on pertinent Visa International Operating Regulations with which merchants must comply. | 1. Ensure compliance with cardholder data security and storage requirements.<br>2. Maintain fraud and chargebacks below thresholds.<br>3. Review and understand the terms of the Merchant Agreement.<br>4. Comply with Visa International Operating Regulations.<br><br>The responsibilities listed above do not supersede terms of the Merchant Agreement and are provided to ensure the Merchant understands some important obligations of each party and that the Visa member (acquirer) is the ultimate authority should the merchant have any problems. |

Merchant's Signature: X _____  Date 4/25/12

Merchant's Printed Name & Title _____

For questions regarding Card Services, contact:  Global Payments, attn: Customer Service, 10705 Red Run Blvd., Owings Mills, MD 21117
or call: 1-800-367-2638

Note:  Billing disputes must be forwarded, in writing, to Customer Service within 60 days of the date of the statement and/or notice.

Merchant Initials: _____  Rev 12/11 - GP

**Menjivar Att. Q**
**Page 1 of 6**

## Credit/Debit Card Services and Fee Schedule*

| Plan Type | New | Existing | Existing Merchant No. | Discount Rate | Per Item | Additional Auth. Fees |
|---|---|---|---|---|---|---|
| VISA Credit | ☐ | N/A | N/A | 2.25 % | $ | $0.15 |
| VISA Bus. Card | ☐ | N/A | N/A | 2.25 % | $ | $0.15 |
| VISA Check | ☐ | N/A | N/A | 2.25 % | $ | $0.15 |
| MasterCard Credit | ☐ | N/A | N/A | 2.25 % | $ | $0.15 |
| MasterCard Bus. Card | ☐ | N/A | N/A | 2.25 % | $ | $0.15 |
| Debit MasterCard | ☐ | N/A | N/A | 2.25 % | $ | $0.15 |
| Discover Credit | ☐ | ☐ | | 2.25 % | $ | $0.15 |
| Discover Bus. Card | ☐ | ☐ | | 2.25 % | $ | $0.15 |
| Discover Check | ☐ | ☐ | | 2.25 % | $ | $0.15 |
| American Express | ☐ | ☐ | | % | $ | $ |
| Diners Club | ☐ | ☐ | | % | $ | $ |
| JCB | ☐ | ☐ | | % | $0.35 | $ |
| ☒ Debit (other than Visa or MC) | ☐ | ☐ | | % | $ | $ |
| EBT | ☐ | ☐ | | | | |

Merchant FNS#_____   Cash Benefits: ☐ YES ☐ NO   Daily Discount: ☐ YES ☐ NO

Surcharges: 1.71%+$.05 Non-Qualified Retail/Restaurant  1.71%+$.05 Non-Qualified Supermarket  1.86%+$.05 Non-Qualified Developing Market
1.33%+$.05 Non-Qualified Direct Market  1.76%+$.05 Non-Qualified Purchase Card  1.71%+$.05 Non-Qualified Lodging/Auto Rental
1.22%+$.05 Non-Qualified TouchTone Capture  0.39%+$.05 Qualified Visa/MC/Discover Rewards Card (Retail & Mail/Telephone Order)
Other ____
***The typical debit surcharge is 1.95% +$.05, however for certain market types debit surcharge could be up to 1.83% + $1.95.***
**The foregoing discount rate, per item and authorization fees are based upon Merchant's complying with all processing requirements as established by the applicable governing authority of the payment type for the most favorable interchange rates available for such payment type. Transactions that do not qualify for the most favorable interchange rates will be subject to surcharges up to the foregoing amounts in addition to the rate quoted. See the Card Services Terms and Conditions for more information regarding non-qualifying surcharges. In addition to the per item fee, all Debit transactions include fees assessed by the applicable network organization.

Other Fees:

| | | | |
|---|---|---|---|
| $95 | Non-Refundable Application Fee (one-time fixed fee) | $30.00 | Replacement Shipping Fee (per occurrence) |
| $ | AMEX Application Fee | $ | POS Equipment Warranty Fee - Per Piece/Set (monthly) |
| $ | Additional Location Fee | $ | Non-Global Check Authorization Fee (per occurrence) |
| $ | Virtual Site Survey Fee | $ | Touchtone Capture Set-up Fee (one-time fixed fee) |
| $ | Annual Membership Fee | $ | Global Access @dvantage Set-up Fee |
| $10 | Monthly Statement Fee | $ | Global Access @dvantage Monthly Fee |
| $ | Minimum Monthly Discount | $ | Wireless Services Fee (monthly) |
| $ | Training Fee - On-Site (one-time fixed fee) | $ | Wireless Activation Fee (one-time fixed fee) |
| $25.00 | Chargeback Fees (per occurrence) | $ | Wireless Transaction Fee (per occurrence) |
| $10.00 | Retrieval Fee (per occurrence) | $ | Installation/Programming Fee (one-time fixed fee) |
| $25.00 | Non-Sufficient Funds (per occurrence) | $ | Reprogramming Fee (one-time fixed fee) |
| $ | Help Desk Fee (monthly) | $95.00 | Annual Service Fee |
| $ | EDC AVS Fee (per occurrence) | $1.50 | Voice AVS Fee (per occurrence) |
| $0.85 | Voice Authorization Fee (per occurrence) | $0.05 | Internet Per Item Fee (per occurrence) |
| $10 | Internet Access Fee (monthly) | $199 | Internet Setup Fee (one-time fixed fee) |
| $0.20 | Batch/ACH Fee (per occurrence) | $ | Minimum Monthly Debit |
| $15.00 | Monthly PCI/DSS Compliance Fee | $0.90 | Monthly Regulatory Compliance Fee |

ACH Processing Services: See Schedule on page 5.

## Acceptance of Merchant Application and Terms & Conditions / Merchant Authorization

Your Card Services Agreement is between Global Payments Direct, Inc. ("Global Direct"), Global Payments Check Services, Inc. ("Global Check"), the Merchant named above, and the Member named below ("Member"), as applicable based upon the services provided. Member is a member of Visa, USA, Inc. ("Visa") and MasterCard International, Inc. ("MasterCard"); Global Direct is a registered independent sales organization of Visa, a member service provider of MasterCard and a registered acquirer for Discover Financial Services, LLC. ("Discover"). A copy of the Card Services Terms and Conditions, revision number 12/11-GP, has been provided to you. Please sign below to signify that you have received a copy of the Card Services Terms and Conditions and that you agree to all terms and conditions contained therein. If this Merchant Application is accepted for card services, Merchant agrees to comply with the Merchant Application and the Card Services Terms & Conditions as may be modified or amended in the future. If you disagree with any Card Services Terms & Conditions, do not accept service.
IF MERCHANT SUBMITS A TRANSACTION TO GLOBAL DIRECT HEREUNDER, MERCHANT WILL BE DEEMED TO HAVE ACCEPTED THE CARD SERVICES TERMS & CONDITIONS.
By your signature below on behalf of Merchant, you certify that all information provided in this Merchant Application is true and accurate and you authorize Global Direct, Global Check (as applicable) and Global Direct on Member's behalf, to: (a) initiate debit entries to Merchant's checking account(s) in accordance with the Card Services Terms and Conditions, and (b) initiate debit entries to Merchant's checking account(s) for the application fees described herein prior to Global Direct's and Member's acceptance and execution of this Merchant Application, which application fees shall be retained by Global Direct and Member whether or not the Merchant Application is accepted and executed by Global Direct and Member, (c) provide ACH Transaction processing services to Merchant, and (d) order a consumer credit report on you. Merchant and each of Merchant's officers, partners, and/or owners, as well as subsequent consumer credit reports, which may be required or used in conjunction with the maintenance, updating, renewal or extension of the services provided hereunder, or in conjunction with reviewing, taking collection action on, or other legitimate purposes associated with the Merchant account. You further agree that all business references, including banks, may release any and all credit and financial information to Global Payments Check Services, Inc.

Merchant's Signature: X _____  Name (printed): HIRSH WDHNARA  Title: OWNER  Date: 4/25/2012

Merchant's Signature: X _____  Name (printed): _____  Title: _____  Date: _____

Signing for Global Payments Direct, Inc.: X _____  Name (printed): _____  Title: _____  Date: _____

Signing for Global Payments Check Services, Inc.: X _____  Name (printed): _____  Title: _____  Date: _____

Signing for Member: X _____  Name of Member (printed): HSBC Bank USA, NA  Merchant Initials: _____

2

Rev. 12/11 - GP

## Personal Guaranty

I/We hereby guarantee to Global Direct and Member, their successors and assigns, the full, prompt, and complete performance of Merchant and all of Merchant's obligations under the Card Services Agreement, including but not limited to all monetary obligations arising out of Merchant's performance or non-performance under the Card Services Agreement, whether arising before or after termination of the Card Services Agreement. This guaranty shall not be discharged or otherwise affected by any waiver, indulgence, compromise, settlement, extension of credit, or variation of terms of this guaranty, notice of Agreement made by or agreed to by Global Direct, Member, and/or Merchant. I/We hereby waive any notice of acceptance of this guaranty, notice of nonpayment or nonperformance of any provision of the Card Services Agreement by Merchant, and all other notices or demands regarding the Card Services Agreement. I/We agree to promptly provide to Global Direct and Member any information requested by any of them from time to time concerning my/our financial condition(s), business history, business relationships, and employment information. I/We agree that Global Direct, Global Check and Global Direct (on behalf of Member) may order a consumer credit report on me, Merchant and each of Merchant's officers, partners, and/or owners, as well as subsequent consumer credit reports, which may be required or used in conjunction with the maintenance, updating, renewal or extension of the services provided hereunder, or in conjunction with reviewing, taking collection action on, or other legitimate purposes associated with the Merchant account. I/We have read, understand, and agree to be bound by the Card Services Terms & Conditions provided to Merchant and those terms and conditions contained in this Merchant Application.

| Signature of Guarantor (please sign below) | Name (printed): |
|---|---|
| X _____ , an individual | Hirsh Mohindra |
| Signature of Guarantor (please sign below) | Name (printed): |
| X _____ , an individual | _____ |

## Owner/Officer Information (Please complete for every person who ultimately owns or controls the operation or on whose behalf the transactions authorized under this agreement will be conducted.)

| Name: Hirsh Mohindra | Title: Owner | Date of Birth (mm/dd/yyyy): | Social Security #: | Home Phone #: (630) |
|---|---|---|---|---|
| Home Address: | | City: Burr Ridge | State: IL | Zip Code: | Years There: | Own/ Rent? Own |
| Former Address (if less than 1 year at current address): | | City: | State: | Zip Code: | Years There: | Own/ Rent? |

| Name: | Title: | Date of Birth (mm/dd/yyyy): | Social Security #: | Home Phone #: ( ) - |
|---|---|---|---|---|
| Home Address: | | City: | State: | Zip Code: | Years There: | Own/ Rent? |
| Former Address (if less than 1 year at current address): | | City: | State: | Zip Code: | Years There: | Own/ Rent? |

Is an owner, officer, director, employee, or agent a current or former official in the executive, legislative, administrative, military, or judicial branch of any government (elected or not); an official of a political party; an executive of a government-owned commercial enterprise; a family member of any of the foregoing officials; or a close personal or professional associate of any of the foregoing officials? ☐ Yes ☒ No  If "yes," please attach details.

## Bank Information (Attach Voided Check or Bank Letter)

| | Routing Number | DDA/Checking Account # | Deposit | Discount | Chargebacks | Equipment | Supplies | Misc. Fees |
|---|---|---|---|---|---|---|---|---|
| Bank 1 | | 8985 | ☒ | ☒ | ☒ | ☐ | ☐ | ☒ |
| Bank 2 | | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

## Merchant Site Survey Report (To be Completed by Sales Representative)

Merchant Location: ☐ Retail Location with Store Front   ☐ Office Building   ☐ Residence   ☐ Other: _____

Surrounding Area: ☐ Commercial   ☐ Industrial   ☐ Residential

Does the amount of inventory and merchandise on shelves and floor appear consistent with the type of business? ☐ YES ☐ NO

If no, explain: _____

Does the Merchant use a Fulfillment House? ☐ YES ☐ NO   If yes, was the Fulfillment House inspected? ☐ YES ☐ NO

The Merchant: ☐ Owns ☐ Leases the business premises

Further comments by Inspector (must complete): _____

I hereby verify that this application has been fully completed by merchant applicant and that I have physically inspected the business premises of the merchant at this address and the information stated above is true and correct to the best of my knowledge and belief.

Verified and inspected by (print name): _____

| Representative Name: _____ | Representative Signature: X _____ | Date: _____ |
|---|---|---|
| Sales Rep Name: Sokhna Seck | Sales Rep Code: 071E | Sales Rep Phone Number: (410) 654-2995 | Sales Rep Email Address: sokhna.seck@globalpay.com |

## American Express

By signing below, I represent that I have read and am authorized to sign and submit this application on behalf of the entity above and all information I have provided herein is true, complete, and accurate. I authorize American Express Travel Related Services Company, Inc. ("American Express") to verify the information in this application and receive and exchange information about me personally, including by requesting reports from consumer reporting agencies. I authorize and direct American Express to inform me directly, or through the entity above, of reports about me that American Express has requested from consumer reporting agencies. Such information will include the name and address of the agency furnishing the report. I understand that upon American Express' approval of the entity indicated above to accept the American Express Card, the terms and conditions for American Express® Card Acceptance ("Terms and Conditions") will be sent to such entity along with a Welcome Letter. By accepting the American Express Card for the purchase of goods and/or services, or otherwise indicating its intention to be bound, the entity agrees to be bound by the Terms and Conditions.

| Merchant's Signature: | Name (printed): | Title: | Date: |
|---|---|---|---|
| X _____ | Hirsh Mohindra | Owner | 4/25/12 |

3

Merchant Initials: _____

Rev. 12/11 - GP

**Hardware**

Process Method: ☐ EDC ☐ Touchtone ☐ Paper

Platform: ☐ East ☐ Central ☐ Other _____

Imprinter: ☐ Own ☐ Purchase

Purchase Price per Unit: $_____

Purchase Quantity - Standard: _____

Purchase Quantity - Handheld: _____

Total Regular Plates Needed: _____

Total Amex Plates Needed: _____

Total Plastic Cards Needed: _____

Global to schedule download? ☐ YES ☐ NO

Global to train? ☐ YES ☐ NO

☐ Own/ Reprogram ☐ Purchase ☐ Lease ☐ Rental

Terminal Type: _____

Pinpad Type: _____

Printer Type: _____

Check Reader _____

Terminal Application / PC Software Type: _____

Number of TIDs: _____      Product: _____

Term type: _____      Third Party Settlement: ☐ Terminal ☐ Host

Global PC Software: ☐ Own ☐ Purchase

If purchase, price: $_____      # of payments: _____

| Item | Quantity | Individual Pricing | | Combination Pricing | |
|---|---|---|---|---|---|
| | | Amount | # Payments | Amount | # Payments |
| Terminal | | $ | | $ | |
| Printer | | $ | | $ | |
| Check Reader | | $ | | $ | |
| PIN Pad | | $ | | $ | |

Special Instructions:

**Cardholder Data Storage Compliance & Service Provider**

***** PCI DSS and card association rules prohibit storage of track data under any circumstances. If you or your POS system pass, transmit, store or receive full cardholder's data, then the POS software must be PA DSS (Payment Application Data Security Standard) compliant or you (merchant) must validate PCI DSS compliance (see 1(b) below and questions 3 and 4 must be completed). If you use a payment gateway, they must be PCI DSS compliant.*****

1. Have you ever experienced an Account Data Compromise "ADC"? ☐ Yes ☒ No      If yes, provide date of compromise: _____
   a) Have you validated PCI DSS (Payment Card Industry Data Security Standard) compliance? ☐ Yes ☒ No
      If yes, go to 1(b); If no, go to #2
   b) Date of compliance. Report on Compliance "ROC" or Self Assessment Questionnaire "SAQ"? _____
   c) What is the name of your Qualified Security Assessor "QSA" _____ or Self Assessment Questionnaire (circle one "SAQ") A, B, C, or D
   d) Date of last scan _____      Approved Scanning Vendor's name: _____
2. Are you using a "dial-up" terminal or "TTC" Touch Tone Capture? ☐ Yes ☒ No
3. Do you or your Service Provider(s) receive, pass, transmit or store the Full Cardholder Number "FCN", electronically? ☐ Yes ☒ No
   a) If yes, where is card data stored? ☐ Merchant's location only      ☐ Merchant's Headquarters/Corp office only
      ☐ Primary Service Provider      ☐ Both Merchant & Service Provider(s)      ☐ Other Service Provider      ☐ All Apply
4. What Primary Service Provider/Software Developer did you purchase your point of sale "POS" application from (ie software, gateway)? GTVI
   a) What is the name of the Service Provider/Software Developer's software application? GP      Software Version #? _____
   b) Do your transactions process through any other Service Provider (ie web hosting companies, gateways, corporate office)? ☒ Yes ☐ No
   c) If yes, name the other Service Provider? GLOBAL PAYMENTS

As required under the Payment Card Industry Data Security Standard (PCI DSS), Merchant declares and confirms the following:
-Merchant is in compliance with all PCI DSS requirements. ☒ Yes ☐ No
-Merchant's point of sale software, system or application does not store sensitive authentication data after authorization. ☒ Yes ☐ No
-Merchant will maintain full PCI DSS compliance at all times and will notify Global Payments when it changes its point of sale software, system or Application. ☒ Yes ☐ No
-None of Merchant's systems store any evidence of magnetic stripe data, or PIN data after transaction authorization is completed. ☒ Yes ☐ No

4

Merchant Initials: _____      Rev. 12/11 - GP



**What a Community Bank Should Be.**

4800 North Harlem Avenue, Harwood Heights, Illinois 60706  (708) 867-6600 / Fax (708) 867-1119

April 24, 2012

Charles Hunter Miller & Associates is a customer at Parkway Bank & Trust
Account # ███8985
Routing #███████

Sabuhi Alam
Sr. Personal Banker

www.parkwaybank.com

FDIC

Charles Hunter Miller & Associates Inc

215 Remington BLVD Suite

Bolingbrook, IL, 60440

# Collection Policy Acknowledgement

As a condition to acceptance of your Card Services Agreement, Global Payments Direct, Inc. requires that you acknowledge your understanding of the limitations of a merchant account within the collection agency industry. More specifically, Card Scheme (Visa® & Mastercard®) regulations strictly prohibit the following:

- Accepting a card to collect or refinance an existing debt that has been deemed uncollectible by the merchant providing the associated goods or services.
- Processing a card transaction that represents the collection of a dishonored check.

By signing this document, you acknowledge and agree to the above collection policy information. You further acknowledge that Global's acceptance of your Card Services Agreement is based upon your compliance with the requirements of Visa® USA, Mastercard® International, and HSBC USA, National Association, as set forth herein and in your Card Services Agreement. Nothing in this letter shall serve to limit the generality of the terms and conditions of your Card Services Agreement.

By the signature below of an authorized officer of Charles Miller & Associates Inc, you acknowledge, accept and agree to abide by the standards and requirements outlined herein and in your Card Services Agreement.

Signature: _____

Printed Name: Hirsh Mohindra

Company Name: Charles Miller Associates Inc

Title: Owner

Date: 4/25/2012

Email: hirsh@charleshuntermiller.com

# Attachment R



# Credit Card
## Merchant Application

## Business Information

| | |
|---|---|
| Merchant DBA Name/Outlet Name: **CHM** | Merchant's Legal Name: **CHARLES HUNTER MILLER & ASSOCIATES INC** |
| Physical Street **215 REMINGTON BLVD STE #E** | Legal Address: **2224 W. TOUHY** |

| City: **BOLINGBROOK** | State: **IL** | Zip: **60440** | City: **CHICAGO** | State: **IL** | Zip: **60630** |
|---|---|---|---|---|---|

| DBA Phone: **877-801-6141** | Fax: **630-226-4654** | Corp. Phone: **877-801-6141** | Fax: **630-226-4654** |
|---|---|---|---|
| Contact Name at this Address: **HIRSH MOHINDRA** | E-mail: **HIRSH@CharlesHunterMiller.COM** | Contact Name at this Address: **HIRSH MOHINDRA** | E-mail: **HIRSH@CharlesHunterMiller.COM** |
| Customer Service Phone # (Required for ALL merchants): **877-801-6141** | | Website Address (Required for internet merchants): **WWW.CHARLESHUNTERMILLER.COM** | |

## Owner / Officer Information (If More Than Full 1% Ownership - Use Additional Owner / Officer Forms If Necessary)

| Primary Owner/Officer Name: **HIRSH MOHINDRA** | % Ownership: **100%** | Social Security #: **630-** | Telephone Number: **630-** |
|---|---|---|---|
| Address: | | E-mail Address: **HIRSH@CharlesHunterMiller.COM** | Driver's License Number: |
| City: **BURRRIDGE** | State: **IL** | Zip: | Date of Birth: | Own/Rent: **OWN** | Years There: **10+** |

## Secondary Owner / Officer Information - Use Additional Owner/Officer Forms If Necessary

| Secondary Owner/Officer Name: **N/A** | % Ownership: | Social Security #: | Telephone Number |
|---|---|---|---|
| Address: | | E-mail Address: | Driver's License Number: |
| City: | State: | Zip: | Date of Birth: | Own/Rent: | Years There: |

## Business Bank Information

| Deposit Bank Account Information | | DDA / Checking Account # **8985** |
|---|---|---|
| Transit Routing / ABA Number (Nine Digits): | | |
| Additional Bank Account Information | | DDA / Checking Account #: **N/A** |
| Transit Routing / ABA Number (Nine Digits): **N/A** | | |

## Business Profile

| Type of Ownership: | Sole Proprietorship | Partnership General / Limited | Limited Liability Corporation | Tax Exempt / Non-Profit Organization |
|---|---|---|---|---|
| | **x** Closely-Held Corporation | Publicly-Held Corporation | Government Federal / State / Local | Other: ____ |

| Federal Tax ID / SSN: **3559** | Years In Business: **0** | Length of Current Ownership: **0** | # of Locations: **1** |
|---|---|---|---|

| Has Business or any Principal been terminated as a Visa / Mastercard / Discover Merchant (TMF)? ☐ Yes ☑ No | | Visa / Mastercard / Discover Information | | |
|---|---|---|---|---|

| Has Merchant or any Principal disclosed above filed bankruptcy or been subject to any involuntary bankruptcy? ☐ Yes ☑ No | Market Type | | Sales Profile (Must equal 100%) | |
|---|---|---|---|---|
| | ☐ Retail | ☐ Supermarket | Card Swiped | |
| | ☐ Restaurant | ☐ Emerging Mkt | Manually Keyed with imprint | |
| If Yes, explain: | ☐ Lodging | ☐ Public Sector | Mail Order / Telephone / Internet | **100** |
| | ☑ MOTO | ☐ Auto Rental | Total Must Equal 100% | **100%** |
| | ☐ P - Card | ☐ Cash Adv. | | |
| Do you currently accept Visa / Mastercard / Discover? ☐ Yes ☑ No | ☐ E-Commerce | ☐ Other | | |
| If "Yes," submit 3 months bankcard statements. | Merchandise/Service Sold: **Accounts receivable management** | | | |
| | Are your merchant's sales seasonal? ☐ Yes ☑ No | | | |

| Monthly Volume: **$ 150,000.00** | Average Ticket Amount **$ 200.00** | Highest Ticket Amount **$ 1,500.00** | Current Processor of Mastercard / VISA / Discover: **N/A** |
|---|---|---|---|

What is Refund / Cancellation Policy? Please provide a copy of refund policy if not already included in application package

**SPECIAL INSTRUCTIONS: N/A**

## Merchant Bank Acknowledgement

HSBC Bank USA, National Association - 716-841-6360
Merchant Support Group P. O. Box 3263, Buffalo, New York 14240

| Important Member Bank Responsibilities | Important Merchant Responsibilities |
|---|---|
| 1. A Visa Member is the only entity approved to extend acceptance of Visa products directly to a merchant | 1. Ensure compliance with cardholder data security and storage requirements |
| 2. A Visa Member must be a principal (signer) to the Merchant Agreement | 2. Maintain fraud and chargebacks below thresholds |
| 3. The Visa Member is responsible for educating Merchants on pertinent Visa Operating Regulations with which Merchants must comply | 3. Review and understand the terms of the Merchant Agreement |
| 4. The Visa Member is responsible for and must provide settlement funds to the Merchant | 4. Comply with Visa Operating Regulations. |
| 5. The Visa Member is responsible for all funds held in reserve that are derived from settlement | The responsibilities listed above do not supersede terms of the Merchant Agreement and are provided to ensure the Merchant understands these specific responsibilities |

| SPID: **234940** | Sales Rep Name: **Clearcomm** | For questions regarding Card Services, contact: | Rev. 01.11-ACHD |
|---|---|---|---|
| Assoc. Number: **Clearcomm** | Industry: | ACH Direct Inc. | |
| ☐ East ☐ Central ☐ Other: | SIC: **7322** | 500 W. Bethany Dr. Suite #200 | |
| | Application ID: | Allen, TX 75013 | |
| | | Phone#: 888-235-4635 | |

Merchant Initials: _____

**Menjivar Att. R**
**Page 1 of 4**                    pg. 1

Note: Billing disputes must be forwarded, in writing, to Customer Service within 60 days of the date of the statement and / or notice.

## Mail Order/Internet/Future Delivery

Please provide details for type and/or range of products/services sold:
Accounts receivable management - process payments for remittance

Does Merchant accept transaction before the customer receives the product/services? ☐ Yes ☑ No

% of total credit card sales in this category 100 %          % of cost that is prepayment 0 %

If "Yes" to above, what is the time period for delivery of the products / services?
☐ Within 48 Hrs   ☐ Within 2-3 days   ☐ Within 1 Week   ☐ Other (please explain) _____

Does Merchant offer warranties, dues, subscriptions, memberships or other extended services? ☐ Yes ☑ No
Duration of extended service or benefit (in weeks): _____

What is Merchant's billing method?   ☑ Monthly   ☐ Quarterly   ☐ Annually

Does Merchant charge for Goods/Services at time of shipment? ☐ Yes ☑ No
If No, please explain: NA

If drop-shipping, what company/manufacturer ships goods? NA

Additional Comments Pertaining to Operations of Company: NA

## Credit / Debit Card Services and Fee Schedule

| PLAN TYPE | NEW | EXISTING | EXISTING MERCHANT #: | DISCOUNT RATE: | | PER ITEM: | ADDITIONAL AUTH. FEES: | |
|---|---|---|---|---|---|---|---|---|
| VISA Credit | ☑ | N/A | N/A | I+A.50% | % | $ 0 | $0.20 | % |
| VISA Check | ☑ | N/A | N/A | I+A.50% | % | $ 0 | $0.20 | % |
| MasterCard Credit | ☑ | N/A | N/A | I+A.50% | % | $ 0 | $0.20 | % |
| Debit MasterCard | ☑ | N/A | N/A | I+A.50% | % | $ 0 | $0.20 | % |
| Discover Credit | ☑ | ☐ | NA | I+A.50% | % | $ 0 | $0.20 | % |
| Discover Bus  Card | ☑ | ☐ | NA | I+A.50% | % | $ 0 | $0.20 | % |
| Discover Check | ☐ | ☐ | NA | I+A.50% | % | $ 0 | $0.20 | % |
| Debit (other than VISA or MC) | ☑ | ☐ | NA | I+A.50% | % | $ 0.25 | $0.20 | % |
| Daily Discount: ☐ Yes ☑ No | | | | | % | | | % |

MAX SURCHARGES:
1.58 % Non-Qualified Supermarket     1.57 % Non-Qualified Retail / Restaurant     0.40 % Discover Qualified Rewards     1.53 % Non-Qualified Lodging / Auto Rental
1.19 % Non-Qualified Direct Market     1.71 % Non-Qualified Developing Market     1.66 % Non-Qualified Purchase Card     1.19 % Other: Non-Qual Ecomm / MOTO
0.31 % Qualified Visa / MC Rewards Card (Retail & Mail / Telephone Order)     1.07 % Non-Qualified Touch Tone Capture

***The forgoing discount rate, per item and authorization fees are based upon Merchant's complying with all processing requirements as established by the applicable governing authority of the payment type which qualifies Merchant for the most favorable interchange rates available for such payment type  Transactions that do not qualify for the most favorable interchange rates will be subject to surcharges up to the foregoing amounts in addition to the rate quoted. See the Card Services Terms and Conditions for more information regarding non-qualifying surcharges. In addition to the per item fee, all Debit transactions include fees assessed by the applicable network organization.

OTHER FEES:

| | | | |
|---|---|---|---|
| $_____ Non-Refundable Application Fee (one-time fixed fee) | $_____ Global Access @dvantage Monthly Fee | $_____ Help Desk Fee (monthly) |
| $_____ PCI Compliance Fee (optional monthly) | $_____ Global Access @dvantage Set-up Fee | $_____ EDC AVS Fee (per occurrence) |
| $_____ PCI Non-Compliance Fee (monthly) | $_____ Wireless Services Fee (monthly) | $_____ Internet Access Fee (monthly) |
| $_____ Touchtone Capture Set-up Fee (one-time fixed fee) | $_____ Wireless Activation Fee (one-time fixed fee) | $ 0.25 Batch/ACH Fee (per occurrence) |
| $ 10.00 Monthly Fee ☐ Membership ☑ Statement | $_____ Wireless Transaction Fee (per occurrence) | $_____ Annual Service Fee |
| $_____ Minimum Monthly Discount | $_____ Reprogramming Fee (one-time fixed fee) | $_____ AMEX Application Fee |
| $_____ Training Fee - On-Site (one-time fixed fee) | $ 1.75 Voice AVS Fee (per occurrence) | $_____ Additional Location Fee |
| $ 25.00 Chargeback Fees (per occurrence) | $_____ Internet Per Item Fee (per occurrence) | $ 0.25 AMEX (per item) |
| $ 7.50 Retrieval Fee (per occurrence) | $_____ Internet Setup Fee (one-time fixed fee) | $ 20.00 Account Maintenance |
| $ 20.00 Non-Sufficient Funds (per occurrence) | $ 30.00 Replacement Shipping Fee (per occurrence) | $_____ Minimum Monthly Debit |
| $ 29.99 Installation/Programming Fee (one-time fixed fee) | $ 0.95 Voice Authorization Fee (per occurrence) | $_____ Other: _____ |

## Merchant Site Survey Report — To be completed by Sales Representative

Merchant Location: ☐ Retail Location with Store Front  ☑ Office Building     ☐ Residence
Surrounding Area: ☑ Commercial   ☐ Industrial     ☐ Residential   ☐ Other: _____
Does the amount of inventory and merchandise on shelves and floor appear consistent with the type of business? ☑ Yes ☐ No
If no, explain: _____
The Merchant: ☐ Owns ☑ Leases the business premises
Does the Merchant use a Fulfillment House? ☐ Yes ☑ No     If yes, was the Fulfillment House inspected? ☐ Yes ☐ No
Further comments by Inspector (must complete): _____
I hereby verify that this application has been fully completed by merchant applicant and that I have physically inspected the business premises of the merchant at this address and the information stated above is true and correct to the best of my knowledge and belief.
Verified and inspected by (print name): _____
Sales Rep Name: Steve Landoll          Sales Rep Code: 234940     Sales Rep Phone Number: 904-394-9552
Sales Rep Signature: _____          Sales Rep e-mail Address: steve.landoll@clearcommdirect.com

Menjivar Att. R
Page 2 of 4

2

Rev.01.11-ACHD

## Cardholder Data Storage Compliance & Service Provider

***** PCI DSS and card association rules prohibit storage of track data under any circumstances. If you or your POS system pass, transmit, store or receive full cardholder's data, then the POS software must be PA DSS (Payment Application Data Security Standard)compliant or you (merchant) must validate PCI DSS compliance (see 1(b) below and question 3 and 4 must be completed). If you use a payment gateway, they must be PCI DSS compliant *****

1 Have you ever experienced an Account Data Compromise "ADC"? ☐ Yes ☑ No  If yes, provide date of compromise. _____

  a) Have you validated PCI DSS (Payment Card Industry Data Security Standard) compliance? ☐ Yes ☑ No

If yes, go to 1(b); If no, go to #2

  b) Date of compliance, Report on Compliance "ROC" or Self Assessment Questionnaire "SAQ"? _____

  c) What is the name of your Qualified Security Assessor "QSA" _Trust Wave_ or Self Assessment Questionnaire (check one "SA Q") ☐A ☐B ☐C ☑D

  d) Date of last scan _01/12/2011_ Approved Scanning Vendor's name _Trust Wave_

2 Are you using a "dial-up" terminal or "TTC" Touch Tone Capture? ☐ Yes ☑ No

3 Do you or your Service Provider(s) receive, pass, transmit or store the Full Cardholder Number "FCN", electronically? ☑ Yes ☐ No

  a) If yes, where is card data stored? ☐ Merchant's location only ☐ Merchant's Headquarters / Corp office only ☑ Primary Service Provider ☐ Both Merchant and Service Provider(s) ☐ Other Service Provider ☐ All Apply

4 What Primary Service Provider / Software Developer did you purchase your point of sale "POS" application from (ie software,gateway)? _ACH Direct_

  a) What is the name of the Service Provider/Software Developer's application? _Virtual Terminal_ Software Version #? _3.0_

  b) Do your transactions process through any other Service Provider (ie web hosting companies, gateways, corporate office)? ☐ Yes ☑ No

  c) If yes, name the other Service Provider? _____

## American Express (optional for new American Express service)

By signing below, I represent that I have read and am authorized to sign and submit this application on behalf of the entity above and all information I have provided herein is true, complete, and accurate. I authorize American Express Travel Related Services Company, Inc. ("American Express") to verify the information in this application and receive and exchange information about me personally, including by requesting reports from consumer reporting agencies. I authorize and direct American Express to inform me directly, or through the entity above, of reports about me that American Express has requested from consumer reporting agencies. Such information will include the name and address of the agency furnishing the report. I understand that upon American Express' approval of the entity indicated above to accept the American Express Card, the terms and conditions for American Express® Card Acceptance ("Terms and Conditions") will be sent to such entity along with a Welcome Letter. By accepting the American Express Card for the purchase of goods and/or services, or otherwise indicating its intention to be bound, the entity agrees to be bound by the Terms and Conditions.

| Name (printed): | Title: | Date: | Merchant's Signature: |
|---|---|---|---|
| HIRSH MOHINDRA | PRESIDENT | 04/25/12 | x |

## Acceptance of Merchant Application and Terms & Conditions / Merchant Authorization

Your Card Services Agreement is between Global Payments Direct, Inc. ("Global Direct"), the Merchant named above and the Member named below ("Member"). Member is a member of Visa, USA, Inc. ("Visa") and MasterCard International, Inc. ("MasterCard"); Global Direct is a registered independent sales organization of Visa, a member service provider of MasterCard and a registered acquirer for Discover Financial Services, LLC. ("Discover").

A copy of the Card Services Terms and Conditions, revision number 01/11-ACHD, has been provided to you. Please sign below to signify that you have received a copy of the Card Services Terms & Conditions and that you agree to all terms and conditions contained therein. If this Merchant Application is accepted for card services, Merchant agrees to comply with the Merchant Application and the Card Services Terms & Conditions as may be modified or amended in the future. If you disagree with any Card Services Terms & Conditions, do not accept service.

**IF MERCHANT SUBMITS A TRANSACTION TO GLOBAL DIRECT HEREUNDER, MERCHANT WILL BE DEEMED TO HAVE ACCEPTED THE CARD SERVICES TERMS & CONDITIONS.**

By your signature below on behalf of Merchant, you certify that all information provided in this Merchant Application is true and accurate and you authorize Global Direct, and Global Direct on Member's behalf, to initiate debit entries to Merchant's checking account(s) in accordance with the Card Services Terms and Conditions. In addition by your signature below on behalf of Merchant you authorize Global Direct and/or ACH Direct Inc to order a consumer credit report on Merchant and you.

| Name (printed): | Title: | Date: | Merchant's Signature: |
|---|---|---|---|
| HIRSH MOHINDRA | PRESIDENT | 04/25/12 | x |
| Name (printed): | Title: | Date: | Secondary Merchant's Signature: |
| | | | x |
| Name (printed): | Title: | Date: | Signing for Global Payments Direct, Inc.: |
| | | | x |
| Name (printed): | Name of Member (printed): | Date: | Signing for Member: |
| | HSBC Bank USA, NA | | x |

## Personal Guaranty

I/We hereby guarantee to Global Direct and Member, their successors and assigns, the full, prompt, and complete performance of Merchant and all of Merchant's obligations under the Card Services Agreement, including but not limited to all monetary obligations arising out of Merchant's performance or non-performance under the Card Services Agreement, whether arising before or after termination of the Card Services Agreement. This guaranty shall not be discharged or otherwise affected by any waiver, indulgence, compromise, settlement, extension of credit, or variation of terms of the Card Services Agreement made by or agreed to by Global Direct, Member and/or Merchant. I/We hereby waive any notice of acceptance of this guaranty, notice of nonpayment or nonperformance of any provision of the Card Services Agreement by Merchant, and all other notices or demands regarding the Card Services Agreement. I/We agree to promptly provide to Global Direct and Member any information requested by any of them from time to time concerning my/our financial condition(s), business history, business relationships, and employment information. I/We have read, understand, and agree to be bound by the Card Services Terms & Conditions provided to Merchant and those terms and conditions contained in this Merchant Application.

| Name (printed): | Signature of Guarantor (please sign below) | |
|---|---|---|
| HIRSH MOHINDRA | x | ,an individual |
| Name (printed): | Signature of Guarantor (please sign below) | |
| | x | ,an individual |

**Menjivar Att. R**
**Page 3 of 4**

3

Rev. 01.11 - ACHD



# PARKWAY BANK

## What a Community Bank Should Be.

4800 North Harlem Avenue, Harwood Heights, Illinois 60706  (708) 867-6600 / Fax (708) 867-1119

April 24, 2012

Charles Hunter Miller & Associates is a customer at Parkway Bank & Trust
Account # ███8985
Routing # ████████

Sabuhi Alam
Sr. Personal Banker

# Attachment S



## { forte }

### Merchant Application and Agreement

| 1. Merchant "Doing Business As" (DBA) Information | 2. Legal Information (if Sole Proprietor - owner's information) |
|---|---|
| DBA/Location Name:<br>Stark Law LLC | Legal Name:<br>Stark Law LLC |
| Street Address (no PO Box):<br>500 Quail Ridge Dr | Street Address:<br>500 Quail Ridge Dr |

| City:<br>Westmont, | State:<br>IL | Zip:<br>60559 | City:<br>Westmont, | State:<br>IL | Zip:<br>60559 |
|---|---|---|---|---|---|
| Phone #:<br>312-282-6759 | Fax #: | | Phone #:<br>312-282-6759 | Fax #: | |
| Contact:<br>Gaurav Mohindra | | | Contact:<br>Gaurav Mohindra | | |
| Email:<br>gmohindra@gmail.com | | | Email:<br>gmohindra@gmail.com | | |
| Customer Service Phone#:<br>630-243-4207 | | | Website:<br>http://starklaw-firm.com | | |

### 3. Business Profile

| Ownership Type: | ☐ Sole Proprietor  ☐ Partnership  ☑ LLC<br>☐ S-Corporation  ☐ C-Corporation  ☐ Non-Profit<br>☐ Gov. Agency  ☐ Other:<br>☐ Public | Industry Type: | ☐ Retail  ☐ Ecommerce  ☐ MO/TO<br>☐ Public Sector  ☐ Emerging Mrkt  ☐ P-Card<br>☐ Restaurant  ☑ Other: Inlernet Sales |
|---|---|---|---|

| Federal Tax ID:<br>████806 | Years in Business:<br>1.0 | Years current ownership:<br>1.0 | Number of Locations:<br>1 |
|---|---|---|---|

Goods/Services sold:
Legal Services

Has Business or any Principal been terminated as a Visa/Mastercard /Discover/Amex Merchant (TMF)?  ☐ Yes  ☑ No

| Is your business home-based?: ☐ Yes ☑ No | Do you currently accept credit cards?: ☐ Yes ☑ No |
|---|---|
| Have you ever been in bankruptcy?: Yes ☐ No ☑ | If yes, your current provider: |

If Yes, explain:

### 4. Member Bank (Acquirer) Information - Wells Fargo Bank, 1200 Montego, Walnut Creek, CA 94598 (925) 746-4167

| Important Member Bank (Acquirer) Responsibilities | Important Merchant Responsibilities |
|---|---|
| 1. The Bank is the only entity approved to extend acceptance of Card Organization products directly to a Merchant.<br>2. The Bank must be a principal (signer) to the Merchant Agreement.<br>3. The Bank is responsible for educating Merchants on pertinent Card Organization Rules with which Merchants must comply; but this Information may be provided to you by Processor.<br>4. The Bank is responsible for and must provide settlement funds to the Merchant.<br>5. The Bank is responsible for all funds held in reserve. | 1. Ensure compliance with cardholder data security and storage requirements.<br>2. Maintain fraud and chargebacks below Card Organization thresholds.<br>3. Review and understand the terms of the Merchant Agreement.<br>4. Comply with Card Organization rules.<br>5. Retain a signed copy of this Disclosure Page.<br>The responsibilities above do not replace the terms of the Merchant Agreement and are provided to ensure the Merchant understands some important obligations of each party and that the Bank is the ultimate authority should the Merchant experience any problems. |

Merchant Resources
"Visa regulations" - http://usa.visa.com/merchants/operations/op_regulations.html
"MasterCard rules" - http://www.mastercard.com/us/merchant/support/rules.html
Discover Merchant Info - http://www.discovernetwork.com/merchants/index.html
"American Express Merchant Operating Requirements" - https://globalpaymentsinc.com/GPDB/AccessDOC.aspx?SubDoc_ID=1383

| Merchant Signature: *gmohindra@gmail.com*<br>*Gaurav Mohindra* | : | Printed Name *gmohindra@gmail.com*<br>*Gaurav Mohindra* | Title: |
|---|---|---|---|

Merchant initials: **S**

E-Signed
GM

**Menjivar Att. S**
**Page 1 of 7**

Rev. 11/14 - Forte

## 5. Business Banking Information

⑆0012045078⑈1102⑉⑈120⑉012045011102⑉0⑈

| Routing # | Check # | Account # |

Please be sure that you **DO NOT** include your check number when entering in your bank account information below.

**Deposit Bank Account Information**
9-digit Routing Number: ███████████

Account Number: ███████6644

**Billing Bank Account Information (If different than Deposit)**
9-digit Routing Number:

Account Number:

## 6. Sales Information

What is your estimation for the breadown of your payment card sales by each of the categories below?:

| | |
|---|---|
| 100 | % Ecommerce |
| | % Mail or Phone Order |
| | % Card swiped |
| | % Card present but keyed in |
| 100 | % Total |

| Average Sale | Maximum Sale | Monthly Sales |
|---|---|---|
| $ 200 | $ <=1500 | $ <=100,000 |

Are your sales seasonal?: ☐ Yes ☒ No

Do you charge customers on a recurring basis?: ☐ Yes ☒ No
If yes, what frequency?: ☐ Monthly ☐ Quarterly ☐ Annually

Do you offer warranties, dues, subscriptions, memberships or other extended services? ☐ Yes ☒ No
If yes, what is the typical duration in # of weeks?:

What is your refund/cancellation policy?
Returns or cancellations are discussed on a case by case basis.

## 7. Future Delivery / Internet or Mail Order

Do you accept pre-payment (or a deposit) before the customer receives the product/services? ☐ Yes ☒ No

If Yes, what is the time period for delivery? Within: ☐ 48hrs ☐ 2-3 days ☐ 1 week ☐ Other- Explain:

What % of total card sales are pre-paid?:

What % of a sale is typically pre-paid?:

If drop-shipping, what company ships the goods sold?:

## 8. American Express ESA Program

By signing below, I represent that I have read and am authorized to sign and submit this application for the above entity, which agrees to be bound by the American Express Card Acceptance Agreement ("Agreement), and that all information provided herein is true, complete, and accurate. I authorize Global Direct and American Express Travel Related Services Company, Inc. ("American Express") and American Express's agent's and Affiliates to verify the information in this application and receive and exchange information about me personally, including by requesting reports from consumer reporting agencies from time to time, and disclose such information to their agent, subcontractors, Affiliates and other parties for any purpose permitted by law. I authorize and direct Global Direct and American Express and American Express's agents and Affiliates to inform me directly, or inform the entity above, about the contents of reports about me that they have requested from consumer reporting agencies. Such information will include the name and address of the agency furnishing the report. I also authorize American Express to use the report on me from consumer reporting agencies for marking and administrative purposes. I am able to read and understand the English language. Please read the American Express Privacy Statement at http://www.americanexpress.com/privacy to learn more about how American Express protects your privacy and how American Express uses your information. I understand that I may opt out of marketing communications by visiting this website or contacting American Express at 1-(800)-528-5200. I understand that upon American Express's approval of the application, the entity will be provided with the Agreement and materials welcoming it to Amercian Express's Card acceptance program.

Amex annual volume < $1,000,000? ☒ Yes ☐ No

Amex Acceptance: ☒ Yes ☐ No ☐ Existing - If existing, current Amex SE#:

| Merchant's Signature: | *gmohindra@gmail.com* *Gaurav Mohindra* | Name: | *gmohindra@gmail.com* *Gaurav Mohindra* |
|---|---|---|---|

E-Signed GM

Merchant Initials:

**Menjivar Att. S** Rev. 11/14 - Forte
**Page 2 of 7**

## 9. Cardholder Data Storage Compliance & Service Provider

****PCI DSS and card association rules prohibit storage of track data under any circumstances. If you or your POS system pass, transmit, store or receive full cardholder data, then the POS software must be PA DSS (Payment Application Data Security Standard) compliant or you (merchant) must validate PCI DSS compliance. If you use a payment gateway, they must be PCI DSS compliant.****

| | |
|---|---|
| 1. Have you ever experienced an Account Data Compromise "ADC"? ☐ Yes ☒ No | If yes, provide date of compromise: |
| a) Have you validated PCI DSS Compliance in the last 12 months? ☐ Yes ☐ No | If no, skip to #2. |
| b) Date of compliance, Report on Compliance "ROC" or Self Assessment Questionnaire "SAQ"?: | |
| c) Name of your Qualified Security Assessor "QSA": | or Self-Assessment Questionnaire: ☐ A ☐ B ☐ C ☐ D |
| d) Date of last scan: | Approved Scanning Vendor's Name: |

2. As required under the Payment Card Industry Data Security Standard (PCI DSS), you declare and confirm the following:
   a) Merchant is in compliance with all PCI DSS requirements. ☒ Yes ☐ No
   b) Merchant's point of sale software, systems or applications, do not store sensitive authentication data or any evidence of magnetic stripe data, or PIN data after transaction authorization is complete. ☒ Yes ☐ No
   c) Merchant will maintain full PCI DSS compliance at all times and will notify Global Payments when it changes its point of sale software, system or Application. ☒ Yes ☐ No

3. Are you using a dial-up terminal or Touch Tone Capture? ☐ Yes ☒ No

4. Do your transactions process through any other Service Provider (i.e. web hosting companies, gateway, corporate office) ☐ Yes ☒ No
If you answered no to question 4, please initial below and you are done. If you answered yes, then please continue.

5. What Primary Service Provider/Software Developer did you purchase your point of sale "POS" application from (i.e. software, gateway)??:

   a) What is the name of the Service Provider/Software Developer's software application?: _____ Version #:
   b) Do your transactions process through any other Service Provider (i.e. web hosting companies, gateways, corporate office)? ☐ Yes ☒ No
   c) If yes, name the other Service Provider:
      If no, however, merchant is electronic commerce, please provide name of ISP (web host): Comcast

6. Do you or your Service Provider(s) receive, pass, transmit or store the Full Cardholder Number "FCN", electronically: ☐ Yes ☐ No
   a) If yes, where is card data stored?  ☐ Merchant's Location Only  ☐ Merchant's Headquarters Only
      (Check all that apply)  ☐ Primary Service Provider  ☐ Additional Service Provider
      ☐ Both Merchant & Service Provider(s)

## 10. Merchant Site Survey (to be completed by sales representative)

| | | | |
|---|---|---|---|
| Merchant Location: ☐ Retail ☒ Office Building ☐ Residence | | Merchant: ☐ Owns ☒ Leases | |
| Surrounding Area: ☒ Commercial ☐ Industrial ☐ Residential ☐ Other: | | | |
| Does the amount of inventory and merchandise on shelves and floor appear consistent with the type of business: ☐ Yes ☐ No | | | |
| If no, explain: | | | |
| Does Merchant use a Fulfillment House?: ☐ Yes ☒ No | | If yes, was the Fulfillment House inspected?: ☐ Yes ☐ No | |
| Further comments by Inspector: | | | |

I hereby verify that this application has been fully completed by merchant applicant and that I have physically inspected the business premises of the merchant at this address and the information stated above is true and correct to the best of my knowledge and belief.

| Inspected by: | Sales Rep Name: | Code: | Phone Number: |
|---|---|---|---|
| _Tammi Bellefeuille_ | Preston Brown _Bellefeuille_ | | |
| Sales Rep Signature: | | Sales Rep Email Address: | |

| SP ID: | Assoc. Number: | Application ID: |
|---|---|---|
| 234562 | | 84589 |

Merchant initials:
E-Signed
GM

Rev. 11/14 - Forte

**Menjivar Att. S**
**Page 3 of 7**

## 11. Ownership Information

(must be over 50% of total ownership or an individual authorized to enter into a binding contract on behalf of the entity)

| Owner/Officer Name:<br>Gaurav Mohindra | | Social Security #: | | | Date of Birth: | |
|---|---|---|---|---|---|---|
| Home Address:<br>███████████ | | | | Years there: | | Own/Rent:<br>Own |
| City<br>Chicago | | State:<br>IL | Zip:<br>██████ | Telephone #:<br>312-█████ | | |
| Ownership %<br>100 | Driver's License #:<br>████████████ | | State Issued:<br>IL | | E-mail Address:<br>gmohindra@gmail.com | |
| Owner/Officer Name: | | Social Security #: | | | Date of Birth: | |
| Home Address: | | | | Years there: | | Own/Rent: |
| City | | State: | Zip: | Telephone #: | | |
| Ownership % | Driver's License #: | | State Issued: | | E-mail Address: | |

Is any owner, officer, director, employee, or agent a current or former senior official in the executive, legislative, administrative, military, or judicial branch of any government (elected or not); a senior official of a major political party; an executive of a government-owned commercial enterprise.

☐ Yes ☒ No If yes, please attach details.

## 12. Individual Guarantor(s)

I/We hereby irrevocably guarantee to Global Direct and Member, their successors and assigns, the full, prompt, and complete performance of Merchant and all of Merchant's obligations under the Card Services Agreement, including but not limited to all monetary obligations arising out of Merchant's performance or nonperformance under the Card Services Agreement, whether arising before or after termination of the Card Services Agreement. This guaranty shall not be discharged or otherwise affected by any waiver, indulgence, compromise, settlement, extension of credit, or variation of terms of the Card Services Agreement made by or agreed to by Global Direct, Member, and/or Merchant. I/We hereby waive any notice of acceptance of this guaranty, notice of nonpayment or nonperformance of any provision of the Card Services Agreement by Merchant, and all other notices or demands regarding the Card Services Agreement. I/We agree to promptly provide to Global Direct and Member any information requested by any of them from time to time concerning my/our financial condition(s), business history, business relationships, and employment information. I/We agree that Global Direct and Global Direct (on behalf of Member) may order a consumer credit report on me, Merchant and each of Merchant's officers, partners, and/or owners, as well as subsequent consumer credit reports, which may be required or used in conjunction with the maintenance, updating, renewal or extension of the services provided hereunder, or in conjunction with reviewing, taking collection action on, or other legitimate purposes associated with the Merchant account. I/We have read, understand, and agree to be bound by the Card Services Terms & Conditions provided to Merchant and those terms and conditions contained in this Merchant Application.

| Name (printed): *gmohindra@gmail.com*<br>*Gaurav Mohindra* | Signature of Guarantor: *gmohindra@gmail.com*<br>*Gaurav Mohindra*<br>, an individual |
|---|---|
| Name (printed): | Signature of Guarantor:<br>, an individual |

Merchant initials: [E-Signed GM]

**Menjivar Att. S**ev. 11/14 - Forte
**Page 4 of 7**

**13. Acceptance of Merchant Application and Terms & Conditions / Merchant Authorization**

Your Card Services Agreement is between Global Payments Direct, Inc. ("Global Direct"), the Merchant named above, and the Member named below ("Member"). Member is a member of Visa, USA, Inc. ("Visa") and MasterCard International, Inc. ("MasterCard"); Global Direct is a registered independent sales organization of Visa, a member service provider of MasterCard and a registered acquirer for Discover Financial Services, LLC. ("Discover") and a registered Program Participant of American Express Travel Related Services Company, Inc. ("American Express"). A copy of the Card Services Terms and Conditions, revision number Rev. 11/2014 - Forte, has been provided to you. Please sign below to signify that you have received a copy of the Card Services Terms & Conditions and that you agree to all terms and conditions contained therein. If this Merchant Application is accepted for card services, Merchant agrees to comply with the Merchant Application and the Card Services Terms & Conditions as may be modified or amended in the future. If you disagree with any Card Services Terms & Conditions, do not accept service. IF MERCHANT SUBMITS A TRANSACTION TO GLOBAL DIRECT HEREUNDER, MERCHANT WILL BE DEEMED TO HAVE ACCEPTED THE CARD SERVICES TERMS & CONDITIONS. By your signature below on behalf of Merchant, you certify that all information provided in this Merchant Application is true and accurate and you authorize Global Direct, and Global Direct on Member's behalf, to initiate debit entries to Merchant's checking account(s) in accordance with the Card Services Terms and Conditions. In addition by your signature below on behalf of Merchant you authorize Global Direct and/or Forte Payment Systems to order a consumer credit report on you, Merchant and each of Merchant's officers, partners, and/or owners, as well as subsequent consumer credit reports, which may be required or used in conjunction with the maintenance, updating, renewal or extension of the services provided hereunder, or in conjunction with reviewing, taking collection action on, or other legitimate purposes associated with the Merchant account.

Merchant's Representatives:

| Name: gmohindra@gmail.com Gaurav Mohindra | | Signature: E-Signed : 05/01/2015 10:51 AM CST **Gaurav Mohindra** gmohindra@gmail.com IP: ▮▮▮▮ Sertifi Electronic Signature DocID: 20150501104506876 |
|---|---|---|
| Name: | Title: | Signature: |

Global Payments and Member Bank Representatives:

| Global Rep: | Title: | Signature: | Date: |
|---|---|---|---|
| Member Rep: | Name of Member: Wells Fargo Bank | Signature: | Date: |

Page 5

Merchant initials: E-Signed GM

Rev. 11/14 - Forte

**Menjivar Att. S
Page 5 of 7**

Doc ID: 20150501104506876
Sertifi Electronic Signature

## 14. Fee Schedule

**Processor Fees:**

| | Per Auth fee | Per Trans fee | Discount Rate Credit | Check/Debit | Pre-Paid |
|---|---|---|---|---|---|
| VISA | 0.25 | 0.00 | 2.15 | 2.15 | |
| MasterCard | 0.25 | 0.00 | 2.15 | 2.15 | |
| Discover | 0.25 | 0.00 | 2.15 | 2.15 | |
| American Express Tier 1 | 0.25 | 0.00 | 3.15 | | 0.00 |
| American Express Tier 2 | 0.00 | 0.00 | 0.00 | | 0.00 |
| American Express Tier 3 | 0.00 | 0.00 | 0.00 | | 0.00 |

**Max Surcharges (per occurrence):**

| | | | |
|---|---|---|---|
| Ecommerce / MOTO: | 1.19% | Restaurant: | 1.57% |
| Direct Market: | 1.19% | Developing Markets: | 1.71% |
| Auto Rental/Lodging: | 1.53% | Discover Qualified Rewards: | 0.40% |
| Purchase Card: | 1.66% | Touch Tone Capture: | 1.07% |
| Supermarket: | 1.58% | Other: | 1.19% |

The foregoing discount rate, per item and authorization fees are based upon Merchant's complying with all processing requirements as established by the applicable governing authority of the payment type which qualifies Merchant for the most favorable interchange rates available for such payment type. Transactions that do not qualify for the most favorable interchange rates will be subject to non-qualifying surcharges in addition to the rate quoted. See the "Other Fees" section of this Card Services Agreement and Section 32 of the Card Services Terms and Conditions for more information regarding non-qualifying surcharges. Discount rates and other percentage fees are calculated by multiplying the rates or fees and the Merchant's applicable transaction volume. Per item and per authorization fees are calculated per transaction or authorization, as applicable. See Section 13 of the Card Services Terms and Conditions for information regarding the early termination fee. In addition to the per item fee, all Debit transactions include fees assessed by the applicable network organization.

**Other Service Fees:**

| | | | |
|---|---|---|---|
| Application Fee: | 0.00 | Installation/Programming: | 0.00 |
| Monthly Statement: | 0.00 | Annual Membership: | 0.00 |
| Gateway Monthly: | 19.95 | Onsite Training: | 0.00 |
| PCI/DSS Compliance Monthly: | 0.00 | Gateway Per Item: | |
| PCI/DSS Non-Compliance Monthly: | 0.00 | Per Batch/ACH Fee: | 0.25 |
| Regulatory Compliance Monthly: | 0.00 | Chargeback: | 25.00 |
| Minimum Monthly Discount: | 0.00 | Retrievals: | 7.50 |
| Monthly Additional Locations: | 0.00 | ACH Reject Fee: | 20.00 |
| Global Access @dvantage Monthly: | 0.00 | Global Access @dvantage Setup: | 0.00 |
| Wireless Monthly: | 0.00 | Wireless Setup: | 0.00 |
| Wireless Per Transaction: | 0.00 | Other: | 0.00 |

**Association Fees and Assessments:**

| | | | |
|---|---|---|---|
| MasterCard Cross-Border: | 0.800% | Amex Inbound Fee: | 0.400% |
| MasterCard Acquirer PGM Support: | 0.850% | Visa AVS Only: | $0.0250 |
| Visa Assessments: | 0.190% | MC Account Status Inquiry: | $0.0300 |
| Visa FANF "base": | $3.50 | MasterCard Assessments-Large Ticket: | 0.130% |
| Visa International Service Assessment-Purchase: | 0.400% | MasterCard Assessments: | 0.120% |
| Visa International Service Assessment-Cash: | 0.400% | MasterCard Misuse of Auth. System: | $0.0550 |
| Visa International Acquiring: | 0.450% | MasterCard CVC2 Transaction Fee: | $0.0025 |
| Discover Assessments: | 0.105% | Cross-Border US Reg Acq Fee w/Cred: | 0.400% |
| Discover International Processing: | 0.400% | Cross-Border US Reg Acq Fee: | 0.800% |
| Discover International Service Fee: | 0.550% | Visa Transaction Integrity Fee: | $0.1000 |
| Visa Misuse of Authorization System: | $0.0450 | Visa Zero Dollar Verification Fee: | $0.1000 |
| Visa Acquirer Processing-Credit: | $0.0195 | Amex Non-Swiped Transaction Fee: | 0.300% |
| MasterCard Network Access: | $0.0195 | Visa Acquirer Processing Fee-Debit: | $0.0155 |
| Discover Network Fee-US: | $0.0025 | Visa Network Access Fee: | $0.0050 |
| Amex Network Fee: | 0.015% | MasterCard Digital Enablement Fee: | 0.01% |

**Equipment Fees:**

| | | | |
|---|---|---|---|
| Verifone Vx520 12MB Dual Comm: | | Magtek iDynamo #21073084: | |
| Magtek IPAD # 30050202: | | Magtek iDynamo Lightning Adapter #21073131: | |
| Magtek Dynamag #21073062: | | Magtek MICR Imager w/MSR #2241003: | |
| Magtek Dynamag #21073062 SWP 3: | | Star TSP 100 POS Printer: | |

Merchant Initials:
E-Signed GM



# Attachment T

# Merchant Applicaton Packet - Barcode



INTMID-91609

**Merchant Name**   STARK LAW

**Merchant ID (MID)**   ██████████ 6230

**Control Number**   TNB351683

**Date**   May 4, 2015 3:51:34 PM

TNBCI - Internal use only.

**Menjivar Att. T**
**Page 1 of 7**

Rev. 1/2015v3



*ACH*

DATE PAPERWORK SUBMITTED: 5-1-15

## ACCOUNT COVER SHEET

SALES MANAGER: Terry Tazooles    ACCOUNT EXECUTIVE: JEFF KEPER    REP #: 4R4-0004
(residuals paid to)

LEAD GENERATOR: _____    CLOSER: _____

DBA NAME: STARK LAW    OWNER NAME: GAUTAM MohiNATA

ADDRESS: 500 Quail Ridge dr    CITY: Westmont    STATE: IL    ZIP: 60559

BUSINESS PHONE: 630-243-4207    CELL: _____    BUSINESS EMAIL: gmohinara@gmail.com

EQUIPMENT TYPE: USA ePAY    QTY: _____    ☐ PURCHASE    ☐ REP TO PAY    ☒ DOWNLOAD

APP FEE: $ 50.00    INSTALL FEE $_____    INTEGRATION FEE $_____    PURCHASE $_____
ach Articles

☐ INSTALLMENTS # _____ x $ _____

BUYOUT AMT $ _____

| CHECK ALL THAT APPLY | SERVICES | | |
|---|---|---|---|
| ☒ New | ☐ Merchant Club | ☐ Gateway | ☐ Mobile Card Reader |
| ☐ Existing | ☐ Check Services |   TNBCI or Auth.net | ☐ USB Card Reader - Gateway |
| ☐ Additional MID    Existing MID | ☐ Cash Advance | ☐ Gift Cards | ☐ USB Card Reader - Quickbooks |
| ☐ Ownership Change | ☐ Affinity | ☐ EBT | ☐ Imprinter ($19 Cost) |
| ☐ Corp Name Change | | ☐ Wex/Voyager | ☐ Mini Imprinter ($19 Cost) |
| ☐ Related TNBCI Accounts Exist | | | ☐ Ship Terminal ($45 Fee) |
| | ☐ CALL TO RELEASE AMEX 1 POINT | | ☐ Encrypt PIN Pad ($45 Fee) |
| _____ | ☐ NEXT DAY FUNDING | | ☐ Equipment Loaner ($95 Fee) |
| Existing MID(s) | | | ☐ Additional Services / Equipment |
| _____ | ☒ MONTHLY BILLING  *no stmts* | | |
| Existing DBA(s) | | | |

| | Terminal Programming | | |
|---|---|---|---|
| IP  ☐ Y or ☐ N | | Contactless ☐ Y or ☐ N | |
| Multi MID ☐ Y or ☐ N | | Auto Settle ☐ Y or ☐ N _____ | |
|       # of MIDs in terminal | | Tip Request ☐ Y or ☐ N _____ Time | |
| _____ | | QSR ☐ Y or ☐ N | |
|     list businesses in terminal | | Accept PIN ☐ Y or ☐ N | |

INSTALLATION INSTRUCTIONS:
CALL GAUTAM for INSTALL
New AMEX NEEDED

☐ Additional Notes Attached

**For Internal Office Use Only**

Approving Manager: _____    ☐ Urgent: _____

*I have reviewed and verified the merchant signature authorizing the ACH of Daily & Monthly Fees.*

_____    5/4/5    _____
Credit Department Approval    Date    Vice President Approval    Date

Entered By: _____ 5/4/15    Q.C. By: AN 5/4/15

## Lindsay Winegard

| | |
|---|---|
| **From:** | "Merchant Enrollment System"@mx0b-00174201.pphosted.com on behalf of mescomus@globalpay.com |
| **Sent:** | Monday, May 04, 2015 12:11 PM |
| **To:** | enrollment |
| **Subject:** | STARK LAW Enrolled |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

STARK LAW has been fully enrolled in the Merchant Enrollment System.

      Date Fully Enrolled: 5/4/2015
      Control Number: TNB351683
      Hierarchy: 55 70 085 032
      Date Entered: 5/4/2015 12:44:01 PM
      MerchantID: ████████230

## T

| Sales Rep | | Phone | Fax | SIC Code | Sales Rep # |
|---|---|---|---|---|---|
| | Merchant # | Location # / B Location | ☐New Location ☐Additional Location ☐Change of Ownership | | |

### Business Information

| Business/Corporate Name | DBA (Doing Business As) Name | Business Phone # |
|---|---|---|
| ✱ STARK LAW LLC | ✱ STARK LAW | ✱ 630-243-4207 |

| Location Address – Street, City, State, Zip | | Business Fax # |
|---|---|---|
| ✱ 500 QUAIL RIDGE DR, WESTMONT, IL 60559 | | |

| Website Address – required for internet merchant | Email Address | Contact Name |
|---|---|---|
| ✱ WWW.Stark law-firm.com | ✱ gmohindra@gmail.com | ✱ GAURAV MOHINDRA |

| Statement Mailing Address – if different from location address | | Federal Tax ID # |
|---|---|---|
| | Checking Account # | ✱ [redacted]5806 |

| Bank Reference – Name and Phone # | | Bank Routing # |
|---|---|---|

### Merchant Profile

| ✱ ☐ Sole Proprietor ☐ Partnership ☑ Corporation ☐ Tax Exempt (501C) ☐ Other | | How long in present business? | Number of Locations: |
|---|---|---|---|
| | | ✱ 2 | ✱ 1 |

| Do you currently accept Visa/MasterCard/Discover? If yes, you should submit 3 most recent months statements ☐ Yes ☑ No | Merchandise Sold: General Practice | Monthly Bankcard Sales: | Average Ticket Amount: | Highest Ticket Total: |
|---|---|---|---|---|
| | ✱ LEGAL WORK + SERVICES | $ ✱ 60,000 | $ ✱ 150 | $ ✱ 1500 |

| Equipment Provided By: ☐ ISO ☐ Merchant | Purchase $ _____ | Lease $ _____ | Reprogram $ _____ |
|---|---|---|---|

| Percent of Business: Must be 100% | Card Swiped ___% | Keyed with Imprint of Card ___% | Keyed without Imprint of Card 100 % | Visa Check: ☐ Yes ☑ No | Debit MasterCard: ☑ Yes ☐ No |
|---|---|---|---|---|---|

| Sales Method: Must be 100% | Store Front ___% | Internet Service ___% | Off Premises ___% | Discover Check: ☑ Yes ☐ No | American Express: ☑ New Setup Signature Required |
|---|---|---|---|---|---|
| | Mail/Phone Order 100 % | Trade Show ___% | Other ___% | Existing Account Number | |

### Owners or Officers (Equity ownership must be greater than 50%)

Please complete for every person who ultimately owns or controls the operation or on whose behalf the transactions authorized under this agreement will be conducted. Is any owner, officer, director, employee or agent a current or former senior official in the executive, legislative, administrative, military or judicial branch of any government (elected or not); a senior official of a major political party; an executive of a government-owned commercial enterprise; a family member of any of the foregoing officials; or a close personal or professional associate of any of the foregoing officials? ☐ Yes ☑ No If "YES", please attach details.

| Name | Title – % of Equity | Social Security # | Date of Birth | Home Phone # |
|---|---|---|---|---|
| ✱ GAURAV MOHINDRA | ✱ 100 | [redacted] | ✱ [redacted] | ✱ 312- |
| Home Address – Street, City, State, Zip Chicago IL | Years There | Own/Rent OWN | Driver's License # | State Issued ✱ IL |

| Name | Title – % of Equity | Social Security # | Date of Birth | Home Phone # |
|---|---|---|---|---|
| Home Address – Street, City, State, Zip | Years There | Own/Rent | Driver's License # | State Issued |

### Business Trade References (use two)

| Name | Address | Contact | Phone |
|---|---|---|---|
| ✱ BUSH CHALLA ET AL | ✱ 3908 CASS WESTMONT IL | ✱ ANI RAVANI | 312-361-3449 |
| ✱ DAS LAW LTD. | Address | Contact BIBEK DAS | Phone 773-859-1270 |

### Member Bank (Acquirer) Information

Wells Fargo Bank, 1200 Montego, Walnut Creek, CA 94598 | (925) 746-4167

| Important Member Bank (Acquirer) Responsibilities | Important Merchant Responsibilities |
|---|---|
| 1. The Bank is the only entity approved to extend acceptance of Card Organization products directly to a Merchant. | 1. Ensure compliance with cardholder data security and storage requirements. |
| 2. The Bank must be a principal (signer) to the Merchant Agreement. | 2. Maintain fraud and chargebacks below Card Organization thresholds. |
| 3. The Bank is responsible for educating Merchants on pertinent Card Organization Rules with which Merchants must comply, but this information may be provided to you by Processor. | 3. Review and understand the terms of the Merchant Agreement. |
| 4. The Bank is responsible for and must provide settlement funds to the Merchant. | 4. Comply with Card Organization rules. |
| 5. The Bank is responsible for all funds held in reserve. | 5. Retain a signed copy of this Disclosure Page. |

The responsibilities above do not replace the terms of the Merchant Agreement and are provided to ensure the Merchant understands some important obligations of each party and that the Bank is the ultimate authority should the Merchant experience any problems.

Merchant Resources:
You may download "Visa Regulations" from Visa's website at: http://usa.visa.com/merchants/operations/op_regulations.html
You may download "MasterCard Rules" from MasterCard's website at: http://www.mastercard.com/us/merchants/support/rules.html
You may download additional merchant information from Discover's website at: http://www.discovernetwork.com/merchant/rules.html

| X ✱ _Gaurav Mohindra_ | ✱ GAURAV MOHINDRA | ✱ PRESIDENT | ✱ 4/9/2015 |
|---|---|---|---|
| Merchant's Signature | Name (printed) | Title | Date |

For questions regarding merchant processing, contact: TransNational Bankcard, Inc. (1-888-99TNBCI) | 9800 W. Bryn Mawr Ave, 6th Floor | Rosemont, IL 60018
Billing disputes must be forwarded, in writing, to customer service within 60 days of the date of the statement and/or notice.

## Pricing Schedule & Fees (If Applicable)

| Retail (if any % is swiped) | | Qualified Retail Discount Rate | Transaction Fee | MOTO/Internet (100% Keyed Only) | | Qualified Moto Discount Rate | Transaction Fee |
|---|---|---|---|---|---|---|---|
| | | I.C. COST PLUS .25%* | $0.20 .15 | | | I.C. COST PLUS .25%* | $0.20 .15 Merchant must use AVS |
| Dial Pay Transactions | $0.95 | T&E Draft Capture Transactions | $0.25 | Mid Qualified Surcharge | 1.85% | Chargeback Fee | $25.00 |
| Access Fee | $0.02 | Debit Transaction | $0.25 | Non Qualified Surcharge | 1.85% | Retrieval Fee | $15.00 |
| Voice Authorization | $0.95 | Debit Gateway (Monthly) | $5.00 | Visa/MC/Discover Per Item Fees | $0.10 | Wire Transfer Fee | $35.00 |
| Voice Authorization with AVS | $1.90 | EBT Transaction Fee | $0.25 | Monthly Minimum Discount | $25.00 | Web Monitoring Fee | $6.95 |
| Address Verification (monthly) | $12.00 | Annual Fee | $95.00 | Monthly Basic Service Fee | $20.00 | Data Guard | $3.95 |
| Batch Header | .25 | ACH Return Fee | $25.00 | EFT Fee | $20.00 | | |

*The foregoing discount rate, per item and authorization fees are based upon Merchant's complying with all processing requirements as established by the applicable governing authority of the payment type which qualifies Merchant for the most favorable interchange rates available for such payment type. Transactions that do not qualify for the most favorable interchange rates will be subject to surcharges up to the foregoing amounts in addition to the rate quoted. See the Card Services Terms and Conditions for more information regarding non-qualifying surcharges. In addition to the per item fee, all Debit transactions include fees assessed by the applicable network organization.

## American Express

By signing below, I represent that I have read and am authorized to sign and submit this application on behalf of the entity above and all information I have provided herein is true, complete and accurate. I authorize American Express Travel Related Services Company, Inc. ("American Express") to verify the information in this application and receive and exchange information about me personally, including by requesting reports from consumer reporting agencies. I authorize and direct American Express to inform me directly, or through the entity above, of reports about me that American Express has requested from consumer reporting agencies. Such information will include the name and address of the agency furnishing the report. I understand that upon American Express' approval of the entity indicated above to accept the American Express Card, the terms and conditions for American Express® Card Acceptance ("Terms and Conditions") will be sent to such entity along with a Welcome Letter. By accepting the American Express Card for the purchase of goods and/or services, or otherwise indicating its intention to be bound, the entity agrees to be bound by the Terms and Conditions.

X _Gaurav Mohindra_    GAURAV MOHINDRA    PRESIDENT    4/30/2015
    Merchant's Signature       Name (printed)       Title       Date

## Acceptance of Merchant Application and Terms & Conditions / Merchant Authorization

Your Card Services Agreement is between Global Payments Direct, Inc. ("Global Direct"), the Merchant named above and the Member named below ("Member"). Member is a member of Visa, U.S.A., Inc. ("Visa") and MasterCard International, Inc. ("MasterCard"); Global Direct is a registered independent sales organization of Visa, a member service provider of MasterCard and a registered acquirer of Discover Financial Services, Inc. ("Discover"). A copy of the Card Services Terms & Conditions, revision number 10/13 TNB, has been provided to you. Please sign below to signify that you have received a copy of the Card Services Terms & Conditions and that you agree to all terms and conditions contained therein. If this Merchant Application is accepted for card services, Merchant agrees to comply with the Merchant Application and the Card Services Terms & Conditions as may be modified or amended in the future. If you disagree with any Card Services Terms & Conditions, do not accept services. IF MERCHANT SUBMITS A TRANSACTION TO GLOBAL DIRECT HEREUNDER, MERCHANT WILL BE DEEMED TO HAVE ACCEPTED THE CARD SERVICES TERMS & CONDITIONS. By your signature below on behalf of Merchant, you certify that all information provided in this Merchant Application is true and accurate and you authorize Global Direct, and/or Member's behalf, to initiate debit entries to Merchant's checking account(s) in accordance with the Card Services Terms & Conditions. In addition, by your signature below, on behalf of Merchant you authorize Global Direct and/or TransNational Bankcard to order a consumer credit report on you, Merchant and each of Merchant's officers, partners, and/or owners, as well as subsequent consumer credit reports, which may be required or used in conjunction with the maintenance, updating, renewal or extension of the services provided hereunder, or in conjunction with reviewing, taking collection action on, or other legitimate purposes associated with the Merchant account.

X _Gaurav Mohindra_ ✱ GAURAV MOHINDRA ✱ PRESIDENT ✱ 4/30/2015
    Merchant's Signature       Name (printed)       Title       Date

X _____
    Merchant's Signature       Name (printed)       Title       Date

X _____
    Signing for Global Payments Direct, Inc.       Name (printed)       Title       Date

X _____
    Signing for Member       Name (printed)     Wells Fargo Bank       Name of Member (printed)       Date

## Personal Guaranty

I/We hereby irrevocably guarantee to Global Direct and Member, their successors and assigns, the full, prompt, and complete performance of Merchant and all of Merchant's obligations under the Card Services Agreement, including but not limited to all monetary obligations arising out of Merchant's performance or non-performance under the Card Services Agreement, whether arising before or after termination of the Card Services Agreement. This guaranty shall not be discharged or otherwise affected by any waiver, indulgence, compromise, settlement, extension of credit, or variation of terms of the Card Services Agreement made by or agreed to by Global Direct, Member, and/or Merchant. I/We hereby waive any notice of acceptance of this guaranty, notice of nonpayment or nonperformance of any provision of the Card Services Agreement by Merchant, and all other notices or demands regarding the Card Services Agreement. I/We agree to promptly provide to Global Direct and Member, any information requested by any of them from time to time concerning my/our financial condition(s), business history, business relationships, and employment information. I/We agree that Global Direct and Global Direct (on behalf of Member) may order a consumer credit report on me, Merchant and each of Merchant's officers, partners, and/or owners, as well as subsequent consumer credit reports, which may be required or used in conjunction with the maintenance, updating, renewal or extension of the services provided hereunder, or in conjunction with reviewing, taking collection action on, or other legitimate purposes associated with the Merchant account.

I/We have read, understand, and agree to be bound by the Card Services Terms & Conditions provided to Merchant and those terms and conditions contained in this Merchant Application.

X _Gaurav Mohindra_ ✱ GAURAV MOHINDRA ✱ PRESIDENT ✱ 4/30/2015
    Merchant's Signature       Name (printed)       Title       Date

X _____
    Merchant's Signature       Name (printed)       Title       Date

**Menjivar Att. T**
**Page 5 of 7**

## Cardholder Data Storage Compliance & Service Provider

***PCI DSS and card association rules prohibit storage of track data under any circumstances. If you or your POS system pass, transmit, store or receive full cardholder's data, then the POS software must be a PA DSS (Payment Application Data Security Standard) compliant or you (Merchant) must validate PCI DSS compliance (see 1(b) below and questions 3 and 4 must be completed.) If you use a payment gateway, they must be PCI DSS compliant.***

1. Have you ever experienced an Account Data Compromise "ADC"? □ Yes ☒ No

If "YES", provide date of compromise: _____
  a. Have you validated PCI DSS (Payment Card Industry Data Security Standard) compliance in the past 12 months? □ Yes □ No
    If "YES", go to 1(b); If "NO", go to Question 2
  b. Date of compliance, report on compliance, "ROC" or Self Assessment Questionnaire "SAQ": _____
  c. What is the name of your Qualified Security Assessor "QSA" or Self Assessment Questionnaire (circle one "SAQ") A B C D
  d. Date of last scan: _____
  e. Approved scanning vendor's name: _____

2. As required under the Payment Card Industry Data Security Standard (PCI DSS), Merchant declares and confirms the following:
  a. Merchant is in compliance with all PCI DSS requirements □ Yes □ No
  b. Merchant's point of sale software, system or applications, do not store sensitive authentication data after authorization □ Yes □ No
  c. Merchant will maintain full PCI DSS compliance at all times and will notify Global Payments of any changes to its point of sale software, system or application □ Yes □ No

3. Are you using a "Dial-Up" Terminal, "TTC" Touch Tone Capture, or Virtual Terminal or Software from Global Payments? □ Yes ☒ No

4. Do your transactions process through any other service provider (i.e. web hosting companies, gateways, corporate office?) ☒ Yes □ No
If "YES", go to question 5; If "NO", please skip to next section

5. What primary service provider/software developer did you purchase your point of sale "POS" application from (i.e. software, gateway)?

    USA e PAY
  a. What is the name of the Service Provider/Software
    Developer's application? _____
    Software Version #: _____
  b. Do your transactions process through any other service provider (i.e. web hosting companies, gateways, corporate offices?) ☒ Yes □ No
    If "YES", name the other service provider: USA e PAY
    If "NO", however, Merchant is electronic commerce, please
    Provide the name of ISP (web host): _____

6. Do you or your service provider(s) receive, pass, transmit, or store the full cardholder number "FCN", electronically? □ Yes ☒ No
If "YES", where is your card data stored? □ Merchant's headquarters/corp office only
□ Merchant Location Only □ Primary Service Provider □ Other Service Provider
□ Both Merchant and Service Provider(s) □ All Apply

## Complete if your sales are generated through mail/telephone/internet

1. Description of Product Sold: LEGAL SERVICES
2. Who owns product? ☒ Merchant □ Vendor (Drop ship required)
List vendor name(s): _____
3. How do you advertise? □ TV or Radio □ Catalog/Direct Mail/Flyers
□ Internet (list web page address): _____
4. How does the customer order the product?
☒ Telephone □ Mail □ Fax □ Internet
5. Do your customers sign a service agreement with you? □ Yes ☒ No
If "YES", list the timeframe of the agreement
□ Monthly □ Quarterly □ Annually
6. Are consumers required to provide a deposit? ☒ Yes □ No
Delivery time frame:
□ 0-7 Days ☒ 8-14 Days □ 15-30 Days □ Over 30 Days

7. What is your return policy? SATISFACTION GUARANTEED
8. When you receive an authorization, how long before the merchandise is shipped? WITHIN 10 BUS DAYS
9. In what geographic areas will the product be marketed and sold? _____
10. Does merchant offer warranties, dues, subscriptions, memberships, or other extended services? □ Yes ☒ No
Duration of extended service or benefit (in weeks): _____
11. Does the merchant use a Fulfillment House? □ Yes ☒ No
Name of Fulfillment House: _____
12. Was the fulfillment house inspected? □ Yes □ No
Fulfillment House address: _____

## Merchant Site Survey Report – to be completed by sales representative

Merchant Location: □ Retail location with store front ☒ Office building □ Warehouse □ Residence □ Other: _____
The Merchant □ Owns ☒ Leases Landlord Name: HEARTLAND COMMERCIAL Landlord #: 630-734-9460
Does the amount of inventory and merchandise on shelves and floor appear consistent with the type of business? □ Yes □ No
Merchant appears to be conducting business as represented in this application: □ Yes □ No
Did you confirm the identity of the person signing the contract? Rick Ciesla □ Yes □ No

I hereby verify that this application has been fully completed by Merchant Applicant and that I have physically inspected the business premises of the merchant at this address and the information stated above is true and correct to the best of my knowledge and belief.

X _____
Verified and Inspected By (print)           Representative Signature

X GKM X
Merchant Initials



# Attachment U

Ashton Asset | Ashton Asset

http://www.ashtonasset.com/



**ASHTON ASSET MANAGEMENT**



**HOMEPAGE**          **COMPANIES**          **TEAM**          **CONTACT**

**Menjivar Att. U**
**Page 1 of 4**

8/20/2015 1:15 PM

Ashton Asset | Companies

http://www.ashtonasset.com/companies/



### Ashton Asset Management Inc.

Ashton Asset Management is a privately held holding corporation based in Westmont, IL. The company primarily focuses in Distressed Consumer Receivables, Real Estate Development, Residential Mortgage Lending, and the Hospitality Business.



### Stark Consulting

Stark Consulting is an active debt buying firm concentrating in distressed consumer receivables. With asset recovery offices based in Westmont, IL has successfully liquidated over $2.5b in consumer debt. Having established strategic industry relationships, Stark has consistently delivered superior results for our employees, partners, and investors. As an active member of the DBA and ACA we take an active leadership position in the industry.



### Aura Development Inc.

Aura Development Inc. is a Real Estate Development firm specializing in residential real estate development. Having delivered over 100 homes to satisfied buyers, Aura prides itself in building community relationships. The company currently holds a portfolio of rental units and is actively managing and growing the same.



### Ashton Home Solutions Inc.

Ashton Home Solutions is a diversified real estate investment management firm headquartered in Chicago, Illinois. AHS invests in and proactively manages distressed assets and notes throughout the United States, with properties currently located in over 20 states. AHS offers home owners solutions that traditional banks cannot underwrite.



### MHG Hospitality Inc.

MHG Hospitality was formed in 1996 and has successfully managed hotels throughout the Chicago area. Comprised of experienced hoteliers from the United States, Canada and the United Kingdom, MHG Hospitality's senior management team has been the driving force of the company's success, which includes numerous awards for our operations, marketing, design and renovation services. We pride ourselves on our customer first driven focus.

HOMEPAGE          COMPANIES          TEAM          CONTACT

**Menjivar Att. U**
**Page 2 of 4**





  

## *Hirsh Mohindra*

### President

Hirsh Mohindra is the President / Principal of Ashton Asset Management. Mr. Mohindra's primary role is shaping the strategic vision of the organization. Mr. Mohindra began his career by developing and managing hotel properties in the Chicago area. Since then, he went on to develop residential real estate and also evolved into purchasing distressed consumer receivables and distressed mortgage notes. With a keen understanding of the business environment around him, Mr. Mohindra enjoys taking an active roll in operations with his senior management team and also with his long standing employees in many sectors.

Mr. Mohindra has a BBA in economics from Benedictine University and an executive MBA from Cornell University.

## *Gaurav Mohindra*

### Principal

Gaurav Mohindra spearheads corporate strategy and tactical legal initiatives for the organization. Mr. Mohindra prudently manages the organization's resources within internal compliance guidelines and manages investor relations. Mr. Mohindra advocates for the organization, its mission, and is the key liaison with strategic partners. Along with managing the organization's investments, Mr. Mohindra is a partner in the law firm Ravani & Mohindra.

Mr. Mohindra holds a BS/MS from DePaul University and a JD from the Univ. of NH.

## *Preetesh Patel*

### Vice President – Asset Recovery

Preetesh Patel has been with Ashton Asset Management for over 10 years. With vast experience in managing the organization's operational segments, Mr. Patel currently manages and executes the Asset Recovery division of the company. Mr. Patel's strong direction has led to significant growth and value add for this division. Mr. Patel plays an active role in the strategic development and implementation of the company's growth initiatives.

Mr. Patel hold a B.Sc. in Computer Information Systems.

## *Kamran Bashir*

### Vice President – Hospitality

Kamran Bashir has been with Ashton Asset Management since 1999. Mr. Bashir coordinates, manages, and monitors the workings of various departments in the hospitality division. He is directly responsible for the overall financial management, planning, systems and controls for MHG Properties. With a "customer first" driven team, Mr. Bashir has been consistently delivering top results to the company's objectives.

Mr. Bashir is a graduate from Cornell University's School of Hospitality

## *Ian Erdos*

### General Counsel

Ian Erdos has been General Counsel to Ashton Asset Management for over 12 years. Mr. Erdos has provided senior management with effective advice on company strategies and their implementation, manages the legal function, and obtains and oversees the work of outside counsel. Mr. Erdos has been directly involved in complex business transactions and in negotiating critical contracts.

Mr. Erdos is a graduate of Chicago – Kent Law School.

**HOMEPAGE**          **COMPANIES**          **TEAM**          **CONTACT**

**Menjivar Att. U**
**Page 3 of 4**

Ashton Asset | Contact

http://www.ashtonasset.com/contact/



### ASHTON ASSET MANAGEMENT

**500 Quail Ridge Dr**

500 Quail Ridge Dr, Westmont, IL 60559

Save

View larger map

35th St

35th St

Bronswood Cemetery

Google

Map [Report a map error]

**Contact Form**

Your Full Name *

Email *

Message

CONTACT US

PH: 630-343-0571

**500 QUAIL RIDGE DRIVE
WESTMONT, IL. 60559**

info@ashtonasset.com

| HOMEPAGE | COMPANIES | TEAM | CONTACT |
|---|---|---|---|

**Menjivar Att. U
Page 4 of 4**

1 of 1

8/20/2015 1:26 PM

# Attachment V

10/21/2015                                     Regus



# Online Virtual Office Agreement

**Agreement Date : July 16, 2015**      **Confirmation No : 6402606**

## Business Center Details

**CA, Irvine - Irvine Center Drive (HQ)**

| | |
|---|---|
| **Address** | 7545 Irvine Center Drive |
| | Irvine Business Center |
| | Suite 200 |
| | Irvine |
| | CALIFORNIA |
| | 92618 |
| | United States of America |
| **Sales Manager** | Natasha Goff |

## Client Details

| | |
|---|---|
| **Company Name** | Stark |
| **Contact Name** | Hirsh Mohindra |
| **Address** | ███████████ |
| | Chicago |
| | Illinois |
| | United States of America |
| **Phone** | 312████ |
| **Email** | gmohindra@████████ |

## Virtual Office Payment Details  (exc. tax and exc. services)

**Virtual Office Type :  Mailbox Plus**

| | | |
|---|---|---|
| **Initial Payment :** | **First month's fee :** | $ 40.77 |
| | **One Time Registration Fee :** | $ 49.00 |
| | **Service Retainer :** | $ 158.00 |
| | Total Initial Payment : | **$ 247.77** |
| **Monthly Payment :** | Total Monthly Payment : | **$ 79.00** |

| **Service Provision :** | **Start Date** | July 16, 2015 | **End Date** | July 31, 2016 |
|---|---|---|---|---|

All agreements end on the last calendar day of the month.

## Terms and Conditions

We are Regus Management Group, LLC, the "Provider". This Agreement incorporates our terms of business set out on the attached Terms and Conditions and House Rules which you confirm you have read and understood. We both agree to comply with those terms and our obligations as set out in them. This agreement is binding from the agreement date and may not be terminated once it is made, except in accordance with its terms. Note that the Agreement does not come to an end automatically. See "Cancellation" section of your terms and conditions.

AGREEMENT TO ARBITRATE; CLASS ACTION WAIVER: Any dispute or claim relating in any way to this agreement shall be resolved by binding arbitration administered by the American Arbitration Association in accord with its Commercial Arbitration Rules (available at www.adr.org), except that you or the Provider may assert claims in small claims court and the Client and the Provider may pursue court actions to remove you, or prevent your removal, from the Center if you do not leave when this agreement terminates. The arbitrator shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this agreement. The arbitrator shall not conduct arbitration as a class or representative action. The Client and the Provider acknowledge that this agreement is a transaction in interstate commerce governed by the Federal Arbitration Act. The Client and the Provider agree to waive any right to pursue any dispute relating to this agreement in any class, private attorney general, or other representative action.

✓   I accept the terms and conditions

Download the house rules   **Menjivar Att. V**
**Page 1 of 4**

10/21/2015                                                Regus

**Confirm by typing your name in the box below**

Name :    hirsh mohindra                          on behalf of Stark

                                                                                     Signed on
                                                                                     July 16, 2015
I confirm these details are correct to the best of my knowledge

**Payment Details**

Card Type : Visa
Name on Card : Gaurav Mohindra            ✓ I authorise the Provider to debit my credit card for the total initial payment
Card Number : **** **** **** 8064            above plus applicable TAX/VAT and for all future charges incurred thereafter,
Expiry Date : ████                           unless another form of payment is provided.

**Menjivar Att. V**
**Page 2 of 4**

10/21/2015                                                    Regus

 **Regus**                          # Online Virtual Office Agreement

---

**Agreement Date : July 16, 2015**     **Confirmation No : 6402606**

## Business Center Details                    ## Client Details

**CA, Irvine - Irvine Center Drive (HQ)**     **Company Name**     Stark

| | | **Contact Name** | Hirsh Mohindra |
|---|---|---|---|
| **Address** | 7545 Irvine Center Drive | | |
| | Irvine Business Center | **Address** | ▇▇▇▇▇▇▇▇▇ |
| | Suite 200 | | |
| | Irvine | | Chicago |
| | CALIFORNIA | | Illinois |
| | 92618 | | ▇▇▇▇ |
| | United States of America | | United States of America |
| **Sales Manager** | Natasha Goff | | |
| | | **Phone** | 312▇▇▇▇ |
| | | **Email** | gmohindra@▇▇▇▇▇ |

## Virtual Office Payment Details   (exc. tax and exc. services)

**Virtual Office Type :**   Mailbox Plus

**Initial Payment :**

|  |  |
|---|---|
| **First month's fee :** | $ 40.77 |
| **One Time Registration Fee :** | $ 49.00 |
| **Service Retainer :** | $ 158.00 |
| **Total Initial Payment :** | **$ 247.77** |

| **Monthly Payment :** | Total Monthly Payment | **$ 79.00** |
|---|---|---|

| **Service Provision :** | **Start Date** | July 16, 2015 | **End Date** | July 31, 2016 |
|---|---|---|---|---|

All agreements end on the last calendar day of the month.

## Terms and Conditions

We are Regus Management Group, LLC, the "Provider". This Agreement incorporates our terms of business set out on the attached Terms and Conditions and House Rules which you confirm you have read and understood. We both agree to comply with those terms and our obligations as set out in them. This agreement is binding from the agreement date and may not be terminated once it is made, except in accordance with its terms. Note that the Agreement does not come to an end automatically. See "Cancellation" section of your terms and conditions.

AGREEMENT TO ARBITRATE; CLASS ACTION WAIVER: Any dispute or claim relating in any way to this agreement shall be resolved by binding arbitration administered by the American Arbitration Association in accord with its Commercial Arbitration Rules (available at www.adr.org), except that you or the Provider may assert claims in small claims court and the Client and the Provider may pursue court actions to remove you, or prevent your removal, from the Center if you do not leave when this agreement terminates. The arbitrator shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this agreement. The arbitrator shall not conduct arbitration as a class or representative action. The Client and the Provider acknowledge that this agreement is a transaction in interstate commerce governed by the Federal Arbitration Act. The Client and the Provider agree to waive any right to pursue any dispute relating to this agreement in any class, private attorney general, or other representative action.

✓   **I accept the terms and conditions**

Download the house rules   **Menjivar Att. V**
**Page 3 of 4**

10/21/2015                                                Regus

**Confirm by typing your name in the box below**

Name :  hirsh mohindra          on behalf of Stark                        **Signed on**
                                                                          **July 16, 2015**

**I confirm these details are correct to the best of my knowledge**

**Payment Details**

**Card Type :** Visa
**Name on Card :** Gaurav Mohindra                      ✓  I authorise the Provider to debit my credit card for the total initial payment
**Card Number :** **** **** **** 8064                       above plus applicable TAX/VAT and for all future charges incurred thereafter,
**Expiry Date :** ▮▮▮                                        unless another form of payment is provided.

**Menjivar Att. V**
**Page 4 of 4**

# Attachment W

Regus                                                    Page 1 of 2

# Regus                                    Online Virtual Office Agreement

---

**Agreement Date : July 16, 2015        Confirmation No : 6402612**

| Business Center Details | | Client Details | |
|---|---|---|---|
| **CA, Bakersfield - 4900 California Avenue** | | **Company Name** | Stark |
| Address | 4900 California Avenue | Contact Name | Hirsh Mohindra |
| | Tower B, 2nd Floor | Address | |
| | Bakersfield | | |
| | California | | Chicago |
| | CA 93309 | | Illinois |
| | United States of America | | United States of America |
| Sales Manager | Natasha Goff | Phone | 312 |
| | | Email | gmohindra@ |

**Virtual Office Payment Details** (exc. tax and exc. services)

**Virtual Office Type :  Mailbox Plus**

| Initial Payment : | | |
|---|---|---|
| | First month's fee : | $ 40.77 |
| | One Time Registration Fee : | $ 49.00 |
| | Service Retainer : | $ 158.00 |
| | Total Initial Payment : | $ 247.77 |

| Monthly Payment : | | |
|---|---|---|
| | Total Monthly Payment : | $ 79.00 |

| Service Provision : | Start Date | July 16, 2015 | End Date | July 31, 2016 |
|---|---|---|---|---|

All agreements end on the last calendar day of the month.

---

### Terms and Conditions

We are Regus Management Group, LLC, the "Provider". This Agreement incorporates our terms of business set out on the attached Terms and Conditions and House Rules which you confirm you have read and understood. We both agree to comply with those terms and our obligations as set out in them. This agreement is binding from the agreement date and may not be terminated once it is made, except in accordance with its terms. Note that the Agreement does not come to an end automatically. See "Cancellation" section of your terms and conditions.

AGREEMENT TO ARBITRATE; CLASS ACTION WAIVER: Any dispute or claim relating in any way to this agreement shall be resolved by binding arbitration administered by the American Arbitration Association in accord with its Commercial Arbitration Rules (available at www.adr.org), except that you or the Provider may assert claims in small claims court and the Client and the Provider may pursue court actions to remove you, or prevent your removal, from the Center if you do not leave when this agreement terminates. The arbitrator shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this agreement. The arbitrator shall not conduct arbitration as a class or representative action. The Client and the Provider acknowledge that this agreement is a transaction in interstate commerce governed by the Federal Arbitration Act. The Client and the Provider agree to waive any right to pursue any dispute relating to this agreement in any class, private attorney general, or other representative action.

[✓]  I accept the terms and conditions

                                         Download the house rules

**Menjivar Att. W**
**Page 1 of 7**

Regus

Page 2 of 2

**Confirm by typing your name in the box below**

Name : | hirsh mohindra | on behalf of Stark

Signed on
July 16, 2015

I confirm these details are correct to the best of my knowledge

**Payment Details**

Card Type : Visa
Name on Card : Gaurav Mohindra
Card Number : **** **** **** 8064
Expiry Date :

☑ I authorise the Provider to debit my credit card for the total initial payment above plus applicable TAX/VAT and for all future charges incurred thereafter, unless another form of payment is provided.

https://serviceagreement.regus.com/ServiceAgreement.aspx?id=806aa1fa877ad6ad&...    11/16/2015

# Untitled

### Sherri Crow

Tue 8/18/2015 12:05 PM

To:Sonia Morales <Sonia.Morales@regus.com>;



Stark has been harassing  his wife she is aDr. and saying that she owes them money which she does not..
he believes there is fraud going on and they are using regus as the contact. They have been very rude and
hanging up and constantly calling.  If you would like to talk about this further please call him.

Thank You,
Sherri Crow
Customer Service Representative
Regus
4900 California Avenue, Tower B-210, Bakersfield, CA, 93309, USA
T + 1-661-377-1847     F + 1-661-377-1848
Sherri.Crow@regus.com

↩ Reply all |∨    🗑 Delete    Junk |∨    •••          ✕

# Re: In Regards To Our Current Office

SM   **Sonia Morales**                                    👍   ↩ Reply all |∨
     To: Stephanie Palma <stephanie@ashtonasset.com>;  ⌄        Wed 8/5/2015 12:26 PM

Sent Items

    You forwarded this message on 8/5/2015 12:36 PM

Good Afternoon Stephanie,
     Yes, I can do that for you.

Thank You,
*Sonia Morales*
General Manager
Regus
4900 California Avenue, Tower B-210, Bakersfield, CA, 93309, USA
T + 1-661-377-1847     F + 1-661-377-1848
sonia.morales@regus.com

---

**From:** Stephanie Palma <stephanie@ashtonasset.com>
**Sent:** Wednesday, August 5, 2015 12:23 PM
**To:** Sonia Morales
**Subject:** In Regards To Our Current Office

Hello Sonia Morales,

hope all is well,
My name is hilda, Im contacting you in regards to an office that we have with Regus.Under the
name Stark, our address 4900 California Ave, Tower B, 2nd floor, Bakersfield, CA 93309.  I would like
to change our current office number to 844-564-1074     .


--
Thank you,
Hilda Gutierrez
Administrative Assistant

**Menjivar Att. W**
**Page 4 of 7**



Ashton Asset Management
500 Quail Ridge Drive
Westmont, IL 60559
Phone: 630.297.4339

↩ Reply all |∨    🗑 Delete    Junk |∨    •••                    ✕

# CS208003 - Customer service issue at CA, Bakersfield - 4900 California Avenue requires follow up

CU   **customer.service@regus.com**                     ↩ Reply all |∨

To: Bill Groody;  Cc: Sonia Morales; California Bakersfield California Avenu ≫          Mon 10/12/2015 4:00 AM

Inbox

Dear William

Your centre team has not responded to this customer service request (ticket 208003), received on 08-Oct-2015. Since it's now more than 2 days old, it has been escalated for your attention and requires immediate action. Please ensure that the customer is responded to appropriately within the next 24 hours and the ticket updated in POS, by the centre team, to reflect actions taken.

Company Name: Stark
Contact Name: Hirsh Mohindra
Contact Telephone: 312███████
Contact Email: preeteshp77@gmail.com

Initial comments:
From: N███████R███████
Sent: 08 October 2015 05:36
To: Customer Service
Subject: criminal complaints

Company name is Stark
People soft # 736392
We are getting multiple calls on our Regus telephone line for the company Stark. Most of the calls that we are getting are calls asking if we have a company name Stark and they are customers are complaining that they are getting harassed by the phone calls asking them to pay back a loan from year 2012. The customers are complaining because they tell us that they have never took out a loan and that the Rep. from Stark has all the customer's personal information such as : social security number, address, date of birth and phone number. Please assist us on how to take further legal action.

Thank you

Customer Service team

**Menjivar Att. W
Page 6 of 7**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
The information contained in this e-mail (including any attachments) is intended
only for the personal and confidential use of the recipient(s) named above. If
you are not an intended recipient of this message, please notify the sender by
replying to this message and then delete the message and any copies from your
system. Any use, dissemination, distribution, or reproduction of this message
by unintended recipients is not authorised and may be unlawful.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# Attachment X

# Stark Recovery Scam

## Stark Recovery Scam

By crystal cranmore

Published 01/02 2016 06:36PM          Updated 01/02 2016 06:36PM          LAKE ARIEL, WAYNE COUNTY

The past couple of weeks have been nerve wracking for Patricia Criscuola-Horvath.

The Lake Ariel woman has been receiving phone calls from people claiming to represent a debt collection agency they call "Stark Recovery."

The most recent call was about a week ago.

"She said I owed then $2,430 and now it's a legal matter and we'll be going to court," said Criscuola-Horvath.

She says the woman told her she took out a payday loan in 2013 and asked her to verify personal information.

"I knew that it wasn't real, but I was scared," said Criscuola-Horvath.

She is not the only person that has reportedly been targeted.

The Stark Agency is a debt collection agency based in Wisconsin.

On their website, they say "Stark Recovery" has been using their name to threaten and scam people who may have applied for loans.

The president of the company, Pauline Kussart, says they've been inundated with calls from victims.

"Out of the 20 calls a day, at least two are victims financially," said Kussart.

Kussart says the FBI is investigating and in the meantime, they've posted links on their website to the FTC and FBI so people can report scams.

Local authorities say if you find yourself in a similar situation, request paperwork and never verify information over the phone.

We tried calling Stark Recovery, but no one answered the phone. Criscuola-Horvath says she is

**Menjivar Att. X**
**Page 1 of 2**

now closely monitoring her accounts and is warning others to do the same.

"I got to do what I got to do to protect myself, but there is so many people out there that get ripped off that don't know about it," said Criscuola-Horvath.

Copyright 2016 Nexstar Broadcasting, Inc. All rights reserved. This material may not be published, broadcast, rewritten, or redistributed.

**2 Comments**      **pahomepage**                                    1  **Login** ⌄

**Recommend**      ⤳ **Share**                                    Sort by Best ⌄



Join the discussion…

**Brad Richardson** · a day ago
I need help I Just got a call from the stark place claiming same story that I took a payday loan and had to pay or I would get sued. It just didn't set right with me because I've never had a payday loan. What can I do this just happened 30mins ago

⌃  ⌄ · Reply · Share ›

> **Romie** ⇒ Brad Richardson · a day ago
> tell them you have the check and come and get it b/c you don't want to send it in the mail. they'll ask for your address. You say…wait, you should have that right? I'm waiting come over now. then ignore it b/c they won't show. Don't give them any info at all.
>
> ⌃  ⌄ · Reply · Share ›

# Attachment Y

# ORIGINAL

## OFFICIAL TRANSCRIPT PROCEEDING

## FEDERAL TRADE COMMISSION

MATTER NO.  ███████████

TITLE  STARK LAW, LCC

DATE  RECORDED:  DATE UNKNOWN
TRANSCRIBED:  JANUARY 8, 2016
REVISED:  JANUARY 14, 2016

PAGES  1 THROUGH 7

VIDEO PA HOMEPAGE WBRE AND WYOU

FEDERAL TRADE COMMISSION

I N D E X

| RECORDING: | PAGE: |
| --- | --- |
| Video PA Homepage WBRE and WYOU | 4 |

3

```
1                    FEDERAL TRADE COMMISSION

2

3    In the Matter of:          )

4    Stark Law                  )   Matter No. ████

5                               )

6    ----------------------------)

7                                   Date Unknown

8

9

10

11          The following transcript was produced from a

12   digital recording provided to For The Record, Inc. on

13   January 7, 2016.

14

15

16

17

18

19

20

21

22

23

24

25
```

4

1              **P R O C E E D I N G S**

2                   -    -    -    -    -

3          **VIDEO PA HOMEPAGE WBRE AND WYOU**

4              MARK:  -- scam has some people on high alert

5      tonight.  According to officials, consumers around the

6      country have been intimidated into making payments for

7      alleged defaulted loans.  Eyewitness News Reporter

8      Crystal Cranmore is live in the studio tonight with the

9      details.

10             Crystal?

11             CRYSTAL CRANMORE:  Well, good evening, Mark.  A

12     debt collection agency based in Wisconsin says a

13     fraudulent company has been using their name to scam

14     people out of hundreds, sometimes thousands, of dollars.

15     One woman we spoke with from Wayne County says she's been

16     a target.

17             PATRICIA CRISCUOLA-HORVATH:  These are all the

18     phone numbers that they called from.

19             CRYSTAL CRANMORE:  The past couple of weeks

20     have been nerve-wracking for Patricia Criscuola-Horvath.

21     The Lake Ariel woman has been receiving phone calls from

22     people claiming to represent a debt collection agency

23     they call Stark Recovery.  The most recent call was about

24     a week ago.

25             PATRICIA CRISCUOLA-HORVATH:  She said I owed

**Menjivar Att. Y**
**Page 4 of 7**

5

1    them $2,430 and that this is now a legal matter and will

2    be going to court.

3         CRYSTAL CRANMORE:  Criscuola-Horvath says the

4    woman told her she took out a payday loan in 2013 and

5    asked her to verify personal information.

6         PATRICIA CRISCUOLA-HORVATH:  I knew that it

7    wasn't real.  I -- I just -- but I was scared.

8         CRYSTAL CRANMORE:  She's not the only person

9    who's reportedly been targeted.  The Stark Agency is a

10   debt collection agency based in Wisconsin.  On their

11   website, they say Stark Recovery has been using their

12   name to threaten and scam people who may have applied for

13   loans.  The president of the company, Pauline Kussart,

14   says they've been inundated with calls from victims.

15        PAULINE KUSSART:  We get 20 phone calls a day.

16   At least two have -- have truly been victimized

17   financially.

18        CRYSTAL CRANMORE:  Kussart says the FBI is

19   investigating, and in the meantime, they've posted links

20   on their website to the FTC and FBI so people can report

21   scams.  Local authorities say if you find yourself in a

22   similar situation request paperwork and never verify

23   information over the phone.

24        POLICEMAN:  Don't verify that they have your

25   Social Security number.  Like, they'll say, give us your

6

1    whole Social; this is your last four.  Well, the last

2    four may be the only ones they have.

3              RECORDED MESSAGE:  No one is currently

4    available to take your call --

5              CRYSTAL CRANMORE:  We tried calling Stark

6    Recovery, but no one answered the phone.  Criscuola-

7    Horvath says she is now closely monitoring her accounts

8    and is warning others to do the same.

9              PATRICIA CRISCUOLA-HORVATH:  I got to do what I

10   got to do to protect myself, but there's so many people

11   out there that don't know about it.

12             CRYSTAL CRANMORE:  Now, Stark Agency also said

13   that Stark Recovery has somehow been able to use their

14   number to call victims.  We tried calling some of the

15   numbers for Stark Recovery again and no one answered the

16   phone.  If you suspect you've been a victim of any

17   fraudulent activity, you're asked to call your local

18   police department.

19             Reporting live in the studio, Crystal Cranmore,

20   Eyewitness News.

21             **(The video was concluded.)**

22

23

24

25

7

1              **C E R T I F I C A T I O N   O F   T Y P I S T**

2     MATTER NUMBER: ███████ _____

3     CASE TITLE: STARK LAW _____

4     TAPING DATE: DATE UNKNOWN _____

5     TRANSCRIPTION DATE: JANUARY 8, 2016 _____

6     REVISION DATE: JANUARY 14, 2016 _____

7

8        I HEREBY CERTIFY that the transcript contained

9    herein is a full and accurate transcript of the tapes

10   transcribed by me on the above cause before the FEDERAL

11   TRADE COMMISSION to the best of my knowledge and belief.

12

13                   DATED:   JANUARY 14, 2016

14

15                _Sara J. Vance_

16                   SARA J. VANCE

17

18      **C E R T I F I C A T I O N   O F   P R O O F R E A D E R**

19

20        I HEREBY CERTIFY that I proofread the transcript for

21   accuracy in spelling, hyphenation, punctuation and

22   format.

23

24               _Elizabeth M. Farrell_

25               ELIZABETH M. FARRELL

# Attachment Z

State Bar of CA :: Gaurav K███ar Mohindra                                          Page 1 of 1

THE STATE BAR OF CALIFORNIA                              Tuesday, February 16, 2016

ATTORNEY SEARCH

## Gaurav Kumar Mohindra - #256791

**Current Status:** Active

This member is active and may practice law in California.

See below for more details.

### Profile Information

*The following information is from the official records of The State Bar of California.*

| | | | |
|---|---|---|---|
| **Bar Number:** | 256791 | | |
| **Address:** | Bush Chawla Mohindra & Ravani<br>3908 N Cass Ave<br>Westmont, IL 60559 | **Phone Number:** | (630) 325-5557 |
| | | **Fax Number:** | Not Available |
| | | **e-mail:** | Not Available |
| **County:** | Non-California | **Undergraduate School:** | DePaul Univ; Chicago IL |
| **District:** | Outside California | | |
| **Sections:** | None | **Law School:** | Univ. of New Hampshire SOL; Concord NH |

### Status History

| Effective Date | Status Change |
|---|---|
| Present | Active |
| 7/8/2014 | Active |
| 7/1/2014 | Not Eligible To Practice Law |
| 6/10/2008 | Admitted to The State Bar of California |

Explanation of member status

### Actions Affecting Eligibility to Practice Law

| Effective Date | Description | Case Number | Resulting Status |
|---|---|---|---|
| **Disciplinary and Related Actions** | | | |

Overview of the attorney discipline system.

This member has no public record of discipline.

**Administrative Actions**

| | | | |
|---|---|---|---|
| 7/1/2014 | Suspended, failed to pay Bar membr. fees | | Not Eligible To Practice Law |

Start New Search »

Copyright © 2016, The State Bar of California

**Menjivar Att. Z**

http://members.calbar.ca.gov/fal/Member/Detail/256791                              2/16/2016

# Attachment AA



WEBSITE INFORMATION   SEARCH SITE   HOME

*LAWYER SEARCH: ATTORNEY'S REGISTRATION AND PUBLIC DISCIPLINARY RECORD*

Lawyer Registration

How to Submit a Request For Investigation

Rules and Decisions

Ethics Inquiry Program

Publications

New Filings, Hearing Schedules and Clerk's Office

Client Protection Program

Resources & Links

ARDC Organizational Information

ARDC Individual Attorney Record of Public Registration and Public Disciplinary and Disability Information as of February 16, 2016 at 1:15:18 PM:

| Full Licensed Name: | Gaurav Kumar Mohindra |
|---|---|
| Full Former name(s): | None |
| Date of Admission as Lawyer by Illinois Supreme Court: | July 1, 2010 |
| Registered Business Address: | Bush Chawla Mohindra & Ravani<br>4 E Ogden Suite 109<br>Westmont, IL 60559-3506 |
| Registered Business Phone: | (630) 243-4207 |
| Illinois Registration Status: | Active and authorized to practice law  - Last Registered Year: 2016 |
| Malpractice Insurance:<br>(Current as of date of registration;<br>consult attorney for further information) | In annual registration, attorney reported that he/she has malpractice coverage. |

**Public Record of Discipline and Pending Proceedings:**    None

Check carefully to be sure that you have selected the correct lawyer. At times, lawyers have similar names. The disciplinary results displayed above include information relating to any and all public discipline, court-ordered disability inactive status, reinstatement and restoration dispositions, and pending public proceedings. Investigations are confidential and information relating to the existence or status of any investigation is not available. For additional information regarding data on this website, please contact ARDC at (312) 565-2600 or, from within Illinois, at (800) 826-8625.

ARDC makes every effort to maintain the currency and accuracy of Lawyer Search. If you find any typographical errors in the Lawyer Search information, please email registration@iardc.org. For changes to contact information, including address, telephone or employer information, we require that the attorney submit a change of address form. Please consult our Address Change Requests page for details. Name changes require the filing of a motion with the Supreme Court. Please consult our Name Change Requests page for details.

Back to Search Results

New Search

**IARDC ®:online access to registration and discipline information regarding Illinois lawyers presented by the Illinois Attorney Registration & Disciplinary Commission.**

Lawyer Search | Lawyer Registration | How to Submit a Request For Investigation
Rules and Decisions | Ethics Inquiry Program | Publications
New Filings, Hearing Schedules and Clerk's Office | Client Protection Program
Resources & Links | ARDC Organizational Information
Website Information | Search Site | Home

**Menjivar Att. AA**