# PX 21

### SUPPLEMENTAL DECLARATION OF ROBERTO C. MENJIVAR
### PURSUANT TO 28 U.S.C. § 1746

I, Roberto C. Menjivar, hereby declare as follows:

1.      My name is Roberto C. Menjivar.  I am a United States citizen and over eighteen years of age.  I am employed as an investigator with the Federal Trade Commission ("FTC" or "Commission"), a position that I have held for over 12 years.  My office address is 55 West Monroe Street, Suite 1825, Chicago, Illinois 60603.  I have personal knowledge of the facts stated in this declaration, and if called as a witness, I would testify to the same.

2.      As an FTC investigator, my duties have included a number of tasks related to *Federal Trade Commission, et al. v. Stark Law, LLC, et al.*, Case No. 16-cv-3463.  I am the same Roberto C. Menjivar who previously signed a declaration in this case on March 16, 2016, filed as Plaintiffs' Exhibit (PX) 1.  Information that would reveal personally identifiable information has been redacted from the attachments to this declaration.

3.      On March 21, 2016, the FTC and the State of Illinois, Office of the Attorney General (Illinois AG), filed their Complaint for Permanent Injunction and Other Equitable Relief.  On the same day, the FTC and the Illinois AG filed an ex parte motion for a Temporary Restraining Order with Asset Freeze, Appointment of a Receiver, Other Equitable Relief, and Order to Show Cause Why a Preliminary Injunction Should Not Issue (TRO), which the Court granted on March 22, 2016.

4.      Pursuant to the TRO, on March 23, 2016, FTC and Illinois AG staff were present when the court-appointed Temporary Receiver, Gregg Szilagyi of Tailwind Services, LLC (Receiver), and the Receiver's representatives, took possession and control of Defendants' business premises (Immediate Access) located at 500 Quail Ridge Drive, Westmont, Illinois (Defendants' Office).  After the Receiver and the Receiver's representatives secured the

1

Defendants' business premises and pursuant to the TRO, FTC and Illinois AG staff were permitted to enter the premises for the purpose of inspecting and copying the documents and records of the Receivership Defendants. An FTC forensic examiner and contractors imaged computers, servers, hard drives, and other media types at the business premises, and provided a copy of the imaged data to the Receiver.

5.      Defendants' Office is located in an office complex or commercial business area. The Defendants occupied two office suites in one of the buildings located on the property. The first office suite consisted of multiple enclosed rooms or offices, a reception area or front office, and a large open room or space containing approximately 81 desks or workstations. FTC and Illinois AG staff and I labeled the rooms within the suite numerically. We labeled the desks, workstations, file cabinets, tables, and other areas within the rooms alphabetically. This labeling system was used to identify the location of evidence discovered during the Immediate Access.

6.      The second office suite was located on the lower level. According to the Receiver, at the time of the Immediate Access, the Defendants were not occupying or using this second office suite.

7.      At the time of the Immediate Access, Hirsh Mohindra, Gaurav Mohindra, and Preetesh Patel had individual offices at the business premises.

8.      When inspecting and copying hard copy documents during the Immediate Access, FTC and Illinois AG staff adhered to the following protocol: (a) remove the original document from its location; (b) place an FTC "Document Removal Inventory" sheet on the original document, indicate on the "Document Removal Inventory" sheet where the document was originally located using the lettering and numbering system discussed above, and sometimes include a brief description of the document; (c) make a photocopy of the original document; and

2

(d) return the original document to the Receiver. FTC staff used a third party vendor to copy the selected hard copy documents and to assign a bates number to each page. The bates numbers assigned to these pages ranged from FTC-SLL-0000000.001 to FTC-SLL-0006813.

## ELECTRONICALLY STORED INFORMATION

9.      During the Immediate Access, an FTC forensic examiner and contractors imaged 19 computers, hard drives, and other media type located at the Defendants' Office. In addition to these 19 devices, FTC forensic examiners downloaded files and data stored on a web-based or online storage accounts utilized by Defendants.

## DOCUMENTS FOUND AT DEFENDANTS' OFFICE

10.      FTC and Illinois AG staff found various documents at the Defendants' Office. The Receiver and the Receiver's representatives also identified various documents at the Defendants' Office. Attached hereto as **Menjivar Attachments A** through **M** are true and correct copies of some of the documents found at the Defendants' Office.

11.      Attached hereto as **Menjivar Attachment A** are true and correct copies of some of Defendants' scripts and a document titled "New Portfolio 10/2."

12.      Attached hereto as **Menjivar Attachment B** are true and correct copies of some of Defendants' training materials and related notes.

13.      Attached hereto as **Menjivar Attachment C** are true and correct copies of some of the documents that describe the "Bulls Eye" collection methods.

14.      Attached hereto as **Menjivar Attachment D** are true and correct copies of some of Defendants' "Desk Audit" forms, "Call Monitor" forms, "Employee Warning Notice," and "1 on 1 Training Review" forms.

15.     Attached hereto as **Menjivar Attachment E** are true and correct copies of some of Defendants' chargeback notices from credit card and merchant payment processors, as well as an e-mail correspondence dated July 17, 2015, from Preetesh Patel at "preeteshp77@gmail.com" to Hirsh Mohindra at "hirshm@gmail.com."

16.     Attached hereto as **Menjivar Attachment F** are true and correct copies of complaints filed with the following government agencies found at Defendants' Office:  (a) Office of the Ohio Attorney General; (b) Office of the Indiana Attorney General; (c) Office of the Minnesota Attorney General; (d) Office of the Missouri Attorney General; (e) Office of the Illinois Attorney General; (f) State of Tennessee, Division of Consumer Affairs; and (g) State of North Carolina Department of Justice, Consumer Protection Division.

17.     Attached hereto as **Menjivar Attachment G** is a true and correct copy of a cover letter dated March 17, 2016, and Civil Investigative Demand from the State of Minnesota, Office of the Attorney General, directed to Ashton Asset Management, Inc.

18.     Attached hereto as **Menjivar Attachment H** is a true and correct copy of an "Affidavit and Claim, Small Claims" from the State of Michigan, 33rd Judicial District, dated January 25, 2016, to which Gaurav Mohindra appears to be responding on behalf of Ashton Asset Management, Inc.

19.     Attached hereto as **Menjivar Attachment I** are true and correct copies of a receipt from Cartier, a receipt from Alan Rocca Fine Jewelry, a certificate of appraisal from Alan Rocca Fine Jewelry, an account statement from BMW Financial Services, an account statement from Ferrari Financial Services, an account statement from Mercedes-Benz Financial Services, an account statement from Rolls-Royce Motor Cars Financial Services, and a letter from Aston Martin the Americas to Hirsh Mohindra dated March 17, 2016.

20.     As described above, FTC staff, Illinois AG staff, the Receiver, and the Receiver's representatives found various documents at the Defendants' Office. Some of these documents were purchase and sales agreements, receivables purchase agreements, purchase agreements, collection service agreements, agreements, contracts, addendums or schedules to agreements or contracts, and acknowledgement and receipt forms. I collectively refer to these documents as "Agreements."

21.     FTC staff and I have reviewed these Agreements. These Agreements appear to be between Defendants and various third party entities. FTC staff and I have identified three different types of Agreements. The first type of Agreement is for the sale of debt portfolios, debt receivables, delinquent accounts, charged-off accounts, charged-off assets, delinquent consumer debts, and other related accounts (collectively referred to as "Debt Portfolios") between Defendants as the "Seller" and third party entities as the "Purchaser." The second type of Agreement is for the purchase of Debt Portfolios between Defendants as the "Purchaser" and third party entities as the "Seller." The third type of Agreement is for the placement of Debt Portfolios (also known or referred to as "Debt Placement") between Defendants and third party entities referred to as an "Agency" or "Party." According to these Debt Placement Agreements, Defendants engage an Agency to assist in the collection effort of outstanding delinquent consumer debt owned by Defendants. Attached hereto as **Menjivar Attachments J** through **L** are true and correct copies of some of these Agreements.

22.     Attached hereto as **Menjivar Attachment J** are true and correct copies of some of the Agreements between Defendants as the "Seller" and the following third party entities as the "Purchaser": (a) Hylan Debt Fund, LLC.; (b) Sands Recovery Group, LLC.; and (c) Debt Management Partners, LLC.

5

23.    Attached hereto as **Menjivar Attachment K** are true and correct copies of some of the Agreements between Defendants as the "Purchaser" and the following third party entities as the "Seller":  (a) JR Holdings, LLC.; and (b) Graywave Capital, LLC.

24.    Attached hereto as **Menjivar Attachment L** are true and correct copies of some of the Addendum or Schedules to Agreements for the placement of Debt Portfolios between Defendants and Sands Recovery Group.

25.    FTC staff and I identified an Agreement between Mainbrook Asset Partners I, LLC, as the "Seller" and Prudent Investimentos, Ltda., as the "Buyer."  Hirsh Mohindra as "Managing Partner" of Mainbrook Asset Partners I, LLC, signed the Agreement on or about November 27, 2015.  The Agreement also listed Andrew J. Shaevel as "Managing Partner" of Mainbrook Asset Partners I, LLC.  Attached hereto as **Menjivar Attachment M** is a true and correct copy of an Agreement dated November 27, 2015, between Mainbrook Asset Partners I, LLC, as the "Seller" and Prudent Investimentos Ltda., as the "Buyer."

## ELECTRONIC DOCUMENTS

26.    As described above, an FTC forensic examiner and contractors imaged several electronic devices at Defendants' Office.  Among other things, the FTC forensic examiner copied and identified over 400,000 audio files or recordings and made them available to FTC staff.  FTC staff and I have reviewed a few of these recordings.  The audio recordings appear to be recorded telephone conversations between consumers and Defendants' representatives, and recorded telephone conversations between Defendants and various third party entities.  Based on the file names, the audio recordings appear to have been made or created in or around April 2015 through December 2015, and a few of the recordings were made or created in or around October 2012.  I requested and obtained transcripts for a few of these recorded telephone calls.  The

transcripts were prepared according to the following procedures. I sent copies of the audio files or recordings to For The Record, Inc. (For The Record) through the FTC's Accellion Secure File Transfer System. For The Record is a private court reporting company. For The Record transcribed the recordings and sent the transcripts to me. In some instances, For The Record provided revised transcripts for certain recordings. Attached hereto as **Menjivar Attachments N** through **BB** are true and correct copies of transcripts of a few of these recordings.

27. Attached hereto as **Menjivar Attachment N** are true and correct copies of transcripts of two recorded telephone calls involving consumers whose first names are "Reba" and "Mike." According to the filenames of the recordings, the recorded telephone calls occurred on or about December 21, 2015, and December 24, 2015.

28. Attached hereto as **Menjivar Attachment O** are true and correct copies of transcripts of four recorded telephone calls involving a consumer whose first name is "Hicks." According to the filenames of the recordings, three of the recorded telephone calls occurred on or about October 26, 2015, and one recorded telephone call occurred on or about October 30, 2015.

29. Attached hereto as **Menjivar Attachment P** is a true and correct copy of a transcript of a recorded telephone call involving a consumer whose first name is "Aaron." The date of the recorded telephone call is unknown.

30. Attached hereto as **Menjivar Attachment Q** is a true and correct copy of the transcript of a recorded telephone call involving a consumer whose first name is "Adrienne." According to the filename of the recording, the recorded telephone call occurred on or about July 1, 2015.

31. Attached hereto as **Menjivar Attachment R** is a true and correct copy of the transcript of a recorded telephone call involving a consumer whose first name is "Gregorio."

According to the filename of the recording, the recorded telephone call occurred on or about September 8, 2015.

32. Attached hereto as **Menjivar Attachment S** is a true and correct copy of the transcript of a recorded telephone call involving a consumer whose first name is "Joy." According to the filename of the recording, the recorded telephone call occurred on or about April 17, 2015.

33. Attached hereto as **Menjivar Attachment T** is a true and correct copy of a transcript of a recorded telephone call concerning a consumer whose first name is "Julietta." The date of the recorded telephone call is unknown.

34. Attached hereto as **Menjivar Attachment U** is a true and correct copy of the transcript of a recorded telephone call involving a consumer whose name is unknown. According to the filename of the recording, the recorded telephone call occurred on or about April 20, 2015.

35. Attached hereto as **Menjivar Attachment V** is a true and correct copy of the transcript of a recorded telephone call involving a consumer whose first name is "Makeisha." According to the filename of the recording, the recorded telephone call occurred on or about October 30, 2012.

36. Attached hereto as **Menjivar Attachment W** is a true and correct copy of the transcript of a recorded telephone call involving a consumer whose name is unknown. According to the filename of the recording, the recorded telephone call occurred on or about April 17, 2015.

37. Attached hereto as **Menjivar Attachment X** is a true and correct copy of the transcript of a recorded telephone call involving a consumer whose name is Ms. Johnson.

According to the filename of the recording, the recorded telephone call occurred on or about April 22, 2015. The filename also identifies two of Defendants' internal telephone extensions that were involved in the call. The filename identifies that the telephone call took place between internal extensions 401 and 415. The filename does not identify the consumer's telephone number.

38.     Attached hereto as **Menjivar Attachment Y** is a true and correct copy of the transcript of a recorded telephone call involving a consumer whose first name is "Christina." According to the filename of the recording, the recorded telephone call occurred on or about May 19, 2015. The filename also identifies two of Defendants' internal telephone extensions that were involved in the call. The filename identifies that the telephone call took place between internal extensions 460 and 402. The filename does not identify the consumer's telephone number.

39.     Attached hereto as **Menjivar Attachment Z** is a true and correct copy of the transcript of a recorded telephone call involving two unidentified males. According to the filename of the recording (2015_14_10_04_17PM_13123912000_304.mp3), the recorded telephone call occurred on or about October 14, 2015. The filename also identifies the telephone number and Defendants' internal telephone extension that were involved in the call. The filename identifies that the telephone call took place between a telephone number with a 312 area code and Defendants' internal extension 304. FTC staff and I reviewed several recorded telephone conversations involving Defendants' internal extension 304 during which a speaker is identified as Hirsh Mohindra.

40.     Attached hereto as **Menjivar Attachment AA** is a true and correct copy of the transcript of a recorded telephone call involving two unidentified males. According to the

9

filename of the recording (2015_01_09_12_56PM_302_304.mp3), the recorded telephone call occurred on or about September 1, 2015. The filename also identifies two of Defendants' internal telephone extensions that were involved in the call. The filename identifies that the telephone call took place between internal extensions 302 and 304. As noted above, Defendants' extension 304 appears to belong to Hirsh Mohindra. FTC staff and I reviewed several recorded telephone conversations involving Defendants' internal extension 302 during which a speaker is identified as Gaurav Mohindra.

41.     Attached hereto as **Menjivar Attachment BB** is a true and correct copy of the transcript of a recorded telephone call involving two unidentified males. According to the filename of the recording (2015_08_09_02_46PM_13125431006_304.mp3), the recorded telephone call occurred on or about September 8, 2015. The filename also identifies the telephone number and Defendants' internal telephone extension that were involved in the call. The filename identifies that the telephone call took place between a telephone number with a 312 area code and Defendants' internal extension 304. As noted above, Defendants' extension 304 appears to belong to Hirsh Mohindra.

## RECORDS FROM RECEIVER

42.     On or about April 7, 2016, the Receiver provided the FTC with copies of certain bank documents relating to a JPMorgan Chase Bank (Chase Bank) account ending in 0226 in the name of Aura Development Inc. (Aura Development). As discussed in my previous declaration dated March 16, 2016, Hirsh Mohindra is an authorized signatory on the Chase Bank account ending in 0226 in the name of Aura Development. *See* PX 1, Declaration of Roberto C. Menjivar, ¶¶ 59-63. Attached hereto as **Menjivar Attachment CC** are true and correct copies of

the bank documents for the Aura Development account ending in 0226 that the Receiver

provided to the FTC. These documents include the following items:

     a.  A copy of a withdrawal slip dated March 23, 2016, with the customer name

         "Renuka Mohindra," for $30,000.00;

     b.  A copy of a withdrawal slip dated March 23, 2016, with the customer name "Aura

         Development," for $300,000.00;

     c.  A copy of a withdrawal slip dated March 23, 2016, with the customer name "Aura

         Development," for  $275,000.00; and

     d.  A screen shot or image of what appears to be an online transaction report for the

         Aura Development account ending in 0226.  The report shows three "Misc.

         Debit" transactions from the account on March 23, 2016, for $30,000.00,

         $300,000.00, and $275,000.00, respectively.

    43.    On or about June 13, 2016, FTC staff requested that the Receiver search the copy

of Defendants' imaged data for files, documents, e-mails, or other electronic media that contain

one or more of the following keywords:  "USFastCash," "500FastCash," "OneClickCash,"

"Ameriloan," "United Cash Loans," "AdvantageCashServices," and "StarCashProcessing."

    44.    On or about June 15, 2016, Abigail Mast, Paralegal at Shaw Fishman Glantz &

Towbin LLC (Shaw Fishman) produced to FTC staff a disc containing Microsoft Excel

spreadsheets, e-mail messages, and PDF documents containing one or more of the keywords

from Defendants' electronic data as described above.  Shaw Fishman is the law firm representing

the Receiver in this case.

    45.    Attached hereto as **Menjivar Attachment DD** are true and correct copies of  a

cover letter from Ms. Mast to FTC staff dated June 16, 2016, and printouts of some of the

following files, documents, e-mails, or other electronic media produced by the Receiver to the FTC:

    a.    An e-mail message dated August 20, 2014, from "Jon" at "barabanus@gmail.com" to "hirsh@ashtonasset.com" with the subject line "Fwd: 500FastCash." (Att. DD, pp. 2-3);

    b.    An e-mail message dated September 10, 2014, from "rstein@chmcapital.com" to "Josh Sullivan" at "jsullivan365@gmail.com" with the subject line "RE: 500 Fast Cash." (Att. DD, p. 4). The e-mail contained the following two attachments: (a) a PDF file named "Solidus Group 33MM 500 Fast Cash PSA"; and (b) an Excel spreadsheet named "500FastCash 33MM Unmasked Part 1" (500FastCash Part 1). (Att. DD, pp. 5-12). The 500FastCash Part 1 Excel spreadsheet is not attached to this declaration. FTC staff and I have reviewed the 500FastCash Part 1 Excel spreadsheet. The 500FastCash Part 1 Excel spreadsheet contains 38,818 records of what appears to be consumers' names and personal identifying information including addresses, Social Security numbers, bank account information, and employment information. In the column titled "Website," the Internet address www.500fastcash.com is entered throughout the Excel spreadsheet;

    c.    An e-mail message dated September 10, 2014, from "rstein@chmcapital.com" to "Josh Sullivan" at "jsullivan365@gmail.com" with the subject line "RE: 500 Fast Cash." (Att. DD, p. 13). Attached to the e-mail is an Excel spreadsheet named "500FastCash 33MM Unmasked Part 2" (500FastCash Part 2). The 500FastCash Part 2 Excel spreadsheet is not attached to this declaration. FTC staff and I have

reviewed the 500FastCash Part 2 Excel spreadsheet. The 500FastCash Part 2 Excel spreadsheet contains 38,820 records of what appears to be consumers' names and personal identifying information including addresses, Social Security numbers, bank account information, and employment information. In the column titled "Website," the Internet address www.500fastcash.com is entered throughout the Excel spreadsheet;

d. An e-mail message dated January 22, 2015, from "Shawn Bure" to "Hirsh Mohindra" at "hirsh@chmcapital.com" with the subject line "Peak." (Att. DD, pp. 14-15); and

e. An e-mail message dated January 26, 2015, from "Hirsh Mohindra" at "hirshm@gmail.com" to "Preetesh Patel" at "preetesh@ashtonasset.com" with the subject line "Fwd: Peak." (Att. DD, pp. 16-17).

## DEFENDANTS' TELEPHONE DIRECTORIES

46. As described above, FTC and Illinois AG staff found various documents at the Defendants' Office. The Receiver and the Receiver's representatives also identified various documents at the Defendants' Office. Attached hereto as **Menjivar Attachments EE** are true and correct copies of Defendants' internal directories, and a seating chart found at the Defendants' Office.

## ADDITIONAL TRANSCRIPTS

47. As describe above, FTC forensic examiner copied and identified over 400,000 audio files or recordings. I requested and obtained transcripts for a few of these recorded telephone calls. I sent copies of the audio files or recordings to For The Record. For the Record transcribed the recordings and sent the transcript to me.

48.     Attached hereto as **Menjivar Attachment FF** is a true and correct copy of the transcript of a recorded telephone call involving a consumer whose first name is "Christina." According to the filename of the recording, the recorded telephone call occurred on or about May 19, 2015. The filename also identifies the telephone number and Defendants' internal telephone extension that were involved in the call. The filename identifies that the telephone call took place between a telephone number with a 660 area code and Defendants' internal extension 402.

49.     Attached hereto as **Menjivar Attachment GG** is a true and correct copy of the transcript of a recorded telephone call involving a consumer whose first name is "Diane." According to the filename of the recording, the recorded telephone call occurred on or about October 12, 2015. The filename also identifies the telephone number and Defendants' internal telephone extension that were involved in the call. The filename identifies that the telephone call took place between a telephone number with a 412 area code and Defendants' internal extension 407.

50.     Attached hereto as **Menjivar Attachment HH** is a true and correct copy of the transcript of a recorded telephone call involving a consumer whose first name is "Benita." According to the filename of the recording, the recorded telephone call occurred on or about April 20, 2015. The filename also identifies the telephone number and Defendants' internal telephone extension that were involved in the call. The filename identifies that the telephone call took place between a telephone number with a 510 area code and Defendants' internal extension 407.

51.     Attached hereto as **Menjivar Attachment II** is a true and correct copy of the transcript of a recorded telephone call involving a consumer whose first name is "Tyson."

14

According to the filename of the recording, the recorded telephone call occurred on or about April 21, 2015. The filename also identifies two of Defendants' internal telephone extensions that were involved in the call. The filename identifies that the telephone call took place between internal extensions 407 and 414. The filename does not identify the consumer's telephone number.

52. Attached hereto as **Menjivar Attachment JJ** is a true and correct copy of the transcript of a recorded telephone call involving a consumer whose first name is "Akeem." According to the filename of the recording, the recorded telephone call occurred on or about April 23, 2015. The filename also identifies two of Defendants' internal telephone extensions that were involved in the call. The filename identifies that the telephone call took place between internal extensions 401 and 446. The filename does not identify the consumer's telephone number.

53. Attached hereto as **Menjivar Attachment KK** is a true and correct copy of the transcript of a recorded telephone call involving a consumer whose first name is "Zachary." According to the filename of the recording, the recorded telephone call occurred on or about April 23, 2015. The filename also identifies two of Defendants' internal telephone extensions that were involved in the call. The filename identifies that the telephone call took place between internal extensions 401 and 412. The filename does not identify the consumer's telephone number.

54. Attached hereto as **Menjivar Attachment LL** is a true and correct copy of the transcript of a recorded telephone call involving a consumer whose first name is "Ms. Stark." According to the filename of the recording, the recorded telephone call occurred on or about May 18, 2015. The filename also identifies two of Defendants' internal telephone extensions

that were involved in the call. The filename identifies that the telephone call took place between internal extensions 401 and 402. The filename does not identify the consumer's telephone number.

I declare under penalty of perjury that the foregoing statement is true and correct.

Executed on June 27 , 2016.

Roberto C. Menjivar

16