# Menjivar Attachment J

# RECEIVABLES PURCHASE AGREEMENT

Sale from Ashton Asset Management, Inc. to Hylan Debt Fund, LLC - Portfolio Series 104: 04/17/2015

This Receivables Purchase Agreement ("Agreement") is made and entered into this 17th day of April 2015, by and between Ashton Asset Management, Inc. (hereinafter referred to as "Seller") and Hylan Debt Fund, LLC - Portfolio Series 104 (hereinafter referred to as "Purchaser").

**WHEREAS**, Seller desires to sell certain receivables ("Debt Receivables"); and

**WHEREAS**, Purchaser desires to purchase such Debt Receivables from Seller, as more particularly defined herein on the terms and conditions set forth in this Agreement;

**NOW THEREFORE**, in consideration of the foregoing recitals and the mutual covenants and conditions contained in this Agreement, and for other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, it is agreed as follows:

1.     <u>SALE AND PURCHASE OF DEBT RECEIVABLES.</u> Subject to the terms of this Agreement, Seller agrees to sell, convey, transfer and assign to Purchaser and Purchaser agrees to purchase from Seller, for the consideration herein provided, the right, title, interest, and obligations of Seller in and to those Debt Receivables as described on Exhibit A attached hereto (all of such receivables herein collectively called "Accounts" and singularly an "Account"). The Seller represents and warrants the Accounts shall not include Accounts which, as of each Closing Date and for eighteen months thereafter each Closing Date, are classified as follows (hereinafter referred to as "Unqualified Accounts"):

    A.     Seller does not have clear title and ownership to each account;

    B.     Chain of custody and title of each Account does not conform as follows:

            i)    Lender (as noted for each Account as "Lender") to Graywave Capital, LLC;

            ii)    Graywave Capital, LLC to Seller;

            iii)    Seller to Purchaser;

    C.     Owned at any time by any party other than Lender, Graywave Capital, LLC, Seller or Purchaser;

    D.     Missing data from the electronic sale file for an Account that is not otherwise provided by Seller within 7 days of a request by Purchaser.

    E.     Seller or any prior owner has directly or indirectly placed any Account with a third-party collection agency or law firm for collection since the date of charge-off;

    F.     Account was fraudulently originated or Account is uncollectible due to alleged fraud or misrepresentation by the Lender;

    G.     Account is in dispute by debtor with regard to the origination or servicing of the Account while owned by a prior owner, including correspondence and or threatened litigation;

    H.     The origination or servicing of the Account by a prior owner was deemed in violation of any applicable law, rule or regulation;

Page 1 of 10

I.  Account was invalidated, extinguished or the subject of a restraining order by a local, state or federal government agency or court;

J.  The terms of the underlying loan for an Account has been modified since the date each Account was originated;

K.  Account was satisfied, settled, or released by any party other than Purchaser (the account was paid or otherwise released or settlement was received by Seller or any party);

L.  Balance does not reflect payments made in "good faith" by the debtor (with reasonable evidence that payments were made by a debtor for an Account originated by the same Lender)

All Accounts sold to Purchaser under this Agreement are sold and transferred without recourse as to their enforceability or collectability except as stated above.

2.  PURCHASE PRICE. Subject to the terms and conditions of this Agreement, and in reliance upon the representations, warranties and covenants of the Seller made herein, Purchaser shall pay and deliver to Seller the sums set forth in the Closing Statement for each tranche as detailed in Exhibit B, for the Accounts purchased under this Agreement. The parties agree that the

3.  PURCHASE OF UNQUALIFIED ACCOUNTS. In the event that Purchaser identifies and returns to Seller within eighteen months of each Closing Date an Account which was an Unqualified Account, Seller shall buy back the Account for the amount equal to 125% of what the Purchaser paid for such Account on a pro rata basis.

4.  INDEMNIFICATION BY PURCHASER. Purchaser agrees to indemnify and hold such Seller (including its officers, directors, employees, stockholders, and agents) harmless from and against any claims, actions, suits or other actual or threatened proceedings, and all losses, judgments, damages, expenses or other costs (including all fees and disbursements of counsel) incurred or suffered by Seller by reason of willful misconduct or violation of any applicable law, rule or regulation by Purchaser (or its employees, representatives, agents or successors) or any subsequent Purchaser in connection with the collection or enforcement of the Accounts. At its option, Seller shall have the right to require Purchaser to assume the defense of any claims, actions, suits or other actual or threatened proceedings and to directly pay for all losses, judgments, damages, expenses or other costs (including all fees and disbursements of counsel) which may be imposed.

5.  INDEMNIFICATION BY SELLER. Seller agrees to indemnify and hold such Purchaser (including its officers, directors, employees, stockholders, agents and successors) harmless from and against any claims, actions, suits or other actual or threatened proceedings, and all losses, judgments, damages, expenses or other costs (including all fees and disbursements of counsel) incurred or suffered by Purchaser by reason of any misconduct, negligence or violation of any applicable law, rule or regulation by Seller (or its employees, representatives, agents or successors) or any prior owner or servicer in connection with the Accounts. At its option, Purchaser shall have the right to require Seller to assume the defense of any claims, actions, suits or other actual or threatened proceedings and to directly pay for all losses, judgments, damages, expenses or

Menjivar Att. J
Page 2 of 30
FTC-SLL-0005838

other costs (including all fees and disbursements of counsel) which may be imposed. Seller agrees to extend any and all indemnifications it has received from Graywave Capital, LLC, as the prior seller, to Purchaser.

6.  REMITTANCE OF DIRECT PAYMENTS. Seller shall remit to Purchaser all payments which are received by Seller or any prior owner after the Closing Date or received prior to the Closing Date but no reflected in the balance of each Account. Such remittances shall occur within seven days of receipt of payments by Seller. Seller agrees to use its best efforts to secure any payments from prior owners and remit these payments to Purchaser.

7.  CONDITIONS OF SALE.

    A.  The obligations of Purchaser to perform hereunder and purchase the Accounts on the Closing Date shall be subject to the satisfaction on or before the Closing Date of the following further conditions: (i) the representations and warranties contained in Paragraph 1 hereof shall to the best of Seller's knowledge and belief be true and correct in all respects on the Closing Date as if made on such date; and (ii) Seller shall have performed and observed all covenants, agreements and conditions hereof to be performed or observed by it on or before the Closing Date.

    B.  The obligations of Seller to perform hereunder and sell the Accounts at Closing shall be subject to the satisfaction, on or before the Closing Date, of the following further conditions: Purchaser shall have delivered to Seller the Purchase Price specified in Paragraph 2 hereof.

    C.  Purchaser agrees that any Accounts being purchased pursuant to this Agreement shall, if resold by Purchaser, continue to be subject to all terms and conditions set forth herein. Purchaser agrees that for any and all future Contract of Sale or other document evidencing a transfer of ownership that this Agreement shall be disclosed to such firm and that this Agreement, along with all of its terms and conditions, made a part of such Contract of Sale or other documents, except that no disclosure shall be required of sale price.

    D.  Seller agrees to time is of the essence and agrees that it will assist the Purchaser with any request for additional information or clarification of the electronic data file associated with the Debt Receivables. Seller will use its best efforts to resolve any question associated with the origination, servicing or documentation of the Accounts. Within five days of each Closing Date, Seller shall provide Purchaser with form copies of the standard loan documentation used by each Lender to originate the Debt Receivables.

8.  CLOSING. The closing of the sale and applicable purchase of the Accounts shall take place on the dates and at the location described in the Exhibit B hereto, or such other date and location as shall be mutually agreed upon by the parties hereto (the actual date of each Closing herein called the "Closing Date"). At or prior to each Closing Date, the following shall be done:

Menjivar Att. J
Page 3 of 30
FTC-SLL-0005839

A.     Seller shall have the Accounts scrubbed, at Purchasers cost, for deceased and bankrupt Accounts and append mutually agreed upon additional data to the electronic sale file for each Account

B.     Seller and Purchaser shall agree in advance to the allocation of the Accounts so to ensure an equal distribution of the Accounts between Seller and the various tranches of Accounts to be sold to Purchaser.

C.     Purchaser shall pay the balance of Purchase Price as set forth on Paragraph 2 of this Agreement and in Exhibit B to seller's escrow account.

D.     Seller shall deliver the final electronic sale file of Debt Receivables.

9.     <u>REPRESENTATIONS AND WARRANTIES OF PURCHASER.</u> Purchaser covenants and agrees that in the collection of all Accounts listed in Exhibit A, Purchaser or its agents, employees, representatives or assignees shall comply with all applicable state and federal debt collection laws.

Purchaser warrants and represents that it is a sophisticated informed investor, has knowledge and experience in financial and business matters that enables it to evaluate the merits and risks of the transaction contemplated by this Agreement. The Purchaser acknowledges that Seller does not represent, warrant or insure the accuracy or completeness of any information or its sources of information contained in the information provided or in any of the Account Files. The Purchaser agrees and represents that the Accounts and Account Files made available to it were an adequate and sufficient basis on which to determine whether and at what price to purchase the Accounts. The Purchaser has made such independent investigations as it deems to be warranted into the nature, validity, enforceability, collectability and value of the Accounts, and all other facts it deems material to its purchase and is entering into this transaction solely on the basis of that investigation and the Purchaser's own judgment, and is not acting in reliance on any representatives or independent contractors (other than the representations and warranties of the Seller contained herein).

Purchaser is in full compliance with its obligations under the terms of any Confidentiality Agreement executed by the Purchaser to review the information made available by Seller or its agents, and the terms thereof are hereby incorporated herein subject to Purchaser's ownership rights and interests acquired by Purchaser hereunder.

10.     <u>NOTICES.</u> Any notice or other communication provided for herein or given hereunder to a party hereto shall be in writing and shall be delivered in person to such party or mailed by first class registered or certified mail, postage prepaid, addressed as follows:

**Menjivar Att. J**
**Page 4 of 30**
FTC-SLL-0005840

| | |
|---|---|
| If to Purchaser: | Hylan Debt Fund, LLC - Portfolio Series 104<br>5477 Main Street<br>Amherst, NY 14221<br>Attention: Andrew J. Shaevel, CEO<br>andy@hylanasset.com |
| If to Seller: | Ashton Asset Management, Inc.<br>500 Quail Ridge Drive<br>Westmont, IL 60559<br>Attention: Hirsh Mohindra<br>hirsh@ashtonasset.com |
| If to Graywave Capital, LLC<br>(as prior seller) | Graywave Capital, LLC<br>1809 Canyon<br>Bolder, CO 80303<br>Attention: Joel Tucker<br>joelt@graywavecap.com |

11. <u>SEVERABILITY.</u> If any provision, or application thereof, of this Agreement is held unlawful or unenforceable in any respect, the parties hereto agree that such illegality or unenforceability shall not affect other provisions or allocations that can be given effect, and this Agreement shall be construed as if the unlawful or unenforceable provisions are amended so as to make it valid, reasonable and enforceable and agree to be bound by the terms of such provision, as modified by the court.

12. <u>AMENDMENTS.</u> This Agreement may be amended or modified only by a written instrument executed by all the parties hereto.

13. <u>COUNTERPARTS.</u> This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute but one instrument.

14. <u>HEADINGS.</u> The headings contained in this Agreement and in the Exhibits appended hereto are for convenience only and shall not be deemed to affect the interpretation of the provisions of this Agreement.

15. <u>SURVIVAL OF REPRESENTATIONS AND WARRANTIES.</u> The representations, warranties, covenants and agreements of the parties set forth herein shall survive in perpetuity.

16. <u>ROLE OF BROKER.</u> N/A

17. <u>GOVERNING LAW.</u> This Agreement is made pursuant to, and shall be construed under the laws of the State of New York.

18. <u>ENTIRE AGREEMENT.</u> This Agreement is intended to define the full extent of the legally enforceable undertakings of the parties hereto, and no related promise or representation,

Menjivar Att. J<br>Page 5 of 30<br>FTC-SLL-0005841

written or oral, which is not set forth explicitly in this Agreement is intended by either party to be legally binding. Both parties acknowledge that in deciding to enter into this transaction they have relied on no representations, written or oral, other than those explicitly set forth in this Agreement.

19. <u>CONFIDENTIALITY.</u> The parties understand and agree that the terms of this Agreement are confidential and they will not be disclosed to anyone outside of their respective organizations.

20. <u>PURCHASER'S RIGHT OF RESALE.</u> There is no restriction on the resale of any Accounts.

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement on the date first above written.

PURCHASER:        **HYLAN DEBT FUND, LLC - PORTFOLIO SERIES 104**

By: _____
Andrew J. Shaevel, CEO

SELLER:           **ASHTON ASSET MANAGEMENT, INC.**

By: _____
Hirsh Mohindra, Authorized Signatory

EXHIBIT A

Sale from Ashton Asset Management, Inc. to Hylan Debt Fund, LLC - Portfolio Series 104: 4/17/2015

Originator:                        Mixed Lender via Graywave Capital, LLC (Joel Tucker)

Number of Accounts:          1,891,109

Face Value:                        $1,000,000,655.00

EXHIBIT B

CLOSING STATEMENT

Sale from Ashton Asset Management, Inc. to Hylan Debt Fund, LLC - Portfolio Series 104: 4/17/2015

The Purchaser and Seller agree to close on the Debt Receivables as described below:

| | |
|---|---|
| Receivable Amount | $1,000,000,655.00 |
| Estimated Number of Accounts: | 1,891,109 |
| Base Purchase Rate | 0.005375 |
| Base Purchase Price | $5,375,003.52 |
| **Gross Purchase Price** | **$5,526,292.17** |
| Initial Payment: | 1,651,288.64 |
| **Balance Due thereafter:** | **3,875,003.52** |
| Closing Date | no later than April 22, 2015 |

<u>General Terms for Closing:</u>

A. On or before the Closing Date, Purchaser shall pay to Seller, by Wire, an amount equal to the Initial Payment (see above). Wire Instructions to be provided by Seller at least 48 hours prior to each Closing Date.

B. Seller agrees to engage TLO to scrub the Accounts for bankruptcy, deceased and to append additional demographic data, as directed by Purchaser and subject to a pre-approved cost estimate.

C. Seller agrees to transfer the Accounts, as well as the results from scrubbing, as mutually agreed, to Purchaser within 24 hours of funding the Initial Payment.

D. Seller agrees to pay to the Seller the balance of the Base Purchase Price as the Purchaser receives net remits from collections or any sale proceeds from the sale of any Accounts. The Purchaser agrees that it will use its best efforts to pay off the balance of the Base Purchase Price within 180 days from the date of the Closing.

E. Seller agrees to provide an Assignment and Bill of Sale for 100% of the Accounts in the form attached hereto as Exhibit C to Purchaser.

EXHIBIT C

Page **8** of **10**

FORM OF

ASSIGNMENT AND BILL OF SALE

Sale from Ashton Asset Management, Inc. to Portfolio Series 104: 4/17/2015

Originator:                         Mixed lenders via Graywave Capital, LLC
                                    (Joel Tucker) on behalf of the Lenders

Receivable Amount                   $ 1,000,000,655. 00

Accounts                            1,891,109

      Ashton Asset Management, Inc. (hereinafter called "Seller") has entered into a Receivable Purchase Agreement dated April 17, 2015 ("Agreement") for the sale of Accounts on Exhibit "A", hereof to Hylan Debt Fund, LLC - Portfolio Series 104 (hereinafter called "Purchaser"), upon the terms and conditions set forth in that Agreement.

      THEREFORE, effective ___4/17/15.___ for good and valuable consideration, Seller hereby sells, assigns, and transfers to Purchaser, its successors and assigns, all of Seller's rights, title, and interest in each and every one of the Accounts described in the Agreement.

ASHTON ASSET MANAGEMENT, INC.

By: _____
Hirsh Mohindra, Authorized Signatory

EXHIBIT D

**RECEIVABLES PURCHASE AGREEMENT**

**BY AND BETWEEN**

**ASHTON ASSET MANAGEMENT, INC.**

**AND**

**GRAYWAVE CAPITAL, LLC**

Sale from Ashton Asset Management, Inc. to Hylan Debt Fund, LLC – Portfolio Series 104: 4/17/2015

***[Copy of Agreement to be attached]***

# RECEIVABLES PURCHASE AGREEMENT

This Receivables Purchase Agreement ("Agreement") is made and entered into this 2nd day of December 2015, by and between ASHTON ASSET MANAGEMENT, (hereinafter referred to as "Seller") and SANDS RECOVERY GROUP, LLC. (hereinafter referred to as "Purchaser")

WHEREAS, Seller desires to sell certain receivables ("Debt Receivables"); and

WHEREAS, Purchaser desires to purchase such Debt Receivables from Seller, as more particularly defined herein on the terms and conditions set forth in this Agreement;

NOW THEREFORE, in consideration of the foregoing recitals and the mutual covenants and conditions contained in this Agreement, and for other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, it is agreed as follows:

1.  <u>SALE AND PURCHASE OF DEBT RECEIVABLES.</u>  Subject to the terms of this Agreement, Seller agrees to sell, convey, transfer and assign to Purchaser and Purchaser agrees to purchase from Seller, for the consideration herein provided, the right, title, interest, and obligations of Seller in and to those Debt Receivables as described on Exhibit A attached hereto (all of such receivables herein collectively called "Accounts" and singularly an "Account").  The Seller represents and warrants the Accounts shall not include accounts which, as of the Closing Date, are classified as follows (hereinafter referred to as "Unqualified Accounts"):

    A.  Satisfied, settled, or released (the account was paid or otherwise released or settlement check was received by Seller prior to the Closing Date);

        B.  Filing of bankruptcy, applicable to such Account as determined by an opinion of Counsel as reported on a credit bureau as discharged;

    C.  Uncollectible due to fraud or death with reasonable evidence provided by Purchaser;

    D.  Pending litigation or dispute;

    E.  Seller does not have title to accounts.

1

**Menjivar Att. J**
**Page 11 of 30**

FTC-SLL-0003993

All Accounts sold to Purchaser under this Agreement are sold and transferred without recourse as to their enforceability, collectability or documentation except as stated above. Seller will provide complete chain of title within thirty days sale.

2.  <u>PURCHASE PRICE.</u> Subject to the terms and conditions of this Agreement, and in reliance upon the representations, warranties and covenants of the Seller made herein, Purchaser shall pay and deliver to Seller the sum set forth in the Closing Statement attached hereto as Exhibit B, for the Accounts purchased under this Agreement.

3.  <u>PURCHASE OR SUBSTITUTION OF UNQUALIFIED ACCOUNTS.</u> In the event that Purchaser identifies and returns to Seller by December 2nd, 2015 an Account which was an Unqualified Account, Seller shall at its option either replace the Account or buy back the Account for the amount that the Purchaser paid for such Account. Purchaser must provide independent evidence, e.g. Accurint data, supporting request for purchase or substitution.

4.  <u>INDEMNIFICATION BY PURCHASER.</u> Purchaser agrees to indemnify and hold such Seller (including its officers, directors, employees, stockholders, and agents) harmless from and against any claims, actions, suits or other actual or threatened proceedings, and all losses, judgments, damages, expenses or other costs (including all fees and disbursements of counsel) incurred or suffered by Seller by reason of willful misconduct or violation of any applicable law, rule or regulation by Purchaser (or its employees, representatives, agents or successors) or any subsequent Purchaser (or its employees, representatives, agents or successors) in connection with the collection or enforcement of the Accounts. At its option, Seller shall have the right to require Purchaser to assume the defense of any claims, actions, suits or other actual or threatened proceedings and to directly pay for all losses, judgments, damages, expenses or other costs (including all fees and disbursements of counsel) which may be imposed.

    Purchaser agrees that in the event any subsequent Purchaser fails to defend, indemnify and hold Seller harmless that Purchaser shall be responsible to indemnify Seller.

5.  <u>INDEMNIFICATION BY SELLER.</u> Seller agrees to indemnify and hold such Purchaser (including its officers, directors, employees, stockholders, and agents) harmless from and against any claims, actions, suits or other actual or threatened proceedings, and all losses, judgments, damages, expenses or other costs (including all fees and disbursements of counsel) incurred or suffered by Purchaser by reason of willful misconduct or violation of any applicable law, rule or regulation by Seller (or its employees, representatives, agents or successors) in connection with the collection or enforcement of the Accounts. At its option, Purchaser shall have the right to require Seller to assume the defense of any claims, actions, suits or other actual or threatened proceedings and to directly pay for all losses, judgments, damages, expenses or other costs (including all fees and disbursements of counsel) which may be imposed.

**Menjivar Att. J**
**Page 12 of 30**

FTC-SLL-0003994

6.     <u>REMITTANCE OF DIRECT PAYMENTS.</u>  Seller shall remit to Purchaser all payments which are received after the Closing Date. Such remittances shall occur within seven days of receipt of payments by Seller.

7.     <u>CONDITIONS OF SALE.</u>

        A.     The obligations of Purchaser to perform hereunder and purchase the Accounts on the Closing Date shall be subject to the satisfaction on or before the Closing Date of the following further conditions: (i) the representations and warranties contained in Paragraph 1 hereof shall to the best of Seller's knowledge and belief be true and correct in all respects on the Closing Date as if made on such date; and (ii) Seller shall have performed and observed all covenants, agreements and conditions hereof to be performed or observed by it on or before the Closing Date.

        B.     The obligations of Seller to perform hereunder and sell the Accounts at Closing shall be subject to the satisfaction, on or before the Closing Date, of the following further conditions: (i) Purchaser shall provide Seller with a copy of its proposed notification to Account obligor advising them that the Accounts have been transferred to Purchaser and that all payments on the Accounts shall thereafter be made to the Purchaser. Purchaser shall have delivered to Seller the Purchase Price specified in Paragraph 2 hereof.

        C.     Purchaser agrees that any Accounts being purchased pursuant to this Agreement shall, if resold by Purchaser, continue to be subject to all terms and conditions set forth herein. Purchaser agrees that for any and all future Contract of Sale or other document evidencing a transfer of ownership that this Agreement shall be disclosed to such firm and that this Agreement, along with all of its terms and conditions, made a part of such Contract of Sale or other documents, except that no disclosure shall be required of sale price.

8.     CLOSING. The closing of the sale and applicable purchase of the Accounts shall take place on the date and at the location described in the Exhibit B hereto, or such other date and location as shall be mutually agreed upon by the parties hereto (the actual date of Closing being herein called the "Closing Date"). At the Closing, the following shall be done:

        A.     Seller shall deliver the final electronic sale file of Debt Receivables to Broker.

        B.     Purchaser shall pay the balance of Purchase Price as set forth on Paragraph 2 of this Agreement and in Exhibit B to Broker's escrow account.

9.     <u>REPRESENTATIONS AND WARRANTIES OF PURCHASER.</u>

**Menjivar Att. J**
**Page 13 of 30**

FTC-SLL-0003995

Purchaser covenants and agrees that in the collection of all Accounts listed in Exhibit A, Purchaser or its agents, employees, representatives or assignees shall comply with all applicable state and federal debt collection laws.

Purchaser or its assignee or successor shall, at its own expense, give the debtor of each Account written notice of the transfer by ordinary mail or debtor's last known address in its first written communication with the debtor.

Purchaser warrants and represents that it is a sophisticated informed investor, has knowledge and experience in financial and business matters that enables it to evaluate the merits and risks of the transaction contemplated by this Agreement. The Purchaser acknowledges that Seller does not represent, warrant or insure the accuracy or completeness of any information or its sources of information contained in the information provided or in any of the Account Files. The Purchaser agrees and represents that the Accounts and Account Files made available to it were an adequate and sufficient basis on which to determine whether and at what price to purchase the Accounts. The Purchaser has made such independent investigations as it deems to be warranted into the nature, validity, enforceability, collectability and value of the Accounts, and all other facts it deems material to its purchase and is entering into this transaction solely on the basis of that investigation and the Purchaser's own judgment, and is not acting in reliance on any representatives or independent contractors (other than the representations and warranties of the Seller contained herein).

Purchaser is in full compliance with its obligations under the terms of any Confidentiality Agreement executed by the Purchaser to review the information made available by Seller or its agents, and the terms thereof are hereby incorporated herein subject to Purchaser's ownership rights and interests acquired by Purchaser hereunder.

10. <u>NOTICES.</u> Any notice or other communication provided for herein or given hereunder to a party hereto shall be in writing and shall be delivered in person to such party or mailed by first class registered or certified mail, postage prepaid, addressed as follows:

If to Purchaser:

> SANDS RECOVERY GROUP, LLC
> PO Box 1028
> Hamburg, NY 14075
> Attn: Chuck Joy

If to Seller:

> ASHTON ASSET MANAGEMENT
> 500 Quail Ridge Drive
> Westmont, Illinois 60559
> Attn: Hirsh Mohindra, President

**Menjivar Att. J**
**Page 14 of 30**

FTC-SLL-0003996

11.   SEVERABILITY. If any provision, or application thereof, of this Agreement is held unlawful or unenforceable in any respect, the parties hereto agree that such illegality or unenforceability shall not affect other provisions or allocations that can be given effect, and this Agreement shall be construed as if the unlawful or unenforceable provisions are amended so as to make it valid, reasonable and enforceable and agree to be bound by the terms of such provision, as modified by the court.

12.   AMENDMENTS. This Agreement may be amended or modified only by a written instrument executed by all the parties hereto.

13.   COUNTERPARTS. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute but one instrument.

14.   HEADINGS. The headings contained in this Agreement and in the Exhibits appended hereto are for convenience only and shall not be deemed to affect the interpretation of the provisions of this Agreement.

15.   SURVIVAL OF REPRESENTATIONS AND WARRANTIES. The representations, warranties, covenants and agreements of the parties set forth herein shall survive the closing.

16.   ROLE OF BROKER. Purchaser and Seller agree that while Broker has advised and assisted Seller in connection with this sale and has negotiated with Purchaser regarding terms of the sale, Broker has no obligation and makes no warranty to Purchaser with respect to the Purchased Accounts. Any claim by Purchaser with respect to the Purchased Accounts shall be against the applicable Seller only, and Broker shall not bear any liability in connection with such claim.

Purchaser and Seller agree that the Purchase Price shall be paid to Broker's Escrow Account, who shall distribute it to Seller in accordance with the terms of Seller's understanding with Broker. Seller shall indemnify Purchaser against any claim by Broker for compensation or other remuneration relating to this Agreement or the Purchased Accounts.

17.   GOVERNING LAW. This Agreement is made pursuant to, and shall be construed under the laws of the State of Illinois.

18.   ENTIRE AGREEMENT. This Agreement is intended to define the full extent of the legally enforceable undertakings of the parties hereto, and no related promise or representation, written or oral, which is not set forth explicitly in this Agreement is intended by either party to be legally binding. Both parties acknowledge that in deciding to enter into this transaction they have relied on no representations, written or oral, other than those explicitly set forth in this Agreement.

**Menjivar Att. J**
**Page 15 of 30**

FTC-SLL-0003997

19.  CONFIDENTIALITY.  The parties understand and agree that the terms of this Agreement are confidential and they will not be disclosed to anyone outside of their respective organizations.

20.  PURCHASER'S RIGHT OF RESALE.  Purchaser may sell or transfer any of the Accounts to a third party provided Purchaser uses its best efforts to assure that any subsequent purchaser is a reputable entity that shall provide Purchaser with industry typical indemnifications, and provided Purchaser requires every subsequent purchaser of all or part of the Accounts to agree to the same representations, warranties, and terms and be subject to the same indemnities of Purchaser as set forth in this Agreement, including but not limited to this Section and the original agreements in which seller sold a portfolio of receivables including the Accounts as though the third party purchaser and any subsequent purchaser were Purchaser, and any agreement for the sale of all or part of the Accounts by Purchaser and any subsequent purchaser shall provide further that each Seller shall have a direct right of action against all subsequent purchasers of all or part of the Accounts with respect to such representations, warranties, terms and indemnities, and Purchaser shall use no lower standards in selecting third party purchasers of Accounts that it typically uses for its other receivable portfolios.  Purchaser shall promptly inform Sellers of the identities of any potential purchasers to whom Purchaser furnishes any of the information with respect to the Accounts, and of any subsequent purchasers of the Accounts and Purchaser shall only sell Accounts after making a good faith investigation of and a determination that the potential purchaser's integrity and financial reliability conform to the standards set forth in the agreement.  Sale of some or all Accounts shall not relieve Purchaser of any obligation that Purchaser has undertaken under this Agreement and Purchaser shall be liable to Sellers for the breach of any representations, warranty or covenant or with respect to any indemnity that Purchasers adhere to as specified above.

**Menjivar Att. J**
**Page 16 of 30**

FTC-SLL-0003998

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement on the date first above written.

PURCHASER:            SANDS RECOVERY GROUP, LLC

By:                     CHUCK JOY

SELLER:               ASHTON ASSET MANAGEMENT


By:                     Hirsh Mohindra, President

7

FTC-SLL-0003999

EXHIBIT A

95,383 Peak 3 Accounts with Total Receivable Value of $50,000,280.00

**Menjivar Att. J**
**Page 18 of 30**

FTC-SLL-0004000

EXHIBIT B
CLOSING STATEMENT
ASHTON ASSET MANAGEMENT

| | |
|---|---|
| Receivable Amount | $50,000,280.00 |
| Accounts | 95,383 |
| Purchase Rate | $0.004 |
| Purchase Price | $200,000.00 |
| Closing Date | December 2nd, 2015 |

**A.** On or before December 2nd, 2015, Purchaser shall pay to Seller, $200,000.00 via wire to Sellers Bank Account.

**B.** Seller agrees to transfer the Accounts, as set forth in Exhibit A, to Purchaser within 72 hours of funding.

**C.** Wire Instructions:

| | |
|---|---|
| Account Name | CHM Capital Group, LLC |
| | 500 Quail Ridge Drive |
| | Westmont, IL 60559 |
| Bank | Bank of America |
| ABA Routing | 026009593 |
| Account Number | 3796 |

9

FTC-SLL-0004001

EXHIBIT C

ASSIGNMENT AND BILL OF SALE

Receivable Amount                              $50,000,280.00

Accounts                                       95,383

ASHTON ASSET MANAGEMENT (hereinafter called "Seller") has entered into a Receivable Purchase Agreement dated December 2nd, 2015 ("Agreement") for the sale of Accounts on Exhibit "A", hereof to SANDS RECOVERY GROUP, LLC, (hereinafter called "Purchaser"), upon the terms and conditions set forth in that Agreement.

NOW, THEREFORE, for good and valuable consideration, Seller hereby sells, assigns, and transfers to Purchaser, its successors and assigns, all of Seller's rights, title, and interest in each and every one of the Accounts described in the Agreement.

ASHTON ASSET MANAGEMENT

By:_____,

Hirsh Mohindra, President

Title:_____

**Menjivar Att. J
Page 20 of 30**

FTC-SLL-0004002

# RECEIVABLES PURCHASE AGREEMENT

LOT NO: 2016-ASHTON ASSET MANAGEMENT-DEBT MANAGEMENT PARTNERS, LLC 011116

This Receivables Purchase Agreement ("Agreement") is made and entered into this 11th day of January 2016, by and between ASHTON ASSET MANAGEMENT, (hereinafter referred to as "Seller ") and DEBT MANAGEMENT PARTNERS, LLC (hereinafter referred to as "Purchaser")

WHEREAS, Seller desires to sell certain receivables ("Debt Receivables"); and

WHEREAS, Purchaser desires to purchase such Debt Receivables from Seller, as more particularly defined herein on the terms and conditions set forth in this Agreement;

NOW THEREFORE, in consideration of the foregoing recitals and the mutual covenants and conditions contained in this Agreement, and for other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, it is agreed as follows:

1. <u>SALE AND PURCHASE OF DEBT RECEIVABLES.</u>  Subject to the terms of this Agreement, Seller agrees to sell, convey, transfer and assign to Purchaser and Purchaser agrees to purchase from Seller, for the consideration herein provided, the right, title, interest, and obligations of Seller in and to those Debt Receivables as described on Exhibit A attached hereto (all of such receivables herein collectively called "Accounts" and singularly an "Account"). The Seller represents and warrants the Accounts shall not include accounts which, as of the Closing Date, are classified as follows (hereinafter referred to as "Unqualified Accounts"):

   A. Satisfied, settled, or released (the account was paid or otherwise released or settlement check was received by Seller prior to the Closing Date);

   B. Filing of bankruptcy, applicable to such Account as determined by an opinion of Counsel as reported on a credit bureau as discharged;

   C. Uncollectible due to fraud or death with reasonable evidence provided by Purchaser;

   D. Pending litigation or dispute;

   E. Seller does not have title to accounts.

1

**Menjivar Att. J**
**Page 21 of 30**
FTC-SLL-0005435

All Accounts sold to Purchaser under this Agreement are sold and transferred without recourse as to their enforceability, collectability or documentation except as stated above. Seller will provide complete chain of title within thirty days sale.

2.   **PURCHASE PRICE.**  Subject to the terms and conditions of this Agreement, and in reliance upon the representations, warranties and covenants of the Seller made herein, Purchaser shall pay and deliver to Seller the sum set forth in the Closing Statement attached hereto as Exhibit B, for the Accounts purchased under this Agreement.

3.   **PURCHASE OR SUBSTITUTION OF UNQUALIFIED ACCOUNTS.**  In the event that Purchaser identifies and returns to Seller by January 11th, 2016 an Account which was an Unqualified Account, Seller shall at its option either replace the Account or buy back the Account for the amount that the Purchaser paid for such Account.   Purchaser must provide independent evidence, e.g. Accurint data, supporting request for purchase or substitution.

4.   **INDEMNIFICATION BY PURCHASER.**  Purchaser agrees to indemnify and hold such Seller (including its officers, directors, employees, stockholders, and agents) harmless from and against any claims, actions, suits or other actual or threatened proceedings, and all losses, judgments, damages, expenses or other costs (including all fees and disbursements of counsel) incurred or suffered by Seller by reason of willful misconduct or violation of any applicable law, rule or regulation by Purchaser (or its employees, representatives, agents or successors) or any subsequent Purchaser (or its employees, representatives, agents or successors) in connection with the collection or enforcement of the Accounts.  At its option, Seller shall have the right to require Purchaser to assume the defense of any claims, actions, suits or other actual or threatened proceedings and to directly pay for all losses, judgments, damages, expenses or other costs (including all fees and disbursements of counsel) which may be imposed.

Purchaser agrees that in the event any subsequent Purchaser fails to defend, indemnify and hold Seller harmless that Purchaser shall be responsible to indemnify Seller.

5.   **INDEMNIFICATION BY SELLER.**  Seller agrees to indemnify and hold such Purchaser (including its officers, directors, employees, stockholders, and agents) harmless from and against any claims, actions, suits or other actual or threatened proceedings, and all losses, judgments, damages, expenses or other costs (including all fees and disbursements of counsel) incurred or suffered by Purchaser by reason of willful misconduct or violation of any applicable law, rule or regulation by Seller (or its employees, representatives, agents or successors) in connection with the collection or enforcement of the Accounts. At its option, Purchaser shall have the right to require Seller to assume the defense of any claims, actions, suits or other actual or threatened proceedings and to directly pay for all losses, judgments, damages, expenses or other costs (including all fees and disbursements of counsel) which may be imposed.

2

**Menjivar Att. J**
**Page 22 of 30**
FTC-SLL-0005436

6.    <u>REMITTANCE OF DIRECT PAYMENTS.</u>  Seller shall remit to Purchaser all payments which are received after the Closing Date. Such remittances shall occur within seven days of receipt of payments by Seller.

7.    <u>CONDITIONS OF SALE.</u>

    A.    The obligations of Purchaser to perform hereunder and purchase the Accounts on the Closing Date shall be subject to the satisfaction on or before the Closing Date of the following further conditions: (i) the representations and warranties contained in Paragraph 1 hereof shall to the best of Seller's knowledge and belief be true and correct in all respects on the Closing Date as if made on such date; and (ii) Seller shall have performed and observed all covenants, agreements and conditions hereof to be performed or observed by it on or before the Closing Date.

    B.    The obligations of Seller to perform hereunder and sell the Accounts at Closing shall be subject to the satisfaction, on or before the Closing Date, of the following further conditions: (i) Purchaser shall provide Seller with a copy of its proposed notification to Account obligor advising them that the Accounts have been transferred to Purchaser and that all payments on the Accounts shall thereafter be made to the Purchaser. Purchaser shall have delivered to Seller the Purchase Price specified in Paragraph 2 hereof.

    C.    Purchaser agrees that any Accounts being purchased pursuant to this Agreement shall, if resold by Purchaser, continue to be subject to all terms and conditions set forth herein. Purchaser agrees that for any and all future Contract of Sale or other document evidencing a transfer of ownership that this Agreement shall be disclosed to such firm and that this Agreement, along with all of its terms and conditions, made a part of such Contract of Sale or other documents, except that no disclosure shall be required of sale price.

8.    <u>CLOSING.</u> The closing of the sale and applicable purchase of the Accounts shall take place on the date and at the location described in the Exhibit B hereto, or such other date and location as shall be mutually agreed upon by the parties hereto (the actual date of Closing being herein called the "Closing Date"). At the Closing, the following shall be done:

    A.    Seller shall deliver the final electronic sale file of Debt Receivables to Broker.

    B.    Purchaser shall pay the balance of Purchase Price as set forth on Paragraph 2 of this Agreement and in Exhibit B to Broker's escrow account.

9.    <u>REPRESENTATIONS AND WARRANTIES OF PURCHASER.</u>

**Menjivar Att. J**
**Page 23 of 30**
FTC-SLL-0005437

Purchaser covenants and agrees that in the collection of all Accounts listed in Exhibit A, Purchaser or its agents, employees, representatives or assignees shall comply with all applicable state and federal debt collection laws.

Purchaser or its assignee or successor shall, at its own expense, give the debtor of each Account written notice of the transfer by ordinary mail or debtor's last known address in its first written communication with the debtor.

Purchaser warrants and represents that it is a sophisticated informed investor, has knowledge and experience in financial and business matters that enables it to evaluate the merits and risks of the transaction contemplated by this Agreement. The Purchaser acknowledges that Seller does not represent, warrant or insure the accuracy or completeness of any information or its sources of information contained in the information provided or in any of the Account Files. The Purchaser agrees and represents that the Accounts and Account Files made available to it were an adequate and sufficient basis on which to determine whether and at what price to purchase the Accounts. The Purchaser has made such independent investigations as it deems to be warranted into the nature, validity, enforceability, collectability and value of the Accounts, and all other facts it deems material to its purchase and is entering into this transaction solely on the basis of that investigation and the Purchaser's own judgment, and is not acting in reliance on any representatives or independent contractors (other than the representations and warranties of the Seller contained herein).

Purchaser is in full compliance with its obligations under the terms of any Confidentiality Agreement executed by the Purchaser to review the information made available by Seller or its agents, and the terms thereof are hereby incorporated herein subject to Purchaser's ownership rights and interests acquired by Purchaser hereunder.

10. NOTICES. Any notice or other communication provided for herein or given hereunder to a party hereto shall be in writing and shall be delivered in person to such party or mailed by first class registered or certified mail, postage prepaid, addressed as follows:

If to Purchaser:

DEBT MANAGEMENT PARTNERS, LLC
200 John James Audubon Parkway, Suite 108
Amherst, NY 14228
Attn: Dan Valentine

If to Seller:

ASHTON ASSET MANAGEMENT
500 Quail Ridge Drive
Westmont, Illinois 60559
Attn: Hirsh Mohindra, President

11. SEVERABILITY. If any provision, or application thereof, of this Agreement is held

4

unlawful or unenforceable in any respect, the parties hereto agree that such illegality or unenforceability shall not affect other provisions or allocations that can be given effect, and this Agreement shall be construed as if the unlawful or unenforceable provisions are amended so as to make it valid, reasonable and enforceable and agree to be bound by the terms of such provision, as modified by the court.

12. <u>AMENDMENTS.</u> This Agreement may be amended or modified only by a written instrument executed by all the parties hereto.

13. <u>COUNTERPARTS.</u> This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute but one instrument.

14. <u>HEADINGS.</u> The headings contained in this Agreement and in the Exhibits appended hereto are for convenience only and shall not be deemed to affect the interpretation of the provisions of this Agreement.

15. <u>SURVIVAL OF REPRESENTATIONS AND WARRANTIES.</u> The representations, warranties, covenants and agreements of the parties set forth herein shall survive the closing.

16. <u>ROLE OF BROKER.</u> Purchaser and Seller agree that while Broker has advised and assisted Seller in connection with this sale and has negotiated with Purchaser regarding terms of the sale, Broker has no obligation and makes no warranty to Purchaser with respect to the Purchased Accounts. Any claim by Purchaser with respect to the Purchased Accounts shall be against the applicable Seller only, and Broker shall not bear any liability in connection with such claim.

Purchaser and Seller agree that the Purchase Price shall be paid to Broker's Escrow Account, who shall distribute it to Seller in accordance with the terms of Seller's understanding with Broker. Seller shall indemnify Purchaser against any claim by Broker for compensation or other remuneration relating to this Agreement or the Purchased Accounts.

17. <u>GOVERNING LAW.</u> This Agreement is made pursuant to, and shall be construed under the laws of the State of Illinois.

18. <u>ENTIRE AGREEMENT.</u> This Agreement is intended to define the full extent of the legally enforceable undertakings of the parties hereto, and no related promise or representation, written or oral, which is not set forth explicitly in this Agreement is intended by either party to be legally binding. Both parties acknowledge that in deciding to enter into this transaction they have relied on no representations, written or oral, other than those explicitly set forth in this Agreement.

19. <u>CONFIDENTIALITY.</u> The parties understand and agree that the terms of this Agreement

**Menjivar Att. J**
**Page 25 of 30**
FTC-SLL-0005439

are confidential and they will not be disclosed to anyone outside of their respective organizations.

20.   PURCHASER'S RIGHT OF RESALE.  Purchaser may sell or transfer any of the Accounts to a third party provided Purchaser uses its best efforts to assure that any subsequent purchaser is a reputable entity that shall provide Purchaser with industry typical indemnifications, and provided Purchaser requires every subsequent purchaser of all or part of the Accounts to agree to the same representations, warranties, and terms and be subject to the same indemnities of Purchaser as set forth in this Agreement, including but not limited to this Section and the original agreements in which seller sold a portfolio of receivables including the Accounts as though the third party purchaser and any subsequent purchaser were Purchaser, and any agreement for the sale of all or part of the Accounts by Purchaser and any subsequent purchaser shall provide further that each Seller shall have a direct right of action against all subsequent purchasers of all or part of the Accounts with respect to such representations, warranties, terms and indemnities, and Purchaser shall use no lower standards in selecting third party purchasers of Accounts that it typically uses for its other receivable portfolios. Purchaser shall promptly inform Sellers of the identities of any potential purchasers to whom Purchaser furnishes any of the information with respect to the Accounts, and of any subsequent purchasers of the Accounts and Purchaser shall only sell Accounts after making a good faith investigation of and a determination that the potential purchaser's integrity and financial reliability conform to the standards set forth in the agreement. Sale of some or all Accounts shall not relieve Purchaser of any obligation that Purchaser has undertaken under this Agreement and Purchaser shall be liable to Sellers for the breach of any representations, warranty or covenant or with respect to any indemnity that Purchasers adhere to as specified above.

6

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement on the date first above written.

PURCHASER:            DEBT MANAGEMENT PARTNERS, LLC

By:                       Dan Valentine, Managing Member

SELLER:               ASHTON ASSET MANAGEMENT

By:                       Hirsh Mohindra, President

LOT NO: 2016-ASHTON ASSET MANAGEMENT-DEBT MANAGEMENT PARTNERS, LLC 011116

7

## EXHIBIT A

LOT NO: 2016-ASHTON ASSET MANAGEMENT-DEBT MANAGEMENT PARTNERS, LLC-011116

29,097 PDL Accounts with Total Receivable Value of  $17,000,620.00

8

EXHIBIT B
CLOSING STATEMENT
ASHTON ASSET MANAGEMENT

LOT NO: 2016-ASHTON ASSET MANAGEMENT-DEBT MANAGEMENT PARTNERS, LLC-011116

| | |
|---|---|
| Receivable Amount | $17,000,620.00 |
| Accounts | 29,097 |
| Purchase Rate | $0.01 |
| Purchase Price | $170,006.20 |
| Closing Date | January 11th, 2016 |

A. On the Closing Date January 11th, 2016, Purchaser shall pay to Seller, by Wire, the amount of $170,006.20.
B. Seller agrees to transfer the Accounts, as set forth in Exhibit A, to Purchaser within 72 hours of funding of payment.
C. Wire Instructions:

| | |
|---|---|
| Account Name | Ashton Asset Management, Inc.<br>500 Quail Ridge Dr.<br>Westmont, IL 60559 |
| Bank | Bank of America |
| ABA Routing | 026009593 |
| Account Number | ████6657 |

9

Page 29 of 30
FTC-SLL-0005443

EXHIBIT C

ASSIGNMENT AND BILL OF SALE

LOT NO: 2016-ASHTON ASSET MANAGEMENT-DEBT MANAGEMENT PARTNERS, LLC-011116

Receivable Amount                              $17,000,620.00

Accounts                                       29,097

ASHTON ASSET MANAGEMENT (hereinafter called "Seller") has entered into a Receivable Purchase Agreement dated January 11th, 2016 ("Agreement") for the sale of Accounts on Exhibit "A", hereof to DEBT MANAGEMENT PARTNERS, LLC, (hereinafter called "Purchaser"), upon the terms and conditions set forth in that Agreement.

NOW, THEREFORE, for good and valuable consideration, Seller hereby sells, assigns, and transfers to Purchaser, its successors and assigns, all of Seller's rights, title, and interest in each and every one of the Accounts described in the Agreement.

ASHTON ASSET MANAGEMENT

By: _____

Hirsh Mohindra,
Title: President

10

# Menjivar Attachment K

# RECEIVABLES PURCHASE AGREEMENT

FILE NO: Ever Green & Riverside – __JR Holdings, LLC_____and ASHTON ASSET MANAGEMENT, LLC

This Receivables Purchase Agreement ("Agreement") is made and entered into this _14_ day of March 2014, by and between __JR Holdings_____, LLC (hereinafter referred to as "Seller ") and **ASHTON ASSET MANAGEMENT** (hereinafter referred to as "Purchaser")

WHEREAS, Seller desires to sell certain receivables originated via Ever Green Payday Loans and Riverside Payday Loans ("Debt Receivables"); and

WHEREAS, Purchaser desires to purchase such Debt Receivables from Seller, as more particularly defined herein on the terms and conditions set forth in this Agreement;

NOW THEREFORE, in consideration of the foregoing recitals and the mutual covenants and conditions contained in this Agreement, and for other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, it is agreed as follows:

1.  SALE AND PURCHASE OF DEBT RECEIVABLES. Subject to the terms of this Agreement, Seller agrees to sell, convey, transfer and assign to Purchaser and Purchaser agrees to purchase from Seller, for the consideration herein provided, the right, title, interest, and obligations of Seller in and to those Debt Receivables as described on Exhibit A attached hereto (all of such receivables herein collectively called "Accounts" and singularly an "Account"). The Seller represents and warrants the Accounts shall not include accounts which, as of the Closing Date, are classified as follows (hereinafter referred to as "Unqualified Accounts"):

    A.  Satisfied, settled, or released (the account was paid or otherwise released or settlement check was received by Seller prior to the Closing Date);

    B.  Filing of bankruptcy, applicable to such Account as determined by an opinion of Counsel as reported on a credit bureau as discharged;

    C.  Uncollectible due to fraud or death with reasonable evidence provided by Purchaser;

    D.  Pending litigation or dispute;

    E.  Seller does not have title to accounts.

    F.  No Accounts have been modified from the terms of the original loan.

    G.  Accounts have never been previously sold, assigned, or placed with a collections agency for collection.

All Accounts sold to Purchaser under this Agreement are sold and transferred without recourse as to their enforceability, collectability or documentation except as stated above.

1

**Menjivar Att. K**
**Page 1 of 28**
FTC-SLL-0004538

Paragraph 1 hereof shall to the best of Seller's knowledge and belief be true and correct in all respects on the Closing Date as if made on such date; and (ii) Seller shall have performed and observed all covenants, agreements and conditions hereof to be performed or observed by it on or before the Closing Date.

B.  The obligations of Seller to perform hereunder and sell the Accounts at Closing shall be subject to the satisfaction, on or before the Closing Date, of the following further conditions: (i) Purchaser shall provide Seller with a copy of its proposed notification to Account obligor advising them that the Accounts have been transferred to Purchaser and that all payments on the Accounts shall thereafter be made to the Purchaser. Purchaser shall have delivered to Seller the Purchase Price specified in Paragraph 2 hereof.

C.  Purchaser agrees that any Accounts being purchased pursuant to this Agreement shall, if resold by Purchaser, continue to be subject to all terms and conditions set forth herein. Purchaser agrees that for any and all future Contract of Sale or other document evidencing a transfer of ownership that this Agreement shall be disclosed to such firm and that this Agreement, along with all of its terms and conditions, made a part of such Contract of Sale or other documents, except that no disclosure shall be required of sale price.

8.  CLOSING. The closing of the sale and applicable purchase of the Accounts shall take place on the date and at the location described in the Exhibit B hereto, or such other date and location as shall be mutually agreed upon by the parties hereto (the actual date of Closing being herein called the "Closing Date"). At the Closing, the following shall be done:

A.  Seller shall deliver the final electronic sale file of Debt Receivables.

B.  Purchaser shall pay the balance of Purchase Price as set forth on Paragraph 2 of this Agreement and in Exhibit B to seller's escrow account.

9.  REPRESENTATIONS AND WARRANTIES OF SELLER.  Seller represents and warrants to the best of its knowledge that:

A.  the Accounts were acquired from ___JR Holdings, LLC_____, lender and/or servicer of the Accounts ("Seller");

B.  the Accounts were not owned by any other party since being charged off by Prior Seller other than Seller;

10. SELLER'S ASSUMPTION OF LIABILITY AND FURTHER INDEMNIFICATIONS. Seller; including it's Managers, agents, employees, shareholders, subsidiaries, affiliates, members, directors, officers, employees, and contractors shall at their own expense indemnify, defend and hold harmless and assume all liability from Purchaser, arising from and against any and all claims, demands, actions, suits, proceedings, losses, damages, costs and expenses (including, without limitation, attorneys' fees, court costs, reasonable costs of alternative dispute resolution proceedings, and costs of

3

**Menjivar Att. K**
**Page 2 of 28**

FTC-SLL-0004539

settlement), whether known or unknown, whether fixed or contingent, and whether now or hereafter in existence, discovered or asserted, based upon, relating to or arising out of any actual or alleged actions resulting from Seller's negligence, knowing & intentional and tortious conduct, omissions, and/or malice involved with the Accounts. All terms and provisions contained in this Section shall survive any termination or expiration of this Agreement and shall be and remain enforceable in accordance with their terms.

11.   REPRESENTATIONS AND WARRANTIES OF PURCHASER.  Purchaser covenants and agrees that in the collection of all Accounts listed in Exhibit A, Purchaser or its agents, employees, representatives or assignees shall comply with all applicable state and federal debt collection laws.

Purchaser or its assignee or successor shall, at its own expense, give the debtor of each Account written notice of the transfer by ordinary mail or debtor's last known address in its first written communication with the debtor.

Purchaser warrants and represents that it is a sophisticated informed investor, has knowledge and experience in financial and business matters that enables it to evaluate the merits and risks of the transaction contemplated by this Agreement. The Purchaser agrees and represents that the Accounts and Account Files made available to it were an adequate and sufficient basis on which to determine whether and at what price to purchase the Accounts.

Purchaser is in full compliance with its obligations under the terms of any Confidentiality Agreement executed by the Purchaser to review the information made available by Seller or its agents, and the terms thereof are hereby incorporated herein subject to Purchaser's ownership rights and interests acquired by Purchaser hereunder.

12.   NOTICES. Any notice or other communication provided for herein or given hereunder to a party hereto shall be in writing and shall be delivered in person to such party or mailed by first class registered or certified mail, postage prepaid, addressed as follows:

If to Purchaser:     Ashton Asset Management, Inc
                     500 Quail Ridge Dr.
                     Westmont, IL 60559
                     630.479.0000

                     Attention: Hirsh Mohindra

If to Seller:        Evergreen & Riverside --
                     JR Holdings LLC
                     1881 9th Street Suite 110
                     Boulder, CO 80302
                     Attention:  Joel Tucker

4

**Menjivar Att. K**
**Page 3 of 28**

FTC-SLL-0004540

13. SEVERABILITY. If any provision, or application thereof, of this Agreement is held unlawful or unenforceable in any respect, the parties hereto agree that such illegality or unenforceability shall not affect other provisions or allocations that can be given effect, and this Agreement shall be construed as if the unlawful or unenforceable provisions are amended so as to make it valid, reasonable and enforceable and agree to be bound by the terms of such provision, as modified by the court.

14. AMENDMENTS. This Agreement may be amended or modified only by a written instrument executed by all the parties hereto.

15. COUNTERPARTS. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute but one instrument.

16. HEADINGS. The headings contained in this Agreement and in the Exhibits appended hereto are for convenience only and shall not be deemed to affect the interpretation of the provisions of this Agreement.

17. SURVIVAL OF REPRESENTATIONS AND WARRANTIES. The representations, warranties, covenants and agreements of the parties set forth herein shall survive the closing.

18. GOVERNING LAW. This Agreement is made pursuant to, and shall be construed under the laws of the State of Illinois.

19. ENTIRE AGREEMENT. This Agreement is intended to define the full extent of the legally enforceable undertakings of the parties hereto, and no related promise or representation, written or oral, which is not set forth explicitly in this Agreement is intended by either party to be legally binding. Both parties acknowledge that in deciding to enter into this transaction they have relied on no representations, written or oral, other than those explicitly set forth in this Agreement.

20. CONFIDENTIALITY. The parties understand and agree that the terms of this Agreement are confidential and they will not be disclosed to anyone outside of their respective organizations.

5

**Menjivar Att. K**
**Page 4 of 28**

FTC-SLL-0004541

21.     PURCHASER'S RIGHT OF RESALE. There are no restrictions on the Purchaser's right to sell or otherwise transfer the Accounts.

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement on the date first above written.

PURCHASER:          **ASHTON ASSET MANAGEMENT, INC**


By:                 _____
                    Hirsh Mohindra, President


SELLER:             **EVERGREEN & RIVERSIDE --**

By:

                    Joel Tucker – Title  General Manager, JR Holdings, LLC

6

EXHIBIT A

PORTFOLIO 1

FILE: Ever Green & Riverside – JR Holdings, LLC and ASHTON ASSET MANAGEMENT

Number of Accounts: 61,880

Face Value: $25,000,017

PORTFOLIO 1

FILE: Ever Green & Riverside – JR Holdings, LLC and ASHTON ASSET MANAGEMENT

Number of Accounts: 79,518

Face Value: $33,002,536

PORTFOLIO 2

FILE: Ever Green & Riverside – JR Holdings, LLC and ASHTON ASSET MANAGEMENT

Number of Accounts: 79,578

Face Value: $33,024,294

PORTFOLIO 3

7

Menjivar Att. K
Page 6 of 28
FTC-SLL-0004543

EXHIBIT B

CLOSING STATEMENT

Ashton Asset Management, LLC

FILE NO: Ever Green & Riverside

| | |
|---|---|
| Receivable Amount | $91,026,847.00 |
| Accounts | 220,976 |
| Purchase Rate | $0.015 |
| Purchase Price | $ 1,365,402.00 |
| Closing Date | March _14_, 2014 |

A. On or before the Closing Date, Purchaser shall pay to Seller, by Wire, an amount equal to the Purchase Price. Seller shall provide wiring instructions to Purchaser.

B. Seller agrees to transfer the Accounts, as set forth in Exhibit A, to Purchaser within 48 hours of funding of each payment unless otherwise agreed upon by both parties.

8

**Menjivar Att. K**
**Page 7 of 28**
FTC-SLL-0004544

EXHIBIT C

ASSIGNMENT AND BILL OF SALE

Receivable Amount                          $91,026,847.00

Accounts                                   220,976

___JR Holdings, LLC_____(hereinafter called "Seller") has entered into a Receivable Purchase Agreement dated March, _14_ 2014 ("Agreement") for the sale of Accounts on Exhibit "A", hereof to ASHTON ASSET MANAGEMENT, LLC – (hereinafter called "Purchaser"), upon the terms and conditions set forth in that Agreement.

THEREFORE, effective March,_14_ 2014 for good and valuable consideration, Seller hereby sells, assigns, and transfers to Purchaser, its successors and assigns, all of Seller's rights, title, and interest in each and every one of the Accounts described in the Agreement.

SELLER

By:

Joel Tucker
JR Holdings, LLC
General Manager

9

Menjivar Att. K
Page 8 of 28
FTC-SLL-0004545

# RECEIVABLES PURCHASE AGREEMENT

Sale from Graywave Capital, LLC. to Ashton Asset Management, Inc.

This Receivables Purchase Agreement ("Agreement") is made and entered into this 15 day of February 2015, by and between Graywave Capital, LLC (hereinafter referred to as "Seller ") and Ashton Asset Management, Inc. (hereinafter referred to as "Purchaser").

**WHEREAS**, Seller desires to sell certain receivables ("Debt Receivables"); and

**WHEREAS**, Purchaser desires to purchase such Debt Receivables from Seller, as more particularly defined herein on the terms and conditions set forth in this Agreement;

**NOW THEREFORE**, in consideration of the foregoing recitals and the mutual covenants and conditions contained in this Agreement, and for other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, it is agreed as follows:

1.  <u>SALE AND PURCHASE OF DEBT RECEIVABLES.</u> Subject to the terms of this Agreement, Seller agrees to sell, convey, transfer and assign to Purchaser and Purchaser agrees to purchase from Seller, for the consideration herein provided, the right, title, interest, and obligations of Seller in and to those Debt Receivables as described on Exhibit A attached hereto (all of such receivables herein collectively called "Accounts" and singularly an "Account").   The Seller represents and warrants the Accounts shall not include Accounts which, as of each Closing Date and for eighteen months thereafter each Closing Date, are classified as follows (hereinafter referred to as "Unqualified Accounts"):

    A.   Seller does not have clear title and ownership to each account;

    B.   Chain of custody and title of each Account does not conform as follows:

          i)   Lender (as noted for each Account as "Lender") to Graywave Capital, LLC;

          ii)   Graywave Capital, LLC to Purchaser;

    C.   Owned at any time by any party other than Lender, Graywave Capital, LLC, Seller or Purchaser;

    D.   Missing data from the electronic sale file for an Account that is not otherwise provided by Seller within 7 days of a request by Purchaser.

    E.   Seller or any prior owner has directly or indirectly placed any Account with a third-party collection agency or law firm for collection since the date of charge-off;

    F.   Account was fraudulently originated or Account is uncollectible due to alleged fraud or misrepresentation by the Lender ;

    G.   Account is in dispute by debtor with regard to the origination or servicing of the Account while owned by a prior owner, including correspondence and or threatened litigation;

    H.   The origination or servicing of the Account by a prior owner was deemed in violation of any applicable law, rule or regulation;

    I.   Account was invalidated, extinguished or the subject of a restraining order by a local, state or federal government agency or court;

Page **1** of **10**

J.  The terms of the underlying loan for an Account has been modified since the date each Account was originated;

K.  Account was satisfied, settled, or released by any party other than Purchaser (the account was paid or otherwise released or settlement was received by Seller or any party);

L.  Balance does not reflect payments made in "good faith" by the debtor (with reasonable evidence that payments were made by a debtor for an Account originated by the same Lender)

All Accounts sold to Purchaser under this Agreement are sold and transferred without recourse as to their enforceability or collectability except as stated above.

2.  PURCHASE PRICE. Subject to the terms and conditions of this Agreement, and in reliance upon the representations, warranties and covenants of the Seller made herein, Purchaser shall pay and deliver to Seller the sums set forth in the Closing Statement for each tranche as detailed in Exhibit B, for the Accounts purchased under this Agreement.  The parties agree that the

3.  PURCHASE OF UNQUALIFIED ACCOUNTS.  In the event that Purchaser identifies and returns to Seller within eighteen months of each Closing Date an Account which was an Unqualified Account, Seller shall buy back the Account for the amount equal to 125% of what the Purchaser paid for such Account on a pro rata basis.

4.  INDEMNIFICATION BY PURCHASER. Purchaser agrees to indemnify and hold such Seller (including its officers, directors, employees, stockholders, and agents) harmless from and against any claims, actions, suits or other actual or threatened proceedings, and all losses, judgments, damages, expenses or other costs (including all fees and disbursements of counsel) incurred or suffered by Seller by reason of willful misconduct or violation of any applicable law, rule or regulation by Purchaser (or its employees, representatives, agents or successors) or any subsequent Purchaser in connection with the collection or enforcement of the Accounts. At its option, Seller shall have the right to require Purchaser to assume the defense of any claims, actions, suits or other actual or threatened proceedings and to directly pay for all losses, judgments, damages, expenses or other costs (including all fees and disbursements of counsel) which may be imposed.

5.  INDEMNIFICATION BY SELLER. Seller agrees to indemnify and hold such Purchaser (including its officers, directors, employees, stockholders, agents and successors) harmless from and against any claims, actions, suits or other actual or threatened proceedings, and all losses, judgments, damages, expenses or other costs (including all fees and disbursements of counsel) incurred or suffered by Purchaser by reason of any misconduct, negligence or violation of any applicable law, rule or regulation by Seller (or its employees, representatives, agents or successors) or any prior owner or servicer in connection with the Accounts.  At its option, Purchaser shall have the right to require Seller to assume the defense of any claims, actions, suits or other actual or threatened proceedings and to directly pay for all losses, judgments, damages, expenses or other costs (including all fees and disbursements of counsel) which may be imposed. Seller agrees to extend any and all indemnifications it has received from Graywave Capital, LLC, as the prior seller, to Purchaser.

**Menjivar Att. K**
**Page 10 of 28**
FTC-SLL-0004485

6. <u>REMITTANCE OF DIRECT PAYMENTS.</u> Seller shall remit to Purchaser all payments which are received by Seller or any prior owner after the Closing Date or received prior to the Closing Date but no reflected in the balance of each Account. Such remittances shall occur within seven days of receipt of payments by Seller. Seller agrees to use its best efforts to secure any payments from prior owners and remit these payments to Purchaser.

7. <u>CONDITIONS OF SALE.</u>

   A. The obligations of Purchaser to perform hereunder and purchase the Accounts on the Closing Date shall be subject to the satisfaction on or before the Closing Date of the following further conditions: (i) the representations and warranties contained in Paragraph 1 hereof shall to the best of Seller's knowledge and belief be true and correct in all respects on the Closing Date as if made on such date; and (ii) Seller shall have performed and observed all covenants, agreements and conditions hereof to be performed or observed by it on or before the Closing Date.

   B. The obligations of Seller to perform hereunder and sell the Accounts at Closing shall be subject to the satisfaction, on or before the Closing Date, of the following further conditions: Purchaser shall have delivered to Seller the Purchase Price specified in Paragraph 2 hereof.

   C. Purchaser agrees that any Accounts being purchased pursuant to this Agreement shall, if resold by Purchaser, continue to be subject to all terms and conditions set forth herein. Purchaser agrees that for any and all future Contract of Sale or other document evidencing a transfer of ownership that this Agreement shall be disclosed to such firm and that this Agreement, along with all of its terms and conditions, made a part of such Contract of Sale or other documents, except that no disclosure shall be required of sale price.

   D. Seller agrees to time is of the essence and agrees that it will assist the Purchaser with any request for additional information or clarification of the electronic data file associated with the Debt Receivables. Seller will use its best efforts to resolve any question associated with the origination, servicing or documentation of the Accounts. Within five days of each Closing Date, Seller shall provide Purchaser with form copies of the standard loan documentation used by each Lender to originate the Debt Receivables.

8. <u>CLOSING.</u> The closing of the sale and applicable purchase of the Accounts shall take place on the dates and at the location described in the Exhibit B hereto, or such other date and location as shall be mutually agreed upon by the parties hereto (the actual date of each Closing herein called the "Closing Date"). At or prior to each Closing Date, the following shall be done:

   A. Purchaser shall pay the balance of Purchase Price as set forth on Paragraph 2 of this Agreement and in Exhibit B to seller's escrow account.

   B. Seller shall deliver the final electronic sale file of Debt Receivables.

**Menjivar Att. K**
**Page 11 of 28**

FTC-SLL-0004486

9.    <u>REPRESENTATIONS AND WARRANTIES OF PURCHASER.</u> Purchaser covenants and agrees that in the collection of all Accounts listed in Exhibit A, Purchaser or its agents, employees, representatives or assignees shall comply with all applicable state and federal debt collection laws.

Purchaser warrants and represents that it is a sophisticated informed investor, has knowledge and experience in financial and business matters that enables it to evaluate the merits and risks of the transaction contemplated by this Agreement. The Purchaser acknowledges that Seller does not represent, warrant or insure the accuracy or completeness of any information or its sources of information contained in the information provided or in any of the Account Files. The Purchaser agrees and represents that the Accounts and Account Files made available to it were an adequate and sufficient basis on which to determine whether and at what price to purchase the Accounts. The Purchaser has made such independent investigations as it deems to be warranted into the nature, validity, enforceability, collectability and value of the Accounts, and all other facts it deems material to its purchase and is entering into this transaction solely on the basis of that investigation and the Purchaser's own judgment, and is not acting in reliance on any representatives or independent contractors (other than the representations and warranties of the Seller contained herein).

Purchaser is in full compliance with its obligations under the terms of any Confidentiality Agreement executed by the Purchaser to review the information made available by Seller or its agents, and the terms thereof are hereby incorporated herein subject to Purchaser's ownership rights and interests acquired by Purchaser hereunder.

10.    <u>NOTICES.</u> Any notice or other communication provided for herein or given hereunder to a party hereto shall be in writing and shall be delivered in person to such party or mailed by first class registered or certified mail, postage prepaid, addressed as follows:

If to Purchaser:         Ashton Asset Management, Inc.
                          500 Quail Ridge Drive
                          Westmont, IL 60559
                          Attention: Hirsh Mohindra
                          hirsh@ashtonasset.com

If to Seller:             Graywave Capital, LLC
                          1809 Canyon
                          Bolder, CO 80303
                          Attention: Joel Tucker
                          joelt@graywavecap.com

11. SEVERABILITY. If any provision, or application thereof, of this Agreement is held unlawful or unenforceable in any respect, the parties hereto agree that such illegality or unenforceability shall not affect other provisions or allocations that can be given effect, and this Agreement shall be construed as if the unlawful or unenforceable provisions are amended so as to make it valid, reasonable and enforceable and agree to be bound by the terms of such provision, as modified by the court.

12. AMENDMENTS. This Agreement may be amended or modified only by a written instrument executed by all the parties hereto.

13. COUNTERPARTS. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute but one instrument.

14. HEADINGS. The headings contained in this Agreement and in the Exhibits appended hereto are for convenience only and shall not be deemed to affect the interpretation of the provisions of this Agreement.

15. SURVIVAL OF REPRESENTATIONS AND WARRANTIES. The representations, warranties, covenants and agreements of the parties set forth herein shall survive in perpetuity.

16. ROLE OF BROKER. N/A

17. GOVERNING LAW. This Agreement is made pursuant to, and shall be construed under the laws of the State of New York.

18. ENTIRE AGREEMENT. This Agreement is intended to define the full extent of the legally enforceable undertakings of the parties hereto, and no related promise or representation, written or oral, which is not set forth explicitly in this Agreement is intended by either party to be legally binding. Both parties acknowledge that in deciding to enter into this transaction they have relied on no representations, written or oral, other than those explicitly set forth in this Agreement.

19. CONFIDENTIALITY. The parties understand and agree that the terms of this Agreement are confidential and they will not be disclosed to anyone outside of their respective organizations.

20. PURCHASER'S RIGHT OF RESALE. There is no restriction on the resale of any Accounts.

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement on the date first above written.

PURCHASER:     **ASHTON ASSET MANAGEMENT, INC.**


By:_____
           Hirsh Mohindra, Authorized Signatory

SELLER:        **GRAYWAVE CAPITAL, LLC**


By:_____
           Joel Tucker, President

**Menjivar Att. K**
**Page 14 of 28**
FTC-SLL-0004489

EXHIBIT A

Sale from Graywave Capital, LLC to Ashton Asset Management, Inc.

Originator:                    Mixed Lender via Graywave Capital, LLC (Joel Tucker)

Number of Accounts:      879,720

Face Value:               $400,000,000.00

**Menjivar Att. K**
**Page 15 of 28**
FTC-SLL-0004490

EXHIBIT B

CLOSING STATEMENT

Sale from Graywave Capital, LLC to Ashton Asset Management, Inc.

The Purchaser and Seller agree to close on the Debt Receivables as described below:

| | |
|---|---|
| Receivable Amount | $400,000,000.00 |
| Number of Accounts: | 879,720 |
| Purchase Rate | 0.0025 |
| Base Purchase Price | $1,000,000.00 |
| Expense Reimbursement | $ |
| Total Purchase Price | $1,000,000.00 |
| Closing Date | no later than 2/15/2015 |

**General Terms for Closing:**

A.  On or before the Closing Date, Purchaser shall pay to Seller, by Wire, an amount equal to 100% of the Purchase Price (see above).  Wire Instructions to be provided by Seller at least 48 hours prior to each Closing Date.

B.  Seller agrees to transfer the Accounts, as well as the results from scrubbing, as mutually agreed, to Purchaser within 24 hours of funding the first 50% of the Base Purchase Price.

C.  Seller agrees to place the Accounts, as well as the results from scrubbing, on one or electronic computer readable files.  Seller will store said computer readable files on a removable USB memory storage drive.  Seller will deliver said removable USB memory storage drive to Purchaser, at 500 Quail Ridge Drive, Westmont IL. 60559, within 24 hours of Purchaser wiring the first 50% of the Base Purchase Price.  Seller may deliver the USB memory storage drive via Fed Ex or the United State Postal Service.

**Menjivar Att. K**
**Page 16 of 28**
FTC-SLL-0004491

EXHIBIT C

FORM OF

ASSIGNMENT AND BILL OF SALE

Sale from Graywave Capital, LLC to Ashton Asset Management, Inc.

Originator:                     Mixed lenders via JR Holdings, LLC
                                (Joel Tucker)

Receivable Amount               $400,000,000.00

Accounts                        879,720

Graywave Capital, LLC (hereinafter called "Seller") has entered into a Receivable Purchase Agreement dated February 15, 2015 ("Agreement") for the sale of Accounts on Exhibit "A", hereof to Ashton Asset Management, Inc. (hereinafter called "Purchaser"), upon the terms and conditions set forth in that Agreement.

THEREFORE, effective February 15, 2015 for good and valuable consideration, Seller hereby sells, assigns, and transfers to Purchaser, its successors and assigns, all of Seller's rights, title, and interest in each and every one of the Accounts described in the Agreement.

GRAYWAVE CAPITAL, LLC

By:_____
Joel Tucker, President

Menjivar Att. K
Page 17 of 28
FTC-SLL-0004492

EXHIBIT D

RECEIVABLES PURCHASE AGREEMENT

BY AND BETWEEN

GRAYWAVE CAPITAL, LLC

AND

ASHTON ASSET MANAGEMENT, INC.

Sale from Graywave Capital, LLC to Ashton Asset Management, Inc.

*[Copy of Agreement to be attached]*

**Menjivar Att. K**
**Page 18 of 28**
FTC-SLL-0004493

# RECEIVABLES PURCHASE AGREEMENT

Sale from Graywave Capital, LLC. to Ashton Asset Management, Inc.

This Receivables Purchase Agreement ("Agreement") is made and entered into this 15 day of April 2015, by and between Graywave Capital, LLC (hereinafter referred to as "Seller ") and Ashton Asset Management, Inc. (hereinafter referred to as "Purchaser").

**WHEREAS**, Seller desires to sell certain receivables ("Debt Receivables"); and

**WHEREAS**, Purchaser desires to purchase such Debt Receivables from Seller, as more particularly defined herein on the terms and conditions set forth in this Agreement;

**NOW THEREFORE**, in consideration of the foregoing recitals and the mutual covenants and conditions contained in this Agreement, and for other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, it is agreed as follows:

1.    <u>SALE AND PURCHASE OF DEBT RECEIVABLES.</u> Subject to the terms of this Agreement, Seller agrees to sell, convey, transfer and assign to Purchaser and Purchaser agrees to purchase from Seller, for the consideration herein provided, the right, title, interest, and obligations of Seller in and to those Debt Receivables as described on Exhibit A attached hereto (all of such receivables herein collectively called "Accounts" and singularly an "Account").   The Seller represents and warrants the Accounts shall not include Accounts which, as of each Closing Date and for eighteen months thereafter each Closing Date, are classified as follows (hereinafter referred to as "Unqualified Accounts"):

    A.    Seller does not have clear title and ownership to each account;

    B.    Chain of custody and title of each Account does not conform as follows:

        i)    Lender (as noted for each Account as "Lender") to Graywave Capital, LLC;

        ii)   Graywave Capital, LLC to Purchaser;

    C.    Owned at any time by any party other than Lender, Graywave Capital, LLC, Seller or Purchaser;

    D.    Missing data from the electronic sale file for an Account that is not otherwise provided by Seller within 7 days of a request by Purchaser.

    E.    Seller or any prior owner has directly or indirectly placed any Account with a third-party collection agency or law firm for collection since the date of charge-off;

    F.    Account was fraudulently originated or Account is uncollectible due to alleged fraud or misrepresentation by the Lender ;

    G.    Account is in dispute by debtor with regard to the origination or servicing of the Account while owned by a prior owner, including correspondence and or threatened litigation;

    H.    The origination or servicing of the Account by a prior owner was deemed in violation of any applicable law, rule or regulation;

    I.    Account was invalidated, extinguished or the subject of a restraining order by a local, state or federal government agency or court;

**Menjivar Att. K**
**Page 19 of 28**

FTC-SLL-0004506

J.   The terms of the underlying loan for an Account has been modified since the date each Account was originated;

K.   Account was satisfied, settled, or released by any party other than Purchaser (the account was paid or otherwise released or settlement was received by Seller or any party);

L.   Balance does not reflect payments made in "good faith" by the debtor (with reasonable evidence that payments were made by a debtor for an Account originated by the same Lender)

All Accounts sold to Purchaser under this Agreement are sold and transferred without recourse as to their enforceability or collectability except as stated above.

2.   PURCHASE PRICE. Subject to the terms and conditions of this Agreement, and in reliance upon the representations, warranties and covenants of the Seller made herein, Purchaser shall pay and deliver to Seller the sums set forth in the Closing Statement for each tranche as detailed in Exhibit B, for the Accounts purchased under this Agreement. The parties agree that the

3.   PURCHASE OF UNQUALIFIED ACCOUNTS. In the event that Purchaser identifies and returns to Seller within eighteen months of each Closing Date an Account which was an Unqualified Account, Seller shall buy back the Account for the amount equal to 125% of what the Purchaser paid for such Account on a pro rata basis.

4.   INDEMNIFICATION BY PURCHASER. Purchaser agrees to indemnify and hold such Seller (including its officers, directors, employees, stockholders, and agents) harmless from and against any claims, actions, suits or other actual or threatened proceedings, and all losses, judgments, damages, expenses or other costs (including all fees and disbursements of counsel) incurred or suffered by Seller by reason of willful misconduct or violation of any applicable law, rule or regulation by Purchaser (or its employees, representatives, agents or successors) or any subsequent Purchaser in connection with the collection or enforcement of the Accounts. At its option, Seller shall have the right to require Purchaser to assume the defense of any claims, actions, suits or other actual or threatened proceedings and to directly pay for all losses, judgments, damages, expenses or other costs (including all fees and disbursements of counsel) which may be imposed.

5.   INDEMNIFICATION BY SELLER. Seller agrees to indemnify and hold such Purchaser (including its officers, directors, employees, stockholders, agents and successors) harmless from and against any claims, actions, suits or other actual or threatened proceedings, and all losses, judgments, damages, expenses or other costs (including all fees and disbursements of counsel) incurred or suffered by Purchaser by reason of any misconduct, negligence or violation of any applicable law, rule or regulation by Seller (or its employees, representatives, agents or successors) or any prior owner or servicer in connection with the Accounts. At its option, Purchaser shall have the right to require Seller to assume the defense of any claims, actions, suits or other actual or threatened proceedings and to directly pay for all losses, judgments, damages, expenses or other costs (including all fees and disbursements of counsel) which may be imposed. Seller agrees to extend any and all indemnifications it has received from Graywave Capital, LLC, as the prior seller, to Purchaser.

**Menjivar Att. K**
**Page 20 of 28**

FTC-SLL-0004507

6.  <u>REMITTANCE OF DIRECT PAYMENTS.</u> Seller shall remit to Purchaser all payments which are received by Seller or any prior owner after the Closing Date or received prior to the Closing Date but no reflected in the balance of each Account. Such remittances shall occur within seven days of receipt of payments by Seller. Seller agrees to use its best efforts to secure any payments from prior owners and remit these payments to Purchaser.

7.  <u>CONDITIONS OF SALE.</u>

    A.  The obligations of Purchaser to perform hereunder and purchase the Accounts on the Closing Date shall be subject to the satisfaction on or before the Closing Date of the following further conditions: (i) the representations and warranties contained in Paragraph 1 hereof shall to the best of Seller's knowledge and belief be true and correct in all respects on the Closing Date as if made on such date; and (ii) Seller shall have performed and observed all covenants, agreements and conditions hereof to be performed or observed by it on or before the Closing Date.

    B.  The obligations of Seller to perform hereunder and sell the Accounts at Closing shall be subject to the satisfaction, on or before the Closing Date, of the following further conditions: Purchaser shall have delivered to Seller the Purchase Price specified in Paragraph 2 hereof.

    C.  Purchaser agrees that any Accounts being purchased pursuant to this Agreement shall, if resold by Purchaser, continue to be subject to all terms and conditions set forth herein. Purchaser agrees that for any and all future Contract of Sale or other document evidencing a transfer of ownership that this Agreement shall be disclosed to such firm and that this Agreement, along with all of its terms and conditions, made a part of such Contract of Sale or other documents, except that no disclosure shall be required of sale price.

    D.  Seller agrees to time is of the essence and agrees that it will assist the Purchaser with any request for additional information or clarification of the electronic data file associated with the Debt Receivables. Seller will use its best efforts to resolve any question associated with the origination, servicing or documentation of the Accounts. Within five days of each Closing Date, Seller shall provide Purchaser with form copies of the standard loan documentation used by each Lender to originate the Debt Receivables.

8.  <u>CLOSING.</u> The closing of the sale and applicable purchase of the Accounts shall take place on the dates and at the location described in the Exhibit B hereto, or such other date and location as shall be mutually agreed upon by the parties hereto (the actual date of each Closing herein called the "Closing Date"). At or prior to each Closing Date, the following shall be done:

    A.  Purchaser shall pay the balance of Purchase Price as set forth on Paragraph 2 of this Agreement and in Exhibit B to seller's escrow account.

    B.  Seller shall deliver the final electronic sale file of Debt Receivables.

**Menjivar Att. K**
**Page 21 of 28**

FTC-SLL-0004508

9.  **REPRESENTATIONS AND WARRANTIES OF PURCHASER.** Purchaser covenants and agrees that in the collection of all Accounts listed in Exhibit A, Purchaser or its agents, employees, representatives or assignees shall comply with all applicable state and federal debt collection laws.

    Purchaser warrants and represents that it is a sophisticated informed investor, has knowledge and experience in financial and business matters that enables it to evaluate the merits and risks of the transaction contemplated by this Agreement. The Purchaser acknowledges that Seller does not represent, warrant or insure the accuracy or completeness of any information or its sources of information contained in the information provided or in any of the Account Files. The Purchaser agrees and represents that the Accounts and Account Files made available to it were an adequate and sufficient basis on which to determine whether and at what price to purchase the Accounts. The Purchaser has made such independent investigations as it deems to be warranted into the nature, validity, enforceability, collectability and value of the Accounts, and all other facts it deems material to its purchase and is entering into this transaction solely on the basis of that investigation and the Purchaser's own judgment, and is not acting in reliance on any representatives or independent contractors (other than the representations and warranties of the Seller contained herein).

    Purchaser is in full compliance with its obligations under the terms of any Confidentiality Agreement executed by the Purchaser to review the information made available by Seller or its agents, and the terms thereof are hereby incorporated herein subject to Purchaser's ownership rights and interests acquired by Purchaser hereunder.

10. **NOTICES.** Any notice or other communication provided for herein or given hereunder to a party hereto shall be in writing and shall be delivered in person to such party or mailed by first class registered or certified mail, postage prepaid, addressed as follows:

    If to Purchaser:        Ashton Asset Management, Inc.
                            500 Quail Ridge Drive
                            Westmont, IL 60559
                            Attention: Hirsh Mohindra
                            hirsh@ashtonasset.com

    If to Seller:           Graywave Capital, LLC
                            1809 Canyon
                            Bolder, CO 80303
                            Attention: Joel Tucker
                            joelt@graywavecap.com

**Menjivar Att. K
Page 22 of 28**

FTC-SLL-0004509

11. <u>SEVERABILITY.</u> If any provision, or application thereof, of this Agreement is held unlawful or unenforceable in any respect, the parties hereto agree that such illegality or unenforceability shall not affect other provisions or allocations that can be given effect, and this Agreement shall be construed as if the unlawful or unenforceable provisions are amended so as to make it valid, reasonable and enforceable and agree to be bound by the terms of such provision, as modified by the court.

12. <u>AMENDMENTS.</u> This Agreement may be amended or modified only by a written instrument executed by all the parties hereto.

13. <u>COUNTERPARTS.</u> This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute but one instrument.

14. <u>HEADINGS.</u> The headings contained in this Agreement and in the Exhibits appended hereto are for convenience only and shall not be deemed to affect the interpretation of the provisions of this Agreement.

15. <u>SURVIVAL OF REPRESENTATIONS AND WARRANTIES.</u> The representations, warranties, covenants and agreements of the parties set forth herein shall survive in perpetuity.

16. <u>ROLE OF BROKER.</u> N/A

17. <u>GOVERNING LAW.</u> This Agreement is made pursuant to, and shall be construed under the laws of the State of New York.

18. <u>ENTIRE AGREEMENT.</u> This Agreement is intended to define the full extent of the legally enforceable undertakings of the parties hereto, and no related promise or representation, written or oral, which is not set forth explicitly in this Agreement is intended by either party to be legally binding. Both parties acknowledge that in deciding to enter into this transaction they have relied on no representations, written or oral, other than those explicitly set forth in this Agreement.

19. <u>CONFIDENTIALITY.</u> The parties understand and agree that the terms of this Agreement are confidential and they will not be disclosed to anyone outside of their respective organizations.

20. <u>PURCHASER'S RIGHT OF RESALE.</u> There is no restriction on the resale of any Accounts.

**Menjivar Att. K**
**Page 23 of 28**

FTC-SLL-0004510

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement on the date first above written.

PURCHASER: **ASHTON ASSET MANAGEMENT, INC.**

By:_____
            Hirsh Mohindra, Authorized Signatory

SELLER: **GRAYWAVE CAPITAL, LLC**

By:_____
            Joel Tucker, President

**Menjivar Att. K
Page 24 of 28**

FTC-SLL-0004511

EXHIBIT A

Sale from Graywave Capital, LLC to Ashton Asset Management, Inc.

Originator:            Mixed Lender via Graywave Capital, LLC (Joel Tucker)

Number of Accounts:    879,372

Face Value:            $400,000,000.00

FTC-SLL-0004512

EXHIBIT B

CLOSING STATEMENT

Sale from Graywave Capital, LLC to Ashton Asset Management, Inc.

The Purchaser and Seller agree to close on the Debt Receivables as described below:

| | |
|---|---|
| Receivable Amount | $400,000,000.00 |
| Number of Accounts: | 879,372 |
| Purchase Rate | 0.0025 |
| Base Purchase Price | $1,000,000.00 |
| Expense Reimbursement | $ |
| Total Purchase Price | $1,000,000.00 |
| Closing Date | no later than 4/15/2015 |

**General Terms for Closing:**

A. On or before the Closing Date, Purchaser shall pay to Seller, by Wire, an amount equal to 100% of the Purchase Price (see above). Wire Instructions to be provided by Seller at least 48 hours prior to each Closing Date.

B. Seller agrees to transfer the Accounts, as well as the results from scrubbing, as mutually agreed, to Purchaser within 24 hours of funding the first 50% of the Base Purchase Price.

C. Seller agrees to place the Accounts, as well as the results from scrubbing, on one or electronic computer readable files. Seller will store said computer readable files on a removable USB memory storage drive. Seller will deliver said removable USB memory storage drive to Purchaser, at 500 Quail Ridge Drive, Westmont IL. 60559, within 24 hours of Purchaser wiring the first 50% of the Base Purchase Price. Seller may deliver the USB memory storage drive via Fed Ex or the United State Postal Service.

**Menjivar Att. K**
**Page 26 of 28**

FTC-SLL-0004513

EXHIBIT C

FORM OF

ASSIGNMENT AND BILL OF SALE

Sale from Graywave Capital, LLC to Ashton Asset Management, Inc.


Originator:                          Mixed lenders via JR Holdings, LLC
                                     (Joel Tucker)

Receivable Amount                    $400,000,000.00

Accounts                             879,372

   Graywave Capital, LLC (hereinafter called "Seller") has entered into a Receivable Purchase Agreement dated April 15, 2015 ("Agreement") for the sale of Accounts on Exhibit "A", hereof to Ashton Asset Management, Inc. (hereinafter called "Purchaser"), upon the terms and conditions set forth in that Agreement.

   THEREFORE, effective April 15, 2015 for good and valuable consideration, Seller hereby sells, assigns, and transfers to Purchaser, its successors and assigns, all of Seller's rights, title, and interest in each and every one of the Accounts described in the Agreement.


                                     **GRAYWAVE CAPITAL, LLC**


                                     By:_____
                                     Joel Tucker, President

FTC-SLL-0004514

EXHIBIT D

RECEIVABLES PURCHASE AGREEMENT

BY AND BETWEEN

GRAYWAVE CAPITAL, LLC

AND

ASHTON ASSET MANAGEMENT, INC.

Sale from Graywave Capital, LLC to Ashton Asset Management, Inc.

*[Copy of Agreement to be attached]*

**Menjivar Att. K**
**Page 28 of 28**

FTC-SLL-0004515

# Menjivar Attachment L

## Schedule "A"

### Addendum 02.23.2016

### Acknowledgement and Receipt Form

**Placement Details**

| | |
|---|---|
| **Placement Date:** | 2/23/2016 |
| **Recall Date:** | 03/09/2016 |
| **File Name:** | Coastal Placement 02-23-16 clean.xlsx |
| **Number of Accounts:** | 7,500.00 |
| **Face Value:** | $ 3,935,870.00 |

### COMMISSION FEE ARRANGEMENT:

- Sands Recovery Group is entitled to a Ten percent (10%) management fee. The management fee is payable from the first gross proceeds received. Thereafter, Agency is entitled to Sixty (60%) percent of all gross fees collected from the Accounts after the management fee is debited; and AAM is entitled to Forty percent (40%) of all gross fees collected from the Portfolios and Accounts after the management fee is debited.
- Agency **must** return the Accounts to AAM on or before twelve (12) days pursuant to this Agreement.
- **Agency may not add any fees or add to the balance to any Accounts or Portfolios.**

Upon importing the Accounts, Agency agrees to send to AAM an Export File, including all Accounts information imported into Agency and Agency assigned account numbers. The purpose of the export is to provide Ashton Asset Management with Agency internal reference identification for each Account so that all future reports can be mapped in our systems.

Pursuant to said Agreement and Schedule, Agency must remit commissions to AAM as follows:

- On the 5th and 20th day of each month.
- In the event of remit payment date falls on a weekend and/or bank holiday, the commission is due on the following business day.

**Menjivar Att. L**
**Page 1 of 6**

FTC-SLL-0001629

<u>Bank Information:</u>

Account Name     Ashton Asset Management, Inc.
500 Quail Ridge
Westmont, IL 60559

Bank     Bank of America
ABA Routing     026009593
Account Number     ▆▆▆▆6657

**REMIT INFORMATION: Please send all remit and file activity to** <u>preetesh@astonasset.com</u> **and** <u>kamran@ashtonasset.com</u>

<u>**Agreed and Acknowledged:**</u>

_____
Name

2-23-16
Date

## Schedule "A"

### Addendum 03.01.2016

#### Acknowledgement and Receipt Form

**Placement Details**

| | |
|---|---|
| **Placement Date:** | 03/01/2016 |
| **Recall Date:** | 03/16/2016 |
| **File Name:** | Coastal HDF4 Placement 03-01-16 Clean.xlsx |
| **Number of Accounts:** | 7,500.00 |
| **Face Value:** | $ 3,710,506.00 |

## COMMISSION FEE ARRANGEMENT:

- Sands Recovery Group is entitled to a Ten percent (10%) management fee. The management fee is payable from the first gross proceeds received. Thereafter, Agency is entitled to Sixty (60%) percent of all <u>gross</u> fees collected from the Accounts after the management fee is debited; and AAM is entitled to Forty percent (40%) of all <u>gross</u> fees collected from the Portfolios and Accounts after the management fee is debited.
- Agency **must** return the Accounts to AAM on or before twelve (12) days pursuant to this Agreement.
- <u>**Agency may not add any fees or add to the balance to any Accounts or Portfolios**</u>.

Upon importing the Accounts, Agency agrees to send to AAM an Export File, including all Accounts information imported into Agency and Agency assigned account numbers. The purpose of the export is to provide Ashton Asset Management with Agency internal reference identification for each Account so that all future reports can be mapped in our systems.

Pursuant to said Agreement and Schedule, Agency must remit commissions to AAM as follows:

- On the 5th and 20th day of each month.
- In the event of remit payment date falls on a weekend and/or bank holiday, the commission is due on the following business day.

Bank Information:

Account Name    Ashton Asset Management, Inc.
                500 Quail Ridge
                Westmont, IL 60559

Bank            Bank of America
ABA Routing     026009593
Account Number  ████████6657

**REMIT INFORMATION: Please send all remit and file activity to** preetesh@ashtonasset.com **and** kamran@ashtonasset.com

**Agreed and Acknowledged:**

Name

Date

# Schedule "A"

### Addendum 03.08.2016

#### Acknowledgement and Receipt Form

**Placement Details**

| | |
|---|---|
| **Placement Date:** | 3/8/2016 |
| **Recall Date:** | 3/23/2016 |
| **File Name:** | Coastal Placement 3-8-2016.xlsx |
| **Number of Accounts:** | 7,500.00 |
| **Face Value:** | $ 3,939,125.00 |

## COMMISSION FEE ARRANGEMENT:

- Sands Recovery Group is entitled to a Ten percent (10%) management fee. The management fee is payable from the first gross proceeds received. Thereafter, Agency is entitled to Sixty (60%) percent of all gross fees collected from the Accounts after the management fee is debited; and AAM is entitled to Forty percent (40%) of all gross fees collected from the Portfolios and Accounts after the management fee is debited.
- Agency **must** return the Accounts to AAM on or before twelve (12) days pursuant to this Agreement.
- **Agency may not add any fees or add to the balance to any Accounts or Portfolios.**

Upon importing the Accounts, Agency agrees to send to AAM an Export File, including all Accounts information imported into Agency and Agency assigned account numbers. The purpose of the export is to provide Ashton Asset Management with Agency internal reference identification for each Account so that all future reports can be mapped in our systems.

Pursuant to said Agreement and Schedule, Agency must remit commissions to AAM as follows:

- On the 5th and 20th day of each month.
- In the event of remit payment date falls on a weekend and/or bank holiday, the commission is due on the following business day.

**Menjivar Att. L**
**Page 5 of 6**

FTC-SLL-0001633

Bank Information:

| | |
|---|---|
| Account Name | Ashton Asset Management, Inc. |
| | 500 Quail Ridge |
| | Westmont, IL 60559 |
| | |
| Bank | Bank of America |
| ABA Routing | 026009593 |
| Account Number | ████6657 |

**REMIT INFORMATION:** Please send all remit and file activity to preeteyh@ashtonasset.com and kamran@ashtonasset.com

**Agreed and Acknowledged:**

Name

3-8-16

Date