# Menjivar Attachment R

ORIGINAL

# OFFICIAL TRANSCRIPT PROCEEDING

## FEDERAL TRADE COMMISSION

MATTER NO.  X160030

TITLE   STARK LAW, LLC

DATE   RECORDED: AUGUST 9, 2015
     TRANSCRIBED: APRIL 12, 2016

PAGES   1 THROUGH 15

TELEPHONE CONVERSATION BETWEEN MALE REPRESENTATIVE AND
GREGORIO ▮▮▮
2015_08_09_04_23PM_1808▮▮▮▮▮

2

```
 1                    FEDERAL TRADE COMMISSION

 2                          I N D E X

 3

 4     RECORDING:                                    PAGE:

 5     Telephone conversation between Male Representative

 6     and Gregorio ████                                4

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**Menjivar Att. R**
**Page 2 of 15**

3

```
 1                    FEDERAL TRADE COMMISSION

 2

 3       In the Matter of:              )

 4       Stark Law, LLC                 )   Matter No. X160030

 5                                      )

 6       ------------------------------)

 7                                      August 9, 2015

 8

 9

10

11            The following transcript was produced from a

12       digital recording provided to For The Record, Inc. on

13       April 11, 2016.

14

15

16

17

18

19

20

21

22

23

24

25
```

**Menjivar Att. R
Page 3 of 15**

4

1                    P R O C E E D I N G S

2                    -    -    -    -    -

3      TELEPHONE CONVERSATION BETWEEN MALE REPRESENTATIVE AND

4                         GREGORIO ███

5          GREGORIO ███:  Hello.

6          MALE REPRESENTATIVE:  Hi, is this Gregorio

7      ███?

8          GREGORIO ███    Hello.

9          MALE REPRESENTATIVE:  Hi, yes, is this Gregorio

10     ███?

11         GREGORIO ███:  Yeah, this is him.

12         MALE REPRESENTATIVE:  Hi, sir, I believe a rep

13     spoke with you regarding this pending matter against you,

14     sir.  But to ensure I am speaking with the right party, I

15     do have to confirm your Social, sir.  Is your Social

16     XXX-XX-XXXX?  Is this correct?

17         GREGORIO ███:  Yes, it's correct.

18         MALE REPRESENTATIVE:  Okay, yes.  And I see

19     here in my notes that, you know, a previous rep spoke to

20     you regarding this case against you, sir, and I was

21     wondering how would you like to proceed at this time.

22     Would you like to be set up on some type of payment

23     arrangement or would you like to just go with option one?

24         GREGORIO ███:  Yes, I would like to do that,

25     but I need to see some proof of verification of what I'm

5

```
 1    paying.  So, I -- like I said, if you guys send me a
 2    letter with some verification of who you guys are and
 3    what you guys claim, then I'll take a look at it.  But
 4    until then, you guys can go ahead and threaten me all you
 5    guys want with (inaudible) legal or whatever.  I don't
 6    want to hear it.  I didn't do nothing wrong; I never did.
 7              MALE REPRESENTATIVE:  Okay.
 8              GREGORIO ▮▮▮▮:  So --
 9              MALE REPRESENTATIVE:  Okay.
10              GREGORIO ▮▮▮▮:  -- you guys can take care of
11    it how you guys want to, but I'm not paying nothing over
12    the phone.  You are not getting my number until you guys
13    can show me what it is I did, what money I borrowed from
14    who and show me some proof or show me a collection
15    agency, not just calling me up asking for my credit card
16    numbers and all that.  That's not how it works.
17              MALE REPRESENTATIVE:  Okay, all right, not a
18    problem.  I just wanted to follow up with you, sir.  All
19    right, thank you for your time.
20              GREGORIO ▮▮▮▮:  Okay.  But by the way, what
21    company is this?  What do you guys work for?  Who do you
22    guys work for?
23              MALE REPRESENTATIVE:  We're Stark Recovery,
24    sir, and we're a legal department.
25              GREGORIO ▮▮▮▮:  Okay.  And you guys do what?
```

6

1    Because when I Google you guys, there's nothing -- I

2    don't see -- you guys don't pop up.

3         MALE REPRESENTATIVE:  Well, we should, sir.

4    We're located in Bakersfield, California.  And I'm a

5    litigation specialist and I help an attorney prepare

6    cases, sir.  So, again, this is not, you know, no fraud

7    or scam or anything like that.  This is legit.

8         GREGORIO ███:  Okay.  That's why I -- I'm

9    just wondering when I ask for a note or -- because

10   usually they -- I've been around -- I've been around

11   them.  I've had collections before.  They were able to

12   send me a letter of a total amount I owe, how much I --

13   how much they want --

14        MALE REPRESENTATIVE:  Yes, sir, we -- we're

15   able to, you know -- you know, work with you on that --

16   you know, that note.  We can send out an authorization

17   form to you, which lists all your payments that you have

18   authorized us to process.  In this authorization letter,

19   you know, it will have all of our contact information as

20   far as, you know, Stark Recovery and things like that.

21        But we're not just able to, you know, just send

22   out, you know, something in regards -- mailing something

23   to you in regards to this defaulted loan, because the

24   original creditor -- and as I can see Kingston Marketing,

25   they would have sent you something, you know, to your

7

1    address or your email that we have here on file to you

2    in regards to the defaulted loan.  All I have -- all I

3    have --

4             GREGORIO ▇▇▇▇:  Yeah, but, see, the thing is I

5    don't even --

6             MALE REPRESENTATIVE:  -- to do is -- I'm sorry?

7    Well --

8             GREGORIO ▇▇▇▇:  (Inaudible) because I'm --

9    what I'm trying to figure out is I didn't even borrow

10   that money or I don't -- yeah, it's like, I don't know

11   what happened there, first of all.  It seems like

12   somebody's trying to ask me to pay for something I didn't

13   borrow.

14             So, I'm trying to figure out what you guys are

15   about or where you guys are from so I can go about and

16   figure out how did I get -- my name get charged for this

17   money that I did not borrow from no Kingston -- I don't

18   even know what -- I've never even heard of that company.

19   I didn't even know what -- and I looked it up and it's

20   like a housing marketing, like 2011.  I didn't even -- I

21   wasn't even in this area.  I don't know how money --

22             MALE REPRESENTATIVE:  Okay.

23             GREGORIO ▇▇▇▇:  -- was borrowed under my name.

24   I'm trying to figure that out, first of all.

25             MALE REPRESENTATIVE:  Okay, sir.  Well, again,

Menjivar Att. R
Page 7 of 15

8

1    sir, I'm just a litigation specialist.  I mean, I'm not a
2    judge to sit here and say you did or you didn't.  All I'm
3    here to do is try to help you resolve this -- you know,
4    this situation, which you're stating that you didn't do
5    this.  So, that -- the only option that we are left to go
6    with is option one, sir, you know.
7              GREGORIO ████: Well, okay, and what I'm
8    trying to say is -- okay, what is option one?
9              MALE REPRESENTATIVE:  I'm sorry, sir?
10             GREGORIO ████: I said, what is option one
11   because --
12             MALE REPRESENTATIVE:  Option one, sir --
13             GREGORIO ████:  -- earlier --
14             MALE REPRESENTATIVE:  Yes, your first option,
15   sir, will escalate legal action and seek judgment for
16   $2,860.  Now, that balance includes attorney fees and
17   court costs.  That's option one.
18             GREGORIO ████: Okay.  Well, I was going to
19   say why would it -- why would it cost all that to do --
20             MALE REPRESENTATIVE:  Because that's attorney
21   fees and court costs.  The original balance -- it appears
22   that this loan was taken out for the original balance of
23   $350.  Now, since this is still severely delinquent, the
24   current balance is now sitting on $860.  Now, those are
25   interest fees that are involved with that because this --

**Menjivar Att. R
Page 8 of 15**

9

1    this loan is, you know, very delinquent.  It's all the

2    way from 2011 and it's now 2015.  So, that's why that

3    balance has increased.

4          Now, if we're going with option one, we would

5    seek that judgment for $2,860, and that includes attorney

6    fees and court costs.  That's why that balance would be

7    so -- you know, severely high.

8          GREGORIO ██████:  Okay, I understand that part,

9    okay.  So, obviously, I want to do option two.  But what

10    I'm trying to say is why -- you keep saying that you're

11    not able to give me something as proof --

12          MALE REPRESENTATIVE:  Again, sir, no, I can't.

13    All I did was -- all I'm able to do is tell you

14    everything that I have previously told you or the

15    previous rep has told you.  And these are things that

16    have come up in our discovery process.  We don't have

17    anything in a hard copy or anything like that.

18          The only paperwork you would be able to get

19    from us as notification is the authorization form that we

20    will be able to send out after we have processed some

21    type of payment arrangement or set up some type of

22    payment arrangement to you and we can email that to your

23    email address.  And with that -- that will be sent, that

24    will list all your payments that you have authorized to

25    us and it will let you know your current balance and

10

1     where you're standing at and it will have all of our

2     information as far as, you know, Stark Recovery goes.

3              GREGORIO ████: Okay. Well, I'm just

4     wondering how come you guys aren't able to just give me

5     something. But, seriously, I'm going to be paying --

6     what if I'm -- what if you are lying to me? That's what

7     I'm trying to say.

8              MALE REPRESENTATIVE: Okay. Well --

9              GREGORIO ████: How do I know I'm not just

10    going to be paying somebody money?

11             MALE REPRESENTATIVE: -- sir, I can assure you

12    -- well, I can assure you, sir, this is not a scam. This

13    litigation process has already started on this case and,

14    again, your Social is XXX-XX-XXXX, which is linked to the

15    original loan documentation, sir. If we were a scam, I

16    would not have all of your information here on file in my

17    discovery process, sir.

18             GREGORIO ████: That's not true. Okay, well

19    -- okay, and if I do say -- I do option one, what do you

20    -- what does that mean? What are you going to do then?

21    You're going to send me a letter?

22             MALE REPRESENTATIVE: Well, after that, sir, if

23    we're going with option one, this case will leave my

24    hands and, after that, I won't be able to, you know, be

25    in control of anything, sir. So, as I stated before, the

11

1    first option, if we're not able to meet any -- you know,

2    come to any type of resolution, sir, the first option is

3    for us to escalate that legal action, and then from there

4    they will seek judgment for $2,860.  How would you like

5    to proceed (inaudible)?

6         GREGORIO ███████:  Okay.  Well, I don't know if

7    you got to do what.  I'm not paying -- I'm not paying

8    anything until I can find out if this is legit.

9         MALE REPRESENTATIVE:  Okay.

10         GREGORIO ██████:  Because if you are a part of

11    this whatever thing you said, I'm pretty sure you could

12    send me a little letter of saying how much I owe and a

13    payment plan to work by.  I don't get --

14         MALE REPRESENTATIVE:  Sir, I'm trying to set a

15    payment plan up with you, sir.

16         GREGORIO ██████:  I know, but -- I understand

17    that, but I'm not able to pay you guys nothing.  So,

18    you're -- what I got from the first representative and

19    what I'm getting from you is that I need to pay something

20    before you can send me something.

21         MALE REPRESENTATIVE:  Exactly.

22         GREGORIO ██████:  That's what I'm not getting.

23         MALE REPRESENTATIVE:  You have to put down some

24    type of payment --

25         GREGORIO ██████:  Well, yeah, but --

For The Record, Inc.
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

12

1              MALE REPRESENTATIVE:  -- in order for us to be

2     able to send you any -- anything.  And the reason being

3     is because --

4              GREGORIO ███████:  Yeah, but I want --

5              MALE REPRESENTATIVE:  -- (inaudible) account is

6     very delinquent at this time.  Now, again, you're stating

7     that you say you didn't do this, but your Social is

8     linked to this loan documentation, sir.

9              GREGORIO ███████:  Okay.  What I'm saying, why is

10    it so hard to send me something?  Why can't you tell your

11    boss -- okay, I understand you can't send me something.

12    Why can't you tell your boss to send me something

13    providing that you guys are legit and you guys are with

14    the agency you're explaining because what if I just pay

15    you and you -- then you have all my information --

16            MALE REPRESENTATIVE:  Well, sir --

17            GREGORIO ███████:  -- and you're going to get my

18    information and you're going to probably scam me some

19    other way.

20            MALE REPRESENTATIVE:  No, sir, we would

21    absolutely, 100 percent send you something to your email

22    stating all the information, all the payment arrangements

23    that you have allowed us to process, sir.  And we would

24    have you to e-sign that and send that back to us so we

25    can have that for our records as well, just for our

13

```
 1    safety and to know that we did, you know, email you
 2    something stating --
 3              GREGORIO ▮▮▮▮:  I understand what you're
 4    trying to say, but you got to understand where I'm coming
 5    from.  You're asking me --
 6              MALE REPRESENTATIVE:  I do, sir.  You're
 7    basically saying you need something --
 8              GREGORIO ▮▮▮▮:  A stranger is calling me -- a
 9    stranger -- a stranger that has nothing to do with my
10    life is calling me right now asking me to start paying
11    them $800 worth of money that I have nothing to do with.
12              MALE REPRESENTATIVE:  Okay, sir (inaudible).
13              GREGORIO ▮▮▮▮:  You tell me how that
14    (inaudible) if a stranger called you.
15              MALE REPRESENTATIVE:  I understand, sir, what
16    you're saying, so we'll just have to go with option one,
17    sir.
18              GREGORIO ▮▮▮▮:  Okay.  Well, you guys do what
19    you guys got to do because I'm not paying you guys until
20    you guys can figure out how to justify (inaudible).
21    Because, right now, you -- like you're expecting me to
22    write a blank check.  You're expecting me to write a
23    check to somebody I don't even know.  I don't even know
24    where this money is going and you want me to write this
25    check.  That's what it seems like.
```

14

1          MALE REPRESENTATIVE:  Okay, sir, I'm going to

2    have to --

3          GREGORIO ████:  And it's -- it's crazy.

4          MALE REPRESENTATIVE:  -- go back to work here,

5    sir.  We can just go with option one.

6          GREGORIO ████:  Okay, that's what I told the

7    first representative.  Do what you got to do.  I don't

8    know why you have to keep calling me back.

9          MALE REPRESENTATIVE:  Okay, I -- and I was just

10   calling just to confirm it because it was in my

11   (inaudible) log, sir.  So, now that I did confirm that,

12   that this would be the route that you are willing to take

13   sir, thank you.

14         GREGORIO ████:  All right.  (Inaudible).

15         MALE REPRESENTATIVE:  All right.

16         **(The call was concluded.)**

17         **(The recording was concluded.)**

18

19

20

21

22

23

24

25

15

1          C E R T I F I C A T I O N    O F    T Y P I S T

2

3      MATTER NUMBER: <u>X160030</u>

4      CASE TITLE: <u>STARK LAW, LLC</u>

5      TAPING DATE: <u>AUGUST 9, 2015</u>

6      TRANSCRIPTION DATE: <u>APRIL 12, 2016</u>

7

8        I HEREBY CERTIFY that the transcript contained

9      herein is a full and accurate transcript of the tapes

10      transcribed by me on the above cause before the FEDERAL

11      TRADE COMMISSION to the best of my knowledge and belief.

12

13               DATED: APRIL 12, 2016

14

15

16            ELIZABETH M. FARRELL

17

18     C E R T I F I C A T I O N   O F   P R O O F R E A D E R

19

20        I HEREBY CERTIFY that I proofread the transcript for

21      accuracy in spelling, hyphenation, punctuation and

22      format.

23

24

25             SARA J. VANCE

# Menjivar Attachment S

ORIGINAL

# OFFICIAL TRANSCRIPT PROCEEDING

## FEDERAL TRADE COMMISSION

MATTER NO.     X160030

TITLE         STARK LAW, LLC

DATE         RECORDED:  APRIL 17, 2015
                  TRANSCRIBED:  APRIL 12, 2016

PAGES      1 THROUGH 15

TELEPHONE CONVERSATION BETWEEN CAMILLE SINGLETON AND
JOY ▮▮▮▮
2015_17_04_10_26AM_436_417

For The Record, Inc.
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

Menjivar Att. S
Page 1 of 15

2

```
 1                    FEDERAL TRADE COMMISSION

 2                         I N D E X

 3

 4    RECORDING:                                        PAGE:

 5    Telephone conversation between Camille Singleton

 6    and Joy ████                                         4

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

1                    FEDERAL TRADE COMMISSION

2

3      In the Matter of:            )

4      Stark Law, LLC               )   Matter No. X160030

5                                   )

6      ------------------------------)

7                                    April 17, 2015

8

9

10

11            The following transcript was produced from a

12      digital recording provided to For The Record, Inc. on

13      April 11, 2016.

14

15

16

17

18

19

20

21

22

23

24

25

Menjivar Att. S
Page 3 of 15

4

1                          P R O C E E D I N G S

2                    -     -     -     -     -

3          TELEPHONE CONVERSATION BETWEEN CAMILLE SINGLETON

4                          AND JOY ██████

5              UNIDENTIFIED FEMALE:   Hold on, Jocelyn.

6              CAMILLE SINGLETON:  Mm-hmm.

7              Sons of bitches, they ate my two granolas.

8              (On hold)

9              CAMILLE SINGLETON:  Yes, ma'am?

10             UNIDENTIFIED FEMALE:  I have a debtor on the

11    phone, Joy ██████.

12             CAMILLE SINGLETON:  Joy ██████?

13             UNIDENTIFIED FEMALE:  Yep, your debtor.

14             CAMILLE SINGLETON:  Ooh, new deal because she

15    don't have any payments on file, right?

16             UNIDENTIFIED FEMALE:  No, it's a new debtor,

17    there's no deal.

18             CAMILLE SINGLETON:  Okay, hold on, hold on.

19    Third-party called in, transferred 2438.  Yes, that's her

20    -- that's her son.  Yeah, what's the file number?  402?

21             UNIDENTIFIED FEMALE:  0913.

22             CAMILLE SINGLETON:  Is she black or white?

23             UNIDENTIFIED FEMALE:  I think she's maybe

24    black.

25             CAMILLE SINGLETON:  Ewww, I don't like black

5

1  people.

2           UNIDENTIFIED FEMALE:  But she sounded nice.

3  She sounds like she's nice.  She was like, my mom called

4  me and told me about a lawsuit.  I was like, yeah, let me

5  transfer you.

6           CAMILLE SINGLETON:  Okay (inaudible).  Keep

7  your fingers crossed for me, babe.

8           UNIDENTIFIED FEMALE:  I know.  I'm hoping she

9  closes.

10          CAMILLE SINGLETON:  Okay, thank you.

11          UNIDENTIFIED FEMALE:  All right.  Three, two --

12          CAMILLE SINGLETON:  This is Camille Singleton.

13  How can I help you?

14          JOY ▉▉▉:  Yes, ma'am, my name is Joy ▉▉▉

15  I was given your number by my mother about a lawsuit or

16  something.

17          CAMILLE SINGLETON:  Okay.  So, Ms. ▉▉▉,

18  you're contacting Pacific.  This is a litigation office.

19  My name is Camille Singleton.  We've been urgently trying

20  to reach you.  Is your Social Security number

21  XXX-XX-XXXX?

22          JOY ▉▉▉:  Yes, ma'am.

23          CAMILLE SINGLETON:  Okay.  So, there is a case

24  pending against you in our office.  Allow me to explain

25  the details.  Please hold your questions until the end.

6

```
1              Ma'am, I show two complaints in your case.  The
2       first is for an issuance of a bad check and the second is
3       for an attempted defrauding of a financial institution.
4       Both complaints stem from a loan taken out with OPD
5       Solutions, LLC.  You authorized a draft from your
6       checking account. That draft had insufficient funds.
7       Now, was it your intent to breach your contract with OPD
8       Solutions?
9                    JOY        :  No.
10                   CAMILLE SINGLETON:  Okay.  Let me explain your
11      options at this time.  The first option is for me to
12      forward your file over to one of our lead attorneys, have
13      them to file a lawsuit against you, seek judgment on
14      prior charges and look to obtain a judgment for $2,570,
15      which would include attorney fees and court costs.  Do
16      you understand option number one?
17                   JOY        :  Yes.
18                   CAMILLE SINGLETON:  Okay.  Your second option
19      allows you to make a reduced one-time settlement payment
20      of $570.  This would avoid me from continuing with the
21      lawsuit and we would not pursue the fraud charges that
22      are against you.  If you accept option number two, $570
23      is due today.  How would you like to proceed?
24                   JOY        :  It's due today?
25                   CAMILLE SINGLETON:  Yes.  Well, that's what my
```

**Menjivar Att. S
Page 6 of 15**

7

1     client is looking to go here and resolve this to try to

2     get the balance in full.

3              JOY ███: I don't want either one because I

4     can't -- oh, Lord, Christ.

5              CAMILLE SINGLETON: Well, is this something

6     that you --

7              JOY ███: I can't do --

8              CAMILLE SINGLETON: Is this something that you

9     want to go ahead and resolve with us before the $2,000

10    attorney fee and court costs is assessed to the balance

11    and the lawsuit is filed?

12            JOY ███: And what is that?

13            CAMILLE SINGLETON: Well, what I can do, I can

14    speak to my client to see if they're willing to go ahead

15    and break that $500 -- $570 balance into a few payment

16    options.

17            JOY ███: Okay.

18            CAMILLE SINGLETON: Okay. But before I can go

19    to them and ask for an extension on your arrangement, I

20    do need a bit of information from you. Ma'am, are you

21    currently employed?

22            JOY ███: As a sub.

23            CAMILLE SINGLETON: Okay. And how often are

24    you paid? Are you paid weekly or biweekly?

25            JOY ███: Once a month.

8

1                  CAMILLE SINGLETON:  Once a month.  Okay.  And

2     if we come to a feasible agreement, do you have a valid

3     method of payment, such as an American Express, Visa,

4     Discover or Mastercard?

5                  JOY ██████:  Yes, ma'am, I do.

6                  CAMILLE SINGLETON:  Okay.  Give me one moment.

7     Let me speak to my client.  Let me see what type of

8     options that they're willing to offer you at this time.

9     I'm going to place you on a brief hold.  If they are

10    willing to go ahead and split this balance of $570 into a

11    few different payment options for you, is there -- do you

12    have a deposit to place towards your balance today?

13               JOY ██████:  Yeah, but I'm actually at work and

14    I don't have my card with me.

15              CAMILLE SINGLETON:  Okay.  How much are you

16    able to -- how much of your funds are you able to --

17              JOY ██████  Maybe -- maybe -- I have in my

18    account now 50.

19              CAMILLE SINGLETON:  Okay.  Let me see what they

20    say.  Give me one moment.  I'm going to place you on a

21    brief hold.  Hold on, okay?

22              JOY ██████:  Okay.

23              CAMILLE SINGLETON:  Wait, you said that you get

24    paid monthly.  On which day of the month do you get paid?

25              JOY ██████:  The 15th.

**Menjivar Att. S
Page 8 of 15**

9

1      CAMILLE SINGLETON:  Okay, hold on, ma'am.

2      JOY ███: Okay.

3      (On hold)

4      CAMILLE SINGLETON:  Ms. ████

5      JOY ███: Yes, ma'am.  Yes, ma'am, I'm sorry.

6      CAMILLE SINGLETON:  Okay.  So, I did speak to

7      the client and what they have advised me to offer you --

8      what we can do for you is break that balance of $570 into

9      two payments of $280.  You must pay the first half today

10     and then we'll go ahead and put -- process the second

11     half on your next payday, which is the 15th of next

12     month?

13     JOY ███: I'm trying to be calm, but I cannot

14     do that.  I'm a sub.  I don't even get paid that much,

15     and I'm in school.  So, I don't have this.

16     CAMILLE SINGLETON:  Is there anyone that would

17     be willing to help you out with this before it does reach

18     the court --

19     JOY ███: No.

20     CAMILLE SINGLETON:  -- and before that $2,000

21     is assessed to the balance?

22     JOY ███: No.  I'm like by myself.

23     CAMILLE SINGLETON:  Okay.  Give me one moment.

24     Let me speak with them and see if we can offer you

25     something else.  Hold on, okay?

10

1      JOY ▮▮▮▮: Okay.

2      (On hold)

3      CAMILLE SINGLETON: Hello, ma'am?

4      JOY ▮▮▮▮: Yes, ma'am.

5      CAMILLE SINGLETON: Okay. So, I did speak with

6 the client again. I did explain your situation to them.

7 What they did was they gave me another payment option to

8 offer you. This option, your first payment will be $200

9 and they're willing to split the remaining balance into

10 two -- into two payments of $185.

11      JOY ▮▮▮▮: (Sighs).

12      CAMILLE SINGLETON: And that is the furthest my

13 client is willing to come down.

14      JOY ▮▮▮▮: Hmm. Ma'am, I don't know what to

15 tell you.

16      CAMILLE SINGLETON: Okay.

17      JOY ▮▮▮▮: (Inaudible).

18      CAMILLE SINGLETON: I just want to -- I'm

19 sorry?

20      JOY ▮▮▮▮: Nothing, I'm just still sick. I

21 don't know what to do. Oh.

22      CAMILLE SINGLETON: I mean, I'm here to assist

23 you --

24      JOY ▮▮▮▮: Yeah.

25      CAMILLE SINGLETON: -- as much as I can. I'm

11

1    just a litigation specialist that's here to try to help

2    before you do have to proceed to court on this matter.

3    You're a substitute teacher. I know that you don't want

4    to have to go to court because they are pursuing you on

5    fraud charges and I know being a substitute teacher that

6    that won't look good.

7                JOY ███: Well, I -- I don't know. I don't

8    know.

9                CAMILLE SINGLETON: I mean, how would you like

10   to proceed with this?

11               JOY ███: I have no other option.

12               CAMILLE SINGLETON: (Inaudible) trying to make

13   a determination on your case.

14               JOY ███: I don't -- I have no options, so I

15   don't know.

16               CAMILLE SINGLETON: Okay, ma'am, well, what are

17   you proposing?

18               JOY ███: I've already said I can pay the $50

19   a month. That's all I can do. There's nothing else I

20   can do.

21               CAMILLE SINGLETON: Your balance is $570.

22   They're not going to accept a payment of $50 a month.

23               JOY ███: And I understand that, but there's

24   nothing I can tell you. There's no other options that I

25   have. I don't know. When will they go to court with

1    this?

2             CAMILLE SINGLETON:  Well, I'm not sure, ma'am,

3    when your court -- when your court date will be

4    solidified.  I won't have that information.  Give me one

5    moment.  Let me go to them one more time, because, as I

6    stated, I am here to help you, so I'm going to try to get

7    you the best option that's available to you.  I do want

8    to try to exercise every option available so that you

9    don't have to feel like that you're just forced to go

10   with option number one.  So, let me see what they say,

11   ma'am.  Give me one moment.  Hold on, okay?

12             JOY ███    Okay.

13             (On hold)

14             CAMILLE SINGLETON:  Hello, ma'am.

15             JOY ███:  Mm-hmm.

16             CAMILLE SINGLETON:  Okay.  So, the last option

17   they did give me was to break that down, the $570 into

18   three payments of $190.

19             JOY ███:  (Sighs).

20             CAMILLE SINGLETON:  Is that a feasible

21   arrangement for you, ma'am?

22             JOY ███:  No.  I just -- I give up, I really

23   give up.  So, I don't...

24             CAMILLE SINGLETON:  You want to try to make

25   some phone calls to see if somebody would be willing to

13

1    help you out with this?

2              JOY ███: Ha, who am I going to call? No,

3    because I don't -- I don't have anyone to call. So, no.

4              CAMILLE SINGLETON: Okay. Well, then I'll be

5    forced to place your file back on the lead attorney's

6    desk. What's going to happen, they're going to go ahead

7    and follow through with the lawsuit. My client has

8    authorized us to pursue this to the furthest extent of

9    the law. Keep in mind they will be pursuing you on fraud

10   charges and also for the judgment of $2,570. If you are

11   -- if the judge does make you pay that up-front, you will

12   have to. If not, then they will go ahead and issue a

13   wage garnishment.

14             So, if your situation changes and you're able

15   to go ahead and meet one of those payment options, you

16   can go ahead and give me a call back. However, time is

17   of the essence. I'm not sure when your court date will

18   be solidified. If you call back and a court date has

19   been solidified, there is nothing that we'll be able to

20   do to assist you as far as payment options-wise. You

21   would have to wait until you go to court and see what the

22   judge say.

23             JOY ███: Mm-hmm.

24             CAMILLE SINGLETON: Okay, Ms. ███

25             JOY ███: All right.

14

1               CAMILLE SINGLETON:  Okay.  Well, time is of the

2     essence.  And as I said, if your situation changes, just

3     give me a call back.  My name is Camille Singleton.  I'm

4     at Extension 436.

5               **(The call was concluded.)**

6               **(The recording was concluded.)**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

For The Record, Inc.
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

**Menjivar Att. S**
**Page 14 of 15**

15

1    **C E R T I F I C A T I O N   O F   T Y P I S T**

2

3    MATTER NUMBER: <u>X160030</u>

4    CASE TITLE: <u>STARK LAW, LLC</u>

5    TAPING DATE: <u>APRIL 17, 2015</u>

6    TRANSCRIPTION DATE: <u>APRIL 12, 2016</u>

7

8        I HEREBY CERTIFY that the transcript contained

9    herein is a full and accurate transcript of the tapes

10   transcribed by me on the above cause before the FEDERAL

11   TRADE COMMISSION to the best of my knowledge and belief.

12

13              DATED:  APRIL 12, 2016

14

15              _____

16              ELIZABETH M. FARRELL

17

18   **C E R T I F I C A T I O N   O F   P R O O F R E A D E R**

19

20       I HEREBY CERTIFY that I proofread the transcript for

21   accuracy in spelling, hyphenation, punctuation and

22   format.

23

24              _____

25              SARA J. VANCE

# Menjivar Attachment T

ORIGINAL

# OFFICIAL TRANSCRIPT PROCEEDING

## FEDERAL TRADE COMMISSION

MATTER NO.        X160030

TITLE             STARK LAW, LLC

DATE              RECORDED:  DATE UNKNOWN
                  TRANSCRIBED:  APRIL 12, 2016

PAGES             1 THROUGH 9

TELEPHONE CONVERSATION BETWEEN AIESHA BELL AND LARRY WITH
MESSAGE LEFT FOR JULIETTA ███████
Moniquie Poe

For The Record, Inc.
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

2

```
 1                    FEDERAL TRADE COMMISSION

 2                          I N D E X

 3

 4    RECORDING:                                    PAGE:

 5    Telephone conversation between Aiesha Bell and Larry

 6    with message left for Julietta ███████            4

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

```
 1                    FEDERAL TRADE COMMISSION

 2

 3      In the Matter of:              )

 4      Stark Law, LLC                 )   Matter No. X160030

 5                                     )

 6      ------------------------------)

 7                                     Date Unknown

 8

 9

10

11           The following transcript was produced from a

12      digital recording provided to For The Record, Inc. on

13      April 11, 2016.

14

15

16

17

18

19

20

21

22

23

24

25
```

4

```
1                    P R O C E E D I N G S
2                    -    -    -    -    -
3    TELEPHONE CONVERSATION BETWEEN AIESHA BELL AND LARRY WITH
4                MESSAGE LEFT FOR JULIETTA ███████
5              RECEPTIONIST:  Good morning, American ████.
6    How can I help you?
7              AIESHA BELL:  Hi, ma'am.  May I speak to a
8    manager or a supervisor, please?
9              RECEPTIONIST:  In regards to?
10             AIESHA BELL:  I need to verify the company's
11   protocol for presenting a formal claim.
12             RECEPTIONIST:  Okay, just one moment.
13             (Pause - Phone ringing)
14             LARRY:  This is Larry.  Can I help you?
15             AIESHA BELL:  Hi, sir.  My name is Aiesha Bell
16   (phonetic).  I was calling to verify the company's
17   protocol for presenting a formal claim.  I have an order
18   to come there and provide a Julietta ██████ with
19   documents addressing some charges and a claim, and I was
20   just trying to verify who is responsible for assisting me
21   when I arrive.
22             LARRY:  Regarding what claim, ma'am?
23             AIESHA BELL:  I guess this is an order for Ms.
24   ██████.  I believe I'm pronouncing that right.
25             LARRY:  Yeah, I'm -- I'm trying to understand
```

5

1   who I can get you to to help you.  What -- a claim for a
2   policy or something or --
3              AIESHA BELL:  No, sir.  I believe -- let me see
4   here.  Her -- actually, I can't really tell you what it's
5   for because her documents are legally sealed.  I'm not
6   privileged to that information.  My job is just to get
7   them to her.
8              LARRY:  And what's the person's name?
9              AIESHA BELL:  Julietta, last name spelled ███
10  ███████.
11             LARRY:  Okay, let me find out.  Give me one
12  second, okay?
13             AIESHA BELL:  Okay.
14             LARRY:  I'll be right back with you.
15             (On hold)
16             LARRY:  Hello.
17             AIESHA BELL:  Yes, sir.
18             LARRY:  Are you going to -- needing to see
19  Julietta ████?  I mean, are you going to need to give
20  something to her?
21             AIESHA BELL:  Yes, sir.
22             LARRY:  Because if you do, we need to send that
23  to our HR department.
24             AIESHA BELL:  Okay, yeah, because she actually
25  has to sign for these documents.

6

1    LARRY:  Okay.  What time will you be arriving

2    and I can have our HR department meet you here on the

3    tenth floor?

4    AIESHA BELL:  Okay.  I was actually looking to

5    get there within the next 45 minutes to an hour.  If you

6    have some -- something available to write with, I can

7    leave some information for Julietta in case she would

8    like to get me a release order out.

9    LARRY:  A release order out?  Okay.

10   AIESHA BELL:  Yes, sir.  Because, at this time,

11   this is the only valid address that's listed for her.

12   LARRY:  Is this a personal matter or a business

13   matter?

14   AIESHA BELL:  I'm not sure, sir.  It looks as

15   if it's a legal matter.  Again, she has some charges and

16   a claim against her.

17   LARRY:  Okay.  So, you'll be here in the next

18   45 minutes to an hour to -- and you would like to speak

19   with her, but I'll have you hook up with our HR

20   department.

21   AIESHA BELL:  Actually, I don't -- I don't need

22   to speak to her.  I can leave a number and a claim number

23   for her if she would like to get me a release order.

24   That way, I won't have to come to the place of

25   employment.  I'll be happy to meet her somewhere else.

7

1       But if I don't receive a release order from coming there,

2       then I will have to come there.

3               LARRY:  Okay.  Oh, okay.  Hold on a moment, all

4       right?

5               AIESHA BELL:  Okay.

6               (On hold)

7               LARRY:  Okay.  I can transfer you to Julietta's

8       extension, ma'am.  I can't discuss with her or help you

9       with any issues like that or take any information from

10      you.  If this is a personal matter, she needs to handle

11      it.  If it's a business matter, then I would be the

12      person.  I'm the vice president and I would help you with

13      a business matter or get her involved if necessary.  But

14      I can't involve my company with her if this is a personal

15      matter.

16              AIESHA BELL:  Yeah.  Again, I'm not sure what

17      the matter is, I'm just a locator.

18              LARRY:  So, what is -- so, what is --

19              AIESHA BELL:  I can give the information, yeah,

20      to her and then she can do what she likes with it.

21              LARRY:  Sure.  Let me give you her extension

22      and then she should be there.  If not, she has voicemail.

23      All right?

24              AIESHA BELL:  Okay.

25              LARRY:  Hold on.

8

1       (On hold - Phone ringing)

2       RECORDING:  Sorry...

3       RECORDING:  Julietta ███████...

4       RECORDING:  Is not available.  Record your

5   message at the tone.  When you are finished, hang up or

6   press pound for more options.

7       (Tone)

8       AIESHA BELL:  The information is intended for

9   Julietta ███████, claim number 989226.  This is Aiesha

10  Bell contacting you regarding an order received in my

11  office.  I need to verify the address to present you with

12  your formal claim at your residence and your place of

13  employment.

14      Ms. ███████, you have charges and a claim

15  against you at this point.  You have one opportunity to

16  contact the firm handling your claim to discuss the

17  matter.  They can be reached at 866-863-2696.  Your claim

18  number on the order, 989226.

19      Julietta ███████, you have officially been

20  notified.

21      **(The call was concluded.)**

22      **(The recording was concluded.)**

23

24

25

For The Record, Inc.
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

**Menjivar Att. T
Page 8 of 9**

9

1         C E R T I F I C A T I O N    O F    T Y P I S T

2

3    MATTER NUMBER: <u>X160030</u>

4    CASE TITLE: <u>STARK LAW, LLC</u>

5    TAPING DATE: <u>DATE UNKNOWN</u>

6    TRANSCRIPTION DATE: <u>APRIL 12, 2016</u>

7

8       I HEREBY CERTIFY that the transcript contained

9    herein is a full and accurate transcript of the tapes

10    transcribed by me on the above cause before the FEDERAL

11    TRADE COMMISSION to the best of my knowledge and belief.

12

13                DATED:  APRIL 12, 2016

14

15                _____

16               ELIZABETH M. FARRELL

17

18    C E R T I F I C A T I O N    O F    P R O O F R E A D E R

19

20       I HEREBY CERTIFY that I proofread the transcript for

21    accuracy in spelling, hyphenation, punctuation and

22    format.

23

24                _____

25               SARA J. VANCE

# Menjivar Attachment U

ORIGINAL

## OFFICIAL TRANSCRIPT PROCEEDING

## FEDERAL TRADE COMMISSION

MATTER NO.    X160030

TITLE    STARK LAW, LLC

DATE    RECORDED:  APRIL 20, 2015
        TRANSCRIBED:  APRIL 12, 2016

PAGES    1 THROUGH 12

TELEPHONE CONVERSATION BETWEEN FEMALE REPRESENTATIVE AND
UNIDENTIFIED MALE
2015_20_04_09_05am_1210█████

For The Record, Inc.
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

                                                                    2

1                       FEDERAL TRADE COMMISSION

2                            I N D E X

3

4       RECORDING:                                        PAGE:

5       Telephone conversation between Female Representative

6       and Unidentified Male                                4

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

```
1                      FEDERAL TRADE COMMISSION

2

3        In the Matter of:            )

4        Stark Law, LLC               )   Matter No. X160030

5                                     )

6        -----------------------------)

7                                         April 20, 2015

8

9

10

11               The following transcript was produced from a

12       digital recording provided to For The Record, Inc. on

13       April 11, 2016.

14

15

16

17

18

19

20

21

22

23

24

25
```

4

1                  P R O C E E D I N G S

2                  -    -    -    -    -

3    TELEPHONE CONVERSATION BETWEEN FEMALE REPRESENTATIVE AND

4                      UNIDENTIFIED MALE

5              UNIDENTIFIED MALE:  Hello.

6              VICTORIA WATERS:  Good morning.  This

7    is Victoria Waters speaking.  I spoke to you on Friday,

8    on -- are you the spouse of Lily ██████ (phonetic)?

9              UNIDENTIFIED MALE:  Okay.

10             VICTORIA WATERS:  Okay.  Do you remember me,

11   sir?

12             UNIDENTIFIED MALE:  Yeah.

13             VICTORIA WATERS:  Okay, sir.  Well, when I was

14   talking -- when I spoke to you that day and you three-

15   wayed me with your girlfriend, she hung up.  And then,

16   I --

17             UNIDENTIFIED MALE:  Yeah, she -- yeah, she hang

18   up or whatever I guess to --

19             VICTORIA WATERS:  Okay, sir.

20             UNIDENTIFIED MALE:  She told me -- she told me

21   -- yeah, she told me whatever -- she told me like, you

22   know, if they want them to pay the money or whatever,

23   they got to submit a proof that that's her.

24             VICTORIA WATERS:  Okay.  Well, like I didn't

25   get a chance to speak to her, but, you know, she did give

5

1      permission for me to disclose some information.  Well, I

2      do have her -- she did confirm her Social Security and I

3      have --

4             UNIDENTIFIED MALE:  No, but she want to get a

5      letter and then --

6             VICTORIA WATERS:  Okay.  Now, the thing about

7      it is that the original creditor has sent her a default

8      loan, and all the information that I was trying to

9      disclose with her has been verified.  There is nothing I

10     can provide her in writing that I haven't tried telling

11     her.  So, she didn't let me finish explaining to her the

12     details because she hung up right away.  So, when I was

13     trying to talk to you, you had hung up and I tried

14     calling you back and I left you a voicemail.

15             Now --

16             UNIDENTIFIED MALE:  No, I mean, I talked -- I

17     mean, I talked to her or whatever and then she -- she

18     told me because she wanted to know what it was.  She say,

19     you know, it -- she told me it is for one of those

20     payday collection or whatever it is, like, you know,

21     a bill collector or whatever that she told me.  My,

22     myself, I didn't even know who the hell it was.  That's

23     why I (inaudible) I called her and then she -- right

24     away, whatever you will start speaking or whatever and

25     then she would know who it was because they already tried

6

1    -- they already tried, you know -- you know, to make her

2    pay.

3             VICTORIA WATERS:  Right.

4             UNIDENTIFIED MALE:  But they didn't have no

5    proof.

6             VICTORIA WATERS:  Okay.

7             UNIDENTIFIED MALE:  But you got to have proof

8    for her to pay money.

9             VICTORIA WATERS:  Okay.  Well, but she is aware

10   that she did take out a loan, correct?

11            UNIDENTIFIED MALE:  I don't know.  I mean, I --

12   I mean --

13            VICTORIA WATERS:  What -- you just finished

14   telling me that she was talking about a payday loan and

15   everything, so --

16            UNIDENTIFIED MALE:  Yeah, but I mean -- I mean

17   -- I mean, she does take a payday loan, but, I mean, what

18   -- I mean -- I don't know which company she took because

19   she took -- she did (inaudible) companies, you know, told

20   them, you know, she's still paying it and then some of

21   them like, you know, I guess they start the collection or

22   whatever.

23            VICTORIA WATERS:  Okay, I see.

24            UNIDENTIFIED MALE:  But --

25            VICTORIA WATERS:  So, if she took out another

7

1     (inaudible) --

2          UNIDENTIFIED MALE:  But she wanted to see the

3     proof.

4          VICTORIA WATERS:  If she had tooken other

5     loans and she's paying those off, then we're a whole

6     different type of loan that she has tooken out.  Now,

7     the thing about it is that I'm trying to get in contact

8     with her so I can help her resolve these problems due to

9     court action, like I explained to her while you were on

10    the phone because, like I said, she did give you

11    permission to listen on.  So, if you can have her call me

12    as soon as possible today so I can explain to her the

13    details.

14         UNIDENTIFIED MALE:  (Inaudible).  Yeah, yeah, I

15    will.  I will let her know if she -- you know, if she can

16    call you or whatever.  But another day she told me, if

17    they want them to pay, you know, that loan or whatever it

18    is -- is it a (inaudible) loan or a commercial loan or --

19    I don't know, whatever.

20         VICTORIA WATERS:  I understand completely what

21    she -- that she has told you and you're over here telling

22    me, you know, third party, but I need her to contact me

23    so she can explain to me about what's going on or what

24    questions she has so I can answer them.  So, I need her

25    to call me --

8

1          UNIDENTIFIED MALE:  Yeah, I will -- I will let

2      her know and then she'll give you a call.

3          VICTORIA WATERS:  Now, sir, are you willing to

4      give a number so I can call her later if she doesn't

5      contact me today?

6          UNIDENTIFIED MALE:  Yeah, I mean, I have the

7      number right here on my caller ID, 844, right?

8          VICTORIA WATERS:  Yes, sir.  Yes, you do.  But

9      now I'm asking you, if I don't hear from Ms. Lily █████

10     today, is it -- can you give me a direct number for her

11     so I can call her later on?

12         UNIDENTIFIED MALE:  That's the -- I mean, the

13     same number that last time I gave you, that's the same

14     number that --

15         VICTORIA WATERS:  (Inaudible).

16         UNIDENTIFIED MALE:  Her phone number is

17     (inaudible).

18         VICTORIA WATERS:  No, I know, but you --

19         UNIDENTIFIED MALE:  Let me give you her phone

20     number.

21         VICTORIA WATERS:  Okay.  Because last time you

22     did give me a number, you said 210, and then you cut off

23     and you never gave me the rest of the --

24         UNIDENTIFIED MALE:  Yeah, because, I mean, I

25     can't -- I didn't want to give her number because I have

9

1    to ask her for permission before I give anybody her

2    number.  If she say no, then I can't do it.

3            VICTORIA WATERS:  Okay.  So, you're not willing

4    to give me her number, correct?

5            UNIDENTIFIED MALE:  No, I'm going to call her,

6    and then if she say no, then, I mean, I can't give you

7    the phone number because at that time I'm going to put

8    myself in trouble because it's her own privacy for me to

9    give (inaudible) her number.

10            VICTORIA WATERS:  Okay, sir, no, that's

11    perfectly fine.  No pressure.

12            Now, like I said, once again, since she did

13    give you permission to listen in to the conversation, can

14    you please tell her to give me a call so I can help her

15    resolve this problem due to court action.  Okay?

16            UNIDENTIFIED MALE:  Yeah, I mean, she -- like

17    me and her, we're like a married couple because like

18    (inaudible) like, you know, me and her are like -- you

19    know, we have many things together.  Her problem is my

20    problem; my problem is her problem.  (Inaudible) I would

21    rather you call me.

22            VICTORIA WATERS:  Okay.

23            UNIDENTIFIED MALE:  I was worried about what

24    was -- you know, what was it.  That's the reason why I

25    call her because she's my wife.

1          VICTORIA WATERS:  Yes, sir.  Okay, that's

2    perfectly fine.  I understand.  But, now, since, like I

3    said, she gave me permission to disclose information with

4    you, now you know that I'm trying to help her resolve

5    this problem due to court action.  So -- okay?

6          UNIDENTIFIED MALE:  Yeah, I will -- I will call

7    her now and then I will give her -- I will give her the

8    phone number and then I -- she will call you.  Because

9    that day (inaudible) first, she was at work and

10    (inaudible) while I was calling her, she wasn't picking

11    up, and today, I told her it is very important, you know,

12    please call me back and whatever, and then she called me

13    back.

14          VICTORIA WATERS:  Okay.  And what was your

15    name, sir?

16          UNIDENTIFIED MALE:  My name?  My name is

17    (inaudible).

18          VICTORIA WATERS:  Oh, okay, I have it here.

19    Okay, sir, well, I appreciate it.  Thank you so much.

20    Can you please have your girlfriend, Lily       , call me

21    back today?  As soon as possible today.

22          UNIDENTIFIED MALE:  Yes, I will.

23          VICTORIA WATERS:  Okay.

24          UNIDENTIFIED MALE:  Okay, okay, all right.

25          VICTORIA WATERS:  All right, thank you.

11

1                    UNIDENTIFIED MALE:   Bye.

2                    **(The call was concluded.)**

3                    **(The recording was concluded.)**

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

12

# C E R T I F I C A T I O N   O F   T Y P I S T

MATTER NUMBER: X160030

CASE TITLE: STARK LAW, LLC

TAPING DATE: APRIL 20, 2015

TRANSCRIPTION DATE: APRIL 12, 2016


I HEREBY CERTIFY that the transcript contained
herein is a full and accurate transcript of the tapes
transcribed by me on the above cause before the FEDERAL
TRADE COMMISSION to the best of my knowledge and belief.


DATED: APRIL 12, 2016


ELIZABETH M. FARRELL


# C E R T I F I C A T I O N   O F   P R O O F R E A D E R


I HEREBY CERTIFY that I proofread the transcript for
accuracy in spelling, hyphenation, punctuation and
format.


SARA J. VANCE


For The Record, Inc.
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

**Menjivar Att. U
Page 12 of 12**

# Menjivar Attachment V

ORIGINAL

# OFFICIAL TRANSCRIPT PROCEEDING

## FEDERAL TRADE COMMISSION

MATTER NO.        X160030

TITLE             STARK LAW, LLC

DATE              RECORDED:   OCTOBER 30, 2012
                  TRANSCRIBED:  APRIL 12, 2016

PAGES             1 THROUGH 6

TELEPHONE CONVERSATION BETWEEN TONI JACKSON AND
MAKEISHA ██████
2012_30_10_05_07PM_1901██████████

For The Record, Inc.
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

2

1                    FEDERAL TRADE COMMISSION

2                         I N D E X

3

4    RECORDING:                                        PAGE:

5    Telephone conversation between Toni Jackson and

6    Makeisha ███████                                     4

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**Menjivar Att. V
Page 2 of 6**

3

1                FEDERAL TRADE COMMISSION

2

3      In the Matter of:              )

4      Stark Law, LLC                 )   Matter No. X160030

5                                     )

6      ------------------------------)

7                                     October 30, 2012

8

9

10

11           The following transcript was produced from a

12      digital recording provided to For The Record, Inc. on

13      April 11, 2016.

14

15

16

17

18

19

20

21

22

23

24

25

4

1                    P R O C E E D I N G S

2                    -    -    -    -    -

3          TELEPHONE CONVERSATION BETWEEN TONI JACKSON AND

4                    MAKEISHA ████████

5          MAKEISHA ████: Hello.

6          TONI JACKSON: Hello, hi, is Makeisha ████████

7    (phonetic) available?

8          MAKEISHA ████: This is she.

9          TONI JACKSON: Ms. ████████, this is Toni

10   Jackson. I'll just need to verify an address to present

11   you with your formal claim.

12         MAKEISHA ████: Okay.

13         TONI JACKSON: I need to get you documents to

14   address charges that are against you, Ms. ████. Are

15   you aware of what's going on?

16         MAKEISHA ████: No.

17         TONI JACKSON: Okay, look, grab a pen. I'll

18   give you the details.

19         MAKEISHA ████: Well, I'm driving, so could

20   you just tell me what it is?

21         TONI JACKSON: Actually, no, I'm a private

22   locator, ma'am. I was hired to locate you and present

23   you documents to appear. Now, what I can do is meet you

24   at your home address and present you the documents there

25   or I can give you a chance to pull over and get the

**Menjivar Att. V**
**Page 4 of 6**

5

1     information and call the firm before I reach you.

2          MAKEISHA ████████: Okay. Give me the

3     information.

4          TONI JACKSON: That number is 855-694 --

5          MAKEISHA ████████: Mm-hmm.

6          TONI JACKSON: -- 694 --

7          MAKEISHA ████████: Mm-hmm.

8          TONI JACKSON: -- 4339.

9          MAKEISHA ████████: Okay. And should I ask

10    (inaudible)?

11         TONI JACKSON: Let me give you -- let me give

12    you your claim number. It's 970524.

13         MAKEISHA ████████: 524?

14         TONI JACKSON: Yes. Now, give them a call and

15    figure out what's going on and I'll follow up with you to

16    get you your documents.

17         **(The call was concluded.)**

18         **(The recording was concluded.)**

19

20

21

22

23

24

25

6

1             **C E R T I F I C A T I O N    O F    T Y P I S T**

2

3      MATTER NUMBER: <u>X160030</u> _____

4      CASE TITLE: <u>STARK LAW, LLC</u> _____

5      TAPING DATE: <u> OCTOBER 30, 2012</u> _____

6      TRANSCRIPTION DATE: <u> APRIL 12, 2016</u> _____

7

8        I HEREBY CERTIFY that the transcript contained

9      herein is a full and accurate transcript of the tapes

10     transcribed by me on the above cause before the FEDERAL

11     TRADE COMMISSION to the best of my knowledge and belief.

12

13                 DATED:  APRIL 12, 2016

14

15

16                 ELIZABETH M. FARRELL

17

18     **C E R T I F I C A T I O N    O F    P R O O F R E A D E R**

19

20        I HEREBY CERTIFY that I proofread the transcript for

21     accuracy in spelling, hyphenation, punctuation and

22     format.

23

24

25                 SARA J. VANCE

# Menjivar Attachment W

ORIGINAL

## OFFICIAL TRANSCRIPT PROCEEDING

## FEDERAL TRADE COMMISSION

MATTER NO.     X160030

TITLE     STARK LAW, LLC

DATE     RECORDED:  APRIL 17, 2015
            TRANSCRIBED:  APRIL 12, 2016

PAGES     1 THROUGH 9

TELEPHONE CONVERSATION BETWEEN THOMAS ANDERSON AND
MS. ███████ S DAUGHTER
2015_17_04_03_47PM_408_414

For The Record, Inc.
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

2

1                         FEDERAL TRADE COMMISSION

2                              I N D E X

3

4       RECORDING:                                           PAGE:

5       Telephone conversation between Thomas Anderson and

6       Ms. ███████████s Daughter                               4

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

```
 1                    FEDERAL TRADE COMMISSION

 2

 3       In the Matter of:            )

 4       Stark Law, LLC               )   Matter No. X160030

 5                                    )

 6       ------------------------------)

 7                                   April 17, 2015

 8

 9

10

11            The following transcript was produced from a

12       digital recording provided to For The Record, Inc. on

13       April 11, 2016.

14

15

16

17

18

19

20

21

22

23

24

25
```

4

1              P R O C E E D I N G S

2              -    -    -    -    -

3    TELEPHONE CONVERSATION BETWEEN THOMAS ANDERSON AND

4                   MS. ██████ S DAUGHTER

5         THOMAS ANDERSON:  Yes, beautiful.

6         UNIDENTIFIED FEMALE:  You have Sheila

7    ██████.  Her daughter is on the line.

8         THOMAS ANDERSON:  Her daughter?

9         UNIDENTIFIED FEMALE:  Yeah.

10        THOMAS ANDERSON:  I don't speak with daughters.

11        UNIDENTIFIED FEMALE:  Yeah.

12        THOMAS ANDERSON:  But I will, though.  What's

13   the file number?

14        UNIDENTIFIED FEMALE:  402 --

15        THOMAS ANDERSON:  Mm-hmm.

16        UNIDENTIFIED FEMALE:  -- 1414.

17        THOMAS ANDERSON:  Put the caller ID number up

18   in there.  You can drop it.

19        UNIDENTIFIED FEMALE:  Mm-hmm.

20        THOMAS ANDERSON:  Yes, legal department, Mr.

21   Thomas Anderson speaking.  How may I help you?

22        MS. ██████ S DAUGHTER:  Hi, I'm calling in

23   reference to a message that was left on my mom's

24   voicemail and I was just trying to see if I can assist

25   you with whatever it is you're calling about.

5

1              THOMAS ANDERSON:  Well, you said -- you said

2      that this is for your mother?

3              MS. ██████████ S DAUGHTER:  Yes.

4              THOMAS ANDERSON:  Okay then, ma'am.  And what

5      is your mother's name?

6              MS. ██████████ S DAUGHTER:  It's Sheila

7      ██████████.

8              THOMAS ANDERSON:  ██████████.

9              MS. ██████████ S DAUGHTER:  Reference number is

10     40 --

11             THOMAS ANDERSON:  I do remember that -- go

12     ahead, ma'am, I'm sorry.

13             MS. ████████ S DAUGHTER:  Hmm?

14             THOMAS ANDERSON:  No, ma'am, I'm listening.  Go

15     ahead.

16             MS. ██████████ S DAUGHTER:  Oh, reference

17     number, I was just going to give it to you.  4021414.

18             THOMAS ANDERSON:  Give me one second.  Okay,

19     then, ma'am, yes, ma'am, I was trying to get in contact

20     with a Ms. ████████ earlier today.  My name is Thomas

21     Anderson, again, ma'am, and I am a litigation specialist

22     here at Pacific.  What I do here is assist with the

23     preparation and prosecution of cases here.

24             MS. ██████████ S DAUGHTER:  Mm-hmm.

25             THOMAS ANDERSON:  Your mother does have a case

6

1    here that -- in our firm that is pending litigation

2    status at this time.

3                    MS. ███████ S DAUGHTER:  Mm-hmm.

4                    THOMAS ANDERSON:  I was trying to get in

5    contact with her so -- to inform her of the matter and

6    see what it is that we can do for her.

7                    MS. ███████ S DAUGHTER:  Okay.  Is it in

8    reference to a payday advance loan that she may have

9    gotten five or six years ago?

10                   THOMAS ANDERSON:  Well, the only thing it is is

11   that I can't disclose her information, ma'am, without her

12   permission.  Again, they are trying to file this matter

13   out there in her county (inaudible).  So, I was just

14   trying to get in contact with her today before I have to

15   forward her file over to one of our lead attorneys here.

16                   MS. ███████ S DAUGHTER:  Okay.  Well, I guess

17   you will have to do what you have to do because she's

18   been hospitalized because she had an on-the-job accident

19   where she lost part of her fingers.  So --

20                   THOMAS ANDERSON:  Mm-hmm.

21                   MS. ███████ S DAUGHTER:  -- I have been

22   paying her bills and taking care of most of her stuff for

23   her and we had --

24                   THOMAS ANDERSON:  Okay.

25                   MS. ███████ S DAUGHTER:  -- gotten a call a

**Menjivar Att. W
Page 6 of 9**

7

1    few months ago in reference to something sounding just

2    like this in reference to a payday advance that was paid

3    off.  So, I'm trying to see if this is the same thing so

4    that I can provide documentation to whomever needs it to

5    show that that was paid off --

6                    THOMAS ANDERSON:  Okay.

7                    MS. ██████ S DAUGHTER:  -- and taken care of

8    in a timely manner.  But since you can't give me any

9    information, I guess once she's out of the hospital and

10   feeling better, I mean -- I guess you just have to do

11   what you have to do in the meantime if you can't, you

12   know, speak with me or I can get you the information you

13   need.  So --

14                   THOMAS ANDERSON:  Mm-hmm.  Well, ma'am, well,

15   the only thing it is because I do -- now, if you can

16   verify your mother's Social Security number here in our

17   office, I mean, I will have no problem giving you this

18   information.  But I just can't disclose it to you because

19   you're stating that you are her daughter.

20                   MS. ██████ S DAUGHTER:  Yeah, I totally

21   understand.  Yeah, I have it written down at home and I'm

22   not at the house right this second.

23                   THOMAS ANDERSON:  Okay.

24                   MS. ██████ S DAUGHTER:  But as soon as I get

25   back -- what are your hours today?  Are you there until

8

1       5:00 or --

2                    THOMAS ANDERSON:  I'm here until 6:00 p.m.

3       Central time, which is 7:00 p.m your time.

4                    MS. ███████ S DAUGHTER:  Eastern, okay.

5       Okay, well, I'll give you a call back.

6                    THOMAS ANDERSON:  Okay.

7                    MS. ███████ S DAUGHTER:  And if I can just

8       get -- if I can get her to call from the hospital, maybe

9       I can just run by there and take my cell phone and have

10      her give you a call and --

11                   THOMAS ANDERSON:  Okay.

12                   MS. ███████ S DAUGHTER:  -- she can handle it

13      herself, okay?

14                   THOMAS ANDERSON:  All right, then, ma'am, thank

15      you.

16                   MS. ███████ S DAUGHTER:  All right, thank

17      you.  Bye.

18                   THOMAS ANDERSON:  Mm-hmm.

19                   **(The call was concluded.)**

20                   **(The recording was concluded.)**

21

22

23

24

25

9

1       **C E R T I F I C A T I O N   O F   T Y P I S T**

2

3       MATTER NUMBER: <u>X160030</u>

4       CASE TITLE: <u>STARK LAW, LLC</u>

5       TAPING DATE: <u>APRIL 17, 2015</u>

6       TRANSCRIPTION DATE: <u>APRIL 12, 2016</u>

7

8           I HEREBY CERTIFY that the transcript contained

9       herein is a full and accurate transcript of the tapes

10      transcribed by me on the above cause before the FEDERAL

11      TRADE COMMISSION to the best of my knowledge and belief.

12

13                      DATED:  APRIL 12, 2016

14

15                      _____

16                      ELIZABETH M. FARRELL

17

18      **C E R T I F I C A T I O N   O F   P R O O F R E A D E R**

19

20          I HEREBY CERTIFY that I proofread the transcript for

21      accuracy in spelling, hyphenation, punctuation and

22      format.

23

24                      _____

25                      SARA J. VANCE

For The Record, Inc.
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

**Menjivar Att. W**
**Page 9 of 9**