UNITED STATES DISTRICT COURT
NORTHERN DISTRICT ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION and STATE OF ILLINOIS, | )<br>)<br>) |
| Plaintiffs, | ) No. 1:16 CV 3463 |
| v. | )<br>) Hon. Rebecca R. Pallmeyer |
| STARK LAW, LLC, et al., | )<br>) |
| Defendants. | ) |

**RECEIVER'S MOTION TO REASSIGN RELATED CASE**

Gregg Szilagyi, the Court-appointed receiver ("Receiver") of defendants Stark Law, LLC, Stark Legal, LLC, Ashton Asset Management, Inc., CHM Capital Group, LLC, HKM Funding, Ltd., Pacific Capital Holdings, Inc. and Aura Development, Inc., hereby moves the Court (the "Motion"), pursuant to Local Rule 40.4(c), to enter an order reassigning civil action no. 17 CV 00564 (currently pending before the Honorable John J. Tharp, Jr.) (defined below as the "Subpoena Action"), to this Court's calendar on relatedness grounds.

**Factual Background**

A. **Appointment of Receiver**

1. On March 21, 2016, plaintiffs Federal Trade Commission and the State of Illinois commenced this civil action against defendants Stark Law, LLC, Stark Legal, LLC, Ashton Asset Management, Inc., CHM Capital Group, LLC, HKM Funding, Ltd. and Pacific Capital Holdings, Inc. (collectively, the "Receivership Defendants" or "Receivership Estate"), and Hirsh Mohindra, Gaurav Mohindra and Preetesh Patel (collectively, the "Individual Defendants") alleging that they were operating "an unlicensed, fraudulent debt collection scheme that bilked millions of dollars from victims across the country" in violation of the Federal Trade Commission Act, 15 U.S.C. § 45(a), the Illinois Consumer Fraud Act, 815 ILCS 505/7, and other federal and state debt collection practices laws. [Dkt. Nos. 1, 70].

2. On March 22, 2016, the Court entered an *ex parte* temporary restraining order ("TRO") that, among other things, froze the assets of the Receivership Defendants and the Individual Defendants (collectively, "Defendants"), and appointed Gregg Szilagyi as the temporary federal equity receiver of the Receivership Defendants. [Dkt. No. 17.]

3. Subsequently, on July 11, 2016, the Court entered the *Preliminary Injunction with Asset Freeze and Other Equitable Relief* [Dkt. No. 82] (the "Receivership Order") that, among other relief, appointed the Receiver to serve on a permanent basis. (Receivership Order at 18.)

4. The Receivership Order confers upon the Receiver "the full power of an equity receiver," and authorized and directed him to, among other things, (a) assume full control over the Receivership Defendants; (b) take exclusive custody, control and possession of all assets of the Receivership Defendants; (c) conserve, hold and manage all receivership assets; and (d) manage and administer the business of the Receivership Defendants. (*Id.* at 18-20.) To assist the Receiver in carrying out these duties, the Receivership Order authorizes the Receiver to "[i]ssue subpoenas to obtain documents and records pertaining to the receivership, and conduct discovery in this action on behalf of the receivership estate." (*Id.* at 21.)

**B.     Receiver's Investigation and the Clarification Order**

5. Since his appointment, the Receiver and his professionals investigated Defendants' financial affairs, particularly their transfers of money to themselves, their insiders, affiliates and third parties. The Receiver's investigation into Defendants' financial affairs revealed a myriad of dealings with hundreds of third parties with respect to the purchase and/or sale of alleged debt portfolios, the collection of such portfolios and joint ventures to conduct such actions, but because the Receiver has found little documentation or financial records to evidence or explain the details of those dealings, he has had to seek such evidence from third parties.

6. So, beginning on August 26, 2016, the Receiver began issuing subpoenas to over 125 third parties seeking documents evidencing the connections between them and the Receivership Defendants. [Docket #105.] Each of the Subpoenas is identical.

7. Because certain subpoena respondents had contended that the documents and information the Receiver sought were not relevant, and that the subpoenas he issued were overly broad, the Receiver asked the Court to clarify that the Receiver's subpoena authority is coextensive with the broad investigatory powers that bankruptcy trustees may invoke under Federal Rule of Bankruptcy Procedure 2004(b). [Docket #134.] The Court agreed with the Receiver, entering an order ("Clarification Order") stating that:

> by empowering [the Receiver] to "[i]ssue subpoenas to obtain documents and records pertaining to the receivership, and conduct discovery in this action on behalf of the receivership estate" (Receivership Order at p. 21, ¶ 14), it was the Court's intent to authorize and empower the Receiver to issue and serve discovery and subpoenas on persons or entities for the production of documents or for oral examination relating to the acts, conduct, property, assets, liabilities and financial condition of the defendants and other entities that are now or may later by placed in receivership, or to any matter that affects the administration of the receivership estate, such that the Receiver's investigatory powers are coextensive with the authority that Federal Rule of Bankruptcy Procedure 2004(b) grants to a bankruptcy trustee.

[Docket #138 at ¶ 2.]

### C. The Subpoena Action

8. On August 29, 2016, the Receiver issued a subpoena for documents (the "Subpoena") to DSP Holdings Inc. ("DSP"). DSP is located in Munroe Falls, Ohio. (*Id.*)

9. In response, DSP produced only three documents and claimed it had no other documents in its possession. The Receiver has a good basis to doubt that the Respondent conducted a diligent search of its records, if it searched at all. This is because the Receiver is in possession of emails between Respondent and the Defendants that are plainly responsive to the Subpoena, and which should be in the Respondent's possession and control, but which Respondent

did not produce. Respondent's failure to produce such documents strongly suggests that its search for responsive records was deficient. The Receiver notified the Respondent that the parties had been in recent communication, which should have prompted the Respondent to go back and conduct a more thorough search. Instead, the Respondent did nothing.

10. Accordingly, the Receiver moved to compel compliance with the Subpoena by commencing a miscellaneous action in the U.S. District Court for the Northern District of Ohio, (the "Ohio District Court") styled *Gregg Szilagyi v. Debt Sales Partners*, case no. 5:16-mc-00066 (the "Subpoena Action"). A copy of the motion to compel is attached hereto as **Exhibit A**. The Honorable Judge John R. Adams presided over the Subpoena Action.

11. The Receiver moved the Ohio District Court to transfer the Subpoena Action to this Court, in its capacity as the "issuing court" for the Subpoena, pursuant to Rule 45(f) (the "Transfer Motion"). On January 24, 2017, after full briefing, the Ohio District Court entered an order granting the Transfer Motion. (**Exhibit B**.) The following day, the Clerk of the Ohio District Court electronically transferred the Subpoena Action to this Court, where it was docketed as civil action no. 17 CV 00564.

## Relief Requested

12. The Court should find that the Subpoena Action is related to the Receivership Case within the meaning of Local Rule 40.4, and request that the Executive Committee to reassign the Subpoena Action to this Court's calendar. Local Rule 40.4(b) provides that "[a] case may be reassigned to the calendar of another judge if [1] it is found to be related to an earlier-numbered case assigned to that judge and [2] each of the … criteria [specified in Local Rule 40.4(b)] is met." Local Rule 40.4(b) is satisfied, as discussed below.

13. <u>First</u>, the Subpoena Action is related to the Receivership Case. According to Local Rule 40.4(a), two cases may be "related" for reassignment purposes if they, *inter alia*, "involve the same property" (LR 40.4(a)(1)), "involve some of the same issues of fact or law" (LR 40.4(a)(2)), or "grow out of the same transaction or occurrence" (LR 40.4(a)(3)). All three grounds to find relatedness apply here.

14. Both cases involve the same property, namely the assets that are part of the Receivership Estate established in the Receivership Case and thus that are within this Court's exclusive *in rem* jurisdiction. Both cases also involve some of or the same issues of fact and law. In the Receivership Case, the Court authorized the Receiver to investigate Defendants and their transactions and dealings with third parties, and in the Subpoena Action the Court will be required to interpret the Subpoenas issued pursuant to the powers conferred on the Receiver in the Receivership Case and decide the extent to which DSP must comply with them. The two cases, moreover, unquestionably grow out of the same transaction or occurrence: each has its basis in Defendants' pre-receivership acts and transactions among themselves and with various third parties. Thus, the Subpoena Action is "related" to the Receivership Case for purposes of Local Rule 40.4(a).

15. <u>Second</u>, each of the conditions for reassignment is met. Under Local Rule 40.4(b), reassignment of a later-filed related case is proper if both cases are pending in the District Court, "the handling of both cases by the same judge is likely to result in a substantial saving of judicial time and effort[,]" "the earlier case has not progressed to the point where designating a later filed case as related would be likely to delay the proceedings in the earlier case substantially[,]" and "the cases are susceptible of disposition in a single proceeding." LR 40.4(b). These requirements are easily satisfied here.

16. The Receivership Case and the Subpoena Action are both pending before this Court. Reassignment would result in a substantial saving of judicial time and effort because if the Subpoena Action is reassigned to this Court, it will obviate the need for Judge Tharp to expend the considerable time and effort necessary to become familiar with the background of the Receivership Case, particularly the reasons why the Court appointed the Receiver and authorized him to investigate Defendants' acts and transactions with third parties. The Receivership Case has not progressed to a point where designating the Subpoena Action as related would result in substantial delay. The Receiver will continue to carry out his duties with the same dispatch after the Subpoena Action is reassigned to this Court's calendar. In addition, because, as discussed above, the two cases involve the same property and common questions of law and fact, the cases are susceptible of disposition – and arguably should be disposed of – in a single proceeding to avoid conflicting results.

17. Finally, the Court has already reassigned to this Court's calendar two other subpoena disputes that were transferred from the Southern District of Florida. *See* [Dkt. Nos. 201, 228].

*[the remainder of this page intentionally left blank]*

**WHEREFORE**, the Receiver respectfully requests that the Court enter an order: (i) granting the Motion; (ii) finding that civil action no. 17 CV 00564 is related to no. 16 CV 03463; (iii) recommending to the Executive Committee that civil action no. 17 CV 00564 be reassigned to this Court's calendar; and (iv) awarding such other relief as is just and appropriate.

Dated: January 30, 2017

Respectfully submitted,

Gregg Szilagyi, Receiver of Stark Law, LLC, Stark Legal, LLC, Ashton Asset Management, Inc., CHM Capital Group, LLC, HKM Funding, Ltd., Pacific Capital Holdings, Inc. and Aura Development, Inc.

By  /s/ David R. Doyle
      One of his attorneys

Robert M. Fishman (3124316)
Terence G. Banich (6269359)
David R. Doyle (6303215)
Shaw Fishman Glantz & Towbin LLC
321 North Clark Street, Suite 800
Chicago, IL  60654
rfishman@shawfishman.com
tbanich@shawfishman.com
ddoyle@shawfishman.com