**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION and STATE OF ILLINOIS, | ) ) ) | |
| Plaintiffs, | ) ) | No. 1:16 CV 3463 |
| v. | ) ) | Hon. Rebecca R. Pallmeyer |
| STARK LAW, LLC, et al., | ) ) | |
| Defendants. | ) ) | |

**MOTION OF RECEIVER GREGG SZILAGYI**
**TO AUTHORIZE AURA INVESTMENTS II, LLC TO SELL CERTAIN**
**PROPERTY SUBJECT TO THE PRELIMINARY INJUNCTION**

Gregg Szilagyi, the Court-appointed permanent equity receiver (the "<u>Receiver</u>") of the Receivership Defendants,[1] hereby moves the Court to enter an order authorizing Aura Investments II, LLC to sell the residential real property commonly known as 635 S. Quincy Ave., Hinsdale, Illinois (the "<u>Property</u>"), notwithstanding the Property being subject to the Preliminary Injunction, on the condition that the proceeds from the sale, net any standard closing costs, be held in escrow and similarly be subject to the Preliminary Injunction pending an agreement of the parties or Court order. In support thereof, the Receiver states as follows:

<u>**Background**</u>

**A.      Appointment of the Receiver**

1.      On March 21, 2016, plaintiffs Federal Trade Commission and the State of Illinois commenced this civil action against defendants Stark Law, LLC, Stark Legal, LLC, Ashton Asset Management, Inc. ("<u>Ashton</u>"), CHM Capital Group, LLC ("<u>CHM</u>"), HKM Funding, Ltd. and Pacific Capital Holdings, Inc. ("<u>Original Receivership Defendants</u>"), and Hirsh Mohindra, Gaurav Mohindra and Preetesh Patel ("<u>Individual Defendants</u>") alleging that they were operating

---

[1] Undefined terms in this paragraph shall have the meanings set forth *infra*.

"an unlicensed, fraudulent debt collection scheme that bilked millions of dollars from victims across the country" in violation of the Federal Trade Commission Act, 15 U.S.C. § 45(a), the Illinois Consumer Fraud Act, 815 ILCS 505/7, and other federal and state debt collection practices laws. [#1; #70 at p. 1.]

2. On March 22, 2016, the Court entered an *ex parte* temporary restraining order ("TRO") that, among other things, froze the assets of the Original Receivership Defendants and the Individual Defendants (collectively, "Defendants"), and appointed Gregg Szilagyi as the temporary federal equity receiver of the Receivership Defendants. [#17.] Subsequently, on July 11, 2016, the Court entered a preliminary injunction that, among other relief, appointed the Receiver to serve on a permanent basis ("Preliminary Injunction"). [#82.]

3. The TRO and the Preliminary Injunction authorized and directed the Receiver to, among other things, (a) assume full control over the Original Receivership Defendants; (b) take exclusive custody, control and possession of all assets of the Original Receivership Defendants; and (c) manage and administer the business of the Original Receivership Defendants until further order of the Court. (TRO at 18-20.)

4. Immediately upon his appointment, the Receiver secured the Original Receivership Defendants' offices at 500 Quail Ridge Drive in Westmont, Illinois, and began the process of collecting and reviewing the digital and hard files and financial records of the Original Receivership Defendants in an attempt to understand and wind-down the business operations, eliminate unnecessary costs and collect and consolidate receivables and accounts under the control of the Receiver.[2]

---

[2] The Receiver's reports provide greater detail about his activities. [Docket Nos. 28, 69, 78, and 171.]

### B. Aura Development, Inc.

5.     In the months that followed, the Receiver and his professionals investigated the financial affairs of the Original Receivership Defendants, particularly their transfers of money to themselves, their insiders, affiliates and third parties. The Receiver discovered that Aura Development, Inc. ("Aura"), one of Defendants' affiliate entities, received a significant amount of money from the Original Receivership Defendants and subsequently transferred money to or for the benefit of the Individual Defendants, as well as multiple third parties.

6.     On September 26, 2016, the Receiver filed the *Uncontested Motion of Receiver Gregg Szilagyi to Expand Receivership to Include Aura Development, Inc.* [#132] (the "Aura Motion"), which sought to expand the Receivership Estate to include Aura.  On September 29, 2016, the Court granted the Aura Motion and entered the *Order Granting Uncontested Motion of Receiver Gregg Szilagyi to Expand Receivership to Include Aura Development Inc.* [#138] (Aura and the Original Receivership Defendants are collectively referred to herein as the "Receivership Defendants").

### C. Aura Investments II, LLC

7.     One of the third parties receiving transfers from Aura was Aura Investments II, LLC ("Aura Investments II").   Aura Investments II is an Illinois limited liability company managed by Berkeley Development Inc. ("Berkeley"), an Illinois Corporation. A copy of Aura Investments II's operating agreement is attached hereto as **Exhibit A**. Gaurav Mohindra is the President of Berkeley and thus controls Aura Investments II.

8.     Upon information and belief, Hirsh Mohindra, Gaurav Mohindra and Animesh Ravani formed Aura Investments II to acquire properties with funds provided by Aura Investments II's investors, demolish the existing structures on the acquired properties, obtain

construction loans to fund the construction of a new home on the property and sell the newly constructed home for profit.

9.      In November 2013, Aura Investments II acquired the Property for $545,000 using its investors' funds, for the purpose of tearing down the existing home and building a new home. Aura Investments II supplemented the funding of its construction costs with respect to the Property using funds transferred from Aura.  Specifically, as a result of his investigations, the Receiver discovered that between December 18, 2014 and March 24, 2016, Hirsh Mohindra caused Aura to pay the total of $254,700.93 for goods, services and other costs relating to Aura Investments II's construction of a new home on the Property.

10.      On May 31, 2017, the Receiver initiated the action styled *Szilagyi v. Aura Investments II, LLC*, Case No. 17-cv-4124 (the "Aura Investments II Case"), to avoid and recover fraudulent transfers from Aura Development to Aura Investments II, LLC.  On the date of filing, the Receiver's counsel was aware of a possible pending contract for sale of the Property.

11.      Following the commencement of the Aura Investments II Case, Aura Investments II's counsel provided the Receiver with an executed contract for the sale of the Property with effective date of May 2, 2017 (the "Sale Contract").  The listed purchase price of the Property is $1.295 million and the closing is scheduled for July 12, 2017.  A copy of the Sale Contract is attached hereto as **Exhibit B**.

12.      Aura Investments II's counsel advised the Receiver's counsel that Aura Investments II desires to sell the Property under the terms of the Sale Contract on July 12, 2017. The Receiver's counsel conferred with Aura Investments II's counsel and both parties agreed to a resolution whereby the Property would be sold and the proceeds from the sale would be placed

in escrow. The escrowed sale proceeds, net any standard closing costs incurred from the sale, would be subject to the Preliminary Injunction and remain in escrow pending either an agreement of the parties as to Aura Investments II's liability in the Aura Investments II Case or a Court order.

**<u>Relief Requested</u>**

13.    The Court should grant the Motion and authorize Aura Investments II to sell the Property under the conditions agreed to between the Receiver and Aura Investments II.

14.    The Court "has broad powers and wide discretion to determine relief in an equity receivership," including the power to order a sale of all property within its custody and control. *See Sec. & Exch. Comm'n v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992) (authorizing receiver's disposal of receivership assets); *SEC v. American Capital, Invs., Inc.*, 98 F.3d 1133, 1144 (9th Cir. 1996) (approving receiver's decision to sell receivership estate property) <u>citing</u> 2 Ralph Ewing Clark, *Treatise on Law & Practice of Receivers* § 482 (3d ed. 1992) (abrogated on other grounds). This "discretion derives from the inherent powers of an equity court to fashion relief." *Sec. & Exch. Comm'n v. Pension Fund of Am. L.C.*, 377 F. App'x 957, 961 (11th Cir. 2010).

15.    Here, the Receiver contends that the Property is subject to the Preliminary Injunction because it is owned by Aura Investments II, a limited liability company controlled by Gaurav Mohindra as President of Berkeley. Therefore, the Receiver seeks Court authorization for Aura Investments II to sell the Property notwithstanding the Preliminary Injunction. The Receiver believes that the agreement reached with Aura Investments II is consistent with the Receivership Estate's interests because all proceeds from the sale, net any standard closing costs

incurred, will be escrowed and subject to the Preliminary Injunction until such time as the Aura Investments II Case is resolved.

**WHEREFORE**, the Receiver respectfully requests the Court to enter an order, substantially in the form submitted herewith: (a) granting the Motion; (b) authorizing Aura Investments II to sell the residential real property commonly known as 635 S. Quincy Ave., Hinsdale, Illinois, pursuant to the terms of the Sale Contract, with all proceeds from the sale to be held in escrow and subject to the Preliminary Injunction pending either an agreement between the Receiver and Aura Investments II as to Aura Investments II's liability in the Aura Investments II Case or a Court order; and (c) granting such further relief as the Court deems necessary and appropriate.

Dated: June 30, 2017

Respectfully submitted,

GREGG SZILAGYI, not individually, but as the Receiver of the Receivership Defendants

By  /s/  *Mark L. Radtke*
        One of his attorneys

Robert M. Fishman (3124316)
Mark L. Radtke (6275738)
Christina M. Sanfelippo (6321440)
Shaw Fishman Glantz & Towbin LLC
321 North Clark Street, Suite 800
Chicago, IL  60654
rfishman@shawfishman.com
mradtke@shawfishman.com
csanfelippo@shawfishman.com