## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, and the STATE OF ILLINOIS, | Case No. 1:16-cv-3463 |
| *Plaintiffs,* | Judge Rebecca R. Pallmeyer |
| *v.* | Magistrate Judge Sheila M. Finnegan |
| STARK LAW, LLC, *et al.*, | |
| *Defendants.* | |

## MOTION OF RECEIVER GREGG SZILAGYI TO DISCHARGE
## RECEIVER AND GRANT RELATED RELIEF

Gregg Szilagyi, the Court appointed receiver (the "Receiver") pursuant to the *Preliminary Injunction with Asset Freeze and Other Equitable Relief* [Dkt. No. 82] (the "Receivership Order"), hereby moves (the "Motion") for entry of an order: (i) discharging the Receiver and terminating the receivership; (ii) approving the disbursements made by the Receiver; (iii) approving the Final Report; (iv) authorizing the destruction of records regarding the Receivership that are held by the Receiver and his professionals; (v) declaring that the Receiver and each of his agents, employees, professionals, attorneys, independent contractors and representatives are: (a) discharged with respect to the receivership (the "Receivership") created by the Receivership Order, (b) released from all claims and liabilities arising out of and/or pertaining to the Receivership, and (c) relieved of all duties and responsibilities pertaining to the Receivership; (vi) authorizing the Receiver to transfer the net balance of the Receivership Accounts[1] to the FTC pursuant to the Corporate and

---

[1] All undefined terms herein shall carry the meanings ascribed to them below or in the Final Report (defined below), as applicable.

113446008

Mohindra Judgment; (vii) approving the fees of the Receiver's professionals, and (viii) granting related relief. In support of this Motion, the Receiver states as follows:

## I. Introduction

1. Contemporaneously with the filing of this Motion, the Trustee has filed the *Final Report of Receiver Gregg Szilagyi* (the "Final Report"), which is incorporated herein by reference. The Final Report summarizes the tasks performed and results achieved by the Receiver since his appointment and provides an inventory of the assets of the Receivership Estate. As described in the Final Report, the Receivership Estate is fully administered. The Receiver's sole remaining tasks are to wind-down the Receivership, pay the administrative claims of the Receivership Estate and disburse the net balance of the Receivership Accounts to the FTC to make redress payments to consumers. By this Motion, the Receiver requests relief necessary for the termination of the Receivership, including approval of the fees and expenses incurred by the Receiver and the Estate Professional after August 2018, authority to destroy records of the Receivership Estate, and the discharge and release of the Receiver and his professionals.

## II. Background

### A. The Appointment of the Receiver

2. On March 21, 2016, the Federal Trade Commission ("FTC") and the State of Illinois, the above-captioned plaintiffs (the "Plaintiffs"), filed a *Complaint for Permanent Injunction and other Equitable Relief* [Dkt. No. 1] (the "Complaint"), commencing the above-captioned action (the "Action"), and *Plaintiffs'* Ex Parte *Motion for a Temporary Restraining Order with Asset Freeze, Appointment of a Receiver, other Equitable Relief, and Order to Show Cause why a Preliminary Injunction should not Issue* [Dkt. No. 7] (the "Motion for TRO").

3. On March 22, 2016, the Court granted the Motion for TRO and entered the *Ex Parte Temporary Restraining Order with Asset Freeze, Appointment of a Receiver, Other Equitable Relief, and Other to Show Cause why a Preliminary Injunction Should not Issue* [Dkt. No. 17] (the "TRO").

4. The TRO appointed Gregg Szilagyi as Receiver over the assets (the "Receivership Estate") of Stark Law, Stark Legal, Ashton, CHM, HKM and Pacific (collectively, with Aura (defined below), the "Receivership Defendants"). On July 18, 2016, the Court entered the Receivership Order, which appointed the Receiver to serve on a permanent basis.

5. On September 29, 2016, the Court entered the *Order Granting Uncontested Motion of Receiver Gregg Szilagyi to Expand Receivership to Include Aura Development Inc.* [Dkt. No. 138] (the "Aura Receivership Order"), which expanded the Receivership Estate to include the assets of Aura Development, Inc. ("Aura").

6. Among other tasks, the Receivership Order directed the Receiver to:

    a. Take exclusive custody, control and possession of all assets and documents of, or in the possession, custody or control of, the Receivership Defendants." (Receivership Order, § VIII(B)(2)).

    b. "Use any means necessary to take possession of and to secure all areas of the business premises of the Receivership Defendants." (*Id.*, § VIII(B)(3)).

    c. "Open one or more bank accounts as designated depositories for funds of the Receivership Defendants." (*Id.*, § VIII(B)(15)).

    d. "Conserve, hold and manage all receivership assets, and perform all acts necessary or advisable to preserve the value of the those assets, in order to prevent any irreparable loss, damage or injury to consumers or creditors of the Receivership Defendants." (*Id.*, § VIII(B)(4)).

    e. "Issue subpoenas to obtain documents and records pertaining to the receivership, and conduct discovery in this action on behalf of the receivership estate." (*Id.*, § VIII(B)(14)).

f. "Institute . . . such actions or proceedings in state, federal or foreign courts that the Receiver deems necessary and advisable to . . . recover assets of the Receivership Defendants." (*Id.*, § VIII(B)(11)).

g. "Cooperate with reasonable requests for information or assistance from any state or federal law enforcement." (*Id.*, § VIII(B)(17)).

**B.      The Stipulated Judgments**

7.      On October 27, 2017, the Plaintiffs filed a *Joint Motion for Entry of Stipulated Final Judgments and Orders for Permanent Injunction and Other Equitable Relief* (the "Settlement Motion"), which sought entry of stipulated final orders resolving the Plaintiffs' claims against all Defendants.

8.      On October 27, 2017, the Court granted the Settlement Motion and entered stipulated judgments against each of the Defendants (the "Stipulated Judgments"). [Dkt. Nos. 354, 355, 356].

9.      Relevant to the Receivership, the Stipulated Judgment against Hirsh Mohindra and the Receivership Defendants [Dkt. No. 354] (the "Corporate and Mohindra Judgment") directed the Receiver as follows:

a.      Complete the process of taking custody, control and possession of all assets of the Receivership Defendants pursuant to [the Receivership Order];

b.      Complete, as necessary, the liquidation of all assets of the Receivership Defendants, and all other assets in the Receivership Estate;

c.      Prepare and submit a report describing the Receiver's activities . . . and a final application for compensation and expenses; and

d.      Distribute to Plaintiffs any remaining liquid assets at the conclusion of the Receiver's duties.

(Corporate and Mohindra Judgment at p. 24).

4

### III.    Request for Relief

10.    The Receiver is an officer of this Court and is entrusted with the administration and management of estate property. *Gaskill v. Gordon,* 27 F.3d 248, 251 (7th Cir. 1994). The Court "has broad powers and wide discretion to determine relief in an equity receivership." *Sec. & Exch. Comm'n v. Elliott,* 953 F.2d 1560, 1566 (11th Cir. 1992). This "discretion derives from the inherent powers of an equity court to fashion relief." *Sec. & Exch. Comm'n v. Pension Fund of Am. L.C.,* 377 F. App'x 957, 961 (11th Cir. 2010).

#### A.  Approval of Final Report

11.    It is an appropriate exercise of the Court's discretion to review and approve the Final Report. See Ralph Ewing Clark, A Treatise on the Law and Practice of Receivers, Vol. 2, § 383.1, pp. 643, 644 (3d ed. 1992) ("A receiver's account and report is for the purpose of informing the appointing court and parties interested of the receiver's stewardship. Since the receiver is the court's officer, the court may at its own instance approve or disapprove the report of the receiver."). Accordingly, the Receiver respectfully requests that the Court approve the Final Report.

#### B.  Destruction of Records

12.    The Receiver and the Estate Professionals are currently in possession of business records, correspondence, electronic information and other documents (collectively, "Records") of the Receivership Estate, the Receivership Defendants and the Individual Defendants.[2] Additionally, in the course of his investigations (as outlined in the Final Report), the Receiver and the Estate Professionals came into possession of various Records from subpoenaed third-parties. The Receiver respectfully requests that the Court enter an order authorizing, but not directing, the

---

[2] The "Individual Defendants" are Hirsh Mohindra, Gaurav Mohindra and Preetesh Patel.

5

Receiver and the Estate Professionals to dispose of such Records by deleting and/or destroying such Records in their possession.

13.     Finally, as noted in the Final Report, the Receiver has maintained an online Relativity database with electronic information relating to the Receivership Estate through a Relativity vendor. The Receiver shall instruct the Relativity vendor to archive all information currently stored on the Relativity database.

### C. Release of All Claims and Liabilities and Retention of Jurisdiction

14.     The proposed order attached hereto contains important provisions that are necessary to protect the Receiver. The first is a comprehensive release of the Receiver and the Estate Professionals (defined below). The second is a provision requiring that any action purporting to challenge any act done by the Receiver be brought before this Court.

15.     The Receiver, as a court-appointed fiduciary, is a quasi-judicial officer and thus protected by immunity. *See Bradford Audio Corporation v. Pious,* 392 F. 2d 67, 73 (2d Cir. 1968); *Kovalesky v. Nickerson,* 1997 WL 630144 at *4 (S.D.N.Y. 1997). This immunity serves an important purpose in that it allows the Receiver and his retained professionals to perform their duties without the threat of collateral litigation. The Receiver requests that the Court enter an order declaring that the Receiver and each of his agents, employees, professionals, attorneys, independent contractors and representatives are: (i) discharged with respect to the Receivership; (ii) released from all claims and liabilities arising out of and/or pertaining to the Receivership; and (iii) relieved of all duties and responsibilities pertaining to the Receivership.

16.     The channeling of any post-termination claims concerning the actions of the Receiver during the Receivership is authorized under the Barton Doctrine, which requires that a claim against a receiver be brought before the court that appointed the receiver. *Barton v. Barbour,*

104 U.S. 126 (1881); *In re Linton,* 136 F.3d 544, 545 (7th Cir. 1998) (noting that it "had long been established that a receiver could not be sued without leave of the court that appointed him."); *see also Brendan Financial, Inc. v. James,* No. 12-c-9349, 2013 WL 4401369, at *3 (N.D. Ill. Aug. 15, 2013) (dismissing citation to discover assets filed against federal bankruptcy trustee, holding it was barred by Barton Doctrine).

17.     The exception to this general rule under 28 U.S.C. § 959(a), which allows actions arising from the operation of an ongoing business to be brought in any court having jurisdiction, is wholly inapplicable to this case. It is clear under the Receivership Order that the Receiver at no time operated the business of the Receivership Defendants. Accordingly, the provisions in the proposed order, which provide that this Court will retain jurisdiction over all matters relating to the Receiver and the Receivership estate, and that this Court has exclusive jurisdiction over any claims challenging the actions of the Receiver, are wholly appropriate.

**D.  Transfer of Net Balance of Receivership Accounts to FTC**

18.     The Corporate and Mohindra Judgment requires the Receiver to "[d]istribute to Plaintiffs any remaining liquid assets at the conclusion of the Receiver's duties."  Corporate and Mohindra Judgment at p. 24.  Based on conversations with the Plaintiffs, it is the Receiver's understanding that the Plaintiffs intend for the FTC to receive the balance of the Receivership Accounts.  The FTC intends to utilize the funds to make redress payments to the consumers identified by the Receiver as having made payments to the Defendants prior to the commencement of the Receivership.  The Receiver requests that the Court authorize and approve his transfer of the net balance of the Receivership Accounts to the FTC after payment of all remaining expenses of the Receivership Estate, including the fees of the Receiver and the Estate Professionals (defined below).

7

19. To the extent that any assets of the Receivership Estate remain (the Receiver is not aware of any assets with a net material value to the Receivership Estate), the Receiver requests that the Court deem such assets to be abandoned to the Receivership Defendants.

**E. Final Approval of Professional Fees and Expenses Incurred Since August 2018**

20. The Receivership Order authorized the Receiver to "choose, engage, and employ accountants and attorneys as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order." (Receivership Order, § VIII(B)(8)). At the onset of the case, the Receiver retained Shaw Fishman Glantz & Towbin LLC (now known as Fox Rothschild LLP ("Fox Rothschild")) as legal counsel and Cendrowski Corporate Advisors, LLC ("CCA") as accountant. Effective September 1, 2020, the attorneys representing the Receiver at Fox Rothschild moved to the law firm of Cozen O'Connor ("Cozen," and together with Fox Rothschild and CCA, the "Estate Professionals").

21. The Receivership Order (*see* § VIII(G)) and the Court's *Order Granting Motion of Receiver to Establish Procedures for Allowance of Compensation and Reimbursement of Expenses* [Dkt. No. 91] (the "Compensation Procedures") permitted the Receiver to pay the reasonable fees (the "Fees") and expenses (the "Expenses") of the Receiver and his professionals from the Receivership Estate. As described in detail in the Compensation Procedures, the Receiver is permitted to make monthly payments equal to 80% of the Fees and 100% of the Expenses upon 10 days' notice to the Defendants pursuant to monthly statements filed with the Court ("Interim Payments"). The Interim Payments, as well as payment of the balance of the Fees, are subject to final approval by the Court.

22. The Court has entered final orders approving the fees and expenses of the Receiver and the Estate Professionals incurred through August 2018, as summarized in the Final Report.

23.     By this Motion, the Receiver requests that the Court approve on a final basis the fees and expenses of the Receiver and the Estate Professionals incurred from and after September 1, 2018 through the present (the "Application Period").  All of the services for which compensation is requested were services that were necessarily rendered after due consideration of the expected costs and anticipated benefits of such services.

### i.     Fees and Expenses of the Receiver

24.     During the Application Period, the Receiver incurred fees in the amount of $70,987.50 and expenses of $26,186.99, as follows:

| Month | Fees | Expenses | Authorized Interim Payment | Holdback |
|---|---|---|---|---|
| Sep-18 | $5,587.50 | $2,448.67 | $6,918.67 | $1,117.50 |
| Oct-18 | $6,300.00 | $2,448.67 | $7,488.67 | $1,260.00 |
| Nov-18 | $3,637.50 | $2,448.67 | $5,358.67 | $727.50 |
| Dec-18 | $2,250.00 | $2,448.67 | $4,248.67 | $450.00 |
| Jan-19 | $3,112.50 | $3,920.67 | $6,410.67 | $622.50 |
| Feb-19 | $3,075.00 | $2,448.65 | $4,908.65 | $615.00 |
| Mar-19 | $7,575.00 | $2,584.30 | $8,644.30 | $1,515.00 |
| Apr-19 | $7,162.50 | $2,584.30 | $8,314.30 | $1,432.50 |
| May-19 | $3,075.00 | $2,455.21 | $4,915.21 | $615.00 |
| Jun-19 | $2,025.00 | $248.91 | $1,868.91 | $405.00 |
| Jul-19 | $2,362.50 | $248.91 | $2,138.91 | $472.50 |
| Aug-19 | $2,700.00 | $141.78 | $2,301.78 | $540.00 |
| Sep-19 | $1,500.00 | $141.78 | $1,341.78 | $300.00 |
| Oct-19 | $1,575.00 | $141.78 | $1,401.78 | $315.00 |
| Nov-19 - Aug 20 | $19,050.00 | $1,476.02 | $0.00 | $20,526.02 |
| *Total* | **$70,987.50** | **$26,186.99** | **$66,260.97** | **$30,913.52** |

25.     The Receiver filed and served Monthly Statements for the months of September 2018 through October 2019.  Pursuant to the Compensation Procedures, the Receiver was authorized to receive total Interim Payments for the Application Period in the amount of $66,260.97 for those months.  The Receiver elected not to file Monthly Statements for the months of November 2019 through August 2020.  After conducting a reconciliation of all receipts and

disbursements, the Receiver discovered that he inadvertently paid a total of $71,051.27 to himself for the Application Period, which exceeded the authorized Interim Payment by $4,790.30. Taking into account this overpayment, and reducing the above-noted Holdback amount accordingly, the total amount owed to the Receiver for the Application Period is $26,123.22.

26.     The following is a non-exhaustive summary of the services rendered by the Receiver during the Application Period in this Case:

a.   <u>Sale of Real Estate</u>.  Sold the Receivership Estate's interest in certain real estate parcels (condominium and two parking spots) located at 505 N. Lake Shore Drive, Chicago, Illinois (the "Lakeshore Drive Property"); consulted with the Estate's broker regarding the sales of the units, the rehabilitation of the condominium, the necessity for re-listing the property after the initial sales fell through, and other issues; communicated with the Receiver's counsel in connection with various real estate tax and other closing issues; reviewed and analyzed proposed purchase and sale agreements; and conducting inspections of the Lakeshore Drive Property.

b.   <u>Avoidance Actions</u>.  Oversaw the Receivership Estate's fraudulent transfer litigation against various defendants; conferred with the Receiver's counsel regarding discovery and settlement issues; and approved the Estate's entry into certain settlement agreements.

c.   <u>Tax Issues</u>.  Consolidated and analyzed information necessary to prepare federal and state income tax returns on behalf of the Receivership Estate; consulted with the Estate's accountant; and filed federal and state income tax returns.

d.   <u>Governmental Inquiries</u>.  Responded to inquiries from the Internal Revenue Service regarding the Defendants.

10

e. <u>Estate Administration</u>.  Conferred with counsel for the FTC and the State of Illinois regarding, among other things, the status of the Case and the Receivership Estate; reviewed and revised the Final Report; and prepared for and attended hearings before the Court.

27.    During the Application Period, the Receiver incurred $26,186.99 in out-of-pocket expenses as reasonable and necessary costs of preserving the Receivership Estate, as follows:

| Expense | Amount |
|---|---|
| Condo Association Dues for Lakeshore Drive Property | $24,714.99 |
| Property Insurance for Lakeshore Drive Property | $1,472.00 |
| *Total* | **$26,186.99** |

28.    The invoices attached to the Monthly Statements provide detailed descriptions of the services rendered and expenses incurred by the Receiver for the months of September 2018 through October 2019.  The invoice attached hereto as <u>Exhibit A</u> provides a detailed description of the services rendered from and after November 1, 2019 through the present.

ii.    **Fees and Expenses of Fox Rothschild**

29.    During the Application Period, Fox Rothschild incurred fees in the amount of $207,203.00 and expenses of $79,131.53, as follows:

| Month | Fees | Expenses | Interim Payment | Holdback |
|---|---|---|---|---|
| Sep-18 | $7,631.00 | $9,224.00 | $15,328.80 | $1,526.20 |
| Oct-18 | $14,361.00 | $3,016.20 | $14,505.00 | $2,872.20 |
| Nov-18 | $6,478.00 | $3,314.25 | $8,496.65 | $1,295.60 |
| Dec-18 | $3,395.00 | $0.00 | $2,716.00 | $679.00 |
| Jan-19 | $5,433.00 | $6,703.50 | $11,049.90 | $1,086.60 |
| Feb-19 | $16,455.00 | $3,449.25 | $16,613.25 | $3,291.00 |
| Mar-19 | $25,335.00 | $9,717.01 | $29,985.01 | $5,067.00 |
| Apr-19 | $24,672.00 | $248.71 | $19,986.31 | $4,934.40 |
| May-19 | $11,597.50 | $3,648.36 | $12,926.36 | $2,319.50 |
| Jun-19 | $2,331.50 | $3,997.22 | $5,862.42 | $466.30 |
| Jul-19 | $11,432.50 | $4,066.14 | $13,212.14 | $2,286.50 |
| Aug-19 | $4,415.50 | $26.06 | $3,558.46 | $883.10 |

11

| Month | Fees | Expenses | Interim Payment | Holdback |
|---|---|---|---|---|
| Sep-19 | $4,703.50 | $0.00 | $3,762.80 | $940.70 |
| Oct-19 | $7,642.00 | $3,205.61 | $9,319.21 | $1,528.40 |
| Dec-19 | $17,167.00 | $3,210.33 | $16,943.93 | $3,433.40 |
| Jan-20 | $9,671.50 | $6,108.20 | $13,845.40 | $1,934.30 |
| Feb-20 | $2,390.50 | $4,877.97 | $6,789.97 | $478.50 |
| Mar-20 | $1,910.00 | $4,890.01 | $0.00 | $6,800.01 |
| Nov-19, Apr-20, May-20 | $27,630.00 | $3,416.17 | $0.00 | $31,046.17 |
| Jun-20 | $2,551.50 | $12.54 | $0.00 | $2,564.04 |
| Jul-20 | $439.50 | $0.00 | $0.00 | $439.50 |
| Aug-20 | $2,195.00 | $0.00 | $0.00 | $2,195.00 |
| *Total* | **$207,203.00** | **$73,131.53** | **$204,901.61** | **$78,067.42** |

30.     Fox Rothschild filed and served Monthly Statements for the months September 2018 through July 2020.  No party objected to the Monthly Statements.  Fox Rothschild received Interim Payments for the months noted in the foregoing chart of $204,901.61.  The total Holdback owed to Fox Rothschild for the Application Period is thus $78,067.42.  However, after reconciling Fox Rothschild's invoices and payments, the Receiver discovered that he inadvertently overpaid Fox Rothschild in connection with its previously approved fees and expenses in the amount of $20.48.  Taking into account this overpayment, the above-noted Holdback amount owed to Fox Rothschild is reduced to a total Holdback of $78,046.94.

31.     The following is a non-exhaustive summary of the services rendered by Fox Rothschild during the Application Period in this Case:

  a.   Avoidance Actions.  Continued to prosecute lawsuits filed by the Receiver against parties that had received allegedly avoidable transfers, or the benefit of such transfers, from Aura; conducted related legal research; prepared mediation statements and participated in settlement conferences; negotiated with opposing counsel; drafted settlement agreements and motions to approve settlement

12

agreements and related documents; reviewed discovery productions by defendants; and participated in depositions.

b. <u>Real Estate</u>. Advised the Receiver on issues pertaining to the real estate in the Receivership Estate; counseled the Receiver on real estate sale transactions, prepared real estate sale contracts, coordinated closings, drafted closing statements, and drafted motions for authority to sell the real estate; and advised the Receiver on issues pertaining to restrictive covenants and property taxes.

c. <u>Governmental and Creditor Inquiries</u>. Responded to inquiries from governmental agencies, asset tracers and purported creditors of the Receivership Estate.

d. <u>Redress Claimant Project</u>. At the request of the FTC, coordinated and oversaw the Receiver's identification of consumers who had paid money to the Receivership Defendants in connection with their pre-Receivership debt-collection practice; communicated with the FTC regarding the progress of the redress claimant project; supervised the consultant who was tasked with identifying consumers to ensure that end-product could be utilized by the FTC to pay Receivership funds to the consumers.

e. <u>Estate Administration</u>. Reviewed and analyzed invoices of the Estate Professionals and the Receiver and prepared Monthly Statements; drafted motions for final approval of fees and expenses; advised the Receiver with respect to his rights and powers under the Receivership Order; drafted the Final Report; and prepared for and attended hearings before the Court.

32.     During the Application Period, Fox Rothschild incurred $73,131.33 in out-of-pocket expenses as reasonable and necessary costs relating to serving as counsel to the Receiver, as follows:

| Expense | Amount |
|---|---|
| Postage | $1.65 |
| Messenger | $113.33 |
| Relativity[3] | $72,395.28 |
| Filing Fees | $75.00 |
| Title Searches | $300.00 |
| Working Meals | $83.71 |
| Online Research | $162.56 |
| *Total* | **$73,131.53** |

33.     The invoices attached to the Monthly Statements provide detailed descriptions of the services rendered by Fox Rothschild and the expenses incurred during the months of September 2018 through July 2020.  The invoice attached hereto as Exhibit B provides a detailed description of the services rendered during the month of August 2020.

### iii.     Fees and Expenses of CCA

34.     During the Application Period, CCA incurred fees in the amount of $10,127.50, as follows:

| Months | Fees | Expenses | Interim Payment Paid | Holdback |
|---|---|---|---|---|
| Jan-19 | $2,808.00 | $0.00 | $2,246.00 | $562.00 |
| Feb-19 | $702.00 | $0.00 | $702.00 | $0.00 |
| Oct-19 | $5,272.00 | $0.00 | $0.00 | $5,272.00 |
| Jan-20 | $1,345.50 | $0.00 | $0.00 | $1,345.50 |
| *Total* | **$10,127.50** | **$0.00** | **$2,948.00** | **$7,179.50** |

---

[3] Relativity is the searchable online database in which the Receiver stored electronic records relating to the Receivership, including information on the Receivership Defendants' computer servers, business records and emails, as well as information provided by subpoenaed third-parties.  The Relativity expense noted above is associated with the hosting fees charged by the third-party Relativity provider.

35.     CCA filed and served Monthly Statements for the months of January 2019, February 2019, October 2019 and January 2020.  No party objected to the Monthly Statements, and CCA received Interim Payments for the months of January 2019 and February 2019 in the amount of $2,948.00.[4]  CCA did not receive Interim Payments for the months of October 2019 or January 2020.  Accordingly, CCA is entitled to a Holdback of $7,179.50 for the Application Period.

36.     The following is a non-exhaustive summary of the services rendered by CCA during the Application Period in this Case:

    a.  <u>Litigation Support</u>.  Reviewed account statements, financial analyses and other information in preparation for anticipated deposition of CCA professional Michael Maloziec in one of the avoidance actions brought by Receiver.

    b.  <u>Estate Administration</u>.  Reviewed and analyzed pre-Receivership transactions by the Receivership Defendants and advised the Receiver with respect to existence of pre-Receivership creditors of the Receivership Estate; assisted the Receiver with the preparation of tax returns for the Estate.

37.     The invoices attached to the Monthly Statements provide detailed descriptions of the services rendered by CCA during the Application Period.

**iv.    Fees and Expenses of Cozen**

38.     Cozen has represented the Receiver since September 1, 2020, when the attorneys representing him at Fox Rothschild joined Cozen.  Due to the timing of the filing of the Final Report and this Motion, Cozen did not file a Monthly Statement during the Application Period and

---

[4] CCA was inadvertently paid the full amount owed for the month of February 2019 ($702.00), rather than 80% of the fees ($561.60) as permitted by the Compensation Procedures Order.  However, CCA did not receive Interim Payments of approximately $5,294.00 for the months of October 2019 or January 2020, to which it was otherwise entitled.

has not received any Interim Payments. The following chart summarizes Cozen's fees and expenses for the Application Period.

| Months | Fees | Expenses | Interim Payment | Holdback |
|---|---|---|---|---|
| Oct-20 | $21,739.00 | $0.00 | $0.00 | $21,739.00 |
| *Total* | $21,739.00 | $0.00 | **$0.00** | $21,739.00 |

39.     During the Application Period, the specific tasks performed by Cozen included drafting the Final Report and this Motion.  The invoices attached hereto as <u>Exhibit C</u> provide detailed descriptions of the services rendered by Cozen during the Application Period.

40.     Finally, the Receiver requests that the Court permit the Receiver to set aside $7,500 (the "Carve-Out") to fund administrative expenses relating to the termination of the Receivership, including, but not limited to, the fees of the Receiver and the Estate Professionals incurred in connection with the preparation for and attendance at the hearing on this Motion.  Any portion of the Carve-Out not utilized by the Receiver to pay appropriate expenses will be remitted to the FTC.

**F.  Discharge of Receiver**

41.     Finally, the Receiver requests that the Court: (i) discharge the Receiver from his appointment, relieve him from all obligations under the Receivership Order and terminate the Receivership; (ii) approve all disbursements made by the Receiver as identified in the Final Report; (iii) authorize the Receiver to transfer to the FTC the net balance of the Receivership Accounts after all administrative claims of the Receivership are satisfied; and (iv) retain jurisdiction pursuant to the Barton Doctrine.

**IV.     <u>Conclusion</u>**

WHEREFORE, the Receiver requests that the Court enter an order substantially in the form attached hereto as <u>Exhibit D</u>:

a)  Approving the Final Report;

16

b) Approving all disbursements made by the Receiver as identified in the Final Report;

c) Approving on a final basis the fees and expenses of the Receiver and Estate Professionals incurred from and after September 1, 2018 through the present, and permitting the Receiver to retain and utilize the Carve-Out;

d) Authorizing, but not directing, the destruction of Records that are held by the Receiver and the Estate Professionals;

e) Deeming any remaining assets of the Receivership Estate to be abandoned to the Receivership Defendants;

f) Declaring that the Receiver and each of his agents, employees, professionals, attorneys, independent contractors and representatives are: (i) discharged with respect to the Receivership; (ii) released from all claims and liabilities arising out of and/or pertaining to the Receivership; and (iii) relieved of all duties and responsibilities pertaining to the Receivership;

g) Terminating the Receivership; and

h) Granting such other just and appropriate relief.

Respectfully submitted,

Dated: October 30, 2020                     Gregg Szilagyi, Receiver


By ____/s/ Robert M. Fishman_____
        One of his attorneys

Robert M. Fishman
David R. Doyle
Cozen O'Connor
123 N. Wacker Drive, Suite 1800
Chicago, Illinois 60606
P: (312) 474-1648
F: (312) 361-8378
rfishman@cozen.com
daviddoyle@cozen.com
*Counsel to the Receiver*

**EXHIBIT A**

RECEIVER GREGG SZILAGYI

# Time Worksheet

| | |
|---|---|
| **Case Number:** 16-03463 | **Case Name:** **STARK LAW LLC** |
| **Case Status:** OPEN | **Judge:** **Rebecca R. Pallmeyer** |
| **Filing Date:** 03/21/16 | |

| Date | Description | Hours/Unit | Rate | Total |
|---|---|---|---|---|
| **Matter Code: CASE ADMINISTRATION** | | | | |
| 11/01/19 | RETRIEVE AND REVIEW MAIL | 0.50 | 375.00 | 187.50 |
| 11/08/19 | RETRIEVE AND REVIEW MAIL | 0.50 | 375.00 | 187.50 |
| 11/15/19 | RETRIEVE AND REVIEW MAIL | 0.50 | 375.00 | 187.50 |
| 11/18/19 | PREPARE FOR AND ATTEND CONF CALL WITH FTC RE REDRESS CLAIMANTS; CALL WITH T BANICH RE CLOSING ESTATE; EMAIL TO DOYLE RE GATHERING PROFESSIONAL FEE STATEMENTS FOR REVIEW | 2.00 | 375.00 | 750.00 |
| 11/19/19 | EMAIL FROM BANICH RE PATEL INVOICE AND STATUS OF PROJECT; CALL WITH BANICH RE UNSECURED CREDITOR CLAIMANTS AND OTHER VENDOR CLAIMS | 1.00 | 375.00 | 375.00 |
| 11/20/19 | CALL TO BROKER RE STATUS OF SALE OF PARKING SPACES; MEET WITH BANICH AND DOYLE RE IDENTIFYING VENDOR AND OTHER CLAIMS AND CLOSING THE CASE | 1.30 | 375.00 | 487.50 |
| 11/21/19 | CONF CALL WITH FTC AND COUNSEL RE REDRESS CLAIMANTS, IDENTIFYING OTHER CLAIMANTS AND CLOSING THE RECEIVERSHIP ESTATE | 1.00 | 375.00 | 375.00 |
| 11/22/19 | RETRIEVE AND REVIEW MAIL | 0.50 | 375.00 | 187.50 |
| 11/29/19 | RETRIEVE AND REVIEW MAIL | 0.40 | 375.00 | 150.00 |
| 12/05/19 | CALL WITH FTC AND COUNSEL RE PLANS FOR DISTRIBUTING FNDS AND ENDING RECEIVERSHIP | 1.20 | 375.00 | 450.00 |
| 12/06/19 | RETRIEVE AND REVIEW MAIL; CALL TO BROKER RE PARKING SPOT LISTINGS AND RE-PRICING | 1.00 | 375.00 | 375.00 |
| 12/09/19 | EMAILS TO/FROM D DOYLE AND M MALOZIEC RE OTHER POTENTIAL ADMIN AND VENDOR CLAIMS TO BE ADMINISTERED THROUGH THE RECEIVERSHIP | 0.40 | 375.00 | 150.00 |
| 12/10/19 | REVIEW BILL OF SALE FOR SALE OF SERVERS | 0.20 | 375.00 | 75.00 |
| 12/11/19 | REVIEW LIST OF PRE-RECEIVERSHIP CREDITORS PREPARE BY D DOYLE | 0.50 | 375.00 | 187.50 |
| 12/13/19 | REVIEW EMAIL CORRESPONDENCE FROM W HODOR AND T BANICH RE CLOSING OF CASE AND PROCEDURES FOR DOING SO; RETRIEVE AND REVIEW MAIL; CALL TO BROKER RE SALE OF PARKING SPOTS | 2.00 | 375.00 | 750.00 |
| 12/14/19 | EMAIL DISCUSSION WITH BROKER RE OFFER FOR PARKING SPOT | 0.20 | 375.00 | 75.00 |
| 12/15/19 | TELEPHONE CALL FROM BROKER RE MULTIPLE OFFERS FOR PARKING SPOTS | 0.30 | 375.00 | 112.50 |
| 12/16/19 | CALLS FROM/TO BROKER RE OFFERS FOR PARKING SPOTS | 0.30 | 375.00 | 112.50 |
| 12/19/19 | REVIEW DRAFT MOTION TO DISTRIBUTE FUNDS AND CLOSE RECEIVERSHIP; CALL WITH T BANICH RE SAME | 1.20 | 375.00 | 450.00 |
| 12/20/19 | CALL WITH FISHMAN AND BANICH RE MOTION TO DISTRIBUTE FUNDS AND CLOSE CASE | 0.50 | 375.00 | 187.50 |
| 12/21/19 | REVIEW DRAFT CONTRACTS TO SELL TWO LPT PARKING SPOTS AND EMAIL TO R GLANTZ RE SAME | 0.50 | 375.00 | 187.50 |
| 01/02/20 | EMAILS TO/FROM BROKER RE ADDITIONAL OFFERS TO PURCHASE SPOTS | 0.20 | 375.00 | 75.00 |
| 01/06/20 | EMAIL FROM BROKER RE CONTRACTS; REVIEW CORRESPONDENCE FROM CREDITOR AND EMAIL TO COUNSEL RE RESPONSE | 0.20 | 375.00 | 75.00 |
| 01/07/20 | REVIEW DRAFT EMAIL PREPARED INQUIRIES FROM CREDITORS | 0.20 | 375.00 | 75.00 |
| 01/08/20 | EMAILS TO/FROM BANICH AND B HODOR RE CASE CLOSING AND FUND DISTRIBUTION | 0.20 | 375.00 | 75.00 |

| Date | Description | Hours | Rate | Amount |
|---|---|---|---|---|
| 01/10/20 | CONFER WITH FISHMAN AND BANICH RE CLOSING CASE AND DISTRIBUTION OF FUNDS | 0.60 | 375.00 | 225.00 |
| 01/15/20 | CALL TO LOIS WEST RE PREPARATION OF RECEIVERSHIP ESTATE STATE AND FEDERAL TAX RETURNS IN PREPARATION TO CLOSE CASE; MULTIPLE EMAILS TO L. WEST RE FINANCIAL INFO FOR TAX RETURNS | 1.50 | 375.00 | 562.50 |
| 01/16/20 | EMAILS TO/FROM BANICH AND FISHMAN RE DISTRIBUTION OF FUNDS AND REVIEW LETTER TO CREDITOR; CALL TO L WEST RE MORE BACKGROUND INFO FOR PREPARATION OF STATE AND LOCAL TAX RETURNS FOR RECEIVERSHIP ESTATE | 1.40 | 375.00 | 525.00 |
| 01/17/20 | MULTIPLE EMAILS TO L WEST RE BACKGROUND FOR TAX RETURN PREP; RETRIEVE AND REVIEW MAIL | 1.00 | 375.00 | 375.00 |
| 01/22/20 | EMAILS FROM/TO BROKER RE RECEIPT OF EARNEST MONEY FOR PARKING SPOT SALES | 0.20 | 375.00 | 75.00 |
| 01/23/20 | EMAIL TO FTC RE SALE OF PARKING SPOTS AND UPDATE RE FUNDS DISTRIBUTION; EMAILS TO/FROM COUNSEL RE SAME; LETTER FROM FREDERICKS RE TI RELEASE | 0.50 | 375.00 | 187.50 |
| 01/24/20 | REVIEW AND CONSOLIDATE INFO RECEVED FORM DOYLE AND MALOZIEC RE INFO NEEDED FOR PREPARATION OF STATE AND FED TAX RETURNS FOR ESTATE | 1.30 | 375.00 | 487.50 |
| 01/27/20 | REVIEW DRAFT MOTIONS TO SELL PARKING SPOTS; EMAIL CORRESPONDENCE TO DOYLE RE INFO ON RE TRANSACTIONS NECESSARY TO PREPARE TAX RETURNS | 1.00 | 375.00 | 375.00 |
| 01/28/20 | EMAIL FROM GLANTZ RE ISSUES WITH PARKING SPOT CLOSINGS | 0.20 | 375.00 | 75.00 |
| 01/29/20 | REVIEW DRAFT MOTION TO DISTRIBUTE FUNDS AND PREPARE FOR TOMORROW'S HEARING | 1.00 | 375.00 | 375.00 |
| 01/30/20 | PREPARE FOR ATTEND STATUS HEARING BEFORE JUDGE PALLMEYER | 1.00 | 375.00 | 375.00 |
| 01/31/20 | RETRIEVE AND REVIEW MAIL | 0.40 | 375.00 | 150.00 |
| 02/04/20 | REVIEW CHART OF REAL ESTATE TRANSACTION DETAILS PREPARED BY COUNSEL AND SEND TO ACCOUNTANTS FOR USE IN PREPARATION OF FED AND STATE TAX RETURNS | 0.30 | 375.00 | 112.50 |
| 02/06/20 | REVIEW REVISED CHART OF RE TRANSACTION DETAILS AND CALL TO L WEST RE SAME | 0.50 | 375.00 | 187.50 |
| 02/12/20 | EMAILS TO/FROM COUNSEL RE TITLE COMPANY REQUIREMENT RELATING TO 60 DAYS APPEAL PERIOD NECESSARY TO CLOSE PARKING SPACE SALES | 0.30 | 375.00 | 112.50 |
| 02/14/20 | RETRIEVE AND REVIEW MAIL | 0.40 | 375.00 | 150.00 |
| 02/24/20 | CALL TO BROKER RE NEED TO WAIT 60 DAYS FOR ORDER APPEAL PERIOD TO RUN BEFORE CLOSING SALE OF PARKING SPACES | 0.20 | 375.00 | 75.00 |
| 02/28/20 | RETRIEVE AND REVIEW MAIL | 0.40 | 375.00 | 150.00 |
| 03/06/20 | EMAILS FROM/TO BROKER RE CLOSING OF PARKING SPOTS | 0.20 | 375.00 | 75.00 |
| 03/13/20 | RETRIEVE AND REVIEW MAIL | 0.40 | 375.00 | 150.00 |
| 03/23/20 | EMAILS FROM/TO GLANTZ RE PARKING SPACE CONTRACT ISSUE | 0.20 | 375.00 | 75.00 |
| 03/26/20 | REVIEW PARKING SALE TERMINATION LETTER AND EMAILS TO/FROM GLANTZ RE SAME | 0.30 | 375.00 | 112.50 |
| 03/27/20 | RETRIEVE AND REVIEW MAIL | 0.40 | 375.00 | 150.00 |
| 04/01/20 | EMAIL FROM P FREDERICKS RE PAYMENT OF OUTSTANDING CONDO ASSESSMENTS ON PARKING SPOTS IN ADVANCE OF SALES; CHECK ON UNPAID ASSESSMENTS AND MAKE PAYMENT | 0.30 | 375.00 | 112.50 |
| 04/02/20 | EMAIL FROM P FREDERICKS RE CLOSING ON SALE; FOLLOW UP EMAIL FROM P FREDERICKS RE POSSIBLE OVERPAYMENT OF PARKING ASSESSMENTS AND HOW TO HANDLE REFUND | 0.40 | 375.00 | 150.00 |
| 04/03/20 | RETRIEVE AND REVIEW MAIL | 0.30 | 375.00 | 112.50 |
| 04/05/20 | REVIEW DRAFT SALE DOCS FOR CLOSING TOMORROW | 0.40 | 375.00 | 150.00 |
| 04/06/20 | MEET WITH P FREDERICKS RE SIGNING CLOSING DOCS FOR SALE OF PARKING SPOT AT LPT | 0.50 | 375.00 | 187.50 |
| 04/09/20 | EMAILS TO VARIOUS COUNSEL RE DEFAULT OF PARKING SPOT PURCHASER AND NEED TO SELL TO ALTERNATE BUYER; EMAILS FROM/TO ACCOUNTANT L WEST RE STATUS | 1.20 | 375.00 | 450.00 |

OF TAX RETURN PREP

| Date | Description | Hours | Rate | Amount |
|---|---|---|---|---|
| 04/10/20 | CALL TO COUNSEL FOR CONDO BUYER TO INQUIRE WHETHER HIS CLIENT IS INTERESTED IN PURCHASING SPOT FROM RECENT CONTRACT DEFAULT | 0.20 | 375.00 | 75.00 |
| 04/14/20 | EMAILS FROM/TO R GLANTZ RE WAIVER OF APPEAL ON SALE ORDER AND NEW CONTRACT | 0.20 | 375.00 | 75.00 |
| 04/15/20 | EMAILS FROM/TO GLANTZ RE WILLINGNESS OF ORIGINAL BUYER TO CLOSE ON SALE | 0.20 | 375.00 | 75.00 |
| 04/16/20 | EMAILS FROM/TO L WEST RE QUESTIONS FOR PREP OF STATE AND FED TAX RETURNS FOR ESTATE | 0.30 | 375.00 | 112.50 |
| 04/20/20 | MEET WITH P FREDERICKS AND REVIEW AND SIGN SECOND PARKING SPOT SALE DOCS FOR CLOSING | 0.50 | 375.00 | 187.50 |
| 04/24/20 | RETRIEVE AND REVIEW MAIL | 0.30 | 375.00 | 112.50 |
| 04/27/20 | EMAILS FROM/TO D DOYLE RE OUTLINE FOR FINAL RECEIVER'S REPORT | 0.40 | 375.00 | 150.00 |
| 05/05/20 | REVIEW AND ARRANGE FOR ACCOUNTANTS TO FILE 2015-2019 FEDERAL AND STATE TAX RETURNS FOR ESTATE | 4.00 | 375.00 | 1,500.00 |
| 05/08/20 | RETRIEVE AND REVIEW MAIL | 0.30 | 375.00 | 112.50 |
| 05/11/20 | REVIEW DRAFT FINAL REPORT FORM D DOYLE AND ASSEMBLE ACCOUNTING INFORMATION RE SAME | 1.50 | 375.00 | 562.50 |
| 05/20/20 | EMAIL FROM AND TO W HODOR OF FTC RE ASSET REPORT FOR FTC AND GENERAL STATUS | 0.20 | 375.00 | 75.00 |
| 05/22/20 | RETRIEVE AND REVIEW MAIL | 0.30 | 375.00 | 112.50 |
| 05/27/20 | EMAIL AND CALL FROM L WEST RE REJECTION OF FILED FEDERAL TAX RETURNS | 0.50 | 375.00 | 187.50 |
| 05/28/20 | CALL TO L WEST RE NEED TO RE-FILE FEDERAL TAX RETURNS | 0.40 | 375.00 | 150.00 |
| 06/02/20 | EMAILS TO/FROM L WEST CONFIRMING THAT RESUBMITTED FED AND STATE TAX RETURNS WERE ACCEPTED BY IRS AND IDR | 0.20 | 375.00 | 75.00 |
| 06/04/20 | REVIEW EMAIL FROM W HODOR OF FTC RE POTENTIAL ADDITIONAL ESTATE ASSET AND CALL AND EMAIL TO COUNSEL REGARDING POTENTIAL RECOVERY | 0.50 | 375.00 | 187.50 |
| 06/09/20 | EMAIL AND CALL FROM D DOYLE RE POTENTIAL ASSET OF THE ESTATE RE BERKELEY DEVELOPMENT; REVIEW RECORDS OF ESTATE RE BERKELEY AND VALUE OF POTENTIAL ASSET | 1.00 | 375.00 | 375.00 |
| 06/12/20 | RETRIEVE AND REVIEW MAIL | 0.20 | 375.00 | 75.00 |
| 06/15/20 | EMAIL AND CALL FROM D DOYLE RE RECOVERY OF POTENTIAL ASSET OF THE ESTATE RE BERKELEY DEVELOPMENT AND DECISION TO NOT PURSUE ON BEHALF OF ESTATE | 0.30 | 375.00 | 112.50 |
| 06/26/20 | RETRIEVE AND REVIEW MAIL | 0.20 | 375.00 | 75.00 |
| 06/29/20 | EMAILS WITH DOYLE RE TIMING OF FINAL REPORT AND CLOSING CASE | 0.20 | 375.00 | 75.00 |
| 07/06/20 | RECONCILE ALL BANK ACCOUNTS IN PREPARATION FOR FINAL REPORT AND CLOSING CASE | 1.40 | 375.00 | 525.00 |
| 07/17/20 | RETRIEVE AND REVIEW MAIL | 0.40 | 375.00 | 150.00 |
| 07/27/20 | CALL FROM DOYLE RE PREPARATION OF MOTION TO APPROVE FINAL REPORT | 0.30 | 375.00 | 112.50 |
| 07/28/20 | EMAILS FROM/TO B HODOR RE TIMING OF CLOSING RECEIVERSHIP | 0.20 | 375.00 | 75.00 |
| 07/31/20 | RETRIEVE AND REVIEW MAIL AND CLOSE OUT PO BOX FOR RECEIVERSHIP | 0.50 | 375.00 | 187.50 |
| 08/11/20 | PREPARE EDITS FOR RECEIVER'S FINAL REPORT AND SEND TO DOYLE; EMAIL TO JIM MARTIN RE CENDROWSKI FINAL FEES AND EXPENSES | 0.50 | 375.00 | 187.50 |
| 08/25/20 | ANTICIPATORY TIME FOR REVIEW OF FINAL VERSION OF FINAL REPORT AND MOTION TO APPROVE AND TO APPEAR IN COURT RE SAME AND TRANSFER FUNDS TO FTC FOR REDRESS CLAIMS | 2.00 | 375.00 | 750.00 |
| | **Totals for CASE ADMINISTRATION** | 50.80 | | 19,050.00 |
| | **Report Totals** | 50.80 | | 19,050.00 |

**EXPENSE SUMMARY**:

| | |
|---|---:|
| HOA FEES 505 N LAKE SHORE PARKING OCT 2019 | 141.78 |
| HOA FEES 505 N LAKE SHORE PARKING  NOV 2019 | 141.78 |
| HOA FEES 505 N LAKE SHORE PARKING  DEC 2019 | 141.78 |
| HOA FEES 505 N LAKE SHORE PARKING  JAN 2020 | 141.78 |
| HOA FEES 505 N LAKE SHORE PARKING  FEB-MAR 2020 | 383.56 |
| HOA FEES 505 N LAKE SHORE PARKING  APRIL THROUGH CLOSING | 525.34 |
| | $1,476.02 |

**EXHIBIT B**



# Fox Rothschild LLP

ATTORNEYS AT LAW

321 N. Clark St., Suite 1600, Chicago, IL 60654
Tel 312.517.9200   Fax 312.517.9201   www.foxrothschild.com

TAX I.D. NO. 23-1404723

| | |
|---|---|
| GREGG SZILAGYI AS RECEIVER FOR STARK LAW, LLC ET AL. | Invoice Number      2628907 |
| CASE NO. 16-CV-3463 | Invoice Date      10/15/20 |
| | Client Number      250096 |
| | Matter Number      00001 |

RE:   FEDERAL TRADE COMMISSION AND THE STATE OF ILLINOIS V. STARK LAW, LLC, ET AL.

**FOR PROFESSIONAL SERVICES RENDERED THROUGH 09/30/20:**

| Date | Timekeeper | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 08/18/20 | DOYLE | REVIEW AND REVISE TRUSTEE'S FINAL REPORT; PREPARE CHART OF PROFESSIONAL'S FEES FOR REPORT; CALL WITH C. SANFELIPPO REGARDING LITIGATION SETTLEMENTS AND REVISE REPORT BASED ON DISCUSSIONS; EMAIL AND CALLS WITH G. SZILAGYI AND T. BANICH REGARDING REPORT. | 5.1 | $340.00 | $1,734.00 |
| 08/18/20 | SANFELIPPO | CALL WITH D. DOYLE REGARDING STARK FINAL REPORT AND DETAILS REGARDING FRAUDULENT TRANSFER CASES. | 0.2 | $265.00 | $53.00 |
| 08/19/20 | DOYLE | DRAFT MOTION TO CLOSE RECEIVERSHIP AND APPROVE FINAL REPORT. | 1.1 | $340.00 | $374.00 |
| 08/20/20 | DOYLE | REVIEW AND APPROVE FEE STATEMENT FOR FILING. | 0.1 | $340.00 | $34.00 |
| | | **TOTAL** | **6.5** | | **$2,195.00** |

**TIMEKEEPER TIME SUMMARY:**

| Timekeeper | Title | Hours | Rate | Total |
|---|---|---|---|---|
| D.R. DOYLE | PARTNER | 6.3 | $340.00 | $2,142.00 |
| C.M. SANFELIPPO | ASSOCIATE | 0.2 | $265.00 | $53.00 |
| | TOTAL | 6.5 | | $2,195.00 |

**TOTAL BALANCE DUE UPON RECEIPT**     $2,195.00



# Fox Rothschild LLP
## ATTORNEYS AT LAW

321 N. Clark St., Suite 1600, Chicago, IL 60654
Tel 312.517.9200    Fax 312.517.9201    www.foxrothschild.com

TAX I.D. NO. 23-1404723

# REMITTANCE PAGE

| | | |
|---|---|---|
| GREGG SZILAGYI AS RECEIVER FOR STARK LAW, LLC ET AL. | Invoice Number | 2628907 |
| | Invoice Date | 10/15/20 |
| CASE NO. 16-CV-3463 | Client Number | 250096 |
| | Matter Number | 00001 |

RE:   FEDERAL TRADE COMMISSION AND THE STATE OF ILLINOIS V. STARK LAW, LLC, ET AL.

**TOTAL BALANCE DUE UPON RECEIPT**                **$2,195.00**

PAYMENT INSTRUCTIONS

| CHECK PAYMENT | ACH PAYMENT | WIRE INSTRUCTIONS |
|---|---|---|
| Fox Rothschild LLP | Wells Fargo Bank | Wells Fargo Bank |
| Attn: Accounts Receivable - 80 | 420 Montgomery Street | 420 Montgomery Street |
| 2000 Market Street, 20th Floor | San Francisco, CA 94104 | San Francisco, CA 94104 |
| Philadelphia, PA 19103-3222 | ACH #031000503 | ABA #121000248 |
| | Account: Fox Rothschild LLP | Account: Fox Rothschild LLP |
| | Account #2100019564260 | Account #2100019564260 |
| | Swift Code:#WFBIUS6S (international wires only) | Swift Code:#WFBIUS6S (international wires only) |
| | Email: AR@foxrothschild.com | |

Please include the Client, Matter, or Invoice Number with all payments.

**EXHIBIT C**



October 29, 2020

Gregg Szilagyi, Receiver
Tailwind Services LLC
209 S. LaSalle Street, Suite 950
Chicago, IL 60604


      Re:    Federal Trade Commission, et al. v. Stark Law, et al
             Our File No.:     495939.000


| | | |
|---|---|---|
| Fees for Professional Services: | $ | 21,739.00 |
| **Total Amount of Invoice No.: 1410015** | **$** | **21,739.00** |


**Total Amount due upon receipt of bill**

Gregg Szilagyi, Receiver                                              October 29, 2020  
File Number: 495939.000                                          Page 2  
Invoice No.: 1410015

      00603.7532.000     Gregg Szilagyi, Receiver  
      495939.000          Federal Trade Commission, et al. v. Stark Law, et al

| Date | Initials | Description of Services | Hours | Amount |
|---|---|---|---|---|
| 10/07/20 | DD | Review and revise final report based on edits from R. Fishman; call with R. Fishman regarding same. | 1.00 | $ 430.00 |
| 10/07/20 | RMF | Reviewed and revised draft Final Report of Receiver (1.2). Discussed same and Motion to Approve Final Report with D. Doyle (.4). | 1.60 | 1,376.00 |
| 10/08/20 | DD | Draft motion to approve final report and close case. | 5.70 | 2,451.00 |
| 10/09/20 | DD | Draft motion to approve final report. | 1.00 | 430.00 |
| 10/12/20 | DD | Review and revise motion to approve final report; draft fee application portion of motion for Receiver and Fox Rothschild. | 5.60 | 2,408.00 |
| 10/12/20 | RMF | Reviewed and revised draft Motion to Terminate Receivership Estate. Discussed same with D. Doyle. Email to Receiver re same. | 1.70 | 1,462.00 |
| 10/13/20 | DD | Continue drafting motion to approve final report; emails with Receiver regarding same. | 7.30 | 3,139.00 |
| 10/14/20 | DD | Review and revise motion to approve final report and call with R. Fishman regarding same. | 0.60 | 258.00 |
| 10/14/20 | RMF | Reviewed and revised latest draft of the Motion to Approve Final Report (.8). Emailed D. Doyle re same (.1). Spoke to D. Doyle re same (.1). Reviewed and revised latest draft of Final Report (.4). | 1.40 | 1,204.00 |
| 10/15/20 | DD | Review and revise final report and motion to approve final report; communications with G. Szilagyi regarding hearing date for motion to approve final report. | 0.60 | 258.00 |
| 10/15/20 | RMF | Email exchange with Receiver re Motion to Approve Final Report (.1). Reviewed email from Receiver and made suggested changes to the Motion in accordance therewith (.3). Reviewed and made revisions to the latest draft of the Final Report (.6). | 1.00 | 860.00 |
| 10/16/20 | DD | Review and revise final report and call with R. Fishman regarding same. | 0.50 | 215.00 |
| 10/16/20 | RMF | Discussed modifications to the Final Report with D. Doyle. | 0.20 | 172.00 |

Gregg Szilagyi, Receiver                                               October 29, 2020
File Number: 495939.000                                                        Page 3
Invoice No.: 1410015

| Date | Initials | Description of Services | Hours | Amount |
|------|----------|------------------------|-------|--------|
| 10/20/20 | DD | Review and analysis of receiver's report of receipts and disbursements and in-depth comparison to fee approval orders and interim fee statements filed by Receiver and Fox Rothschild. | 5.10 | 2,193.00 |
| 10/20/20 | RMF | Spoke with D. Doyle re Motion to Approve Final Report and Close Case. | 0.10 | 86.00 |
| 10/21/20 | DD | Calls with R. Fishman regarding final report; call G. Szilagyi regarding same; review Cozen O'Connor pro forma and call accounting department regarding same. | 0.50 | 215.00 |
| 10/22/20 | DD | Review and revise motion to approve final report. | 1.90 | 817.00 |
| 10/23/20 | DD | Review and analysis of Receiver fees; review and revise receiver's report and motion to approve final report; calls with R. Fishman and G. Szilagyi regarding same. | 3.70 | 1,591.00 |
| 10/26/20 | MLR | Review notice re: Lakha litigation and investigate same. | 0.20 | 110.00 |
| 10/28/20 | DD | Review and revise final report and motion to approve final report; finalize exhibits; correspondence with Receiver regarding report and motion; email R. Fishman regarding same. | 2.60 | 1,118.00 |
| 10/28/20 | RMF | Reviewed and revised latest drafts of Final Report and Motion to Approve Final Report, and emailed D. Doyle re same. | 1.10 | 946.00 |

|  |  | **Total Hours Billed:** |  | **43.40** |
|  |  | **Total Amount Billed:** | **$** | **21,739.00** |

Gregg Szilagyi, Receiver                                                                October 29, 2020
File Number: 495939.000                                                                 Page 4
Invoice No.: 1410015

### Time And Fee Summary

| Timekeeper | | Rate | Hours | | Fees |
|---|---|---|---|---|---|
| Fishman, R. | | 860.00 | 7.10 | $ | 6,106.00 |
| Doyle, D. | | 430.00 | 36.10 | | 15,523.00 |
| Radtke, M. | | 550.00 | 0.20 | | 110.00 |
| | **Totals:** | | **43.40** | **$** | **21,739.00** |
| | **Total Current Charges:** | | | **$** | **21,739.00** |



October 29, 2020

Gregg Szilagyi, Receiver
Tailwind Services LLC
209 S. LaSalle Street, Suite 950
Chicago, IL 60604

Re:    Federal Trade Commission, et al. v. Stark Law, et al
       Invoice Number:   1410015
       Our File No.:     495939.000

| | | | |
|---|---|---|---|
| Fees for Professional Services: | | $ | 21,739.00 |
| **Total Amount of Invoice No.: 1410015** | | **$** | **21,739.00** |

**Check:**                          **ACH/Wire Transfer:**

Cozen O'Connor                      Account Name:      Cozen O'Connor
7885                                                   Attorney Operating Account
PO Box 7247                         Bank:              Citibank NA
Philadelphia, PA 19170-7885                           New York, NY
                                    Account No.:       759533814
                                    Bank ABA No.:      021272655
                                    Swift Code*:       CITIUS33
                                    * Only needed for international transfers.

Please email notification of electronic payments to payments@cozen.com.

Federal Tax ID: 23-1732832

*Total Amount due upon receipt of bill*

---

**EXHIBIT D**

**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, and the STATE OF ILLINOIS, | Case No. 1:16-cv-3463 |
| *Plaintiffs,* | Judge Rebecca R. Pallmeyer |
| *v.* | Magistrate Judge Sheila M. Finnegan |
| STARK LAW, LLC, *et al.*, | |
| *Defendants.* | |

**ORDER GRANTING MOTION OF RECEIVER GREGG SZILAGYI TO DISCHARGE
RECEIVER AND GRANT RELATED RELIEF**

This matter coming to be heard on the motion (the "Motion")[5] of Gregg Szilagyi, not individually, but solely in his capacity as receiver pursuant to the *Preliminary Injunction with Asset Freeze and Other Equitable Relief* [Dkt. No. 82] (the "Receivership Order"), for entry of an order: (i) discharging the Receiver and terminating the Receivership; (ii) approving the disbursements made by the Receiver; (iii) approving the Final Report; (iv) authorizing the destruction of Records that are held by the Receiver and the Estate Professionals; (v) declaring that the Receiver and each of his agents, employees, professionals, attorneys, independent contractors and representatives are: (a) discharged with respect to the Receivership created by the Receivership Order, (b) released from all claims and liabilities arising out of and/or pertaining to the Receivership, and (c) relieved of all duties and responsibilities pertaining to the Receivership; (vi) authorizing the Receiver to transfer the net balance of the Receivership Accounts to the FTC pursuant to the Corporate and Mohindra Judgment; (vii) approving the fees of the Receiver's professionals, and (viii) granting related relief;

IT IS HEREBY ORDERED:

1. The Motion is granted.

2. The Final Report is approved.

3. All disbursements made by the Receiver identified in the Final Report are approved.

4. The fees and the expenses of the Receiver and the Estate Professionals incurred from and after September 1, 2018 through the date of this Order are approved, and the Receiver is authorized to pay the Estate Professionals the applicable Holdback Amounts, as follows:

---

[5] All undefined terms in this Order shall carry the meanings given them in the Motion.

     a.   The Receiver's fees in the amount of $70,987.50 and expenses in the amount of $26,189.99; Holdback Amount of $26,123.22.

     b.   Fox Rothschild's fees in the amount of $207,203.00 and expenses in the amount of $79,131.53; Holdback Amount of $78,046.94.

     c.   Cozen's fees in the amount of $21,739.00; Holdback Amount of $21,739.00.

     d.   CCA's fees in the amount of $10,127.50; Holdback Amount of $7,179.50.

5.   The Receiver and the Estate Professionals are authorized, but not directed, to destroy all Records.

6.   The Receiver is authorized to transfer all funds in the Receivership Accounts to the FTC after payment of administrative expenses of the Receivership. The Receiver is permitted to retain the Carve-Out to fund additional administrative expenses relating to the closing of the Receivership Estate, including the fees of the Receiver and the Estate Professionals. Any portion of the Carve-Out which is not utilized shall be remitted by the Receiver to the FTC.

7.   Upon the disbursement of the remaining Receivership funds as set forth in this Order:

     a.   The Receiver is discharged from his appointment under the Receivership Order.

     b.   Any remaining assets of the Receivership Estate are deemed abandoned to the Receivership Defendants.

     c.   The Receiver and his agents, employees, professionals, attorneys, independent contractors and representatives, including the Estate Professionals (collectively, the "Releasees") are: (i) released from all claims, causes of action and liabilities, whether known or unknown, arising out of or pertaining to the Receivership; (ii) released from all claims and liabilities by any governmental entity for any fees, charges or other liabilities asserted or that may be asserted in connection with the administration of the Receivership estate including but not limited to any claims relating to any local, state or federal taxes; and (iii) relieved of all duties and responsibilities pertaining to the Receivership.

     d.   Upon entry of this Order, all parties in interest and creditors shall be and hereby are permanently and forever barred, restrained and enjoined from taking any action to impose, or seek to impose, liability on the Releasees, or any of them, without first obtaining relief to do so from this Court.

8.   This Court shall retain jurisdiction over any and all matters relating to the Receiver, the Receivership and the Receivership Estate.

2

**ENTERED:**

Date: _____

                                             _____
                                             United States District Judge

*Prepared by:*
Robert M. Fishman
Cozen O'Connor
123 N. Wacker Drive
Suite 1800
Chicago, IL 60606

3